**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-005-O-1 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**MOTION OF NAOISE CONNOLLY RYAN, AS REPRESENTATIVE OF MICHAEL RYAN; EMILY CHELANGAT BABU AND JOSHUA MWAZO BABU, AS REPRESENTATIVES OF JARED BABU MWAZO; CATHERINE BERTHET, AS REPRESENTATIVE OF CAMILLE GEOFFROY; HUGUETTE DEBETS, AS REPRESENTATIVE OF JACKSON MUSONI; LUCA DIECI, AS REPRESENTATIVE OF PAOLO DIECI; BAYIHE DEMISSIE, AS REPRESENTATIVE OF ELSABET MINWUYELET WUBETE; SRI HARTATI, AS REPRESENTATIVE OF ERYANTO; ZIPPORAH KURIA, AS REPRESENTATIVE OF JOSEPH KURIA WAITHAKA; JAVIER DE LUIS, AS REPRESENTATIVE OF GRAZIELLA DE LUIS Y PONCE; NADIA MILLERON AND MICHAEL STUMO, AS REPRESENTATIVES OF SAMYA STUMO; CHRIS MOORE, AS REPRESENTATIVE OF DANIELLE MOORE; PAUL NJOROGE, AS REPRESENTATIVE OF CAROLYNE NDUTA KARANJA, RYAN NJUGUNA NJOROGE, KELLI W. PAULS, AND RUBI W. PAULS; YUKE MEISKE PELEALU, AS REPRESENTATIVE OF RUDOLF PETRUS SAYERS; JOHN KARANJA QUINDOS, AS REPRESENTATIVE OF ANNE WANGUI KARANJA; GUY DAUD ISKANDAR ZEN S., AS REPRESENTATIVE OF FIONA ZEN;  AND OTHER SIMILARLY SITUATED REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 UNDER THE CRIME VICTIMS' RIGHTS ACT FOR EXERCISE OF THIS COURT'S SUPERVISORY POWER OVER THE DEFERRED PROSECUTION AGREEMENT**

Warren T. Burns
Burns Charest, LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell
(Counsel of Record)
Utah Appellate Project
S.J. Quinney College of Law
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice* application to be filed)

*Attorneys for Victims' Families*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................... iv

INTRODUCTION ............................................................................................................... 2

FACTUAL BACKGROUND ................................................................................................ 3

ARGUMENT ...................................................................................................................... 3

I.   This Court Is Empowered to Review and Withhold Approval of the DPA Pursuant
     to its Supervisory Powers.......................................................................................... 5

II.  In Reviewing a DPA, a Court Must Consider Multiple Factors Including Judicial
     Integrity and the DPA's Impact on Victims............................................................... 9

III. This Court Should Withhold Its Approval of the Boeing DPA because it Violated
     Victims' Rights, Fails to Adequately Deter Criminal Conduct, and Undermines the
     Integrity of Judicial Proceedings. ........................................................................... 11

CONCLUSION.................................................................................................................. 13

CERTIFICATE REGARDING CONFERENCE ...................................................................... 15

CERTIFICATE OF SERVICE .............................................................................................. 16

## TABLE OF AUTHORITIES

Cases

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988).................................................................................................3

*Frew ex rel. Frew v. Hawkins*,
    540 U.S. 431 (2004).................................................................................................7

*In re Dean*,
    527 F.3d 391 (5th Cir. 2008) ................................................................................11

*Maerosh v. United States*,
    352 U.S. 1 (1956)....................................................................................................4

*McNabb v. United States*,
    318 U.S. 332 (1943).............................................................................................3, 8

*Santobello v. New York*,
    404 U.S. 257 (1971).................................................................................................6

*United States v. Allegheny Ludlum Indus.*,
    517 F.2d 826 (5th Cir. 1975) ..................................................................................7

*United States v. Bean*,
    564 F.2d 700 (5th Cir. 1977) ..................................................................................6

*United States v. Clem*,
    422 F. Supp. 3d 1105 (N.D. W.V. 2019) ......................................................passim

*United States v. Fokker Services, B.V.*,
    79 F. Supp. 3d 160 (D.D.C. 2015) .........................................................9, 10, 11, 13

