IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **No. 4:21-CR-00005-O** |
| THE BOEING COMPANY | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO THE MOTION
FILED BY REPRESENTATIVES OF CERTAIN CRASH VICTIMS OF
LION AIR FLIGHT 610 AND ETHIOPIAN AIRLINES FLIGHT 302
FOR FINDINGS THAT THE DEFERRED PROSECUTION AGREEMENT
WAS NEGOTIATED IN VIOLATION OF THE CRIME VICTIMS' RIGHTS ACT**

## TABLE OF CONTENTS

I.   Factual Background ....................................................................................................... 2

     A.   Boeing's Illegal Conduct ..................................................................................... 3

     B.   The DPA ............................................................................................................... 5

     C.   Relevant Procedural History ............................................................................... 7

II.   Argument ...................................................................................................................... 8

     A.   The Lion Air and Ethiopian Airlines Crash Victims Are Not CVRA
         "Crime Victims." ................................................................................................. 9

     B.   The Court Should Deny the Remedies Sought by the Movants. .......................... 14

     C.   Communications with the Victims' Rights Ombudsman and the
         Government............................................................................................................ 18

III.   The Movants' Motions Should Be Denied Without an Evidentiary Hearing. ................... 19

CONCLUSION ........................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*In re Amy Unknown*,
    701 F.3d 749 (5th Cir. 2012) (en banc), *vacated on other grounds sub nom.*
    *Paroline v. United States*, 572 U.S. 434 (2014)..................................................... 15

*In re Antrobus*,
    519 F.3d 1123 (10th Cir. 2008) ........................................................................ 11

*In re Dean*,
    527 F.3d 391 (5th Cir. 2008) ............................................................................ 12

*In re Doe*,
    264 F. App'x 260 (4th Cir. 2007) ..................................................................... 11

*In re Fisher*,
    640 F.3d 645 (5th Cir. 2011) ...................................................................... 5, 9, 11

*In re McNulty*,
    597 F.3d 344 (6th Cir. 2010) ...................................................................... 11, 12

*In re Wild*,
    994 F.3d 1244 (11th Cir. 2021) (en banc), *petition for cert. filed*, No. 21-351
    (Aug. 31, 2021)................................................................................................ 10

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
    414 U.S. 453 (1974).......................................................................................... 16

*Paroline v. United States*,
    572 U.S. 434 (2014)....................................................................................... 9, 11

*Sandifer v. Gusman*,
    637 F. App'x 117 (5th Cir. 2015) ..................................................................... 18

*Smith v. O'Brien*,
    59 F.3d 1241 (Tbl.), 1995 WL 413052 (5th Cir. Jun 19, 1995) ........................... 19

*United States ex rel. Eisenstein v. City of New York*,
    556 U.S. 928 (2009).......................................................................................... 15

*United States v. Aguirre-Gonzalez*,
    597 F.3d 46 (1st Cir. 2012)............................................................................... 15

*United States* v. *Alcatel-Lucent France, S.A.*,
    688 F.3d 1301 (11th Cir. 2012) ........................................................................ 15

*United States v. Battista,*
    575 F.3d 226 (2d Cir. 2009) ........................................................................... 9

*United States v. BP Prod. N. Am. Inc.,*
    610 F. Supp. 2d 655 (S.D. Tex. 2009) ........................................................... 10

*United States v. BP Prods. N. Am. Inc.,*
    No. H-07-434, 2008 WL 501321 (S.D. Tex. Feb. 21, 2008) ............................ 12

*United States v. Dean,*
    100 F.3d 19 (5th Cir. 1996) ........................................................................... 19

*United States v. Fokker Services B.V.,*
    818 F.3d 733 (D.C. Cir. 2016) ................................................................... 5, 17

*United States v. Hunter,*
    No. 2:07-CR-307, 2008 WL 110488 (D. Utah Jan. 8, 2008), *mandamus pet.*
    *denied, In re Antrobus,* 563 F.3d 1092 (10th Cir. 2009) ............................... 18

*United States v. Kim,*
    988 F.3d 803 (5th Cir. 2021) ........................................................................... 5

*United States v. Kovall,*
    857 F.3d 1060 (9th Cir. 2017) ....................................................................... 16

*United States v. LaBonte,*
    520 U.S. 751 (1997) ....................................................................................... 17

*United States v. MMR Corp.,*
    954 F.2d 1040 (5th Cir. 1992) ....................................................................... 19

*United States v. Moussaoui,*
    483 F.3d 220 (4th Cir. 2007) ......................................................................... 18

*United States v. Razzouk,*
    984 F.3d 181 (2d Cir. 2020), *cert. denied,* 142 S. Ct. 223 (2021) .................... 9

*United States v. Rubin,*
    558 F. Supp. 2d 411 (E.D.N.Y. 2008) ........................................................... 17

*United States v. Spinney,*
    795 F.2d 1410 (9th Cir. 1986) ....................................................................... 10

*United States v. Takata Corp.,*
    No. 16-CR-20810, 2021 WL 4962138 (E.D. Mich. Oct. 26, 2021) .................. 14

**Statutes and Rules**

18 U.S.C. § 371 ................................................................................................................. 5

18 U.S.C. § 1343 ............................................................................................................. 14

18 U.S.C. § 3663 ............................................................................................................. 11

18 U.S.C. § 3663A ................................................................................................... 1, 4, 5, 14

