**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **No. 4:21-CR-5-O** |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

<u>**THE BOEING COMPANY'S RESPONSE TO MOTIONS
FILED ON BEHALF OF CRASH VICTIMS OF
LION AIR FLIGHT 610 AND ETHIOPIAN AIRLINES FLIGHT 302**</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT.............................................................................................................4

      I.     There Is No Legal Basis To Modify, Supervise, or Reject the DPA ...................... 4

           A.     This Court Does Not Have Authority to Supervise, Modify or Reject a DPA Under the Speedy Trial Act........................................................... 6

           B.     This Court Does Not Have Authority to Supervise, Modify or Reject a DPA Based on Judicial Supervisory Powers ......................................... 8

           C.     This Court Does Not Have Authority to Supervise, Modify, or Reject a DPA Under a Rule 11 Plea or a Rule 48 Motion to Dismiss ...................................................................................................... 10

           D.     The CVRA Does Not Provide For a Motion to Reopen a DPA .............. 12

           E.     Equitable Considerations Preclude Modifying the DPA ........................ 13

      II.    Neither an Arraignment Nor Bond Hearing Is Necessary ................................... 15

           A.     Movants Do Not Have Standing to Compel an Arraignment or Bond Hearing............................................................................................ 15

           B.     Even If Movants Had Standing to Seek to Compel Further Proceedings, Arraignment or Bond Proceedings Are Not Required ........ 16

CONCLUSION ......................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Dep't of Homeland Sec. v. MacLean*,
  574 U.S. 383 (2015)................................................................................13

*Rinaldi v. United States*,
  434 U.S. 22 (1977)..................................................................................11

*United States v. Airbus SE*,
  No. 1:20-cr-21 (D.D.C. Jan. 28, 2020) ...................................................17

*United States v. Alcon PTE Ltd.*,
  No. 2:20-cr-00539 (D.N.J. June 25, 2020)..............................................17

*United States v. Avanos Med. Inc.*,
  No. 3:21-cr-307 (N.D. Tex. July 12, 2021) .............................................17

*United States v. Avanos Med. Inc.*,
  No. 3:21-cr-307 (N.D. Tex. July 7, 2021) .................................................5

*United States v. Beam Suntory Inc.*,
  No. 1:20-cr-745 (N.D. Ill. Oct. 21, 2020)...............................................17

*United States v. Berlitz Languages, Inc.*,
  No. 3:21-cr-00051 (D.N.J. Jan. 19, 2021) ..............................................17

*United States v. Catholic Diocese of Jackson*,
  No. 1:20-mj-9 (N.D. Miss. July 15, 2020).........................................5, 17

*United States v. Comm. Edison Co.*,
  No. 1:20-cr-368 (N.D. Ill. July 17, 2020) ...............................................17

*United States v. Correa-Ventura*,
  6 F.3d 1070 (5th Cir. 1993) ....................................................................16

*United States v. Fokker Servs. B.V.*,
  818 F.3d 733 (D.C. Cir. 2016)........................................................ *passim*

*United States v. Herbalife Nutrition Ltd.*,
  No. 1:20-cr-00443 (S.D.N.Y. Aug. 28, 2020) .........................................18

*United States v. HSBC Bank USA, N.A.*,
  863 F.3d 125 (2d Cir. 2017)............................................................ *passim*

*United States v. JPMorgan Chase & Co.*,
    3:20-cr-00175 (D. Conn. Sept. 29, 2020) ............................................................17

*United States v. Kavod Pharm. LLC*,
    No. 2:19-cr-0689 (E.D. Pa. Dec. 3, 2019) ..........................................................17

*United States v. Panasonic Avionics Corp.*,
    No. 1:18-cr-118 (D.D.C. Apr. 30, 2018) ............................................................17

*United States v. Recology San Francisco*,
    No. 3:21-cr-00356 (N.D. Cal. Sept. 9, 2021) ......................................................17

*United States v. Saena Tech Corp.*,
    140 F. Supp. 3d 11 (D.D.C. 2015) ......................................................................6

*United States v. Thetford*,
    935 F. Supp. 2d 1280 (N.D. Ala. 2013) ............................................................15

*United States v. Ticketmaster LLC*,
    No. 1:20-cr-00563 (E.D.N.Y. Dec. 17, 2020) ....................................................18

*United States v. Tower Research Cap. LLC*,
    No. 4:19-cr-00819 (S.D. Tex. Nov. 6, 2019) ................................................5, 17

**Statutes**

18 U.S.C. § 371 .........................................................................................................3

18 U.S.C. § 3161 .......................................................................................................6

