UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff* | ) ) ) |
| v. | ) ) Case No. 4:21-cr-005-O-1 |
| THE BOEING COMPANY, | ) ) ) |
| *Defendant.* | ) ) ) |

**UNOPPOSED MOTION OF NAOISE CONNOLLY RYAN ET AL. FOR EXTENSION OF TIME TO FILE REPLY TO THE GOVERNMENT'S OPPOSITION TO THEIR SECOND AMENDED MOTION FOR FINDINGS THAT THE PROPOSED BOEING DEFERRED PROSECUTION AGREEMENT WAS NEGOTIATED IN VIOLATION OF THE VICTIMS' RIGHTS**

Naoise Connolly Ryan et al. (the "victims' families"), by and through undersigned counsel, respectfully submit this Unopposed Motion for Extension of Time to Respond to the Government's Opposition to Their Second Amended Motion for Findings that the Proposed Boeing Deferred Prosecution Agreement Was Negotiated in Violation of the Victims' Rights (Dkt. 58). The victims' families seek an additional two weeks (until March 4) to respond to the fact-intensive issues that the Government has presented regarding "victim" status. The victims also seek to conform that new deadline with the deadline for filing their interrelated motion for appropriate discovery. The victims also seek additional time for their expert witnesses to submit to the Court supporting expert witness reports. Because good cause exists for a short extension of time, the Court should grant the motion.

*Relevant Procedural History*

This case has attracted international attention because it presents important issues regarding the fair treatment of crime victims in the American criminal justice system. As the Court is aware, the case arises from two horrific crashes of Boeing 737 MAX aircraft—which killed all 346 passengers and crew on board the flights. Thereafter, the Government and Boeing negotiated a secret deferred prosecution agreement (DPA) covering Boeing's criminal conduct leading up to the crashes, without conferring with the victims' families.

On December 16, 2021, the victims' families filed three motions, seeking (1) enforcement of their rights under the Crime Victims' Rights Act (CVRA) (Dkt. 15, amended per Dkts. 32 and 52) (the "CVRA motion"); (2) exercise of this Court's supervisory power over the proposed DPA (Dkt. 17); and (3) a public arraignment of Boeing (Dkt. 18).

On December 21, 2021, the Government and Boeing both filed for extensions of time to January 13, 2022, to respond (Dkt. 26, 28). After the victims' agreed and the Court granted the motions, on January 11, 2022, the Government and Boeing both filed motions for another extension of time to respond to January 20, 2020 (Dkts. 35, 39). Again, the victims' families agreed, and this Court granted the motions.

On January 19, 2022, the Government filed another motion for an extension of time to respond to January 27, 2022, reciting the fact that the Attorney General intended to meet with representatives of the victims' families (Dkt. 47). Boeing filed an identical motion (Dkt. 48). Again, the victims agreed, and the Court granted the motions (Dkt. 49).

On January 21, 2022, the Court sua sponte entered an order staying all deadlines in the case in light of the upcoming Attorney General's meeting (Dkt. 55).

On January 26, 2022, representatives of the victims' families and undersigned counsel

made a Zoom presentation to the Attorney General and fourteen other attorneys from the Justice Department, requesting its support for the victims' families' motions.

On February 4, 2022, the parties held a meet-and-confer via telephone regarding future scheduling. At that meeting, the Government reported for the first time that it would be opposing the victims' families' motions (Dkt. 57).

On February 8, 2022, the parties filed a litigation status report. On that same day, the Government filed a twenty-page opposition to Victims' Families' CVRA Motion (Dkt. 58).

On February 9, 2022, the Court entered a scheduling order directing the Government and Boeing to file all oppositions to victims' families' motions by February 11. The Court also directed the victims' families to file their replies on all three motions by February 18 and any motion for appropriate discovery by February 25 (Dkt. 59).

On February 11, 2022, the Government filed substantive oppositions to both the victims' families' supervisory power motion and their motion for Boeing to be publicly arraigned (Dkts. 60, 61). On the same day, Boeing also filed an opposition to the supervisory powers and arraignment motions but did not substantively address the CVRA motion (Dkt. 62).

