## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-005-O-1 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF MOTION OF NAOISE CONNOLLY RYAN, AS REPRESENTATIVE OF MICHAEL RYAN; EMILY CHELANGAT BABU AND JOSHUA MWAZO BABU, AS REPRESENTATIVES OF JARED BABU MWAZO; CATHERINE BERTHET, AS REPRESENTATIVE OF CAMILLE GEOFFROY; HUGUETTE DEBETS, AS REPRESENTATIVE OF JACKSON MUSONI; LUCA DIECI, AS REPRESENTATIVE OF PAOLO DIECI; BAYIHE DEMISSIE, AS REPRESENTATIVE OF ELSABET MINWUYELET WUBETE; SRI HARTATI, AS REPRESENTATIVE OF ERYANTO; ZIPPORAH KURIA, AS REPRESENTATIVE OF JOSEPH KURIA WAITHAKA; JAVIER DE LUIS, AS REPRESENTATIVE OF GRAZIELLA DE LUIS Y PONCE; CHRIS MOORE, AS REPRESENTATIVE OF DANIELLE MOORE; PAUL NJOROGE, AS REPRESENTATIVE OF CAROLYNE NDUTA KARANJA, RYAN NJUGUNA NJOROGE, KELLI W. PAULS, AND RUBI W. PAULS; YUKE MEISKE PELEALU, AS REPRESENTATIVE OF RUDOLF PETRUS SAYERS; JOHN KARANJA QUINDOS, AS REPRESENTATIVE OF ANNE WANGUI KARANJA; NADIA MILLERON AND MICHAEL STUMO, AS REPRESENTATIVES OF SAMYA STUMO; GUY DAUD ISKANDER ZEN S., AS REPRESENTATIVE OF FIONA ZEN; AND OTHER SIMILARLY SITUATED REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 UNDER THE CRIME VICTIMS' RIGHTS ACT FOR AN ARRAIGNMENT OF BOEING AND A HEARING ON CONDITIONS OF RELEASE**

Warren T. Burns
Burns Charest, LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell
(Counsel of Record)
Utah Appellate Project
S.J. Quinney College of Law
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice*)

*Attorneys for Victims' Families*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................................... iv

I.   Rule 10 of the Federal Rules of Criminal Procedure Requires This Court to Publicly
     Arraign Boeing....................................................................................................2

II.  An Arraignment is Required So That This Court Can Impose Appropriate Conditions
     of Release Of Boeing...........................................................................................8

III. The Victims' Families Have Standing to Point Out to the Court the Need For
     Conducting a Public Arraignment and Setting Conditions Of Release .......................13

IV.  This Court Should Hold A Public Arraignment And Provide Reasonable Advance
     Notice To The Victims' Families ................................................................................16

CONCLUSION..........................................................................................................17

CERTIFICATE OF SERVICE .........................................................................................18

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Bradley on behalf of AJW v. Ackal,* 954 F.3d 216, 223 (5th Cir. 2020) ........................................ 15

*Gundlach v. United States*, 262 F.2d 72, 76 (4th Cir. 1958.......................................................... 14

*In re Hearst Newspapers, L.L.C.,* 641 F.3d 168, 180, 182 (5th Cir. 2011) .................................. 15

*In re: GDC Technics, LLC, Debtor*, Case No. 21-50484-CAG, Dkt. 503 at ¶ 80 (Bankr. W.D.
    Tex. Oct. 27, 2021). ............................................................................................................. 12

*Louisiana Environmental Action Network v. City of Baton Rouge*, 677 F.3d 737, 746 (5th Cir.
    2012) ..................................................................................................................................... 13

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) .................................................... 14

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.,* 702 F.3d 794, 799 (5th
    Cir. 2012............................................................................................................................... 14

*United States v. Avanos Med. Inc.*, No. 3:21-cr-307 (N.D. Tex. July 12, 2021). ......................... 13

*United States v. Chagra*, 701 F.2d 354, 358 (5th Cir. 1983)....................................................... 15

*United States v. Commonwealth Edison Co.*,
    No 1:20-cr-368 (N.D. Ill. Aug. 5, 2020) .............................................................................. 13

*United States v. Moore,*
    37 F.3d 169 (5th Cir. 1994)............................................................................................... 6, 7

*United States v. USPLABS, LLC*, No. 3:15-cr-00496-L, Dkt. 139 at 2 (N.D. Tex. 2016) ............. 9

*United States v. Valenti,* 987 F.2d 708, 713 (11th Cir.1993) ...................................................... 15

