# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-00005-O-1 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF MOTION OF NAOISE CONNOLLY RYAN, AS REPRESENTATIVE OF MICHAEL RYAN; EMILY CHELANGAT BABU AND JOSHUA MWAZO BABU, AS REPRESENTATIVES OF JARED BABU MWAZO; CATHERINE BERTHET, AS REPRESENTATIVE OF CAMILLE GEOFFROY; HUGUETTE DEBETS, AS REPRESENTATIVE OF JACKSON MUSONI; LUCA DIECI, AS REPRESENTATIVE OF PAOLO DIECI; BAYIHE DEMISSIE, AS REPRESENTATIVE OF ELSABET MINWUYELET WUBETE; SRI HARTATI, AS REPRESENTATIVE OF ERYANTO; ZIPPORAH KURIA, AS REPRESENTATIVE OF JOSEPH KURIA WAITHAKA; JAVIER DE LUIS, AS REPRESENTATIVE OF GRAZIELLA DE LUIS Y PONCE; NADIA MILLERON AND MICHAEL STUMO, AS REPRESENTATIVES OF SAMYA STUMO; CHRIS MOORE, AS REPRESENTATIVE OF DANIELLE MOORE; PAUL NJOROGE, AS REPRESENTATIVE OF CAROLYNE NDUTA KARANJA, RYAN NJUGUNA NJOROGE, KELLI W. PAULS, AND RUBI W. PAULS; YUKE MEISKE PELEALU, AS REPRESENTATIVE OF RUDOLF PETRUS SAYERS; JOHN KARANJA QUINDOS, AS REPRESENTATIVE OF ANNE WANGUI KARANJA; GUY DAUD ISKANDAR ZEN S., AS REPRESENTATIVE OF FIONA ZEN; AND OTHER SIMILARLY SITUATED REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 UNDER THE CRIME VICTIMS' RIGHTS ACT FOR FINDINGS THAT THE PROPOSED BOEING DEFERRED PROSECUTION AGREEMENT WAS NEGOTIATED IN VIOLATION OF THE VICTIMS' RIGHTS AND FOR REMEDIES FOR THOSE VIOLATIONS**

i

Warren T. Burns
Burns Charest, LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell (Counsel of Record)
Utah Appellate Project
S.J. Quinney College of Law
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice*)

*Attorneys for Victims' Families*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. v

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ...................................................................................................... 4

I.    The Government Violated the Victims' Families' CVRA Rights by Secretly
      Negotiating Its DPA with Boeing........................................................... 4

      A. The CVRA broadly defines protected "crime victims." .............................. 5

      B.  The victims' families represent "crime victims" protected by the CVRA. ................. 5

          1.   The families represented CVRA "crime victims" when the Government
               deceived them about the existence of its criminal investigation into the
               two 737 MAX crashes. ......................................................... 5

          2.   The victims' families represented CVRA "crime victims" when the
               Government agreed not to prosecute Boeing for involuntary
               manslaughter and many other federal crimes. ....................................... 7

          3.   The victims' families also represent CVRA "crime victims"  because
               Boeing's conspiracy crime directly and proximately caused the two 737
               MAX crashes. ..................................................................... 9

                    a. Boeing's conspiracy crime directly harmed the victims. .......... 9

                    b. Boeing's conspiracy crime proximately harmed the
                       victims. .................................................................. 14

          4.   The victims' families also represent CVRA "crime victims" because
               Boeing's conspiracy directly and proximately exposed the crash victims to
               unnecessary risk. ................................................................ 15

      C.   The Government violated the victims' families' CVRA right to "confer"
           with prosecutors by concealing that it was investigating the crashes and
           later that it was negotiating a deferred prosecution agreement covering the
           crashes.......................................................................... 18

      D.   The Government also violated the victims' families' CVRA right to
           "timely notice" of the deferred prosecution agreement by providing no
           notice........................................................................... 19

      E.   The Government also violated the victims' families' CVRA right to "be
           treated with fairness" by deceiving the families. ................................ 20

II.     If the Court Concludes that any Relevant Facts are in Dispute, the Victims'
        Families Are Entitled to an Evidentiary Hearing to Establish Their "Crime
        Victim" Status and Other Relevant Facts..........................................................................20

III.    The Victims' Families Are Entitled to Remedies for the Government's
        Violations of Their CVRA Rights. .................................................................................21

        A.      This Court possesses broad remedial power to correct CVRA violations. ..........21

        B.      The Fifth Circuit's decision in *In re Dean* requires this Court to craft
                appropriate remedies. .........................................................................................25

        C.      The victims' families are entitled to excision of the DPA's shall-not-file-
                charges provision in order to enforce their right to confer. .................................25

        D.      The victims' families are also entitled to "remedies" in connection with
                their supervisory powers motion and arraignment motion. ................................29

        E.      The victims are entitled to other appropriate remedies. .....................................29

CONCLUSION ..............................................................................................................................30

CERTIFICATE OF SERVICE .......................................................................................................32

# TABLE OF AUTHORITIES

Cases

*Alabama Hospital Ass'n v. Beasley,*
   702 F.2d 955 (11th Cir. 1983) ................................................................. 24

*Austin v. Kroger Texas, L.P.,*
   864 F.3d 326 (5th Cir. 2017) .................................................................. 14

*Baker v. Raymond Intern., Inc.,*
   656 F.2d 173 (5th Cir. 1981) .................................................................. 28

*Craig v. People,*
   986 P.2d 951 (Colo. 1999) ..................................................................... 27

*Dean v. United States,*
   556 U.S. 568 (2009) ............................................................................... 14

*Fed. Sav. & Loan Ins. Corp. v. Dixon,*
   835 F.2d 554 (5th Cir. 1987) .............................................................. 24, 25

*Franklin v. Gwinnett County Public Schools,*
   503 U.S. 60 (1992) ................................................................................. 24

*In re Allen,*
   701 F.3d 734 (5th Cir. 2012), ................................................................ 23

*In re de Henriquez,*
   No. 15-3054, 2015 WL 10692637 (D.C. Cir. 2015). ............................... 3

*In re Dean,*
   527 F.3d 391 (5th Cir. 2008) ............................................................... 7, 25

*In re Fisher,*
   640 F.3d 645 (5th Cir. 2011) .................................................................... 3

*In re Fisher,*
   649 F.3d 401 (5th Cir. 2011) .................................................................... 3

*In re McNulty,*
   597 F.3d 344 (6th Cir. 2010) .................................................................... 4

*In re OCA, Inc.,*
   552 F.3d 413 (5th Cir. 2008). ................................................................. 28

*In re Wellcare Health Plans, Inc.,*
   754 F.3d 1234 (11th Cir. 2014) ................................................................ 3

*Jane Does 1 & 2 v. United States,*
   359 F.Supp.3d 1201 (S.D. Fla. 2019) ................................................ 26, 27

*Jane Does 1 & 2 v. United States,*
   950 F.Supp.2d 1262 (S.D. Fla. 2013) ................................................ 23, 26

v

*Kenna v. United States District Court,*
   435 F.3d 1011 (9th Cir. 2006) ................................................................ 24

*Marbury v. Madison,*
   5 U.S. 137 (1803) .................................................................................... 24

*McMullen v. Hoffman,*
   174 U.S. 639 (1899) ................................................................................. 28

*Mizell v. N. Broward Hosp. Dist.,*
   427 F.2d 468 (5th Cir. 1970). ................................................................. 24

*State v. Garcia,*
   582 N.W.2d 879 (Minn. 1998) ................................................................ 27

*State v. Wall,*
   348 N.C. 671, 502 S.E.2d 585 (1998) ..................................................... 27

*U.S. v. CITGO,*
   No. 2:06-cr-00563 (S.D. Tex. Aug. 8, 2008) .......................................... 17

*United States v. Atl. States Cast Iron Pipe Co.,*
   612 F. Supp. 2d 453 (D.N.J. 2009) ................................................... 4, 21

United States v. *BP Prods. N. Am. Inc.,*
   2008 WL 501321 (S.D.Tex. Feb. 21, 2008) .............................................. 7

*United States v. Dean,*
   527 F.3d 391 (5th Cir. 2008) .................................................................... 7

*United States v. Giraldo-Serna,*
   118 F. Supp. 3d 377 (D.D.C. 2015) .......................................................... 4

*United States v. Kamuvaka,*
   719 F. Supp. 2d 469 (E.D. Pa. 2010) ...................................................... 5

