**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-005-O-1 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**MOTION OF NAOISE CONNOLLY RYAN, AS REPRESENTATIVE OF MICHAEL RYAN; EMILY CHELANGAT BABU AND JOSHUA MWAZO BABU, AS REPRESENTATIVES OF JARED BABU MWAZO; CATHERINE BERTHET, AS REPRESENTATIVE OF CAMILLE GEOFFROY; HUGUETTE DEBETS, AS REPRESENTATIVE OF JACKSON MUSONI; LUCA DIECI, AS REPRESENTATIVE OF PAOLO DIECI; BAYIHE DEMISSIE, AS REPRESENTATIVE OF ELSABET MINWUYELET WUBETE; SRI HARTATI, AS REPRESENTATIVE OF ERYANTO; ZIPPORAH KURIA, AS REPRESENTATIVE OF JOSEPH KURIA WAITHAKA; JAVIER DE LUIS, AS REPRESENTATIVE OF GRAZIELLA DE LUIS Y PONCE; CHRIS MOORE, AS REPRESENTATIVE OF DANIELLE MOORE; PAUL NJOROGE, AS REPRESENTATIVE OF CAROLYNE NDUTA KARANJA, RYAN NJUGUNA NJOROGE, KELLI W. PAULS, AND RUBI W. PAULS; YUKE MEISKE PELEALU, AS REPRESENTATIVE OF RUDOLF PETRUS SAYERS; JOHN KARANJA QUINDOS, AS REPRESENTATIVE OF ANNE WANGUI KARANJA; NADIA MILLERON AND MICHAEL STUMO, AS REPRESENTATIVES OF SAMYA STUMO; GUY DAUD ISKANDER ZEN S., AS REPRESENTATIVE OF FIONA ZEN; AND OTHER SIMILARLY SITUATED REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 FOR DISCLOSURE OF RELEVANT INFORMATION TO PROVE "CRIME VICTIM" STATUS AND VIOLATION OF THEIR RIGHTS**

Warren T. Burns
Burns Charest, LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell
(Counsel of Record)
Utah Appellate Project
S.J. Quinney College of Law
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice*)

*Attorneys for Victims' Families*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... v

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

I.      The Government and Boeing Have Disputed Facts Relevant to the Victims'
        Families' Motion for Enforcement of Their CVRA Rights. ............................................... 2

II.     The Government Refuses to Release Information Helpful to the Families'
        Arguments—Or Even Acknowledge Whether It Possesses Such Information.................. 3

III.    The Victims' Families Now Proffer Facts Regarding their Motion for Enforcement
        of their CVRA Rights. ....................................................................................................... 6

ARGUMENT .......................................................................................................................... 7

I.      The Government Cannot Reasonably Dispute Three of the Four Grounds the
        Victims' Families Offer for "Victim" Status in Their CVRA Motion, and the Court
        Should Simply Grant Their CVRA Motion on Those Three Grounds............................... 8

II.     If the Court Concludes that Disputed Facts Prevent it from Granting the Victims'
        Families' CVRA Motion, the Court Should Direct the Parties to Specifically
        Identify Which Facts are Disputed and the Specific Reasons for the Disputes. ............... 10

III.    After the Government Specifically Identifies Any Facts in Dispute, the Court
        Should Direct It to Produce Information in its Possession Supporting the Victims'
        Families on Those Disputed Issues. .................................................................................. 12

        A.  This Court should order the Government to produce information supporting
            the victims' families' position under its powers to manage these proceedings
            to ensure fairness........................................................................................................ 12

        B.  The Court should direct the Government to produce information supporting
            the victims' families' position as part of the Government's CVRA obligation
            to make its "best efforts" to see that victims are afforded their CVRA rights. .......... 13

        C.  The victims' families have a right to obtain favorable evidence under their
            CVRA right "to be treated with fairness." ................................................................. 16

        D.  Allowing the Government to withhold relevant evidence would raise serious
            ethical issues. ............................................................................................................. 18

        E.  A proposed schedule for production of information. .................................................. 19

IV.    After the Government Produces Information Supporting the Victims' Families'
       Position, the Court Should Hold an Evidentiary Hearing at Which Both the
       Victims' Families and the Government Can Produce Evidence and Call Witnesses....... 21

CONCLUSION.................................................................................................................... 21

CERTIFICATE OF SERVICE ....................................................................................... 26

## TABLE OF AUTHORITIES

Cases

*Brady v. Maryland*,
    373 U.S. 83 (1963)................................................................................. 17

*Doe v. United States*,
    No. 08-CV-80736-KAM, 2015 WL 4077440 (S.D. Fla. July 6, 2015) .................................... 11

*In re Antrobus*,
    519 F.3d 1123 (10th Cir. 2008) ............................................................... 14

*In re Fisher*,
    640 F.3d 645 (5th Cir. 2011). ................................................................... 6

*In re Fisher*,
    649 F.3d 401 (5th Cir. 2011) .................................................................... 6

*Jane Doe No. 1 v. United States*,
    749 F.3d 999 (11th Cir. 2014). ................................................................ 13

*Jane Does 1 and 2 v. United States*,
    359 F.Supp.3d 1201 (S.D. Fla. 2019). ....................................................... 13

*Jane Does 1 and 2 v. United States*,
    817 F. Supp. 2d 1337 (S.D. Fla. 2011)....................................................... 13

*Texas v. United States*,
    No. B-14-254, 2016 WL 3211803 S.D. Tex. May 19, 2016)................................... 18

*United States v. Atl. States Cast Iron Pipe Co.*,
    612 F. Supp. 2d 453 (D.N.J. 2009) .......................................................... 13

*United States v. Forkner*,
    No. 4:21-cr-00268-O (N.D. Tex. 2021) ...................................................... 18

