**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **No. 4:21-CR-5-O** |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**THE BOEING COMPANY'S RESPONSE TO MOTION FOR DISCLOSURE OF
RELEVANT INFORMATION FILED ON BEHALF OF CRASH VICTIMS OF
LION AIR FLIGHT 610 AND ETHIOPIAN AIRLINES FLIGHT 302**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

I.      None of Movants' Three "Paths" to a Conclusion That They Come Within the
        Scope of the CVRA Is Valid................................................................................................ 5

II.     There Is No Legal Basis for Movants' Request In the Alternative for Discovery. ........... 9

        A.      The CVRA Does Not Confer Discovery Rights..................................................... 9

        B.      Movants' Request for Discovery Based On the Federal Rules of Criminal
                Procedure, the Federal Rules of Civil Procedure, and Brady Are Invalid.......... 13

        C.      Movants' Discovery Request Is Not Authorized Under this Court's
                Inherent Authority............................................................................................... 15

III.    There Is No Legal Basis For the Process Movants Propose for Obtaining the
        Information They Seek ..................................................................................................... 17

CONCLUSION...................................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brady v. Maryland,*
373 U.S. 83 (1963) ......................................................................................... *passim*

*Degen v. United States,*
517 U.S. 820 (1996) ........................................................................................... 16

*Doe v. United States,*
No. 08-CV-80736-KAM, 2015 WL 4077440 (S.D. Fla. July 6, 2015) .................................. 14

*Giglio v. United States,*
405 U.S. 150 (1972) ........................................................................................... 14

*Indiviglio v. United States,*
249 F.2d 549 (5th Cir. 1957), *rev'd on other grounds*, 357 U.S. 574 (1958) ......................... 13

*Jane Doe No. 1 v. United States,*
749 F.3d 999 (11th Cir. 2014) ............................................................................. 13, 14

*Jane Does 1 and 2 v. United States,*
817 F. Supp. 2d 1337 (S.D. Fla. 2011) ............................................................. 11, 12, 13, 17

*Jordan v. Dep't*
*pf Justice*, 173 F. Supp. 3d 44, 54-55 (S.D.N.Y. 2016) ............................................... 11

*Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,*
2 F.3d 1397 (5th Cir. 1993) ................................................................................. 15

*Rivers v. United States,*
No. 6:18-cv-00061, 2020 WL 1527860 (W.D. Va. Mar. 9, 2020) ...................................... 11

*Roviaro v. United States,*
353 U.S. 53 (1957) ........................................................................................... 13

*Stegman v. United States,*
No. 14-2445-JWL, 2015 WL 728487 (D. Kan. Feb. 19, 2015) ......................................... 11

*United States v. Faulkner,*
No. 3:09-CR-249-D(02), 2011 WL 3962513 (N.D. Tex. Sept. 8, 2011) ................................ 13

*United States v. Fokker Servs. B.V.,*
818 F.3d 733 (D.C. Cir. 2016) .............................................................................. 1

*United States v. HSBC Bank USA, N.A.*,
   863 F.3d 125 (2d Cir. 2017)............................................................................1

*United States v. Hunter*,
   No. 2:07CR307DAK, 2008 WL 110488 (D. Utah Jan. 8, 2008), *mandamus
   pet. denied, In re Antrobus*, 563 F.3d 1092 (10th Cir. 2009)...........................10, 11

*United States v. Ingrassia*,
   No. CR-04-0455ADSJO, 2005 WL 2875220 (E.D.N.Y. Sept. 7, 2005) ................................11

*United States v. Moussaoui*,
   483 F.3d 220 (4th Cir. 2007), 483 F.3d ........................................................ *passim*

*United States v. Rubin*,
   558 F. Supp. 2d 411 (E.D.N.Y. 2008) ..............................................................11

*United States v. Sacane*,
   No. 3:05cr325(AHN), 2007 WL 951666 (D. Conn. Mar. 28, 2007) ........................................11

*In re Wild*,
   994 F.3d 1244 (11th Cir. 2021) ....................................................................12

**Statutes**

18 U.S.C. § 3500....................................................................................14

18 U.S.C. § 3771................................................................................ *passim*

**Other Authorities**

Fed. R. Crim. P. 6 ..................................................................................10

Fed. R. Crim. P. 16 .................................................................................14

Fed. R. Crim. 26 ....................................................................................14

Fed. R. Evid. 702 ...................................................................................17

Fed. R. Evid. 703 ...................................................................................17

## PRELIMINARY STATEMENT

The briefing on movants' Crime Victim Rights Act ("CVRA") motions, now complete, and their motion for discovery show that the issues before this Court are clear, limited, and respectfully, clearly should be resolved against movants as a matter of law. Accordingly, this Court should reject movants' request for discovery for four independently sufficient reasons.

