# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF TEXAS

## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-005-O-1 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF MOTION OF NAOISE CONNOLLY RYAN, AS REPRESENTATIVE OF MICHAEL RYAN; EMILY CHELANGAT BABU AND JOSHUA MWAZO BABU, AS REPRESENTATIVES OF JARED BABU MWAZO; CATHERINE BERTHET, AS REPRESENTATIVE OF CAMILLE GEOFFROY; HUGUETTE DEBETS, AS REPRESENTATIVE OF JACKSON MUSONI; LUCA DIECI, AS REPRESENTATIVE OF PAOLO DIECI; BAYIHE DEMISSIE, AS REPRESENTATIVE OF ELSABET MINWUYELET WUBETE; SRI HARTATI, AS REPRESENTATIVE OF ERYANTO; ZIPPORAH KURIA, AS REPRESENTATIVE OF JOSEPH KURIA WAITHAKA; JAVIER DE LUIS, AS REPRESENTATIVE OF GRAZIELLA DE LUIS Y PONCE; CHRIS MOORE, AS REPRESENTATIVE OF DANIELLE MOORE; PAUL NJOROGE, AS REPRESENTATIVE OF CAROLYNE NDUTA KARANJA, RYAN NJUGUNA NJOROGE, KELLI W. PAULS, AND RUBI W. PAULS; YUKE MEISKE PELEALU, AS REPRESENTATIVE OF RUDOLF PETRUS SAYERS; JOHN KARANJA QUINDOS, AS REPRESENTATIVE OF ANNE WANGUI KARANJA; NADIA MILLERON AND MICHAEL STUMO, AS REPRESENTATIVES OF SAMYA STUMO; GUY DAUD ISKANDER ZEN S., AS REPRESENTATIVE OF FIONA ZEN; AND OTHER SIMILARLY SITUATED REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 FOR DISCLOSURE OF RELEVANT INFORMATION TO PROVE "CRIME VICTIM" STATUS AND VIOLATION OF THEIR RIGHTS**

Warren T. Burns
Burns Charest, LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell
(Counsel of Record)
Utah Appellate Project
S.J. Quinney College of Law
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice*)

*Attorneys for Victims' Families*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. iv

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I. The Court Must Decide the Issue of Whether the Crash Victims are CVRA
Protected "Crime Victims." ........................................................................................ 3

II. Based on the Existing Record, the Court Should Rule that the Crash Victims are
"Crime Victims" Protected by the CVRA. ................................................................. 5

    A. The families represented "crime victims" during the Government's crash
investigation. ......................................................................................................... 5

    B. The families represented victims for purposes of receiving "timely" notice of
a DPA blocking a manslaughter prosecution of Boeing. .................................... 7

    C. The families represented CVRA "victims" because Boeing's crime directly
and proximately exposed the crash victims to an unnecessary safety risk. ......... 7

III. At a Minimum, the Court Must Provide the Victims' Families an Evidentiary
Hearing Regarding the "Crime Victim" Status of the Crash Victims. ....................... 9

IV. As Part of any Evidentiary Hearing on the CVRA Issues, the Victims' Families
are Entitled to the Government's Evidence Supporting Their Position. .................... 10

    A. This Court should order the Government to produce information supporting
the victims' families' position under its CVRA power to "ensure" the victims'
families are afforded their rights. ....................................................................... 12

    B. The Court should direct the Government to produce information supporting
the victims' families' position as part of the Government's CVRA obligation
to make its "best efforts" to protect victims' rights. ......................................... 15

    C. The victims' families have a right to obtain favorable evidence under general
fairness principles ............................................................................................. 18

    D. Allowing the Government to withhold relevant evidence would raise serious
ethical issues. .................................................................................................... 19

CONCLUSION ................................................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................................... 22

# TABLE OF AUTHORITIES

<u>Cases</u>

*Brady v. Maryland,*
    373 U.S. 83 (1963) ........................................................................... 2, 16, 18

*In re Antrobus,*
    519 F.3d 1123 (10th Cir. 2008) ......................................................... 16

*In re* Dean,
    527 F.3d 391 (5th Cir. 2008). ............................................................ 4, 6

*In re Fisher,*
    640 F.3d 645 (5th Cir. 2011). ............................................................ 9

*In re Fisher,*
    649 F.3d 401 (5th Cir. 2011) ............................................................. 10

*In re Kenna,*
    453 F.3d 1136 (9th Cir. 2006) (per curiam) ...................................... 14

*In re Wild,*
    994 F.3d 1244 (11th Cir. en banc 2021) ............................................ 13

*Jane Does 1 and 2 v. United States,*
    817 F. Supp. 2d 1337 (S.D. Fla. 2011) .............................................. 13

*Kenna v. U.S. Dist. Court for the C.D. Cal.,*
    436 F.3d 1011 (9th Cir. 2006). .......................................................... 18

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,*
    2 F.3d 1397 (5th Cir. 1993)) ............................................................. 2, 13

*Stegman v. United States,*
    2015 WL 728487 (D. Kans. 2015) ..................................................... 14

*United States v. Atl. States Cast Iron Pipe Co.,*
    612 F. Supp. 2d 453 (D.N.J. 2009) ................................................... 4, 12

*United States v. Colomb,*
    419 F.3d 292 (5th Cir. 2005) ............................................................. 11

*United States v. Giraldo-Serna,*
    118 F.Supp.3d 377 (D.D.C. 2015) ..................................................... 7

*United States v. Hunter,*
    2008 WL 110488 (D. Utah 2008), ..................................................... 14, 16