*United States v. Fokker Services, B.V.*,
    818 F. 3d 733 (D.C. Cir. 2016) ...............................................................................8

*United States v. Hasting*,
    461 U.S. 499 (1983)........................................................................................passim

*United States v. HSBC Bank USA*,
    2013 WL 3306161 (E.D.N.Y. July 1, 2013) .................................................passim

*United States v. Nixon*,
    418 U.S. 683 (1974).................................................................................................7

*United States v. Orthofix, Inc.*,
    956 F. Supp. 2d 316 (D. Mass. 2013) .....................................................................7

*United States v. Payner*,
    447 U.S. 727 (1980).............................................................................................3, 4

*United States v. Saena Tech Corp.*,
    140 F. Supp. 3d 11 (D.D.C. 2015) ............................................................6, 8, 9, 12

iv

*United States v. Trucking Emp'rs, Inc.,*
    561 F.2d 313 (D.C. Cir. 1977) ................................................................. 7

*United States v. WakeMed,*
    2013 WL 501784 (E.D.N.C. Feb. 8, 2013) .......................................... 9, 10

*United States v. Webster,*
    162 F.3d 308 (5th Cir. 1998) ................................................................... 7

*United States. v. Townsend,*
    2016 WL 5415411 (E.D. Cal. Sept. 27, 2016) ...................................... 10

Other Authorities

Brandon L. Garrett, *Structural Reform Prosecution,*
    93 VA. L. REV. 853 (2007) ........................................................................ 6

*Criminal Law—Separation of Powers—D.C. Circuit Holds that Courts May Not Reject Deferred
    Prosecution Agreements Based on the Inadequacy of Charging Decisions or Agreement
    Conditions—United States v. Fokker Services B.V.,*
    130 HARV. L. REV. 1048 (2017) ................................................................. 6

Mary Miller, *More than Just a Potted Plant: A Court's Authority to Review Deferred Prosecution
    Agreements Under the Speedy Trial Act and Under Its Inherent Supervisory Power,*
    115 MICH. L. REV. 135 (2016) ............................................................... 7, 8

Peter R. Reilly, *Corporate Deferred Prosecution as Discretionary Injustice,*
    2017 UTAH L. REV. 839 (2017) ................................................................. 4

Rules

Fed. R. Crim. P. 10 ...................................................................................... 4

Fed. R. Crim. P. 11(c)(3) .............................................................................. 6

Fed. R. Crim. P. 60(b) .................................................................................. 1

Statutes

18 U.S.C. § 371 ............................................................................................ 8

18 U.S.C. § 3161(h) ..................................................................................... 8

18 U.S.C. § 3771 .......................................................................................... 1

18 U.S.C. § 3771(a) ................................................................................... 11

**MOTION OF NAOISE CONNOLLY RYAN, AS REPRESENTATIVE OF MICHAEL RYAN; EMILY CHELANGAT BABU AND JOSHUA MWAZO BABU, AS REPRESENTATIVES OF JARED BABU MWAZO; CATHERINE BERTHET, AS REPRESENTATIVE OF CAMILLE GEOFFROY; HUGUETTE DEBETS, AS REPRESENTATIVE OF JACKSON MUSONI; LUCA DIECI, AS REPRESENTATIVE OF PAOLO DIECI; BAYIHE DEMISSIE, AS REPRESENTATIVE OF ELSABET MINWUYELET WUBETE; SRI HARTATI, AS REPRESENTATIVE OF ERYANTO; ZIPPORAH KURIA, AS REPRESENTATIVE OF JOSEPH KURIA WAITHAKA; JAVIER DE LUIS, AS REPRESENTATIVE OF GRAZIELLA DE LUIS Y PONCE; NADIA MILLERON AND MICHAEL STUMO, AS REPRESENTATIVES OF SAMYA STUMO; CHRIS MOORE, AS REPRESENTATIVE OF DANIELLE MOORE; PAUL NJOROGE, AS REPRESENTATIVE OF CAROLYNE NDUTA KARANJA, RYAN NJUGUNA NJOROGE, KELLI W. PAULS, AND RUBI W. PAULS; YUKE MEISKE PELEALU, AS REPRESENTATIVE OF RUDOLF PETRUS SAYERS; JOHN KARANJA QUINDOS, AS REPRESENTATIVE OF ANNE WANGUI KARANJA; GUY DAUD ISKANDAR ZEN S., AS REPRESENTATIVE OF FIONA ZEN;  AND OTHER SIMILARLY SITUATED REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 UNDER THE CRIME VICTIMS' RIGHTS ACT FOR EXERCISE OF THIS COURT'S SUPERVISORY POWER OVER THE DEFERRED PROSECUTION AGREEMENT**