18 U.S.C. § 3771 ......................................................................................... 1, 5, 9, 15, 16, 17

Fed. R. Crim. P. 16 ......................................................................................................... 17

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) ............................................................................ 15

FEDERAL DEMOCRATIC REPUBLIC OF ETHIOPIA MINISTRY OF TRANSPORT, *Interim Investigation Report* ...................................................................................................... 12

KOMITE NASIONAL KESELAMATAN TRANSPORTASI, *Aircraft Accident Investigation Report* ................................................................................................................................. 12

Memorandum from the Deputy Attorney General, *Revision of the Attorney General Guidelines for Victim and Witness Assistance* (Oct. 1, 2021) .................................... 8

U.S.J.M. § 9-27.220 ........................................................................................................ 10

U.S.J.M. § 9-28.300 ........................................................................................................ 10

UNITED STATES SENTENCING COMMISSION *Primer on Crime Victims' Rights 2021* ..................... 9

The United States of America (the "Government") recognizes the indescribable and irreparable losses suffered by the representatives of eighteen crash victims of Lion Air Flight 610 and Ethiopian Airlines Flight 302 (the "Movants") and the losses suffered more generally by the loved ones of the 346 people who perished on those flights.  Nothing will ever make up for these losses.

Recognizing that fact, the Government never forgot or ignored those individuals as it worked to resolve this case.  The Government negotiated a Deferred Prosecution Agreement ("DPA")[1] with The Boeing Company ("Boeing") that recognized these losses and provided compensation and assistance to the crash victims' beneficiaries above and beyond what the law—including the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, or any other law—compelled.  Namely, the Government required Boeing to establish a $500 million fund to compensate the crash victims' beneficiaries, which supplements any damages that they may recover through civil litigation.  The DPA also prevented Boeing from ever disputing certain facts relating to a new part of the Boeing 737 MAX and Boeing's fraudulent misrepresentations to the Federal Aviation Administration ("FAA") Aircraft Evaluation Group about that part.  In these ways, the DPA provided some benefits to the crash victims' beneficiaries.

Nevertheless, the Government apologizes for not meeting and conferring with these crash victims' beneficiaries before entering into the DPA, even though it had no legal obligation to do

---

[1] Citations to "DPA" and "SOF" refer to the Deferred Prosecution Agreement entered into between the Government and The Boeing Company and the incorporated Statement of Facts, respectively, filed together at Dkt. 4, and, where appropriate, are followed by the relevant paragraph number; "Dkt." refers to the docket entries in this case and, where appropriate, is followed by the relevant page number; "Forkner Dkt." refers to docket entries in the related case pending before this Court, *United States v. Forkner*, No. 4:21-CR-00268 (N.D. Tex.), and, where appropriate, is followed by the relevant page number.

so.  Even if such consultations would not have changed the DPA, there is a chance that earlier consultation may have been able to provide these individuals with insight into the Government's approach toward corporate criminal prosecution and this case.  The Government has recently met with some of the Movants and their representatives to listen to their perspectives on the Boeing 737 MAX crashes and the DPA on January 10, 14, and 26, 2022, with the third of these three meetings involving the Attorney General.  The Department of Justice will continue to learn from this and other cases when determining what revisions to its internal policies, guidelines, and practices are warranted.

None of this, however, means that this Court should grant the Movants' motions for findings that the DPA was negotiated in violation of the CVRA and for certain remedies for those alleged violations.  Dkt. 52.  As explained below, the CVRA does not authorize the extraordinary relief that the Movants seek here, nor is such relief warranted in any event because the Movants are not "crime victims" under the CVRA.  Thus, as a legal matter, their motions should be denied.

## I.      Factual Background

The Government carefully investigated and weighed the potential charges it could bring against Boeing and believed it could prove beyond a reasonable doubt.  Throughout that process, it also endeavored to advocate for and compensate the families, heirs, and beneficiaries of the victims of the Lion Air Flight 610 and Ethiopian Airlines Flight 302 crashes.  Indeed, the Government went above and beyond its legal duties in this case to ensure that these crash victims' beneficiaries received millions of dollars in guaranteed monetary compensation from Boeing no matter the outcome of their lawsuits against the company.  Additionally, the admissions that Boeing made as part of the DPA placed the crash victims' beneficiaries in a favorable litigating position against Boeing in subsequent civil litigation.

A.      **Boeing's Illegal Conduct**

On October 29, 2018, Lion Air Flight 610 took off from Jakarta, Indonesia, and, shortly after takeoff, crashed into the Java Sea.  SOF ¶ 48.  None of the 189 crewmembers and passengers survived.  *Id*.  Similarly, on March 10, 2019, Ethiopian Airlines Flight 302 departed Addis Ababa, Ethiopia, and, shortly after takeoff, crashed.  *Id.* ¶ 53.  Again, none of the 157 passengers and crewmembers survived.  *Id.*  The extent of these tragedies and the suffering of the passengers, crewmembers, and their loved ones is indescribable.