18 U.S.C. § 3771 ..........................................................................................12, 13, 15

**Other Authorities**

https://tinyurl.com/2p84axpn (statement of Zipporah Kuriah regarding the DPA
    posted on January 7, 2021) .................................................................................14

https://tinyurl.com/2p8meyxn (statement of Nadia Milleron regarding the DPA,
    posted on January 7, 2021) .................................................................................14

https://tinyurl.com/2p8nf7tn (statement of Clifford Law Offices regarding the
    DPA, posted on January 7, 2021) .......................................................................14

https://tinyurl.com/2p94z3bd (Bloomberg) (Boeing Settles 737 Max Fraud Charge
    with $2.5 Billion Agreement) (Jan. 7, 2021) .......................................................3

https://tinyurl.com/5a32mum5 (statements of Michael Stumo and Clifford Law
    Offices regarding the DPA, posted on January 7, 2021) ......................................14

https://tinyurl.com/5e6kndv9 (AP News) (Boeing will pay $2.5 billion to settle charge over 737 Max) (Jan. 7, 2021) ........................................................................................3

https://tinyurl.com/y9st3z7b (NYT) (Boeing Reaches $2.5 Billion Settlement with U.S. Over 737 Max) (Jan. 7, 2021) ...........................................................................3

https://tinyurl.com/yckvrdjr (Fortune) (Boeing to pay $2.5 billion to settle 737 Max fraud charge) (Jan. 7, 2021) ...............................................................................3

WASHINGTON LEGAL FOUNDATION, CHAPTER 6, DEFERRED PROSECUTION AND NON-PROSECUTION AGREEMENTS 6-2, 6-12, *available at* http://www.wlf.org/upload/chapter6DPAs.pdf ......................................................7

## PRELIMINARY STATEMENT

Families and other representatives of passengers on Lion Air Flight 610 and Ethiopian Airlines Flight 302 ("movants") have filed three related motions for relief under the Crime Victims' Rights Act ("CVRA"), asking this Court: (1) to find that the United States Department of Justice ("DOJ") violated the CVRA and order briefing on appropriate remedies (Dkt. 52); (2) to exercise supervisory authority over the Deferred Prosecution Agreement ("DPA") between DOJ and Boeing, withhold approval of the DPA until the Government confers with the accident victims' families, and modify the DPA to reflect concerns raised by movants (Dkt. 17); and (3) to hold an arraignment and bond hearing for Boeing (Dkt. 18).

Boeing acknowledges and profoundly regrets the inestimable impact of these tragic accidents, and it extends its deepest condolences to all of the families and loved ones of those lost on Lion Air Flight 610 and Ethiopian Airlines Flight 302. While Boeing recognizes that nothing can ever replace or fully repair the losses suffered by those affected by the accidents, Boeing has worked to provide compensation for the families through the fund established under the DPA, civil settlements, and an additional compensation fund provided by the Company. In addition, Boeing has implemented substantial and systemic changes to enhance the Company's enterprise safety efforts and to strengthen its culture of safety, quality, and transparency. Boeing also has devoted substantial resources to fulfill its obligations pursuant to the three-year term of the DPA, under the supervision of DOJ, that will further bolster Boeing's safety and compliance programs.

Movants here seek additional remedies from this Court under the CVRA, including modification of the DPA and an arraignment of Boeing. While Boeing sympathizes with the families and their loss, it respectfully submits that these motions should be denied for the following reasons:

1

*First*, there is no legal basis for the Court to modify, supervise, or reject the DPA.   DOJ has determined that movants do not come within the scope of the CVRA, and Boeing agrees with that conclusion.   But even if the CVRA were to apply to movants, it would not provide a legal basis to modify or reject the DPA—especially in this case, where movants seek relief more than a year after the agreement was signed.   The CVRA provides expressly that it cannot be construed to limit DOJ's prosecutorial discretion, and Boeing is not aware of any court relying on the CVRA to modify or withhold approval of a DPA, as movants propose.   Further, appellate courts have consistently held that district courts do not have authority to reject or modify the terms of a DPA since DOJ exercises prosecutorial discretion in determining whether to enter into a DPA and on what terms.   *See infra* Section I.A–D.

Moreover, the exercise of such authority, even if it existed, would raise further issues and complications in these circumstances, given that Boeing has already devoted substantial financial and programmatic resources to complying with its significant obligations under the DPA.   More than a year after the DPA was announced and this Court ordered that "all further criminal proceedings in this matter, including trial, be continued until further motion of the parties," these equities weigh heavily against revisiting the DPA.   *See infra* Section I.E.

*Second*, movants ask this Court now to hold an arraignment and bond hearing.   This Court's order staying further proceedings in this matter was neither objected to nor appealed at the time it was entered, and the parties to the DPA have already been operating for more than a year of the agreement's three-year term under that deferral of proceedings and the requirements established by the agreement.   Arraignment and bond hearings provide rights to defendants—not third parties. Further, there is no legal requirement mandating that this Court conduct either an arraignment or a bond hearing in this case.   *See infra* Section II.

For these reasons and the reasons below, Boeing respectfully requests that the Court deny movants' three motions.  Boeing also agrees with DOJ that the motions can be resolved on purely legal grounds, thus obviating the need for an evidentiary hearing.