### *Request for an Extension of Time*

In this case, the victims' families are represented by a single pro bono law professor (and local counsel). The opposing parties are the U.S. Department of Justice, which has more than a dozen attorneys working on the case, and The Boeing Company, which is represented by several large law firms. The victims' families intend to file their replies in support of their supervisory powers motion and their arraignment motion within the one-week provided by the current scheduling order, on February 18, 2022. For their third reply—supporting their CVRA motion— the victims' families respectfully request an extension of the filing deadline for two weeks, until

3

March 4, 2022. They also request that the deadline for filing their motion for appropriate discovery be conformed to the same day (with one-week response and one-week reply deadlines to follow—March 11 and 18, respectively). While the families plan to include within their March 4 filing a summary of proposed expert testimony supporting their position, they also request that they be permitted to file three supporting expert reports by March 31, 2022.

The victims have not previously requested any extensions regarding briefing on their motions.

The victims' families' counsel needs an additional two weeks to properly prepare the fact-intensive information in their reply supporting their CVRA motion. Undersigned victims' counsel has teaching obligations at the University of Utah College of Law that preclude focusing exclusively on this (pro bono) case. Moreover, the CVRA reply brief is extremely important to the proper resolution of the motions before the Court.

A central issue in the CVRA motion is whether the Boeing 737 MAX crashes victims were "directly and proximately harmed" as a result of Boeing's criminal conduct, thereby creating "crime victim" status under the CVRA, 18 U.SC. § 3771(e). Determining "victim" status necessarily requires tracing out the harms that resulted from Boeing's admitted criminal conduct. As the Fifth Circuit has held, under the CVRA's plain language, a person "may qualify as a victim, even though [he] may not have been the target of the crime, as long as [he] suffers harm as a result of the crime's commission." *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) ("*Fisher I*"). And the Circuit has further instructed that this causation inquiry requires a district court to construct a "mental picture" of what the world would have looked like in the absence of a defendant's crime. *In re Fisher*, 649 F.3d 401, 403 (5th Cir. 2011) ("*Fisher II*").

In this case, developing that counter-factual mental picture of what the world would have

4

looked like if Boeing had not embarked on a two-year criminal conspiracy to deceive the FAA requires developing detailed factual information. This information will concern the causes for two different catastrophic Boeing 737 MAX crashes, including aeronautical information about FAA pilot training requirements and the training's efficacy in providing aircraft safety. The victims' families have been proceeding diligently to develop such a record, which will form a central part of their reply to the Government's opposition to recognizing "victim" status.[1] But developing that record requires additional time.

Also, the victims' families have also been attempting to find expert witnesses on these issues. After learning on Friday, February 4, 2022, that the Justice Department intended to argue that the crash victims were not protected "crime victims," the victims' families immediately began securing expert witnesses to support their "victim" position. They currently anticipate presenting expert testimony from three well-qualified experts on critical subjects in this case:

*Vickie Norton*

On the same day the victims' families learned that the Government would oppose their CVRA motion, they retained an expert on FAA pilot training requirements in general and requirements for the Boeing 737 MAX in particular: Vickie Norton. Ms. Norton is a captain with a major commercial airline, who currently flies the Boeing 737 MAX. She has been trained not only on the aircraft, but also in erroneous MCAS activation recovery scenarios pertinent to the MAX. Her background and experience are more fully set out in her attached CV.

At this time, based on her training and experience and her review of some materials provided by counsel, Ms. Norton is preparing to offer expert opinions in this case that include, in

---

[1] In its opposition to the victims' families' motions, Boeing has not substantively discussed the victims' families' CVRA motion. *See* Dkt. 62.

substance, the following:

1. The omission in the 737 MAX Aircraft Flight Manual (AFM) of any substantive references to the Maneuvering Characteristics Augmentation System (MCAS) was an ultimate "but for" cause of the crashes of Lion Air Flight 610 and Ethiopian 302.

2. The intentional lack of disclosure, coupled with false, misleading and inaccurate description of MCAS' ultimate control authority and capabilities upon certification of the 737 MAX, was causal to the crashes of Lion Air 610 and Ethiopian 302. These intentional falsehoods and lack of disclosure extended not only to the FAA and the international aviation community, but also to Boeing's own customers and, ultimately, the flying public—including the 346 victims of the two crashes.