*United States. v. Commonwealth Edison Co.*,
    No. 1:20-cr-368 (N.D. Ill. July 28, 2020) ............................................................................ 13

<u>Statutes</u>

18 U.S.C. § 1001............................................................................................................................ 11

18 U.S.C. § 3142......................................................................................................................... 9, 13

18 U.S.C. § 3142(a) ............................................................................................................... 1, 8, 12

18 U.S.C. § 3142(c) ....................................................................................................................... 10

18 U.S.C. § 3142(c)(1)(A) ............................................................................................................. 10

18 U.S.C. § 3142(c)(1)(B). ............................................................................................................ 10

18 U.S.C. § 3142(c)(1)(B)(v) .......................................................................................................... 9

18 U.S.C. § 3142(c)(1)(B)(xiv)....................................................................................... 2, 9, 11, 15

18 U.S.C. § 3147............................................................................................................................ 11

18 U.S.C. § 3147(1) ....................................................................................................................... 11

18 U.S.C. § 3148 ............................................................................................... 11

18 U.S.C. § 3148(a). ......................................................................................... 11

18 U.S.C. § 3559(a) .......................................................................................... 11

18 U.S.C. § 3771(a)(4) ...................................................................................... 16

Other Authorities

Adv. Comm. Note, Fed. R. Crim. P. 10, 2002 Amendment ................................ 5, 10, 14

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 114 (2012). ........................................................................................................ 3

BRYAN GARNER, DICTIONARY OF LEGAL USAGE 953 (2011) ......................................... 4

CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 162 (5th ed.). ................................................................................................................ 7

Rules

Fed. R. Crim. P. 10 (1946). ................................................................................. 4

Fed. R. Crim. P. 10(a). ..................................................................................... 1, 2, 4

Fed. R. Crim. P. 10(b). ....................................................................................... 5

Fed. R. Crim. P. 11(b)(1)(F .............................................................................. 3

Fed. R. Crim. P. 2 .............................................................................................. 7

Fed. R. Crim. P. 23(a) ......................................................................................... 3

Fed. R. Crim. P. 5(d) .......................................................................................... 10

Fed. R. Crim. P. 7(b) .......................................................................................... 6

Fed. R. Crim. P. 7(a)(1) ...................................................................................... 5

Constitutional Provisions

U.S. Const. amend. V ......................................................................................... 5

**REPLY IN SUPPORT OF MOTION OF NAOISE CONNOLLY RYAN, ET AL.,
REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT
JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302, FOR AN ARRAIGNMENT OF
BOEING AND A HEARING ON CONDITIONS OF RELEASE**

Naoise Connolly Ryan, et al. (the "victims' families"),[1] through undersigned counsel, file this reply in support of their motion (Dkt. 18) for the Court to publicly arraign Boeing and to establish the conditions of Boeing's release.

With the Government's assistance, Boeing has contrived to circumvent the normal obligations that criminal defendants face in a criminal case. Boeing has evaded a public arraignment—something that the Federal Rules of Criminal Procedure direct "must" take place. Fed. R. Crim. P. 10(a). And, in eluding an arraignment, Boeing has likewise sidestepped conditions of release that this Court routinely imposes on other criminal defendants. *See* 18 U.S.C. § 3142(a) (requiring the Court to impose conditions of release upon a defendant's appearance). This Court should promptly hold a public arraignment and impose release conditions on Boeing.

The family members have standing to alert this Court to the need to comply with the Rules of Criminal Procedure and the release statute. An arraignment is designed not only for a defendant's benefit but also to ensure transparency through public proceedings. Even setting aside the Crime Victims' Rights Act,[2] members of the public have interests in a public arraignment. Just as members of the public can object to an order closing court proceedings, members of the public

---

[1] In addition to Ms. Ryan, the other victims' families members filing this reply are Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, Guy Daud Iskandar Zen S., and others similarly situated.

[2] The victims' families are preparing a separate reply brief explaining why they are representatives of "crime victims" and thus have protections under Crime Victims' Rights Act ("CVRA"). *See generally* Dkt. 52 ("CVRA Mot.") (explaining CVRA issues). In this reply, the victims' families address the arraignment and bond hearing issues without relying on such status.

can alert this Court to its failure to hold a public arraignment and to set required conditions of release, including conditions to "assure the safety of … the community." 18 U.S.C. 3142(c)(1)(B)(xiv).