*United States v. Kim,*
   988 F.3d 803 (5th Cir.) ............................................................................. 4

*United States v. Long,*
   722 F.3d 257 (5th Cir. 2013) .................................................................. 28

*United States v. Maldonado-Passage,*
   4 F.4th 1097 (10th Cir. 2021) ................................................................. 16

*United States v. Martin,*
   128 F.3d 1188 (7th Cir. 1997) .................................................................. 5

*United States v. Salinas,*
   918 F.3d 463 (5th Cir. 2019) .................................................................. 11

*United States v. Spinney,*
   795 F.2d 1410 (9th Cir. 1986) ................................................................ 10

*United States v. Walker,*
   98 F.3d 944 (7th Cir. 1996) .............................................................. 27, 28

*Veasey v. Abbott*,
   888 F.3d 792 (5th Cir. 2018) ........................................................................... 29

*Wise v. Wilkie*,
   955 F.3d 430 (5th Cir. 2020) ........................................................................... 28

Statutes

18 U.S.C. § 1112(a) ............................................................................................... 8

18 U.S.C. § 3771(a)(1) ........................................................................................ 24

18 U.S.C. § 3771(a)(2) ........................................................................................ 24

18 U.S.C. § 3771(a)(4) ........................................................................................ 24

18 U.S.C. § 3771(a)(5) ........................................................................................ 24

18 U.S.C. § 3771(a)(8) ........................................................................................ 24

18 U.S.C. § 3771(a)(9) ................................................................................ 2, 3, 19

18 U.S.C. § 3771(a)(10) ...................................................................................... 24

18 U.S.C. § 3771(a)(5) ................................................................................ 2, 7, 18

18 U.S.C. § 3771(a)(7) ........................................................................................ 29

18 U.S.C. § 3771(a)(9) ................................................................................ 2, 3, 19

18 U.S.C. § 3771(b)(1) ..................................................................................... 1, 21

18 U.S.C. § 3771(d)(3) ........................................................................................ 21

18 U.S.C. § 3771(d)(5) .................................................................................. 22, 23

18 U.S.C. § 3771(d)(6) ........................................................................................ 23

18 U.S.C. § 3771(e)(2)(A) ..................................................................................... 2

18 U.S.C. § 3771(e)(2)(B) ..................................................................................... 4

18 U.S.C. § 3771(e) ............................................................................................... 5

Other Authorities

150 CONG. REC. 22953 (Oct. 9, 2004) ................................................................ 21

150 CONG. REC. S42604 (Apr. 22, 2004) .............................................................. 5

150 CONG. REC. S4270 (Apr. 22, 2004) ................................................................ 5

Boeing Form 10-K for Fiscal Year 2019 at Item 1A (Jan. 31, 2020), available at
   https://www.sec.gov/ix?doc=/Archives/edgar/data/12927/000001292720000014/a2019
   12dec3110k.htm. .............................................................................................. 6

Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L. REV. 963, 964 (2003) ................... 15

David W. Robertson, *The Common Sense of Cause in Fact*, 75 TEX. L. REV. 1765, 1770
   (1997)). ..................................................................................................... 10, 13

DOJ Press Release, https://www.justice.gov/opa/pr/boeing-charged-737-max-fraud-conspiracy-and-agrees-pay-over-25-billion (Jan. 7, 2021) ....................................................... 18

Honorable Jon Kyl et. al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act,* 9 LEWIS & CLARK L. REV. 581, 594-95 (2005). .......................................................... 14

R.A. Duff, *Criminalizing Endangerment*, 65 LA. L. REV. 941, 950 (2005)................................. 16

<u>Treatises</u>

2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 14.4, pp. 436–37 (2d ed. 2003) .......................... 14

4 HARPER, JAMES & GRAY, THE LAW OF TORTS § 20.2 (3d ed. 2007) ......................................... 11

4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 26–27 (1769) .......................... 14

JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 122 (4th ed. 2006). .................................... 16

W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS 263–355 (5th ed. 1984). .............................................................................................................................. 14

## INTRODUCTION

This case may well be the most important one in the eighteen-year history of the Crime Victims' Rights Act (CVRA). The Government has staked out the position that it is permitted to:

- deceive hundreds of grieving families about whether it was conducting a criminal investigation into whether Boeing's crimes caused the deaths of their loved ones;

- secretly negotiate a deferred prosecution agreement (DPA) with Boeing barring its prosecution for hundreds of deaths without conferring with hundreds of victims' families; and

- fail to give hundreds of victims' families timely notice about the secret deal.

And claims the Government (with Boeing piping in with its support), the Court is powerless to do anything about how the Government mistreated the families.

Congress has commanded a different conclusion. In enacting the CVRA, Congress created a statute with enforceable rights for crime victims, such as the families who come before this Court. As the victims' families demonstrated in their opening motion—and will reinforce in this reply—the CVRA requires this Court to "ensure" that they are afforded their CVRA rights. 18 U.S.C. § 3771(b)(1).

This reply first establishes what constitutes the "record" in this case. The Government continues to proceed deceptively, pretending that the only relevant information comes from the DPA's carefully curated statement of facts. But the relevant record in this CVRA case must encompass the real-world harms that an admitted criminal—Boeing—caused by its long-running conspiracy.

The reply then simply tracks the opening motion of the victims' families, while also addressing the Government's (and Boeing's) responses that the families do not represent "crime victims." Contrary to their claims, the real-world harms Boeing's conspiracy caused creates CVRA "crime victim" status for several, independent reasons.

1

Because the victims' families represent CVRA "crime victims," the Government (with Boeing's participation) violated the CVRA. First, the Government violated the families' CVRA "right to confer" with prosecutors (§ 3771(a)(5)) by not conferring about the secretly-crafted DPA. Second, the Government violated the families' right to "timely notice" of the DPA (§ 3771(a)(9)) by not giving the families *any* notice of the DPA. And third, the Government violated the families' CVRA right to be "treated with fairness" (§ 3711(a)(8)) by deceiving them about the existence of its criminal investigation into the crashes.

In light of these CVRA violations, the families are entitled to not only a prospective directive that the Government afford the families their CVRA rights as this case progresses but also to retrospective remedies to enforce their rights. Among the various remedies to which the families are entitled is excision of the DPA's provisions blocking Boeing's criminal prosecution. Excision would ensure that the victims are afforded their right to "confer" with prosecutors about appropriately holding Boeing accountable for its conspiracy, which killed hundreds of people.

## FACTUAL BACKGROUND

On the critical "victim" issue in this case, the Government proceeds deceptively. The Government acknowledges that the CVRA defines a "crime victim" as a person "directly and proximately harmed" by a federal offense. *See* Dkt. 58 at 9 (citing 18 U.S.C. § 3771(e)(2)(A)). The Government also concedes that this inquiry requires a review of "the facts and circumstances" surrounding the offenses in a particular case. Dkt. 58 at 9.

But then, rather than candidly discussing this case's relevant "facts and circumstances," the Government claims that "[h]ere the dispute … *principally* relates to the legal conclusions that can be drawn from the established facts in the record." Dkt. 58 at 19 (emphasis added). Of course, the weasel word is "principally." The Government implicitly admits that it is necessary for the Court to look beyond the charging documents to decide the "crime victim" issue.

The Fifth Circuit has held that under the CVRA's plain language, "a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) ("*Fisher I*"). Thus, the CVRA "instructs the district court to look at the offense itself only to determine *the harmful effects* the offense has on parties." *In re Wellcare Health Plans, Inc.,* 754 F.3d 1234, 1239 (11th Cir. 2014) (cleaned up). Because of this requirement to identify an offense's "harmful effects," numerous CVRA "victim" cases have found it necessary to look beyond the narrow "record" of the charges themselves. *See, e.g., In re Fisher*, 649 F.3d 401, 403-04 (5th Cir. 2011) (collecting cases) ("*Fisher II*").