*United States v. Ingrassia*,
    No. CR-04-0455ADSJO, 2005 WL 2875220 (E.D.N.Y. Sept. 7, 2005).................. 14

*United States v. Rubin*,
    558 F. Supp. 2d 411 (E.D.N.Y. 2008). ...................................................... 15

*United States v. Sacane*,
    No. 3:05-CR-325-AHN, 2007 WL 951666 (D. Conn. Mar. 28, 2007)................... 14

Other Authorities

18 U.S.C. § 3771(a)(8 ................................................................... 16, 17

18 U.S.C. § 3771(b)(1)) ...................................................................... 13

18 U.S.C. § 3771(c)(1)................................................................... passim

18 U.S.C. § 3771(d)(1). ......................................................................... 1

18 U.S.C. § 3771(e)(2)(A). ................................................................... 12

Rules

150 Cong Rec. 22953 (Oct. 9, 2004) ............................................................................... 11

150 CONG. REC. S4269 (Apr. 22, 2004 ......................................................................... 17

150 CONG. REC. S4270 (Apr. 22, 2004) ........................................................................ 13

BLACK'S LAW DICTIONARY 190 (10th ed. 2014). ......................................................... 15

David W. Robertson, 75 TEX. L. REV. 1765, 1774 (1997) ............................................ 9

E. Allen Farnsworth, *On Trying to Keep One's Promises: The Duty of Best Efforts in Contract Law*, 46 U. PITT. L. REV. 1, 8 (1984). .................................................................. 15

https://transportation.house.gov/imo/media/doc/2020.09.15%20FINAL%20737%20MAX%20Report%20for%20Public%20Release.pdf. .................................................................. 7

Statutes

Fed. R. Crim. P. 6(e)(3)(E)(i). ............................................................................... 16, 20

Texas Disciplinary Rules of Prof. Conduct 3.03 ........................................................ 18

**MOTION OF NAOISE CONNOLLY RYAN ET AL., REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302, FOR DISCLOSURE OF RELEVANT INFORMATION TO PROVE "CRIME VICTIM" STATUS AND VIOLATION OF THEIR RIGHTS**

Naoise Connolly Ryan et al. (the "victims' families"),[1] through undersigned counsel, file this motion for the Court to direct the parties to disclose to the families information relevant to proving "crime victim" status and violation of their CVRA rights.

## INTRODUCTION

The Government disputes whether those who died in the two Boeing 737 MAX plane crashes are "crime victims" protected under the CVRA. In the Government's view, the "record" in this case fails to establish "victim" status—i.e., whether the crash victims were directly and proximately harmed by Boeing's crime to deceive the FAA about critical safety issues connected with the MAX. But while asserting this position in Court, the Government has assiduously denied the victims' families information that would help them to prove "victim" status. This Court should not permit the Government to conceal information relevant to a fair determination of the CVRA issues. The CVRA obligates the Government to use its "best efforts to see that crime victims are … accorded the rights described in [the CVRA]." 18 U.S.C. § 3771(d)(1). And this Court must also "ensure" that victims are afforded their rights. 18 U.S.C. § 3771(c)(1). Under these specific provisions (among others)—as well as the Court's inherent authority to manage its proceedings to ensure fairness—the Court should direct the Government to provide to the victims' families—and, thus, to the Court—information supporting their position. And if Boeing disputes the facts, it should likewise be required to produce relevant information.

---

[1] In addition to Ms. Ryan, the other victims' family members filing this motion are Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, Guy Daud Iskandar Zen S., and others similarly situated. They are supported by more than one hundred other families.

1

## FACTUAL BACKGROUND

**I.    The Government and Boeing Have Disputed Facts Relevant to the Victims'**
**Families' Motion for Enforcement of Their CVRA Rights.**

On December 16, 2021, the victims' families filed a motion for enforcement of their rights

under the Crime Victims' Rights Act (Dkt. 52, hereinafter "CVRA Motion"). In that motion, the

families set out the factual underpinnings for their argument. The victims' families began by

explaining that they represented "crime victims" protected by the CVRA—specifically, victims of

the two Boeing 737 MAX crashes. Dkt. 52 at 4-7. The victims' families also stated that the crash

victims were "directly and proximately harmed" by Boeing's conspiracy to conceal the 737 MAX's

safety issues from the FAA. *Id.* The families then provided additional facts supporting their motion

(*id.* at 7-16) and legal arguments about why the facts proved that the Government had violated

their CVRA rights (*id.* at 16-29). The victims' families requested an evidentiary hearing if any of

their factual recitations were disputed. *Id.* at 5 n.4.

The same day that the victims' families filed their motion (December 16, 2021), they wrote

to the Justice Department seeking its support. The victims' families had hoped that the Government

would agree with their motion, including their contention that the crash victims were "crime

victims" protected by the CVRA. In the following weeks, through undersigned counsel, the

families continued to request the Department's support, both in writing and in other ways. For

example, the victims' families made Zoom presentations to the Assistant Chief of the Criminal

Division's Fraud Section, the Assistant Attorney General of the Criminal Division, and ultimately

the Attorney General.  The presentation to the Attorney General on January 26, 2022, involved the

Attorney General personally and approximately thirteen other Department lawyers. In those

presentations, the victims' families explained why the Department should support the victims'

position, including explaining why they represented "crime victims" under the CVRA.

Nine days later, on February 4, 2022, the parties held a meet-and-confer via telephone regarding future scheduling. At that meeting, the Government revealed that it would be opposing the victims' families' position with a forty-page opposition. Dkt. 57 at 2. The Government, however, refused to answer any questions about what its opposition would say. The Government also refused to provide any information about why it would be opposing the families' motions.