*First,* for the reasons stated in the brief in opposition filed by the Government (Dkt. 58), governing law holds that movants do not come within the scope of the CVRA. 18 U.S.C. § 3771(e)(2)(A). Discovery is not needed to resolve that threshold—and dispositive—legal question. Movants' efforts to argue that they have rights under the CVRA based on any crime the Government *investigated,* before charging the crime outlined in the DPA, find no support under the law. Movants concede—as they must—that "[t]he ultimate charging decision in a criminal case lies within a prosecutor's discretion," Dkt. 71 at 9, and the CVRA explicitly provides that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." 18 U.S.C. § 3771(d)(6). The Government has clearly stated that it charged the crime for which it believed it had evidence sufficient to prove its case. Dkt. 58 at 4–5. This is a quintessential exercise of prosecutorial discretion, and movants' efforts to broaden the scope of the Act would undermine that decision. Discovery is not necessary to resolve movants' motions, and their request should be denied.

*Second*, even assuming movants come within the scope of the CVRA, their motions still must be denied because the remedies they seek are not available as a matter of law. As discussed in the Government's and Boeing's previous briefing, the CVRA does not authorize recission of a DPA, much less excising only those terms of the agreement that are favorable to Boeing, as movants now appear to propose. *See* Dkt. 60 at 2–4 (under the CVRA, *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 135–37 (2d Cir. 2017), and *United States v. Fokker Servs. B.V.*,

1

818 F.3d 733, 746 (D.C. Cir. 2016),  there is no legal basis to substantively review, withhold approval of, or excise portions of the DPA); Dkt. 62 at 4–13.  Movants nowhere address the uniform appellate case law making plain that these remedies are not available.  Moreover, although the CVRA gives crime victims a right to confer with an attorney for the Government and to be treated with fairness, it does not attach the substantive right to demand changes to a DPA. Discovery will not cure this fundamental problem with movants' motions, and accordingly, movants' request should be denied.

*Third,* the discovery motion must be denied because the CVRA grants no right to discovery—whether movants come within the scope of the CVRA or not.  Section 3771(a) lists rights granted to CVRA victims, and discovery is not among them.  The Fourth Circuit in *United States v. Moussaoui*, 483 F.3d 220, 238 (4th Cir. 2007), expressly concluded that the CVRA does not confer the right to seek discovery from the Government and that the court has no inherent power to order that such discovery be provided.

*Fourth,* movants' discovery motion should be rejected because it does not actually request any specific discovery.  Rather, movants submit a lengthy proffer of purported facts, and propose a process requiring the Government and Boeing to accept those with which they agree and then provide evidence to support their position with respect to any statements with which they do not. But movants' proposal will not help the Court determine whether movants are within the Section 3771(e)(2)(A) definition under the CVRA; rather, it is in service of their efforts to prove their *belief* that Boeing's actions detailed in the DPA caused the crashes of the Lion Air and Ethiopian Airlines 737 MAX aircraft.  This is a conclusion that the Government, in the considered exercise of its prosecutorial discretion, did not reach.  Dkt. 58 at 4 ("The Government's investigation, however, did not produce evidence that it believed would allow it to prove beyond a reasonable

doubt what factors had caused the crashes . . . .").  Nothing in the CVRA grants a right to second-guess a charging decision or even to *confer* about a change in a prosecutorial decision about charging—either before the case is charged or after a DPA has been entered into.  Nor does the CVRA allow for any discovery toward that end, or toward movants' efforts to postulate *other* crimes they believe may have occurred.  And nothing in the CVRA authorizes ancillary proceedings whereby potential CVRA movants can attempt to *prove* that uncharged crimes were in fact committed.[1]

To hold otherwise would open every criminal case to (i) discovery by those claiming rights under the CVRA into what the Government did or did not investigate in the grand jury and the fruits of such investigation, and (ii) arguments by those claimants that the Government could have prosecuted some charges other than what it did.  Even though movants claim that their goal "is not to second-guess the Government's decision" not to file certain charges, (Dkt. 71 at 9), that is, as a practical matter, precisely what they are attempting to do.  By asking to excise the provision in the DPA that would release other charges, movants wish to prove that in their view, other crimes should have or could have been charged.  *See* Dkt. 71 at 25–28.  This is a clear impingement upon the Government's exercise of prosecutorial discretion, which the CVRA expressly prohibits.  In short, the CVRA does not extend to any of the rights and remedies that movants seek here, including their proposed process for obtaining additional information.

---

[1]   Furthermore, as the *Moussaoui* court recognized in reversing a district court's "novel" application of its inherent powers to order the Government to provide criminal discovery to civil plaintiffs, a court overseeing criminal proceedings is not well placed to allow or review discovery that relates to issues being litigated in civil cases in another jurisdiction.  *See* 483 F.3d at 237–38. These policy concerns are especially important here, where movants are plaintiffs in litigation arising from these crashes in which they have affirmatively relinquished the right to litigate the cause of the crashes by virtue of settling their cases (in the case of the Lion Air movants) or in return for a stipulation that Boeing would accept full responsibility for their compensatory damages (in the case of most of the Ethiopian Airlines movants).

As Boeing has emphasized in its prior submissions in response to the families' motions, Boeing profoundly regrets the Lion Air and Ethiopian Airlines accidents, has made broad and deep changes across the company in response to them, and sympathizes with the families for their incalculable losses.  Boeing respectfully submits, however, that the relief movants seek here is plainly not available under the CVRA, for several independently sufficient reasons.   Their motions—including their request for discovery—should be denied by this Court as a matter of law.