*United States v. Ingrassia,*
    No. CR-04-0455ADSJO, 2005 WL 2875220 (E.D.N.Y. Sept. 7, 2005) ................... 17

*United States v. Moussoui,*
    583 F.3d 220 (4th Cir. 2007). ............................................................ 14

*United States v. Rubin*,
    558 F. Supp. 2d 411 (E.D.N.Y. 2008) ........................................ 17

*United States v. Sacane*,
    No. 3:05-CR-325-AHN, 2007 WL 951666 (D. Conn. Mar. 28, 2007)...................... 17

*Weatherford v. Bursey*,
    429 U.S. 545 (1977)........................................................... 15

<u>Statutes</u>

18 U.S.C. § 3771(a)(1)............................................................ 4

18 U.S.C. § 3771(a)(2)............................................................ 4

18 U.S.C. § 3771(a)(5)............................................................ 3

18 U.S.C. § 3771(a)(8).................................................... 2, 4, 18

18 U.S.C. § 3771(a)(10)........................................................... 4

18 U.S.C. § 3771(b)(1) ................................................. 2, 3, 10, 12

18 U.S.C. § 3771(d)(1)........................................................... 20

18 U.S.C. § 3771(d)(3) .......................................................... 3, 6

18 U.S.C. § 3771(e)(2)(A) ........................................................ 5

<u>Other Authorities</u>

150 Cong Rec. 22953 (Oct. 9, 2004) ....................................... 10, 12

Claire Finkelstein, *Is Risk a Harm?,* 151 U. Pa. L. Rev. 963 (2003) ............ 9

David W. Robertson, *The Common Sense of Cause in Fact*, 75 Tex. L. Rev. 1765 (1997)......... 10

Paul G. Cassell et al., *Circumventing the Crime Victims' Right Act: A Critical Analysis of the Eleventh Circuit's Decision Upholding Jeffrey Epstein's Secret Non-Prosecution Agreement*, 2021 Mich. St. L. Rev. 211 ..................................................... 6

<u>Rules</u>

Fed. R. Crim. P. 2........................................................... 13, 19

Fed. R. Crim. P. 6(e)(3)(E)(i)................................................. 17

LCrR 57.1 .............................................................. 2, 13, 19

**REPLY IN SUPPORT OF MOTION OF NAOISE CONNOLLY RYAN ET AL.,
REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT
JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302, FOR DISCLOSURE OF
RELEVANT INFORMATION TO PROVE "CRIME VICTIM" STATUS AND
VIOLATION OF THEIR RIGHTS**

Naoise Connolly Ryan et al. (the "victims' families"), through undersigned counsel, file this reply in support of their motion for the Court to direct disclosure of information relevant to proving that their Crime Victims' Rights Act (CVRA) rights were violated. Dkt. 72.

## INTRODUCTION

The Court has before it a properly presented issue of whether the victims' families represent "crime victims" under the CVRA. *See* Dkt. 52 at 5-7; Dkt. 71 at 4-18; Dkt. 72 at 8-10. The Court must decide that issue, because it is relevant both to prospective application of the CVRA in this case and to retrospective vindication of the families' CVRA rights.

In deciding the CVRA "crime victim" issue, the undisputed facts allow the Court to rule immediately in the victims' families' favor for (at least) three different reasons. First, the families represented *crash victims* during the Government criminal investigation into the two 737 MAX crashes—creating "crime victim" status. Second, the DPA blocks Boeing's prosecution for certain involuntary manslaughter and other homicide crimes—crimes which clearly harmed the crash victims. And third, Boeing's conspiracy crime of deceiving the Federal Aviation Administration Aircraft Evaluation Group (FAA AEG) about the Maneuvering Characteristics Augmentation System's (MCAS's) safety problems clearly created risks to the passengers and crew on the two flights that crashed, thereby harming hundreds of people and creating "victim" status. *See* Dkt. 71 at 5-9, 15-18.

The Court can also determine that the victims' families represent "crime victims" because Boeing's conspiracy directly and foreseeably caused the two 737 MAX crashes. Dkt. 71 at 9-15.

1

At the very least, the victims' families are entitled to an evidentiary hearing to prove their case on this point. Dkt. 52 at 5 n.4; Dkt. 71 at 20-21.

In any evidentiary hearing, the Court will need to have before it relevant information to reach an accurate conclusion. And yet, the Government stakes out the extraordinary position that it can conceal critical information from the victims' families and the Court. The Court should not permit the Government to become "an architect of a proceeding that does not comport with standards of justice." *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). Accordingly, unless the Court concludes that it can rule in the victims' families' favor without a hearing, the Court should order the Government to release its information on any disputed issues for four separate reasons.

First, the CVRA obligates this Court to "ensure" that crime victims' rights are enforced. 18 U.S.C. § 3771(b)(1). And the Local Criminal Rules allow a judge to "direct the parties to proceed in any manner that the judge deems just and expeditious." LCrR 57.1. The just and expeditious way to ensure that the victims' rights are enforced is to require the Government to produce its information concerning disputed CVRA issues. This Court clearly possesses power to obtain relevant information in adjudicating such issues. *See Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1409 (5th Cir. 1993).

Second, the Government is obligated to use its "*best efforts* to see that crime victims are notified of, and accorded, the rights described in [the CVRA]." 18 U.S.C. § 3771(c)(1) (emphases added). That "best efforts" requirement dictates that the Government provide information necessary to a fair adjudication of the CVRA issues before the Court.