COME NOW Naoise Connolly Ryan, Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, Guy Daud Iskandar Zen S., and others similarly situated (hereinafter referred to collectively as "the victims' families"), through undersigned counsel, to move this Court to exercise its supervisory power over the Boeing Deferred Prosecution Agreement, Dkt. Entry ("DE") #4 ("DPA").

The victims' families have contemporaneously filed a motion for enforcement of their rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"). In this separate motion, authorized by Fed. R. Crim. P. 60(b) and other bodies of law, the victims' families move this Court to exercise its supervisory powers over the DPA.

## <u>INTRODUCTION</u>

For more than two years defendant Boeing conspired to defraud the Federal Aviation Administration ("FAA"). The tragic results of that conspiracy cannot be in doubt. Boeing hid safety problems from the FAA and thus directly and proximately caused two horrific crashes of Boeing 737 Max aircraft, that killed 346 passengers and crew members. *See, e.g.,* DE #4, Statement of Facts ("SOF") ¶¶ 48, 53.

As explained in the Motion of Naoise Connolly Ryan et al. Under the Crime Victims' Rights Act for Findings that the Proposed Boeing Deferred Prosecution Agreement Was Negotiated in Violation of the Victims' Rights and For Remedies for those Violations ("CVRA Mot."), the Government and Boeing negotiated the DPA in violation of the CVRA. In this motion, the victims' families seek relief based on a different legal principle. The DPA before this Court grants Boeing *immunity* for any criminal prosecution for its crimes recounted in the Statement of Facts. This Court should carefully scrutinize such an expansive DPA. This Court possesses supervisory power over the DPA, and it should exercise that power to address the DPA's failure to provide any criminal accountability for Boeing.

In this motion, the victims' families ask this Court to use its supervisory powers to ensure that, before the DPA is finally approved, it is negotiated transparently to assure the victims' families that Boeing will be held fully and appropriately accountable for its crimes that resulted in the deaths of hundreds of victims. The victims' families request that this Court direct the Government and Boeing to respond, permit the families to reply, and then hold an oral argument where the victims' families can be heard, through counsel, on this motion.

## **FACTUAL BACKGROUND**

The victims' families adopt and incorporate by reference as if set forth fully herein the "Factual Background" section of their CVRA Motion.  From those facts, this Court can determine the issues at hand. If any of the facts the families proffer is disputed,[1] the victims' families request an evidentiary hearing to establish the relevant facts.

## **ARGUMENT**

This Court has the authority to review and withhold its approval of the Boeing DPA pursuant to its supervisory powers. It is well-settled that the proper administration of justice requires that federal courts have certain inherent unenumerated powers. *See*, *e.g.*, *United States v. Payner*, 447 U.S. 727, 735 n.7 (1980) (quoting *McNabb v. United States*, 318 U.S. 332, 340 (1943)) (explaining that the supervisory power permits courts to supervise "'the administration of criminal justice' among parties before the bar"); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 264 (1988) (Scalia, J., concurring) ("[E]very United States court has an inherent supervisory authority over the proceedings conducted before it[.]").

There are three core "purposes underlying the use of the supervisory powers." *United States v. Hasting*, 461 U.S. 499, 505 (1983). First, courts may use such powers to "implement a remedy for violation of recognized rights[.]" Second, courts may use their supervisory powers "as a remedy designed to deter illegal conduct …." *Id. Finally,* courts may—and in some cases must—employ their supervisory powers "to preserve judicial integrity …." *Id.*

---

[1] In the DPA, Boeing expressly agreed "that it shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts."  *See* DPA at p. 20, ¶ 32. In light of that binding commitment, we assume that Boeing (and, likewise, the Government) will not contest the factual recitations contained in the "Factual Background" section of the victims' families' CVRA Motion.