Flights 610 and 302 both were serviced by the Boeing 737 MAX—a commercial airplane that was one of Boeing's best-selling airplane models.  SOF ¶¶ 4-5, 48, 53.  The 737 MAX included as part of its flight controls a new "Maneuvering Characteristics Augmentation System" ("MCAS"), which was initially designed to fix the plane's tendency to "pitch up" during a certain flight maneuver called a high-speed, wind-up turn.  *Id.* ¶¶ 20-23.  As Boeing agreed in the statement of facts accompanying the DPA, the FAA Aircraft Evaluation Group learned after the crashes that MCAS activated during the flights and may have played a role in the crashes.  *Id.* ¶¶ 49, 53.

As the statement of facts accompanying the DPA indicates, Boeing later represented different facts to different components of the FAA about when MCAS could activate.  SOF ¶ 25. In particular, Boeing had disclosed to FAA officials responsible for determining whether the 737 MAX met U.S. federal airworthiness standards that MCAS's operational scope had been expanded after its initial design and was no longer limited to activating only during high-speed flight, but instead could activate during nearly the entire speed range for the 737 MAX, including at low-speed flight.  *Id.*  But when the Boeing employee who was primarily tasked with interacting with a separate group of FAA officials responsible for determining pilot training requirements for U.S.-based airlines operating the 737 MAX learned that MCAS could activate during low-speed flight,

Page 3 of 20

he deliberately misled these FAA officials while withholding this new information. *Id.* ¶¶ 31-44. That deceit caused the FAA's pilot-training authorities to not include information about MCAS in pilot training requirements for U.S.-based airlines operating a Boeing 737 MAX. *Id.* ¶¶ 45-47.

Given all this, there was no doubt that Boeing had conspired to defraud the federal government when it deceived the FAA Aircraft Evaluation Group. DPA ¶ 1; Dkt. 1 at 1-2 (felony information). The Government's investigation, however, did not produce evidence that it believed would allow it to prove beyond a reasonable doubt what factors had caused the crashes of Lion Air Flight 610 and Ethiopian Airlines Flight 302. SOF ¶¶ 49, 53 (noting that the FAA learned that MCAS "*may have* played a role" in the plane crashes after they occurred (emphasis added)). In other words, the evidence in the record in this case does not prove beyond a reasonable doubt a direct and proximate connection between (1) Boeing's fraud on the FAA Aircraft Evaluation Group regarding MCAS and any potential impact on training for U.S.-based airlines and (2) the crashes of two flights in foreign countries, run by foreign airlines, overseen by foreign regulators, and flown by foreign pilots.

This left the Government in a challenging situation. Based on the evidence collected during the criminal investigation, it could prove that Boeing had conspired to defraud the FAA Aircraft Evaluation Group. Under the legal requirements of the federal restitution statutes, however, the Government believed that conviction on that count alone would not entitle the beneficiaries of the crash victims of Lion Air Flight 610 and Ethiopian Airlines Flight 302 to an order of restitution from Boeing at sentencing. 18 U.S.C. § 3663A(a)(1)-(2) (stating that, "when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense," and defining the term "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which

restitution may be ordered"); *see also, e.g.*, *United States v. Kim*, 988 F.3d 803, 811 (5th Cir. 2021) (explaining that the Mandatory Victims Restitution Act "authorizes restitution to a victim directly and proximately harmed by the defendant's offense of conviction" (internal quotation marks omitted)); *In re Fisher* ("*Fisher I*"), 640 F.3d 645, 647 (5th Cir. 2011) (explaining that restitution is limited to "crime victims," *i.e.*, those who are "directly and proximately harmed as a result of the commission of a Federal offense" (quoting 18 U.S.C. § 3771(e)). Moreover, the MVRA, 18 U.S.C. § 3663A, only applies in the event that there is a *conviction*, and the Government's considered judgment was—and remains—that a DPA, rather than a guilty plea, was the appropriate resolution for Boeing in this matter based on the facts and circumstances.[2] Thus, absent the Government's successful negotiation of the $500 million fund from Boeing through the DPA, the crash victims' beneficiaries would not be entitled to any compensation from Boeing as part of the corporate resolution.

## B.    The DPA

On January 7, 2021, the Government filed (1) a one-count criminal information (the "Information") charging Boeing with conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and (2) the final, executed DPA relating to that charge. Dkts. 1, 4. Under the terms

---

[2] A DPA is not an immunity agreement. Rather, as described in *United States v. Fokker Services B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016):

> In certain situations, rather than choose between the opposing poles of pursuing a criminal conviction or forgoing any criminal charges altogether, the Executive may conclude that the public interest warrants the intermediate option of a deferred prosecution agreement (DPA). Under a DPA, the government formally initiates prosecution but agrees to dismiss all charges if the defendant abides by negotiated conditions over a prescribed period of time. Adherence to the conditions enables the defendant to demonstrate compliance with the law. If the defendant fails to satisfy the conditions, the government can then pursue the charges based on facts admitted in the agreement.

of the DPA, the United States agreed to defer any prosecution of Boeing for defrauding the FAA Aircraft Evaluation Group so long as it complied with the conditions of the DPA for a three-year period.  *See* DPA ¶¶ 3, 20.  Should Boeing breach any of the conditions of the DPA—including its promise to distribute $500 million to the crash victims' beneficiaries and its promise not to contest the admissions it had made in the attached Statement of Facts—the Government has the discretion to prosecute Boeing for the crime charged in the Information.  *See* DPA ¶¶ 26-30.