## BACKGROUND

On January 7, 2021, DOJ filed an Information in this Court charging Boeing with a conspiracy to defraud the United States in violation of 18 U.S.C. § 371.  The Information was filed along with a DPA between DOJ and Boeing.  The DPA followed an extensive investigation, lasting more than two years.  In the DPA, DOJ agreed to defer prosecution of the Information for three years with a dismissal at that time if Boeing complied with the DPA's requirements over the term of the agreement.  Every major media outlet in the United States covered the agreement at that time, and the Information and DPA were readily accessible through the Court, the DOJ website, and many press outlets.[1]  As with all DPAs, the parties to this agreement filed a joint motion on January 7, 2021 (Dkt. 5) to exclude the DPA's term from any calculation of time under the Speedy Trial Act and to defer all criminal proceedings until further motion of the parties; this Court granted that joint motion on January 24, 2021.  Dkt. 13.  No objections were raised under the CVRA or otherwise following either the January 7, 2021 announcement of the DPA or this Court's January 24, 2021 order granting the Speedy Trial Act waiver, until the filing of these motions on December 16, 2021, almost eleven months later.

---

[1]  *See, e.g.*, https://tinyurl.com/y9st3z7b (NYT) (Boeing Reaches $2.5 Billion Settlement with U.S. Over 737 Max) (Jan. 7, 2021); https://tinyurl.com/5e6kndv9 (AP News) (Boeing will pay $2.5 billion to settle charge over 737 Max) (Jan. 7, 2021); https://tinyurl.com/2p94z3bd (Bloomberg) (Boeing Settles 737 Max Fraud Charge with $2.5 Billion Agreement) (Jan. 7, 2021); https://tinyurl.com/yckvrdjr (Fortune) (Boeing to pay $2.5 billion to settle 737 Max fraud charge) (Jan. 7, 2021).

Boeing's obligations under the DPA are substantial and have been in effect since January 7, 2021.  Under the DPA, Boeing made payments of more than $740 million by January 18, 2021 and is committed to compensating its customers for an additional amount of more than $1.77 billion by the conclusion of the DPA.  Boeing is also required to conduct three annual reviews "regarding remediation, implementation, and testing of its compliance program and internal controls, policies, and procedures" and engage in at least quarterly meetings with DOJ regarding those reviews, as well as to comply with broad self-reporting obligations extending to any "evidence or allegation" of fraud related to regulators or customers.  Dkt. 4 at 9, Attachments C & D.  The DPA also includes future disclosure requirements that mandate ongoing communication and coordination with the Department of Justice.  Boeing has devoted substantial internal and external resources to strengthening its compliance program around the terms of the DPA and to take steps to ensure that it satisfies the significant compliance obligations the DPA contains.

For these reasons and as further shown below, the relief sought under the CVRA is not legally available; moreover, any attempt to unwind the DPA at this point would be particularly unwarranted and unworkable, given Boeing's reliance on and compliance with the agreement for more than a year.

## ARGUMENT

### I.      There Is No Legal Basis To Modify, Supervise, or Reject the DPA

Between their Motion asserting a violation of the CVRA and their Motion asking this Court to assume supervision over the DPA, movants request that this Court modify the DPA, supervise the DPA, and ultimately withhold "approval" of the DPA at the end of its term.  Movants argue that the Court should order this relief to remedy a CVRA violation, or through the exercise of its supervisory powers, or by virtue of authority granted by the Speedy Trial Act.

Boeing believes that these requests, however framed, should be denied.  There is no legal basis for a district court to reject, rewrite, supervise, or review a DPA.  As an initial matter, DOJ has determined that movants do not come within the scope of the CVRA.  *See* Dkt. 58 at 8–14. Boeing agrees with that assessment for the reasons stated by DOJ, and the motions can be denied on that basis alone.  Case law confirms that the terms of a DPA are committed to the Executive's prosecutorial discretion, which would be abrogated by movants' requested remedies, and the motion should be denied for this separate and independent reason.  *See United States v. Fokker Servs. B.V.*, 818 F.3d 733, 740–41 (D.C. Cir. 2016) ("By rejecting the DPA based primarily on concerns about the prosecution's charging choices, the district court exceeded its authority under the Speedy Trial Act . . . the statute's 'approval of the court' requirement did not empower the district court to disapprove the DPA based on the court's view that the prosecution had been too lenient."); *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 137 (2d Cir. 2017) ("the district court has no freestanding supervisory power to monitor the implementation of a DPA").[2] Determining what charges can be brought, based on the evidence revealed by its investigation, is a classic exercise of the DOJ's prosecutorial discretion, which cannot be reviewed by the courts. *See Fokker*, 818 F.3d at 741 ("Indeed, '[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal

---

[2]   Undersigned counsel has not identified any Fifth Circuit authority directly on point on this topic, and movants do not cite any.  Counsel's review of docket sheets in DPA matters that were presented to district courts within the Fifth Circuit has not revealed a case in which a district court in the Fifth Circuit acted to reject, revise, or otherwise disapprove of a DPA.  To the contrary, the reviewed docket sheets support the approach this Court undertook in January of 2021.  *See, e.g., United States v. Avanos Med. Inc.*, No. 3:21-cr-307 (N.D. Tex. July 7, 2021); *United States v. Catholic Diocese of Jackson*, No. 1:20-mj-9 (N.D. Miss. July 15, 2020); *United States v. Tower Research Cap. LLC*, No. 4:19-cr-00819 (S.D. Tex. Nov. 6, 2019).

proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.'") (quoting *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967)).