3. The complete lack of pilot training with respect to MCAS was directly causal to the crashes of Lion Air 610 and Ethiopian 302, as adequate training would have prevented each of these tragedies. Moreover, it is an egregious violation of long-established, accepted, international pilot training and checking standards which exist to ensure the safety of the flying public—including the 346 victims of the two crashes.

4. Had Boeing presented to the FAA a complete, accurate and truthful description of MCAS, (e.g., operating envelope, triggers, capabilities, etc.) as well as its observed behavior in the simulator, the FAA would have mandated Level D flight simulator training for any pilots flying the 737 MAX. Level D training was what was ultimately required when the FAA overcame the effects of Boeing's conspiracy to deceive it and learned all of the details about the scope of MCAS.

As a convenience to the Court and opposing counsel, the victims' families have requested that Ms. Norton write an expert report detailing the basis for her opinions, consistent with the requirements for such a report that are conventionally followed in civil litigation. However, in addition to her work as an aviation expert for the last thirteen years, Ms. Norton remains a current, full-time captain for a major airline. On February 9, the Court entered its scheduling order regarding the victims' families' reply. Counsel for the victims' families quickly alerted Ms. Norton to this scheduling order while she was on a trip from which she returned today, February 14. Thereafter, she will attend the funeral of a close family friend on February 15, and subsequently will fly a three-day work trip beginning on February 16. This schedule renders it impossible for Ms. Norton to prepare her opinions by February 18.

More broadly, to develop a full-scale report will take a reasonable amount of time. Such a report will require more detailed review of materials regarding the two crashes. Before being engaged by victims' counsel, Ms. Norton had previously been engaged by other clients in aircraft matters in federal cases. She has two other Fed. R. Civ. P. 26 reports due before the end of March, which were both calendared many months ago. Ms. Norton also will be piloting a trip each week during March, as well as receiving her annual recurrent training from March 23 through 26.

In view of these other commitments, Ms. Norton has requested that she be given until March 31, 2022, to prepare her expert report.

*Dr. Rune Storesund*

The victims' families recently retained Dr. Rune Storesund on issues related to risk and catastrophic consequences. Dr. Storesund's expertise centers around quality, risk, reliability, and safety socio-technical systems. His formal educational background includes a Bachelor of Arts in Anthropology from U.C. Santa Cruz and a Bachelors, Masters, and Doctorate Degree in Engineered Systems from U.C. Berkeley. Among other things, he is a Board-Certified Forensic Engineer and a Senior Member of the National Academy of Forensic Engineers (NAFE). He is an active member, publishing peer-reviewed articles, attending and presenting topics at NAFE conferences, and serving as a peer-reviewer for the NAFE Journal. Since 2012, he has served as the Executive Director for the Center for Catastrophic Risk Management (CCRM) at U.C. Berkeley. Dr. Storesund's background and experience is more fully described in his attached CV.

At this time, based on his training and experience and his review of some materials provided by counsel, Dr. Storesund is preparing to offer expert opinions in this case that include, in substance, the following:

1. Boeing's criminal conduct delayed certain required risk-reduction activities and substantially contributed to the knowable and preventable crashes of Lion Air

Flight 610 on October 29, 2018, and Ethiopian Airlines Flight 302 on March 10, 2019—crashes which killed 346 passengers and crew.

2. The cost implications to responsibly ascertain the "training differences" associated with the 737 MAX (with MCAS) was insignificant relative to the disproportionate risk that the aircraft passengers and crew were exposed to—including the 346 passengers and crew on the two Boeing 737 MAX flights that crashed.

As a convenience to the Court and opposing counsel, counsel for the victims' families have requested that Dr. Storesund also put together an expert report supporting his opinions.