**I.      Rule 10 of the Federal Rules of Criminal Procedure Requires this Court to Publicly Arraign Boeing.**

Boeing and the Government have successfully contrived to steer this important criminal case away from any open court proceedings. Through their "Joint Motion for Exclusion of Time Under the Speedy Trial Act" (Dkt. 5) and resulting uncontested order excluding time (Dkt. 6), Boeing and the Government have stayed all proceedings in this case. But this approach flouts Rule 10 of the Federal Rules of Criminal Procedure, as well as the Government's practice in similar cases.

Rule 10(a) requires this Court to hold a public arraignment on the felony criminal information filed against Boeing. Rule 10(a) directs that an open court arraignment "must be conducted":

> (a) In General. An arraignment *must be conducted* in open court and must consist of:
> (1) ensuring that the defendant has a copy of the indictment or information;
> (2) reading the indictment or information to the defendant or stating to the defendant the substance of the charge; and then
> (3) asking the defendant to plead to the indictment or information.

Fed. R. Crim. P. 10(a) (emphasis added). Obviously "must" is mandatory language—so something "must be conducted." Under the provision's plain language, what "must be conducted" is the subject of the sentence: an arraignment.

Despite the rule's plain language, in Boeing's view the rule only explains "*how* an arraignment must be conducted *when one occurs*." Dkt. 62 at 16. Thus, Boeing reads the rule as though it were written: "*If* an arraignment occurs, it *must* be conducted in open court." Of course,

if the rules' drafters wanted to make an arraignment conditional, they could have written the rule that way. This Court must follow the rule's plain language, which unconditionally directs that an arraignment "must be conducted."

In its brief, Boeing effectively admits that Rule 10 is not written in conditional language. Boeing illustrates its position on Rule 10 by noting that, under Rule 23, the drafters provided various requirements for a jury trial but did "not say that a trial must occur." Boeing Resp. at 16 n.6 (citing Fed. R. Crim. P. 23). But Rule 23's jury trial provision *is* written conditionally, recognizing that trials sometimes may not occur: "*If* the defendant is entitled to a jury trial, the trial *must be* … [listing conditions]." Fed. R. Crim. P. 23(a) (emphases added). And this conditional requirement for a trial further builds on Rule 11's guilty plea provisions, which require that *if* a defendant enters a guilty plea, he must first be advised that he will be waiving his right to a trial. *See* Fed. R. Crim. P. 11(b)(1)(F).

Rule 10(a)'s unconditional arraignment provision is structured differently than Rule 23(a)'s conditional jury trial provision. Rule 10 does not provisionally provide that "if" an arraignment is conducted, then certain things follow. It provides that an arraignment "must be conducted."

This categorical interpretation is not only obvious from the rule's structure but also from the plain meaning of the word "must." Justice Antonin Scalia and Brian Garner have helpfully explained why the term "must" is now used consistently in the federal rules, including the Federal Rules of Criminal Procedure. As they describe in their well-regarded treatise on statutory construction, for many years, the federal rules' drafters often used the term "shall." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 114 (2012). But "shall" can have varying meanings, which created confusion. *Id.* As a result "there has been a

movement in recent years to rewrite the federal rules—appellate, criminal, civil, evidence—to remove all the *shalls* and otherwise restyle them. . . . Each *shall* became *must*, *is*, or *may.*" *Id.*[3]

This transition from *shall* to *must* has taken place in Rule 10. As originally enacted in 1946, Rule 10 used the term *shall*, stating: "Arraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant or stating to him the substance of the charge and calling on him to plead thereto." Fed. R. Crim. P. 10 (1946). In 2002, the rule was redrafted to its current form, in which *shall* was changed to *must.*

The advantage of the term "must" is that it avoids conflicting meanings. As Bryan Garner has explained, the term "must" is construed under the prevailing "American rule" as meaning "is required to" and "is used primarily when an inanimate object appears as subject of the clause." BRYAN GARNER, DICTIONARY OF LEGAL USAGE 953 (2011). As an illustration, Garner gives this sentence: "Notice *must* be sent within 30 days." *Id.*

Usefully for this case, Garner also explained that "*must* denotes all required action, *whether or not the subject of the clause performs the action of the verb* …." *Id.* (second emphasis added). Thus, Garner gives the illustration of parallel meanings in two sentences:

(1) "Notice *must* be sent within 30 days."

(2) "The employee *must* send notice within 30 days."

*Id.*

Against that backdrop, it is easy to see the parallel meaning in two sentences concerning the rule's arraignment requirement:

(1) "An arraignment *must be conducted* in open court …." *See* Rule 10(a) as drafted.

(2) "The judge *must conduct* an arraignment in open court …."

---

[3] One of the authors of the treatise (Bryan Garner) had a leading role in this process.