An instructive case comes from the D.C. Circuit, which reversed a district court decision denying "victim" status in a drug trafficking case. The Circuit explained that in determining whether a decedent's family had CVRA "victim" status, the district court erred by "limit[ing] its evaluation to the indictment and the statement of facts submitted by [the defendant] as part of his negotiated plea agreement." *In re de Henriquez,* No. 15-3054, 2015 WL 10692637, at *1 (D.C. Cir. 2015). The Circuit noted that "[u]nder the CVRA, victims may participate in proceedings even when there has been no formal charge." *Id.* (citing 18 U.S.C. § 3771(a)(9) (victims have the right to timely notice of a deferred prosecution agreement)). Moreover, "[b]ecause victim status can be argued for even prior to the filing of an indictment, it is clear that Congress intended courts to look beyond the four corners of an indictment or plea agreement. For example, in the context of the [drug trafficking] conspiracy here, neither the indictment nor the statement of facts included in the plea agreement mention violence of any kind. And yet, logic allows for the inference . . . that [the defendant's] paramilitary organization . . . employed violence and force as part of its method of operation." *Id.*

Against this legal backdrop, even if the Court "principally" (i.e., initially) examines the Boeing Criminal Information and DPA as part of its "victim" analysis, it must look further. The relevant real-world "record" here provides ample evidence demonstrating that the families represent CVRA "crime victims." *See generally* Families' Mot. for Release of Information, Dkt. 72, Exhibit 1, Victims' Proffer of Facts They Could Establish at an Evidentiary Hearing (hereinafter "Victims' Proffer").

The Government also refers in its response to the proof-beyond-a-reasonable-doubt standard that applies at a criminal trial. *See, e.g.,* Dkt. 58 at 4. But, in determining the "crime victim" issue, the relevant standard of proof is the conventional standard for pre-trial proceedings in criminal cases: preponderance of the evidence. *See United States v. Giraldo-Serna*, 118 F.Supp.3d 377, 382 (D.D.C. 2015) ("Purported victims under the CVRA must prove their victim status by a preponderance of the evidence.") (citing *In re McNulty,* 597 F.3d 344, 351 (6th Cir. 2010); *United States v. Atl. States Cast Iron Pipe Co.,* 612 F.Supp.2d 453, 486, 495, 508 (D.N.J. 2009)); *see also United States v. Kim*, 988 F.3d 803, 809 (5th Cir. 2021) (applying preponderance of the evidence standard to victim restitution issue).

## ARGUMENT

The Government and Boeing contend that the Court does not have before it "crime victims" who possess rights under the CVRA. As common sense suggests, the 346 passengers and crew who perished in the two 737 MAX crashes are "victims" in this case. And, accordingly, the Government violated the CVRA by not affording the victims' families their CVRA rights.[1]

## I.   The Government Violated the Victims' Families' CVRA Rights by Secretly Negotiating Its DPA with Boeing.

---

[1] Because the crash victims are now deceased, their families step into their shoes as their "representatives" to assert their CVRA rights. *See* 18 U.S.C. § 3771(E)(2)(b).

### A. The CVRA broadly defines protected "crime victims."

The CVRA defines the term "crime victim" as a "person directly and proximately harmed as a result of the commission of a Federal offense …." 18 U.S.C. § 3771(e). This definition was based on earlier restitution statutes, which "all demonstrate a clarion congressional intent to provide restitution to as many victims and in as many cases as possible." *United States v. Martin,* 128 F.3d 1188, 1190 (7th Cir. 1997) (quoted in *United States v. Kamuvaka*, 719 F.Supp.2d 469, 475 (E.D. Pa. 2010)). Thus, in relying on these far-reaching statutes to craft the CVRA, Congress used "an intentionally *broad definition* because all victims of crime deserve to have their rights protected." 150 CONG. REC. S4270 (Apr. 22, 2004) (emphasis added) (statement of Sen. Kyl, agreed to by Sen. Feinstein). Congress understood that it was extending rights to "literally millions of people"—i.e., victims who were being denied rights in the federal criminal justice process. 150 CONG. REC. S42604 (Apr. 22, 2004) (statement of Sen. Kyl).

### B.  The victims' families represent "crime victims" protected by the CVRA.

In their motion, the victims' families asserted that they represented protected "crime victims" under the CVRA. Dkt. 52 at 5-6. In presenting that position, the families had hoped and assumed that the Government would support their position. Instead, the Government (joined by Boeing) surprisingly contends that the crash victims were not "victims" of Boeing's conspiracy. Dkt. 58 at 8-14; *see also* Dkt. 62 at 5. Their counterintuitive position is incorrect for four separate and independent reasons.

> **1.    The families represented CVRA "crime victims" when the Government deceived them about the existence of its criminal investigation into the two 737 MAX crashes.**

The simplest path to reaching the "victim" conclusion comes from examining the Government's deception of the victims' families in and after February 2020. In their motion, the

victims' families explained that the Government deceived them about the existence of its criminal investigation into the two crashes. Dkt. 52 at 7-10. As the first anniversary of the Ethiopian Airlines Flight 302 was looming, on February 19, 2020, a victims' family representative contacted the Justice Department's Victims' Rights Ombudsman to secure a meeting with the Department's attorneys "investigating the Ethiopian Flight 302/Boeing 737 MAX *crash* that took place on March 10, 2019." Appx. 35 (emphasis added). The Ombudsman responded the next day that "the FBI has advised me that they do not have a criminal investigation *into this crash*, nor are they aware of any open cases at the Department of Justice." Appx. 43 (emphasis added).

The Ombudsman deceived the victims' families. In its response, the Government "apologizes to the [victims' families] . . . that the Department of Justice's Victims' Rights Ombudsman in February 2020 conveyed *inaccurate information.*" Dkt. 58 at 18 (emphasis added). The Justice Department conveyed "inaccurate information" because, in truth, the Department *did* have a criminal investigation *into the two crashes.*

The fact that Justice Department was criminally investigating *the crashes* is, no doubt, reflected in numerous internal documents at the Justice Department.[2] And, if Government obstinately refuses to confirm this fact, the victims will prove it at an evidentiary hearing. *See* Victims' Proffer ¶¶ 253-77. But this fact is also reflected in public documents, the accuracy of which cannot be reasonably questioned. For example, in its 2019 Form 10-K filed with the Securities and Exchange Commission (SEC) on January 31, 2020, Boeing stated that it was "fully cooperating with U.S. government investigations *related to the accidents and the 737 MAX*,"

---

[2] In their contemporaneously filed motion seeking discovery, the victims' families ask the Department to produce those documents if necessary for a fair decision on this motion.

including an "investigation by *the U.S. Department of Justice*."[3] Obviously, there can be no reasonable dispute that the 346 people killed in the two crashes were "victims" of the events the Justice Department was investigating—and thus "victim" status existed at that time.

The fact that the Government had yet to file criminal charges in February 2020 is irrelevant to this conclusion. The CVRA extends rights to victims before charges are filed. The victims' families developed this point at length in their initial motion. *See* Dkt. 52 at 18-22. The centerpiece of the families' argument is controlling Fifth Circuit precedent—*United States v. Dean*, 527 F.3d 391 (5th Cir. 2008)—which held that "[t]here are clearly rights under the CVRA that apply before any prosecution is underway. Logically, this includes the CVRA's establishment of victims' 'reasonable right to confer with the attorney for the Government.'" 527 F.3d at 394 (citing *BP Prods.,* 2008 WL 501321, at *11) (quoting 18 U.S.C. § 3771(a)(5) (cleaned up)). In response, the Government claims *Dean* is "inapposite" because "victim" status was not ultimately at issue there. But what *was* at issue in the case is *when* "victim" status occurs. And the Fifth Circuit plainly held—and the Government does not dispute—CVRA rights attach "before any prosecution is underway." 527 F.3d at 394. Thus, when the Government was criminally investigating the two 737 MAX crashes, it owed CVRA duties to the families representing the 346 people who died in those crashes.

> **2.    The victims' families represented CVRA "crime victims" when the Government agreed not to prosecute Boeing for involuntary manslaughter and many other federal crimes.**

On January 7, 2021, the Government filed its DPA with this Court. In the DPA, the Government promised not to prosecute Boeing for involuntary manslaughter and other similar

---

[3] Boeing Form 10-K for Fiscal Year 2019 at Item 1A (Jan. 31, 2020), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/12927/000001292720000014/a201912dec3110k.htm.

federal crimes. The victims' families obviously represented the "victims" of those crimes.

The "crime victim" issue in this case links to the breadth of the Boeing DPA. The DPA's starting point is the Criminal Information charging Boeing with conspiracy to defraud the Federal Aviation Administration Aircraft Evaluation Group (FAA AEG). Dkt. 1. But immediately after filing the Criminal Information, the Department filed the DPA. Dkt. 4. The Government concedes that the DPA is relevant to the "crime victim" determination in this case. Dkt. 58 at 19.