A few days later, on February 8, 2022, the Government filed a twenty-page opposition to the victims' families' CVRA motion. Dkt. 58. The Government apologized for failing to confer with the victims' families about its secret deferred prosecution agreement (DPA) with Boeing (Dkt. 58 at 1-2) and for deceiving them about whether it was criminally investigating the two crashes (*id.* at 18-19). Nonetheless, the Government tersely argued, the victims of the two 737 MAX crashes were not "crime victims" protected by the CVRA—i.e., they were not "directly and proximately harmed" by Boeing's conspiracy to conceal the MAX's safety issues from the FAA. In several paragraphs, the Government briefly argued that the "*evidence here* does not meet the proof demanded by the CVRA between the fraud on the FAA … and the horrific crashes in Ethiopia and Indonesia …." Dkt. 58 at 11 (emphasis added). Indeed, the Government asserted that its position was so clear that the Court should deny the families' motion without even a hearing. *Id.* at 19. Without elaboration, Boeing quickly agreed with the Government's position. Dkt. 62. at 5.

## II. The Government Refuses to Release Information Helpful to the Families' Arguments—Or Even Acknowledge Whether It Possesses Such Information.

While the victims' families were disappointed that the Government opposed their CVRA motion, they hoped that, at a minimum, the Government would disclose its information supporting the families' position, including factual information supporting their position that the crash victims were CVRA "crime victims." The families have repeatedly requested such information from the Department. Yet the Department refuses to acknowledge it even possesses such information.

During the January 26 meeting with the Attorney General (and in a related letter), the victims' families asked the Department to provide information supporting their position. The Department did not substantively respond.

At the February 4 meet-and-confer, the victims' families' counsel asked the Department's lawyer whether, even if the Department believed it was not legally obligated to produce such supporting information, it would nonetheless voluntarily provide it to the victims' families. The lawyer indicated that he was not authorized to discuss that subject.

On February 6, 2022, the victims' families followed up with a written request to the Department for information helpful to the families' position.

On February 11, 2022, the victims' families sent another communication to the Department, requesting that it voluntarily produce information helpful to the victims' families' position. That same day, the Government's lawyer responded briefly that the Government position remained that it opposed any such request.

On February 15, 2022, the Court granted leave to the victims' families to file this motion regarding obtaining appropriate discovery. Dkt. 64.

On February 22, as part of preparing this motion for disclosure of information, counsel for the victims' families e-mailed the Government to try and narrow any dispute regarding the facts surrounding this issue. The families suggested that the Government could not reasonably dispute that it possessed information helpful to the victims' families' position and had not disclosed that information to the families and to the Court. The families proffered that, among the information in the Government's possession that would assist the Court in fairly determining relevant issues is information supporting the following facts, if disputed:

(a)  In and around February 2020, the Government was criminally investigating the two crashes.

(b)  During its criminal investigation of Boeing, the Government investigated the possibility of filing charges for manslaughter or other forms of federal negligent homicide against Boeing and collected evidence supporting such charges.

(c)  Boeing was aware that the Government was concealing the deferred prosecution agreement (DPA) from the victims' families until it was filed in court.

(d)  The FAA's certification of the 737 MAX and the approval of only Level B transition training (i.e., no flight simulator training) had worldwide effects because of the deference that other countries provide to the FAA's determinations.

(e)  But for Boeing's conspiracy to defraud the FAA AEG, the two flights would not have crashed.

(f)  Boeing could reasonably foresee that a result of its conspiracy would be safety risks to—and crashes of—737 MAX aircraft.

(g)  If the FAA AEG had not been deceived by Boeing's conspiracy, before October 28, 2018, it would have ordered that pilot manuals for the 737 MAX needed to include an explanation of MCAS and how pilots should deal with it and that 737 MAX pilots should undergo simulator training on the effects of the Maneuvering Characteristics Augmentation System (MCAS).

(h)  If the FAA AEG had not been deceived by Boeing's conspiracy, the pilot manuals for the 737 MAX used by foreign carriers (including Lion Air and Ethiopian Airlines) would have included an explanation of MCAS and how pilots should deal with it before the two crashes.

(i)  If the FAA AEG had not been deceived by Boeing's conspiracy, the pilot training for the 737 MAX used by foreign carriers (including Lion Air and Ethiopian Airlines) would have included simulator training on the effects of MCAS before the two crashes.

(j)  If the pilots flying Lion Air Flight 610 and Ethiopian Airlines Flight 302 had received simulator training on the effects of MCAS, flight control problems would have been illustrated and actions taken that would have reduced the risk that the two flights would crash.

(k)  If the pilots flying Lion Air Flight 610 and Ethiopian Airlines Flight 302 had materials in their pilots' manuals for the 737 MAX explaining how pilots should deal with MCAS, flight control problems would have been illustrated and actions taken that would have reduced the risk that the two flights would crash.

(l)  It was a necessary part of Boeing's conspiracy that Lion Air and Ethiopian Airlines not know about the full scope of MCAS; if those airlines (and its pilots) had been told about the full scope of MCAS, that information would have inevitably found its way back to the FAA—defeating the purpose of the conspiracy.

(m) After the two crashes, the FAA AEG ultimately decided that pilot manuals for the 737 MAX needed to include an explanation of MCAS and how pilots should deal with it and that 737 MAX pilots should undergo simulator training on the effects of MCAS.

In response, the Government refused to agree that *any* of these facts were undisputed.

Instead, the Government sent an e-mail stating only that it would respond later: "We will respond

to your motion in accordance with the Federal Rules of Criminal Procedure, the Northern District of Texas Local Rules for Criminal Cases, and the Court's scheduling order that govern these proceedings.  We do not agree with the premise of the demands set forth in your email or the factual assertions, and we will respond to your filing in due course."