## BACKGROUND

On December 16, 2021, movants filed three motions asking that the Court: (1) find that the Department of Justice ("DOJ") violated the CVRA and order briefing on appropriate remedies (Dkt. 52[2]); (2) exercise supervisory authority over the DPA, withhold approval of the DPA until the Government confers with movants, and modify the DPA to reflect concerns raised by movants (Dkt. 17); and (3) hold an arraignment and bond hearing for Boeing (Dkt. 18) (together the "CVRA motions").

In a Joint Status Report filed by the parties and movants on February 8, 2022, movants proposed, as relevant here, a briefing schedule for "a motion for appropriate discovery" from DOJ and Boeing, contemplating that this Court would "rule on the discovery issue (following a hearing if necessary)" before movants would be required to file their replies to the CVRA motions.  Dkt. 57 at 3.  The Court permitted movants to file a motion for appropriate discovery by February 25, 2022 and later granted movants' unopposed motion for an extension of time to March 4, 2022. Dkts. 59, 64.

---

[2]  Movants' original motion seeking findings that DOJ violated the CVRA (Dkt. 15) was stricken by this Court on January 21, 2022, and replaced with movants' "Second Amended Motion" seeking the same relief (Dkt. 52).

DOJ and Boeing had filed all responses in opposition to movants' three CVRA motions by February 11, 2022. Dkts. 58, 60–62. On February 18, 2022, movants filed replies in support of their motions asking the Court to exercise supervisory authority to reject or modify the DPA (Dkt. 17) and to hold an arraignment and bond hearing for Boeing (Dkt. 18). Dkts. 65 and 66. Thereafter, on March 4, 2022, movants filed both (1) their reply in support of their motion seeking a determination that DOJ violated the CVRA, and (2) their motion for discovery. Dkts. 71 and 72.

## ARGUMENT

Because the law is clear and the Court can decide movants' CVRA motions without further fact development or discovery, the discovery motion should be denied. The information movants seek is not legally available as they are not parties to this litigation, and neither the CVRA; the Federal Rules of Criminal Procedure; the Federal Rules of Civil Procedure; *Brady v. Maryland*, 373 U.S. 83 (1963); nor this Court's inherent authority require the Government or Boeing to provide the requested information in this proceeding—nor do any of those sources authorize the ancillary proceedings movants seek. Boeing therefore opposes movants' motions and also opposes the process movants propose for obtaining the information they seek. Boeing also wishes to make clear that, in objecting to that process, it does not agree to movants' lengthy factual proffer, either explicitly or implicitly.

## I.     None of Movants' Three "Paths" to a Conclusion That They Come Within the Scope of the CVRA Is Valid.

As addressed in the responses to movants' CVRA motions filed by the Government and Boeing, movants do not come within the scope of the CVRA, for the reasons stated by the Government in its response. Dkts. 58 at 8–14, 62 at 5; 18 U.S.C. § 3771(e)(2)(A). Because this conclusion follows directly from the language of the CVRA, uniform appellate case law, and the charging discretion exercised by DOJ in this case, discovery is unnecessary; movants cannot

establish that they come within the scope of the CVRA in relation to the crime charged in the Criminal Information as a matter of law.  As the Government has separately identified, "a person may not assert victim status because a defendant *could have* been charged with an additional offense or a different crime."  Dkt. 58 at 9 (quoting United States Sentencing Commission, *Primer on Crime Victims' Rights 2021* at 13 n.88) (internal quotation marks omitted) (emphasis in original).  And the process movants propose and the protracted proceedings they seek would, at best, develop a partial factual record on issues that are not necessary to the Court's disposition of the legal questions before it.

Arguing in the first instance that their motions can be decided by the Court as a matter of law based on purportedly undisputed facts, Dkt. 72 at 7–8, movants identify three "paths" that, they contend, would permit the Court to conclude they are "crime victims" under the CVRA without factual development or an evidentiary hearing.  *Id.* at 8–10.  None is persuasive.

First, movants argue that because the Government was criminally investigating the two 737 MAX crashes, it had a duty to afford CVRA rights to the victims of those crashes.  *Id.* at 8.  Movants repeatedly assert and assume that if a matter is investigated, that *investigation alone* confers CVRA rights.  The CVRA, however, defines a "crime victim" as "a person directly and proximately harmed as a result of the *commission* of *a Federal offense*."  18 U.S.C. § 3771(e)(2)(A) (emphases added).  Criminal investigations determine *whether* a federal offense has occurred at all; by definition, an investigation does not mean that a federal offense has been committed.  Here, after a wide-ranging multi-year investigation, the Government narrowed its charging decision to the offense described in the DPA.  Movants' argument cannot be squared with either the language of the Act or the Government's stated conclusion, *after that investigation*, that it could not charge a different offense.  *See* Dkt. 58 at 10 ("After completing its investigation, the Government had