Third, the CVRA promises victims a right "to be treated with fairness." 18 U.S.C. § 3771(a)(8)—a right akin to the defendant's right to disclosure of favorable information under *Brady v. Maryland*, 373 U.S. 83 (1963). The Government agrees that the victims' families have a

right to fair treatment—and the only way to treat the victims' families fairly is to provide them with access to the Government's information on the disputed CVRA issues.

Fourth and finally, the Government's ethical duty of candor-to-the-court does not permit it withhold evidence necessary to fairly adjudicate the issues.

## ARGUMENT

### I.      The Court Must Decide the Issue of Whether the Crash Victims are CVRA Protected "Crime Victims."

At various points in their briefs, the Government and Boeing hint that this Court should refuse to decide whether the crash victims are "crime victims" protected by the CVRA. *See, e.g.,* Dkt. 73 at 13; Dkt. 74 at 1. This would be a remarkable conclusion. In a case involving what may be the most sustained and far-reaching violations of the CVRA in our nation's history, the parties are asking the Court to hold that it is powerless to protect the CVRA rights of 346 grieving families.

These parties are simply wrong to suggest that the Court could duck the issue. The parties do not dispute that the victims' families have properly filed motions asserting their CVRA rights. *See* 18 U.S.C. § 3771(d)(3) (authorizing filing by movants of CVRA motions). Once such a motion has been filed, the CVRA requires that "[t]he district court shall *take up and decide* any motion asserting a victim's right." 18 U.S.C. § 3771(d)(3) (emphasis added).

Moreover, the CVRA directs that the district court "shall ensure" that a crime victim "is afforded" the rights described in the CVRA. 18 U.S.C. § 3771(b)(1). If the Court were to assume that the victims' families represent crime victims, then the families would be immediately entitled to a series of rights. For example, the families would be entitled to:

- The reasonable right to confer with Government prosecutors (§ 3771(a)(5));

- The right be informed of services available to them (§ 3771(a)(10));

- The right to reasonable, accurate, and timely notice of any future court proceedings (§ 3771(a)(2));

- The right to be treated with fairness in these proceedings (§ 3771(a)(8));

- The right to be reasonably protected from Boeing (§ 3771(a)(1)); and

- The right to be informed in a timely manner of the DPA (§ 3771(a)(10)).

The victims have explained in their earlier filings that "[t]he Government has made it clear that it will *never* afford the victims' families [their CVRA] rights unless the Court requires it to do so." Dkt. 71 at 24 n.9 (emphasis in original). Because of the immediate, *prospective* importance of a "crime victim" ruling, the Court must decide the question.

Not only does a "crime victim" ruling have prospective significance, but it will also allow the Court to determine the appropriate retrospective remedies for the Government's CVRA violations. The victims' families have set out various remedies to which they are entitled because the Government violated the CVRA. *See* Dkt. 52 at 26-28; Dkt. 72 at 21-30. The CVRA does not commit to the Court's discretion the decision of whether to enforce victims' rights. To the contrary, the CVRA specifically "places responsibility on the [district] court for its implementation, requiring that '*the court shall ensure* that the crime victim is afforded [those] rights.'" *United States v. Atl. States Cast Iron Pipe Co.*, 612 F.Supp.2d 453, 458 (D.N.J. 2009) (quoting 18 U.S.C. § 3771(b)(1)) (emphasis added). The Fifth Circuit has recognized this command, explaining that in enacting the CVRA, "Congress made the policy decision—*which [courts] are bound to enforce*—that the victims have a right to inform the plea negotiation process by conferring with prosecutors." *In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008) (emphasis added).

Accordingly, the Court must reach the "crime victim" issue. The Court should rule that the victims' families represent "crime victims" under the CVRA and that the Government violated their rights and then direct further briefing on the appropriate remedies for those violations.

**II.     Based on the Existing Record, the Court Should Rule that the Crash Victims are "Crime Victims" Protected by the CVRA.**

The victims' families have presented four independent paths of analysis for concluding that the crash victims are CVRA "crime victims." Dkt. 71 at 5-18; Dkt. 72 at 8-10. At least three of those four paths clearly rest on undisputed facts—and the Court should simply resolve the "crime victim" issue on these three grounds.

**A.  The families represented "crime victims" during the Government's crash investigation.**

First and most directly, the Government does not dispute that for nearly two years, it ran a criminal investigation regarding the two 737 MAX *crashes*. *See* Dkt. 72 at 5-6. During that criminal investigation, the families contacted the Victims' Rights Ombudsman and asked to confer with the prosecutors investigating the *crashes*. *Id.* And rather than afford the families their CVRA right to confer, the Ombudsman deceived the families by telling them—falsely—that no such investigation even existed. The Government's deceit violated the CVRA. *Id.* at 6-7.

Under the CVRA, "crime victims" are defined as those persons "directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). The CVRA does not require a conviction—or even a criminal charge—for "crime victim" status to exist. By its plain terms, the CVRA applies before charges are filed. The CVRA covers "the Department of Justice and other departments and agencies of the United States engaged in the detection, *investigation*, or prosecution of crime …." 18 U.S.C. § 3771(c)(1) (emphasis added). And the Act provides that victims' rights "shall be asserted in the district court in which a defendant is being prosecuted for the crime or, *if no prosecution is underway*, in the district court in the district in

which the crime occurred." 18 U.S.C. § 3771(d)(3) (emphasis added). The controlling law of this Circuit is that "there are clearly rights under the CVRA that apply before any prosecution is underway. Logically, this includes the CVRA's … 'reasonable right to confer with the attorney for the Government.'" *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (quoting 18 U.S.C. § 3771(a)(5)).