Protecting judicial integrity is perhaps the most-cited and invoked purpose of courts' supervisory powers. *See United States v. Clem*, 422 F. Supp. 3d 1105, 1114 (N.D. W.V. 2019) (explaining that "[a] primary purpose of the court's supervisory power is to protect the integrity of judicial proceedings"). *Accord Payner*, 447 U.S. at 735 n.8 (explaining that supervisory power serves, among other things, the purpose of "protecting judicial integrity"). Federal courts not only have the ability but, in some instances, the *duty* to protect the integrity of judicial proceedings. *See, e.g.*, *Hasting*, 461 U.S. at 526 (Brennan, J., concurring in part) (noting "the duty of reviewing courts to preserve the integrity of the judicial process"); *Maerosh v. United States*, 352 U.S. 1, 14 (1956) (explaining that courts have a "duty" to "see that the waters of justice are not polluted").

On January 7, 2021, the Government filed its felony information against Boeing. DE #1. Immediately thereafter, Boeing filed the DPA. DE #4. Immediately after that, both parties filed a joint motion for exclusion of time under the Speedy Trial Act. DE #5. Seventeen days later, on January 24, 2020, this Court granted that motion. DE #13. But the Court's approval of an extension of the Speedy Trial Act's deadlines does not end this Court's obligations.[2] As one district court has explained, "approving the exclusion of delay during the deferral of prosecution is not synonymous with approving the deferral of prosecution itself." *United States v. HSBC Bank USA*, 2013 WL 3306161, at *4 (E.D.N.Y. July 1, 2013). Indeed, for decades, the government has impliedly recognized courts' broad authority—beyond that granted by the Speedy Trial Act—to withhold approval of DPAs. In DPAs filed with courts across the country, the government acknowledged that courts could accept or reject a DPA "for any reason." *See* Peter R. Reilly, *Corporate Deferred Prosecution as Discretionary Injustice*, 2017 UTAH L. REV. 839, 857–59 (2017) (collecting several

---

[2] In a contemporaneously filed motion, the victims' families explain that this Court is also obligated to publicly arraign Boeing under Fed. R. Crim. P. 10.

DPAs filed by the Justice Department stating that the agreement "must be approved by the Court"). Here, the proper administration of justice requires that this Court withhold its approval until the Government confers with the victims' families and modify the DPA to properly reflect the concerns of those forced to suffer the tragic and lethal consequences of Boeing's crimes.

### I.  This Court Is Empowered to Review and Withhold Approval of the DPA Pursuant to its Supervisory Powers.

Judicial review of DPAs falls squarely within federal courts' supervisory powers because DPAs directly implicate *all* of the principles and goals identified in *Hasting* and its progeny. First, DPAs may violate recognized rights, including the rights of victims and defendants. *See HSBC Bank*, 2013 WL 3306161, at \*6–\*7. Here, as explained in a separate motion, the DPA violates the rights of the victims' families because, among other things, the DPA was entered without the required consultation and conferral with victims mandated by the CVRA. Indeed, the Justice Department affirmatively violated the victims' families' rights to fair treatment and respect for their dignity by misleading the victims about its on-going negotiations.

Second, judicial review of DPAs deters illegal conduct. Among other things, a DPA implicates the court in assessing appropriate punishment and monitoring the implementation of the DPA's terms. Here, for example, the Boeing DPA contains an explicit assessment of the appropriate punishment for Boeing's criminal conduct. Indeed, it expressly cites the U.S. Sentencing Guidelines as a basis for the calculation of the fine to be paid by Boeing. *See* DPA at 7 (imposing the minimum penalty available under the Guidelines).