The DPA conferred several significant benefits on the crash victims' beneficiaries.  Most significantly, the DPA required Boeing to establish a $500 million "Crash-Victim Beneficiaries" fund.  DPA ¶¶ 7, 13-19.  This fund was designed to provide "compensation to the heirs, relatives, and/or legal beneficiaries of the crash victims of Lion Air Flight 610 and Ethiopian Airlines Flight 302."  *Id.* ¶ 7.  The DPA required Boeing to set up a claims-handling system to distribute these funds and to bear all the costs associated with that process.  Id. ¶¶ 13-18.  And to date, more than $471 million—94 percent of the $500 million—has been disbursed from this fund to beneficiaries of 326 of the 346 crash victims, including all but two of the Movants.

The DPA also precluded Boeing from using the fact of these payments to prevent the fund's beneficiaries "from pursuing any other lawful claim that" they "might have against [Boeing]."  DPA ¶ 19.  The beneficiaries of the crash victims of Lion Air Flight 610 and Ethiopian Airlines Flight 302 may thus continue to try and hold Boeing civilly liable—a question on which the Government has never taken a stance—and, if successful, these crash victims' beneficiaries will recover the full scope of their expected damages.  If those claims should prove unsuccessful, the crash victims' beneficiaries will still have obtained some compensation for their loss and suffering.

Second, and relatedly, Boeing agreed not to make "any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company," including its admission

of the facts set forth in the Statement of Facts.  DPA ¶ 32.  That limitation provided all of the crash victims' beneficiaries with an advantageous position in future civil litigation with Boeing because Boeing could not relitigate any of the facts relating to its fraud on the FAA Aircraft Evaluation Group.  Indeed, in the wake of the DPA's publication, Boeing settled or proposed settling multiple civil suits brought by representatives of the crash victims and even made limited concessions of liability in some of these cases.  *See, e.g.*, *In re Ethiopian Airlines Flight ET 302 Crash*, No. 1:19-CV-02170 (N.D. Ill.); *In re Boeing Co. Deriv. Litig.*, C.A. No. 2019-0907-MTZ (Del. Ch.).

On the same day that the Government filed the criminal charge against Boeing and the DPA, the Government issued a press release publicly disclosing the criminal information, the DPA, and the creation of the crash victims' benefit fund.  *See* [Boeing Charged with 737 Max Fraud Conspiracy and Agrees to Pay over $2.5 Billion | OPA | Department of Justice](#).  The press release concluded with instructions for the crash victims' beneficiaries:  "Individuals who believe they may be an heir, relative, or legal beneficiary of one of the Lion Air Flight 610 or Ethiopian Airlines Flight 302 passengers in this case should contact the Fraud Section's Victim Witness Unit by email at:  Victimassistance.fraud@usdoj.gov or call (888) 549-3945."

C.    **Relevant Procedural History**

On December 16, 2021, nearly a year after the DPA was filed, and after virtually all of the crash victims' beneficiaries fund payments had been made, the Movants filed with this Court three motions seeking a declaration that the Government violated the CVRA when it negotiated the DPA with Boeing and a broad range of relief under the CVRA or this Court's inherent authority.  *See* Dkts. 15, 16, 18.  Among other things, the motions requested (1) an order directing the Government to meet and confer with the crash victims' families about their evidence, the Government's charging decisions, and ways of holding Boeing accountable, Dkt. 52 at 27; (2) an order compelling the Government to turn over its documents and evidence of Boeing's crimes to the

crash victims, *id.*; (3) an exercise of this Court's supervisory power over the DPA, *id.*; Dkt. 17 at 3-13; (4) an arraignment of Boeing and a hearing on its conditions of release, Dkt. 18 at 3-11; Dkt. 52 at 27; and (5) a referral of the Government's behavior to investigative authorities, Dkt. 52 at 27.

The Government thereafter met with some of the Movants and their representatives to listen to their perspectives on the crashes and the DPA. These meetings took place on January 10, 14, and 26, 2022, with the Attorney General attending the third of these three meetings. The Government appreciates the perspectives of the Movants, although it continues to stand by its previous charging decision and the DPA it negotiated with Boeing, as well as its charging decision in the related prosecution of Mark A. Forkner (who is presumed innocent unless and until proven guilty), the former Chief Technical Pilot who led Boeing's 737 MAX Flight Technical Team, who was indicted for wire fraud and fraud involving aircraft parts on October 14, 2021.

That said, the Department of Justice has been, for some months, working to revise its internal policies, guidelines, and practices.[3] The policies to be promulgated by the Deputy Attorney General's Working Group will ensure that if this situation arises in the future, consultation and notice will occur.

## II.   Argument

As a threshold matter, the Movants do not qualify as "crime victims" under the CVRA. But this Court need not reach that issue, for, as later explained, the CVRA remedies that Movants

---

[3] On October 1, 2021, the Deputy Attorney General directed the Department's Office of Legal Policy to reconvene the Department's Crime Victims Working Group to review and propose revisions to the Attorney General Guidelines for Victim and Witness Assistance. *See* Memorandum from the Deputy Attorney General, *Revision of the Attorney General Guidelines for Victim and Witness Assistance* (Oct. 1, 2021), *available at* https://www.justice.gov/dag/page/file/1438231/download.

seek are simply not available, nor are any of the requested non-CVRA sanctions warranted.  The unavailability of these remedies alone provides a basis for denying the Movants' motions, should this Court disagree with the Government's position on the CVRA's triggering language.