The court of appeals decisions regarding a district court's authority over DPAs explicitly foreclose each of movants' arguments. Notably, movants rely on the *district court* decisions in *Fokker* and *HSBC* for the proposition that the "Court is empowered to review and withhold approval of the DPA pursuant to its supervisory powers." Dkt. 17 at 5–9. However, those decisions do not apply because the holdings of both of those cases were unanimously reversed on appeal.[3]

### A.    This Court Does Not Have Authority to Supervise, Modify or Reject a DPA Under the Speedy Trial Act

In *Fokker*, the Government entered into a DPA with a Dutch aerospace provider. As with all DPAs, the Government and the defendant filed "a joint motion to suspend the running of time under the Speedy Trial Act pending assessment of the company's adherence to the agreement's conditions." *Fokker*, 818 F.3d at 737. The Speedy Trial Act allows for the exclusion of time for "[a]ny period of delay during which prosecution is deferred by the attorney for the Government pursuant to written agreement with the defendant, with the approval of the court, for the purpose of allowing the defendant to demonstrate his good conduct." 18 U.S.C. § 3161(h)(2). The district court in *Fokker* interpreted the phrase "with approval of the court" to convey the authority to review the substance of the DPA before it. *Id.* at 740. The district court denied the motion because

---

[3]    Movants also rely on *United States v. Saena Tech Corp.*, 140 F. Supp. 3d 11 (D.D.C. 2015), for the same proposition. The district court's decision in *Saena Tech* was not appealed; the district court "approved" the DPA based on its review and analysis of the now-reversed district court cases in *HSBC* and *Fokker*, noting that "[t]hese two cases inform the Court's analysis of its authority to approve these two deferred-prosecution agreements." *Saena Tech Corp.*, 140 F. Supp. at 27. *Saena Tech* accordingly is no longer persuasive authority.

it objected to the DPA, including because, "in the court's view, the prosecution had been too lenient in agreeing to, and structuring, the DPA." *Id.* at 733.

The D.C. Circuit unanimously granted mandamus and vacated the district court's denial of the motion to suspend the running of time under the Speedy Trial Act. The court held that district courts were not empowered to intrude upon the prosecutor's discretion over charging and resolution decisions, noting that "[t]he Supreme Court [] has repeatedly emphasized that whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion," and "decisions to dismiss pending criminal charges—no less than decisions to initiate charges and to identify which charges to bring—lie squarely within the ken of prosecutorial discretion." *Fokker*, 818 F.3d at 741–42 (citation omitted).[4]

It further explained that "Congress, in providing for courts to approve the exclusion of time pursuant to a DPA, acted against the backdrop of long-settled understandings about the independence of the Executive with regard to charging decisions" and that nothing in the Speedy Trial Act's "terms or structure suggests any intention to subvert those constitutionally rooted principles so as to enable the Judiciary to second-guess the Executive's exercise of discretion over the initiation and dismissal of criminal charges." *Id*. at 738. Instead, the approval-of-the-court language in the Speedy Trial Act is only a mechanism to "confirm that a DPA's conditions are aimed to assure the defendant's good conduct," as opposed to being a dilatory tactic to avoid the

---

[4]   The D.C. Circuit noted that the district court's order disapproving of the DPA was "the first time any federal court ha[d] denied a joint request by the parties to exclude time pursuant to a DPA." *Fokker*, 818 F.3d at 740. The district court's order was entered in 2015. This is notable, as DPAs have been in use by DOJ since at least 1993. WASHINGTON LEGAL FOUNDATION, CHAPTER 6, DEFERRED PROSECUTION AND NON-PROSECUTION AGREEMENTS 6-2, 6-12, *available at* http://www.wlf.org/upload/chapter6DPAs.pdf (noting that the first corporate DPA was made with Armour of America in 1993). The lack of any order disapproving DPAs for that roughly twenty-plus year period further confirms federal court practice is consistent with this Court's proceedings here.

7

time limitations otherwise applicable under the Speedy Trial Act.  *Id.* at 744–45.  The court concluded by holding that "we have no occasion to disagree (or agree) with that court's concerns about the government's charging decisions in this case.  Rather, the fundamental point is that those determinations are for the Executive—not the courts—to make."  *Id.* at 738.

Here, movants raised no arguments after the Information was filed or after this Court granted the Speedy Trial Act waiver.  They still make no claim that entering into the DPA was a "dilatory tactic" intended to evade speedy trial limits, rather than to enable Boeing to demonstrate its good conduct and compliance with the law.  Instead, movants disagree with DOJ's charging decisions and seek to revisit the judgment of this Court in granting the parties' Speedy Trial Act motion.  As *Fokker* made clear, and as this Court implicitly recognized in granting the Speedy Trial Act motion, the decision of whether and what to charge is the exclusive role of the Executive, and this Court should not revisit that determination.  The DPA on its face is a detailed and extensive agreement with multiple mechanisms designed to ensure that Boeing fulfills its commitment to transparency with the Department and compliance with the law, including by regularly reporting to the Government, which Boeing has been doing for over a year.  As a result, movants have identified no error or cause to revisit this Court's Speedy Trial Act extension order, and the Speedy Trial Act does not provide any authority for this Court to modify, supervise, or reject the DPA.