Dr. Storesund has requested an extension of time beyond February 18 in which to finalize his opinions and prepare a detailed expert report. The victims' families retained him recently and he has graciously offered his services on a pro-bono basis. He requires additional time to fully review the facts in the case. He has a number of obligations (in addition to his recurring primary employment obligations) that preclude working exclusively on his report, including:

- Preparation for an upcoming workshop on 'distributed safety' at the HAAS School of Business at U.C. Berkeley on March 11, 2022, where he is the primary coordinator for the workshop setup, speakers, and attendees;

- Preparation for an upcoming workshop on "Safety Culture" focused on high-hazard dams in the United States at the HAAS School of Business at U.C. Berkeley on March 12, 2022;

- Scheduled legislative meetings in Washington, D.C. from March 2 through March 4, 2022, representing Region 9 (California) as an elected Governor of the American Society of Civil Engineers and messaging the importance of safety and reliability in the nation's critical infrastructure sectors;

- Testimony to the Oroville Citizen's Advisory Commission regarding Safety Culture and High Reliability Organization Principles with regards to proactive risk-reduction downstream of high-hazard dams; and

- Ongoing technical consultations for active research projects associated with the Center for Catastrophic Risk Management, such as "The Residual Risks of Extreme Floods: A Challenge for Achieving the Sustainable Development Goals (RREFlood Project)."

Understanding that Ms. Norton has requested an extension of time until March 31, 2022, to prepare her report—and his report may also draw upon some of the information contained in her report—

8

Dr. Storesund has likewise requested an extension of time to submit his expert report until March 31 as well. This additional time is required to fully review the extensive factual information surrounding the two crashes and the implications of Boeing's criminal conduct.

### *An FAA Expert*

The victims' families have also contacted a well-qualified expert regarding issues associated with the FAA and pilot training requirements. The victims' families have found an expert with extensive training and experience in the area, including past employment at the FAA. However, his current employer requires a conflicts-of-interest review before he can move forward with outside engagements. That conflicts-of-interest check is occurring currently and should be completed within a week. Thereafter, it would take several weeks to finalize expert opinions in the area and draft an appropriate expert report.

This expert would provide highly relevant and useful opinions concerning how Boeing's criminal conduct interfered with FAA training requirements for both domestic and foreign airlines. Here again, in light of the circumstances described above, it is not possible for the victims' families to provide this important evidence to the Court by February 18.

### *The Victims' Families Proposed Schedule*

In view of the foregoing, the victims' families propose the following modest modifications to the Court's scheduling order entered on February 9, 2022.

The victims' families' reply in support of their CVRA motion would be due on March 4, 2022 (rather than February 18, as currently scheduled). This additional two weeks would allow the victims' families to work with their experts and assemble relevant factual information to provide in their reply. In that March 4 reply, the victims' families would include summaries of expected expert witness opinions.

The victims' families' motion for appropriate discovery would likewise be due on March 4, 2022 (rather than February 25, as currently scheduled). The motion for appropriate discovery is necessarily interwoven with the reply in support of their motion. As the victims' families outline the factual issues connected with this case in their reply, they may need to request additional discovery in some areas.

The Government and Boeing would then respond to the motion for appropriate discovery by March 11, 2022. The victims' families would then reply by March 18, 2022.

The victims' families would file their supporting expert reports no later than March 31, 2022.

*Certificate of Conference*

Via email sent today, counsel for the victims' families asked the Government and Boeing for their positions on this motion.

The Government takes no position on the victims' families' motion.

Boeing defers to the court on the victims' families' motion.

## **CONCLUSION**

This Court should provide the victims' families additional time to file their reply in support of their CVRA motion and their motion for appropriate discovery, as outlined here. A proposed order to that effect is attached.

Dated: February 14, 2022

                                          Respectfully submitted,

| /s/ Warren T. Burns | /s/ Paul Cassell |
|---|---|
| Warren T. Burns (Texas Bar No. 24053119) | Paul G. Cassell (Utah Bar No. 06078) |
| Burns Charest, LLP | (Counsel of Record) |
| 900 Jackson Street | Utah Appellate Project |
| Suite 500 | S.J. QUINNEY COLLEGE OF LAW |
| Dallas, TX 75202 | University of Utah |
| 469-904-4550 | 383 S. University St. |
| wburns@burnscharest.com | Salt Lake City, UT 84112 |
| | 801-585-5202 |
| | cassellp@law.utah.edu |
| | (no institutional endorsement implied) |
| | (*pro hac vice*) |

*Attorneys for Victims' Families*

11

## CERTIFICATE OF SERVICE

I certify that on February 14, 2022, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.

/s/  Paul G. Cassell
Paul G. Cassell