Under either parallel construction of Rule 10(a), what "must" happen in this case is the same: an arraignment.

The immediately adjacent provision to Rule 10(a)—Rule 10(b)—confirms the interpretation that an arraignment must occur. The rule is entitled "waiving appearance" and provides that "a defendant need not be present for the arraignment" in certain circumstances. Fed. R. Crim. P. 10(b). As with Rule 10(a), Rule 10(b) is not written conditionally (e.g., "*If* an arraignment occurs, *then* the defendant can waive …."). Instead, the rule categorically assumes that an arraignment must be conducted and that the defendant can only waive appearance in certain situations. Neither Boeing nor the Government contend that those circumstances permitting waiver exist here.

This interpretation that Rule 10(b) does not permit a defendant to waive arraignment is confirmed by a specific Advisory Committee Note. The Advisory Committee Note to the 2002 Amendment to Rule 10(b) states flatly that a defendant cannot waive an arraignment: "It is important to note that the amendment [i.e., the new Rule 10(b), allowing a defendant to waive personal appearance in certain situations] *does not permit the defendant to waive the arraignment itself*, which may be a triggering mechanism for other rules." Adv. Comm. Note, Fed. R. Crim. P. 10, 2002 Amendment (emphasis added).

Boeing also fails to discuss the fact that Rule 10(a)'s arraignment requirement follows naturally from Rule 7's provisions regarding "The Indictment and Information." *See* Dkt. 18 at 5. Building on the Fifth Amendment's constitutional requirement that no person "shall be held to answer" for a felony crime "unless on a[n] . . . indictment of a Grand Jury" (U.S. Const. amend. V), Rule 7(a)(1) provides that a felony offense "must be prosecuted by an indictment." The Rule then goes on to permit a defendant to waive that right to an indictment and be prosecuted by

5

information only if "the defendant—*in open court* and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment." Fed. R. Crim. P. 7(b) (emphasis added). This provision's unambiguous language requires that the defendant must waive his right to an indictment "in open court."

Without that "open court" waiver, Boeing cannot be permissibly prosecuted in this case—and thus Boeing cannot be a party to a DPA regarding how the prosecution of the charges filed against it will proceed. To be sure, as the Fifth Circuit has explained, a defendant can sign a waiver form ahead of time—so long as the form is then "filed in open court" and, at that time, the court "specifically ask[s] if the defendant ha[s] any objection to the filing." *See United States v. Moore,* 37 F.3d 169, 173 (5th Cir. 1994) (finding the "open court" requirement satisfied where the defendant was asked about a signed document in open court and where the document itself referred to the fact that "the [right to] indictment was waived in open court"). While Boeing has executed a document that purports to waive its right to an indictment, *see* Dkt. 3, that document has yet to be presented in "open court" as required by the Fifth Circuit in *Moore*—and the "open court" process whereby Boeing is advised of its rights has yet to take place. In their initial motion, the victims' families specifically explained how *Moore* requires an arraignment in this case. Dkt. 18 at 5-6. In its response, Boeing does not even cite *Moore*, much less respond to this controlling circuit precedent.[4]

---

[4] Boeing also maintains that the exclusive purpose of an arraignment is to inform the defendant of the criminal charges against it. *See* Dkt. 62 at 16. From this premise, Boeing argues that because it is represented by numerous attorneys and has entered into a "comprehensive" agreement with the Government (*id.*), a public arraignment is unnecessary. In their "standing" arguments below, the victims' families show that the arraignment serves not only Boeing's purposes but also the public's. But, in any event, merely because Boeing can understand the charges it faces without a court hearing is no reason to interpret the rule as generally permitting such an approach. The Federal Rules of Criminal Procedure must be interpreted so that they operate fairly for all defendants, not only those with vast financial resources. Impoverished

The Government is more circumscribed in its response to the victims' families' arraignment arguments. As with Boeing, the Government neither cites nor discusses *Moore* in its brief response. *See* Dkt. 61. Nor does the Government address Rule 10(a)'s textual requirement that an arraignment "must" be conducted. *See id.* Instead, the Government seems to stake out the position that Rule 10 "does not require that an arraignment take place within a particular period of time." Dkt. 61 at 2 (citing CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 162 (5th ed.)). But the treatise the Government cites specifically states that Rule 10(b) "only addresses a defendant's ability to waive his right to be physically present at the arraignment. *It does not authorize the defendant to waive the arraignment itself.*" WRIGHT & MILLER, *supra*, at § 162 (emphasis added). Thus, the Government's own source confirms that Boeing cannot waive the arraignment requirement. Indeed, the Government seems to finally arrive at the same conclusion, asserting only that this Court can "defer[]" the arraignment to some unspecified time. Dkt. 61 at 2.