As the victims' families noted in their motion, the DPA contained a broad shall-not-file-charges provision[4] covering a vast array of federal crimes. Dkt. 52 at 11. In the DPA, the Government agreed that, if Boeing complied with the agreement, then the Government would not file charges for any federal offenses committed by Boeing "for the conduct set forth in the attached Statement of Facts." Dkt. 4 at 14 (preventing "any prosecution" for those federal offenses). The statement of facts is sixteen pages long, containing 54 numbered paragraphs. Among the paragraphs are two specifically reciting the two 737 MAX crashes. Dkt. 4, SOF at ¶¶ 48, 53. The universe of federal offenses for which the Department agreed not to file charges against Boeing is thus far broader than the conspiracy charged in the Criminal Information.

The DPA's breadth can be clearly illustrated by looking at the federal crime of involuntary manslaughter, 18 U.S.C. § 1112(a). As the Government points out in its response, "[t]he Government did not charge Boeing with any form of federal negligent homicide in connection with the crashes of Lion Air Flight 610 and Ethiopian Airlines Flight 302." Dkt. 58 at 10. True

---

[4] In their initial motion, the victims' families referred to the provision as an "immunity" provision. Dkt. 58 at 11. In response, the Government quibbles over whether the DPA is technically an "immunity agreement." Dkt. 58 at 5 n.2. The victims' families used the term "immunity" to describe the agreement's undoubted real-world effect. In the interests of avoiding semantic quibbling, in this reply the families will refer to the provision (and related parts of the DPA) as the "shall-not-file-charges provision." DPA ¶¶ 20, 24; *see* ¶ 4(h) (related part of the DPA interfering with prosecution of "senior management").

enough. But, in the DPA, the Government agreed that it would *never* charge Boeing with any form of federal negligent homicide in connection with the crashes. Such homicide charges would necessarily involve "conduct set forth" in the DPA's statement of facts—and the DPA thus could be argued to preclude filing those homicide charges (assuming that Boeing complies with its DPA obligations).

The limited point here is not to second-guess the Government's decision not to file homicide charges, among many others.[5] The ultimate charging decision in a criminal case lies within a prosecutor's discretion. But the CVRA requires that, before reaching a binding agreement with a defendant not to prosecute a potential homicide case, prosecutors at least owe a duty to confer about their decision with the families of those whom the defendant killed.

There can be no debate a person killed by "any form of federal negligent homicide" (Dkt. 58 at 10) has been "directly and proximately harmed" by that crime. Put plainly, death is the most serious harm possible from a federal crime. And, thus, CVRA "crime victim" status exists for persons killed by such homicide crimes, including such crimes covered by the Boeing DPA.

### 3. The victims' families also represent CVRA "crime victims" because Boeing's conspiracy crime directly and proximately caused the two 737 MAX crashes.

Even focusing narrowly and exclusively on Boeing's crime of conspiring to deceive the FAA, that crime "directly and proximately" harmed the crash victims—making them CVRA "crime victims."

### a. Boeing's conspiracy crime directly harmed the victims.

Turning first to "direct" harm, the Fifth Circuit has held that a "person is directly harmed

---

[5] The victims' families' use federal negligent homicide charges as a convenient illustration of the point. But there are many other potential crimes covered by the DPA's shall-not-file-charges provision that could be used. *See* Victims' Proffer ¶¶ 262-65.

by the commission of a federal offense where that offense is a but-for cause of the harm." *Fisher II,* 649 F.3d at 402–03. In turn, "[a]n act is a but-for cause of cause of an event if the act is a *sine qua non* of the event—if, in other words, the absence of the act would result in the non-occurrence of the event." *Id.*

In making this but-for causation determination, the Fifth Circuit relied on a leading article on tort law causation from University of Texas Law Professor David Robertson. Quoting Professor Robertson, the Fifth Circuit held that ascertaining the existence of but-for causation under the CVRA "requires a court to create 'a mental picture of a situation identical to the actual facts of the case in all respects save one: the defendant's wrongful conduct is now corrected to the minimal extent necessary to make it conform to the law's requirements.' Then, the court asks 'whether the injuries that the plaintiff suffered would probably still have occurred had the defendant behaved correctly in the sense indicated.'" *Id.* (*quoting* David W. Robertson, *The Common Sense of Cause in Fact*, 75 TEX. L. REV. 1765, 1770 (1997)). Where the answer to that question is "No," the defendant's crime is a but-for cause of harm. *Fisher II*, 649 F.3d at 403.[6]

Applying the Fifth Circuit's instructions here, the critical issue becomes creating a "mental picture" of what the world would have looked like if Boeing had not committed a multi-year conspiracy to conceal the new Maneuvering Characteristics Augmentation System (MCAS) and

---

[6] The Government cites *United States v. Spinney*, 795 F.2d 1410 (9th Cir. 1986), for the proposition that "proximate cause" standards can differ between criminal law and civil law. Dkt. 58 at 58 n.5. But in this Circuit—and with respect to the CVRA specifically—the Fifth Circuit has instructed that tort law principles are controlling, as the Circuit's extensive discussion of Professor Robertson's tort law article in *Fisher II* demonstrates. In any event, in *Spinney* the Ninth Circuit was making the point that "in tort law the defendant may be held responsible for harms different than those actually risked by his conduct, while this is generally not the [case] in criminal law." *Id.* at 1416 n.2. That point is irrelevant here: The harms risked by Boeing's conspiracy were to passenger safety—so it is not being held responsible for harms different that those actually risked by its crime.

its operational scope from the FAA. The answer to that question is clear: Two MCAS-caused plane crashes would never have occurred—and 346 people would never have died.

The victims' families set out the facts ungirding this conclusion in their detailed proffer. Victims' Proffer ¶¶ 1-232. The tragic analysis is straightforward. To save money, Boeing concealed from the FAA information about how MCAS could improperly activate and take over control of 737 MAX aircraft. If the FAA knew about MCAS, it would have required expensive training for pilots in dealing with that very situation. As a direct result of Boeing's conspiracy, the FAA did not order pilot training on MCAS or the inclusion of information about the MCAS in flight training materials or other pilot reference materials. And the FAA's training decisions had worldwide effects, extending to Boeing's 737 MAX customers such as Lion Air and Ethiopian Airlines.

Both the Lion Air and the Ethiopian Airlines crashes resulted from uncommanded MCAS activation, which drove the two planes into the ground—as later official accident investigations by Indonesia and Ethiopian authorities concluded. *See* Dkt 58 at 12 n.6 (citing investigations); *see generally* Victims' Proffer ¶¶ 141-61 (Lion Air); ¶¶ 179-205 (Ethiopian Airlines). The Government appears to concede this crucial fact, while relying on the claim that there were "multiple contributing factors" to the two crashes. Dkt. 58 at 12 n.6. However, the Fifth Circuit has held that but-for causation is "not a difficult burden to meet," as "many but-for causes" can exist. *United States v. Salinas*, 918 F.3d 463, 466 (5th Cir. 2019) (citation omitted). The search for but-for causation is clearly "not a quest for sole cause. Probably it cannot be said of any event that it has a single causal antecedent; usually there are many." 4 HARPER, JAMES & GRAY, THE LAW OF TORTS § 20.2 (3d ed. 2007). This but-for test "permits wide latitude where facts are meager and where it is pure matter of guesswork where the greater probabilities lie." *Id.*

While expert evidence is not required to reach the conclusion that Boeing's crime was one

of the but-for causes of the two crashes, the victims' families have secured two experts who will assist the Court on causation issues. One is Vickie Norton, an experienced pilot who has (among other things) receiving training on erroneous MCAS activation recovery scenarios for the 737 MAX. (Her CV is found at Dkt. 63-1) Ms. Norton is preparing to offer expert opinions in this case, which include, in substance, the following:

1. The omission in the 737 MAX Aircraft Flight Manual of any substantive references to MCAS was an ultimate "but for" cause of the Lion Air Flight 610 and Ethiopian Airlines Flight 302 crashes.

2. The intentional lack of disclosure, coupled with false, misleading and inaccurate description of MCAS' ultimate control authority and capabilities upon certification of the 737 MAX, was causal to the two crashes.

3. The complete lack of pilot training with respect to MCAS was directly causal to the two crashes, as adequate training would have prevented each of these tragedies.

4. Had Boeing presented to the FAA a complete, accurate and truthful description of MCAS, (e.g., operating envelope, triggers, capabilities, etc.) as well as its observed behavior in the simulator, the FAA would have mandated Level D flight simulator training for any pilots flying the 737 MAX.