### III.    The Victims' Families Now Proffer Facts Regarding their Motion for Enforcement of their CVRA Rights.

Against this backdrop of the victims' families repeated—and unsuccessful—efforts to obtain information from the Government, the families now provide to the Court a proffer of facts that they could establish at an evidentiary hearing regarding their CVRA motion. *See* Exhibit 1. This kind of a factual record is part of determining the CVRA issues in this case. The Fifth Circuit has held, under the CVRA's plain language, a person "may qualify as a victim, even though [he] may not have been the target of the crime, as long as [he] suffers harm as a result of the crime's commission." *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011). And the Firth Circuit has further instructed that this causation inquiry requires a district court to construct a "mental picture" of what the world would have looked like in the absence of a defendant's crime. *In re Fisher*, 649 F.3d 401, 403 (5th Cir. 2011).

Contemporaneously with filing this motion, the victims' families are filing a reply brief tracing out in greater detail how the 737 MAX crashes victims were "directly and proximately harmed" by Boeing's crime, thereby creating CVRA "crime victim" status. In their proffer attached as Exhibit 1 hereto, the victims' families provide factual information that they are prepared to establish at an evidentiary hearing—information establishing that "mental picture" of how Boeing's crime tragically changed the world. This detailed proffer draws on many materials that cannot be reasonably disputed. For example, some of the proffer's initial facts come from the DPA's Statement of Facts.  Dkt. 4, pp. A-1 to A-15.  Many of the other facts are drawn from a

congressional report—i.e., Final Committee Report: The Design, Development and Certification of the Boeing 737 MAX: Majority Staff of the House Comm. on Transportation and Infrastructure (Sept. 2020) and supporting materials collected by congressional investigators.[2]  Some of the facts draw upon the two investigations of the two crashes, conducted by the proper aviation authorities in Indonesia and Ethiopia. Some of the facts include information that the victims' families anticipate that they could elicit from their three expert witnesses. Some of the facts include information that the families anticipate that they could elicit from appropriate witnesses from the FAA, Boeing, and the Justice Department. The proffer clearly establishes that the crash victims were "crime victims" within the meaning of the CVRA and that the Government violated those victims' CVRA rights.

## **ARGUMENT**

The victims' families believe that the undisputed facts in this case by themselves allow this Court to grant their CVRA motion. But if this Court concludes that disputed facts preclude granting the victim's CVRA motion, then the Court should direct the Government to specify which particular facts it disputes (if the Government hasn't already done so).  Thereafter, the Court should direct the Government to provide to the victims' families information it possesses supporting those disputed facts. The Government routinely provides such information to criminal *defendants* whom it charges with crimes. The Government should do the same for innocent victims, particularly in light of the CVRA's mandate that the Government must make its "best efforts" to see that crime victims are afforded their rights. 18 U.S.C. § 3771(c)(1).

---

[2]

https://transportation.house.gov/imo/media/doc/2020.09.15%20FINAL%20737%20MAX%20Report%20for%20Public%20Release.pdf.

If Boeing wishes to enter the fray regarding the facts, it should likewise produce relevant factual information on the issues.

Thereafter, the Court should hold an evidentiary hearing where the victims' families and the parties can present their respective cases.

**I.      The Government Cannot Reasonably Dispute Three of the Four Grounds the Victims' Families Offer for "Victim" Status in Their CVRA Motion, and the Court Should Simply Grant Their CVRA Motion on Those Three Grounds.**

Before turning to what should happen *if* disputed facts prevent the Court from granting their CVRA motion, the victims' families initially note that the Court can grant their motion immediately based on undisputed facts. In their contemporaneously filed reply in support of their CVRA motion, the victims' families advance four separate paths of analysis for concluding the crash victims are "crime victims" protected by the CVRA.  *See* Victims' Families Reply in Support of CVRA Mot. at Part I.B.  Three of those paths do not rest on facts that can be reasonably disputed.

First, as discussed in Part II.B.1 of the reply, it does not appear to be disputed that, in February 2020, the Government was criminally investigating the two 737 MAX *crashes*—and clearly the families represent "victims" of those crashes. Accordingly, when the Government deceived the families about the existence of its investigation—deception that the Government admits (Dkt. 58 at 18-19)—the Government violated the families' CVRA rights to be treated fairly and to confer. The Court need not analyze other facts to find that the Government violated the CVRA.

Second, as discussed in Part II.B.2 of the reply, it does not appear to be disputed that the DPA blocks Boeing's criminal prosecution for a vast array of federal crimes—including manslaughter and federal negligent homicide crimes. Here again, it cannot be reasonably disputed that the families represent "victims" of such homicide crimes. And, accordingly, the CVRA

obligated the Government to confer with the families about that resolution of such potential charges and provide timely notice of its DPA preventing prosecution of these crimes. Here again, the Court need not investigate the facts surrounding the crashes to reach this conclusion.

Third, as discussed in Part II.B.4 of the reply, it cannot be reasonably disputed that Boeing's actions created a safety *risk* to the passengers and crew aboard the two doomed 737 MAX flights. When Boeing concealed important safety information about MCAS from the FAA, it was running a risk that such information would be important to designing appropriate pilot training for MAX pilots and for conveying information to them about MCAS. When two MCAS-caused crashes ultimately resulted, the fact that Boeing's conspiracy posed a safety risk became undeniably clear.

To be sure, the Government may wish to dispute the *legal* underpinnings of the families' argument that risk-equals-harm under the CVRA. But the Government cannot reasonably dispute that, as a matter of fact, Boeing's crime created some risk to the passengers and crew on those planes.