sufficient evidence to charge Boeing with a conspiracy to defraud the FAA Aircraft Evaluation Group.  The Government did not charge Boeing with any form of federal negligent homicide in connection with the crashes of Lion Air Flight 610 and Ethiopian Airlines Flight 302."); *see also id.* at 4 ("The Government's investigation, however, did not produce evidence that it believed would allow it to prove beyond a reasonable doubt what factors had caused the crashes . . . ."); *id.* at 10–11 ("the evidence here does not meet the proof demanded by the CVRA between the fraud on the FAA [AEG]—which establishes standards only for U.S.-based airlines—and the horrific crashes in Ethiopia and Indonesia of planes operated by foreign airlines and flown by foreign pilots overseen by foreign regulators.").  *Accord United States v. Mark Forkner*, 4:21cr00268-O, Dkt. 143 at 2 (N.D. Tex. Mar. 8, 2022) (explaining that "the defendant is not charged with causing the crashes," nor "with any actions by Boeing or others that may have had a causal relationship to the crashes").  Movants simply do not come within the scope of the CVRA in relation to the federal offense charged here.

Second, movants argue that the DPA "blocks" the Government from prosecuting Boeing for a "vast array of federal crimes" of which they are victims, including federal negligent homicide. Dkt. 72 at 8–9.  They claim that the Government did not give them proper notice of the DPA, and that as a result, the CVRA—through its provisions requiring that the Government confer with crime victims and treat them with fairness—requires that they be allowed now to confer with the Government "about how to best structure" the DPA.  Dkt. 71 at 29.  Again, however, the CVRA, by its terms, does not apply here:  as previously discussed, the movants do not fall within the scope of the CVRA as a matter of law, and they cannot be deemed to fall within the Act's scope based on the Government's investigation, rather than on the offense the government chose to charge.  *See supra* at 2-3, 6-7.  In any event, nothing in the Act grants to any third party—whether a crime

victim under the Act or otherwise—the right to confer on the proper structure of a deferred prosecution agreement; that is a matter wholly within the prosecutorial discretion of the Department of Justice.

Moreover, the DPA's language does not list or otherwise establish any other charges that Boeing supposedly committed, much less the ones movants posit as a predicate for this argument. A conditional release from liability does not establish that there were other prosecutable crimes. The Government has already stated that upon completion of the investigation it weighed all the factors, exercised its discretion, and charged Boeing with the crime it believed the evidence supported—a conspiracy to defraud the FAA Aircraft Evaluation Group. It did not choose to charge "any form of federal negligent homicide" in connection with the crashes. Dkt. 58 at 10. And there is no basis under the CVRA for movants to require that decision to be revisited.

Finally, movants assert that it cannot be disputed that the charged conduct created a safety risk to the passengers and crew of the two accident flights and that "risk-equals-harm under the CVRA." Dkt. 72 at 9. Boeing does not agree with movants' characterization of these facts or the conclusion they reach.[3] But regardless, this argument ultimately reduces to an assertion that movants were directly and proximately harmed by the conduct charged, notwithstanding the Government's conclusion that they were not. Here, the federal offense charged is conspiracy to defraud the FAA Aircraft Evaluation Group. As the Government has explained, "the evidence in the record in this case does not prove beyond a reasonable doubt a direct and proximate connection between" the conduct described in the Criminal Information and the crashes. Dkt. 58 at 4. The Government's conclusion is, and must be, the final word on this argument.

---

[3] Moreover, to the extent that movants base their argument on their preferred expert testimony or facts beyond those set forth in the DPA, that information is not established in the record and therefore is not a basis on which movants could prevail as a matter of law.

In sum, none of these three bases for concluding movants come within the scope of the CVRA without discovery is valid, and this Court accordingly should deny movants' arguments as a matter of law.

## II.     There Is No Legal Basis for Movants' Request In the Alternative for Discovery.

If the Court declines to rule as a matter of law that movants fall within the scope of the Act based on their three asserted "paths" to that conclusion, movants request in the alternative that the Government and Boeing provide them information they argue is necessary for them to "prove" they are victims entitled to the Act's protections. This request must be denied because no statute, rule, or inherent authority authorizes discovery by movants in this proceeding. Movants principally rely on inapplicable portions of the CVRA, including the requirement that the Government make its "best effort[] to see that the crime victims are notified of, and accorded" the enumerated rights under the CVRA. 18 U.S.C. § 3771(c)(1). In the alternative, movants cite the Court's inherent authority, the Federal Rules of Civil and Criminal Procedure, and *Brady v. Maryland*, 373 U.S. 83 (1963). Boeing addresses each in turn.

### A.     The CVRA Does Not Confer Discovery Rights.

Regardless of movants' CVRA status, the CVRA simply does not grant any right to discovery. Section 3771(a) lists rights granted to CVRA victims, and discovery is not among them.