In 2015, Congress amended the CVRA to make it even clearer that the CVRA applies before any prosecution is underway. To specifically reinforce the Fifth Circuit's holding in *In re Dean*, in 2015 Congress added a new right to the CVRA that indisputably applies pre-charging— specifically, "the right to be informed of . . . the services described in [the Victims' Rights and Restitution Act of 1990 (VRRA)]." This 2015 amendment confirms that Congress crafted the CVRA to apply pre-charging, because the amendment requires notice to victims about VRRA "services" provided well before charges are filed. For example, the VRRA directs that rape victims should be provided with notice of medical services available to them. Paul G. Cassell et al., *Circumventing the Crime Victims' Right Act: A Critical Analysis of the Eleventh Circuit's Decision Upholding Jeffrey Epstein's Secret Non-Prosecution Agreement*, 2021 MICH. ST. L. REV. 211, 241, 248.

Here, just as the CVRA entitles rape victims to notice about services available to them following a crime, the crash victims' families were entitled to notice about services available to them following the crashes. It makes no difference that the Government ultimately determined that it did not believe that it could prove a homicide case against Boeing beyond a reasonable doubt. Dkt. 58 at 4. The Government has not denied that, under a preponderance of the evidence standard, such charges were supported. *See* Dkt. 58 at 10. Nor does the Government deny that a movant asserting CVRA "crime victim" status need only meet the conventional preponderance of the

evidence standard used to decide pre-trial motions—as multiple cases have held. Dkt. 71 at 4 (citing, inter alia, *United States v. Giraldo-Serna*, 118 F.Supp.3d 377, 382 (D.D.C. 2015)).

To be sure, the Government is entitled to make its final determination of *whether* to file criminal charges. But, in this case, the Government was not left with a "challenging situation" (Dkt. 58 at 4) when it was making that determination. Instead, it was simply left with a routine situation where the CVRA required it to confer with the victims' families as part of the decision-making process. For this reason alone, the Court should find the families represented CVRA "victims."

**B.  The families represented victims for purposes of receiving "timely" notice of a DPA blocking a manslaughter prosecution of Boeing.**

The Court can also straightforwardly resolve the "crime victim" issue by relying on the uncontested fact that the DPA bars Boeing's prosecution for certain homicide crimes. Dkt. 71 at 7-9. The Court can reach this conclusion, as a matter of law, by simply looking at the DPA's plain language. The DPA provides that, subject to other provisions not relevant here, it "will not bring *any criminal ... case* against [Boeing] relating to any of the conduct as described in the attached Statement of Facts or the Information filed pursuant to this Agreement." Dkt. 4 at 14 (emphasis added). Among the criminal cases that could have been brought were certain involuntary manslaughter charges. Dkt. 71 at 8-9. And obviously, someone who dies from involuntary manslaughter is a victim of that crime.

The CVRA requires the Government to provide "timely" notice of a DPA *before* the DPA becomes final. Dkt. 52 at 23-24. In this case, the DPA covers involuntary manslaughter crimes by Boeing, both as a matter of fact and as a matter of law. For this reason as well, the Court should conclude that the families represent "crime victims."

**C.  The families represented CVRA "victims" because Boeing's crime directly and proximately exposed the crash victims to an unnecessary safety risk.**

A third way in which the Court can immediately resolve the "crime victim" issue is to simply find that Boeing's crime of deceiving the FAA subjected the crash victims to unnecessary risk. Dkt. 71 at 15-18. The facts underlying this conclusion have not been disputed. Boeing lied to the FAA about the new MCAS on its 737 MAX. And Boeing's lies impaired the FAA's ability to protect those flying on the 737 MAX. Indeed, Boeing has admitted that it willfully conspired "to defraud the United States by *impairing, obstructing, defeating, and interfering with*, by dishonest means, the lawful function" of the FAA AEG. Dkt. 1 at 1 (emphasis added). The FAA AEG's function that Boeing obstructed concerned the agency's evaluation of safety issues concerning improper MCAS activation. *Id.* And when MCAS improperly activated on October 29, 2018, on Lion Air Flight 610, and on March 10, 2019, on Ethiopian Airlines Flight 302, the pilots flying those two airplanes had less information than they would otherwise have had in their life-or-death struggles to regain control of planes.

The agreed statement of facts in this case contains ample information demonstrating risk:

42. By concealing MCAS's expanded operational scope from the FAA AEG, Boeing . . . defrauded, impaired, obstructed, defeated, and interfered with the FAA AEG's lawful function to evaluate MCAS and to include information about MCAS in the 737 MAX [Flight Standardization Board] Report.

43. Based on Boeing's misleading statements, half-truths, and omissions to the FAA AEG about MCAS, and in reliance on those statements and omissions, the FAA AEG agreed to delete all information about MCAS from the 737 MAX FSB Report.

44. From in or around January 2017 through in or around July 2017 (when the 737 MAX FSB Report was published), [Boeing through its employees] … *sent and caused to be sent emails to representatives of various Boeing airline customers that had agreed to purchase the 737 MAX*, including major U.S.-based airlines. In these emails, [Boeing employees] referenced and included drafts of the forthcoming 737 MAX FSB Report and airplane manuals and pilot-training materials for Boeing's 737 MAX airline customers. None of these items contained any information about MCAS, consistent with [Boeing employees'] … efforts to deceive the FAA AEG into deleting information about MCAS.

DPA, Dkt. 4, Statement of Facts, ¶¶ 42-44 (emphasis added).