Third, and perhaps most important, DPAs implicate the integrity of judicial proceedings. For example, a DPA can undermine judicial integrity if it violates the rights of victims or if it does not properly consider all consequences of the defendant's crimes. *See, e.g.*, *Clem*, 422 F. Supp. 3d at 1115. Moreover, the government effectively asks the court "to place its formal imprimatur on

the agreement[,] to hold open [a] federal criminal case[,] and to make various findings with respect to the Speedy Trial Act." *United States v. Saena Tech Corp.*, 140 F. Supp. 3d 11, 33 (D.D.C. 2015). In this regard, a DPA is not merely an out-of-court agreement between the parties, but a filed court document that invites—and, if accepted by the court—carries the judiciary's substantive stamp of approval.

Judicial review of DPAs also promotes the constitutional separation of powers. Relegating courts to a mere rubber-stamp role on DPAs effectively grants prosecutors judicial and legislative powers. *See*, *e.g.*, *Criminal Law—Separation of Powers—D.C. Circuit Holds that Courts May Not Reject Deferred Prosecution Agreements Based on the Inadequacy of Charging Decisions or Agreement Conditions—United States v. Fokker Services B.V.*, 130 HARV. L. REV. 1048, 1054–55 (2017) (explaining that allowing prosecutors broad discretion over DPAs would arrogate to the executive branch powers properly and traditionally belonging to the judicial and legislative branches); Brandon L. Garrett, *Structural Reform Prosecution*, 93 VA. L. REV. 853, 936 (2007) (noting that DPAs and other similar tools allow prosecutors to "step[ ] far outside of their traditional role of obtaining convictions" and instead "seek to reshape the governance of leading corporations"). Judicial review of DPAs, therefore, protects and promotes the traditional separation of powers by, among other things, preserving the judiciary's traditional role in assessing adequate punishment.

To delineate the court's role in reviewing a DPA, it is instructive to consider the court's analogous role in reviewing plea agreements. It is well-settled that courts have the authority to review and, if necessary, reject plea agreements. *See* Fed. R. Crim. P. 11(c)(3); *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("A court may reject a plea in the exercise of sound judicial discretion."); *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977) (explaining that a district

court may properly reject a plea agreement that results in "too light a sentence under the circumstances").

Like a plea agreement, a DPA necessarily entails an assessment of "the adequacy of punishment," which is a "traditional judicial function." Mary Miller, *More than Just a Potted Plant: A Court's Authority to Review Deferred Prosecution Agreements Under the Speedy Trial Act and Under Its Inherent Supervisory Power*, 115 MICH. L. REV. 135, 167 (2016) (citation omitted). *See also United States v. Webster*, 162 F.3d 308, 339 (5th Cir. 1998) (explaining that a district court's inherent supervisory authority "must extend to the sentencing phase of a trial"). And as with a plea agreement, if a court rejects a DPA, the government can try the case, negotiate a new DPA, or dismiss the charges. Finally, both plea agreements and DPAs involve the need to protect judicial integrity as well as the public interest. *See United States v. Orthofix, Inc.*, 956 F. Supp. 2d 316, 323 (D. Mass. 2013) (explaining that a court's role in reviewing a plea agreement is "zealously to protect the public interest").[3]

It is also just as instructive to consider the fundamental *differences* between DPAs and prosecutorial charging decisions. Certainly, charging decisions, including decisions *not* to prosecute, are in the prosecution's discretion. *See*, *e.g.*, *United States v. Nixon*, 418 U.S. 683, 693 (1974). But a DPA differs from a decision not to prosecute in several fundamental respects.

First, unlike a non-prosecution decision or a non-prosecution agreement, a DPA involves the filing of charges and the initiation of a formal criminal proceeding. Here, for example, the

---

[3] Similar principles inform judicial review of consent decrees between the government and a defendant. *See*, *e.g.*, *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("[A] federal consent decree must . . . further the objectives of the law upon which the complaint was based."); *United States v. Trucking Emp'rs, Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977) ("[P]rior to approving a consent decree a court must satisfy itself of the settlement's 'overall fairness to beneficiaries and consistency with the public interest.'") (quoting *United States v. Allegheny Ludlum Indus.*, 517 F.2d 826, 850 (5th Cir. 1975)).

government has charged Boeing with Conspiracy to Defraud the United States under 18 U.S.C. § 371. *See* DE 5 ¶ 4. Built into every DPA—including this one—is a criminal prosecution that will remain pending for months or years. Here, the charges will remain pending for at least three years.