A.    **The Lion Air and Ethiopian Airlines Crash Victims Are Not CVRA "Crime Victims."**

The CVRA provides a "crime victim" with certain enumerated rights.  18 U.S.C. § 3771(a).  The statute narrowly and precisely defines a "crime victim" as a person who has been "directly and proximately harmed as a result of the commission of a Federal offense."  18 U.S.C. § 3771(e)(2)(A).  "A person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm."  *Fisher I*, 640 F.3d at 648.  "A person is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct."  *Id.*; *see also Paroline v. United States*, 572 U.S. 434, 444-45 (2014) ("Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct.").

The direct and proximate cause inquiries focus on the facts and circumstances of the offenses in a given case.  That approach is consistent with how courts approach other similarly worded victims' rights statutes.  *See, e.g.*, *United States v. Razzouk*, 984 F.3d 181, 188 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 223 (2021); *United States v. Battista*, 575 F.3d 226, 231 & n.4 (2d Cir. 2009).  Critically, "a person may not assert victim status because a defendant *could have* been charged with an additional offense or a different crime."  UNITED STATES SENTENCING COMMISSION *Primer on Crime Victims' Rights 2021* at 13 n.88.[4]  These limitations respect the CVRA's command that "[n]othing" in the statute "shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction," 18 U.S.C. § 3771(d)(6), and

---

[4] *Available at* https://www.ussc.gov/sites/default/files/pdf/training/primers/2021_Primer_Crime_Victims.pdf.

prevent courts from intruding upon the Executive Branch's exclusive charging domain, *see In re Wild*, 994 F.3d 1244, 1261 (11th Cir. 2021) (en banc) (plurality op.), *petition for cert. filed*, No. 21-351 (Aug. 31, 2021).

In light of the statutory definition, the Movants do not qualify as "crime victims" within the meaning of the CVRA. To bring a federal charge, a prosecutor must believe "that the person's conduct constitutes a federal offense, and that the admissible evidence will probably be sufficient to obtain and sustain a conviction" beyond a reasonable doubt. U.S.J.M. § 9-27.220; *see also* U.S.J.M. § 9-28.300 (noting that, "[g]enerally, prosecutors apply the same factors in determining whether to charge a corporation as they do with respect to individuals. Thus, the prosecutor must weigh all of the factors normally considered in the sound exercise of prosecutorial judgment: the sufficiency of the evidence; the likelihood of success at trial; the probable deterrent, rehabilitative, and other consequences of conviction; and the adequacy of noncriminal approaches," and that "due to the nature of the corporate 'person,' some additional factors are present." (citation omitted)). After completing its investigation, the Government had sufficient evidence to charge Boeing with a conspiracy to defraud the FAA Aircraft Evaluation Group. The Government did not charge Boeing with any form of federal negligent homicide in connection with the crashes of Lion Air Flight 610 and Ethiopian Airlines Flight 302.

In so stating, the Government takes no position on whether Boeing may be liable in a civil proceeding for the failure of its planes.[5] Rather, the Government's point is far more limited: the

---

[5] The applicable standards of proof for "proximate cause" notably differ in criminal law as compared with civil law. *United States v. BP Prod. N. Am. Inc.*, 610 F. Supp. 2d 655, 688 (S.D. Tex. 2009) ("[P]roximate causation in a criminal case presents a higher threshold for proof than proximate causation in a civil tort case"); *United States v. Spinney*, 795 F.2d 1410, 1416 n.2 (9th Cir. 1986) (rejecting the argument that the Restatement of Torts "provides a useful guideline for resolving the proximate cause issue in this case," because "[p]roximate cause analysis in crimes differs from tort analysis of causation.").

evidence here does not meet the proof demanded by the CVRA between the fraud on the FAA Aircraft Evaluation Group—which establishes standards only for U.S.-based airlines—and the horrific crashes in Ethiopia and Indonesia of planes operated by foreign airlines and flown by foreign pilots overseen by foreign regulators.  Put another way, the evidence in the record does not establish that (1) but for Boeing's conspiracy to defraud the FAA Aircraft Evaluation Group, Lion Air Flight 610 and Ethiopian Airlines Flight 302 would not have crashed; or that (2) any causal link on this front was reasonably "foreseeable" and not too attenuated.  *See Paroline*, 572 U.S. at 448; *cf. Fisher I*, 640 F.3d at 647-49 (rejecting a property developer's claim that a rival's conspiracy to bribe city officials rendered the developer a "crime victim" because he was not "the target of the crime" and had not shown that his competitor's conspiracy induced him to invest in these development projects (internal quotation marks omitted)); *In re McNulty*, 597 F.3d 344, 352 (6th Cir. 2010) (mandamus petitioner, fired and "blackball[ed]" for refusing to participate in antitrust conspiracy, was not a "crime victim" of that conspiracy because those harms were "ancillary to the actions involved in forming a conspiracy and restraining interstate commerce"); *In re Doe*, 264 F. App'x 260, 264 (4th Cir. 2007) (per curiam) (unpublished) (holding petitioner under Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, was not a "victim" because "the chain of causation between [the defendant's] conduct and her [harm] is too attenuated"); *In re Antrobus*, 519 F.3d 1123, 1125 (10th Cir. 2008) (denying mandamus relief upon conclusion that the district court did not clearly err in holding that defendant's conviction for illegal sale of firearm did not render child later killed with that firearm a "crime victim" "because [the

defendant's] offense and [the murderer's] rampage were too factually and temporally attenuated" (internal quotation marks omitted)).[6]