### B.     This Court Does Not Have Authority to Supervise, Modify or Reject a DPA Based on Judicial Supervisory Powers

Movants also ask this Court to invoke its inherent supervisory authorities to review, modify, and/or oversee the DPA.  This request also is inconsistent with the Court's authority.

One year after the D.C. Circuit's decision in *Fokker*, the Second Circuit in *United States v. HSBC Bank USA, N.A.* concluded that neither a court's inherent supervisory powers nor the Speedy Trial Act empower federal courts to exercise substantive oversight over the terms of a DPA.  863

F.3d 125.  In *HSBC*, when the Government and HSBC jointly moved for a speedy trial act waiver, the district court "invoked its supervisory power both to review and 'approve' the DPA on its merits and to condition its approval on the court's monitoring of the DPA's implementation." *Id.* at 129.  The district court later exercised its "supervisory power" and ordered the Government to file a confidential report prepared by the independent monitor regarding HSBC's compliance with the DPA.  *Id*.  The district court ordered the report unsealed, and the Government and HSBC jointly appealed.  *Id.* at 133.

The Second Circuit unanimously reversed, holding that "[b]y *sua sponte* invoking its supervisory power at the outset of this case to oversee the [G]overnment's entry into and implementation of the DPA, the district court impermissibly encroached on the Executive's constitutional mandate to 'take Care that the Laws be faithfully executed.'" *Id*. at 129 (quoting U.S. CONST. art. II, § 3).  The Second Circuit noted in particular that "[s]ubject to constitutional constraints, '[t]he Executive has the *exclusive authority* to decide whether to prosecute and to choose among alternative charges.'"  *Id*. at 138 (citations and original alterations omitted) (emphasis added).  The Second Circuit also agreed with *Fokker*'s conclusion that the Speedy Trial Act does not provide an invitation for the courts to review the exercise of prosecutorial discretion reflected in a DPA.  *Id.*

Movants here request that this Court exercise its "supervisory power over the DPA . . . to address the DPA's failure to provide any criminal accountability for Boeing" and contend that the Court "should withhold approval of the DPA, pending . . . modifications rendering the DPA's penalty and monitoring provisions commensurate with Boeing's crimes."  Dkt. 17 at 2, 13.  But disagreement with the terms of the agreement is not evidence that the agreement was unlawful, and is exactly what the courts in *Fokker* and *HSBC* found cannot form the basis of court

intervention.  This Court should reject this invitation to find error and should decline to exercise supervisory powers to substantively address the DPA, particularly where, as here, doing so would risk supplanting DOJ's determination of the offenses that can be proven beyond a reasonable doubt.  That is a power that district courts do not possess.

### C.    This Court Does Not Have Authority to Supervise, Modify, or Reject a DPA Under a Rule 11 Plea or a Rule 48 Motion to Dismiss

Two other aspects of the circuit courts' reasoning in *Fokker* and *HSBC* bear on movants' arguments related to Rule 11 and Rule 48.  First, with respect to Rule 11, movants suggest that a court's "role in reviewing plea agreements" is both "analogous" and "instructive."  Dkt. 17 at 6. *Fokker* rejected this analogy: "To begin with, even in the context of reviewing a proposed plea agreement under Rule 11, a district court lacks authority to reject a proposed agreement based on mere disagreement with a prosecutor's underlying charging decisions."  818 F.3d at 745.  *Fokker* expressly noted that the Judiciary's authority to accept or reject a proposed plea agreement under Rule 11 is an authority rooted in sentencing, which of course does not occur under a DPA.  *Id.* The Second Circuit in *HSBC* similarly made clear that a plea and a DPA are fundamentally different, rejecting the district court's "misconception that the DPA was 'really a plea agreement in the form of an 11C1A charge bargain.'"  863 F.3d at 131.  As a result: "Unlike a plea agreement—and more like a dismissal under Rule 48(a)—a DPA involves no formal judicial action imposing or adopting its terms. . . .  [A] DPA's provisions are agreed to by the parties, not the court, with no occasion for the court to adopt the agreement's terms as its own."  *Fokker*, 818 F.3d at 746.

Second, movants suggest that this Court will have to evaluate the DPA when entertaining a Government motion to dismiss under Rule 48(a) at the conclusion of the DPA's term.  Dkt. 17 at 8.  At the outset, this argument is not ripe, as the DPA's term has two years remaining, and the

Government has not tendered a motion to dismiss.  But, in any event, movants' projection of what those later proceedings will entail is incorrect.  The Supreme Court has declined to interpret Rule 48(a)'s "leave of court" language as granting district courts any substantial role in reviewing whether to dismiss charges on motion of the Government.   Rather, the Supreme Court has concluded that the "principal object" of Rule 48(a)'s leave-of-court requirement is "to protect a defendant against prosecutorial harassment . . . when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977). *Fokker* and *HSBC* echoed these limitations.   *Fokker* specifically analogized the Executive's authority to set a DPA's terms without judicial review or approval to the Executive's authority to dismiss under Rule 48(a):

> [T]he context of a DPA, like that of Rule 48(a), concerns the prosecution's core prerogative to dismiss criminal charges.  While dismissal under a DPA follows from the defendant's adherence to agreed-upon conditions over a specified period, the decision to seek dismissal pursuant to a DPA—as under Rule 48(a)—ultimately stems from a conclusion that additional prosecution or punishment would not serve the public interest.  Dismissal in either situation thereby fulfills the Executive's duty under Article II to see that the laws are faithfully executed.