With regard to the issue of *when* that "deferred" arraignment should occur, the victims' families agree that Rule 10 does not establish a specific time limit. But Rule 2 requires that the rules be interpreted to eliminate "unjustifiable" delay. Fed. R. Crim. P. 2. Here, neither the Government nor Boeing provides any good reason for further deferring Boeing's arraignment on the serious criminal charge filed against it—a charge the involves the deaths of 346 persons. Accordingly, the Court should hold a public arraignment promptly, with reasonable notice to the victims' families so that they can make suitable travel arrangements to attend. *See* Part IV, *infra.*

---

defendants without legal counsel may well require a public hearing in which a judge explains the charges. Rule 10's drafters no doubt has such defendants in mind in categorically requiring that a public arraignment "must" be held rather than authorizing some sort of discretionary, case-specific determination of whether the requirement could be discarded for sophisticated defendants.

## II.    An Arraignment is Required So That This Court Can Impose Appropriate Conditions of Release on Boeing.

Boeing's public arraignment would serve important practical purposes, including allowing the Court to impose appropriate conditions of release on Boeing. Indeed, as the victims' families explained in their motion (Dkt. 18 at 8-11), Boeing has weaseled out of conditions of release that are required by law and automatically imposed on other defendants.

As with its argument about the arraignment itself, the Government's position on the conditions-of-release issue is carefully couched. The Government does not contest that Boeing has escaped conditions of release that this Court routinely imposes on other defendants. Rather, the Government takes the position that, on the facts of this case, it is unlikely—at least in the Government's estimation—that any conditions of release will ultimately come into play. *See* Dkt. 61 at 3 (arguing that the utility of additional conditions is "questionable"). But the Government's sanguine predictions about how nicely a criminal defendant will behave over the course of the next several years is no justification for departing from the law. Congress has required that this Court must set conditions of release for *all* defendants. This Court must follow the law and impose such conditions on Boeing.

Title 18 U.S.C. § 3142(a) provides that, "Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer *shall issue* an order that, pending trial, the person be … [detained or] released on a condition or combination of conditions under subsection (c) of this section" (emphasis added). In turn, subsection (c) describes various conditions of release that the judicial officer "shall" order. Here, Boeing has contrived (with Government cooperation) to escape the law's requirements.

The Government appears to sheepishly agree that Boeing has evaded having the conditions of release that Congress has required the Court to impose. But the Government attempts to justify

this departure from the law with an appeal to the notion that it is "unclear" what "practical purpose" conditions of release would serve in this case. Dkt. 61 at 3. Of course, one practical purpose would be to show that the Court applies the law's requirements equally to all criminal defendants who come before it—rich and poor alike.

But, in addition, the Government is simply mistaken that conditions of release would serve no practical purpose here. The Government agrees that 18 U.S.C. § 3142 sets out the conditions that a district court must consider when allowing a corporation to be "released" during the pendency of a criminal case. But the Government asserts that, because Boeing is a corporation, the only traditional condition of release that "could apply is the requirement that [Boeing] not commit a crime during the period of release." Dkt. 61 at 3.

Not so. The Court could—and should—impose on Boeing several other standard conditions of release. Section 3142(c)(1)(B)(v) provides for a standard condition that a criminal defendant "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense." 18 U.S.C. § 3142(c)(1)(B)(v). Section 3142(c)(1)(B)(vi) provides a standard condition that a criminal defendant "report, on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency." 18 U.S.C. § 3142(c)(1)(B)(vi). And, most important, section 3142(c)(1)(B)(xiv) broadly provides a standard condition that a criminal defendant "satisfy any other condition that is reasonably necessary . . . to assure the safety of any other person and the community." Indeed, the U.S. Attorney's Office for the Northern District of Texas has previously argued to this Court that "conditions of release can be applied to a corporate entity to ensure the safety of the community." *United States v. USPLABS, LLC*, No. 3:15-cr-00496-L, Dkt. 139 at 2 (N.D. Tex. 2016) (citing 18 U.S.C. § 3142). The Court should impose all of these standard release conditions in this case.