The victims' families' other expert on causation issues is Christopher Keyes, who (among other things) has held various key positions in the FAA. (His CV is attached as Exhibit 1.) Mr. Keyes is preparing to offer expert opinions in this case that include, in substance, the following:

1. The B737 FSB, one of several boards established within the AEG, makes the final determination as to the appropriate level of differences training necessary for a new variant of an existing transport category aircraft.

2. Had the B737 FSB been provided with a complete data set with regards to the MCAS for the B737 MAX, they would have determined that the changes warranted a higher level of differences training involving simulators.

3. All operators—domestic and foreign—of the Boeing 737 MAX depend on the FAA for appropriate and accurate information regarding aircraft that they approve and the training they recommend.

4. The act of withholding critical information regarding MCAS rendered the applicable sections of the Boeing 737MAX Aircraft Flight Manual and checklists unusable.

5. The lack of appropriate or incomplete MCAS training put every crewmember and passenger on board every Boeing 737 MAX at an unwarranted risk for a catastrophic event every time they took off.

6. Boeing criminal conspiracy violated fundamental principles of aviation safety.

Ultimately, when Boeing's conspiracy was exposed (through the deaths of 346 passengers and crew), the FAA did order training about how to respond to improper MCAS activation. In other words, Boeing's crime delayed the arrival of necessary safety measures—with horrific consequences. Victims' Proffer ¶¶ 213-34.

Professor Robertson's article, relied upon by the Fifth Circuit to interpret the CVRA in *Fisher II*, has explained that "[c]ourts often emphasize that it is a mistake to insist on too much certainty when applying the but-for test." Robertson, 75 TEX. L. REV. at 1774. Three precepts emerge from the relevant cases. First, "[w]henever it can be said with fair certainty that the rule of conduct relied upon by the [victim] was designed to protect against the very type of risk to which the [victim] was exposed, courts have shown very little patience with the efforts of defendant to question the sufficiency of the proof on cause." Robertson, *supra*, at 1774. Second, "where the [conduct] of the defendant greatly multiplies the chances of accident . . . and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the [conduct] is not sufficient to break the chain of cause and effect . . . ." *Id.* at 1775. And, third, "[i]f as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists." *Id.*

Each of three points applies directly to Boeing's conspiracy crime. The FAA is designed to protect public safety. When Boeing lied to the FAA about safety issues involving the MCAS, it "greatly multiplied" the chances of an accident involving the MCAS. And in deceiving the FAA

13

about the MCAS, the result of an MCAS-caused accident is naturally to "be expected."

### b. Boeing's conspiracy crime proximately harmed the victims.

The CVRA also requires that an individual must have been "proximately" harmed to be recognized as a "crime victim." The Fifth Circuit has instructed that "[a] person is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct." *See Fisher I,* 640 F.3d at 648. Under standard foreseeability principles, courts "have consistently held that foreseeability turns on existence of a general danger, not awareness of the exact sequence of events that produces the harm." *Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 333 (5th Cir. 2017). Indeed, there is "universal agreement" that "what is required to be foreseeable is only the general character or general type of the event or harm . . . ." *See* W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS 263–355 (5th ed. 1984).

These standard tort principles apply to torts involving mere negligence. But more expansive foreseeability principles apply to intentional torts, which are obviously analogous to crimes. As the Supreme Court has explained, "it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts." *Dean v. United States*, 556 U.S. 568, 575 (2009) (citing 2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 14.4, pp. 436–37 (2d ed. 2003)); *see also* 4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 26–27 (1769) (when a man does an unlawful act, "his want of foresight shall be no excuse.").

In adding a proximate harm predicate to the CVRA's "victim" definition, Congress was presumably aware of these generous interpretations of foreseeability. Indeed, the year after securing the CVRA's passage, Senate co-sponsor Jon Kyl explained that the CVRA's "direct and proximate" requirements "necessarily invoke the concept of 'foreseeability,' which has been liberally interpreted in other victims' statutes." Honorable Jon Kyl et. al., *On the Wings of Their*

*Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act,* 9 LEWIS & CLARK L. REV. 581, 594-95 (2005). As Senator Kyl concluded: "Simply put, crime foreseeably has far-reaching consequences." *Id.* at 595.

Against the backdrop of Boeing's extended conspiracy to deceive the FAA about the safety risks posed by MCAS, the two crashes were clearly foreseeable under the CVRA. *See* Victims' Proffer ¶¶ 235-47. For example, from 2015 to 2018 information regarding the fact that, in flight simulator tests, Boeing's own test pilots took more than 10 seconds to respond to uncommanded MCAS activation leading to potentially "catastrophic" consequences was included in at least six separate internal Boeing documents. Victims' Proffer ¶ 242. And quickly after the crash of the Lion Air flight, Boeing knew for certain the fatal consequences its conspiracy to deceive the FAA about the MCAS had caused—and was continuing to threaten. Nonetheless, Boeing decided to "gamble[] with the public's safety in the aftermath of the Lion Air crash." Final Committee Report: The Design, Development and Certification of the Boeing 737 MAX: Majority Staff of the House Comm. on Transportation and Infrastructure 27 (Sept. 2020)).

### 4. The victims' families also represent CVRA "crime victims" because Boeing's conspiracy directly and proximately exposed the crash victims to unnecessary risk.

While Boeing's conspiracy crime directly and proximately caused the two crashes, a simpler route likewise leads to the same conclusion that the conspiracy harmed the crash victims: Boeing's conspiracy crime illegally caused those on the two Boeing flights to suffer a safety *risk*. Specifically, when MCAS improperly activated and took over control of the two 737 MAX aircraft, the passengers expected that Boeing would have given the FAA—and ultimately the pilots—the most information possible about what was happening. The passengers and crew were all placed in a riskier position by Boeing's conspiracy because the pilots had less information than they would

have had "but for" Boeing's conspiracy to conceal MCAS.

This risk-equals-harm approach is well supported in American criminal law generally and in CVRA precedents in particular. American criminal law has long recognized the proposition that creating risk of harm is itself a harm. As one scholar has explained, all persons "have a legitimate interest in avoiding unwanted risks. A [defendant] who inflicts a risk of harm on another damages that interest, thus lowering the victim's baseline welfare." Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L. REV. 963, 964 (2003) (answering "yes" to the question posed in the title). As another legal scholar has explained, "[W]e have an interest in being safe—in being securely free of the risk of substantive harm; that interest is set back when I am endangered, even if no substantive harm ensues." R.A. Duff, *Criminalizing Endangerment*, 65 LA. L. REV. 941, 950 (2005).

Courts have recognized that creating the risk of harm can create CVRA "victim" status. In a case involving a murder-for-hire plan, for example, the Tenth Circuit noted that the CVRA "doesn't require *physical* harm" to create "victim" status. *United States v. Maldonado-Passage*, 4 F.4th 1097, 1102–03 (10th Cir. 2021) (emphasis added). And, in that case, a person who faced a risk of murder—and, accordingly, increased her security precautions—was properly identified as a "victim" under the CVRA. *Id.* at 1103.

Under these general principles, it makes no difference whether the victim was aware of the attempt to harm him. For example, a person is a "victim" of attempted murder even if he is sleeping when a bullet is fired—and even if he continues to sleep after the attack. As criminal law scholar Joshua Dressler has explained, harm can include "the negation, endangering, or destruction of an individual, group, or state interest which was deemed socially valuable. Thus, the . . . attempted murderer of the sleeping party [has] endangered the interests of others," thus causing harm under such a definition. JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 122 (4th ed. 2006).

In defining "victim" in the CVRA, Congress clearly followed these conventional understandings of harm. Nothing in the CVRA suggests that Congress intended for the uninjured target of an attempted murder to be denied victim status simply because of the mere fortuity of the criminal's bad aim with his gun or his stealth in launching an unsuccessful attack. Victim status for a whole host of federal offenses commonly thought to be covered by the Crime Victims' Rights Act necessarily rests on this reasoning. Indeed, the Justice Department routinely takes this position in other cases, such as environmental crime cases, where it often argues that risk is a harm. *See, e.g.,* Resp. of the U.S. to CITGO's Memo. in Support of its Motion to Exclude the Testimony of the Alleged Victims at 3, *U.S. v. CITGO*, No. 2:06-cr-00563 (S.D. Tex. Aug. 8, 2008) (arguing for "victim" status because if polluter had followed the law, members of the community would "never have been exposed to the potentially deadly chemical cocktail").