With that factual premise in place, the legal conclusion that Boeing harmed the crash victims follows inexorably. Indeed, on this issue of but-for causation, "[c]ourts often emphasize that it is a mistake to insist on too much certainty." David W. Robertson, 75 TEX. L. REV. 1765, 1774 (1997) (cited with approval by *In re Fisher*, 649 F.3d 401, 403-04 (5th Cir. 2011) (interpreting the CVRA)). Instead, "[w]henever it can be said with fair certainty that the rule of conduct relied upon by the [victim] was designed to protect against the very type of risk to which the [victim] was exposed, courts have shown very little patience with the efforts of defendant to question the sufficiency of the proof on cause." Robertson, *supra*, at 1774. Thus, "where the [conduct] of the defendant greatly multiplies the chances of accident . . . and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the [conduct] is not

sufficient to break the chain of cause and effect . . . ." *Id.* at 1775. And, as a result, "[i]f as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists." *Id.* All of these points apply with particular force to Boeing's crime of concealing *safety* information from the FAA—the federal agency charged with reducing the risk of accidents to protect passenger *safety*. Here again, the Court could—and should—simply grant the victims' families' CVRA motion on this ground and avoid entering into potentially disputed factual terrain.

II.  **If the Court Concludes that Disputed Facts Prevent it from Granting the Victims' Families' CVRA Motion, the Court Should Direct the Parties to Specifically Identify Which Facts are Disputed and the Specific Reasons for the Disputes.**

In addition to these three paths of analysis, the victims' families offered a fourth path for the Court to conclude that the families represent "crime victims" under the CVRA: that Boeing's conspiracy crime directly and proximately caused the two crashes. *See* Victims' CVRA Mot. Reply at Part I.B.3. The families advanced this position in their opening motion (Dkt. 52 at 5-7) and requested an evidentiary hearing if the parties disputed their position (*id.* at 5 n.4). Because the Government (and Boeing) have disputed their position, the families provide a detailed proffer of what facts they could establish at an evidentiary hearing as an exhibit to this motion. Victims' Proffer, Ex. 1.

With regard to this fourth path of analysis, the logical next step in this litigation is the Government immediately explaining, paragraph-by-paragraph, which specific parts of the families' proffer it disputes. The Government's response to this motion is due in one week. If the Government would itemize which facts are in dispute, that would obviously help to narrow the scope of the litigation and facilitate a speedy resolution of this issue.

The victims' families are concerned, however, that the Government will continue to avoid discussing specifics. As noted above, the victims' families have repeatedly attempted to confer with the Government about the facts of this case—without success.

Accordingly, if the Government declines to make a detailed response to the proffer, then the families respectfully submit that the appropriate next step would be for the Court to direct the Government to review the families' proffer and identify (1) which specific paragraphs it disputes; and (2) the Government's specific basis for disputing those paragraphs. Of course, this approach generally tracks the time-worn path that the Court employs in considering summary judgment issues. While the CVRA does not provide specific guidance on how disputed factual issues are to be resolved, using the civil rules as a general backdrop is appropriate. *See Doe v. United States*, No. 08-CV-80736-KAM, 2015 WL 4077440, at *13 (S.D. Fla. July 6, 2015) ("this Court has repeatedly held that the Federal Rules of Civil Procedure govern the general course of this [CVRA enforcement action]"). Indeed, as the Senate co-sponsor of the CVRA explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while *giving meaning* to the rights we establish." 150 Cong Rec. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphases added).

There is one difference between the ordinary course of a civil case and this case: The victims have yet to be given a chance to obtain any information from the Government (and Boeing) to fully develop their own "record." But it seems appropriate to first narrow the issues by having the Government specifically identify particular facts in the victims' families' proffer it disputes. And, if Boeing wishes to join the issue, it should do the same.

11

III.    **After the Government Specifically Identifies Any Facts in Dispute, the Court Should Direct It to Produce Information in its Possession Supporting the Victims' Families on Those Disputed Issues.**

After the Government identifies what specific facts are in dispute, this Court should then direct the Government to provide to the victims' families information in its possession regarding those disputed facts. The CVRA extends its protections to all "crime victims"—i.e., to all persons who have been "directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). The Government urges this Court to deny the victims' families' CVRA motion on the ground that the families do not represent "crime victims" protected by the CVRA. Dkt. 58 at 10-13.[3] On close inspection, however, it turns out that the Government makes no claim that Boeing's conspiracy crime did not directly and proximately harm the crash victims. Instead, the Government's position is carefully hedged: The Government asserts only that the "*evidence here* does not meet the proof demanded by the CVRA between the fraud on the FAA … and the horrific crashes in Ethiopia and Indonesia …." Dkt. 58 at 11 (emphasis added). This begs the question of what the "evidence here" is. The Government is concealing significant and compelling evidence supporting the victims' families' position. Because the Government will not voluntarily disclose that evidence, this Court should direct the Government to disclose it.

A.    **This Court should order the Government to produce information supporting the victims' families' position under its powers to manage these proceedings to ensure fairness.**

The CVRA specifically "places responsibility on the [district] court for its implementation, requiring that '*the court shall ensure* that the crime victim is afforded [those] rights.'" *United*

---

[3] Boeing has stated only that it "agrees" with the Government's assessment "for the reasons stated by" the Government. Dkt. 62 at 5. Accordingly, this part of the families' motion will discuss the Government's obligations to produce information. But if Boeing raises different factual arguments from the Government, it should be required to also produce information to the families. *See* Part III.E, *infra.*

*States v. Atl. States Cast Iron Pipe Co.,* 612 F. Supp. 2d 453, 458 (D.N.J. 2009) (*citing* 18 U.S.C. § 3771(b)(1)) (emphasis added). The CVRA's provisions are designed to encourage district courts "to broadly defend the victims' rights." 150 CONG. REC. S4270 (Apr. 22, 2004) (statement of Senator Kyl).