As the Fourth Circuit has recognized, the CVRA is "silent with respect to discovery." *Moussaoui*, 483 F.3d at 238. *Moussaoui* addressed "a question of first impression:" whether the Government may be required "to provide non-public criminal discovery materials to victims for their use in civil litigation against third parties in a different jurisdiction." *Id.* at 233. The Government prosecuted Zacarias Moussaoui in the Eastern District of Virginia for his role in the September 11 attacks. *Id.* at 223–24. Victims and family members of victims of the September

9

11 attacks also filed civil suits in the Southern District of New York following the attacks. *Id.* at 224. The civil plaintiff victims sought to intervene in *Moussaoui* to request "access to 'all of the [G]overnment's information . . . turned over to the defense counsel in the . . . various discovery procedures" that took place in the criminal case. *Id.* The district court allowed intervention and granted the requested discovery. *Id.* at 225–26. However, the district court "failed to cite any direct law or rule in support of its [order granting the civil plaintiff victims' requested discovery]." *Id.* The Fourth Circuit reversed, finding the district court's orders "were unprecedented and entirely unnecessary" and that neither the CVRA nor any inherent powers vested in district courts granted the civil plaintiffs the right to obtain the requested discovery.[4] *Id.* at 234–37.

Other courts have agreed. Allowing third party access to the Government's investigative files through discovery "is a significant right to append to the CVRA. If Congress had wanted to afford members of the public the right to prosecution files to determine their victim status, it should have clearly identified that right in the CVRA." *United States v. Hunter*, No. 2:07CR307DAK, 2008 WL 110488, at *1 (D. Utah Jan. 8, 2008), *mandamus pet. denied*, *In re Antrobus*, 563 F.3d 1092 (10th Cir. 2009). The court in *Hunter* faced the same "chicken-an[d]-egg dilemma" argument advanced by movants here: third parties sought status as victims under the CVRA, but argued that they needed discovery because they could not access proof that they qualified as victims without first proving they were victims. *Id.* (internal quotations omitted). The movants in *Hunter* were "victims of another's crime" committed with a firearm sold by the defendant, "not [of the defendant's] sale of a firearm to a minor." *Id.* The court denied their request for access to the Government's files, noting that "[t]he court does not want to create a right not provided for by any

---

[4] The Court also found that the Air Transportation Safety and System Stabilization Act ("ATSSSA") and Federal Rule of Criminal Procedure 6(e) were inapposite and provided no support for the district court's orders. *Id.* at 234–37.

statute." *Id.* at *2.  Movants' request here similarly must be denied.  *Accord United States v. Rubin*, 558 F. Supp. 2d 411, 425 (E.D.N.Y. 2008) ("The CVRA . . . does not authorize an unbridled gallop to any and all information in the government's files").  *See also Rivers v. United States*, No. 6:18-cv-00061, 2020 WL 1527860, at *9 (W.D. Va. Mar. 9, 2020) (denying victim's request for access to the Government's files); *Jordan v. Dep't pf Justice*, 173 F. Supp. 3d 44, 54–55 (S.D.N.Y. 2016) ("[T]he CVRA does not entitle victims to investigative information independent of any particular right the statute provides.") (citation omitted); *Stegman v. United States*, No. 14-2445-JWL, 2015 WL 728487, at *2 (D. Kan. Feb. 19, 2015) ("The United States Attorney, however, does not have an obligation under the CVRA to . . . disclose anything in its investigative file to [a victim] . . . .") (citation omitted); *United States v. Ingrassia*, No. CR-04-0455ADSJO, 2005 WL 2875220, at *17 (E.D.N.Y. Sept. 7, 2005) (noting that the CVRA's purpose is rooted in the right for victims to be heard, not as a mechanism for crime victims to obtain information).[5]

Movants cite *Jane Does 1 and 2 v. United States*, 817 F. Supp. 2d 1337 (S.D. Fla. 2011), as their sole example of a court ordering discovery in a CVRA proceeding.  Dkt 72 at 13.  However, *Jane Does* does not apply here because it is factually distinguishable on several important grounds; moreover, it does not stand for the proposition that the CVRA grants discovery rights, let alone the type of discovery movants seek here.

*Jane Does* was the first district court decision issued in a decade of litigation brought by victims of federal crimes committed by Jeffrey Epstein regarding their rights under the CVRA.

---

[5] While movants explicitly seek discovery from the Government, their motion also contemplates discovery materials from Boeing.  *See* Dkt. 72 at 20.  Neither the CVRA nor any other authority allows movants to seek discovery in a criminal proceeding from a private party like Boeing.  *See United States v. Sacane*, No. 3:05cr325(AHN), 2007 WL 951666, at **1–2 (D. Conn. Mar. 28, 2007) (denying victims' request for discovery directly from the defendant regarding the defendant's financial information despite claims that the information was necessary for the victims to enforce their right to full and timely restitution under the CVRA).

817 F. Supp. 2d at 1338–40.  Following communications with federal law enforcement agents and the U.S. Attorney's Office regarding their investigation of Epstein, the *Jane Does* plaintiffs filed a petition in the Southern District of Florida, before any formal charges were filed, to enforce their rights under the CVRA.  817 F. Supp. 2d at 1339–40.  The essential question before the court was whether Epstein's victims' CVRA rights attached before the filing of formal charges.  The court and the Government apparently assumed that the plaintiffs qualified as crime victims within the definition of the CVRA, and accordingly that issue—which is a threshold question of law very much at issue here—was not addressed in the court's decision.