In light of these facts, which the Government does not dispute, the Court can straightforwardly resolve the "crime victim" issue based on the risk-equals-harm theory. Dkt. 71 at 15-18. Innocent persons have the right to live their lives without criminals exposing them to an unnecessary risk to their safety. All persons "have a legitimate interest in avoiding unwanted risks. A [defendant] who inflicts a risk of harm on another damages that interest . . . ." Claire Finkelstein, *Is Risk a Harm?,* 151 U. Pa. L. Rev. 963, 964 (2003). Boeing's conspiracy directly and proximately caused the passengers on the two 737 MAX flights to suffer unwanted risk by depriving the pilots of information and training about MCAS that they expected. For this reason as well, this Court should rule that the families represent "victims"—and that the Government violated the CVRA.

### III.   At a Minimum, the Court Must Provide the Victims' Families an Evidentiary Hearing Regarding the "Crime Victim" Status of the Crash Victims.

For the three reasons just discussed, the Court can immediately resolve the "crime victim" issue before it based on undisputed facts. Indeed, even on the families' fourth argument—that Boeing's conspiracy crime directly and foreseeably led to the two crashes, Dkt. 71 at 9-15—a strong case can be made that the Court can simply rule in the families' favor on the existing record.

But if for any reason the Court concludes that the facts are insufficiently clear to rule immediately for the families, then the families are entitled to an evidentiary hearing to prove their "victim" status. Boeing and the Government do not dispute that, under controlling Fifth Circuit precedent, a person "may qualify as a victim, even though [he] may not have been the target of the crime, as long as [he] suffers harm as a result of the crime's commission." *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011). And the Fifth Circuit has further instructed that the CVRA requires this Court "to create 'a mental picture of a situation identical to the actual facts of the case in all respects save one: the defendant's wrongful conduct is now corrected to the minimal extent necessary to make it conform to the law's requirements.' Then, the court asks 'whether the injuries that the

[victim] suffered would probably still have occurred had the defendant behaved correctly in the sense indicated.'" *In re Fisher*, 649 F.3d 401, 403 (5th Cir. 2011) (*quoting* David W. Robertson, *The Common Sense of Cause in Fact*, 75 TEX. L. REV. 1765, 1770 (1997)).

To assist the Court in creating the appropriate "mental picture," the victims' families have provided a detailed proffer of the facts that they would prove at an evidentiary hearing. Dkt. 72-1. The families then suggested that the Court could simply direct that the Government (and Boeing, if it chooses to participate in contesting factual issues[1]) would identify which facts are in dispute— and the basis for any disputes. Dkt. 72 at 19-20.

The families did not believe that the parties would find fault with this commonsense approach. But the Government (and Boeing) seem to object. Dkt. 72 at 14-15; Dkt. 73 at 17-19. In their obstructionism, they fail to explain why it would be necessary for this Court to hold a hearing to resolve facts that are undisputed. Surely judicial efficiency—and the search for justice—would be promoted by narrowing the scope of any remaining disagreements.

The CVRA imposes on this Court an obligation to "*ensure* that the crime victim is afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1) (emphasis added)). Accordingly, if the Court concludes that further factual development is needed, then the Court should order the parties to identify which facts are disputed and then hold an evidentiary hearing to determine them.

### IV.     As Part of any Evidentiary Hearing on the CVRA Issues, the Victims' Families are Entitled to the Government's Evidence Supporting Their Position.

At any evidentiary hearing, the Court would obviously want to consider the relevant information regarding the CVRA issues before it. The victims' families had hoped that the Government would agree to provide such (non-privileged) information to the Court voluntarily,

---

[1] Whether Boeing has "standing" to contest such issues is not immediately clear.

either directly or by disclosing such information to the victims. But instead, the Government has staked out the position that it can withhold relevant information from the Court—while ironically, at the same time, charging Boeing with a criminal conspiracy to withhold information from the FAA. *Cf.* Memo. from Atty. Gen. Merrick Garland, Freedom of Information Guidelines (Mar. 15, 2022) ("Transparency in government operations is a priority of this Administration and this Department.").[2] The victims' families are entitled to an order from this Court directing the Government to produce relevant information.

The Government is concealing from the Court—and the families—highly relevant information concerning the pending CVRA issues. To clarify the situation before filing their motion, the victims' families sent to the Government a list of thirteen issues where they understood that the Government possessed information supporting the families' position. Dkt. 72 at 4-5. The families requested that the Government simply confirm that it possessed supporting information and that it was declining to produce the information to the families. *Id.* at 5. Rather than directly acknowledge this procedural posture, the Government responded that it would address the question "in due course." *Id.* at 6. But when the Government filed its response, it did not forthrightly acknowledge that it was concealing information. Instead, in fifteen pages of briefing, the Government simply talked around the point. *See* Dkt. 73 at 1-15.

The Government's silence speaks louder than words: The Government is staking out the position that it can conceal information hundreds of grieving families need to establish that they are entitled to exercise congressionally-conferred rights. But these criminal proceedings are supposed to be "a search for truth." *See United States v. Colomb*, 419 F.3d 292, 296 (5th Cir. 2005). A critical part of the "search for truth" is ensuring that the Court can review relevant information

---

[2] Available at https://www.justice.gov/ag/page/file/1483516/download.