Second, a DPA implicates the court in supervising the DPA. For example, Boeing's DPA envisions that in about three years the Justice Department will "seek dismissal with prejudice of the Information filed against [Boeing] . . . ." DPA at 16. That motion will require the Court to make a substantive determination about whether to grant or deny the dismissal. In other words, this DPA will require this Court "[to] become [an] instrument of law enforcement." *McNabb v. United States*, 318 U.S. 332, 347 (1943); *see also* Miller, *supra*, 115 MICH. L. REV. at 165 ("Broad executive power to decline to prosecute is categorically different from the decision to negotiate a DPA, where charges will be brought and courts will be tasked with enforcing them.").

Finally, unlike a decision not to prosecute or a non-prosecution agreement, a *deferred* prosecution agreement indisputably *requires* judicial review and approval to go into effect. *See* 18 U.S.C. § 3161(h).[4] Although relatively few courts have directly analyzed the extent of their authority to review DPAs, many courts that have squarely addressed the issue have held that such review is proper and warranted. As one court explained, the parties to a DPA choose "to implicate the Court in their resolution of th[e] matter." *HSBC Bank*, 2013 WL 3306161 at *5. And "a pending federal criminal case is not window dressing[,] [n]or is the Court, to borrow a famous phrase, a potted plant." *Id*.; *accord Clem*, 422 F. Supp. 3d at 1113 ("[T]he Court cannot agree that its role is limited to simply approving a delay under the Speedy Trial Act."); *Saena Tech Corp.*, 140 F. Supp.

---

[4] For this reason, it appears that the D.C. Circuit panel in *Fokker* erred in treating DPAs as analogous to non-prosecution agreements or decisions not to prosecute. *See United States v. Fokker Services, B.V.*, 818 F. 3d 733, 742 (D.C. Cir. 2016). For the reasons outlined in the main text, DPAs are much more closely analogous to plea agreements, for which judicial review is well established.

3d at 33; *United States v. WakeMed*, 2013 WL 501784, at *2 (E.D.N.C. Feb. 8, 2013).

While *charging decisions* are in the sole discretion of the government, judicial review of DPAs is a proper and necessary exercise of judicial authority. *See, e.g., Saena Tech Corp.*, 140 F. Supp. 3d at 33 (explaining that unlike "an outright grant of immunity, a decision not to prosecute, or a non-prosecution agreement," a DPA requires direct and substantive involvement from the court); *United States v. Fokker Services, B.V.*, 79 F. Supp. 3d 160, 165 (D.D.C. 2015) (analyzing the difference between a court's role in reviewing DPAs and a court's deference to prosecutors' charging decisions).

## II. In Reviewing a DPA, a Court Must Consider Multiple Factors Including Judicial Integrity and the DPA's Impact on Victims.

A court possesses the authority to review a DPA pursuant to the Speedy Trial Act in addition to its inherent supervisory powers. The standards governing a district court's review of a DPA are shaped partly by the source of the court's authority to conduct its review.

Under the Speedy Trial Act, the core determination is "whether a deferred prosecution agreement is truly about diversion and not simply a vehicle for fending off a looming trial date." *HSBC Bank*, 2013 WL 3306161, at *3 (citing the statutory text and legislative history); *accord Clem*, 422 F. Supp. 3d at 1114–15. To make such a determination, courts may consider the "reasonableness of any fines or other punitive measures[,]" the existence or lack thereof of "independent corporate monitors to supervise compliance[,]" and the "potential collateral consequences of the agreement" to determine whether the DPA can "be said to be designed to secure a defendant's reformation[.]" *Saena Tech Corp.*, 140 F. Supp. 3d at 31. For example, "[a]n agreement that contain[s] neither punitive measures (such as fines) nor requirements designed to deter future criminality (such as compliance programs and independent monitors) could not be said to be designed to secure a defendant's reformation and should be rejected. Even an agreement