Having reviewed the Movants' contrary arguments, the Government respectfully disagrees with their analysis. Neither their summary insistence that Boeing "accept[ed] responsibility for its crime that so grievously harmed hundreds of passengers and crew," Dkt. 52 at 5, nor their inaccurate claim that the Government could have somehow charged Boeing with a more heinous crime, changes the outcome here. *Cf. McNulty*, 597 F.3d at 352 n.9 ("[F]or purposes of the CVRA definition of 'crime victim,' the only material federal offenses are those for which there is a conviction or plea."). Similarly, the Movants' reliance on *In re Dean* is inapposite because the parties in *Dean* did not dispute that the victims in that case were CVRA "crime victims." 527 F.3d 391, 392-93 (5th Cir. 2008) (per curiam); *United States v. BP Prods. N. Am. Inc.*, No. H-07-434, 2008 WL 501321, at *1, *3 (S.D. Tex. Feb. 21, 2008).

The other legal proceedings against Boeing that the Movants cite also do not establish that the Movants are crime victims of the charged conspiracy to defraud the FAA Aircraft Evaluation Group. Again, much of the evidence and allegations in those proceedings does not speak to the particular offense charged in this case, and none of it solves the but-for cause and proximate cause issues with the Movants' supposed crime victim status. To the contrary, the Government has made

---

[6] Relatedly, while the Court's analysis should focus upon the charges in the Information, the DPA, and the supporting Statement of Facts, the Movants have also not addressed indications that there were multiple contributing factors leading to the crashes beyond the MCAS-related training pilots received in those countries—training that, again, the FAA Aircraft Evaluation Group did not oversee. *See* KOMITE NASIONAL KESELAMATAN TRANSPORTASI, *Aircraft Accident Investigation Report* at 215 (http://knkt.dephub.go.id/knkt/ntsc_aviation/baru/2018%20-%20035%20-%20PK-LQP%20Final%20Report.pdf, last visited February 7, 2022); FEDERAL DEMOCRATIC REPUBLIC OF ETHIOPIA MINISTRY OF TRANSPORT, *Interim Investigation Report* at 130-32 (https://reports.aviation-safety.net/2019/20190310-0_B38M_ET-AVJ_Interim.pdf, last visited February 7, 2022).

clear in the related individual prosecution, *United States v. Forkner*, No. 4:21-CR-00268 (N.D. Tex.), that it has not charged the former Boeing former 737 MAX Flight Chief Technical Pilot defendant with causing the crashes of Lion Air Flight 610 or Ethiopian Airlines Flight 302 and that it does not intend to argue that he caused them. *See* Forkner Dkt. 32 at 12; Forkner Dkt. 69 at 5. Meanwhile, there is nothing in the Movants' motions showing how a congressional investigation into Boeing's leadership and the FAA or a shareholder derivative lawsuit about Boeing leadership's turning a blind eye to supposed safety problems at the company (Dkt. 52 at 13, 16) demonstrate how Boeing's conspiracy to defraud the FAA Aircraft Evaluation Group, as charged here, caused the crashes.

Finally, the Government's efforts to secure compensation for the crash victims' beneficiaries through the DPA (Dkt. 52 at 11 (citing DPA ¶ 13)) do not make the Movants "crime victims" under the CVRA. Once again, the Government consciously went above and beyond the legal requirements of the CVRA as it strove to recognize the Lion Air Flight 610 and Ethiopian Airlines Flight 302 crash victims. While the Government believes that its efforts have been successful in this regard, given that $471 million—94 percent of the $500 million crash-victim fund—has been disbursed to 307 of the 346 crash victims, the creation of this fund does not subvert the CVRA's statutory scheme.[7]

This is not the first case in which the Government has, through a negotiated resolution, obtained compensation from a corporate defendant for individuals who did not meet the definition of a "crime victim" under the CVRA or MVRA. In 2016, in *United States v. Takata Corp.*, No. 2:16-CR-20810 (E.D. Mich.), Takata Corporation pleaded guilty, pursuant to a plea agreement, to

---

[7] The Government also has significant practical concerns about how the distribution of this $500 million to the crash victims' beneficiaries would be unwound if the DPA between the Government and Boeing were set aside.

one count of wire fraud, in violation of 18 U.S.C. § 1343.  16-CR-20810 (E.D. Mich.), Dkt. 23.  In addition to securing restitution for statutory victims of the charged offense, as part of the plea, the company agreed, pursuant to 18 U.S.C. § 3663A(a)(3), to pay "additional restitution" to "individuals who suffered (or will suffer) personal injury caused by the malfunction of a Takata . . . airbag inflator," among others—even though those individuals were not directly and proximately harmed by the wire fraud offense and thus, were not statutory crime victims in the case.  *Id.* at 11.