*Fokker*, 818 F.3d at 743.  *See also id.* at 744 ("But the existence of charges on the court's docket suggests no greater power on the part of the court to second-guess the underlying charging decisions than under Rule 48(a): there, too, criminal charges remain on the court's docket until dismissed.  The key point is that, although charges remain pending on the court's docket under a DPA, the court plays no role in monitoring the defendant's compliance with the DPA's conditions.").  In *HSBC*, the Second Circuit found that discussion of Rule 48 prior to the end of the DPA was speculative, but similarly quoted *Rinaldi* in stating that the court's role in ruling on a Rule 48 motion is limited to protecting the defendant from prosecutorial harassment.  863 F.3d at 139–42.

11

###### D.        The CVRA Does Not Provide For a Motion to Reopen a DPA

Although *Fokker* and *HSBC* did not involve requests for relief under the CVRA, we are not aware of any court relying on the CVRA to reopen, modify, or reject a DPA.  Movants have not cited any authority to that effect, and the CVRA makes clear it does not provide a mechanism for the requested relief.  As explained above, while it is true that the CVRA affords victims covered by the Act "[t]he right to be *informed* in a timely manner of any plea bargain or deferred prosecution agreement," 18 U.S.C. § 3771(a)(9) (emphasis added), it does not follow that the relief associated with a violation of that right is modification or amendment of a DPA.

In fact, the CVRA provides the opposite: "Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id.* § 3771(d)(6).  As DOJ explained in its Response, DOJ's "considered judgment was—and remains—that a DPA, rather than a guilty plea, was the appropriate resolution for Boeing in this matter based on the facts and circumstances."  Dkt. 58 at 5.  The CVRA protects this exercise of DOJ's prosecutorial discretion, yet virtually all of the relief sought involves limiting or eliminating that discretion.  *See* Dkt. 52 at 27–28.  This Court should reject this request to have the Court interject itself into the exercises of prosecutorial discretion reflected in the DPA.

Congress specified in the CVRA the scenarios under which a district court may reopen criminal proceedings, but it did not extend that authority to DPAs.  As noted above, Congress amended the CVRA in 2015 to afford victims "[t]he right to be informed in a timely manner of any plea bargain or deferred prosecution agreement."  18 U.S.C. § 3771(a)(9).  But, as DOJ argues in its response, *see* Dkt. 58 at 16–17, the provision of the CVRA specifically directed at "[l]imitation on relief" states that "[a] victim may make a motion to re-open *a plea or sentence*," *id.* § 3771(d)(5) (emphasis added), without referencing the possibility of reopening deferred prosecution agreements.  This omission is telling, as "Congress generally acts intentionally when

12

it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) (citation omitted). In this case, it reflects that the judgments inherent in a DPA—what conduct to charge and the appropriate terms of resolution— are exercises of prosecutorial discretion committed to the Executive, rather than the courts. Accordingly, re-opening or reconsidering that agreement is not an appropriate remedy under the CVRA.

### E.    Equitable Considerations Preclude Modifying the DPA

Even if the CVRA were to provide the authority to grant movants' requested relief, reopening the DPA would be unwarranted in these circumstances. Although the CVRA does not contain time limits for motions to be filed, the CVRA indicates that any victim concerns should be raised promptly and resolved immediately by the courts so as not to unduly delay resolution of criminal prosecutions. Upon a motion by a CVRA victim, the district court is to act "forthwith," and any appeal of the district court's order is to be decided by the court of appeals within 72 hours (absent agreement by the parties). 18 U.S.C. § 3771(d)(3). The CVRA further provides that an appellate court may not enter a "stay[] or subject [those proceedings] to a continuance  of more than five days for purposes of enforcing this chapter." *Id.* Similarly, where the CVRA does empower a court to reopen a plea or a sentence, it limits that authority to cases in which "the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied" and "the victim petitions the court of appeals for a writ of mandamus within 14 days." 18 U.S.C. § 3771(d)(5). The CVRA thus confirms that challenges to a criminal resolution are to be brought promptly and resolved expeditiously, particularly where the challenge seeks to upset the status quo. *Accord* Dkt. 58 at 16.

Here, by contrast, movants have been on notice of the DPA since January 7, 2021, but did not bring these motions for almost a year. Public statements by movants' attorneys and

13

representatives confirm that they were immediately aware of the DPA and its terms.[5]  During the 11 months between notice and these motions, Boeing paid a criminal monetary penalty of $243.6 million (which the DPA specifies is "final and shall not be refunded," Dkt. 4 ¶ 11) and has made substantial payments to airline customers in satisfaction of its obligation to provide $1.77 billion of compensation to them over the life of the DPA.  Boeing has also paid $500 million to a fund for the families of those who died in the accidents, the vast majority of which has already been distributed.  And those payments to the families are in addition to any settlement amounts they may receive through civil litigation.  Dkt. 4 ¶ 19.  Boeing has also taken significant actions to ensure compliance with the terms of the DPA, which include recently submitting its first annual report on the state of its compliance program to DOJ, engaging in regular meetings with DOJ, and making required self-disclosures.  Boeing has now completed more than one third of the DPA's term and has expended considerable resources in doing so.  Attempting at this juncture to unwind an agreement after substantial and good faith performance of one of the parties to it, which included significant payments to third parties, would be logistically difficult—if not impossible— and would implicate important equitable considerations as to both the parties to the DPA and all who were benefitted by it.   *See* Dkt. 58 at 16.