Further, the Government concedes that a "traditional" condition of release imposed on defendants is the requirement that a defendant "not commit a crime during the period of release." Dkt. 61 at 3. The Government admits that Boeing has escaped this requirement. *Id.* And the Government must acknowledge that the only way that this "traditional" condition of release can be imposed on Boeing is "[u]pon [Boeing's] *appearance* before a judicial officer," 18 U.S.C. § 3142(a) (emphasis added)—i.e., at an arraignment. No doubt this explains why Rule 10's drafters did not generally permit defendants to waive an arraignment; the arraignment may be the "triggering mechanism" for other events—such as imposing conditions of release. Adv. Comm. Note, Fed. R. Crim. P. 10, 2002 Amendment; *see also* Fed. R. Crim. P. 5(d) (providing that in any felony case, at the initial appearance "the judge *must* detain or release the defendant as provided by statute or these rules" (emphasis added).

Presumably recognizing that Boeing has eluded these normal requirements, the Government gamely maintains that the significance of directing Boeing not to commit any new crimes is "questionable" in light of the DPA's provisions. Dkt. 61 at 3. But the Government is not free to decide that in a particular case the no-new-crimes condition can be ignored. Congress has *required* this condition in *all* cases. The statute breaks the conditions of release into two kinds: the no-new-crime condition, 18 U.S.C. § 3142(c)(1)(A), and all others, 18 U.S.C. § 3142(c)(1)(B). The statute requires this Court to impose the no-new-crimes condition in all cases. *See* 18 U.S.C. § 3142(c)(1) (the "judicial officers *shall order* the pretrial release of the person—(A) *subject to the condition that the person not commit a Federal, State, or local crime* during the period of release … ; and (B) subject to the least restrictive further condition, or combination of conditions ….."). 18 U.S.C. § 3142(c) (emphasis added).

The benefit to Boeing from dodging this condition is significant. The Government cannot—and does not—deny that the effect of Boeing's maneuver is to immunize Boeing from any prosecution under 18 U.S.C. 3147, which criminalizes committing an offense "while released under this chapter." Boeing has yet to be "released under this chapter" because the Court has not yet imposed conditions of release on Boeing. And the Government cannot deny that § 3147 creates a ten-year-felony crime, *see* 18 U.S.C. § 3147(1), which not only subjects Boeing to prosecution under that statute but would likely increase the penalties Boeing would face if it committed any new crimes.[5]

The Government also gamely maintains that, were Boeing to commit a new crime, there would be no other conditions of release that would then become applicable. *Id.* at 4. Again, not true. If Boeing were to commit a new crime—thereby violating a condition of release that this Court had imposed—then the Court would, in the first instance, decide what sanction is appropriate. Title 18 U.S.C. § 3148 provides that a defendant who violates a condition of release is "subject to a revocation of release, an order of detention, and prosecution for contempt of court." 18 U.S.C. § 3148(a). This provision would allow the Court to prosecute Boeing for contempt and also to revoke or modify Boeing's previous conditions of release. In modifying conditions of release, the Court could impose new, more demanding, conditions. As an illustration, this Court might conclude that a corporate monitor was an appropriate response to Boeing's new crime.[6]

---

[5] For example, if Boeing were to lie to a federal agency, violating 18 U.S.C. § 1001, it would only be committing a crime subject to a five-year term of imprisonment, whereas if prosecuted for the same conduct under § 3147, it would be charged with a crime subject to a ten-year-term of imprisonment. While a corporation is not directly subject to imprisonment, the change in penalty from five years to ten years moves the crime from a Class D to a Class C felony, 18 U.S.C. § 3559(a)—i.e., makes the crime a more serious one.

[6] Indeed, if given the opportunity, the victims' families intend to argue that a corporate monitor is an appropriate condition of release *right now*. *See* 18 U.S.C. § 3142(c)(1)(B)(xiv) (allowing other appropriate conditions to ensure the safety of "the community").

In short, what the Department has done here is exclude the Court from any ability to hold Boeing accountable if it commits a new crime. Under the DPA, the determination of "whether [Boeing] has breached the Agreement and whether to pursue prosecution of [Boeing] . . . shall be in the Fraud Section's *sole discretion."* DPA 17 ¶ 26 (emphasis added). No doubt, this is a cozy arrangement for the Government and its negotiating partner, Boeing. But the law does not permit the Government to simply arrogate to itself decisions that Congress has placed within the province of the judiciary.

Nor should this Court blindly adopt the Government's sanguine prediction that the Boeing will behave lawfully for the next several years. As the DPA itself recounts, Boeing's "prior history of misconduct" includes a 1989 criminal conviction for an employee illegally obtaining confidential military planning documents and a 2006 criminal non-prosecution agreement for an employee engaging in procurement fraud. DPA ¶ 4(f). Boeing also has a 2015 civil FAA settlement related to safety and quality issues. *Id.* And Boeing is currently involved in litigation in which it is alleged that, just last year, Boeing ignored more than $300 million in fraudulent transfers to insiders at one of Boeing's subcontractors. *See In re: GDC Technics, LLC, Debtor*, Case No. 21-50484-CAG, Dkt. 503 at ¶ 80 (Bankr. W.D. Tex. Oct. 27, 2021).