Here the same risk-equals-harm reasoning applies to the Boeing's conspiracy crime: By concealing MCAS from the FAA, Boeing clearly created risk to the passengers and crew of the two flights that crashed. Victims Proffer ¶¶ 248-52; *see also id.* ¶¶ 213-34. It is undisputed that Boeing deceived the FAA AEG—the agency charged with protecting public safety through appropriate pilot training. Indeed, the Criminal Information itself—which Boeing agreed not to contest—states that Boeing willfully conspired "to defraud the United States by *impairing, obstructing, defeating, and interfering with*, by dishonest means, the lawful function" of the FAA AEG. This "impairing" of the FAA AEG's function concerned pilot training requirements for the 737 MAX. And when MCAS improperly activated on October 29, 2018, on Lion Air Flight 610, and on March 10, 2019, on Ethiopian Airlines Flight 302, due to Boeing's conspiracy the pilots flying those two airplanes had less information than they would otherwise have had about how to respond—information that they desperately required in a life-or-death struggle to regain control of

the planes.

The victims' families' expert on risk-related issues is Dr. Rune Storesund, who (among other things) is currently the Executive Director for the Center for Catastrophic Risk Management at the University of California at Berkeley. (His CV is found at Dkt. 63-2.) Dr. Storesund is preparing to offer expert opinions in this case that include, in substance, the following:

1.  Boeing's conspiracy delayed required risk-reduction activities and substantially contributed to the knowable and preventable Lion Air Flight 610 crash on October 29, 2018, and Ethiopian Airlines Flight 302 crash on March 10, 2019.

2.  The cost implications to responsibly ascertain the "training differences" associated with the 737 MAX (with MCAS) was insignificant relative to the disproportionate risk that the airplane crew and flying public was exposed to by Boeing's conspiracy.

Lest there be any doubt, the Justice Department has already publicly stated that Boeing's crimes created risk to the flying public. For example, in its press release announcing the DPA, the Government proclaimed: "The misleading statements, half-truths, and omissions communicated by Boeing employees to the FAA *impeded the government's ability to ensure the safety of the flying public.*"[7] In sum, because Boeing's conspiracy crime illegally and unnecessarily caused risk to the passengers and crew of the two flights, the crime "harmed" those 346 persons without regard to whether the risk ultimately materialized. The risk harm alone triggers CVRA "crime victim" status.

> ### C. The Government violated the victims' families' CVRA right to "confer" with prosecutors by concealing that it was investigating the crashes and later that it was negotiating a deferred prosecution agreement covering the crashes.

With CVRA "victim" status established, the Government clearly violated the victims' families CVRA rights. As the victims' families explained in their motion (Dkt. 52 at 18-23), the CVRA promises victims a "reasonable right to confer with the attorney for the Government." 18

---

7  DOJ Press Release, https://www.justice.gov/opa/pr/boeing-charged-737-max-fraud-conspiracy-and-agrees-pay-over-25-billion (Jan. 7, 2021) (emphasis added).

U.S.C. § 3771(a)(5). And Congress enacted this right because it found that in case after case victims "were kept in the dark by prosecutors too busy to care." 150 CONG. REC. 7296 (2004).

Here the Government did precisely what Congress forbade: The Government kept grieving victims' families "in the dark." Beginning as early as February 2020, the Government deceived the victims' families about whether it was criminally investigating the crash. As result, no conferral took place at that time, violating the victims' families' right to confer. And that denial of their right to confer continued through the Government's DPA negotiations—negotiations that ultimately produced a DPA preventing Boeing's prosecution for homicide crimes connected with the crashes and exonerating the company's senior management. *See* Victims' Proffer ¶¶ 253-87.

The Government does not contest that it failed to confer. Indeed, the Government has apologized for failing to do so. Dkt. 58 at 1-2. The Government violated the families' CVRA right to confer.

> **D.     The Government also violated the victims' families' CVRA right to "timely notice" of the deferred prosecution agreement by providing no notice.**

For similar reasons, the Government also violated the families' right to timely notice of the DPA. As the victims' families explained in their motion (Dkt. 52 at 23-24), in 2015 Congress expanded the CVRA to extend to victims the "right to be informed in a timely manner of any plea bargain or deferred prosecution agreement" (18 U.S.C. § 3771(a)(9))—a new right that necessarily applies pre-charging. Dkt. 52 at 23-24. The Government does not contest that this right applies pre-charging. Nor does the Government argue that it provided timely notice to the victims' families. Indeed, the Government does not even cite this CVRA right to timely notice of a DPA, much less contest the victims' families' carefully developed argument that the Government violated this CVRA requirement. For this reason as well, the Government violated the victims'

families' CVRA rights.

**E.    The Government also violated the victims' families' CVRA right to "be treated with fairness" by deceiving the families.**

The Government has admitted that in February 2020 it gave "inaccurate information" to the victims' families about its investigation into the crashes. Dkt. 58 at 18. The CVRA extends to crime victims a right "to be treated with fairness and respect for the victim's dignity." 18 U.S.C. § 3771(a)(8). Crime victims are not treated fairly or with dignity when the Justice Department deceives them. Whatever else "fairness" might mean, it must at least mean that the Government is obligated to keep the victims properly informed and to ensure that their interests are respected in the criminal justice process. *See* 150 CONG. REC. 7303 (Apr. 22, 2004) (statement of Sen. Kyl) (describing the right to fairness in broad terms). Thus, as one court has concluded in a CVRA case with strikingly similar facts, "[w]hen the Government gives information to victims, it cannot be misleading." *Jane Doe 1 v. United States,* 359 F.Supp.3d 1201, 1219 (S.D. Fla. 2019).

Sadly, the Government's CVRA violations have continued. While the Government has apologized for "inaccurate information," it has neither corrected that inaccurate information nor conferred with the victims' families about its investigation. Victims' Proffer ¶¶ 253-73. Accordingly, this Court should find that the Government violated the victims' families' CVRA right to be treated with fairness—and is continuing to violate the families' CVRA rights.

**II.    If the Court Concludes that any Relevant Facts are in Dispute, the Victims' Families Are Entitled to an Evidentiary Hearing to Establish Their "Crime Victim" Status and Other Relevant Facts.**

The victims' families believe that the facts underlying their arguments recounted above are sufficiently clear that the Court should conclude without an evidentiary hearing that the Government violated the families' CVRA rights. But if the Court decides that a more extended investigation into the factual record is required to determine the issues, an evidentiary hearing is

warranted. *See* Dkt. 52 at 5 & n.4 (requesting an evidentiary hearing if facts are disputed).

The Government's response that it could somehow prevail on the issues without an evidentiary hearing (Dkt. 58 at 19) is disingenuous. As the Government knows from numerous communications from the victims' families, the families possess ample facts supporting their position on "victim" status and other issues. To assist the Court, the victims' families have provided a detailed proffer of the facts that they would prove at an evidentiary hearing. *See* Victims' Proffer. This Court should either rule for the families on the existing briefs or order a hearing on the issues.

## III.   The Victims' Families Are Entitled to Remedies for the Government's Violations of Their CVRA Rights.

Once the Court determines that the Government has violated the victims' families' CVRA rights, it should then direct further briefing regarding the appropriate remedies for those violations. Nonetheless, the Court can immediately conclude that the CVRA will entitle the victims' families to various remedies, as the victims' families argued in their initial brief. Dkt. 52 at 26-28.

### A.   This Court possesses broad remedial power to correct CVRA violations.

Before turning to the individual remedies the victims' families seek, it is important to understand the CVRA's broad remedial structure. The CVRA authorizes those seeking protection of their rights to assert them by "motion" in "the district court in which a defendant is being prosecuted for the crime." 18 U.S.C. § 3771(d)(3). And the CVRA specifically "places responsibility on the [district] court for its implementation, requiring that '*the court shall ensure that the crime victim is afforded [those] rights.*'" *United States v. Atl. States Cast Iron Pipe Co.,* 612 F.Supp.2d 453, 458 (D.N.J. 2009) (quoting 18 U.S.C. § 3771(b)(1)) (emphasis added).

In light of these provisions, the victims are not seeking "extra-statutory" remedies, as the Government claims. Dkt. 58 at 14. The victims only ask for what the CVRA's plain language requires—action by "the court" to "ensure" that they are afforded their rights. 18 U.S.C. §

21

3771(b)(1). Indeed, as the Senate co-sponsor of the CVRA explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while *giving meaning* to the rights we establish." 150 CONG REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphases added).