This Court has the authority to manage this proceeding to ensure that it receives all evidence it needs from the parties to fairly decide the CVRA issues. Indeed, in the strikingly similar case (involving a secret plea deal with Jeffrey Epstein that violated his victims' CVRA rights), crime victims filed a discovery motion like this one. At a hearing in the case, the federal prosecutors "agreed that [the district court], under its inherent authority to manage this case, could impose discovery obligations on each party." *Jane Does 1 and 2 v. United States*, 817 F. Supp. 2d 1337, 1344 (S.D. Fla. 2011). In light of the Justice Department's concession, the district court found that "some factual development is necessary to resolve the remaining issues in this case" and permitted the victims "the opportunity to conduct limited discovery in the form of document requests and requests for admissions" from the Government. *Id.* Thereafter, the victims sought discovery, and the Eleventh Circuit rejected challenges from the defendant to the discovery requirement. *See Jane Doe No. 1 v. United States*, 749 F.3d 999 (11th Cir. 2014). After the victims obtained discovery, they were ultimately successful in proving their CVRA claims. *Jane Does 1 and 2 v. United States*, 359 F.Supp.3d 1201, 1217-20 (S.D. Fla. 2019). This Court should follow the same general approach here, requiring the Government to produce relevant information needed for a fair determination of the disputed issues.

**B. The Court should direct the Government to produce information supporting the victims' families' position as part of the Government's CVRA obligation to make its "best efforts" to see that victims are afforded their CVRA rights.**

The Government is also obliged to produce information to the victims' families because the CVRA requires the Government to use it "best efforts" to protect crime victims' rights. The

CVRA directs that "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall *make their best efforts* to see that crime victims are notified of, and accorded, the rights described in [the CVRA]." 18 U.S.C. § 3771(c)(1) (emphasis added). It is hard to understand how the Government could argue that it is making its "best efforts" to protect victims' families rights while simultaneously withholding from the families readily-identifiable materials that might allow them to protect those very rights. If the CVRA best-efforts requirement means anything, it must mean that the Government cannot suppress favorable information from victims. *See In re Antrobus*, 519 F.3d 1123, 1126 (10th Cir. 2008) (Tymkovich, J., concurring) ("the government erred in failing to permit [putative crime victims' representatives] reasonable access to evidence which could support their claim…. The government's cooperation is mandated by the CVRA, which requires the government to 'make [its] best efforts to see that crime victims are notified of, and accorded, the rights' set forth in the Act" (quoting CVRA)); *United States v. Sacane,* No. 3:05-CR-325-AHN, 2007 WL 951666, at *2 (D. Conn. Mar. 28, 2007) ("If the [victims] believe that additional financial disclosures are necessary [to pursue a restitution claim], then pursuant to the CVRA they may enlist the assistance of the government; but they are not permitted to bypass the government and discover information directly from [the defendant]" (citing CVRA's "best-efforts" requirement)); *United States v. Ingrassia,* No. CR-04-0455ADSJO, 2005 WL 2875220, at *17 (E.D.N.Y. Sept. 7, 2005) ("the CVRA plainly puts an interested victim in a position to get [sufficient information to weigh in on disputes about the contents of a pre-sentence report] by establishing an enforceable right to confer with the prosecutor" (citing CVRA's "best-efforts" requirement)).

This understanding of the best-efforts obligation is confirmed by the plain meaning of "best efforts." That phrase is generally understood as requiring "[d]iligent attempts to carry out an

obligation." BLACK'S LAW DICTIONARY 190 (10th ed. 2014). *See generally* E. Allen Farnsworth, *On Trying to Keep One's Promises: The Duty of Best Efforts in Contract Law*, 46 U. PITT. L. REV. 1, 8 (1984). As a result, "[b]est efforts are measured by the measures that a reasonable person in the same circumstances and of the same nature as the acting party would take." BLACK'S LAW DICTIONARY 190 (10th ed. 2014). A reasonable prosecutor who is obligated to work to "accord" crime victims their rights, 18 U.S.C. § 3771(c)(1), would not simultaneously deny victims access to the very evidence that could help them protect their rights. Here, far from diligently attempt to provide victims' their rights, the Government is devoting its considerable energies to denying those rights.

It is also important to recognize that the victims' families are not seeking to force the Government to shoulder an undue burden. To the contrary, through counsel, the victims' families have repeatedly sought to confer with the Government about what kind of evidence it might voluntarily produce to the victims' families. The victims' families have also made clear that they would be willing to discuss production of summaries of information. Rather than produce *anything*, the Government has simply stonewalled.

In its response to the CVRA motion (Dkt. 58 at 17), the Government claims to find support for its position that victims are not entitled to relevant information in *United States v. Rubin*, 558 F. Supp. 2d 411 (E.D.N.Y. 2008). But that case contradicts the Government's position. In *Rubin*, crime victims argued that the Government had "not provided information with which to pursue restitution." *Id.* at 425. The district court agreed that the CVRA "does not authorize an unbridled gallop to any and all information in the Government files" (*id.*)—the quotation that the Government uses in its brief. Dkt. 58 at 17. But the district court went on to state that "[c]onferring with and *seeking information from the government* in connection with restitution to be sought in an actual

criminal proceeding, by contrast, *would appear to be well within these bounds*." *Id.* (emphasis added). The district court continued that, because the Government believed some of the restitution information it possessed was secret grand jury material, it had provided the victims "with schedules setting forth information based on the grand jury materials that may, along with continued efforts to obtain the remainder of the grand jury material, fulfill [the victims'] request." *Id.*[4] The district court also observed that at oral argument "the government pledged to continue such efforts, to [the victims'] apparent satisfaction." *Id.* The court accordingly found it unnecessary to rule further on the victims' motion for production of information, because the Government had apparently already produced it.