As to the key question at issue there of *when* CVRA rights attach, the court allowed the plaintiffs to file their lawsuit seeking vindication of their asserted rights under the Act, holding that "the CVRA can apply before formal charges are filed." *Id.* at 1343. But the Eleventh Circuit later held that the CVRA did *not* authorize the plaintiff "to file a freestanding civil suit seeking judicial enforcement of her rights under the CVRA." *In re Wild*, 994 F.3d 1244, 1249–50, 1251–52 (11th Cir. 2021) (citation omitted).  The Eleventh Circuit's ruling thus cast further doubt on the viability of the district court's ruling in *Jane Does.*

Furthermore, the decision does not shed light on movants' request for discovery here.  In the district court proceeding, the *Jane Does* plaintiffs sought discovery from the Government into whether their rights under the CVRA had been violated. The Government opposed the motion, arguing that the CVRA did not impose such a duty, but at a hearing on the motion, "*agreed* that [the court], under its inherent authority to manage th[e] case, could impose discovery obligations on each party." 817 F. Supp. 2d at 1344 (emphasis added).  The court therefore declined to decide whether the CVRA provides discovery rights in that limited context.  *Id.*

12

A careful reading of this case thus shows that it does not support movants' position here. As previously discussed, the threshold issue here is whether movants fall within the scope of the CVRA, as a matter of law, but *Jane Does* assumed the answer to that question and did not address it.  Moreover, the discovery at issue there was limited to the question of whether the Government had violated the plaintiffs' CVRA rights, and the court expressly did not decide whether the CVRA authorized discovery in that context.  Finally, the court did not address whether it had the inherent authority to grant discovery, because the Government conceded that point at the hearing.  Movants have cited no other authority for interpreting the CVRA to permit their very different and far broader discovery request, and this Court should conclude as a result that the request should be denied.[6]

### B.    Movants' Request for Discovery Based On the Federal Rules of Criminal Procedure, the Federal Rules of Civil Procedure, and *Brady* Are Invalid.

No statute, rule, or inherent authority provides a basis for the movants to obtain the information they seek here.  "Discovery is governed, both in criminal and civil cases, by rules of practice promulgated by the Supreme Court under congressional authority."  *Indiviglio v. United States*, 249 F.2d 549, 553 (5th Cir. 1957), *rev'd on other grounds*, 357 U.S. 574 (1958).  *See also United States v. Faulkner*, No. 3:09-CR-249-D(02), 2011 WL 3962513, at *2 (N.D. Tex. Sept. 8, 2011) ("[D]iscovery in criminal cases is narrowly limited and is provided for under the Federal Rules of Criminal Procedure, *Brady*, and *Roviaro v. United States*, 353 U.S. 53 (1957) (discovery related to confidential informants).") (quoting *United States v. Fischel*, 686 F.2d 1082, 1090–91

---

[6] Movants cite *Jane Doe No. 1 v. United States*, 749 F.3d 999 (11th Cir. 2014), for the proposition that the Eleventh Ciircuit "rejected challenges from the defendant to the discovery requirement." Dkt. 72 at 13.  But movants fail to reveal that *Jane Doe No. 1* addressed an appeal by an *intervenor,* who raised issues of whether certain materials were *privileged* from discovery. 749 F.3d at 1003. It did not address the district court's underlying authority to order discovery because, as noted above, the government had previously agreed to provide it.

(5th Cir. 1982).  The bases for discovery in criminal cases like this one—Federal Rules of Criminal Procedure 16 and 26.2, 18 U.S.C. § 3500 (the Jencks Act), *Brady*, 373 U.S. 83, and *Giglio v. United States*, 405 U.S. 150 (1972)—do not afford third parties access to discovery from parties to the proceedings.[7]

Discovery in criminal cases is primarily governed by Rule 16, which requires the Government to disclose to *the defendant* the defendant's relevant statements, prior criminal record, documents and tangible evidence, and other evidence the Government intends to use during its case-in-chief at trial.  Fed. R. Crim. P. 16(a).  Rule 16 also entitles the Government to certain limited discovery from the defendant.  Fed. R. Crim. P. 16(b).  Similarly, the Jencks Act and Rule 26.2 require the parties to produce statements of witnesses who have testified on direct examination at trial, or other specific proceedings, to the opposing party for examination and use. *See* 18 U.S.C. § 3500(b); Fed. R. Crim. 26.2(a), (g).  Finally, *Brady* and *Giglio* require the Government to disclose exculpatory material and impeachment evidence *to the accused* as part of the Constitutional guarantee of a fair trial.  *See Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Together, these authorities establish the discovery rights and obligations of the Government and the defendant in preparation for, and during, trial and related criminal proceedings.  None of these authorities provides discovery rights to third parties.

Citing the CVRA's provision that crime victims "be treated with fairness," movants argue that "general 'due process' considerations" entitle them to favorable evidence from the

---

[7]  Movants do not articulate which Federal Rule of Civil Procedure they believe applies here, arguing instead that "using the civil rules" of procedure to resolve disputed factual issues "is appropriate."  Dkt. 72 at 11.  In support, they cite *Doe v. United States*, No. 08-CV-80736-KAM, 2015 WL 4077440 (S.D. Fla. July 6, 2015), a *civil* action brought against the United States for alleged violations of the CVRA.  Unlike *Doe*, this is a criminal proceeding to which the Federal Rules of Civil Procedure do not apply.