11

on (for example) the "crime victim" issue. Because the Government will not voluntarily disclose that information, this Court should direct the Government to disclose it for four separate reasons.[3]

**A. This Court should order the Government to produce information supporting the victims' families' position under its CVRA power to "ensure" the victims' families are afforded their rights.**

The first argument that the victims' families made to obtain release of information was based on this Court's CVRA obligation to "*ensure* that the crime victim is afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1) (emphasis added), discussed in Dkt 72 at 12-13. Through this provision, Congress has specifically "place[d] responsibility on the [district] court for [the CVRA's] implementation." *United States v. Atl. States Cast Iron Pipe Co.,* 612 F. Supp. 2d 453, 458 (D.N.J. 2009). Indeed, as the Senate co-sponsor of the CVRA explained, Congress understood that this provision would require that "the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while giving meaning to the rights we establish." 150 CONG REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphasis added).

The Government's response to this argument is unclear. Remarkably, the Government does not even cite the CVRA's language requiring that this Court "shall ensure" protection of CVRA rights—much less rebut the victims' families' explanation about why this language requires this Court to direct the Government to release relevant information. For this reason alone, this Court should grant the victims' motion.

---

[3] In this reply, the victims' families focus on the Government's disclosure obligations, because Boeing simply takes the same factual position as the Government. But if Boeing wishes to raise independent factual disputes, then it would need to establish standing to do so and should likewise be subject to appropriate disclosure obligations.

In addition, the Government concedes the foundations of the victims' families' argument. While the Government does not discuss this Court's CVRA obligation to "ensure" protection of CVRA rights, the Government explicitly concedes that this Court possesses "certain inherent discovery powers." Dkt. 73 at 11 (citing *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1409 (5th Cir. 1993)). The Government notes, however, that this inherent power must be exercised in way that does not "circumvent[] the limits imposed by statute or rule." Dkt. 73 at 12. But here, nothing in the relevant statute (the CVRA) suggests that the Court must sit idly by while the Government hides evidence relevant to a disputed CVRA determination. To the contrary, the statute *requires* that the Court "shall ensure" (§ 3771(c)(1)) that victims are afforded their rights. And with regard to the applicable rules, the federal criminal rules "are to be interpreted to provide for the just determination of every criminal proceeding" and "to secure … fairness in administration." Fed. R. Crim. P. 2. And under the local rules, this Court is clearly empowered to direct the parties to proceed in any manner that it deems "just and expeditious." *See* LCrR 57.1.

In addition to ignoring the relevant statutory language and applicable rules, the Government also declines to discuss the reported court decision most analogous to this case. In a CVRA case involving a secret non-prosecution deal executed with Jeffrey Epstein, the federal prosecutors "agreed that [the district court], under its inherent authority to manage th[e] case, could impose discovery obligations on each party." *Jane Does 1 and 2 v. United States*, 817 F. Supp. 2d 1337, 1344 (S.D. Fla. 2011).[4] In light of the Government's concession, the district court found that "some factual development [was] necessary to resolve the remaining issues in this case" and

---

[4] In a later mandamus action related to the case, the Eleventh Circuit held that where no criminal charges have been filed, victims cannot seek to vindicate their CVRA rights in a separate, free-standing civil action. *In re Wild*, 994 F.3d 1244, 1252-63 (11th Cir. en banc 2021). But here, of course, criminal charges have been filed. *See* Dkt. 52 at 20-21 n.13 (distinguishing *In re Wild*).

13

permitted the victims "the opportunity to conduct limited discovery in the form of document requests and requests for admissions" from the Government. *Id.* The Government offers no reason why this Court should not follow this persuasive decision resting on analogous facts.[5]

Finally, the Government notes that the victims' families have filed a 55-page proffer of facts that they believe that they could prove at an evidentiary hearing. Dkt. 73 at 14 (discussing Dkt. 72-1). The Government claims that, in light of this proffer, no information is needed from the Government. But the Government is being deceptive. It is certainly true that, were the Government to agree to the proffer, then further information from the Government would be unnecessary. But the Government has yet to make *any* concessions along these lines. Accordingly, the Court should

---

[5] Rather than discuss the on-point *Jane Does* case, the Government cites other cases involving readily distinguishable facts. Dkt. 73 at 6-7. For example, the Government relies on dicta in *United States v. Moussoui*, 583 F.3d 220, 234-35 (4th Cir. 2007). But in that case, the civil plaintiffs seeking discovery for a civil case specifically "abandoned" any argument that the CVRA entitled them to that information. *Id.* at 234. And the Fourth Circuit merely noted that the CVRA is "silent and unconcerned with victims' rights to file civil claims against their assailants." *Id.*

Similarly, *In re Kenna*, 453 F.3d 1136, 1137 (9th Cir. 2006) (per curiam), rejected a victim's effort to obtain disclosure from the *court* of the entire pre-sentence report (PSR). Because the court already had access to that information, the concerns implicated here (about the Government concealing information from the court) were not in play. And, in any event, even in that case, the district court offered to provide to the victim the relevant parts of the PSR—an offer that the victim inexplicably rejected. *Id.* at 1137.

Also distinguishable is *Stegman v. United States*, 2015 WL 728487 (D. Kans. 2015). There, a victim argued that she was entitled to information regarding fraudulent tax returns allegedly filed in her name. The only right at issue was her right to be treated with fairness. *Id.* at *1. The victim did not allege any need for the materials in connection with a criminal case. In fact, no criminal charges were ever filed. *Id.* at *1-*2. Apparently, the victim sought the records purely for unspecified personal purposes. In contrast, in this case the victims' families seek information in connection with disputed issues in an on-going criminal proceeding.