9

that contained some of these elements could be ineffective if the obligations were found to be so vague or minimal as to render them a sham." *Id.*

For the court's inherent supervisory powers, the scope of review is even broader.[5] Namely, the court must consider whether the DPA violates any recognized rights, preserves judicial integrity, and deters illegal conduct. *See Hasting*, 461 U.S. at 50. Indeed, with at least one court-approved DPA,  both the court and the government indicated that approval of a DPA requires consideration of whether deferred prosecution is in "the interests of justice." *See United States. v. Townsend*, 2016 WL 5415411 (E.D. Cal. Sept. 27, 2016) (approving a DPA that, among other things, contended that deferred prosecution would serve "the interests of justice").

Accordingly, courts reviewing DPAs pursuant to their inherent supervisory powers have considered: whether victims of the defendant's conduct were properly notified, *see Clem*, 422 F. Supp. 3d at 1115; whether the DPA properly considered all consequences of the defendant's conduct, *see id.*; whether the DPA's substantive provisions would undermine public confidence in the judicial process, *see Fokker Servs.*, 79 F. Supp. 3d at 167; whether the DPA's monitoring and financial penalty provisions were proportionate to the defendant's conduct, *see id.*; the impact of the defendant's actions on victims, *see WakeMed*, 2013 WL 501784, at \*2; and "the seriousness of the defendant's offense [weighed] against the potential harm to innocent parties that could result should this prosecution go forward." *Id*.

When a court finds that a DPA does not merit approval, for example because approving the DPA would undermine judicial integrity, the court may decline to approve the DPA and state its reasons for withholding approval. *See, e.g., Clem*, 422 F. Supp. 3d at 1116 (declining to approve a

---

[5] As noted above, "approving the exclusion of delay during the deferral of prosecution is not synonymous with approving the deferral of prosecution itself." *See HSBC Bank USA*, 2013 WL 3306161, at \*4.

DPA because, among other things, "without any proposed compliance monitoring or oversight of Defendants by an agency or administrative body capable of enforcing meaningful sanctions, the integrity of the Court is implicated").

### III. This Court Should Withhold Its Approval of the Boeing DPA because it Violated Victims' Rights, Fails to Adequately Deter Criminal Conduct, and Undermines the Integrity of Judicial Proceedings.

Here, this Court's substantive review of the Boeing DPA is warranted.  The DPA implicates this Court's supervisory powers by creating a federal criminal proceeding, requesting that this Court supervise this proceeding for at least three and a half years, asking this Court to place its formal imprimatur on the agreement, and tasking the Court with monitoring the DPA's provisions.

This Court should withhold its approval of the DPA for several reasons. First, the DPA was entered into in "violation of recognized rights." *Hasting*, 461 U.S. at 505. As explained in the victims' families' separate motion on the subject, the DPA violated the victims' families' rights under the CVRA, including the "right to inform the plea negotiation process by conferring with prosecutors before a plea agreement is reached." *In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008); *see also* 18 U.S.C. § 3771(a) (providing that crime victims have, among other rights, "[t]he reasonable right to confer with the attorney for the Government in the case" and "[t]he right to be informed in a timely manner of any plea bargain or deferred prosecution agreement"). Simply put, the DPA was illegally entered with *no* meaningful conferral with the family member victims.

Second, the DPA's substantive provisions undermine the integrity of judicial proceedings and fail to adequately deter criminal conduct. *See Fokker Servs.*, 79 F. Supp. 3d at 167 (rejecting DPA as unduly lenient). As detailed above, Boeing's rushed rollout of the MAX not only involved deceitful communications with the FAA but directly and proximately resulted in the preventable deaths of 346 people. What is more, even after the deadly crash of Lion Air Flight 610, Boeing

still refused to rectify its deceit, acknowledge its culpable conduct, or comply with its duties to the FAA and the public. Instead, Boeing doubled down on its deadly campaign to downplay the fatal risks posed by MCAS which ultimately resulted in the crash of Ethiopian Airlines Flight 302 and the needless loss of an additional 157 lives. The DPA's monitoring and penalty requirements grossly fail to reflect the seriousness of Boeing's criminal conduct and its deadly impact on victims. As one court explained, when a DPA is "an especially unfair or lenient agreement[,]" a court's integrity is implicated "and therefore justif[ies] rejection." *Saena Tech Corp.*, 140 F. Supp. 3d at 35.