In later litigation concerning an individual killed in an automobile accident involving an "overly aggressive deployment" of a Takata airbag inflator, the district court expressly "recognized that individuals suffering personal injury or wrongful death because of Takata's defective PSAN inflators are not direct victims of the criminal wire fraud committed by Takata against the [original equipment manufacturers]."  *United States v. Takata Corp.*, No. 16-CR-20810, 2021 WL 4962138, at *2 (E.D. Mich. Oct. 26, 2021).  Specifically, the court held that such "individuals do not meet the definition of 'victims'" under either the CVRA or the MVRA, but rather "hold a special status as 'other persons'" entitled to compensation only because it had been negotiated by the parties as part of the plea agreement.  *Id.*  The same is true here:  although "the government made it a priority to afford [the Movants] some level of compensation" through the Crash-Victim Beneficiaries fund, *id.* (internal quotation marks omitted), that does not mean that they are statutory "crime victims."

### B.    The Court Should Deny the Remedies Sought by the Movants.

In any case, even assuming *arguendo* that the Movants qualify as "crime victims," it remains the case that the Movants are not entitled to the broad extra-statutory remedies they seek. The Movants assert that this Court has "ample remedies that it could order" should it conclude that the CVRA was violated in this case.  *See* Dkt. 52 at 27-28 & nn.14-15.  But even if this Court were

to conclude that the Government should have given notice to the representatives of the crash victims or conferred with them before it publicly filed the DPA, the remedies sought by the Movants far exceed the scope of the remedies that Congress has authorized.

Crime victims are not "parties" to a criminal prosecution. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) ("A 'party' to litigation is 'one by or against whom a lawsuit is brought.'" (brackets omitted)).  Although crime victims have obvious psychological, emotional, and financial interests in a criminal prosecution, they are not "parties" to it, and they therefore cannot control the course of the litigation. *See* Black's Law Dictionary 1122 (6th ed. 1990) (distinguishing between "interested persons" and "parties").  The CVRA was adopted against this longstanding background principle, *see also* 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."), and, as the Fifth Circuit has noted, nothing in the CVRA "reflects Congress' intent to depart from" it. *In re Amy Unknown*, 701 F.3d 749, 755-56 (5th Cir. 2012) (en banc) (holding that crime victims, as non-parties, may not appeal from a final judgment in a criminal case), *vacated on other grounds sub nom. Paroline v. United States*, 572 U.S. 434, 463 (2014); *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 53-54 (1st Cir. 2012) (same).  Nor may crime victims intervene in a criminal case to make themselves parties to it. *See United States* v. *Alcatel-Lucent France, S.A.*, 688 F.3d 1301, 1306 (11th Cir. 2012) (per curiam).

Despite their status as interested non-parties, crime victims have certain specified rights under the CVRA alongside the ability to enforce those rights expeditiously.  For example, a crime victim or representative may file a motion in the district of prosecution asserting the denial of CVRA rights, *see* 18 U.S.C. § 3771(d)(3), and the district court is required to "take up and decide any motion asserting a victim's right forthwith," *id*.  The CVRA further provides that, if the district

court denies the relief sought, then "the movant may petition the court of appeals for a writ of mandamus," which the court should ordinarily "take up and decide" within 72 hours of filing. *Id.* Only in cases where a crime victim promptly alleges a denial of the right to be heard in connection with an ongoing proceeding, and has timely and successfully sought mandamus relief, may the victim make "a motion to re-open a plea or sentence." 18 U.S.C. § 3771(d)(5). Here, the Movants waited until almost a year after the DPA was filed, and after virtually all of the crash victims' beneficiaries fund payments had been distributed, before filing their motions for relief, contrary to the CVRA's provisions requiring prompt invocation of the limited rights it affords to crime victims.[8]

The Movants are mistaken in claiming that this Court may order additional remedies under the CVRA, and there is no reason that this Court should attempt to fashion any other remedies using its supervisory powers based on the facts here. *See United States v. Kovall*, 857 F.3d 1060, 1065 (9th Cir. 2017) ("There are limitations on the relief a victim may obtain."); *see also Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."). For example, the Movants assert that this Court may conduct a "substantive review" of the DPA, Dkt. 17 at 11, "withhold" court approval of the DPA, *id.*, and even "excise[ ]," Dkt. 52 at 27, the provision of the DPA that the Movants incorrectly claim immunizes Boeing, *see* p. 5 n.2, *supra*, but these are not available remedies under the CVRA. Indeed, the fact that the CVRA provides a crime victim with the ability to "make a motion to re-open" a "plea or sentence"—but

---

[8] Apart from this limited remedy in the criminal case itself, the CVRA also specifies that no "cause of action for damages" against the Government "or any of its officers or employees" may lie. 18 U.S.C. § 3771(d)(6).

not a deferred prosecution agreement—strongly confirms that Congress did not intend that outcome and did not intend to permit a non-party crime victim to control the quintessential discretionary prosecutorial decision of deciding whether to bring charges, or, as in this case, to defer the prosecution of such charges.  18 U.S.C. § 3771(d)(5); *see United States v. LaBonte*, 520 U.S. 751, 762 (1997) (explaining that the "discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect" is an "integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors"); *United States v. Fokker Services B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (ordering relief by mandamus where district court sought to thwart a DPA:  "The Executive's primacy in criminal charging decisions is long settled.").