For all these reasons, we respectfully submit that, even if the Court were to interpret the CVRA to provide the authority to intervene in the terms or implementation of a DPA, the exercise of that authority would be especially unwarranted here, where Boeing has relied on the DPA to

---

[5]    *See, e.g.*, https://tinyurl.com/5a32mum5 (statements of Michael Stumo and Clifford Law Offices regarding the DPA, posted on January 7, 2021); https://tinyurl.com/2p84axpn (statement of Zipporah Kuriah regarding the DPA posted on January 7, 2021) https://tinyurl.com/2p8meyxn (statement of Nadia Milleron regarding the DPA, posted on January 7, 2021); *see also, e.g.*, https://tinyurl.com/2p8nf7tn (statement of Clifford Law Offices regarding the DPA, posted on January 7, 2021).

14

make substantial payments and invested significant resources in complying with its other obligations under the DPA.

## II.      Neither an Arraignment Nor Bond Hearing Is Necessary

Movants argue that Boeing must be arraigned and that, at such an arraignment, bond conditions should be set. Dkt. 18 at 1–2. But the procedure followed by this Court was appropriate and consistent with the Federal Rules of Criminal Procedure. The Rules contain no requirement for arraignment to occur in the context of a DPA, and arraignment would serve no purpose here. As described below, courts frequently enter Speedy Trial Act extensions, as this Court did, without conducting arraignments of defendants who enter into DPAs. *See infra* at 17. Moreover, there is no requirement to conduct a bond hearing, and courts frequently do not conduct bond hearings for corporate DPA defendants.

### A.      Movants Do Not Have Standing to Compel an Arraignment or Bond Hearing

As a threshold matter, movants lack standing to seek to compel an arraignment or bond hearing to occur. For the reasons given above, movants do not qualify for coverage under 18 U.S.C. § 3771. And even if they did, Section 3771(a) does not confer the right to compel specific court proceedings. *Accord* Dkt. 58 at 15. "[R]ead as a whole [the CVRA] demonstrate[s] that 'there is absolutely no suggestion in the statutory language that victims have a right independent of the government to prosecute a crime, set strategy, or object to or appeal pretrial or in limine orders . . . . In short, the CVRA, for the most part, gives victims a voice, not a veto.'" *United States v. Thetford*, 935 F. Supp. 2d 1280, 1282–83 (N.D. Ala. 2013) (citation omitted). Finally, it is well settled that only the actual parties to the case—the United States and Boeing—have standing to assert interests here. Those parties were both represented and jointly sought the relief reflected in this Court's order deferring further proceedings; that order was neither objected to nor appealed.

15

**B.      Even If Movants Had Standing to Seek to Compel Further Proceedings, Arraignment or Bond Proceedings Are Not Required**

Movants argue that an arraignment must be held in this matter, citing Federal Rule of Criminal Procedure 10, but have identified no case supporting that argument.  Dkt. 18 at 2–5.  Movants rely on Rule 10(a)'s requirement that an arraignment "must be conducted in open court," and then argue that Rule 10(b)'s conditions for waiving appearance at an arraignment are not satisfied here.  *Id.*

But Rule 10 does not require that an arraignment be held in the context of a DPA.  While the language in Rule 10(a) on which movants rely provides that arraignments "must be conducted in open court," that language merely dictates *how* an arraignment must be conducted *when one occurs*.  It does not say that an arraignment must occur.[6]  "The interests at issue [at an arraignment] are the defendant's right to know of the charges made and the right to have adequate information from which to prepare a defense."  *United States v. Correa-Ventura*, 6 F.3d 1070, 1073 (5th Cir. 1993).  Here, Boeing—the defendant in this matter—is represented by counsel, has entered into a comprehensive agreement with DOJ in relation to the charge against it, and has not requested an arraignment.  And an arraignment is not needed here because, under the DPA, prosecution of Boeing has been *deferred* during the term of the agreement.  Thus, conducting an arraignment would waste judicial resources by moving forward with additional criminal proceedings after the parties have agreed that those proceedings should be deferred and after this Court has already entered an order directing that "all further criminal proceedings in this matter, including trial, be continued until further motion of the parties[.]"  Dkt. 13.

---

[6]   This holds true for other important stages of criminal proceedings.  Rule 23 provides various requirements for *when a trial occurs*, but similarly does not say a trial *must occur*.  And trials frequently do not occur because the parties resolve cases prior to those events.