Finally, it is informative to look at how other federal courts around the country handle arraignment issues in DPA cases. The victims' families and Boeing agree that practices appear to have diverged. *Compare* Dkt. 18 at 7 (collecting cases) *with* Dkt. 62 at 17-18 (same). But the reality is that, even among those conflicting cases, very few courts have analyzed Rule 10's language to determine whether an arraignment is required. Thus, the most Boeing can claim for its cases is that the "dockets reflect no arraignment ...." Dkt. 62 at 17 n.7. But the victims' families have cited a recent case in which the Justice Department, experienced defense counsel, and the district court

specifically discussed the issue and agreed that Rule 10's plain language requires an arraignment. *See* Dkt. 18 at 7 (citing *United States. v. Commonwealth Edison Co.*, No. 1:20-cr-368, Dkt. 12 (hrng. transcript) at 3-7 (N.D. Ill. July 28, 2020) (Government and defense counsel discussing need to arraign defendant Commonwealth Edison in a case involving a DPA comparable to this one); *id.*, Dkt. 18 (hrng. trans.) at 5-7 (N.D. Ill. Aug. 5, 2020) (the district court notes that, under the plain language of Fed. R. Crim. P. 10, a plea to the information in open court is required). This recent case specifically analyzing Rule 10's provisions is more useful than any of Boeing's cases, where the courts (often working in the middle of a global pandemic) simply ignored the requirement to hold a public arraignment.[7]

### III.    The Victims' Families Have Standing to Point Out to the Court the Need for Conducting a Public Arraignment and Setting Conditions of Release.

Boeing and the Government also argue that the victims' families lack "standing" to brief and argue to this Court that the Federal Rules of Criminal Procedure require it to hold a public arraignment and that 18 U.S.C. § 3142 requires it to impose conditions of release. The parties' argument is misplaced. How to interpret the rules and statutes applicable in this case is not an issue of "standing." For example, if the rules require an arraignment, the Court should hold one. The rules either require one or do not. The Court should simply interpret the law and then do what the law requires.

---

[7] Boeing also notes that in another case in this district, another judge did not arraign a defendant in a deferred prosecution situation. *See* Dkt. 62 at 17 (*citing United States v. Avanos Med. Inc.*, No. 3:21-cr-307 (N.D. Tex. July 12, 2021)). But the issue of whether Rule 10 required an arraignment in that case was not litigated. *Cf. Louisiana Environmental Action Network v. City of Baton Rouge*, 677 F.3d 737, 746 (5th Cir. 2012) (noting that "driving-by jurisdictional rulings" should be accorded "no precedential effect"). And *Avonos* post-dated this case. Thus, if anything, that case merely proves that, having gotten away with skipping an arraignment here, the Justice Department's Fraud Section now believes it has a greenlight to do the same thing in other cases.

It is important to note that the issue of whether the Rules require an arraignment does not hinge on whether the victims' families are CVRA "crime victims." The families pursue their CVRA rights in a separate motion. *See* Dkt. 52. But whether the families possess a CVRA right to an arraignment is a separate issue from whether Rule 10 requires a public arraignment.

In any event, Boeing's and the Government's arguments that victims' families lack "standing" is incorrect. In order to possess "standing," the victims' families need to show an "injury in fact." *See, e.g., Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.,* 702 F.3d 794, 799 (5th Cir. 2012). Here, the victims' families are injured by being denied an opportunity to see Boeing arraigned in "open court." The open-court arraignment requirements "are designed not only to safeguard important rights of defendants" but also "to protect proper administration of the criminal law." *Gundlach v. United States*, 262 F.2d 72, 76 (4th Cir. 1958). Thus, arraignments must always be conducted in a setting that will "promote *the public's* confidence in the integrity and solemnity of a federal criminal proceeding." Adv. Comm. Notes, Fed. R. Crim. P. 10, 2002 Amendments (emphasis added) (discussing video teleconferencing arrangements for arraignments). The Government's private arrangement with Boeing skip the public arraignment goes against a fundamental tenet of the federal criminal justice system.

The conclusion that the victims' families have standing follows immediately from numerous court decisions from the Supreme Court and the Fifth Circuit that members of the public (e.g., media reporters) are permitted to challenge denials of access to criminal court hearings. For example, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), recognized a public right of access to criminal proceedings, a right which a newspaper reporter was permitted to assert. *Id.* at 575-81. The Fifth Circuit has enforced these open court requirements because, "[w]hen a shocking crime occurs, a community reaction of outrage and public protest often follows.

14

Thereafter the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion." *In re Hearst Newspapers, L.L.C.,* 641 F.3d 168, 180 (5th Cir. 2011). Here, a public arraignment of Boeing will provide an "outlet" for "community "concern, hostility, and emotion." Indeed, that is precisely why the victims' families want to attend Boeing's arraignment. The families have been denied an opportunity to see with their own eyes whether justice is being done. If the Court were to schedule an arraignment, a number of the victims' families would attend that "open court" proceeding—to see Boeing standing in the dock of the Court and entering its plea to the charges filed against it. Their "injury" stems inexorably from being denied an opportunity to attend that open court hearing.

In this Circuit (and elsewhere), a member of the public possesses standing to be heard before he is excluded from a criminal proceeding. *See, e.g., In re Hearst Newspapers, L.L.C.,* 641 F.3d at 182 (noting that Courts of Appeals have "uniformly" required an "opportunity to be heard" before the public is excluded from traditionally public proceedings); *see also United States v. Valenti,* 987 F.2d 708, 713 (11th Cir.1993) (explaining that giving "notice and an opportunity to be heard on a proposed closure" is required before closing an "historically open process where public access plays a significant role"). And in this Circuit, a person denied access to a court proceeding is treated as "aggrieved" by that denial and is entitled to appeal. *United States v. Chagra*, 701 F.2d 354, 358 (5th Cir. 1983); *see also Bradley on behalf of AJW v. Ackal,* 954 F.3d 216, 223 (5th Cir. 2020) ("members of the news media, although not parties to litigation, can appeal court closure orders or confidentiality orders under the collateral order doctrine" (internal quotation omitted)).

In addition, the victims' families are injured because the Court has not yet considered whether to impose, as conditions of Boeing's release, "other appropriate conditions" to ensure the safety of "the community." *See* 18 U.S.C. § 3142(c)(1)(B)(xiv). While the Government is

15

apparently happy to let Boeing avoid having any release conditions imposed to ensure the safety of the community, the victims' families are not. And the law requires the Court to consider these issues—which involve "the community." This Court's failure to consider the safety of the community by imposing appropriate conditions of relief is an injury in itself, which give the victims' families standing to present the issue.

IV.     **This Court Should Hold a Public Arraignment and Provide Reasonable Advance Notice to the Victims' Families.**

For all these reasons, this Court should proceed as required by Rule 10—and as has been done by other district courts—and schedule a public arraignment at which Boeing must enter its plea to the felony criminal information filed against it. The victims' families also respectfully request that the Court defer holding the arraignment until after it has ruled on the families' motion asserting that they are "crime victims" with protected CVRA rights. As directed by the Court (Dkt. 64), the victims' families will file their reply supporting their CVRA motion on March 4. Thereafter, if the Court rules in the families' favor on their CVRA motion, then at the public arraignment required by Rule 10, the victims' families would be guaranteed an opportunity to be heard on Boeing's conditions of release. *See* 18 U.S.C. § 3771(a)(4) (promising "crime victims" the right to be heard at any "public proceeding in the district court involving release …."). If the Court rules against the victims' families, the Court would still be obligated to impose appropriate conditions of release, for the reasons explained above. In either event, judicial efficiency will be served by ruling on all the issues at the same time.

The victims' families also request reasonable notice of three weeks to arrange travel to the arraignment here in the Fort Worth Division of the Northern District of Texas.[8] Many of the victims' families live overseas, including cities in Ethiopia and Indonesia. Securing plane tickets and travel reservations will require some advance notice. But a number of the victims' families will exercise their right to attend that important proceeding and see Boeing arraigned.

## **CONCLUSION**

For the foregoing reasons, this Court should arraign Boeing and impose appropriate conditions of release on Boeing during the pendency of the DPA.

Dated: February 18, 2022

                                         Respectfully submitted,

/s/ Warren T. Burns
Warren T. Burns (Texas Bar No. 24053119)
Burns Charest, L
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice*)

*Attorneys for Victims' Families*

---

[8] Among its many failures in this case, the Government failed to confer with victims' families about why it filed the charges against Boeing in this venue, which is distant from the main events at issue and is an inconvenient location for most of the families to travel to.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 18, 2022, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.


<u>/s/ Paul G. Cassell</u>
Paul G. Cassell

18