Neither the Government nor Boeing even cite the CVRA's command that "the court shall ensure" that victims are afforded their rights, 18 U.S.C. § 3771(b)(1), much less refute the victims' families' position that this provision obligates the Court to enforce their rights. Dkt. 52 at 26. Instead, the Government and Boeing rest their case on a CVRA provision that contains a narrow "limitation" on the "relief" that district courts can award. Dkt. 58 at 16; Dkt. 62 at 12-13. In the "limitation on relief" section, Congress precluded the relief of a new trial and set certain time limits for the relief of "re-open[ing] a plea or sentence":

> (5) Limitation on relief— In no case shall a failure to afford a right under this chapter provide grounds for a new trial. A victim may make a motion to re-open a plea or sentence only if—
> (A) the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied;
> (B) the victim petitions the court of appeals for a writ of mandamus within 14 days; and
> (C) in the case of a plea, the accused has not pled to the highest offense charged.

18 U.S.C. § 3771(d)(5). As the text makes apparent, these "limitations" only apply to crime victims' efforts to obtain the relief of a "new trial" or to "re-open a plea or sentence." Here, the victims' families do not seek a "*new* trial"—no trial has ever been held. Likewise, they do not seek to "re-open" a plea, much less a sentence—Boeing has never pled guilty to any crime. Boeing has yet to even enter *any* plea (either guilty or not guilty) to the charges currently pending against it.

The victims' families are seeking different relief than that precluded by the CVRA's limitation-on-relief provision. Among other remedies, the victims' families seek to invalidate the

DPA's shall-not-prosecute provision so that they can confer with the Government about an appropriate prosecution of Boeing's crimes. By its plain term, the "limitations on relief" provision is inapplicable to this relief. Indeed, as another district court has held in a very similar CVRA case (involving prosecutors' failure to confer about a secret non-prosecution deal with Jeffrey Epstein), this language is "properly interpreted impliedly to authorize a 're-opening' or setting aside of pre-charge prosecutorial agreements made in derogation of the government's CVRA conferral obligations." *Jane Does 1 & 2 v. United States*, 950 F.Supp.2d 1262, 1267 (S.D. Fla. 2013).

The Fifth Circuit has likewise interpreted the CVRA's time "limitations" language as only covering efforts to re-open a plea or sentence. In *In re Allen*, 701 F.3d 734, 735 (5th Cir. 2012), the Circuit observed that, in general, the "CVRA does not contain a time limit within which putative crime victims must seek relief in the district court. The only time limit discussed in the statute applies when a victim seeks 'to re-open a plea or sentence.'" *Id.* at 735 (citing 18 § 3771(d)(5)). Thus, the Circuit held that putative victims were free to assert CVRA "victim" status in sentencing proceedings even though the case had been proceeding for years. *Id.* The Fifth Circuit summarily rejected the defendant's argument that the courts should read some sort of implicit time limit into the CVRA, explaining that because the putative victims were "not seeking to reopen a plea or sentence, that [time limit] provision is inapplicable." *Id.* at 735.[8]

Because the CVRA's "limitation on relief" language is narrow, the CVRA explicitly and broadly makes available all other remedies—with just one exception. The CVRA specifically provides that is does not create a new "cause of action for damages." 18 U.S.C. § 3771(d)(6). Here,

_____

[8] In their responses, the Government and Boeing vaguely suggest that the victims' families missed some sort of time limit in filing their motion. *See, e.g.,* Dkt. 58 at 16; Dkt. 62 at 13. But neither the Government nor Boeing discuss the Fifth Circuit's controlling decision in *In re Allen*, which refutes any suggestion that courts can read an implicit time limit into the CVRA.

the victims' families are not seeking damages. And federal courts should "presume the availability of all appropriate remedies [for a federal right of action] unless Congress has expressly indicated otherwise." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 66 (1992). This Court must presume the availability of the numerous other remedies the victims' families seek under the CVRA. *See, e.g., Kenna v. United States District Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (when a trial court denied a victim his right to give statement at a defendant's sentencing hearing, "the only way to give effect to [the victim's CVRA] right to speak . . . is to vacate the sentence and hold a new sentencing hearing").

More broadly, since the earliest days of our nation, it has been settled law that "where there is a legal right, there is also a legal remedy." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal quotation omitted). When a violation of federal law is established, the Fifth Circuit has observed that typically "the full range of equitable remedies [is] traditionally available to [the district court]." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987) ("*FSLIC*"). The fact that a statute "is couched in declaratory terms and provides no explicit method of enforcement does not, of course, prevent a federal court from fashioning an effective equitable remedy." *Mizell v. N. Broward Hosp. Dist.*, 427 F.2d 468, 473 (5th Cir. 1970). Thus, district courts are required to fashion appropriate equitable remedies when a plaintiff has proven a violation of a statutory provision. *See, e.g., Alabama Hospital Ass'n v. Beasley,* 702 F.2d 955, 962 (11th Cir. 1983).[9]

---

[9] The Government seems to suggest that, unless the victims' families can obtain specific remedies, the Court should deny their motions. Dkt. 58 at 9. Not so. Even if the Court does not award any retrospective remedy, the Court's finding that the families are representing CVRA "crime victims" would have prospective significance. For example, the families would then be entitled to reasonable protection from the defendant, to notice of court hearings, to be heard at some of those hearings, to confer with the prosecutors, to be treated fairly, and to notice of rights and services. *See* 18 U.S.C. §§ 3771(a)(1), (2), (4), (5), (8) & (10). The Government has made it clear that it will *never* afford the victims' families these rights unless the Court requires it to do so.

The Fifth Circuit has instructed that the "general flexibility" of a district court's equitable powers "is enhanced where . . . the public interest is at stake." *FSLIC*, 835 F.2d at 562. Thus, in a case involving illegal lending practices by a bank, the Fifth Circuit recognized broad equitable powers because of the risk to "the savings of many depositors, the investments of numerous stockholders, and, in fact, the stability of financial institutions themselves." *Id.* at 563. Here, the same is true. The Boeing DPA broadly implicates not only issues revolving around the individual rights of the 346 passengers and crew who were killed but also prospective aircraft safety measures. *See* DPA at 4-6 (discussing Boeing public-safety related issues).

### B.     The Fifth Circuit's decision in *In re Dean* requires this Court to craft appropriate remedies.

The Government's (and Boeing's) position that this Court lacks power to craft appropriate remedies is also inconsistent with *In re Dean*, 527 F.3d 391 (5th Cir. 2008). Neither the Government nor Boeing substantively discuss *In re Dean*, even though the facts are analogous to those here. As the victims' families explained at length in their opening motion (Dkt. 52 at 19-22), *In re Dean* involved the Government's failure to confer with victims before reaching a deal with a well-connected defendant. The Fifth Circuit held that, in enacting the CVRA, "Congress made the policy decision—*which [courts] are bound to enforce*—that the victims have a right to inform the plea negotiation process by conferring with prosecutors." *Id.* at 395. Here, then, this Court is "bound to enforce" the victims' families' CVRA rights.

### C.     The victims' families are entitled to excision of the DPA's shall-not-file-charges provision in order to enforce their right to confer.

One remedy to which the victims' families are entitled is an order that the shall-not-file-

---

Accordingly, regardless of how it views the remedies issues, this Court must reach the "crime victim" issue.

charges provision be excised from the DPA, permitting the victims' families the unfettered ability to exercise their CVRA right to confer with prosecutors about prosecuting Boeing. Dkt. 52 at 27. The leading case allowing this excision remedy is *Jane Does 1 & 2 v. United States*, 950 F.Supp.2d 1262, 1267 (S.D. Fla. 2013). There, on similar facts, the district court held that the Justice Department had violated Epstein's victims' CVRA rights to confer by executing a secret non-prosecution agreement with Jeffrey Epstein. The court concluded that "the CVRA authorizes the *rescission or 'reopening' of a prosecutorial agreement,* including a non-prosecution agreement, reached in violation of a prosecutor's conferral obligations under the statute." *Jane Does 1 & 2 v. United States*, 359 F.Supp.3d 1201, 1218 (S.D. Fla. 2019) (emphasis added) (*quoting* 950 F.Supp.2d at 1267). Rejecting the Government's argument that no retrospective remedy was possible, the district court explained that the victims "have identified a remedy which is likely to redress the injury complained of—the setting aside of the non-prosecution agreement as a prelude to the full unfettered exercise of their conferral rights *at a time that will enable the victims to exercise those rights meaningfully.*" 950 F.Supp.2d at 1268. Under this persuasive CVRA decision, the victims' families here are entitled to an order from this Court that the DPA's shall-not-file-charges provision is set aside as a prelude to the unfettered and meaningful exercise of their CVRA conferral rights.

Not only is this remedy appropriate under the CVRA, but the CVRA *requires* it. As explained by the Fifth Circuit in *In re Dean*, under the CVRA "the victims have a *right* to inform the plea negotiation process by conferring with prosecutors." 527 F.3d at 395 (emphasis added). Here, as the Government (and Boeing) have conceded, the victims' families have never been afforded their right to attempt to shape the DPA that the Government and Boeing secretly negotiated. In the Jeffrey Epstein case, the district court noted that "the CVRA was designed to

give victims the same opportunity [as defendants] to attempt to affect prosecutorial decisions before they became final." 359 F.Supp.3d at 1221. Excising the shall-not-file-charges provision in Boeing's DPA will give the victims' families an opportunity to "attempt to affect" the prosecutorial decision about whether to prosecute Boeing for its crimes connected to the two crashes before that prosecutorial decision becomes "final."

Precedent supports the power of this Court to set aside a part of a DPA if it was arrived at illegally. When other plea arrangements have been negotiated in violation of law, the illegal provision has been stricken by the courts. For example, *United States v. Walker*, 98 F.3d 944 (7th Cir. 1996), held that where a sentence on a new crime could not run concurrently with a probation revocation the defendant was then serving—contrary to the assumption of the parties to the plea agreement—the defendant was not entitled to specific performance of the plea agreement. The Court explained that the case was one "in which the bargain is vitiated by illegality." *Id.* at 947. Moreover, even though the defendant had served some prison time under the agreement, he had "forfeited" the right to seek specific performance of the agreement. *Id.*[10]

Here, of course, exactly the same is true: The shall-not-file-charges provision in Boeing's DPA is "vitiated" by illegality—namely, the fact that the parties negotiated it in violation of the victims' rights under the CVRA. Moreover, Boeing has forfeited any right to seek specific

---

[10] State cases reach similar conclusions. *See, e.g., Craig v. People*, 986 P.2d 951, 959-60 (Colo. 1999) (because "neither the prosecutor nor the trial court have authority to modify or waive the mandatory parole period," such "is not a permissible subject of plea negotiations" and even if "the trial court erroneously approves of such an illegal bargain," the plea provision is "invalid"); *State v. Garcia*, 582 N.W.2d 879, 881-82 (Minn. 1998) (plea agreement was for a 81-month sentence, but the court added a 10-year conditional release term because, under the facts of the case, a sentence without such release term was "plainly illegal,"); *State v. Wall*, 348 N.C. 671, 502 S.E.2d 585, 588 (1998) (plea agreement was for sentence to be concurrent with one not yet completed, but defendant was not entitled to specific performance because such a sentence would violate the laws of this state").

performance of that provision. Boeing was a party to—and, indeed, the instigator of—the Government's CVRA violations by asking for a secret DPA. Victims' Proffer ¶ 277.

A deferred prosecution agreement is, in essence, a contract between a criminal defendant and the Government; thus, it is governed by applicable contract law principles. *See United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013) (discussing plea agreement). One such fundamental principle is that a contract entered into in violation of law does not create enforceable legal rights. *See, e.g., In re OCA, Inc.,* 552 F.3d 413, 422 (5th Cir. 2008). As the Fifth Circuit has held, "illegal promises will not be enforced in cases controlled by the federal law." *Wise v. Wilkie*, 955 F.3d 430, 439 (5th Cir. 2020); *accord McMullen v. Hoffman*, 174 U.S. 639, 654 (1899) ("[N]o court will lend its assistance in any way to carrying out the terms of an illegal contract."). And a court cannot enforce an illegal agreement to the detriment of an innocent third party. *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 182 (5th Cir. 1981).

Here, the DPA's shall-not-file-charges-provision is illegal. It violates the CVRA, because prosecutors failed to confer with the victims, to give them timely notice of the DPA, and to treat them fairly in reaching the agreement. Accepting any contrary argument would allow the Government by private arrangement with a criminal to supersede congressional mandates for keeping crime victims informed. Just as the Government cannot illegally agree to run a sentence on a new crime concurrently with a probation revocation, *Walker*, 98 F.3d at 947, so too here it cannot illegally agree to defer prosecuting Boeing without first conferring with the victims' families. Accordingly, the provision is void for illegality, and the Court should set it aside as one of the appropriate remedies for the Government's CVRA violation.[11]

---

[11] Setting aside this provision would not implicate other provisions in the DPA. *See* Dkt. 65 at 17-24 (setting aside the DPA's shall-not-file-charges provision does not implicate the victims' fund provision).

D.   **The victims' families are also entitled to "remedies" in connection with their supervisory powers motion and arraignment motion.**

Once this Court finds that the victims' families are CVRA "victims," that finding also entitles them to certain "remedies" (if that's the correct term) in connection with their supervisory powers motion (Dkt. 17) and their arraignment motion (Dkt. 18).

With regard to the supervisory powers motion, protected "crime victims" are entitled to have the Court use that power to protect the victims' CVRA rights to confer, to timely notice of DPA, and to fairness. An appropriate exercise of that power would include the Court withholding its approval of the DPA until the victims have been afforded their CVRA right to confer with prosecutors about how to best structure the DPA.

With regard to the arraignment motion, the CVRA extends to victims the right "to be reasonably heard at any public proceeding in the district court involving release." 18 U.S.C. § 3771(a)(4). The victims' families thus have "standing" to request that the Court hold an arraignment and bond hearing, at which they would be heard regarding the conditions the Court should set for Boeing's release. Similarly, under the CVRA, victims have the right to proceedings "free from unreasonable delay." 18 U.S.C. § 3771(a)(7). While the Government takes the position that Rule 10 of the Federal Rules of Criminal Procedure "does not require arraignment to take place within a particular time" (Dkt. 58 at 17), at this point the arraignment is being unreasonably delayed and should be held promptly.

E.   **The victims are entitled to other appropriate remedies.**

The victims' families are also entitled to other remedies, as requested in their initial motion. Dkt. 52 at 27-28. Settled law holds that "the nature of the violation determines the scope of the remedy." *Veasey v. Abbott*, 888 F.3d 792, 800 (5th Cir. 2018) (internal quotation omitted). The victims' families respectfully request an opportunity to provide further briefing on all appropriate

remedies once the Court enters its order determining the nature and breadth of the Government's CVRA violations.

**<u>CONCLUSION</u>**

The key facts in this case are not in dispute: Boeing lied to the FAA about MCAS. Two MCAS-caused plane crashes resulted. And 346 innocent people died as a consequence. But when the Government investigated Boeing's crimes connected with the crashes, it deceived the victims' families and failed to confer with them—ultimately reaching a secret deal deferring any prosecution of Boeing.

The CVRA did not permit the Government to keep the families in the dark about its negotiations with Boeing. The Court should conclude that the Government violated the victims' families' CVRA rights. And because the Government violated the CVRA, the Court should direct briefing on the issue of appropriate remedies. This briefing will further establish that the victims' families are entitled multiple remedies. Among the remedies to which the families are entitled is excision of the DPA's shall-not-file-charges provision, so that the victims' families can confer with prosecutors about the appropriate federal charges Boeing should face for its horrific crimes.

Dated: March 4, 2022

                                    Respectfully submitted,


/s/ Warren T. Burns

Warren T. Burns (Texas Bar No. 24053119)      Paul G. Cassell (Utah Bar No. 06078)
Burns Charest, LLP                            (Counsel of Record)
900 Jackson Street                            Utah Appellate Project
Suite 500                                     S.J. QUINNEY COLLEGE OF LAW
Dallas, TX 75202                              University of Utah
469-904-4550                                  383 S. University St.
wburns@burnscharest.com                       Salt Lake City, UT 84112
                                              801-585-5202
                                              cassellp@law.utah.edu
                                              (no institutional endorsement implied)
                                              (*pro hac vice*)

                    *Attorneys for Victims' Families*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 4, 2022, the foregoing document was served on the parties to the proceedings via the Court CM/ECF filing system.


<u>/s/ Paul G. Cassell</u>
Paul G. Cassell