The Government actions here are a far cry from those in *Rubin*. Rather than providing the victims' families with any material information (or even summaries of that information), the Government is trying to block a fair adjudication of the issues. On the one hand, the Government has told this Court that the "record" does not prove that the families represent "victims." But, on the other hand, the Government is denying the families relevant information to prove that very point. The Court should accordingly order the Government to produce to the victims' families what is "well within the bounds" of the CVRA, *Rubin*, 558 F. Supp. 2d 425—i.e., relevant information about the families' "crime victim" status and their CVRA claims.

### C.  The victims' families have a right to obtain favorable evidence under their CVRA right "to be treated with fairness."

The victims are also entitled to receive favorable evidence under the CVRA's right "to be treated with fairness." 18 U.S.C. § 3771(a)(8). Congress designed this provision to guarantee crime victims due process in the criminal justice process. As one of the CVRA's co-sponsors (Senator

---

[4] The rules on grand jury materials also specifically authorize release of such materials "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i).

Kyl) explained, "The broad rights articulated in this section [18 U.S.C. § 3771(a)(8)] are meant to be rights themselves and are not intended to just be aspirational. One of these rights is the right to be treated with fairness. Of course, fairness includes the notion of *due process*." 150 CONG. REC. S4269 (Apr. 22, 2004) (emphasis added).

Here, such general "due process" considerations mean that the victims' families are entitled to favorable evidence within the Government's possession and control. Indeed, if the issue involved not innocent family members but rather a criminal, the Government would provide such information. Courts have long recognized that fundamental fairness requires that the Government not withhold relevant information contrary to its position in court. For criminal defendants, this principle traces back to *Brady v. Maryland*, 373 U.S. 83 (1963). There, the Supreme Court held that fairness required the Government to provide criminal defendants with evidence helpful to their cases. *Brady* explained that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair." *Id.* at 87. Indeed, *Brady* quoted from an inscription on the walls of the Justice Department: "The United States wins its point whenever justice is done its citizens in the courts." *Id.* Based on that precept, *Brady* refused to allow a prosecutor to be "an architect of a proceeding that does not comport with standards of justice." *Id.* at 87-88.

Precisely the same points can be made here about the Government's obligation to produce evidence to the victims' families. The Justice Department will "win its point if justice is done." But justice can only be done if these proceedings are fair—which means that the Court must have all relevant information when making its rulings.

The Government has no difficulty following *Brady* principles in providing favorable information to criminal defendants. For example, in the related criminal case involving Boeing's test pilot, Mark Forkner, the Government produced many documents to the defense. *See United*

17

*States v. Forkner*, No. 4:21-cr-00268-O (N.D. Tex. 2021), Dkt. 72 at 1. Indeed, the Government even specifically identified 16,000 "hot documents" to assist Forkner in preparing his defense. *Id.* at 4. The Government provided this information to an accused criminal to ensure "that justice is done." *Brady*, 373 U.S. at 87. If fairness requires the Government to produce helpful information to a defendant at the center of Boeing's conspiracy, fairness demands the same for that conspiracy's innocent victims.

### D. Allowing the Government to withhold relevant evidence would raise serious ethical issues.

Finally, it is worth considering the potential ethical ramifications of the Government's stark position that it can withhold material evidence from the victims' families—and the Court. Prosecutors, no less than other attorneys, have duties of candor that forbid presenting evidence that is known to be false. *See* Texas Disciplinary Rules of Prof. Conduct 3.03 (Candor Toward the Tribunal) (eff. Jan. 31, 2022); *see also Texas v. United States*, No. B-14-254, 2016 WL 3211803, at *7 (S.D. Tex. May 19, 2016) ("the duties of a Government lawyer, and in fact of any lawyer, are threefold: (1) tell the truth; (2) do not mislead the Court; and (3) do not allow the Court to be misled"). Similarly, in an ex parte proceeding, a lawyer must "disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision." *Id.* at 3.03(a)(3). If the Government is correct that the victims' families are not entitled to access to favorable evidence, then the proceedings involving their "victim" status and related issues essentially become ex parte— requiring the Government to make appropriate disclosures to the Court so that it will not be "misled" and can make an "informed decision."

An illustration of these implications comes from the issue of whether the Government was investigating the two MAX crashes in and after February 2020. In their CVRA motion, the families

argued that the Government deceived them by denying such a criminal investigation even existed at that time. Dkt. 52 at 25. In response, the Government apologized for providing the victims' families with "inaccurate information" (Dkt. 58 at 18) and blandly stated that "[t]his situation should have been handled differently" (*id.*). But the Government never disclosed what the "inaccurate" information was or how it should have properly handled "the situation." The victims' families believe that the truth was that the Government *was* criminally investigating the two crashes then. *See* Victims' Families Reply in Support of CVRA Mot. at Part I.B.1 (citing Boeing's 2019 SEC Form 10-K referencing the on-going "investigation by the U.S. Department of Justice" related to the 737 MAX crashes). But unless the Government is candid with the Court, it will be difficult for the Court to properly decide the issue.

Consistent with the principle that the Court should make an "informed decision" on the key issues in a case, the Court should order the Government to produce relevant information to the victims' families.

### E. A proposed schedule for production of information.

The victims' families understand that the Government (and possibly Boeing) will respond to this motion on March 11 and that the victims will reply in support on March 18. The victims' families will also provide three expert reports supporting their CVRA motion on March 31.

In light of this background, the victims' families request that the Government (and Boeing, if it chooses to participate) provide a paragraph-by-paragraph response to the families proffer on March 11. The responses would identify which paragraphs are disputed and the basis for the disputes. Thereafter, in their reply on March 18, the victims' families would make specific discovery requests in light of which facts are disputed.

Alternatively, if the parties decline to identify specific facts in dispute in their March 11 responses, then the Court should enter a scheduling order directing this step. If a schedule is

necessary, the victims respectfully request that the Court direct the Government (and Boeing) to identify which facts are in dispute and the basis for any disputes by April 8.  One week later, the victims' families would provide specific discovery requests for materials related to any facts in dispute. And two weeks later, the Government (and Boeing) would provide the requested materials that are within their possession or control.

To simplify this case, the victims' families agree that production obligations can be satisfied through a summary of the substance of the relevant factual information the Government possesses regarding any disputed fact. If the Government believes that a discovery request is unduly burdensome, it should confer with victims' families about appropriate ways to provide the substance of the same information in less burdensome ways. If the Government believes that materials are covered by an applicable privilege, it should provide a privilege log supporting the basis for that claim of privilege. If the materials are grand jury materials, the Government should make the appropriate application under Fed. R. Crim. P. 6(e)(3)(E)(i) for use of the materials "in connection with a judicial proceeding"—i.e., in connection with this case.

Boeing may not want to become involved in the factual disputes in this case. But if Boeing wishes to join these issues with factual arguments different than the Government's, it would then be subject to the same requirements for sorting through the issues. Boeing would proceed on the same schedule—and under the same conditions—as the Government. In other words, under its inherent authority to manage this case, the Court would direct that if Boeing disputes any facts in the victims' families' proffer, it would identify those specific facts and the basis for the dispute. Thereafter, the families would provide a discovery request for Boeing's information and Boeing would produce the information requested. Otherwise, Boeing should not be permitted to raise any objection to the victims' families' proffer and the facts underlying their CVRA motion.

After the parties produce their relevant information regarding this case, the Court could then schedule an evidentiary hearing to determine any remaining issues in dispute, as discussed in the next section of this motion.

**IV.** **After the Government Produces Information Supporting the Victims' Families' Position, the Court Should Hold an Evidentiary Hearing at Which Both the Victims' Families and the Government Can Produce Evidence and Call Witnesses.**

Once the Government (and Boeing) provide to the victims' families their information relevant to the factual disputes in this case, the Court should then direct the families and the parties to file briefs regarding what facts remain in dispute and need to be resolved via an evidentiary hearing. The victims' families remain optimistic that only a small number of the facts that they have proffered will be disputed, since the vast bulk of these facts come from government authorities (both here and abroad) who have investigated the two 737 MAX crashes. But regardless of how the other parties choose to proceed, the victims' families are prepared to prove that their loved ones who were killed in the two crashes were "directly and proximately harmed" by Boeing's conspiracy to deceive the FAA and that the Government has violated their rights under the CVRA.

## CONCLUSION

The Government has apologized for failing to confer with the victims' families about its secret DPA with Boeing (Dkt. 58 at 1-2) and for deceiving the families about its investigation into Boeing's crimes (*id.* at 18-19). And, the Government pledges, it will make sure that such abuses do not occur again. *Id.* at 8. But apologies and paper promises do nothing to ensure that the victims' families rights are afforded their CVRA rights now and in this case. The CVRA requires the Court "to ensure" that victims' are afforded their CVRA rights. 18 U.S.C. § 3771(c)(1). To fairly decide the facts in this case, this Court should direct that the Government not conceal relevant evidence

about those facts. And, if Boeing disputes the relevant facts, it should likewise be required to produce relevant information.

Accordingly, this Court should direct the parties to produce information supporting the victims' families' positions on the schedule and conditions outlined above.  A proposed order to that effect is attached.

Dated: March 4, 2022

Respectfully submitted,

/s/ Warren T. Burns

Warren T. Burns (Texas Bar No. 24053119)
Burns Charest, L
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice*)

*Attorneys for Victims' Families*

**<u>CERTIFICATE OF CONFERENCE</u>**

Via emails exchange with counsel for the Government and Boeing on February 28, 2022, through March 1, 2022, the victims' families conferred about this motion. The Government and Boeing oppose the motion.

*The Government's Opposition*

The Government opposes because it will respond in accordance with the Federal Rules of Criminal Procedure, the Northern District of Texas Local Rules for Criminal Cases, and the Court's scheduling order that govern these proceedings. The Government believes that the proposed scheduling order submitted by the parties and the movants did not contain these provisions, nor did the order entered by the Court. Accordingly, the Government opposes any new scheduling proposal.

In reply to the Government's opposition, the victims' families note that they have been repeatedly attempted to confer with the Government about which facts are in dispute in this case— without success. In addition, the families had previously explained that they would developing a detailed factual record that they would submit to the parties and the Court on March 4. Dkt. 63 at 5. The Court approved that plan, including the victims' families right to file a motion for appropriate discovery at the same time. Dkt. 64. It is not unreasonable to now expect the Government to, at a minimum, rapidly identify which facts are in dispute and the basis for any disputes. In their motion, the families have provided the multiple legal grounds for the Court to order the Government to produce materials relevant to any disputes.

*Boeing's Opposition*

Boeing has asked that the following statement be included verbatim in the motion: "As Boeing has previously advised, we oppose your request and motion for discovery.  That remains

24

our position and we will respond to your discovery motion in the time already set by the Court's order. To the extent your discovery motion is now seeking additional briefing and proceedings as outlined in your email, Boeing opposes those additional proposals. The Court directed the parties to confer on a proposed schedule, we did so, and the Court entered the present schedule.  The extended proceedings you propose are neither envisioned by the Court's order nor necessary or efficient given that your motions can be resolved on purely legal grounds."

In reply to Boeing's opposition, the victims' families note that they are not seeking additional briefing and proceedings. They have simply sought discovery via an appropriate motion, as previously authorized by the Court and as is supported by the law. And they have proposed a necessary and efficient approach to narrowing the range of factual disputes in this case.

/s/ Paul G. Cassell
Paul G. Cassell

## **CERTIFICATE OF SERVICE**

I certify that on March 4, 2022, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.


/s/ Paul G. Cassell
Paul G. Cassell