Government.  Dkt. 72 at 16–18.  Movants attempt to analogize their position to that of a criminal defendant—reasoning that, if the Government must provide favorable evidence to a criminal defendant under *Brady*, "fairness demands the same" for innocent victims.  *Id.* at 18.  This argument ignores, of course, that a criminal defendant is *presumed innocent* until proven guilty, and that *Brady* guarantees the provision of *exculpatory* evidence as part of that defendant's Constitutional right to a fair trial.  Because movants are of course accused of nothing here, they are neither a party to the proceedings nor is there any "exculpatory" evidence in relation to them.  In contrast to *Brady,* the rights movants assert are a function of a federal statute—which itself is "silent with respect to discovery."  *Moussaoui*, 483 F.3d at 238.  *Brady* thus does not apply either directly or by analogy.

### C.   Movants' Discovery Request Is Not Authorized Under this Court's Inherent Authority.

Movants admit that the CVRA "does not provide specific guidance on how disputed factual issues are to be resolved," but claim that the Court can order discovery under its inherent authority and suggest that the Court treat these proceedings as if it were "considering summary judgment issues."  Dkt. 72 at 11–13.  This argument, like movants' other contentions, is unsupported by the case law and should be rejected.

The case law is clear that courts do not possess inherent authority to grant discovery to third parties, including putative crime victims.  "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."  *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1409 (5th Cir. 1993) (concluding that "there is no broad, general inherent power to order a non-party beyond the district to produce documents") (citation omitted).  The essence of a court's inherent authority lies in "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition

of cases.'" *Moussaoui,* 483 F.3d at 236 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, (1962)).   For example, the Supreme Court has held that federal courts possess the inherent authority "to sanction a party and lawyer appearing before the court, to dismiss a lawsuit sua sponte for failure to prosecute and on grounds of forum non conveniens, to consolidate actions arising out of the same controversy, and to vacate a judgment for fraud on the court." *Id.* (internal citations omitted).   Nevertheless, the boundaries of courts' inherent powers "must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority." *Degen v. United States*, 517 U.S. 820, 823 (1996) (citation omitted).

The Fourth Circuit in *Moussaoui* specifically considered the claim that inherent authority extends to CVRA victims seeking to access the Government's files, and it squarely rejected that argument.   The court declined to approve a "novel" application of inherent powers to provide victims discovery and noted that it was "certainly 'unaware of any "long unquestioned" power of federal district courts,' to order the Government to disclose non-public materials given to the defense in a criminal trial to third-party civil plaintiffs involved in litigation in another jurisdiction." 483 F.3d at 237 (quoting *Carlisle v. United States*, 517 U.S. 416, 426 (1996)).   In reversing the district court's orders to the contrary, the appellate court ruled that that court had verged "beyond the inherent powers of the court." *Id.*   This Court should likewise conclude that it lacks the power, inherent or otherwise, to grant movants' request for information from the Government and Boeing to support their attempt to qualify as victims under the CVRA.   As noted above, movants' request is, at its core, an attempt to prove their belief that Boeing's criminal conduct—either through the charges outlined in the DPA or through other charges DOJ did not bring—caused the Lion Air and Ethiopian Airlines accidents.   Such an objection to the

16

Government's decisions about what it can prove and what charges to bring is simply not permitted under the CVRA. To hold otherwise would open the Government's files to every individual claiming to fall within the scope of the CVRA, in every criminal case in which the individual disagreed with the case the Government decided to bring.

## III.   There Is No Legal Basis For the Process Movants Propose for Obtaining the Information They Seek

Finally, Boeing wishes to make clear that it does not accept movants' 52-page proffer of purported facts and the proceedings they propose for obtaining the information they seek.[8]  Despite movants' assurance that the "proffer draws on many materials that cannot be reasonably disputed," Dkt. 72 at 6, the document in fact draws from numerous sources that cannot be considered factual, including unlitigated allegations from pending civil lawsuits and the "anticipated" testimony of movants' purported experts and unnamed DOJ and Boeing witnesses.  Indeed, several preferred "facts" appear to have no basis in fact at all.[9]

Moreover, while Boeing has admitted to the facts in the DPA's Statement of Facts, those facts comprise a relatively small portion of movants' lengthy proffer.  The vast majority of the 332

---

[8]  In *Jane Does 1 and 2 v. United States*, 817 F. Supp. 2d 1337, 1343 (S.D. Fla. 2011), on which movants rely, the plaintiffs/victim claimants proposed—as counsel for movants does here—to have the court accept their proffered facts as true because the Government had not specifically contested them.  The district court denied that request, and this court should as well, as to both the Government and Boeing.

[9]  For example, in paragraphs 230 and 233, movants claim their experts will testify as to what form of pilot training the FAA would have required for the 737 MAX, but for the commission of the crime detailed in the DPA, but it is obvious that its experts do not—and could not—have the necessary foundation or information to so testify.  *See generally* Fed. R. Evid. 702, 703.  Likewise, paragraphs 325 to 332 of the proffer are sourced to a combination of movants' Second Amended CVRA Motion (Dkt. 52) and "anticipated testimony of Boeing representative."  Factual Proffer (Dkt. 72-1) at 51–52.  Movants have not identified that Boeing representative, and Boeing has not agreed or acceded to the allegations contained in movants' Second Amended CVRA Motion.  The portion of the Second Amended CVRA Motion that appears to be referenced here relies on *allegations* that were made in a now-settled shareholder derivative suit in Delaware.

17

paragraphs in the proffer do not even refer to the DPA's Statement of Facts, and even where they do, movants often add language that changes the meaning of the facts cited, as they relate to this motion.[10] Thus, even as to sources that might contain undisputed facts, movants' proffer cannot be taken at face value.

Boeing also opposes movants' proposed process for obtaining information, which calls for specific identification of factual disputes by Boeing and the Government, the production of evidence, further briefing, and an evidentiary hearing. Movants analogize their proposal to the process for obtaining summary judgment in a civil matter. But this is not a civil matter, and there is no summary judgment rule for the parties in a criminal matter, much less for non-parties like movants, under the CVRA or otherwise. Indeed, movants' proposed process and their lengthy proffer themselves highlight why the court should decline their request: this court, tasked with overseeing the DPA and related criminal proceedings, is not well placed to conduct an evidentiary hearing based on necessarily limited evidence to litigate the causes of the accidents, which are very much at issue in civil litigation before other courts. *See Moussaoui*, 483 F.3d at 237–38 (outlining the "sound policy reasons for denying the district court the general power to let victims intervene in the criminal process for the purpose of obtaining discovery from the Government to be used in civil litigation."). Such a proceeding would be impractical and unnecessary, and there is no precedent or legal basis for it.

For the reasons discussed in the responses submitted by the Government and Boeing, (Dkts. 58 at 8–14, 62 at 5), movants' motions can be denied on legal grounds without the need to hear

---

[10] For example, in Paragraph 102 of their proffer, movants have added the phrase "[a]s a direct result of Boeing's conspiracy crime" at the beginning of the paragraph drawn from the DPA's Statement of Facts, which materially changes the meaning of the statement cited. They do so without providing any indication that they have altered the substance and meaning of the original statement.

evidence.  Boeing respectfully submits that the Court should consider the lack of a legal basis for movants' CVRA motions before entertaining movants' request for discovery, and that it should deny all relief requested.

## CONCLUSION

Boeing respectfully requests that movants' motion for discovery be denied.

Respectfully submitted,

| | |
|---|---|
| **McGUIREWOODS LLP** | **KIRKLAND & ELLIS LLP** |
| */s/ Benjamin L. Hatch* | */s/ Craig S. Primis* |
| Benjamin L. Hatch | Craig S. Primis |
| VA Bar No. 70116 | DC Bar No. 454796 |
| bhatch@mcguirewoods.com | cprimis@kirkland.com |
| | |
| Brandon M. Santos | Mark Filip |
| VA Bar No. 75380 | IL Bar No. 6226541 |
| bsantos@mcguirewoods.com | mark.filip@kirkland.com |
| | |
| McGuireWoods LLP | Patrick Haney |
| 888 16th Street N.W., Suite 500 | DC Bar No. 1005326 |
| Black Lives Matter Plaza | patrick.haney@kirkland.com |
| Washington, DC 20006 | |
| Tel: 757.640.3727 | Kirkland & Ellis LLP |
| Fax: 757.640.3947 | 1301 Pennsylvania Avenue NW |
| ***Counsel for The Boeing Company*** | Washington, DC 20004 |
| | Tel: 202.879.5000 |
| | Fax: 202.654.9645 |
| | |
| | Jeremy Fielding |
| | Texas State Bar No. 24040895 |
| | Jeremy.fielding@kirkland.com |
| | |
| | Ian Brinton Hatch |
| | Texas State Bar No. 24123444 |
| | Ian.hatch@kirkland.com |
| | |
| | Kirkland & Ellis LLP |
| | 1601 Main Street |
| | Dallas, Texas 75201 |
| | Tel; (214) 972-1770 |
| | Fax: (214) 972-1771 |
| | ***Counsel for The Boeing Company*** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, the foregoing was filed with the Clerk of the United States District Court for the Northern District of Texas by e-mail to USDCemergencyfile@txnd.uscourts.gov, as the CM/ECF system was experiencing a technical outage.   I further certify that Boeing has served counsel of record by e-mail at the following addresses:

*Attorneys for the Government*

Jerrob Duffy
Jerrob.Duffy2@usdoj.gov

Chad E. Meacham
Chad.Meacham@usdoj.gov

Alex C. Lewis
Alex.Lewis@usdoj.gov

Cory E. Jacobs
Cory.Jacobs@usdoj.gov

Michael T. O'Neill
Michael.T.ONeill@usdoj.gov

Scott P. Armstrong
Scott.Armstrong@usdoj.gov

*Attorneys for Movants*

Paul G. Cassell
cassellp@law.utah.edu

Warren T. Burns
wburns@burnscharest.com

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch

20