Finally, in *United States v. Hunter*, 2008 WL 110488 (D. Utah 2008), the Government told the district court that it had no information in its files that would support the movants' claims that they were CVRA "crime victims." *Id.* at *1. In light of that representation, the district court stated that "this court cannot assume that [the Government's] assertions with respect to the nature of the evidence in its files is anything but candid and forthcoming." *Id.* at *2. Here, in contrast, the Government has *not* denied that it possesses significant information relevant to the "crime victim" issue—information that the Court requires to fairly adjudicate the issue. Just as in *Hunter*, the Government should be "candid and forthcoming" with the Court about the nature of its evidence.

direct the Government to specifically state which facts in the proffer it disputes. That direction will make clear the need for the Court to have more information on the subjects in dispute.

**B. The Court should direct the Government to produce information supporting the victims' families' position as part of the Government's CVRA obligation to make its "best efforts" to protect victims' rights.**

The Court should also order the Government to release relevant information as part of enforcing the CVRA's "best efforts" provision. The Government admits that the CVRA directs that "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, *investigation*, or prosecution of crime shall *make their best efforts* to see that crime victims are notified of, and accorded, the rights described in [the CVRA]." 18 U.S.C. § 3771(c)(1) (emphases added). The Government, however, argues that this language does not provide "a separate standalone right to discovery." Dkt. 73 at 5.

The Government misconstrues the victims' families' position. The families are not claiming that they should be permitted to rummage through the Government's files in the hope that something useful turns up. Rather, the families argue that the Government is itself obligated to disclose specific information directly relevant to the CVRA issues pending before the Court. *See* Dkt. 72 at 4-5.

The Government conventionally makes disclosures of relevant evidence in criminal cases. To be sure, "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). But the Supreme Court reached this holding in light of the understanding that the prosecution has a pre-existing "duty under the due process clause to [e]nsure that criminal trials are fair by disclosing" favorable evidence. *Id.* at 559 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). And in criminal cases, if a dispute arises about the Government's obligations to ensure fairness, the Court steps in to resolve them.

Here, the situation is even simpler than the sorts of *Brady* disputes that the Court often resolves. In those disputes, the Government at least argues that the information in question is not critical to a fair resolution of the case. But here, the Government has not contested that it possesses highly relevant information needed for the Court to fairly resolve the CVRA issues before it. Thus, the Government is bluntly claiming that it can be "an architect of a proceeding that does not comport with standards of justice." *Brady*, 373 U.S. at 87-88.

The Government's position is a remarkable one that cannot be squared with Congress's command that the Government must use its "best efforts" to protect victims' rights. In a CVRA case where the movants seek information from the Government supporting their "victim" status, the Government must provide the movants with "reasonable access to evidence which could support their claim…. The government's cooperation is mandated by the CVRA, which requires the government to 'make [its] best efforts to see that crime victims are notified of, and accorded, the rights' set forth in the Act." *In re Antrobus*, 519 F.3d 1123, 1126 (10th Cir. 2008) (Tymkovich, J., concurring) (quoting CVRA)).[6] Thus, as one court has explained, "[c]onferring with and *seeking*

---

[6] The Government notes that, following Judge Tymkovich's opinion, the Tenth Circuit later issued decisions in follow-on litigation. But, if anything, that subsequent history reinforces the victims' families' position here. In the follow-on litigation, the putative victims (family members representing a person who had been shot) sought an ATF report containing information that would help to establish their CVRA "victim" status. Initially the Government denied that it possessed any such information. Later, the Government changed its position and did not oppose disclosure of the information to the family members. But the district court declined to order release of that information. The family members appealed, but the Tenth Circuit concluded that their challenge should be brought in the district court. *United States v. Hunter,* 548 F.3d 1308, 1317 (10th Cir. 2008). Notably, because of its duty of candor to the court, the Government filed the ATF report with the Circuit under seal. *Id.* at 1317. The family members then returned to the district court, where they were unsuccessful in obtaining release of the report. So they returned to the Tenth Circuit, which held that it was "regrettable that the [family members] were not given access to the ATF report, given the government's lack of opposition." *In re Antrobus*, 563 F.3d 1092, 1101 (10th Cir. 2009). The Circuit concluded, however, that it did not have the power to review the district court's decision. *Id.* The Circuit also pointedly noted that "[d]istrict courts and prosecutors must become sensitive to Congress's new demand that victims have a seat at the table." *Id.*

*information from the government* in connection with restitution to be sought in an actual criminal proceeding . . . *would appear to be well within [the CVRA's] bounds.*" *United States v. Rubin*, 558 F. Supp. 2d 411, 425 (E.D.N.Y. 2008) (emphasis added). In that case, because the Government believed some of the restitution information it possessed was secret grand jury material, it provided the victims "with schedules setting forth information based on the grand jury materials." *Id.*[7] The district court also observed that at oral argument "the government pledged to continue such efforts, to [the victims'] apparent satisfaction." *Id.* Accordingly, the court found it unnecessary to rule further on the victims' motion for production of information. Here, the Court should produce the same result by ordering the Government to produce to the victims' families what is "well within the bounds" of the CVRA, *id.*—i.e., relevant information in thirteen specific areas about their CVRA claims.

The Government also ignores two other cases cited by the victims' families. *See* Dkt. 72 at 14. The first is *United States v. Sacane,* No. 3:05-CR-325-AHN, 2007 WL 951666 (D. Conn. Mar. 28, 2007), which held that if victims needed financial information to pursue restitution, then "pursuant to the CVRA,  they may enlist the assistance of the government"—with the court citing the CVRA's "best efforts" provision as authority. *Id.* at *2. Similarly, *United States v. Ingrassia,* No. CR-04-0455ADSJO, 2005 WL 2875220 (E.D.N.Y. Sept. 7, 2005), held that "the CVRA plainly puts an interested victim in a position to get [sufficient information to weigh in on disputes about the contents of a pre-sentence report] by establishing an enforceable right to confer with the prosecutor"—also citing the CVRA's "best-efforts" requirement. *Id.* at *17. These cases confirm

---

[7] Here the Government argues that producing certain information might implicate grand jury secrecy. Dkt. 73 at 10-11. But one simple solution to this potential problem is the same one used by *Rubin*: The Government can provide summaries that do not disclose confidential grand jury information. In any event, the Government does not deny that grand jury secrecy can be waived "in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i).

what ought to be obvious: It is inconsistent with the Government's CVRA "best efforts" obligation for the Government to conceal information necessary for enforcing victims' rights.

### C. The victims' families have a right to obtain favorable evidence under general fairness principles.

The victims' families also argued that they were entitled to disclosure of favorable information under general fairness principles, such as their CVRA's right "to be treated with fairness," 18 U.S.C. § 3771(a)(8)—a right akin to the defendant's right to disclosure of favorable information under *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. 72 at 16-18. In response, the Government seems to agree that the victims' families have a right to fair treatment: "[T]he Government forthrightly acknowledges that the [victims' families] deserve to be treated with fairness …." Dkt. 73 at 9. But following that "forthright acknowledgment," the Government proceeds to quibble over whether *Brady* or other fairness principles extend to crime victims.

The Government misses the forest for the trees. Having conceded that the foundational principle that the victims' families "deserve to be treated with fairness," the Government should then address whether concealing relevant information is fair. But instead of "forthrightly" addressing this fairness issue, the Government knocks down a strawman. Citing various cases, the Government argues that crime victims are not "parties" to criminal cases. Dkt. 73 at 9-10. This point is true—but irrelevant. While crime victims are not parties to criminal cases, the CVRA extends to victims enforceable rights *within* criminal cases. The criminal justice system "has long functioned on the assumption that crime victims should behave like good Victorian children—seen but not heard. The CVRA sought to change this by making victims independent participants in the criminal justice process." *Kenna v. U.S. Dist. Court for the C.D. Cal.*, 436 F.3d 1011, 1013 (9th Cir. 2006). *See generally* Douglas E. Beloof, Paul G. Cassell, Meg Garvin & Stephen J.

TWIST, VICTIMS IN CRIMINAL PROCEDURE 24-29 (4th ed. 2018) (discussing reasons why crime victims' rights are included in criminal proceedings).

In light of the Government's agreement that the victims' families should be treated fairly, the only remaining issue for the Court is how to assure fairness. This Court undoubtedly possesses the power to assure fairness in its proceedings. *See* Fed. R. Crim. P. 2. Indeed, the local rules specifically provide that "a presiding judge may direct the parties to proceed in any manner that the judge deems *just.*" LCrR. 57.1 (emphasis added). The "just" way to proceed here is for the Court to direct the Government to produce information relevant to the pending CVRA issues.

**D. Allowing the Government to withhold relevant evidence would raise serious ethical issues.**

The victims' families also explained that if the Government fails to produce relevant information to the Court, serious ethical issues will arise. Dkt. 72 at 18-19. The Government's response to this point is not reassuring—it ducks the issue. Nowhere does the Government even acknowledge its duty of candor to the Court, much less explain how it plans to fulfill that duty while withholding relevant evidence.

In their motion, the victims' families provided a specific illustration of the problem. *See* Dkt. 72 at 19. The Government has conceded that it gave the families "inaccurate" information about whether it was criminally investigating Boeing's crimes connected to the two crashes. But the Government continues to refuse to explain what the accurate information was. The Court should require the Government to forthrightly explain the circumstances surrounding this CVRA violation—as well as other circumstances important to the proper resolution of the CVRA issues pending before the Court.

# CONCLUSION

The Court should not permit the Government to become "an architect of a proceeding that does not comport with standards of justice." *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). Based on the undisputed facts before it, this Court can already determine that the victims' families represent "crime victims" and that the Government violated their CVRA rights. But if the Court believes that further fact finding is required, the victims' families are entitled to a fair hearing to prove the facts on which they rely—and in which the Government must share relevant information on disputed issues.

If the Court believes fact finding is required, the simplest way for the Court to proceed is by directing the Government to identify which specific facts are in dispute. To facilitate that process, the victims' families have provided a detailed proffer of the facts they intend to prove. Dkt. 72-1. After the Government identifies which facts it disputes, it should then produce information (or summaries of the information) supporting the victims' families' position on these issues. This approach would fulfill the Court's obligation to "ensure" that victims are afforded their CVRA rights, 18 U.S.C. § 3771(c)(1), as well as the Government's obligations to use its "best efforts" to protect victims' rights, 18 U.S.C. § 3771(d)(1). More important, this approach would lead to a fair and just proceeding in which the Court can determine the truth.

Dated: March 18, 2022

Respectfully submitted,

/s/ Warren T. Burns

Warren T. Burns (Texas Bar No. 24053119)
Burns Charest, L
900 Jackson Street
Suite 500
Dallas, TX 75202
469-904-4550
wburns@burnscharest.com

Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
383 S. University St.
Salt Lake City, UT 84112
801-585-5202
cassellp@law.utah.edu
(no institutional endorsement implied)
(*pro hac vice*)

*Attorneys for Victims' Families*

**CERTIFICATE OF SERVICE**

I certify that on March 18, 2022, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.


/s/ Paul G. Cassell
Paul G. Cassell