In addition, unlike other recent DPAs, the Boeing DPA before this Court expressly forgoes the requirement of an independent compliance monitor. *See* DPA at 6. Instead, the DPA's reporting provisions merely require Boeing to conduct its own internal review and then submit its own periodic updates to the government. The fundamental weakness of the DPA's reporting provisions undermines the integrity of the judicial proceedings and represents a failure to deter criminal conduct. *See Clem*, 422 F. Supp. 3d at 1116 (rejecting a DPA because "without any proposed compliance monitoring or oversight of Defendants by an agency or administrative body capable of enforcing meaningful sanctions, the integrity of the Court is implicated."); *see also Saena Tech Corp.*, 140 F. Supp. 3d at 31 (finding that an agreement without "requirements designed to deter future criminality (such as compliance programs and independent monitors) should be rejected.").

Moreover, the purported justification for these minimal reporting requirements further undermines judicial integrity. The DPA explains that lax reporting requirements are warranted because "the misconduct was [not] pervasive across the organization . . . nor facilitated by senior management." DPA at 6. But this explanation is directly contradicted by publicly available evidence from multiple government investigations that shows Boeing's misconduct pervaded all

of the teams responsible for obtaining regulatory approval of the MAX.[6] Surely, if the victims' families had been afforded the conferral opportunity required by the CVRA, they would have conveyed to the government the gravity and pervasiveness of Boeing's culpable conduct, and the DPA would likely have been shaped differently.

Accordingly, this Court should withhold approval of the DPA, pending (1) the government's compliance with its obligation to confer with the victims about modifications to the DPA, and (2) modifications rendering the DPA's penalty and monitoring provisions commensurate with Boeing's crimes. *See Clem*, 422 F. Supp. 3d at 1115–16 (articulating reasons for disapproval); *Fokker Servs.*, 79 F. Supp. 3d at 167 (same).

## CONCLUSION

For the reasons explained above, the victims' families request this Court use its supervisory powers to ensure that justice is properly administered. Here, the proper administration requires that, before the DPA is finally approved, the DPA is negotiated transparently, accords with the right for the victims' families to confer, and is modified to contain penalty and monitoring provisions commensurate with Boeing's crimes.

Dated: December 16, 2021

---

[6] *See, e.g.*, House Transportation Committee, Final Committee Report: The Design, Development and Certification of the Boeing 737 MAX, at 146–158 (Sept. 2020) (detailing widespread efforts and internal pressures at Boeing to ensure that the FAA's Aircraft Evaluation Group did not require additional simulator training for the MAX).

Respectfully submitted,

/s/ Warren T. Burns
_____

_____

Warren T. Burns (Texas Bar No. 24053119)
Burns Charest, LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice* application to be filed)

*Attorneys for Victims' Families*

## <u>CERTIFICATE REGARDING CONFERENCE</u>

The victims' families are aware of Local Rule 47.1 regarding motion practice. This rule requires the "parties" in a criminal case to comply with various requirements, including a conferral regarding a motion. Because the victims' families are not "parties" to this criminal case—e.g., United States v. Boeing—the victims' families do not believe that the conferral requirement applies to this motion. They are proceeding pursuant to separate authority for asserting crime victims' rights contained in the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(3) and Fed. R. Crim. P. 60. Nonetheless, out of an abundance of caution, contemporaneously with filing this motion, the victims' families have contacted the Government and Boeing about this motion. Given the nature of this motion, the victims' families believe that their motion is not unopposed, but they will promptly advise the Court if that understanding is mistaken

/s/ Warren T. Burns
Warren T. Burns

## <u>CERTIFICATE OF SERVICE</u>

    I certify that on December 16, 2021, the foregoing document was served on the parties to the proceedings via the court's CM/ECF filing system.


<u>/s/ Warren T. Burns</u>
Warren T. Burns