The Movants' derivative request for Boeing to be arraigned is likewise beyond the scope of the remedies provided by the CVRA, and Fed. R. Crim. P. 10, on which the Movants rely, does not require arraignment to take place within a particular period of time.  Nor, again contrary to the Movants' arguments, does the CVRA contemplate or authorize their broad claims for document discovery.  Even putting to the side the weighty issues of attorney-client privilege, work product protection, deliberative process privilege, grand jury secrecy, and the Privacy Act attendant to an order requiring the disclosure of the Government's investigative files, *see* Fed. R. Crim. P. 16(a)(2), the Movants point to no statutory authority—in the CVRA or elsewhere—that would permit such "an unbridled gallop to any and all information in the government's files."  *United States v. Rubin*, 558 F. Supp. 2d 411, 425 (E.D.N.Y. 2008).  As one court has recognized, "[g]ranting rights to the prosecution's investigative discovery file to persons wishing to establish themselves as a victim is a significant right to append to the CVRA.  If Congress had wanted to afford members of the public the right to prosecution files to determine their victim status, it should

have clearly identified that right in the CVRA."  *United States v. Hunter*, No. 2:07-CR-307, 2008 WL 110488, at *1 (D. Utah Jan. 8, 2008), *mandamus pet. denied*, *In re Antrobus*, 563 F.3d 1092 (10th Cir. 2009); *see also United States v. Moussaoui*, 483 F.3d 220, 234, 237 (4th Cir. 2007) (concluding that neither the CVRA nor the district court's "inherent powers" permitted an order requiring the Government to disclose to crime victims non-public discovery materials provided to a criminal defendant in the course of discovery).[9]

## C.  Communications with the Victims' Rights Ombudsman and the Government

Beyond the legal and remedial arguments they raise in their motions, the Movants have faulted the Government's handling of this matter on a few other fronts.  Though these arguments bear on neither the Movants' status under the CVRA nor the availability of the remedies they seek, the Government addresses those concerns here.

First, the Government apologizes to the Movants and other representatives of the crash victims that the Department of Justice's Victims' Rights Ombudsman in February 2020 conveyed inaccurate information to certain of the crash victims' beneficiaries' representatives.  Dkt. 52 at 4, 24-26 (citing Dkt. 16, Gallagher Aff., Ex. 16, Appx. 075).  The Government recognizes the critical importance of truthful, complete, and respectful communications with the public (regardless of victim status).  This situation should have been handled differently.  The Ombudsman provided the information that she had at the time; however, the Department does not ordinarily confirm or

---

[9] The Government respectfully requests the opportunity to submit additional briefing should the Court consider the Movants' request that the Court impose other sanctions based upon its inherent authority.  In any event, such relief would be wholly unwarranted.  *See, e.g.*, *Sandifer v. Gusman*, 637 F. App'x 117, 121 (5th Cir. 2015) (per curiam) (unpublished) ("In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in bad faith." (internal quotation marks omitted)).

deny the existence of a criminal investigation and must always be mindful of the need to maintain confidentiality of nonpublic, sensitive information.

Second, the Movants repeatedly refer to the DPA as a "[b]ehind closed doors" and "secret[ ]" agreement because they were not consulted about the contents of the DPA. Dkt. 52 at 1, 17. The Department does not believe that anything about the negotiation of the DPA was contrary to law or existing policy because the Movants are not CVRA "crime victims" of the charged offense.

### III.    The Movants' Motions Should Be Denied Without an Evidentiary Hearing.

Finally, the Court need not convene an evidentiary hearing to rule on the motion before it. "Evidentiary hearings are not granted as a matter of course; such a hearing is required only if any disputed material facts are 'necessary to the decision of the motion.'" *United States v. Dean*, 100 F.3d 19, 21 (5th Cir. 1996) (per curiam). "As a general rule, an evidentiary hearing is unnecessary where the district court does not have to resolve complex factual disputes in order to decide the motion." *Smith v. O'Brien*, 59 F.3d 1241 (Tbl.), 1995 WL 413052, at *1 (5th Cir. Jun 19, 1995) (per curiam) (unpublished); *see also United States v. MMR Corp.*, 954 F.2d 1040, 1046 (5th Cir. 1992) (upholding decision to deny evidentiary hearing where district court's conclusion regarding disputed issue "would not likely have been affected by an evidentiary hearing"). Here, the dispute between the parties principally relates to the legal conclusions that can be drawn from the established facts in the record. *See* Dkts. 1, 4. Accordingly, no evidentiary hearing is warranted.

## **CONCLUSION**

For the foregoing reasons, the motion should be denied without an evidentiary hearing.

Respectfully submitted,

KENNETH A. POLITE, JR.
Assistant Attorney General
Criminal Division
United States Department of Justice

By: *s/ Jerrob Duffy*
Jerrob Duffy, Deputy Chief
New York Bar No. 2803559
jerrob.duffy2@usdoj.gov

United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
202-514-2000 (office)
202-514-3708 (fax)

CHAD E. MEACHAM
United States Attorney
Northern District of Texas

By: *s/ Chad E. Meacham*
United States Attorney
Texas Bar No. 00784584
chad.meacham@usdoj.gov

United States Attorney's Office
Northern District of Texas
801 Cherry Street, 17th Floor
Fort Worth, TX 76102
817-252-5200

**<u>Certificate of Service</u>**

I certify that on February 8, 2022, I electronically filed this pleading with the clerk of the court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system, which will send a notification of electronic filing to notify counsel of record for Defendant Boeing and the Movants.

<u>    *s/ Jerrob Duffy*                            </u>
JERROB DUFFY
Deputy Chief, Fraud Section
New York Bar No. 2803559