Counsel have reviewed court dockets involving DPAs with corporate defendants. Consistent with this Court's approach, other courts often do not conduct arraignments when the parties have entered into a DPA. For example, in *United States v. Avanos Med. Inc.*, No. 3:21-cr-307 (N.D. Tex. July 12, 2021), this Court granted a motion for an exclusion of time under the Speedy Trial Act in connection with a corporate DPA and held no arraignment proceeding.[7] Under the Federal Rules of Criminal Procedure and this Court's prior order, an arraignment need not occur here. Accordingly, there is no need to satisfy the waiver requirements under Rule 10(b), as movants argue.

Movants' argument that a bond hearing should be held is derivative of their argument that an arraignment must be held. Dkt. 18 at 8–9. As a result, because an arraignment need not be held and indeed would be inconsistent with this Court's order, movant's request for a bond hearing also should be denied. Movants also fail to establish how a public corporation could be detained at any bond hearing. And in fact, Boeing is already subject to active supervision over the DPA's three-year term by experts at DOJ through the agreement's reporting provisions. *See* Dkt. 4 Attachment D. A review of dockets involving corporate DPAs reflects that courts frequently do not conduct a

---

[7]  Many other dockets reflect no arraignment in a DPA proceeding. *See United States v. Recology San Francisco*, No. 3:21-cr-00356 (N.D. Cal. Sept. 9, 2021); *United States v. Berlitz Languages, Inc.*, No. 3:21-cr-00051 (D.N.J. Jan. 19, 2021); *United States v. JPMorgan Chase & Co.*, 3:20-cr-00175 (D. Conn. Sept. 29, 2020); *United States v. Catholic Diocese of Jackson*, No. 1:20-mj-9 (N.D. Miss. July 15, 2020); *United States v. Alcon PTE Ltd.*, No. 2:20-cr-00539 (D.N.J. June 25, 2020); *United States v. Kavod Pharm. LLC*, No. 2:19-cr-0689 (E.D. Pa. Dec. 3, 2019); *United States v. Tower Research Cap. LLC*, No. 4:19-cr-00819 (S.D. Tex. Nov. 6, 2019). Other courts have conducted arraignments, but this does not appear to be a consistent practice even within those courts, as, in other DPA matters in those same courts, the docket sheets do not reflect an arraignment occurring. *Compare United States v. Comm. Edison Co.*, No. 1:20-cr-368 (N.D. Ill. July 17, 2020) (arraignment held in connection with a corporate DPA) *and United States v. Airbus SE*, No. 1:20-cr-21, (D.D.C. Jan. 28, 2020) (arraignment held), *with United States v. Beam Suntory Inc.*, No. 1:20-cr-745 (N.D. Ill. Oct. 21, 2020) (corporate DPA without arraignment) *and United States v. Panasonic Avionics Corp.*, No. 1:18-cr-118 (D.D.C. Apr. 30, 2018) (corporate DPA without arraignment).

bond hearing or place the corporate defendant under bond, even in cases in which an arraignment was held. *See, e.g., United States v. Ticketmaster LLC*, No. 1:20-cr-00563 (E.D.N.Y. Dec. 17, 2020) (holding an initial appearance for a DPA matter, but not addressing bond or conditions of release); *United States v. Herbalife Nutrition Ltd.*, No. 1:20-cr-00443 (S.D.N.Y. Aug. 28, 2020) (holding an arraignment for a DPA matter, but not addressing bond or conditions of release).

## CONCLUSION

For the reasons stated by DOJ and as set forth above, Boeing respectfully requests that movants' three pending motions be denied.

Respectfully submitted,

| | |
|---|---|
| **McGUIREWOODS LLP** | **KIRKLAND & ELLIS LLP** |
| */s/ Benjamin L. Hatch* | */s/ Craig S. Primis* |
| Benjamin L. Hatch | Craig S. Primis |
| VA Bar No. 70116 | DC Bar No. 454796 |
| bhatch@mcguirewoods.com | cprimis@kirkland.com |
| | |
| Brandon M. Santos | Mark Filip |
| VA Bar No. 75380 | IL Bar No. 6226541 |
| bsantos@mcguirewoods.com | mark.filip@kirkland.com |
| | |
| McGuireWoods LLP | Patrick Haney |
| 888 16th Street N.W., Suite 500 | DC Bar No. 1005326 |
| Black Lives Matter Plaza | patrick.haney@kirkland.com |
| Washington, DC 20006 | |
| Tel: 757.640.3727 | Kirkland & Ellis LLP |
| Fax: 757.640.3947 | 1301 Pennsylvania Avenue NW |
| | One Freedom Plaza |
| ***Counsel for The Boeing Company*** | Washington, DC 20004 |
| | Tel: 202.879.5000 |
| | Fax: 202.654.9645 |
| | |
| | Jeremy Fielding |
| | Texas State Bar No. 24040895 |
| | Jeremy.fielding@kirkland.com |

18

Ian Brinton Hatch
Texas State Bar No. 24123444
Ian.hatch@kirkland.com

Kirkland & Ellis LLP
1601 Main Street
Dallas, Texas 75201
Tel; (214) 972-1770
Fax: (214) 972-1771

***Counsel for The Boeing Company***

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2022, the foregoing was filed with the Clerk of the United States District Court for the Northern District of Texas using the CM/ECF system.  The system will serve counsel of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch
