```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF TEXAS

 3                       FORT WORTH DIVISION

 4

 5

 6   UNITED STATES OF AMERICA, ) CASE NO. 4:21-cr-00005-O-1
                               )
 7        Government,          ) FORT WORTH, TEXAS
                               )
 8   VS.                       ) MAY 3, 2022
                               )
 9   THE BOEING COMPANY,       )
                               )
10        Defendant.           ) 9:02 A.M.

11

12

13                       VOLUME 1 of 1
                   TRANSCRIPT OF MOTIONS HEARING
14            BEFORE THE HONORABLE REED C. O'CONNOR
                UNITED STATES DISTRICT COURT JUDGE
15

16

17

18   A P P E A R A N C E S:

19   FOR THE GOVERNMENT: CHAD MEACHAM
                         UNITED STATES ATTORNEY
20                       JERROB DUFFY
                         ASSISTANT UNITED STATES ATTORNEY
21                       NORTHERN DISTRICT OF TEXAS
                         801 Cherry Street, Suite 1700
22                       Fort Worth, Texas 76102
                         Telephone:  817.252.5200
23

24

25
```

```
 1

 2     A P P E A R A N C E S:

 3     FOR THE MOVANTS:     PAUL CASSELL
                            SJ QUINNEY COLLEGE OF LAW AT THE
 4                          UNIVERSITY OF UTAH
                            UTAH APPELLATE PROJECT
 5                          383 S. University
                            Salt Lake City, Utah 84112
 6                          Telephone:  801.585.5202

 7                          DARREN NICHOLSON
                            BURNS CHAREST, LLP
 8                          900 Jackson Street, Suite 500
                            Dallas, Texas 75202
 9                          Telephone:  469.904.4550

10                          ERIN APPLEBAUM
                            KREINDLER & KREINDLER, LLC
11                          485 Lexington Avenue, 28th Floor
                            New York, New York 10017
12                          Telephone: 212.972.9432

13                          TRACY BRAMMEIER
                            CLIFFORD LAW OFFICES, P.C.
14                          120 N. LaSalle Street, 36th Floor
                            Chicago, Illinois 60602

15
       FOR BOEING COMPANY: BENJAMIN HATCH
16                          BRANDON SANTOS
                            ELISSA BAUER
17                          McGUIREWOODS, LLP
                            800 E. Canal Street
18                          Richmond, Virginia 23219
                            Telephone:  757.640.3727

19
                            PATRICK HANEY
20                          KIRKLAND & ELLIS, LLP
                            1301 Pennsylvania Avenue, N.W.
21                          Washington, D.C. 20004
                            Telephone: 202.239.5921

22
                            IAN HATCH
23                          WICK PHILLIPS GOULD & MARTIN, LLC
                            100 Throckmorton Street, Suite 1500
24                          Fort Worth, Texas 76102
                            Telephone: 480.375.8992

25
```

```
 1                     P R O C E E D I N G S

 2                        MAY 3, 2022

 3                           oOo

 4              THE COURT:  Please be seated.

 5              All right.  Thank you all for being here.

 6              Okay.  Let's start.  First, who is here for the

 7    movants?

 8              MR. NICHOLSON:  Morning, your Honor.  Darren

 9    Nicholson with Burns Charest on behalf of the movants.

10              I would like to introduce the Court to Mr. Paul

11    Cassell, who will be taking the lead this morning.

12              THE COURT:  Very good.  Thank you.

13              MS. APPLEBAUM:  Good morning, your Honor.  Erin

14    Applebaum from Kreindler & Kreindler, LLP.

15              THE COURT:  Very good.

16              MS. BRAMMEIER:  Tracy Brammeier from the Clifford

17    Law Offices in Chicago.

18              THE COURT:  Very good.  Thank you.  Thank you all

19    for being here.

20              MR. CASSELL:  Your Honor, with the Court's

21    permission, I would also like to introduce some of my

22    clients who also traveled a great distance to be here this

23    morning.

24              THE COURT:  Yes.

25              MR. CASSELL:  Michael Stumo and Nadia Milleron
```

1   traveled from Massachusetts today.  We have Catherine

2   Berthet, who's traveled from France today.  She lost her

3   daughter in the crashes.

4          Chris and David Moore are here.  Chris lost his

5   son.  We also have Ike Riffel who traveled from California.

6   Tomra Vecere who has traveled from Massachusetts.

7          And I don't want to overlook Paul Njoroge.  He's

8   here from Canada.  He lost his wife and three children in

9   the crashes.

10         THE COURT:  Thank you all for being here.

11         All right.  And for the government?

12         MR. DUFFY:  Good morning, your Honor.  Jerrob

13  Duffy and Chad Meacham for the United States.

14         THE COURT:  Okay.  Thank you for being here.

15         And then finally, for Boeing?

16         MR. HATCH:  Good morning, your Honor.  Ben Hatch,

17  McGuireWoods, on behalf of Boeing.

18         MR. HANEY:  Patrick Haney, Kirkland and Ellis, for

19  Boeing.

20         MR. SANTOS:  Brandon Santos, McGuireWoods.

21         MR. HATCH:  And we also have our colleague, Ian

22  Hatch.

23         THE COURT:  Very good.

24         MS. BAUER:  Elissa Bauer, McGuireWoods.

25         THE COURT:  All right.  Very good.  Thank you all.

1          Mr. Cassell, I will turn the floor over to you.

2          MR. CASSELL:  Thank you very much, your Honor.

3     And the victims' families very much appreciate you

4     scheduling a hearing on these motions.

5          I know we have four motions in front of the Court

6     today.  I know your time is also very valuable, so I will

7     try to get through them as expeditiously as possible.

8          THE COURT:  I've got the morning set aside for

9     you.

10         MR. CASSELL:  All right.  I want to start with

11    what I think is the central motion in this case, and that's

12    the Crime Victims' Rights Act or CVRA motion, because I

13    think some of the other issues end up revolving around that.

14         There's a related motion.  Our motion for

15    disclosure of information from the government that connects

16    into that.

17         And as you are aware, we also have a supervisory

18    powers motion and an arraignment motion.  But let me just

19    try to jump right into what I think is the main issue here,

20    the Crime Victims' Rights Act.

21         There are three rights that are important.  Now,

22    the Crime Victims' Rights Act was passed in 2004 to

23    restructure the federal criminal justice system.

24         It's essentially a bill of rights for crime

25    victims.  And there are three rights that I will be

1    referring to today that are obviously essential to our

2    moving papers.

3           The first is the right to confer with a government

4    attorney on a case.  The second is the right to timely

5    notice of a deferred prosecution agreement or DPA.

6           And the third is the right to be treated with

7    fairness.  I really don't think there's any dispute that if

8    the victims' families are representing crime victims under

9    the CVRA, then the government has violated their rights.

10          The government has admitted they never conferred

11   with the families.  In fact, they've apologized for not

12   conferring with the families.  In their brief they promise

13   that they're going to make sure this never happens again.

14          So the issue is whether, in this case, the failure

15   to confer was a failure to confer with crime victims.

16   There's also no dispute that the government did not give the

17   victims' families any notice whatsoever of the DPA.  It was

18   filed on this Court's docket without any notice to 346

19   families.

20          And there's no dispute that the government

21   deceived the victims by telling them that there was no

22   investigation going on in the crashes when, in fact, there

23   was.

24          So, if the Court rules in our favor on the crime

25   victim issue, we think, like a set of dominoes, the

1    violation of the act is clear.

2              So the issue then is, are the victims' families

3    who are here representing the family members who were killed

4    in the crashes, are they representing crime victims?

5              The CVRA says a crime victim is a person directly

6    and proximately harmed as a result of the crime.  We've

7    cited legislative history in our papers that Congress used

8    an intentionally broad definition to try to create an

9    expansive set of protections for victims in the Crime

10   Victims' Rights Act.

11             We've cited the Fifth Circuit authorities,

12   including Fisher I from the Fifth Circuit, a case I argued

13   in 2011.  And the Fifth Circuit says that you look initially

14   to the crime at issue, but you can look beyond that to see

15   the effects of the crime in making the crime victim

16   determination.

17             And just one last procedural point, because I

18   think the government's briefing has kind of obscured the key

19   issue here.  The government has referred to proof beyond a

20   reasonable doubt at various points in its papers, but that's

21   the standard of proof that your Honor would use or the jury

22   would use at the conclusion of a criminal trial when a

23   defendant's liberty is at stake.

24             Of course, we're here this morning on pretrial

25   motions, and the standard of proof for those kinds of

```
 1   motions is preponderance of the evidence.  And we've cited

 2   in our brief a number of CVRA cases from the District Court

 3   from the Sixth Circuit holding, I think without any disputes

 4   from any other courts in the country, that the standard of

 5   proof that you would apply to this is preponderance of the

 6   evidence:  Who has the better of the argument?

 7            And obviously we believe that the evidence shows

 8   that we do.  And, in fact, we've had four arguments advanced

 9   in our papers as to why the crash victims were crime victims

10   under the CVRA.  So let me dive right into those different

11   arguments that we have.

12            Let me take two together.  The first two that

13   we've laid out is during the crash investigation, the crash

14   victims were crime victims.  And then ultimately, when the

15   DPA was the outcome of that investigation, again, the crash

16   victims were crime victims.

17            The Court's well aware -- I know that you've

18   recently been involved in some other litigation concerning

19   two crashes on October 29th, 2018, and then March 10th,

20   2019 -- the Justice Department began investigating those

21   crashes.

22            Now, again, I make that assertion, the government

23   has been a little bit coy about this in their briefs.  They

24   haven't told us exactly what they were doing, but we've been

25   able to piece together from documents that cannot be
```

1    reasonably disputed that, after those crashes, the

2    government began investigating the crashes.

3              For example, in our papers we cite the Form 10-K

4    that Boeing filed in January of 2020, which said it was

5    cooperating with the Justice Department's investigation into

6    the crashes.

7              And the victims' families, some of the family

8    members seated here, read Boeing's announcement that they

9    were cooperating with the criminal investigation.  So they

10   called the Justice Department.

11             In fact, they called the Crime Victims Rights

12   ombudsman and said, we are reading in the papers that you're

13   investigating the crashes.  We want to confer.  We want to

14   talk to you about our losses in the case and how we think

15   the case should be resolved.

16             What the government said, ironically through the

17   victims' rights ombudsman is, no such investigation, and

18   victims were confused by that.  They called the FBI, the

19   victim witness office.  And there, again, they were told

20   there is no investigation into the crashes.

21             Now, let's not mince words.  Those were false

22   statements that the United States Department of Justice gave

23   to 346 grieving families around the world.  They've admitted

24   it was inaccurate information because they were

25   investigating the crashes.

1          And there's been no explanation offered, no

2     affidavits, no information, no explanation whatsoever from

3     the Justice Department about how it could make those false

4     representations to the families out there.

5          So now the government's investigation continues

6     for another 11 months with the families thinking there's no

7     criminal investigation.  So you can imagine the shock and

8     dismay when families around the world learn on Twitter or

9     Facebook or something like that that the government has cut

10    a secret deal with Boeing that will the block its criminal

11    prosecution for the crashes.

12         Now, I think it violates fundamental human decency

13    to think that you could spring an announcement like that on

14    victims' families.  But critically, for today's hearing, it

15    clearly violated the Crime Victims' Rights Act.

16         I mentioned already one of the provisions in the

17    Crime Victims' Rights Act is a provision requiring that the

18    Justice Department provide timely notice of a deferred

19    prosecution.

20         We've explained in our papers, Congress added that

21    provision, Senator Cruz and others worked on amending the

22    CVRA to expand it so that it included timely notice of a

23    deferred prosecution agreement so the victims could be heard

24    and potentially shape the outcome of that deferred

25    prosecution agreement.

1    We've also cited In re Dean, a case that I argued

2    to the Fifth Circuit in 2018.  And in In re Dean, the Fifth

3    Circuit clearly held that the CVRA applies even before

4    charges are filed.

5    The reason for that, said the Fifth Circuit, is

6    Congress has made a policy decision, which courts are bound

7    to enforce, that victims have the right to be heard during

8    the plea bargaining process, and that simply didn't happen

9    here.

10    And as a result, we know that the government has

11    clearly violated the rights of crime victims.  Let's be

12    clear.  What does that DPA do?

13    Again, the government was a little vague when it

14    crafted it.  Your Honor may have seen what I think are the

15    standard approaches to deferred prosecution agreements,

16    where the agreement will spell out specifically which crimes

17    are covered, which defendants are being immunized or

18    precluded from prosecution.

19    This agreement didn't do that.  Instead, it's

20    nebulous wording that's very broad.  But the wording is

21    broad enough, and I'm assuming that the government will

22    confirm that it precludes prosecuting Boeing for 364 counts

23    of manslaughter, among other crimes mentioned in the crash.

24    Clearly, the victims' families represent victims

25    of manslaughter crimes.  And so at that point, that would be

1    all the Court has to conclude.  I don't think anything I've

2    said so far involves a factual dispute.  The Court can

3    simply reach that ruling, and then move on to the remedy

4    stages of the case.

5             Now, we have another argument, separate and

6    independent from what I've just advanced, which we've

7    identified as the risk argument; that Boeing's conspiracy of

8    lies to the FAA produced risk to passengers and crew.

9             I think there's a simple way, again, to

10   demonstrate that fact that wouldn't involve the Court in any

11   factual disputes.  You could rule this morning, if you were

12   inclined to do so, in our favor on the risk argument.

13            And the way I want to present this argument is to

14   take you to a particular place and a particular time.  So

15   let's go to 6:32 a.m. local time, on October 29th, 2018,

16   aboard Lion Air, Flight 610, which is over the Java Sea with

17   189 passengers and crew.

18            At 6:32 a.m. local time, Boeing's MCAS system

19   activated, driving the nose of that aircraft down toward the

20   Java Sea.  At that point in time, the crew was engaged in a

21   life-or-death struggle to regain control of aircraft.

22            What do we know about that point in time?  We know

23   that nothing in Boeing's flight manual, the FCOM, Flight

24   Crew Operations Manual, even mentioned MCAS substantively,

25   let alone told the crew what they should do.

1          We also know that the crew had no training

2    whatsoever.  They didn't know what they were up against.

3    So, at that point in time, again, your Honor could conclude

4    that Boeing's crime created risk to the passengers and crew,

5    and risk would be a harm creating crime victim status.

6          Let me take you to another point in time at

7    another place.  8:39 a.m. local time, March 10th, 2019,

8    aboard Ethiopian Airlines, Flight 302, on the outskirts of

9    Addis Ababa with 157 passengers and crew on board.

10         Once again, the MCAS system improperly activated,

11   driving the nose of that aircraft down.  And shockingly,

12   this was four and a half months after exactly the same thing

13   had happened with the Lion Air flight.

14         And here again, and no dispute on these facts, the

15   Ethiopian authorities have issued an official report on

16   this, a flight manual did not tell the crew what they were

17   up against.  They had no training whatsoever in how to deal

18   with MCAS activation.

19         So, at that point, it cannot be reasonably

20   disputed, with regard to both of those flights, Boeing's

21   crime created risk to the passengers and crew.

22         How do we know for sure that there was risk

23   created?  The government has admitted it.  Take a look --

24   for example, let's go right to the criminal information that

25   is on this Court's docket in this case.

```
 1              Here's what the criminal information says: "Boeing

 2    willfully conspired 'To defraud the U.S. by impairing,

 3    obstructing, defeating, and interfering with, by dishonest

 4    means,' a lawful function of the FAA AEG," that is,

 5    interfering with the safety regulators in this country.

 6              Here's the government's press release, handed out

 7    a few minutes after they filed the DPA on your docket.  This

 8    is the government speaking in a press release.  "The

 9    misleading statements, half-truths, omissions communicated

10    by Boeing's employees to the FAA," here's the key language,

11    "impeded the government's ability to ensure the safety of

12    the flying public."

13              So you would simply have to rely on statements

14    from the government.  You could also look at the statements

15    of fact, paragraph 44, where Boeing and the government both

16    admitted that, as a result of Boeing's conspiracy crime,

17    MCAS was not in the flight crew manuals and the training

18    that was available to those who were flying the 737.

19              Again, we think you could rule immediately, based

20    on undisputed facts, that the passengers and crew suffered

21    risk.

22              Let me be clear.  The Crime Victims' Rights Act

23    doesn't require you to find that a victim suffered physical

24    harm or financial harm.  The only word that's used in there

25    is "harm."
```

1          That's a broad term that can include the kind of

2     risks that we're talking about this morning.  And you could

3     conclude that there was harm inflicted on them because they

4     were placed on a -- in a riskier position.

5          So on any of those three arguments, we think the

6     Court can rule immediately based on the existing record that

7     the victims' families represent crash victims who were crime

8     victims under the CVRA.

9          Because, you know, we have a fourth argument that

10    may involve some disputed facts.  I'm not really sure how

11    many disputed facts it involved, but what I want to be clear

12    here this morning is, in outlining these other arguments,

13    which I think you could rule on immediately, it's not

14    because we're in any way concerned that we could not prove

15    what happened here.

16         The victims' families are ready, willing, and able

17    to convincingly demonstrate, if you give us an evidentiary

18    hearing, that Boeing's conspiracy of lies killed 346

19    innocent people.  That's the stone cold truth of the matter,

20    once the Court has all the facts in front of it.

21         And we filed -- this isn't lawyer hyperbole here.

22    You've seen our 53-page proffer, single spaced, for the

23    record, that lays out all of the facts that we would prove

24    if we had an evidentiary hearing.

25         And we've also filed three expert reports at

1    docket entry 76, one, two, three, again reinforcing that

2    conclusion.  We don't think you need expert assistance to

3    reach the conclusion, but if the Court would like expert

4    assistance, we've provided that as well.

5            So if for any reason you can't rule in our favor

6    on the other arguments, then, at an absolute minimum, we're

7    entitled to an evidentiary hearing where we will prove what

8    is the truth in this case.

9            Now, what is the parties' response to our request

10   for an evidentiary hearing?  I mean, I think you've probably

11   seen the same sentence or two that I've seen.  No, they're

12   not entitled to an evidentiary hearing, and then kind of

13   move on from there.

14           But the government has conceded that you have

15   inherent discovery power to investigate the facts of the

16   situation in front of you to make appropriate rulings.

17           They cite, and we think this is the right case,

18   Natural Gas Pipeline vs. Energy Gathering, a Fifth Circuit

19   case from 1993.  So you would gather the facts, give us an

20   opportunity to prove the direct and proximate connection

21   between Boeing's conspiracy of lies and the deaths of 346

22   people.

23           The Fifth Circuit has also said you have to do

24   that.  We've cited, again in our papers, I think the best

25   case on this one is Fisher II, a case that I argued to the

1    Fifth Circuit in 2011 that collected various cases where

2    Courts have been required to look beyond the charging

3    document and determine what the facts of the case were.

4             And it's unsurprising that you might have to look

5    beyond the charging document to make the crime victim

6    determination.

7             In Fisher II, the Fifth Circuit said, look, if

8    there's a disputed issue on who is a crime victim, the way

9    the Court should proceed is to create a mental picture of

10   the world without the defendant's crime.  So that's going to

11   inevitably require some fact-finding or some understanding

12   of the facts of the case.

13            What you do in this case is you take out Boeing's

14   two-year conspiracy of lies to the FAA, remove that fact,

15   and then what does the world look like?  We think the answer

16   to that question is clear:  346 people would not have died

17   in two crashes.

18            Now, at some points in their brief it seems like

19   the government is suggesting, okay, you know, let's move on.

20   Your Honor, you couldn't award any remedy so you don't have

21   to decide whether the victims are crime victims under the

22   CVRA.

23            That's just flat-out wrong, for this reason:  We

24   are here this morning asking for a determination that we

25   possess, my -- the family members possess crime victim

1   status because that will have prospective meaning.

2          The government has yet to confer with us about why

3   they did this.  If you were to rule this morning that these

4   families are crime victims under the CVRA, we would

5   immediately go to the government, and say, all right, we

6   want to discuss this with you.  We want to exercise our

7   right to confer under the CVRA.

8          So the Court doesn't have, in our view, any option

9   to avoid this issue because we want to know today whether

10  they're protected under the CVRA so that we get all the

11  rights that the CVRA provides.

12         But, in addition to prospective application, the

13  CVRA is also going to have retrospective application here.

14  And that's an obligation that's imposed on this Court by

15  Congress in Section 3771(1)(b)(1) of the CVRA.

16         That's the provision -- you can see what Congress

17  has tried to do here.  That's the provision giving the CVRA

18  meaning.  It says, the Court shall "ensure that the crime

19  victim is afforded the rights described in the CVRA."

20         Without that kind of enforcement mechanism, the

21  CVRA would be meaningless.  We would have the government

22  doing what they did in this case, and say, oh, we're, sorry.

23  See ya later.

24         You are obligated under the CVRA to ensure that

25  these families have their rights under the CVRA.  And the

1    way to do that is to give them the right to confer with the

2    government about the DPA.  Wait a minute.  The DPA says

3    Boeing can never be prosecuted.

4            So the logical step in creating a remedy in this

5    case is to remove those provisions from the DPA so that the

6    victims' families can then meaningfully confer with the

7    prosecutors at a time when their input could make a

8    difference.

9            There's one case right on point for that very

10   proposition.  It's a case that I've argued the last ten

11   years in front of Judge Marra down in the Southern District

12   of Florida, the Jeffrey Epstein case.

13           And in the Epstein case the same thing happened.

14   The government did a secret deal with a wealthy defendant,

15   and then the victims learned about it later.

16           And so we went to Judge Marra and said, hey, we

17   were never given the opportunity -- the victims were never

18   given the opportunity to confer with the prosecutors about

19   this nonprosecution agreement, and you should give us that

20   opportunity.

21           And Judge Marra agreed.  He said, well, I'm going

22   to need to do some fact-finding, but if you connect the

23   facts here and show that you were crime victims, and that

24   the government didn't confer with you properly, then I will

25   set aside the provisions in the nonprosecution agreement.

1          And this is what he said, I will set those aside

2     "as a prelude to the full, unfettered exercise of the

3     victims' conferral rights at a time that will enable the

4     victims to exercise those rights meaningfully."

5          The victims' families here want a chance to go to

6     the government, when it's meaningful, and say, here's why

7     you should prosecute Boeing.  Here's the way you can do it.

8     Here's the way we think the case should be handled.

9          Let's be clear.  Prosecutors do have discretion.

10    We're not disputing that.  They may end up disagreeing with

11    the victims' families after that presentation is made.

12         The victims' families were promised by Congress

13    that they would have an opportunity to go to those

14    prosecutors and convince them to prosecute Boeing, and that

15    never happened in this case.  And this Court must ensure

16    that it happens.  That's one of the remedies available.

17         We would also call to your Honor's attention, we

18    were pleased to see, just this last week, Senator Cruz, who

19    has been involved in drafting the CVRA, filing an amicus

20    brief urging this Court to take a careful look at the kind

21    of remedies that would be available, and he listed some

22    possibilities as well.

23         So for all those reasons, we would ask the Court

24    to conclude that the victims' families are here representing

25    crash victims who are crime victims under the CVRA.

 1          So that's our -- I don't want to tread on the

 2   Court's patience too much, but that's our first motion.

 3          With the Court's permission, I would move on then

 4   to our second motion, which I think is related.

 5          All right.  So the second motion is what I will

 6   refer to as the disclosure of information motion.

 7          Let's assume, we've tried to lay out some ways in

 8   which the Court could avoid time-consuming or complicated

 9   fact-finding, but if you think fact-finding is appropriate

10   in this case, then our next motion, motion for disclosure of

11   information, rests on a simple premise:  If the Court is

12   going to make factual findings, it should have the relevant

13   information.

14          And remarkably, the government seems to disagree

15   with that.  They seem to think that they can sit on

16   literally millions of pages of documents, as you know from

17   some other litigation you've been involved with, that would

18   help us prove our case.

19          And then they want you to conclude, oh, the

20   victims' families aren't really victims here.  Well, they

21   have information in their files that would prove that very

22   point.

23          Now, that position strikes me as not only

24   violating fundamental precepts of human decency, but also

25   violating common sense, and particularly important for this

1  morning, violating the CVRA.

2           I've just mentioned that you have an obligation

3  under the CVRA to ensure that the crime victim is afforded

4  the rights under the CVRA.

5           Well, how can you do that if you don't have all

6  the facts in front of you?  You have inherent power to order

7  discovery.  You have the obligation to ensure that the

8  victims' rights were protected, and neither Boeing nor the

9  government mentioned that provision in their briefs.

10          So I would take it that's an undisputed point

11  that's part of ensuring the crime victims' rights,

12  protections of the victims' families, you would look at all

13  the information.

14          In addition to that, the CVRA, perhaps

15  anticipating recalcitrant prosecutors, have directed that

16  the Justice Department shall, "Make its best efforts to see

17  that crime victims are notified of and afforded the rights

18  described in the CVRA."

19          How can the Justice Department make its best

20  efforts to enforce the CVRA when it's withholding

21  information that would help the victims prove their point?

22  And we've cited some authorities that we think lead to that

23  conclusion.

24          Your Honor is well familiar with the Brady Rule.

25  If my clients had committed a murder or something like that,

 1    the government would have to give them lots of information.

 2            But the victims' families are innocent victims

 3    trying to protect statutorily created rights, and the

 4    government is taking up the position that they don't have to

 5    turn over information.

 6            Although it's curious, the government says, "We

 7    agree" -- this is a quote from their brief, "The government

 8    forthrightly acknowledges that the victims' families deserve

 9    to be treated with fairness."

10            How can it possibly be fair for the government to

11    withhold information that is directly on point for the

12    factual issues that are before this Court?

13            And in addition, as your Honor is well aware, and

14    I'm sure the government attorneys are well aware, there are

15    duties of candor to the Court.  We laid that out in our

16    brief.  The government didn't explain how they were going to

17    discharge their candor-to-the-Court obligation while they're

18    withholding information.

19            So we think if your Honor reaches issues that

20    involve factual disputes, you would simply enter an order to

21    the government requiring them -- we've spelled out the kinds

22    of information we're looking for.

23            We're not seeking to rummage through their files.

24    We have particular points of interest, and they could turn

25    over the information on those points of interest.  So that's

1   our second motion which you should grant, in our view, if

2   the Crime Victims Rights victim status is disputed.

3          So now we have -- again, with the Court's

4   permission, I would move on to our third motion, which we've

5   identified as the supervisory power motion.  And let me sort

6   of break the argument here into two pieces.

7          What parts of the DPA should you be examining

8   closely or supervise?  And then, if there are aspects that

9   should be examined closely, does the Court have the

10  authority to do that?

11         So the first point, what should you be

12  scrutinizing?  Well, there's an astonishing provision in the

13  DPA that says, "The following senior management had nothing

14  to do with the crimes."  It's one sentence that's in there.

15  Why?

16         There's no explanation for why they would put that

17  in there.  They don't ordinarily do that.  I'm assuming that

18  the government confirmed that they didn't put senior

19  management under oath before reaching that conclusion.  So

20  what is going on with that provision?

21         What is going on with the rest of the DPA?  We

22  were just discussing, does it cover manslaughter or not?

23  Ordinarily, the government is very precise about which

24  crimes are covered and which defendants are being protected

25  from prosecution.  Not in this case.

1        And that would be something that I think may

2   inevitably embroil the Court in disputes.  So you should

3   supervise the DPA right now and ask the government, what

4   crimes are covered and what people are covered?  That

5   doesn't seem like an unreasonable proposition.

6        In addition to that, as I've just explained, the

7   government seems to concede they have not consulted with the

8   victims before entering into this DPA.

9        If your Honor has supervisory power, one of the

10  things you could say is, I'm going to supervise these

11  proceedings and at least make sure that these families have

12  an opportunity to talk to you before you put a DPA on my

13  docket and expect me to sign off on it.

14       None of that information, by the way, was

15  disclosed to your Honor when the DPA was filed.  They never

16  told you anything about failure to consult with the victims.

17       And finally, we were pleased to see, again,

18  Senator Cruz filed an amicus brief last week explaining that

19  he thinks there are some aspects of this case that need to

20  be supervised and scrutinized very carefully.

21       One of the things that Senator Cruz highlighted,

22  that I hadn't really thought about before was, we have

23  Boeing sending reports over to the government every three

24  months about how they've supposedly cleaned up their act.

25  That would be great, if they've cleaned up their act.

1            But why is that process happening secretly,

2    without the victims' families or the public able to see

3    what's being transmitted between the government and Boeing?

4            There's no explanation for why that has to be done

5    secretly.  I think Senator Cruz has asked you to take a good

6    look at that provision.

7            And perhaps maybe there are some commercial trade

8    secrets or some items, as part of the disclosure, that would

9    have to be redacted or something, but why can't the rest of

10   that process be done publicly and transparently?  So those

11   are the aspects of the DPA that we think should be

12   scrutinized carefully.

13           The next question is, all right, do you have the

14   authority to scrutinize the DPA carefully?  The answer is

15   yes.  The Speedy Trial Act very clearly gives this Court

16   authority to scrutinize these kinds of agreements and we've

17   cited the relevant provision in our briefs.  It's

18   3161(h)(2).

19           And it says that the government can execute a DPA

20   "pursuant to a written agreement with the defendant, with

21   the approval of the Court."

22           So there's that language, "with the approval of

23   the Court."  This is 3161(h)(2).  3161(h)(2)., "Pursuant to

24   a written agreement with the defendant, with the approval of

25   the Court."

1          So now there's that language "with the approval of

2     the Court."  The question then becomes, what is "with the

3     approval of the Court" referring to?

4          And here we rely on the Scalia/Garner treatise on

5     statutory construction, which we think has the relevant

6     canon of construction.  You would use what they refer to as

7     the nearest-reasonable-referent rule.

8          "With approval of the Court" refers to what?

9     Written agreement.  So the question then becomes whether

10    this Court would approve the written agreement.

11         Now, what's interesting -- that's our argument we

12    laid out in our briefs.  And what did the government say?

13    They didn't even cite that provision in their response, much

14    less dispute our interpretation of that provision.  So we

15    think you have essentially undisputed argument on that

16    point.

17         Unless you want to let Boeing jump into the fray

18    here.  Boeing says, well, wait a minute.  There's some cases

19    here that we think indicate that your Honor should not be

20    scrutinizing this agreement carefully.

21         They cite Fokker Services, the D.C. Circuit case

22    from 2016, but that case was in a very unusual factual

23    posture.  In that case, the district court judge said, hey,

24    I'm disagreeing with what the prosecutors are doing here.

25    They should have filed different charges.

1              It goes up to the D.C. Circuit, which says, wait a

2     minute.  You can't decide which charges should be filed.  Of

3     course, we're not making that argument here.  We're making

4     the argument we want to discuss with the prosecutors what

5     charges to be filed, acknowledging that they ultimately have

6     discretion which charge they would finally file.

7              So we are in a totally different posture here.

8     But in addition to that, Fokker rested on D.C. Circuit

9     precedent which said that, in the D.C. Circuit, trial court

10    judges cannot reject a plea bargain because they're too

11    lenient.  That's obviously the law of the circuit there in

12    the D.C. Circuit.

13             In this circuit, the law is different.  In this

14    circuit, and we've cited four cases:  Bean, Miles, Merritt,

15    and Cheever.  The Fifth Circuit has repeatedly held that you

16    can look at a plea agreement, and say, hey, this is just too

17    lenient.  I'm not going to sign off on it.

18             Against that premise, Fokker is not controlling,

19    because it doesn't rely on Fifth Circuit law which is

20    contrary to the premise that they have there.  We've also

21    noted that the Court would have some inherent power in its

22    docket as well to look over this.

23             It's interesting when you hear what the government

24    is trying to present to you this morning.  They're saying,

25    oh, you don't have authority to do this.  They have, for

1    decades, taken a different position.

2             And we've cited, I think, an excellent article

3    that I would call to your attention.  This is from Professor

4    Peter Reilly, who's right here at Texas A&M Law School,

5    published in, I'm proud to say, the Utah Law Review.

6             And that article collects a number of examples of

7    the government saying, of course the Court can reject a DPA,

8    just as it can reject a plea bargain or other types of

9    agreements.

10            So maybe the government, when they stand up today,

11   they can discuss this issue in their briefs, but they can

12   explain why they're taking a different position in front of

13   you than they've historically taken for, I think, several

14   decades to the contrary.

15            And likewise, Senator Cruz's amicus brief, once

16   again, I think, highlights the fact that this Court would

17   have authority to understand the principles of inherent

18   power to review a document that's been put onto its docket,

19   to review an agreement that requires, you know, approval, to

20   make a determination of whether that's appropriate.  So we'd

21   ask you to rule in our favor on that motion as well.

22            Again, I hope I'm not treading on the Court's

23   patience here, but I would like to then move to our --

24            THE COURT:  Yes.

25            MR. CASSELL:  -- our fourth motion is what I would

1     call the arraignment and conditions-of-release motion.  And

2     it rests on a simple premise.  I was standing in the hall

3     this morning watching defendants in shackles going down, I

4     think to your magistrate judge, I think for an arraignment.

5          It looked to me like some of them didn't have as

6     many attorneys as Boeing has here this morning.  That's what

7     they had to do.  But Boeing comes with a team of lawyers,

8     and with the agreement of the government, and avoids going

9     to a public arraignment like every other criminal defendant

10    in America.  That's not right.  And that violates the law.

11         It violates Federal Rules of Criminal Procedure

12    10(a), which says, "An arraignment must be conducted in open

13    court."

14         I mean, I think I could almost sit down at this

15    point because the plain language of the rule says "must be

16    conducted."  So our position is simple:  You must conduct an

17    arraignment of Boeing, and it must be done in open court.

18         Now, what does the government say about this?

19    I've read their brief four or five times.  I can't quite

20    tell what they're saying, because they never come out and

21    directly say what they mean.

22         I think, and it will be interesting to hear what

23    they say this morning, are they agreeing that Rule 10(a)

24    requires an arraignment?

25         There are passages in their brief that seem to say

1    that, but then they say, well, it doesn't appear that it

2    happens within any particular time.  It's true that

3    Rule 10(a) doesn't say you have to do it within 14 days or

4    something, but clearly there would be a rule of

5    reasonableness.  At some point, the arraignment has to be

6    held.

7            We've cited Rule 2 which says that the federal

8    rules must be interpreted to eliminate "unjustifiable

9    delay."

10           At this point, we've had Boeing not arraigned for

11   a year.  That's without any justification.  That is, by

12   definition, unjustifiable delay.

13           So then the only remaining question is is the

14   victims' position correct on how to interpret Rule 10(a)?

15   It's interesting, the government cited the Wright and Miller

16   Treatise, a very well-regarded treatise.

17           When you look at the treatise, the treatise says

18   that the rule "Does not authorize the defendant to waive the

19   arraignment itself."  So even the government's own source,

20   Wright and Miller, says you can't waive the arraignment.

21           What is Boeing's position?  Boeing's position is,

22   okay, that language, yeah, it's mandatory language.  All it

23   means is, if you have an arraignment, it has to be in open

24   court, but that's not what the rule says.  The rule says

25   must be conducted in court," an arraignment.

1              It's interesting they cite the rules on jury

2     trials.  And they say, look, you don't always have to have a

3     jury trial and that's true.

4              When you look at Rule 23 in the federal rules,

5     here's what it says, "If the defendant is entitled to a jury

6     trial, then the trial must be in front of a jury," so on and

7     so forth."

8              That's not the way Congress ruled -- I'm sorry,

9     the courts wrote in 10(a)., they said there must be an

10    arraignment conducted.  That's in Rule 10(a).

11             If you go to the adjacent position in 10(b), 10(b)

12    says the defendant can waive their appearance at the

13    arraignment, but only in certain unique circumstances that

14    aren't present here.

15             And then, if you go from Rule 10(b) to the

16    advisory committee notes under 10(b), it says that, "It's

17    important to note that this rule does not permit the

18    defendant to waive the arraignment itself which may be a

19    triggering mechanism for other rules."

20             As your Honor is well aware, when somebody is

21    arraigned, then what happens?  Okay.  We have to figure out

22    what are the conditions of release?  Don't have a firearm.

23    Don't talk to victims.  Don't commit any new crimes.

24             Boeing has connived to get out of all those

25    standard conditions that other defendants walking in the

1    courthouse this morning are going to have imposed on them

2    once criminal charges have been filed.

3          If there were any doubt on this point, again, we

4    have Fifth Circuit authority right on point, U.S. vs. Moore,

5    Fifth Circuit, 1994, discussing the issue of whether -- this

6    is just whether the defendant can sign the waiver of

7    indictment form ahead of time.

8          And the Fifth Circuit says, well, it's okay to

9    sign the form ahead of time, but in the interest of

10   transparent justice and everyone understanding what's going

11   on, the defendant has to acknowledge that signature in open

12   court.

13         So we think there's no doubt that this Court has

14   to arraign Boeing.  And the government says, okay, but, you

15   know, it's not going to make any difference to anything.

16   That's simply untrue.

17         Because once Boeing is arraigned, as a standard

18   condition of release, this Court will impose, under 3142(c),

19   that Boeing shall not commit any new crimes.

20         Now, where does that become significant?  Because

21   if Boeing were to commit new crimes, then your Honor would

22   have the ability, as you know from supervised release and

23   other violations that you routinely handle, to say, wait a

24   minute.  I better put some additional conditions here to

25   make sure the public is protected.

1          You've been deprived of that power because of this

2   maneuver between Boeing and the government, because they

3   said, we've engineered all this in our own little private

4   agreement.  That's not the way the rules work.  That's not

5   the way the criminal justice system in this country works,

6   and Boeing should be subject to the same rules as everyone

7   else.

8          So you should hold an arraignment.  And at that

9   arraignment, by the way, the victims would have a right to

10  be heard on conditions of release.  I can tell you that some

11  of my victims' families will come in and explain to you

12  appropriate conditions that they think should be placed on

13  Boeing so you could have that information as part of your

14  decision-making process.  Again, the victims' families

15  understand the final decision will be up to you.

16         But what's happened in this case is the ordinary

17  rules that apply in any other criminal case have been

18  circumvented and they've been deprived of that opportunity.

19  So we would ask you to grant our fourth motion for that

20  reason as well.

21         THE COURT:  Very good.  Let me ask you a few

22  questions.

23         MR. CASSELL:  Yeah.

24         THE COURT:  And first, just kind of a basic

25  question that maybe you can help me with, but you talked

1    about the hearing that you had in Florida where the district

2    judge told you he'd have a hearing and determine if the

3    victims in the Epstein crime had been deprived of their

4    rights under this, then the judge would take certain action.

5              What is the chronology or the time line of that

6    event and these appeals that you had from -- was it from

7    that district judge in the In re Wild case?

8              MR. CASSELL:  Right.

9              THE COURT:  Where the Eleventh Circuit, in a bit

10   of a split decision --

11             MR. CASSELL:  Yes.

12             THE COURT:  -- said they weren't crime victims

13   because of the timing?

14             MR. CASSELL:  Yes.

15             THE COURT:  Are those related?

16             MR. CASSELL:  So we're now going to summarize a

17   13-year litigation saga which is all, by the way, covered in

18   an excellent law article in the Michigan State Law Review

19   that I published last year.  So if you're interested in

20   that --

21             THE COURT:  I didn't read that, but I read the

22   In re Wild cases.

23             MR. CASSELL:  Yeah, here's what happened.

24   Nonprosecution agreement cut with wealthy defendant, Jeffrey

25   Epstein, done in secret.  Victims find out.  My colleague

1   Brad Edwards and I filed similar motions to what you see

2   here, saying, wait a minute.  You have to confer with the

3   victims.

4         The government says, well, we don't think we had

5   any obligation to confer.  So we reject -- you know, we

6   oppose your motions.

7         And Judge Marra said, well, wait a minute.  I got

8   to figure out what the facts are.  Did you confer?  Did you

9   not?  How did it work?  He said, I am the inherent

10  fact-finding authority.  I'm going to order some

11  fact-finding.

12        So he ordered fact-finding in I believe it was

13  2011.  So the day before the government is supposed to

14  produce its facts, it files a motion to dismiss.  You can't

15  award a remedy, Judge.  You shouldn't do fact-finding

16  because there's never going to be a remedy at the end of the

17  day.  We say, oh, yes, there's going to be a remedy at the

18  end of the day, advancing arguments similar to the ones I

19  just advanced to you.

20        And in 2013, Judge Marra ruled that the victims

21  have identified a meaningful remedy, setting aside the

22  pieces of a nonprosecution agreement, blocking Epstein's

23  prosecution as a prelude to the unfettered exercise of the

24  conferral rights.  That was 2013.

25        Epstein goes up to the Eleventh Circuit in 2014,

1    says, wait a minute.  There's a plea bargaining privilege.

2    You can't look at the documents.  Eleventh Circuit rejects

3    it.  Back down to Judge Marra.

4            Then we got our discovery from the government.  We

5    file, in 2015, a motion for summary judgment that the CVRA

6    has been violated.  And in 2019, Judge Marra rules in our

7    favor, granting summary judgment.  The government failed to

8    confer with the victims, cites In re Dean, and some other

9    cases I'm citing here today, saying you had to confer with

10   the victims.  So that was in February of 2019.

11           And he says, now that I've determined that there's

12   been a violation of the CVRA, now I want to know what the

13   remedies are.  So he directs briefing on remedies.  So we

14   file briefs, Epstein files briefs, government files briefs.

15   I thought we had some great briefs in there.

16           And then Jeffrey Epstein was arrested in July of

17   2019 and committed suicide, apparently, in August of 2019.

18   And at that point, in September of 2019, Judge Marra says,

19   well, Epstein is dead.  So sorry, Professor Cassell, you've

20   been here 10 years, but I can't do anything for you.  Throws

21   the case out as moot.

22           We then go up to the Eleventh Circuit saying the

23   case is not moot, because we are also seeking invalidation

24   of the co-conspirator immunity provision in the NPA,

25   Ghislaine Maxwell, and others.  So the case isn't moot with

1    respect to that.

2                So we filed our brief on that.  And then the

3    government comes in, and says, that's all very interesting,

4    but we don't think the CVRA applied in this case because we

5    never filed charges.  This was a nonprosecution agreement.

6    There were some state proceedings, but there was never a

7    federal docket entry, never a federal charge in this case.

8                And, in fact, our CVRA case was opened up under

9    the court's civil docketing authority in Case No. 123, civil

10   number.

11               So they make that argument.  They win 2-1 in front

12   of the Eleventh Circuit.  We then get the hearing en banc,

13   and we lose 8-5 in the Eleventh Circuit en banc on that

14   issue.

15               Now, as you know from our briefs, the Eleventh

16   Circuit dropped footnotes in both the panel and the en banc

17   decision, saying, look, we're not reaching some other issues

18   here, like what would happen if the victims came in to an

19   ongoing criminal case, see In re Dean.

20               So the Eleventh Circuit was trying to avoid a

21   circuit split by saying, we're not disagreeing with what In

22   re Dean said.  We're just saying, whenever there's not a

23   federal charged filed, then you don't have a right to go

24   into court.

25               We go to the Supreme Court.  They deny the

1    circuit.  The key point of all that is the Eleventh Circuit

2    en banc, which the footnote cited in our brief, specifically

3    says we are not contradicting In re Dean.

4                 Of course, if you were to look at the

5    Eleventh Circuit precedent, you have to give more weight to

6    the Fifth Circuit precedent that's controlling here.

7                 THE COURT:  Let me ask you about setting aside the

8    provisions.  In this circuit, a plea agreement, I can reject

9    a plea agreement because it undermines the purposes of

10   sentencing or the guidelines or -- as long as I'm specific

11   in why I'm rejecting the plea agreement, I can do that.

12                But I don't understand that I can weigh in and say

13   specifically what I think it should be, then I will be

14   reversed, mandamused, reversed, and the case would be

15   reassigned from me.

16                And so when you say that I should look at this DPA

17   and say the senior management shouldn't be in here or amount

18   paid into the fund should be higher or whatever, why would I

19   look at this different than I would a plea agreement?

20                MR. CASSELL:  So we think you would look at it the

21   same way.  Let me see if I can unpack what the examination

22   would look like.  So remember, we have two objections that

23   are to the DPA.  One is procedural.  You could look at that

24   and say, well, my goodness, you haven't conferred with the

25   victims.  I'm not going to approve the agreement until you

1    have meaningful conferral with the victims.

2           And that wouldn't require you to second-guess

3    anything about any of the provisions in the DPA, the

4    procedural point.

5           We think, in addition, and I think Senator Cruz

6    also agrees with us on this point, that you have an ability

7    to substantively look at those provisions.  You could say

8    there's an exoneration provision for senior management.

9    That's very unusual.  I don't see any justification for

10   that.  I don't see any support for that.  I have questions

11   about that.  So I'm not going to approve the agreement based

12   on what I'm seeing here today.  I want some more information

13   on that.

14          Or another provision, the government has trumpeted

15   in its press release, we got 2.5 billion out of Boeing.

16   That's a misleading statement.  Boeing was obligated to pay

17   a majority of that money contractually, but the government

18   wanted to take credit for it.

19          You could look at that and say, this looks

20   misleading.  I have questions about it.  I'm rejecting the

21   agreement because it doesn't seem to be explained here

22   what's going on.

23          I think that would be the type of thing you would

24   do with a plea agreement.  Say, look, I have questions here.

25   I see that I'm stipulating to some facts or some things that

1    aren't covered.  Can you all go back and take a look at

2    those issues?

3            They might come back and say, well, here's the

4    same thing or a little more explanation.  So we're not

5    asking you to do a red line of the DPA or something like

6    that.  We're asking you to simply reject the provisions

7    we've identified for the reasons I've identified.

8            THE COURT:  So would I reject the provisions or

9    would I reject the agreement as a whole?

10           MR. CASSELL:  You would reject -- you could do

11   either.  I would think you would reject the agreement based

12   on the provisions that were problematic.

13           THE COURT:  Okay.

14           MR. CASSELL:  And then ask the parties to come

15   back in front of you.  By the way, if you did that, that

16   then, presumably, we would hope, as part of your order, you

17   would order the government to confer with the victims, and

18   then that would take care of the procedural piece as well.

19           THE COURT:  Right.  Right.

20           If I were to say, $500,000,000 into this victims'

21   fund -- I think $500,000,000 into this victim fund is

22   inadequate, it would then be improper for me to say -- would

23   it be improper for me to say, if I have an evidentiary

24   hearing and you were able to establish that $1,000,000 is

25   appropriate, would it be improper for me to say $500,000,000

1  is inadequate.  I'm going to set this aside, unless you put

2  in what the evidence shows should be $1,000,000.  Would that

3  be improper for me?

4          Would I be intervening into the plea negotiations?

5          The reason I bring that up is out of this

6  Division, the Fifth Circuit has reversed a mandamus of a

7  judge out of this very Division, several times, for

8  improperly interfering in what is outside the purview of the

9  judicial domain, that is, intruding on the Executive

10 Branch's decisions.

11         MR. CASSELL:  Right.  Well, I probably should take

12 a look at some of those cases, because I don't think Boeing

13 or the government has cited these.

14         THE COURT:  It's out of the Fort Worth Division,

15 so I am aware of them, and I try to be sensitive to them.

16         MR. CASSELL:  I think with not knowing the

17 specifics of those cases, it may be a situation where the

18 judge says, I want you to do 10 years, not five years.  I

19 think the Fifth Circuit then might properly say, well, wait

20 a minute --

21         THE COURT:  Right.

22         MR. CASSELL:  -- that's not really up to you.

23         But what is quite clear in the Fifth Circuit we

24 cited is you could look at five years.  My goodness, that's

25 too low.  I'm rejecting this agreement.  You all come back

 1    with something else.

 2              THE COURT:  I see.  Okay.

 3              MR. CASSELL:  It's that formulation we would ask

 4    you to adopt.

 5              THE COURT:  Okay.  Very good.

 6              Let me ask you another question while you're here.

 7    Explain to me your take on the In re Dean case, because the

 8    In re Dean case actually denies mandamus relief.

 9              And so the three elements -- they talk about the

10    three elements that you had to prove to get mandamus relief.

11    They don't address the first two elements because they

12    decide under the prudential element, the third element, that

13    under the unique circumstances of that fact pattern, they

14    were going to deny a mandamus writ.  So why don't you just

15    explain to me your take-away --

16              MR. CASSELL:  Sure.

17              THE COURT:  I mean, I've read the case.  I

18    understand the facts.

19              MR. CASSELL:  Yes.

20              THE COURT:  And I've read the underlying opinion.

21              MR. CASSELL:  Yes.

22              THE COURT:  Judge Rosenthal's opinion as well.

23              MR. CASSELL:  Yes.

24              THE COURT:  It's a very long, detailed opinion.

25              MR. CASSELL:  Sure.

1          THE COURT:  So explain to me what happened in that

2     opinion.

3          MR. CASSELL:  So again, there's going to be two

4     parts to my answer, a procedural part touching on the

5     mandamus issue, and then the substantive part, Judge

6     Rosenthal on remand.

7          THE COURT:  Let me stop you there.  I didn't read

8     any opinion she wrote on remand.

9          MR. CASSELL:  Right.

10         THE COURT:  I didn't know if you said -- I didn't

11    want you to think I read that.  I read her initial

12    opinion --

13         MR. CASSELL:  Yeah.

14         THE COURT:  -- that you appealed or that you

15    mandamused.

16         MR. CASSELL:  Right.

17         THE COURT:  And there was an intervening order,

18    and then Judge Elrod, Judge Smith, and someone else.

19         MR. CASSELL:  Yes.

20         THE COURT:  That's all that I've read.

21         MR. CASSELL:  Okay.  Well, I was there, so --

22         THE COURT:  Yeah.

23         MR. CASSELL:  -- so let me see if I can explain

24    how it unfolded, because we think it's obviously controlling

25    precedent here and an important precedent here.

1            So the government and a wealthy defendant cut a

2    deal, do it in the dark of night, and then they present it

3    to the judge.  Eventually, Judge -- I think it's Judge

4    Rosenthal at this point -- there was some reassignment

5    going on.

6            THE COURT:  Yes.

7            MR. CASSELL:  -- says, well, we think it had to be

8    kept secret for various reasons.

9            We go up to the Fifth Circuit on mandamus.  The

10   Fifth Circuit initially grants -- that's the initial order

11   that you were talking about -- grants a stay for proceedings

12   which is, in essence, granting the mandamus provision.

13           THE COURT:  For the 72 hours?  Because they have

14   to rule within 72 hours under the CVRA?

15           MR. CASSELL:  Right.  But as I recall they, by

16   agreement of the parties, extended the time period.

17           THE COURT:  Okay.

18           MR. CASSELL:  And where this becomes important is

19   that was a 2008 decision where, as a victims' attorney, I

20   was operating under the burdensome mandamus standard.

21           In 2015, Senator Feinstein, Senator Cruz and

22   others voted for an expansion of the CVRA to change the

23   mandamus provision and give victims ordinary appellate

24   review.

25           THE COURT:  Okay.

1          MR. CASSELL:  I think that's one thing that needs

2     to be taken off the table.  Today these families are

3     entitled to the same appellate protection as any other

4     litigant would have.

5          Back then we were working under mandamus which, as

6     you know, has the three prongs and it's difficult to

7     satisfy.

8          So the Fifth Circuit sends it back to Judge

9     Rosenthal.  Big, long, evidentiary hearing, 120-page

10    opinion, as Judge Rosenthal is famous for writing, rejecting

11    our argument that she would have done anything different if

12    there had been an opportunity to present to the judge.

13         In that case, we were arguing that there had been

14    no opportunity to be heard on the plea bargain before it was

15    accepted.  And so Judge Rosenthal said, well, you know, I've

16    looked at this, and here's some reasons why this is a good

17    outcome and so forth.

18         So that case, it's quite -- and the other thing

19    I'm sure you recall reading in the In re Dean decision, I

20    think it's the last paragraph, the Fifth Circuit says, we

21    are confident that the district court judge will figure out

22    a way to vindicate the rights of the victims.

23         And what happened in that case is the victims did

24    get a chance to come into court, did get a chance to present

25    to the judge, make the objections to the plea bargain so

```
 1    their rights were protected.

 2              We're asking you to do, in this case, the same

 3    thing that Judge Rosenthal did there to vindicate the rights

 4    of these families, but the right we're asking to have

 5    vindicated is a chance to talk to these prosecutors at a

 6    time when it's not just window dressing or meaningless

 7    discussion, when they can truly make a difference in the

 8    outcome of the case.

 9              And your Honor has the power to do that if you

10    simply do what Judge Marra did in 2013 in the Jeffrey

11    Epstein case.

12              THE COURT:  Okay.  And if I can just follow up on

13    that.  And so, just in terms of the posture of that case,

14    I'm just trying to understand in the Houston case, the

15    In re Dean case, which was the Texas City explosion --

16              MR. CASSELL:  Yes.

17              THE COURT:  -- BP?

18              MR. CASSELL:  BP.

19              THE COURT:  Yeah.  They had already reached a plea

20    agreement.  So the government reaches a plea agreement

21    because they asked to do that without conferring with the

22    victims in a sealed request.

23              MR. CASSELL:  Yes.

24              THE COURT:  That's granted.  They reached a plea

25    agreement with British Petroleum.  They reached the
```

 1   agreement with British Petroleum, then file it, then unseal

 2   it, and then provide the notice, and then you all get

 3   involved.

 4           MR. CASSELL:  Yes.

 5           THE COURT:  And the case ultimately gets assigned

 6   to Judge Rosenthal, and then she issues an order either

 7   saying they weren't victims or saying they were victims.

 8   But she would do the same thing, all that she says, you take

 9   it up to the circuit, the circuit says they're victims.  It

10   shouldn't be sealed.  200 is not too many to notify.

11           This is what Congress intended, even if it does

12   make bargaining harder.  In fact, the purpose is to make

13   bargaining harder.

14           MR. CASSELL:  Right.  Yes.

15           THE COURT:  And then they deny mandamus relief and

16   say they're confident that Judge Rosenthal will vindicate

17   the rights.  But they don't order the plea bargain agreement

18   to be set aside so that those victims could then meet with

19   the prosecutors and express their views on it.

20           Are you saying that that subsequently happened

21   with Judge Rosenthal on remand?

22           MR. CASSELL:  So I remember that there was a big

23   hearing that produced then a 120-page opinion about our

24   arguments and why, in Judge Rosenthal's view, they were not

25   sufficient to change the outcome.  So we were heard.  I

```
 1    argued to Judge Rosenthal on remand.

 2              And so my recollection is that our focus in that

 3    case was not on a conferral right.  Although, actually I

 4    think we were focusing more on the plea agreement, trying to

 5    get that set aside than we were on conferral, because we had

 6    a done plea deal in that case.

 7              THE COURT:  Right.  And that's what I was

 8    wondering in terms of how it applies to this case.  The

 9    Fifth Circuit didn't direct that the plea agreement be set

10    aside, at least in the opinion, that it specified in the

11    opinion.  It may have.  And what I'm saying is it could have

12    happened on remand.  It sounds like it didn't.

13              MR. CASSELL:  Right.

14              THE COURT:  And as it relates to this case, in

15    terms of how In re Dean would apply in this case, why would

16    I set the agreement aside consistent with what In re Dean

17    directed?

18              MR. CASSELL:  Right.  And the answer is because we

19    are asking for an opportunity to confer about an agreement

20    before it becomes finalized.

21              Whereas, in Dean, we were asking to have the

22    agreement itself set aside.  I think it's interesting, I

23    keep coming back to Judge Marra's decision because I think

24    it's the one that's on point and it discusses the very

25    question that you're asking right now.
```

1          And what Judge Marra said and, you know, frankly,

2     perhaps our arguments were more refined in 2013, my

3     arguments were better presented in 2013 than they were

4     in 2008.

5          In 2013 we said to the judge, look, the CVRA

6     promises these victims an opportunity to have reasonable --

7     a reasonable right to confer.

8          And that must be a meaningful right to confer.  So

9     if you say, come on in to the prosecutor's office, and it's

10    still a done deal, that's window dressing.  That's going to

11    add insult to injury.

12         The only way I can protect the right to

13    meaningfully confer is to set aside those provisions and

14    give the victims an opportunity to go in and convince the

15    prosecutors to do the right thing.

16         He cites In re Dean.  He actually cites one of

17    Judge Rosenthal's -- I can't remember if it was the earlier

18    one or later one.  So he was very much aware of the Fifth

19    Circuit precedent trying to align himself with what the

20    Fifth Circuit precedent required.

21         The other point to be made about the Fifth Circuit

22    is they were trying to clean up a mess.  They were trying to

23    clean up a violation of CVRA that had already occurred and

24    that the district judge had essentially ratified and they

25    had to step in on appeal and I think we're --

```
1              THE COURT:  We're in a similar posture here.  The

2    error really is mine, on top of the government's argument.

3              MR. CASSELL:  Here's the difference.  You are here

4    today and you can fix the problems.

5              THE COURT:  Right.  Right.  No, I understand.

6    But, I mean, we're here now because I didn't -- the irony of

7    all of this is that, in my Rule 11 notes, I always and have

8    always asked if there's been a notice under 3771 and an

9    objection under 3771.

10             MR. CASSELL:  Right.

11             THE COURT:  Because I was on the Senate staff when

12   this was all passed, so I knew coming in --

13             MR. CASSELL:  Right.

14             THE COURT:  -- to this appointment to do that.

15             But here there's no Rule 11.  I don't have that.

16             MR. CASSELL:  Yeah.

17             THE COURT:  I don't even take arraignments.  I

18   don't have a Rule 10 checklist.

19             MR. CASSELL:  Well, I hope you won't think I'm

20   pandering, but let's put the blame squarely where it

21   belongs.  It belongs on the Justice Department.  They should

22   have told you what was going on.  They concealed that

23   information and so here we are today.

24             THE COURT:  Right.  Right.  And all I'm saying is

25   I should be more -- the irony is I should be more cognizant
```

1    of it in this context, but I don't take this.  I don't get

2    deferred prosecution agreements.

3              MR. CASSELL:  Right.

4              THE COURT:  Which really hurt my feelings here.

5    When you wonder why, in footnote six, they wouldn't file in

6    the Fort Worth Division.  What division would be better?

7              MR. CASSELL:  The reputation of this Division

8    precedes itself.  That's clearly the highest quality of

9    justice.  And that's why my clients are very confident that

10   they're going to get a favorable outcome here shortly.

11             THE COURT:  Okay.  Just the last question, and

12   then we need to hear from the government and from Boeing,

13   but the last question I have is the senior management

14   argument.

15             So is it your take that the statement in the

16   statement of facts or the DPA, wherever it is, that says

17   that the senior management of Boeing, I would have to look

18   at the quote, but there's no evidence that senior

19   management -- this has persisted among the senior management

20   at Boeing, or whatever they said.

21             So your take on that is they've been immunized or

22   that the government has agreed to not prosecute them based

23   upon that line?

24             MR. CASSELL:  Essentially, yes.  But it's a very

25   unusual provision.  We've cited some commentators who said

1    they've never seen anything like this around the country.

2    So I don't want to overstate our case.

3              That's not an immunity provision.  I'm using the

4    term loosely.  It's not a provision that says, we are flatly

5    precluded from prosecuting senior management.  But you can

6    imagine what a jury trial would look like if they tried --

7    if a prosecutor tried to prosecute senior management.

8              Defense Exhibit 1 would be that statement and the

9    case would be over.  So it effectively prevented the

10   prosecution of senior management, which is why I'm sure

11   Boeing was pushing so hard to get that provision in there.

12             And why it's just so surprising that the

13   government would do that, without, as far as we understand

14   it, putting senior management under oath and asking them,

15   were you involved in this crime?

16             I mean, if they had done that, they said, well,

17   okay, that seems like a reasonable explanation, I suppose

18   you can do that.  But they just threw that in there, without

19   precedent and without investigation, and we think that

20   that's a provision that deserves careful scrutiny from this

21   Court.

22             THE COURT:  Last question, and I promise.  The

23   Supreme Court recently, at least twice this term, has

24   cautioned judges, district judges to not impose remedies in

25   cases where the statutory language does not authorize that.

 1           SB 8, the employment case announced last week or

 2    two weeks ago.

 3           MR. CASSELL:  Right.

 4           THE COURT:  It was a 6-3 decision.

 5           Is that admonition at play here as it relates

 6    to 3771?

 7           MR. CASSELL:  No, for a couple of reasons.  First,

 8    the CVRA itself directs you to ensure that victims' rights

 9    are respected.  And so the victims' right to confer was not

10    respected in this case.  Your Honor is obligated to enforce

11    that.  And the way you do that is by setting aside the

12    provisions in the DPA, reopening them.

13           By the way, here again, Judge Marra has looked at

14    that very question and reached the same conclusion that we

15    are arguing for.  The government made an argument similar to

16    what you just presented as a possibility and Judge Marra

17    rejected it.

18           One of the provisions he looked at, if I could

19    call your attention to it, it's 3771.  It's 3771(d)(5).  And

20    you notice there, there was a time limit of 14 days if a

21    victim's family is moving to reopen a sentencing or a plea,

22    14-day time limit.

23           But we're not moving to reopen a sentence,

24    obviously, and we're not moving to reopen a plea.  We're

25    trying to get Boeing to have to plead guilty or not guilty

1    in an arraignment.

2            So the 14 days doesn't apply.  I think the parties

3    really haven't contested that, but the implication there is,

4    okay, reopening of agreements is permitted.  And here's

5    someone we're going to have put a 14-day time limit on, and

6    the others we are not putting a time limit on.  That's

7    exactly what Judge Marra said, looking at this.  The CVRA

8    does envision this.

9            If you were to rule to the contrary, you would be

10   violating the CVRA.  You would be telling these families,

11   look, you didn't get a right to confer, but, hey, when we

12   wrote this thing, Congress wrote this thing back in 2004,

13   they didn't really want to have enforceable rights.

14           That was contrary to the very purpose of the CVRA.

15   It was designed to give family members like this enforceable

16   rights where judges like you could tell the prosecutors they

17   have to confer.  Any other conclusion guts the CVRA and

18   makes it meaningless.  Oh, we will be nice to crime victims

19   when it's convenient to everybody, but otherwise, don't

20   bother us.

21           So that's why we think that that line of precedent

22   from the U.S. Supreme Court is completely applicable.  The

23   CVRA itself, textually, makes very clear that these

24   families -- and another provision, by the way -- well, first

25   (c)(1) says the government has to make its best efforts to

1    enforce the rights during the investigation.

2            But the provision I was thinking of was (d)(3).

3    (d)(3), which is the enforcement provision that Congress put

4    in there.  "The rights described will be asserted in the

5    district court in which the defendant is being prosecuted."

6            So that's the Northern Division in the Northern

7    District of Texas.  And it says that the victims can file

8    motions and the Court takes up and decides them.  That's

9    what we've done here.  We've filed motions saying enforce

10   our right to confer.  That's properly in front of you under

11   the text of the CVRA.

12           We hope that you will grant our motion, set aside

13   the provisions that are preventing them from conferring and

14   give them an opportunity to convince the government to do

15   the appropriate thing here, which is hold Boeing criminally

16   accountable for its crimes.

17           THE COURT:  Okay.  Thank you.

18           MR. DUFFY:  Thank you, your Honor.  Good morning.

19   Jerrob Duffy for the United States.

20           Your Honor, the United States recognizes the

21   immeasurable losses suffered by the representatives of the

22   crash victims of Lion Air Flight 610 and Ethiopian Airlines

23   Flight 302.  Nothing will ever make up for those losses.

24           The discrete legal issue to be decided here, your

25   Honor, is whether the movants are crime victims under the

1    definition set forth in the CVRA with respect to the crime

2    charged in the information.

3           The crime charged is a violation of 18 U.S.C. 371,

4    conspiracy to defraud the United States.  Specifically, the

5    FAA AEG.  And your Honor, of course, heard the evidence in

6    the trial about a month ago.  I won't go over all the

7    evidence there but I will, in a moment, discuss some

8    of that.

9           For the reasons set forth in our brief and that I

10   will expand upon, the movants are not crime victims of the

11   crime charged under the terms of the statute because they

12   were not directly and proximately harmed by the charged

13   offense.

14          This does not mean that they are not victims of

15   the crashes or that, under a civil negligence, or some other

16   standard, that they did not suffer losses with respect to

17   the crashes.  They surely did.

18          But the criminal case charged in the information

19   and defined by the statements of facts set forth in the DPA

20   do not encompass all of the facts and circumstances that led

21   up to the crashes: the design of the planes, the issues

22   related to information about MCAS that was disclosed to the

23   FAA on multiple occasions by Boeing engineers, the role of

24   foreign regulators, of the design issues and equipment and

25   other failures related to the crashes.  They cannot, because

1    the government is and was constrained to investigate

2    potential criminal conduct using evidence that is reliable,

3    that can be admitted in federal court under the rules of

4    evidence, and be sponsored by federal prosecutors.

5         For any crime to be charged after these

6    determinations, the Attorney General and his designees must

7    then exercise prosecutorial diversion, whether such a

8    charge, even when they believe it can be proved with

9    admissible evidence beyond a reasonable doubt, should be

10   brought.

11        Here, the criminal case is much more narrow than

12   movants have argued.  In fact, the Court heard the

13   evidence -- almost all of the evidence set forth in the DPA.

14   The Court heard that evidence during the trial against

15   Mr. Forkner.  It took approximately three days.

16        The criminal case is defined by the charge set

17   forth in the information and is based on the facts as

18   admitted by Boeing and in the DPA statement of facts.

19        The criminal charge and facts that underpin that

20   charge do not establish that movants are crime victims under

21   the CVRA.

22        Further, your Honor, because the remedies sought

23   here by the movants are not available under the CVRA or were

24   not warranted, the motions should be denied.

25        Nonetheless, your Honor, as set forth in our

1    brief, the government apologizes for not meeting and

2    conferring with the crash victims' beneficiaries before

3    entering into the DPA, even though it did not have a legal

4    obligation to do so.

5         Even if such consultations would not have changed

6    the DPA, there is a chance that earlier consultation would

7    have provided these individuals with a chance to be heard

8    with respect to the case.

9         After the filing of these motions, the government

10   did meet with some of the movants on three occasions, the

11   third of which involved the Attorney General for the United

12   States.

13        The Department of Justice has committed and has

14   set forth in our filing to learn from this and other cases

15   when determining what revisions to its internal policies,

16   guidelines, and practices are warranted.

17        None of this, however, means that the DPA was

18   negotiated in violation of the CVRA.  It was not.  Under the

19   definition set forth in the CVRA, the movants are not crime

20   victims with respect to the charge, of 18 U.S.C. 371,

21   conspiracy to defraud the United States.

22        Your Honor, the government carefully investigated

23   and weighed the potential charges it could bring in this

24   case against Boeing and believed it could prove beyond a

25   reasonable doubt in federal court.

1          The evidence collected during the investigation

2     established, in the view of the prosecution, that only two

3     conspirators, the two who are described in the statement of

4     facts, were criminal participants in this conspiracy.

5          Let me reiterate that.  The government's evidence

6     was that only two conspirators were criminal participants in

7     the charged conspiracy.  Boeing Employee Number One, who's

8     been publicly identified by the United States in its

9     charging instrument as Mr. Forkner, and Boeing Employee

10    Number Two, another pilot who was, during most of the

11    charged conspiracy, more junior to Mr. Forkner, and who

12    later acceded to his -- the role of chief technical pilot.

13         Those individuals are described in the statement

14    of facts.  This is important for many reasons with respect

15    to the CVRA analysis.  Because the case, the criminal case,

16    the case that the United States believed, and ultimately did

17    bring in terms of the filed charged information was not and

18    did not encompass all of the events that have been publicly

19    described or that have been described by movants with

20    respect to the factors that led to the crashes.

21         Based on this assessment of the evidence, the

22    government prosecutors, supervisors, and senior officials

23    believe that the filed information, combined with the DPA,

24    was appropriate at the time this case was filed on

25    January 7th of 2021.  The government's position remains that

1    it was appropriate.

2              The government's litigation position has not

3    improved over the past 16 months.  As the Court well knows,

4    Mr. Forkner was acquitted on four counts of wire fraud, a

5    different charge, admittedly, than the charge set forth in

6    the information, but nonetheless involving almost all of the

7    same evidence.

8              Further, your Honor, with respect to the charged

9    offense, these two conspirators were relatively siloed

10   within Boeing.  They were not informed by others in Boeing

11   about the expansion of MCAS at the time the expansion

12   occurred before coming upon it in a simulator test in

13   approximately November of 2016.  They were not informed

14   internally.

15             They were not invited to the meetings that the

16   Court heard about with respect to Boeing engineers

17   describing and disclosing the expansion of MCAS to the

18   portion of the FAA that focuses on airworthiness and safety.

19             And other than the evidence that the Court heard

20   from Mr. Loffing, the government did not come across

21   credible evidence that Mr. Forkner or Boeing Employee Number

22   Two were provided affirmatively with information about the

23   expansion of MCAS or the other technical issues that later

24   came to light with respect to MCAS.

25             And these are important implications because, with

1    respect to the criminal conduct that the United States

2    believed it could prove beyond a reasonable doubt, it is

3    cabined by the facts it was able to gather and, your Honor,

4    that were set forth in the deferred prosecution agreement.

5           And now I would like to talk for a moment about

6    proximate cause as it relates to this.  One moment.  Your

7    Honor, to be considered a crime victim, a person or entity

8    must be directly and proximately harmed as a result of the

9    charged criminal offense.

10          These are two separate determinations.  As was

11   described earlier and set forth in the government's brief,

12   in Fisher the stated harm -- the Court held that stated harm

13   must be based on the crime charged.

14          And most importantly, we think, as cited in

15   Fisher, the Sixth Circuit In re McNulty described the

16   factual basement premise for how to arrive at this

17   determination.

18          Because, again, we are living in a criminal -- a

19   criminal case context.  A case where evidence has to be

20   collected in accordance with the rules and that the

21   prosecution can introduce into a criminal trial.

22          In In re McNulty, 597 F.3d at 351, the Court

23   described, "In making this determination we must, one, look

24   to the offense of the conviction based solely on facts

25   reflected in the jury verdict or admitted by the defendant;

1   and then, two, determine, based on those facts, whether any

2   person or persons were directly and proximately harmed as a

3   result of the commission of a federal offense."

4          That is the foundation for the analysis.  It's not

5   what could potentially be proven on a preponderance basis

6   using civil discovery standards.

7          The ultimate harm, and the Fisher Court explained

8   that the causal nexus must be not too attenuated, at

9   640 F.3d 648, note seven.  To consider whether it was a

10  direct causal connection, your Honor, the Fifth Circuit

11  explained in Fisher that the direct and proximate harm

12  language imposes dual requirements of fact -- of cause in

13  fact and foreseeability.

14         A person is directly harmed by the commission of a

15  federal offense where that offense is a but-for cause of the

16  harm.  And for proximate causation, your Honor, the Fifth

17  Circuit explained that foreseeability is part of the

18  analysis, but United States against Salinas, 918 F.3d at

19  466, set forth in the movants' brief for the proposition

20  that there could be multiple but-for causes.

21         In that case, Salinas -- it was a sentencing

22  enhancement, so it was only but-for causation -- there was

23  no proximate causation.  That was the alien-smuggling case

24  where an individual who was being -- in the back of a truck

25  had a heart attack when there was a high-speed chase.

1              But the Court went on to say, a proximate cause

2      inquiry would ask how directly each cause affected the final

3      outcome.  How directly.  So based on Fisher and Salinas, we

4      know that proximate cause incorporates both foreseeability

5      and directness of the causal connection between the charged

6      offense and the final outcome.

7              Further, as your Honor referenced in the BP

8      Products litigation, United States v. BP Products at 610 F.

9      Supp. 2d at 688, the Court said, "Proximate cause in a

10     criminal case presents a higher threshold for proof than

11     proximate cause in a civil tort case."

12             Your Honor, much was set forth in the discovery

13     motion of the movants with respect to all of the different

14     causal factors that they would bring to the table in terms

15     of establishing direct and proximate causation.

16             But we don't think that you have to go there.  In

17     part because, by starting with the foundation of this

18     criminal case, that foundation is more limited.  It's more

19     limited than was set forth in the letter from the amicus

20     that was filed, and it's more limited than was set forth in

21     the movants' filing.

22             Numerous factors would have to be considered in

23     order to ultimately get to a direct and proximate causation

24     finding here.

25             And ultimately, the idea that by creating or

 1   providing information and then somebody else sort of

 2   insinuating the Court, or even movants, into the decision as

 3   to what crimes could be charged really runs afoul of the

 4   provision in the CVRA that the discretion of the Attorney

 5   General should not be undermined.

 6         And I'll speak a little bit about the In re Wild

 7   decision, the Eleventh Circuit's en banc decision in a

 8   moment in response to a question the Court had, but we

 9   disagree with the import of that case.

10         Our view is that In re: Wild called into question

11   everything that Judge Marra did.  Because In re Wild

12   ultimately determined that the ancillary proceeding that was

13   the vehicle leading to all of those rulings was ultimately

14   not appropriate.

15         And so let me just speak a little bit about the

16   causal factors, not because the United States is here to say

17   these are all the causal factors and here's all the

18   evidence.

19         Rather, there are issues that came up at the

20   Forkner trial.  There are issues that have been referenced

21   in the government's filings with respect to the crash report

22   from one of the crashes.  The other crash report is an

23   interim crash report.  And also, expert filings that were

24   made by Mr. Forkner in that criminal case.

25         But they relate to, ultimately, how remoteness

1    would be established here because we know that the criminal

2    conduct was focused on the FAA AEG, not all of the other

3    disclosures that took place with respect to the expansion of

4    MCAS.  We know as well that the two conspirators here were

5    not informed about the issues that led to those meetings

6    with the FAA.

7              We also know that the lead person at the FAA AEG

8    who was most responsible for making the training

9    determination was invited to some of those meetings and that

10   she, you know, for whatever reason, did not go.  Those go to

11   the scope of the conspiracy, your Honor.

12             With regard to -- but they also go to how much was

13   known and foreseeable to the two individuals that form the

14   basis of the conspiracy.  Make no mistake, Boeing is

15   vicariously liable for the conduct of the conspirators, but

16   it has to be conspirators that act with criminal intent, not

17   with respect to all other employees at Boeing that had

18   nothing to do with the conspiracy.

19             Issues related to the conduct aimed at the

20   training levels for U.S.-based airlines, as opposed to

21   foreign airlines, communications with Boeing persons at

22   foreign-based airlines and foreign regulators, issues with

23   respect to the role of foreign regulators.

24             Issues related to the creation and design of the

25   737 MAX aircraft, to include product design of MCAS having

1    only one AOA sensor operating at a time.  Its susceptibility

2    to failure.

3          The reliance on a single sensor to control and

4    engage MCAS, and the manner in which MCAS engaged and

5    reengaged.  None of those issues, we submit, our evidence

6    established the conspirators were aware of.

7          Issues related to the immediately preceding Lion

8    Air flight prior to the crash flight, as referenced in the

9    crash report cited by movants, where the AOA sensor

10   improperly caused the MCAS system to engage and how that

11   crew landed that plane without flight simulator training.

12         Issues related to what flight simulator training

13   would actually have involved.  Issues related to the service

14   of the bad AOA sensor on the first crash by a third-party

15   vendor.  Issues related to the approval process.  And so on,

16   your Honor.

17         I point these out -- and there are others -- I

18   point these out because the factual inquiry -- the factual

19   inquiry about the relationship between the crime charged in

20   this case and the ultimate outcome is substantial and it

21   involves so many issues, ultimately, even the movants'

22   construction took approximately 336 paragraphs to list out.

23         Now, we at the DOJ are not here to represent --

24   the Department of Justice -- that all of these, these are

25   the facts that occurred.  We do not accede to the accuracy

1    of these crash reports.  We do not necessarily embrace the

2    underlying facts that support these causal factors.

3            What we have done during the course of our

4    investigation is we have collected information, including

5    the crash reports, that show so many different factors that

6    create a separateness, that create a remoteness with respect

7    to the crime charged and the crashes.

8            We don't think that you have to engage in what I

9    think Judge Marra did, which is almost 10 years of

10   litigation.  We don't think you have to do that because you

11   heard the evidence in the Forkner trial.

12           And the evidence in the Forkner trial dovetails

13   almost precisely, if not precisely, with the statement of

14   facts set forth in the DPA.

15           Now, I would like to address a couple issues with

16   respect to the DPA.  I think that your Honor asked a

17   question or two about that.

18           Your Honor, the DPA does not work in the way that

19   the movants in the amicus claim.  There is no liability

20   waiver for any individual.  In fact, the DPA was filed in

21   January of last year and Mr. Forkner was indicted almost 10

22   months later.  There is no -- as set forth in paragraph

23   20(b) there is no liability waiver for any individual.

24           Further, the release from liability for Boeing is

25   based on the conduct as set forth in the DPA, the statement

1   of facts, not for some broad array of potential federal

2   crimes that movants suggest.

3           It was more limited.  However, the government did

4   not come across evidence that it believed to be prosecutable

5   during the course of its investigation to support those

6   broad array of federal crimes.

7           The statements in the DPA concerning the lack of

8   involvement in the criminal conspiracy by high-level

9   corporate officials, that's specifically at paragraph 4(h).

10  That goes to the facts and circumstances related to the

11  guidelines calculation.

12          We set that out in our DPAs regularly:  Here are

13  considerations that we considered with respect to our

14  determination as to whether or not the DPA is an appropriate

15  outcome and the terms of the DPA.  And moreover, they are

16  accurate.

17          With respect to the crime charged, we did not find

18  evidence of high-level involvement, of high-level corporate

19  officials in the criminal conduct.  Movants' assertions in

20  this regard are incorrect.

21          Now, your Honor, I would like to address a couple

22  of the issues with respect to the other motions, but if you

23  have any questions on the CVRA motion itself, I want to

24  obviously --

25          THE COURT:  Go ahead and finish it out.

1          MR. DUFFY:  I would like to go ahead and talk

2     about In re Dean.  You asked questions about In re Dean.

3     In re Dean is different in this case in multiple ways.

4          First, the government and the defendant in

5     In re Dean both agree that the victims in that case were, in

6     fact, crime victims of the crime charged.

7          That was acknowledged and that was assumed.  The

8     government filed a motion to ask authority for delayed

9     notification.  The court initially granted it.  The Court of

10    Appeals ultimately determined that was improvident and

11    should not be granted.

12         The issue was not before the district court or the

13    Court of Appeals as to whether or not the crime victims --

14    excuse me, the movants in that case were, in fact, crime

15    victims.

16         And with respect to the concept here that the

17    Court or the movants would second-guess the government in

18    terms of its charging decision, we understand that there's

19    strong views.  You know, we understand that too.

20         But the prosecutorial discretion in terms of

21    whether or not to bring a charge, that rests with the United

22    States.  And the United States is charged to take care of

23    the laws that are faithfully executed.

24         I would like to address the ombudsman issue, your

25    Honor.  First, the government apologizes to the movants and

1    other representatives of the crash victims that the

2    Department of Justice's ombudsman, in February 2020,

3    conveyed inaccurate information.  That should have been

4    handled differently.

5         There was no deception.  The construction of that

6    communication is not accurate.  Individuals at the victim

7    rights ombudsman's office at the Department of Justice

8    reached out to others in the department.

9         They were not provided with accurate information

10   in order to make an accurate response to the representatives

11   of the crash victims.

12        That should have been handled differently.  They

13   should have been provided with accurate information.  When

14   the Department of Justice speaks about a matter, it should

15   speak accurately.

16        Often we don't comment on a nonpublic

17   investigations for various reasons.  In this case, however,

18   the crash victims were not crime victims under the CVRA.

19   But nonetheless, when a response was provided, they should

20   have been provided with an accurate response, and for that,

21   we apologize.  There was no intention to mislead anybody.

22        Your Honor, with regard to the motion for

23   supervisory authority over the DPA, I think that was the one

24   that your Honor asked several questions about a few moments

25   ago.

1           Let me start here by saying, in our view, the

2    crime victims do not have standing to do that, because

3    they -- excuse me, the movants do not have standing because

4    they are not crime victims under the CVRA.

5           But, moreover, we acknowledge that the Court

6    could, in its discretion, choose not to accept the DPA.  We

7    acknowledge that.  We don't think that that's warranted

8    under the facts of this case.

9           We recognize, as the Court just did, that on

10   January 24th, at docket entry 13, the Court made a finding

11   that exclusion of time under the Speedy Trial Act would be

12   appropriate, but we also -- you know, but we also recognize

13   that, you know, a deferred prosecution agreement is

14   different than a filed charge.

15          As the D.C. Circuit explained in Fokker -- and I

16   will talk about Fokker in a moment for a different

17   proposition -- but a deferred prosecution agreement is sort

18   of -- it's a middle ground.

19          It's a middle ground between a filed charge with a

20   guilty plea, as happened in In re Dean, or the BP case with

21   the explosion there, or a nonprosecution agreement or a

22   declaration.

23          And there are reasons and justifications for

24   engaging in DPA.  There's a long practice of doing that and

25   it allows -- you know, it allows sort of a middle ground.

```
 1   It allows the opportunity for a corporation or an individual

 2   to show their good conduct.  And ultimately, at the

 3   conclusion of the DPA, if its terms are successfully agreed

 4   to, to successfully accomplish, I should say, for a

 5   dismissal of the crime charged.

 6            That is what the United States intends to do here,

 7   so long as Boeing continues to fulfill its obligations under

 8   the DPA.  And thus far, Boeing has fulfilled its obligations

 9   under the DPA.

10            Those obligations are substantial.  The payments,

11   your Honor -- your Honor asked a question about the

12   payments, and I do want to address that for a moment.

13            The MVRA, which is not specifically at issue here,

14   because there was not a filed charge and there was not a

15   conviction, the MVRA does authorize payments or restitution

16   payments to categories or persons or entities who are not

17   crime victims under the definition of the statute.  If those

18   payments are agreed to by the parties, the Court, the

19   statute says, shall order that they take place.

20            That was the provision that was modeled here in

21   terms of the DPA.  It was not drawn out of whole cloth.

22   There was a precedent for doing that in the Takata airbag

23   case, as was referenced in the government's filing.

24            And the payments with respect to the movants and

25   the crash victims, as well as with respect to the airline
```

1    customers of Boeing, those are not payments that are made to

2    crime victims under the CVRA.  Those are payments that we

3    agreed to contractually with respect to Boeing.

4          As we've said earlier, had we to do this over, we

5    would have consulted with the crash victims at an earlier

6    stage.  But nonetheless, that consultation was not -- you

7    know, was not required under the CVRA.

8          Your Honor, with respect to your supervisory

9    authority over the DPA, we would ask you to look at Fokker

10   and HSBC.  We think the Second Circuit's decision in HSBC

11   and the D.C. Circuit's decision in Fokker instructs that the

12   Court certainly has authority, but it's in limited

13   circumstances.

14         It's in circumstances where -- not necessarily

15   where the Court is of the view that there has been -- you

16   know, the terms are too lenient.  Specifically, the issue in

17   Fokker, or ultimately, that the Court may want to exercise

18   additional supervision because it's concerned that in the

19   future there might be some sort of misconduct or problem

20   that might arise.  And so that was the concern that

21   underpinned the district court's decision in HSBC.

22         The Court in HSBC said the government -- the

23   district court has no freestanding supervisory power to

24   monitor the implementation of a DPA, but there might be, in

25   certain circumstances, where that authority would be

1   appropriate.

2           We would object -- if the Court were to exercise

3   authority or ultimately determine that, for whatever reason,

4   it was going to reject the DPA here, we would contend that

5   the Court would not have authority to specify the terms of

6   the DPA or any further agreement that might be reached by

7   the parties.

8           This is not a plea agreement.  So we think that

9   that's different than a couple of cases that your Honor

10   filed.  Because a DPA, as I said a moment ago, is a middle

11   ground.  It's a contractual agreement that certainly is

12   filed with the Court, but it's not the same as a Rule 11

13   inquiry.  It's not the same types of inquiry that might take

14   place with respect to a plea.

15           And ultimately, in Fokker Services, the Court said

16   that a district court lacks authority to disapprove a DPA

17   under the Speedy Trial Act on the grounds that the

18   prosecution has been too lenient in its exercise of its

19   charging discretion.

20           Here, we submit that we have not been too lenient.

21   I would ask the Court to come back for a moment to the

22   evidence that it heard at the Forkner trial.  I'm sure the

23   Court has its view of that evidence.  Certainly, the jury

24   did.

25           Again, that was a different charge, with different

1    elements, a different offense.  But nonetheless, the

2    evidence was very similar.  We submit to you that it was a

3    much more narrow case that supported the charge in the

4    information here that has been submitted by either amicus or

5    the movants.

6              Your Honor, with respect to the motion on

7    arraignment -- for an arraignment or hearing conditions of

8    release, we respectfully submit that the movants are

9    misreading the rule.

10             We agree that if an arraignment occurs, then it

11   must be in open court.  But in many contexts an arraignment

12   might not occur, such as here, where the government has an

13   intention to move to dismiss the information, assuming

14   certain conditions are met.

15             And that is, as we've said, both in our filings

16   and today, that we do intend to do that.  Again, assuming

17   those conditions are met.

18             The contention that there have been some

19   additional conditions of supervised release or some

20   condition of supervised release, we submit, is, one, there

21   isn't standing to make that argument at this point.

22             It doesn't mean that a member of the public -- the

23   Court couldn't hear from a member of the public with respect

24   to what conditions should be appropriate, but we submit that

25   there are not additional conditions that are necessary.

1    That Boeing has, in a host of ways, met its obligations

2    under the DPA.

3         Those obligations are onerous.  They include

4    enhanced reporting requirements, the payments that we have

5    suggested, and certain changes that are referenced in the

6    DPA that the company has undertaken.

7         Not to mention the benefits, including, you know,

8    with respect to the significant litigation that movants and

9    other crash victims are engaged in, other third parties are

10   engaged in with Boeing that relates to the crashes, and any

11   concessions or factual assertions that were made in the DPA

12   that Boeing is not allowed, under the terms of the DPA, to

13   contradict.

14        In sum, in our view, there are instances, as

15   Boeing cited in its filing, and other instances where, in

16   the context of a DPA, a court does not hold an arraignment.

17   And in our view, it's unnecessary in this case.  We

18   certainly understand the Court could disagree, but we just

19   don't see it as necessary.

20        It's not unlike -- well, there's other types of

21   cases involving a cooperator or other things where certain

22   types of hearings and proceedings might be delayed so the

23   cooperator can undertake the cooperation before formal court

24   proceedings begin.

25        We suggest the Court's order that I just

1    referenced makes that finding.  You know, despite not having

2    the benefit of all the briefings that led to today's motion

3    hearing, the Court did make a finding that a delay of

4    approximately three and a half years, you know, would be

5    appropriate based on the submissions of the government and

6    Boeing.

7               Your Honor, finally, I will turn to the discovery

8    motion for a moment.  We disagree with the movants'

9    construction of the Doe cases in Judge Marra's opinion,

10   Judge Marra's decision, with respect to the order of

11   discovery.  First of all, the CVRA does not provide for a

12   discovery method or a discovery right.

13              The CVRA is very specific about various

14   mechanisms.  It has remedies.  As the Court referenced,

15   there's been two recent Supreme Court opinions where the

16   Court has said district courts should be, you know, very

17   careful about constructing remedies when a statute has

18   otherwise, you know, set forth remedies.

19              The In re Wild decision talked about that at

20   length with respect to the remedies that are set forth in

21   the CVRA.  But most importantly, your Honor, in that case,

22   factually, the United States in that case agreed to provide

23   discovery.

24              The United States, after initially objecting,

25   ultimately agreed.  And that issue was not fully litigated.

1    And in our view, the order with respect to discovery in that

2    case was essentially adopting an agreement or a concession

3    that was ultimately made.

4            We don't think that there's precedent for the type

5    of discovery -- precedent, in this circuit or otherwise, to

6    order the type of discovery that's being requested here, or

7    disclosure.

8            But I note that, I think it ultimately -- a number

9    of the requests here really come down to some of the same

10   issues that the Eleventh Circuit grappled with in

11   In re Wild.  And your Honor has said you read that case very

12   carefully, so I'm not providing you with anything new.

13           But in response to counsel's arguments there, the

14   Court said, look, the CVRA rights are, you know, subject to

15   judicial enforcement.

16           But the problem is, is that if you try to go to

17   what the government could have proved or what the government

18   could have charged or what crimes the government might be

19   able to charge, the problem there becomes, what is the

20   limiting principle?

21           And ultimately, you're rubbing up against the

22   government's prosecutorial discretion.  And so I come back

23   to In re Dean.  I think In re Dean is obviously an important

24   case for the Court's determination, but the difference

25   between what's being attempted here, and what was sought in

1    In re Dean, is not consultation or notice when the

2    government, and ultimately the defendant, agreed that the

3    movants or crime victims here, it's our concerted view that

4    our criminal case, the case we were able to bring, we were

5    able to prove beyond a reasonable doubt, was limited.  It

6    was limited to the facts I've just referenced.

7          And to create a process where ultimately there's

8    judicial enforcement and your Honor says, well, you know,

9    you really need to consider additional charges here.  That

10   not only usurps, you know, the role of the district court,

11   but of the prosecution in its determination as to what is an

12   appropriate charge.

13         And the Court of Appeals in In re Wild said,

14   that's actually not -- that's outside the ambit of the CVRA.

15   That's not what the CVRA is designed to do.  It's not

16   designed to get the Court involved in a determination as to

17   what crimes the government could bring or should bring.

18         And ultimately, we respectfully submit, that is

19   what is being sought here.  So for the reasons referenced in

20   our brief, and that I've expanded on here, we respectfully

21   request that the Court deny the four pending motions.  I

22   would be happy to address any questions.

23         THE COURT:  Let me just ask you a few questions.

24   If I were to determine that they were crime victims under

25   the statute, then the government would have violated at

1    least those provisions of the CVRA that require the sort of

2    consultation before the agreement is consummated; is that

3    true?

4              MR. DUFFY:  Your Honor, I respectfully submit it

5    would depend how you determined we violated them.  If we go

6    into the In re Dean case, for example, and In re Dean, I

7    want to say, obviously, there is a chicken and egg, but in

8    In re Dean, there's an understanding on the part of the

9    government, because it goes into court requests that there's

10   delayed notifications, there's understanding that the

11   folks -- that they're crime victims, okay?

12             So the question I think you'd have to ask, if you

13   were going to go down that road is, at what point does -- at

14   what point do you determine that we determined that there

15   were crime victims?

16             THE COURT:  Right.

17             MR. DUFFY:  That's the real problem.  That's the

18   issue, the discussion that the In re Wild judges had.  There

19   was quite a bit of back-and-forth on just that issue.

20             We respectfully submit that the Fifth Circuit

21   didn't reach that.  They didn't consider that.  I mean, it

22   took almost 100 pages of -- at least in my printout, it's

23   100 pages -- of opinions in the In re Wild decision just to

24   address that so that all of the judges could be heard.

25             I submit to you, Judge, that that would be

```
1    really -- that's incredibly difficult to do.  That's why

2    courts haven't done it, because what that requires you to do

3    is say, at what point did you determine they were crime

4    victims?

5           Now, if we came forward and said, well, we

6    determined they were crime victims at X period of time and

7    we want to ask the judge or we want to take some decision

8    that is contrary to the CVRA, then we understand that.

9    That's basically what happened, for the most part, in

10   In re Dean.

11          Here, you would have to -- I submit you'd have to

12   go to the issue of, okay, it's like, when did you know that?

13   What did you know, and when did you know it?

14          So we obviously have the moment of filing.  Of

15   course, the Court could say, well, you know, at the moment

16   of filing --

17          THE COURT:  Well, let me just stop you there.  So

18   in your mind, though, it is not what I decide today.  In

19   your mind it is, you could have -- if I were to determine

20   they were crime victims, that would not answer the question

21   in your mind.

22          The real question is, did you, in advance, make a

23   good-faith, honest mistake, in my view?  If I were to go

24   this way, that's what I would be saying about whether or not

25   they were crime victims.
```

```
 1              And therefore, if you made a good-faith, honest
 2    but, in my view, erroneous mistake, if I were to go that
 3    way, you would not have violated the CVRA, those provisions
 4    that are required in advance?
 5              MR. DUFFY:  Well, I'm not -- I'm not saying that
 6    precisely.  I think that sort of goes to prospective and
 7    sort of looking back, I think that's how counsel sort of
 8    constructed it a moment ago.
 9              What I am saying is we would, you know -- the
10    problem with coming to that observation, your Honor, is sort
11    of -- is saying, okay, so at what point was that?
12              Because if you're talking about a violation of
13    CVRA, what does that basically mean?
14              Does it mean when we filed the information on
15    January 7th of last year, or was it at some prior time, when
16    we were, you know, doing negotiations, so on and so forth?
17              But the issue, I think, then requires, what about
18    our evidence?  What did our evidence show?  You know, what
19    was the evidence when we collected it?
20              I think that's really what movants are getting at.
21    I think that's what they want to get at.  They want to know
22    what our evidence was so they can make exactly that claim.
23              I don't know if the request by movants have
24    anything to do with civil litigation, but what it does seem
25    is that it's to expand the concepts of when or the time
```

1    period of that violation.

2           So I think that it's not -- it's a very

3    complicated question because, as we've said, as the Court

4    has seen, you've seen our evidence, most of it, and you've

5    seen what we stipulated to in the DPA.

6           And so I think we'd have to -- you know, we have

7    to hear from you what your view was of that, and then we

8    would have to respond.  We can do so in good faith, but we

9    try to, you know, figure out our best way forward.

10          THE COURT:  Let me just ask you this, try to put

11   it this way, then.  Were you required at some point, when

12   you were zeroing in on what you were going to do in this

13   case, before you had consummated, obviously, but you were

14   zeroing in, were you required to consider what Judge

15   Higginbotham wrote in In re Fisher, to imagine the world in

16   which Boeing and Forkner and his colleague did not act in

17   the way they did.

18          And then determine whether, had they not done

19   that, these individuals would have lost their lives?

20          At some point, but before you initiated this

21   proceeding, were you required to do that?

22          MR. DUFFY:  I believe -- I believe that we were.

23   I think that, you know, we are in the Fifth Circuit, and we

24   adhere to the Court's ruling in Fisher.

25          The reason, though, that I went through, not all

1    of them, but a litany of some of the issues that led to

2    these crashes.

3              THE COURT:  Right.

4              MR. DUFFY:  Investigations in connection with one

5    of the two, they're still going on.

6              THE COURT:  And I understand that.

7              MR. DUFFY:  Yeah.

8              THE COURT:  Let me just ask you as it relates to

9    that, because in the stipulated statement of facts, the

10   statement of facts say that MCAS activated during the flight

11   and may have played a role in the crash.

12             MR. DUFFY:  Yes, your Honor.  MCAS -- and your

13   Honor heard, and I saw you pay close attention to when

14   Mr. Loffing described some of the causal factors that led to

15   the crashes, MCAS playing a role in the crash is not the

16   same as the training requirements for U.S.-based airlines

17   and U.S.-based pilots --

18             THE COURT:  And the forum.  Lack of it for the

19   forum, I understand --

20             MR. DUFFY:  Exactly.  And when you say "MCAS,"

21   there are so many different issues related to MCAS.  And,

22   you know, we're not Boeing.  We're not experts at this.  But

23   what I can say is there's so many different problems,

24   including the single sensor --

25             THE COURT:  Right.

```
1            MR. DUFFY:  -- the fact that this particular

2   sensor was broken.  But also, and I think most importantly

3   for your Honor's consideration for but-for and proximate

4   causation, for both, the facts, as referenced in the crash

5   reports -- which again, we're not sponsoring those facts --

6   but the fact the issues that the immediately preceding

7   flight, the immediately preceding flight had more or less

8   the same thing happen.

9            And that immediately preceding flight with the

10  faulty AOA sensor, those pilots were able to land that

11  plane.  And then it wasn't reported, that problem,

12  adequately.  It wasn't serviced adequately.  And those --

13  and those, apparently, again -- all apparently, because, you

14  know, we, the government, are not trying to sponsor or

15  represent those facts, but those kinds of things are breaks

16  in the causal chain.  They just, they have to.

17            I want to come back just for a moment, if I may,

18  just to your question, your Honor, In re McNulty, which

19  again, was one of the 2010-era cases that Judge

20  Higginbotham, and the Fifth Circuit looked to in the Fisher

21  decision.  And again, that's at 597 F.3d 344, but

22  specifically at page 351.

23            They give a few examples of when an individual

24  might have been harmed, directly and proximately harmed in

25  commission of an offense that are close temporally or
```

1    proximately to the crime charged.

2              One example that's provided on that page was a

3    bank robbery, where an individual was inside the bank -- or

4    attempted bank robbery, and a shotgun was pointed in the

5    individual's face, approximately six feet away.  And the

6    individual claimed, you know, restitution under that.  And

7    the Court in that case, you know, approved that.

8              Another example was another bank robbery where, in

9    the course of the bank robbery, in the getaway car, the

10   individual crashed into a police vehicle and damaged a third

11   party's property in the course of the commission of the

12   offense.

13             And the court in that case indicated that, no,

14   those are crime victims as well, because it was close -- it

15   was close -- it was during the commission of the offense, so

16   it was close in time.

17             And I think, you know, to come back to your point,

18   in Fisher, you know, there was, you know, a competitor

19   contractor -- it was Mr. Meacham's case -- competitive

20   contractor.

21             You know, significant sums had been provided by

22   the competitor, Mr. Fisher.  He ultimately did not -- was

23   not awarded the contract.

24             It's fairly clear that there was a corrupt process

25   involved in the contract by the defendant, and that there

1    was a causal relationship, some causal relationship between

2    the corrupt process and the fact that the individual,

3    Mr. Fisher, had not been awarded the contract.

4         But nonetheless, the Fifth Circuit said, no,

5    that's not enough.  That's too remote.  Too remote because

6    it's not -- it does not go to the facts, you know, reflected

7    in the jury verdict or admitted by the defendant, and it's

8    not a direct and proximate harm.

9         THE COURT:  Well, Fisher didn't prove his status I

10   guess is a way to say it, because his complaint was that the

11   conspiracy was concealed.  It wasn't the conspiracy, but

12   that it was concealed, but that wasn't the charged crime.

13   The charged crime was conspiracy.

14        MR. DUFFY:  Right.

15        THE COURT:  Not concealing conspiracy.  And so,

16   the Circuit said that he did not -- I assume Judge Lynn --

17   said he did not reach this status because, had it been

18   known, he wouldn't have bid at all, because he wouldn't bid

19   in a process that is rigged by way of an illegal conspiracy

20   against him.

21        MR. DUFFY:  Right.

22        THE COURT:  And so what I'm wondering here is,

23   though, as it relates to the stipulated facts in paragraphs

24   49 and 53, that it appears to be the case that, in these two

25   airline crashes, MCAS activated.

 1           And MCAS, I'm sorry I don't know the technical

 2   term, but the nose of the plane was pushed down so that it

 3   plummets.  And so why isn't that alone enough to conclude

 4   that they would be crime victims based upon the stipulated

 5   facts here, even if another pilot might have been, you know,

 6   a Top Gun graduate and can maneuver out of something like

 7   that?

 8           MR. DUFFY:  That doesn't get -- that doesn't get

 9   to direct or proximate cause.  Specifically, those focus on

10   proximate cause.  Because we know that proximate cause is

11   not just foreseeability, it is, as the Fifth Circuit said in

12   Salinas, it's proximate cause incurred.  That's how directly

13   each cause affected the final outcome.

14           And the crash reports, for example, alone have

15   hundreds of pages of causes.  They do.  And what we know

16   from our -- from the criminal case here and, again, you have

17   to look at, again, the stipulated facts -- but the

18   aspects -- the problematic aspects of MCAS that later became

19   known were not known to Mr. Forkner.  They were not known to

20   Boeing Individual Employee Number Two.

21           In fact, the key chat, the text message chat,

22   which I'm sure the Court remembers it, "I lied to regulators

23   unknowingly."  And the next line, or line -- two lines later

24   is, "Why are we just learning about this now?"

25           And we know that there were disclosures to the FAA

1    by Boeing employees about the technical aspects of

2    substantial disclosures on multiple occasions.  We know that

3    those disclosures took place.  We know --

4              And so, unlike the claims of some, you know, it

5    was not a necessary part of the conspiracy that everybody at

6    Boeing say nothing about MCAS, you know, to the FAA.

7              We also, with respect to the remoteness, we

8    also -- so there's a foreseeability issue there with respect

9    to the conspirators.  I don't think -- one of the key things

10   here is to not conflate what everybody at Boeing knew with

11   what the conspirators knew.

12             That's a key part of this Court's analysis.  The

13   Court's heard the evidence, saw the evidence of that.  It's

14   relatively limited.  That's a key underpin here, I think, to

15   your decision.

16             Another component is that there were -- the

17   conduct -- the focus of the conduct here was to the FAA AEG.

18   The congressional report, cited again in the Forkner case,

19   the congressional report indicates that, you know, contrary

20   to the movants' claims, that the FAA AEG did not have

21   control over what foreign regulators or foreign airlines did

22   with respect to training.  The conduct, again --

23             As you go through the causal factors, and the MCAS

24   itself had product design issues.  I don't know if I want to

25   go so far as to say product design flaws -- others might say

1    that -- but there are significant product design issues that

2    are raised here, not known to the conspirators.  Not known.

3          So when you combine those with the fact that, in

4    the immediately preceding flight, when it did improperly

5    engage, that crew was apparently able to land the plane, it

6    does go to but-for causation, as well as proximate

7    causation.

8          THE COURT:  Let me ask you this.  In terms of

9    making this decision, is it proper that I would consider the

10   statement of facts?

11         In other words, I'm not limited to simply the

12   information that you have filed.  Would it be proper for me

13   to consider that, as well as consider the statement of facts

14   that you all have filed?

15         MR. DUFFY:  Yes, your Honor.  And we think that's

16   exactly what the In re McNulty case said as cited by -- I'm

17   sorry.

18         THE COURT:  No.  No.  And just if I may follow up

19   on that, did you have an opportunity to read your

20   colleague's citation to the D.C. Circuit opinion In re de

21   Henriquez?

22         MR. DUFFY:  Yes.

23         THE COURT:  And so as it relates to that, then, do

24   you feel like, at least in the D.C. Circuit, that they are

25   permitting the district judge to consider evidence outside

 1    those kinds of documents?

 2            MR. DUFFY:  A couple things about that case.  One,

 3    first, we think that case was incorrectly decided.

 4            THE COURT:  By the D.C. Circuit?

 5            MR. DUFFY:  By the D.C. Circuit.  We do.

 6            We also think that was a different type of case.

 7    It was a drug conspiracy where there was an alleged murder.

 8            THE COURT:  Right.

 9            MR. DUFFY:  And then, you know, there was a

10    different concept of foreseeability in that context.  It was

11    a paramilitary organization in Colombia.  And, you know, the

12    sort of the head, I don't want to call it anti-paramilitary

13    organization, but somebody who's ultimately -- you know, who

14    was murdered.

15            In that case, the Court of Appeals did not say

16    that the claimed conduct was, in fact, a crime victim.  They

17    said that the district court should essentially consider the

18    statement to be provided.  And then consider that in the

19    context of the crime charged and the factual basis that's

20    set forth.

21            THE COURT:  And I guess my question to you -- I

22    only read the opinion.  So I didn't look at any of the

23    briefs or --

24            MR. DUFFY:  Yeah.

25            THE COURT:  -- or any of the evidence submitted

1    with the briefs -- but the D.C. Circuit reversed, directed

2    the district court to consider, as you say, whether they

3    were crime victims.

4           And the D.C. Circuit said the question is whether

5    the murder bears the requisite connection to the overall

6    conspiracy.

7           So my question to you is, why did they have to do

8    that if, in the D.C. Circuit, they would be limited to the

9    indictment and the factual resume, because the D.C. Circuit

10   undoubtedly would have had both of those on appeal?

11          MR. DUFFY:  Sure.  And also to your point, Judge,

12   you know, in Fisher there was a victim impact statement by

13   Mr. Fisher in a related case.

14          And so they considered the victim impact statement

15   that had been made by Mr. Fisher in ultimately their

16   determination.  We would concede that direct and proximate

17   causation is not solely defined by the statement of facts.

18          But what we would say, your Honor, is that the

19   statement of facts are what the government can prove beyond

20   a reasonable doubt, or said they can, and that's what the

21   defendant has agreed.  And so that statement of facts forms

22   the basis.

23          And it's not just -- and I would say this, your

24   Honor, de Henriquez does not talk about proximate causation

25   necessarily.  It talks about the but-for causation.  It

1    doesn't go into the analysis.  That's one of the reasons why

2    we think it doesn't solely answer the question here.

3         If you come back to the concept of proximate

4    causation, you have to ask about remoteness and all the

5    other causal factors.  This is not a scenario, your Honor,

6    where there is a violent drug organization in Colombia

7    that's distributing large quantities of cocaine and willing

8    to murder people that are in its way.

9         This is a fact pattern that the Court heard during

10   the Forkner trial, cabined and limited in the ways that

11   we've discussed today, but that the Court saw during the

12   evidence.

13        And then there are all of these different causal

14   factors.  So many.  Quite a few.  I could go through a few

15   more that we believe the Court would ultimately have to get

16   to.

17        And the reason we don't think the Court has to do

18   that is because there are so many.  It's not as simple as

19   saying, well, MCAS may have played a role, and then the

20   crashes happened.  It's, okay, but there are -- that's not

21   what the crime charged was.

22        Let's start with that.  The crime charged was

23   about what Mr. Forkner and Mr. Gustavsson knew -- excuse me,

24   Employee Individual Number Two knew with respect to the time

25   period of the conspiracy.  And they did not know all the

```
1    issues about MCAS.  They didn't know its faults.

2            They didn't know what had been disclosed to the

3    FAA.  What they did know, we submit, is that it had fired in

4    a simulator in a way that was at low speed.

5            And so it was outside the parameters that had

6    previously been disclosed.  The only other evidence as set

7    forth in the statement of facts, the only other evidence

8    about confirming that was Mr. Loffing, who's referenced by

9    nomenclature, but the Court heard his testimony in trial

10   that, I had a conversation confirming the expansion but not

11   the details.  I referred Mr. Forkner to other engineers at

12   Boeing.

13           I'm summarizing, but that's, I think -- I'm sure

14   the Court will remember that testimony.

15           And if we come back from that, I want to

16   reiterate, we did not find, and the statement of facts does

17   not include that there were other -- other occasions where

18   that evidence or that information was provided to

19   Mr. Forkner.  Here are the problems.  Here are the issues.

20   So we have to come back to, I think, foreseeability and

21   remoteness.

22           And that's the reason, when you talk about all of

23   these different causal factors, that's the reason that we

24   believe, certainly under Fisher and under the construction

25   of McNulty, that there is no proximate cause, let alone a
```

```
1    but-for causation.

2              THE COURT:  Let me ask you to address this

3    question.  Would the Department of Justice be prohibited

4    under this agreement from bringing a manslaughter or a

5    negligent homicide or some other case against Boeing related

6    to the injury, the deaths of these individuals, if you

7    believed you have evidence that could establish that?

8              MR. DUFFY:  Your Honor, first, I have to say we

9    did not find evidence that would establish that, first.

10             THE COURT:  Right.  Well, let's just take the

11   hypothetical.  Let's assume that you uncover some evidence

12   that would allow you to make that case, and they didn't hide

13   it.  You uncover it, they didn't hide it.  Just

14   hypothetically.  Just humor me.

15             MR. DUFFY:  That's extremely difficult, your

16   Honor.

17             THE COURT:  Yeah.

18             MR. DUFFY:  Because --

19             THE COURT:  And that's what hypotheticals do.

20             MR. DUFFY:  Yes, sir.

21             THE COURT:  So just so I can understand the DPA --

22             MR. DUFFY:  Right.

23             THE COURT:  -- because I have a follow-up question

24   about that as it relates to these individuals.

25             MR. DUFFY:  Right.
```

1          THE COURT:  And so --

2          MR. DUFFY:  It would entirely depend.  The

3    hypothetical would entirely depend on what the facts were

4    that led to that conclusion.  You asked, could we bring that

5    case?

6          THE COURT:  Yeah.

7          MR. DUFFY:  We could not bring that case based on

8    the facts set forth in the DPA, because there is a

9    limitation of liability with respect to the facts set forth

10   in the DPA.  But specifically, the conduct related to those

11   facts.  So it's the conduct for which there's a limitation

12   on liability.  All right?

13         And so we did not find evidence that these other

14   charges could be brought.  And, in fact, I have to come back

15   to the evidence that we did find of criminal conduct.  It

16   was extremely limited.

17         You can't import what the 300-something paragraphs

18   that have been put forth in the movants' filing or what

19   might be in a Netflix documentary or articles about this

20   scenario, you can't import that into a criminal case.  We

21   did not find evidence of criminal intent -- criminal

22   intent -- by actors beyond Mr. Forkner and Boeing Employee

23   Number Two.  That is the footprint here.

24         So if we're talking about -- if we're talking

25   about a manslaughter with respect to Mr. Forkner and

1    Individual Number Two, you know, and then holding Boeing

2    accountable criminally for that?  That case, we didn't find

3    that.  We didn't find anything close.

4            THE COURT:  Right.  And so my question to you,

5    though, is just assume for a moment that someone at DOJ

6    didn't read all the documents carefully.

7            And now because Judge Cassell has raised this

8    issue, you've gone back and reviewed them, or your successor

9    comes to the view that you were wrong and we certainly ought

10   to prosecute Boeing for this.  We certainly could prosecute

11   Boeing for this on the facts.

12           Would this DPA agreement bind your successor to

13   not bringing that manslaughter case?

14           MR. DUFFY:  It would depend on the following:  It

15   would depend if the evidence that you're saying came to

16   light, if it was new evidence that was outside the conduct

17   set forth in the DPA.

18           THE COURT:  And if it was not new evidence -- in

19   other words, it existed at the time.  Someone just didn't

20   realize it, didn't discover it, didn't appreciate the

21   significance of it.  A new set of eyes comes in and looks at

22   it, your successor, and they come to the conclusion, boy,

23   Boeing is liable here.  We could convict Boeing on this.

24           MR. DUFFY:  Well, let me say a couple things.  The

25   limitation on liability has several exclusions, which I'm

1      sure the Court has seen in plea agreements, such as a crime

2      of violence, a tax offense, and so forth.  So there would be

3      an issue as to whether or not that's a crime of violence,

4      candidly.

5              And so that's a more subtle question that maybe

6      you're going to ask that too, which I would be happy to try

7      to respond, but I can't respond to that off the top of my

8      head.

9              THE COURT:  Okay.

10             MR. DUFFY:  What I can say, though, is that the

11     facts set forth in the DPA are much more limited than

12     everything, you know, that happened with respect to the

13     design flaws, not there.

14             With respect to what did and did not get disclosed

15     on the engineering side, not there.  The contents at least.

16     There is reference that there were other disclosures.

17             With respect to, you know, the incentives that may

18     have existed within the company generally to try to get the

19     MAX approved within a certain period of time, not there.

20             Because that's not criminal conduct from our

21     perspective.  We didn't find evidence that persons acted

22     with criminal intent in that regard.

23             THE COURT:  Let me try this.  If the DPA would

24     prevent the Department of Justice from indicting Boeing for

25     a manslaughter-type charge or for a charge related to Lion

1   Air and Egyptian Air, whatever the charge is, okay, if the

2   DPA would prevent that -- you got to assume with me, okay?

3            MR. DUFFY:  Yes, sir.

4            THE COURT:  I'm not asking you to concede that.

5   Just assume with me it is.

6            MR. DUFFY:  Yes.

7            THE COURT:  Would that then make these people

8   crime victims?

9            MR. DUFFY:  If we specifically agreed to waive

10  liability on a crime for which they were harmed, would they

11  be crime victims?

12           Your Honor, I don't believe that there's specific

13  case law on that, so that would be new.  I am not aware of a

14  case that says that.  So I don't -- I'm not aware of that.

15  You've asked me -- I am not aware of that.

16           You've asked me sort of on a very large

17  hypothetical that I think is relatively, with respect, far

18  afield from the facts in this case.

19           THE COURT:  And I'm sorry we're running long here.

20  I was hoping to get you all out of here by lunchtime.  So

21  just let me make sure that I've asked you what I need to

22  ask.

23           The Court in In re Dean says that the district

24  courts, so it says that I am "bound to enforce" the CVRA's

25  requirement that the prosecutors confer with the victims.

 1              If I were to conclude that they were victims, how

 2    would I enforce that in this case today?

 3              MR. DUFFY:  Your Honor, if you concluded that they

 4    were victims, and we respectfully request that you do not

 5    for the reasons submitted, you know, I would note that the

 6    Attorney General himself has already met with the victims in

 7    this case.

 8              THE COURT:  And that is very commendable to Judge

 9    Garland.  I'm not surprised that he has done that.  So I

10    should have made note of that when I started.

11              But, yes.  Go ahead.

12              MR. DUFFY:  And that was the third of three

13    meetings that took place.  The United States has stated in

14    its brief that it stands by the decision that was made.

15    That decision is based on the facts as we've gathered them

16    after our investigation.

17              But if you were, you know, to order us to, you

18    know, to meet with the crime victims, we would accede to the

19    Court's order, of course.  I mean, I don't know --

20              THE COURT:  That's how I would enforce it.

21              MR. DUFFY:  I don't know what the contours of the

22    Court's order would be.

23              THE COURT:  Yeah.

24              MR. DUFFY:  Because obviously, we would have to

25    consider, you know, the implications in this and other

```
 1    cases.

 2                 THE COURT:  Yes.  Yes.

 3                 MR. DUFFY:  Candidly, but I do -- we certainly --

 4                 THE COURT:  But to some degree --

 5                 MR. DUFFY:  -- on a prospective basis, if the

 6    Court were to focus on -- if I may?  If your question is on

 7    a prospective basis, what would we do?

 8                 THE COURT:  In this case, not with other cases.

 9                 MR. DUFFY:  In this case.  Understood.

10                 THE COURT:  I realize your briefing said you were

11    making policy changes, but as it relates to this case.  As

12    it relates to this case.

13                 MR. DUFFY:  First, we would follow the letter of

14    your order.  You know, you could, of course, order us to

15    meet with the victim -- the movants.  You know, whether or

16    not you determine that they're crime victims under CVRA is,

17    you know, a different issue, but we -- you could order us to

18    further meet with the movants to provide them notice and so

19    forth.

20                 We actually have been providing notice of the

21    hearings and of the Forkner hearings, so on and so forth, on

22    a voluntary basis through our website.  Through a website

23    notification process and so forth.  And so that you

24    certainly could do.

25                 THE COURT:  Just one more question.  Is it the
```

1    Department's view that, when there is a violation of the

2    CVRA, that these remedies are appropriate, or as a

3    prudential matter, or are you of the view that the law, the

4    CVRA itself, and the opinions interpreting that provide for

5    these remedies?

6         MR. DUFFY:  Excuse me, your Honor, "these

7    remedies," meaning what's set forth in the CVRA?

8         THE COURT:  Of course, setting the agreement

9    aside --

10         MR. DUFFY:  Oh, okay.

11         THE COURT:  -- restoring the case to the status

12    quo ante, before all of this occurred.

13         I guess what I'm asking you is, is it your view

14    that, if there are CVRA violations, that there is no remedy

15    for these people?

16         The Eleventh Circuit is back and forth, for

17    instance, in that anything that occurs that I might do or

18    that Judge Rosenthal did, that we're just doing that as a

19    prudential matter and you're not objecting to it?

20         MR. DUFFY:  Right.  The CVRA, first of all, with

21    respect to some of the remedies, I'll understand that

22    question to mean, for example, a set-aside of the DPA.

23    Well, excising provisions of the DPA or some of the other

24    things you just referenced.

25         It is our view that those are outside the CVRA.

1    That those are not specifically provided in the CVRA.

2    However, the CVRA does specify remedies, including an

3    administrative remedy to have any complaints, with respect

4    to the CVRA or any violations, be heard internally.  There's

5    a specific provision about that, your Honor.

6              I think you should consider that seriously,

7    because that's what Congress put there.  And Congress said,

8    we are designating the attorney general to be the final

9    arbiter of this, but we're designating the attorney general

10   to promulgate rules and to, you know, see that personnel

11   from the Department of Justice follow the provisions of the

12   CVRA.

13             So it's our view that there is a remedy provision,

14   and that that is the remedy provision that should exist.

15   But nonetheless, we're also committed to doing -- going

16   beyond that.

17             So we're committed, for example, as we have here,

18   to reaching out to folks who might not be CVRA crime victims

19   by definition, but as we've referenced here, as with the

20   analogy of 3663(a)(3) this sort of -- you know, in the

21   Takata case, I don't think it called it additional persons,

22   but additional persons who may have been impacted in some

23   way.

24             And so, for example, the $500,000,000 payment here

25   or the payments to the airlines.  So having communications

105

1    with them to making them informed and part of the process,

2    that is what we referenced obliquely to a degree in our

3    filings is right now under consideration by the Department

4    as to how to do a better job with that.

5              THE COURT:  Okay.  Well, one more question.  You

6    said I would have had the power originally to reject the

7    DPA.  Is that authority in the Speedy Trial Act?

8              Do you agree that the interpretation of (h)(2)

9    that Mr. Cassell provides is the authority to do that?

10             MR. DUFFY:  We don't agree with that construction

11   of it.

12             THE COURT:  Okay.

13             MR. DUFFY:  Because both HSBC and Fokker say such

14   a determination would have to be based on something

15   substantial.  And there has not been a court that has held

16   that a DPA could be set aside based on a violation of the

17   CVRA.

18             THE COURT:  No.  No.  No.  I'm sorry.  I wasn't

19   clear.  I moved over to the Speedy Trial Act, 3161.

20             MR. DUFFY:  Yes.

21             THE COURT:  And so my authority to, for whatever

22   reason, I set aside, if I were to reject the DPA.  Where is

23   the authority, even if it meets the high burden that you

24   would agree would allow me to do that, where does that

25   authority come from?

1           Is it this speedy trial provision that has "with

2     the approval of the Court" or is it something else?

3           MR. DUFFY:  Ultimately, your Honor, it would be in

4     connection with the Speedy Trial Act.  Although Fokker says

5     specifically the limitations on that.  So we don't think

6     that that authority would be, well, I'm going to set it

7     aside.  It would have to be based on some very -- you know,

8     a basis that was far outside that in Fokker or in HSBC.

9           THE COURT:  And what would be an example that

10    would permit that?  I promise that's my last question.

11          MR. DUFFY:  Well, HSBC talked about a couple of

12    examples.  HSBC talked about if there was some sort of

13    substantial government misconduct, for example.

14          But not -- you know, but in relation to the

15    mechanism or the means by which the DPA was arrived at or

16    something along those lines, we respectfully submit that

17    that's not here.

18          Even if, your Honor, even if you were to find that

19    there was a violation of CVRA, I respectfully submit that

20    the causal factors here are substantial.

21          The causal factors between the crashes and the

22    conduct charged in the information, first, are remote, and

23    have a degree of remoteness that there isn't precedent on

24    point that would show that, oh, in this fact pattern, folks

25    such as this would be considered to be crime victims under

1   the CVRA, given the limited conduct that really is -- forms

2   the basis of a criminal charge here.

3           And that -- so we come back to the issue of,

4   okay, if there's an incredibly close question, is that

5   substantial misconduct?  And we would say, respectfully,

6   that that is not.

7           THE COURT:  Very good.  Thank you.

8           MR. HATCH:  Good morning, your Honor.  Ben Hatch

9   on behalf of The Boeing Company.

10          Thank you, your Honor.  The Court clearly has the

11  benefit of the briefing and has reviewed the briefing, has

12  reviewed the cases.

13          And with the Court's indulgence, what I plan to do

14  is really focus on what I see as the core issues of the

15  case, which I think actually dovetails well with the

16  questions the Court has asked to the other counsel.

17          So with the Court's indulgence, I will try to do

18  that, and be direct.  I welcome any questions the Court has

19  as I proceed at any point.

20          THE COURT:  Yes.

21          MR. HATCH:  And then address a couple comments I

22  think Mr. Cassell made separately.

23          I do want to begin and, your Honor, this is in our

24  brief, and I would not generally repeat our briefs at all,

25  but I did want to begin by saying to the Court, and in light

1     of the representatives of the crash victims that are here

2     today, something that Boeing did say in its brief, which is

3     that Boeing acknowledges and profoundly regrets the

4     inestimable impacts of these tragic accidents.

5             And it extends its deepest condolences to all the

6     families and loved ones of those lost on the Lion Air 610

7     and Ethiopian 302 flights.  Thank you, your Honor.

8             Turning to the legal issues that are before the

9     Court.  I think the Court looks first to the text of the

10    statute.  Here, the text of the statute is the CVRA.

11            There's four things in the CVRA that I think are

12    dispositive textually over this whole case.  First, there is

13    no right to dictate the terms of a DPA that is granted to

14    CVRA victims.  In fact, the CVRA expressly in 3771(d)(6)

15    reserves to the attorney general and his designees

16    prosecutor discretion.  And that's what's reflected in the

17    DPA.

18            There's no right to discovery and there is no

19    right to reopen a DPA.  I think that's indisputable in the

20    text of the statute.

21            The fourth point is that the definition of a CVRA

22    victim turns on a federal offense.  And this Court asks

23    questions about -- I think to Mr. Duffy -- about could there

24    be victims of an uncharged offense?

25            And the answer, in my interpretation of the CVRA,

1   is no.  There has to be a federal offense.  I think the case

2   law supports that.  Here, the federal offense is the offense

3   reflected in Count I of the criminal information before the

4   Court.

5           And so that would be the federal offense to which

6   the Court would look in assessing whether these movants are

7   direct and proximate victims of that federal offense, not

8   some uncharged hypothetical, you know, perhaps investigated,

9   perhaps not, crime.

10          The case law, and that segues into the case law,

11  does not support that.  Really, there's five cases that I

12  wanted to touch on quickly that your Honor has asked

13  questions on pretty much every one of these.

14          But they're In re Dean, I assume the Court looks

15  first at Fifth Circuit authority.  So In re Dean.  There's

16  the Fisher case.  There is HSBC, and Fokker, and then In re

17  Wild, not necessarily in that order.

18          In re Dean, your Honor, I submit actually supports

19  denying the requested relief here.  In In re Dean, and I

20  know Mr. Cassell walked over that history, although I did

21  want to fill in the last chapter, as the Court said, you had

22  not read the remand decision by Judge Rosenthal.

23          In re Dean, the Fifth Circuit said on mandamus

24  that there had been not been -- or there should have been

25  consultation prior to entering into the plea agreement that

1   was entered into with BP in that case, but it did not order

2   that that consultation occur as a remedy.

3          I think there's a good argument, your Honor, that

4   that's dicta in the decision, but I don't know that the

5   Court really needs to go there.  It did say there should

6   have been consultation.

7          But ultimately, at the end of the day, it did not

8   order on remand that there be consultation preplea.  The

9   plea had already been entered and proposed, right?

10          And it's parallel in that respect to this case,

11   where there's an agreement that's already been entered on

12   the Court's docket.

13          What the Fifth Circuit said, in denying mandamus,

14   was I'm going to send it back to Judge Rosenthal who has

15   allowed these victims to be heard at the plea hearing.

16   Similarly, this Court has allowed these movants to be heard

17   at length today on their arguments.

18          We're going to trust Judge Rosenthal to evaluate

19   their input in deciding on whether to accept the plea

20   agreement which the Fifth Circuit had put on hold while that

21   mandamus ran its course.

22          On remand, it went back down to Judge Rosenthal in

23   a very lengthy and thorough opinion.  Judge Rosenthal

24   addressed all the movants or victims in that case --

25   Mr. Duffy said he agreed they were CVRA victims -- addressed

1   all of their arguments and determined ultimately to accept

2   the plea that was entered.

3           And so that's important because, even though the

4   Fifth Circuit said there should have been, again,

5   potentially in dicta, but there should have been preplea

6   consultation.  That was not the remedy that was ordered.

7   That was denied.

8           It went back down and the judge considered their

9   views and ultimately accepted the plea that had been entered

10  without the benefit specifically of any preplea

11  consultation.

12          So I think the Court can take from In re Dean that

13  it was not a remedy in that case to undo the plea agreement.

14  And the other point is, of course, the Court has a different

15  role with respect to plea agreements than a court does with

16  respect to DPAs.

17          The plea agreement in the In re Dean case had to

18  have a hearing in front of the court.  Ultimately, the Court

19  had to decide whether to accept it.  And then pleas, of

20  course, precede sentencing in federal criminal law.

21          And CVRA victims would have rights to be heard at

22  those stages of the case, right?  The plea hearing and at

23  sentencing.

24          A DPA, by contrast, is an agreement to defer

25  prosecution on a charge -- one or more charges.  Here, one

1   charge.  And all that's been entered is that agreement on

2   this Court's docket that has deferred prosecution, and the

3   Speedy Trial Act has been extended under the court's order.

4   And so there are not those similar proceedings to be had as

5   happened in In re Dean.

6           But I think the key point is In re Dean actually

7   supports not granting the relief that's requested here

8   because the Fifth Circuit did not send it back for preplea

9   consultation in that case.  So that was the last stage of

10  that case.

11          With respect to one common thread, your Honor, and

12  I very much respect Mr. Cassell's arguments in reading the

13  cases.  He's in almost every one I read.  I did not have the

14  background of this body of law that he obviously has, having

15  litigated it for so long.

16          But his cases are often district court cases that

17  then did not get affirmed or supported on appeal.

18  In re Wild is the second case I would come to.  I know the

19  Court's already asked about it and heard argument on it.

20          In re Wild is the only case that I could find, and

21  Mr. Cassell cited it, where a court contemplated undoing, in

22  that case, a nonprosecution agreement.  I say contemplated

23  because the court in the district court proceedings never

24  actually ordered that as relief.

25          The opinion that talked about undoing an NPA was

1    an opinion about whether there was standing to even engage

2    in those proceedings.  The court said the government's

3    argument was there is no redressability as required under

4    Article III because you can't put aside an NPA.  The court

5    said, no, I think I could put one aside, but that was just a

6    standing decision.

7            Ultimately, the district court never ordered

8    invalidating that NPA because ultimately Mr. Epstein passed

9    away, and so relief was denied.

10           And then, when they go up to the Eleventh Circuit

11   en banc, what did we learn?  Which is that that 10 years of

12   litigation should have never happened.

13           The specific holding of the en banc court is that

14   there's no private right of action created by the CVRA, as

15   was utilized in the district court in that case, but the

16   Court has read it.

17           The reasoning of In re Wild I think is broadly

18   important to the issues in this case.  It talks about the

19   impingement on prosecutorial discretion that would occur if

20   you try to assess who are CVRA victims, which you need to

21   know what's the federal offense if you try to do that for a

22   crime the government has not brought.  Okay?

23           And so that's why I think here the Court has to

24   look under the CVRA to the Count I criminal information for

25   all the reasons that In re Wild said there's no basis to go

1    beyond that.

2              Only the prosecutor can determine what federal

3    offenses are supported beyond a reasonable doubt from his or

4    her investigation and bring those charges.  And In re Wild,

5    I think, has very persuasive reasoning on that that really

6    undercuts, even though it's specifically just talking about

7    the private right of action, it really undercuts the

8    reasoning of several of the subsequent district court

9    decisions in that series of litigation.

10             With respect to Fokker and HSBC, I will take those

11   together.  These are other ones where Mr. Cassell relied on

12   the district court decisions, but then they were

13   subsequently overturned on appeal.

14             The Court has asked about, can the Court overturn

15   the DPA?  Reopen the DPA?  You know, does the Court need to

16   approve the DPA?

17             I think those appellate decisions line up to say,

18   no, there's not.  Unlike a plea agreement, unlike certain

19   other stages, a court does not approve a DPA.  It's filed on

20   the court's docket.  The court decides whether to exclude

21   time under the Speedy Trial Act, which your Honor has

22   already ruled on.

23             There's no later approval by the court, that -- as

24   Mr. Duffy was saying, a DPA is not a plea.  It's a lesser

25   form of resolution.  So there's no approval by the court of

1    a DPA.

2            And what those cases -- looking to your Honor's

3    questions about the Speedy Trial Act, what they say.  In

4    neither case did they undo the DPA.  So both of them were

5    just discussing possible outcomes, right, because they both

6    denied or overturned the district court in those cases.

7            What they say about the Speedy Trial Act is a

8    court -- the language about approval of the court -- a court

9    would potentially look at a DPA that's filed under a Speedy

10   Trial Act.

11           And if the court felt it was a sham, it was just

12   presented to exclude time without a real intent to defer and

13   engage in that agreement, that would be the kind of lens the

14   court would take under the Speedy Trial Act.  Is this just a

15   sham to push off trial court proceedings?

16           And there's no claim here, in all the briefing,

17   that somehow this DPA is a sham.  Boeing has been complying

18   with it for almost a year and a half now, as the Court has

19   heard.  So there's no argument it's a sham meant to exclude

20   the Speedy Trial Act.

21           So that's the lens that HSBC and Fokker I think

22   interpret the Speedy Trial Act.  And your Honor had some

23   questions also about, you know, what other basis.  The other

24   ground they looked at was whether there was a basis under

25   the Court's general supervisory authority.

1          And, you know, without ruling on every aspect of

2     that necessarily, in the ones before them, they both

3     concluded that that is not -- there has not -- I think that

4     was more HSBC really looking at the supervisory.  There is

5     not a general supervisory authority to evaluate the terms of

6     a DPA.

7          I know your Honor referenced Fifth Circuit law and

8     plea agreements, but in my research, the Fifth Circuit has

9     not in any way diverted from that that would be applicable

10    to a DPA.  It's different from a plea agreement, as your

11    Honor well knows.

12         Your Honor asked a couple questions about the

13    Fisher decisions from the Fifth Circuit.  And the Fisher

14    decisions, one, your Honor referenced in Fisher the

15    proposition that you can't rely on concealment of the

16    conspiracy to be your but-for cause of your conduct.  And

17    certainly, the Fisher cases said that.

18         I think the Fisher cases also said for but-for,

19    you have to look at what would the world -- take the minimum

20    amount necessary to bring the unlawful conduct in conformity

21    with the law and look at that but-for world, and only if the

22    crime -- or only if the harm would not have occurred in that

23    but-for world, is it a but-for cause.

24         So there's also that element of Fisher on but-for

25    causation that I think is very important here, because

1    there's so many steps that would be required to assess

2    whether in the but-for world this harm would have occurred.

3              The cases specifically for Fisher uses the term

4    too speculative.  The district court says it's too

5    speculative, too many steps.  And the Fifth Circuit upheld

6    that on appeal.

7              Other cases like the In re Antrobus have used two

8    factually and temporally attenuated.  Similar concepts.  If

9    there's too many steps, then it's not going to meet the

10   definition.

11             And here, your Honor asked a couple of questions

12   about the statement of facts and the reference to that MCAS

13   may have played a role in the accidents that are contained

14   in the statement of facts.

15             I think, as Mr. Duffy was saying, the statement of

16   facts is focusing on the -- you know, it has the criminal

17   information that it supports, which is the concealment of

18   information to the AEG about the training assessment.

19             I think both accidents are extremely complex

20   events, a lot going on in both of them.  But just to

21   illustrate, you know, what would it take to say that the

22   concealment of information to the AEG that is alleged in the

23   criminal information was connected with the accidents?

24             I mean, some of those steps you have to first ask,

25   would the FSB report have changed in some way with respect

1   to the training, because it's training determination?

2            So would the FSB report require training on MCAS

3   in its differences training?

4            Number two, would the FSB report have required a

5   different level of training than the level it originally

6   determined, Level-B training?

7            Would it have required simulator training?  That's

8   another step the Court would have to look at.

9            Assuming it did require training, assuming it

10  required simulator training, would that simulator training

11  have included in its content training on what ultimately

12  were the accident scenarios?  That's unknown.  These would

13  all have been decisions to be made by the AEG.  That would

14  be another step.

15           Whatever that series of decisions that the AEG

16  would make, would those be carried over in exactly those

17  terms for foreign operators, because, of course, the AEG is

18  with the FAA.  It doesn't control foreign operator decisions

19  by other jurisdictions.

20           And then would -- if you take all those steps,

21  would that training have then -- what impact would it have

22  had in the actual scenarios that the pilots faced in the two

23  respective flights that resulted in accidents?

24           And that's just an example, your Honor, to walk

25  through, just on the training piece, all the steps you have

1   to take to get to actually what happened in the accident

2   scenarios.

3          The last point I wanted to come to in the summary,

4   if you will, your Honor, is your Honor asked Mr. Cassell

5   some questions about what is it you're asking for here?

6          Are you asking for me to undo the DPA, reopen the

7   DPA, or just to excise portions of it?

8          And I don't think Mr. Cassell said he was asking

9   to have -- your Honor said, do you want me to red line it?

10  I think he said, I'm not asking to excise.

11         Respectfully, their reply brief on the principal

12  motion, the second amended motion, pages 24 to 49, is

13  devoted to excising portions of the DPA as a remedy that

14  runs through their briefing.

15         They want to excise release from liability

16  provisions, potentially other provisions.  I would call that

17  a red line.  So they are certainly seeking to excise

18  provisions.

19         In my research, your Honor, I have not found any

20  case in the country that has ever done what Mr. Cassell is

21  asking, that has ever overturned a DPA on the basis of the

22  CVRA.  I don't believe a case exists.

23         I would say, especially this notion of excising,

24  there's no support for the CVRA or the law interpreting it.

25  There's really no support for that in contract law, which a

1    DPA is a contract, like a plea agreement is a contract.  You

2    don't --

3           When the parties have entered into agreements, you

4    don't come behind and just excise certain portions to the

5    detriment of one party or another.  So I think that also

6    would violate contract law to go that route.

7           At times their briefing also asked to just reopen

8    or undo the DPA entirely, but I'm not sure -- they don't

9    really mean that.  It sounds maybe easy in a sense, just

10   undo it.

11          But the part that they don't account for is that

12   Boeing has performed.  As Mr. Duffy told the Court, Boeing

13   has performed and satisfied its obligations for a year and a

14   half.  And that performance included funding the

15   $500,000,000 fund for the crash victims.  It included

16   payments to airlines.  It included changes to Boeing's

17   compliance program and regular reporting to the department.

18          And so no one is suggesting that Boeing could get

19   those back.  Boeing can't be put back in the position it was

20   in when it negotiated the DPA with the Department, because

21   it's performed for a year and a half.

22          So I respectfully think that there's not a remedy

23   to just reopen the DPA because Boeing can't be put back in

24   the position it was in when it originally negotiated because

25   it's performed.

1          Your Honor, that was my core points.  I had a few

2    brief points that Mr. Cassell made in argument.  I will try

3    to go through as quickly as possible.

4          He raised the point that you could base CVRA

5    rights on matters investigated.  In re Wild says that's not

6    appropriate.  I'm not aware of other cases, certainly none

7    from the Fifth Circuit, that say you can just base it on a

8    crime that was investigated.

9          In re Dean had a charged crime, ultimately, right?

10   For the plea agreement.  So it had a charged crime.  And

11   that's what In re Dean looked at it.  And it was not

12   disputed that they were victims of that charged crime in

13   that case.

14         I think Mr. Cassell said at one point that we

15   don't dispute discovery is available under the CVRA.  Just

16   to be clear, your Honor, we certainly do dispute there is no

17   right to discovery in that statute.

18         And the cases have, I believe, uniformly supported

19   that there's not the type of discovery right that

20   Mr. Cassell is seeking here.  Even in the Jane Doe's case at

21   the district court level, the district court ultimately did

22   not order discovery based on the CVRA.

23         It was essentially agreed to by the government

24   under the inherent authority in that case, conceded in that

25   case.  So we certainly do dispute that.

1           I think Mr. Cassell raised, for the first time

2    today, the notion about whether any report submitted by

3    Boeing to the department under the DPA, whether those would

4    be public.  That's not been briefed to your Honor.

5           I would just say that is an HSBC case where the

6    district court had ordered reports submitted to be public

7    and that was part of what was overturned by the Second

8    Circuit in its decision.  So I don't believe that would be

9    appropriate here.

10           And just briefly, on the arraignment and bond

11   argument.  Your Honor, in coming into this area and

12   responding to Mr. Cassell's motions, we tried to do a very

13   thorough look.

14           The procedure your Honor used in this case is a

15   procedure that's commonly used in DPA matters, as we tried

16   to summarize in our brief.

17           In other words, courts routinely do not have

18   arraignment proceedings in DPA matters.  They're not

19   required.  You know, Rule 10 says, if an arraignment occurs,

20   it has to occur in open court, but it does not say an

21   arraignment must occur.

22           I think it's the judgment of the presiding judge

23   whether to conduct arraignment proceedings.  It certainly

24   need not occur.

25           Mr. Cassell mentioned the Moore case from the

1    Fifth Circuit.  That case is about waiver of arraignment.

2    We're not here to talk about waiver of arraignment.

3           It's whether arraignment need occur, and it

4    certainly need not occur for the reasons I've stated.  So I

5    hope that responds to that argument.

6           Your Honor, with that, I'm thankful for the

7    Court's time --

8           THE COURT:  I do have one question here --

9           MR. HATCH:  Yes.  Thank you.

10          THE COURT:  -- as it relates to In re Dean.  When

11   the circuit prudentially decided not to mandamus the

12   district judge, it seems to indicate that they were

13   confident that the district judge would dedicate the rights,

14   had heard from the victims in making the initial ruling, and

15   then there were more stages of the case to occur, and so

16   they were confident that the district judge would do that.

17          Is it the case here that, if I were to do nothing,

18   not change the status quo at all, but if I were to determine

19   they were crime victims, then, when the government filed a

20   Rule 41 motion, would I need to conduct a hearing and allow

21   the victims to come in and speak at that moment while I

22   considered or before I granted the Rule 41 motion?  That's

23   what's envisioned in this Rule 41 motion, at the end of the

24   day.

25          Is that what I would do consistent with

124

1    In re Dean's reasoning or the background to their reasoning?

2              MR. HATCH:  I don't think that it would be

3    necessary for the Court to do that.  For the reason that I

4    don't believe a Rule 41 motion requires a hearing.

5              Obviously, the Court can order a hearing on any

6    issue.  You know, any issue the Court wants to order a

7    hearing on.  If the Court had determined they were victims,

8    then, you know, there might be a right to attend.  I just

9    don't think, just like it's not necessary to hold an

10   arraignment, the Court could decide on the papers to rule on

11   a Rule 41 motion.  That is not imminent.  That's down the

12   road.

13             But I take your Honor's point.  Certainly,

14   In re Dean allowed for participation prospectively, if you

15   will.  It didn't go back and reopen, but it allowed for

16   participation prospectively.

17             We don't, respectfully, agree that they fall

18   within the scope of the CVRA, but Mr. Cassell has raised

19   prospective interest.  If the Court were to find that, you

20   know, there could be things prospectively, I suppose, if the

21   Court were to find that they meet the statutory definition.

22             THE COURT:  I'm just wondering if that was woven

23   into the background of the facts of In re Dean.  Because,

24   again, they come to the prudential decision not to mandamus

25   the judge.

1                    And as they're talking about it, they say that

2    they're confident that the district judge will allow

3    participation, has allowed, and will allow it going forward.

4    And so there were other proceedings that would take place.

5                    And so the victims would be heard at those here.

6    As best I can tell, if nothing happens, the only

7    proceeding -- the only judicial act that will take place at

8    some day, at some point, is the filing of a Rule 41 motion

9    and the considering of it and presumably granting.

10                   Would that be, if I were to follow sort of the

11   spirit of In re Dean, would I need to have a hearing?

12                   MR. HATCH:  That's ahead, so -- you know, but I

13   would suggest not, your Honor.

14                   What I would say is this.  I think the Court has

15   already approached this in the way that In re Dean mapped

16   out.  The Court has allowed full briefing on four motions.

17   I think there may have been some other issues that came up,

18   the Court has allowed full briefing on all those.

19                   The Court has sat and heard today arguments from

20   movants' counsel and many of the movants are represented

21   here.  So the Court has fully heard the issues.

22                   So I think the Court has done what the district

23   court did in In re Dean, which is let -- after the issue

24   came to light, let them participate in a court hearing,

25   which they did.

126

1          The difference is that a plea agreement is

2    fundamentally procedurally different from a DPA, right?  A

3    plea agreement is going to have a hearing.  The court

4    determines whether to accept the plea agreement.

5          And then a court is going to have sentencing, and

6    CVRA victims may have rights to attend and be heard at those

7    stages of the proceedings.

8          And that's why I go back to why you can't find

9    cases that do what Mr. Cassell asks, because a DPA does

10   not -- it's a deferral of prosecution.  It's not going to

11   have those hearings.

12         There are not going to be stages when victims

13   would appear and be heard, assuming that the DPA has been

14   complied with and goes as expected.  Ultimately, you have a

15   dismissal.

16         And on that, your Honor, I don't want to presume

17   on any briefing we have to submit a dismissal, but as HSBC

18   at least talks about, you know, a dismissal is not the

19   approval that I think Mr. Cassell is referring to.  Do I

20   approve of this deal and, therefore, I dismiss it at the end

21   of compliance?

22         It's if the government made its motion to dismiss,

23   that is another matter in the prosecutor's discretion, and I

24   think the Court views it through that lens, as opposed to

25   some nebulous, do I approve of all of these proceedings and

1    what this deal was, if that makes sense, your Honor.

2               THE COURT:  Okay.  Very good.  Thank you.

3               MR. HATCH:  Thank you, your Honor.

4               THE COURT:  Any rebuttal?

5               MR. CASSELL:  I don't know if you would consider a

6    short bathroom break?

7               THE COURT:  No, I'm sorry.

8               MR. CASSELL:  All right.  Let me dive right in.

9    My plan would be to follow the order of my initial

10   presentation and touching on what the parties have said

11   on that.

12              Remember, we had four arguments for why the

13   victims' families were crime victims under the CVRA.  One of

14   them dealt with the ombudsman.  It's important to recall the

15   ombudsman said, not only is there no crash investigation

16   now, but we will let you know in the future if an

17   investigation opens up.  That never happened.

18              And so for that reason alone, you could conclude

19   that during that investigative process, the Justice

20   Department was at least reckless with what was going on.

21              But ultimately, when we get to now the drafting of

22   the DPA, I think your question touched on this, at some

23   point the government really is focusing on a resolution of

24   the charges.  That's the point in time where it's quite

25   clear that they had conferral obligation.

1              We heard Mr. Duffy saying, well, you know, how do

2     we determine?  When do we know?  What is the limiting

3     principle?  The limiting principle is, once you put pen to

4     paper with a criminal defendant and begin crafting an

5     agreement that says we're not going to prosecute you for

6     manslaughter, at that point, you need to talk to the victims

7     of that manslaughter crime.

8              You were really pushing the government to explain,

9     you know, does this cover manslaughter or not?  I think you

10    ultimately got them to admit that they wouldn't be able to

11    prosecute Boeing for manslaughter under this agreement,

12    which is why the victims' families represent victims of

13    crime.

14             Now, we've heard a lot about In re Wild.

15    In re Wild, I found my notes here, I think all you need to

16    do with regard to -- here we go -- In re Wild, is take a

17    look at page 1252, note seven.  1252, note seven of In re

18    Wild, where the Eleventh Circuit says, look, we're not

19    creating a circuit split here.

20             We're not addressing the situation of In re Dean

21    where charges have been filed.  At that point, victims can

22    come in.  We're here in Case No. 4:21-CR-0005.  We're here

23    in a criminal case, which we were in a civil case in the

24    Eleventh Circuit.

25             So now that leaves us with In re Dean.  Again, I

<sup></sup>129

```
 1    think the key point with In re Dean is the Fifth Circuit was

 2    looking at a situation where the district judge needed to do

 3    something.  That's a different situation than what you have.

 4            You can make the world right today.  You can give

 5    those victims' families an opportunity to confer by agreeing

 6    to the remedies that we've proposed.  And then there

 7    wouldn't be any need for any Fifth Circuit intrusion.  In

 8    the In re Dean case, the Fifth Circuit had to say, well, we

 9    need to stay some proceedings here and then send it back to

10    see what's going on.  I think that's the important

11    difference.

12            Now, remember the next argument that I made when I

13    was up here just a little bit ago, the risk argument, that

14    what Boeing did created a risk.  Neither side, unless I

15    missed it, responded to that argument, but I think your

16    questions actually opened up, unlocked the key to that

17    holding.

18            You've identified two statements of facts in the

19    DPA, which both sides agree you can look at, that say MCAS

20    may have played a role.

21            We think things actually went much further.  It

22    did play a role.  And that's what the official investigative

23    authorities found, but let's just go with may have played a

24    role, artful pleading by, I suppose, by Boeing and the

25    government.  Well, that's a risk.
```

130

```
1              When those passengers and crew are on those

2     flights and MCAS may have played a role, they wanted to know

3     everything they could, but because of Boeing's conspiracy,

4     they didn't have the information.

5              So you can simply say, based on the undisputed

6     facts here, MCAS may have played a role, that created a

7     risk.  The CVRA says, if you are creating risk to people

8     criminally, they are harmed.  And therefore, crime victim

9     status exists.

10             So I think you have a path forward without

11    ordering further evidentiary hearings or anything along

12    those lines where you would find that the family members

13    represent victims.

14             But if you want further evidentiary findings, our

15    position is, bring it on.  We are ready.  Nobody talked

16    about our 53 pages of facts, even though we spent a lot of

17    time putting them together for your benefit, and we thought

18    for the benefit of the parties, so they could help narrow

19    the issues and tell us what they are disputing.

20             And again, today we've gotten, well, we don't

21    agree, but we won't tell you which facts we're specifically

22    objecting to.  Those facts cover every link in the chain

23    from the FAA, ordering simulator training, to having it

24    apply to foreign carriers, to having those carriers then be

25    able to safely land the planes.
```

1          So if we wanted to look at all that, let's bring

2    it on.  Let's have an evidentiary hearing, and we will show

3    the government lots of evidence that apparently they've been

4    unable to find so far.

5          Now, the one thing we did hear from the government

6    today is, oh, look, there are lots of other causes out

7    there.  The government is conflating what the inquiry is in

8    front of you, with all respect.

9          The issue is not whether there were multiple

10   causes of the crashes.  There clearly were.  The only issue

11   is whether MCAS was a cause of the crash.  We've cited lots

12   of authority that says under general but-for causation, you

13   don't have to find just one single cause.  I mean, the world

14   is involving, you know, multiple different causes that

15   always come together on any particular event.

16         So MCAS was clearly a cause.  We have great

17   evidence on that.  What we hear from the government is, oh,

18   remember in the Forkner case, we really didn't hear a lot of

19   evidence about the crashes.

20         Well, you know why that happened.  Everybody knows

21   why that happened, because on Thursday the government filed

22   a superseding indictment in that case that eliminated any

23   reference to the crashes.

24         And then we're told today, well, see, there really

25   wasn't a lot of connection to the crashes.  Of course there

1    wasn't, because the government was structuring the case, for

2    reasons that are unclear to us, to be very, very narrow, and

3    not include the deaths of 346 people.

4            So that case, whatever it holds, we don't know

5    what the jury ultimately decided, has no bearing on this

6    case, which very directly involves the crashes.

7            So let's have an evidentiary hearing if there's

8    some dispute.  We will put on evidence.  We will prove

9    beyond any doubt or certainly beyond a preponderance of the

10   evidence, which is all that we would have to meet, that

11   there was a direct and proximate harm.

12           We did hear some discussion from the government

13   about proximate harm.  Your Honor is well familiar with tort

14   law standards.  When there is a harm that is created, the

15   question is whether the ultimate harm that resulted is

16   within that zone of foreseeability.

17           When Boeing lied to aviation safety regulators

18   about causes that could have catastrophic consequences,

19   that's clearly within the zone of foreseeability.  And we've

20   mentioned government -- I'm sorry, Boeing documents at six

21   points mention MCAS being linked to potential catastrophic

22   failures.  Clearly, the harms that befell 346 innocent

23   people here were entirely foreseeable.

24           If there's any doubt on whether we have enough

25   evidence, we also think the government should be required to

1    disclose evidence.  It's interesting they said, well, down

2    in Florida we agreed to disclose evidence.  So it wasn't

3    litigated there.

4              Begging the question of why aren't they agreeing

5    to disclose evidence here?  And begging the question of how

6    could this Court possibly rule on whether there's sufficient

7    evidence in this case if the government is concealing

8    evidence, which I think it became clear today they intend

9    to do.

10             So for all those reasons, we think that you should

11   find that the victims' families here representing crash

12   victims who are CVRA crime victims.

13             And then we get into the issue of, you know, what

14   is the appropriate remedy here?

15             Let me just clear up one thing.  We very much

16   appreciate Attorney General Garland meeting with the

17   victims' families.  That was very generous of his time to do

18   that.

19             But let me also be clear.  We asked to turn that

20   meeting into a conferral session.  We said we want to have a

21   give-and-take discussion about this agreement.

22             We were told specifically no.  This is solely a

23   listening session.  And without going into the details of

24   our meeting with Attorney General Garland, he welcomed us

25   there, we made a presentation.  He said thank you very much.

1    I'll be back with you later.  That is not conferral.

2    Whatever else it is, we appreciate his time.  That was not

3    conferral.

4            Again, we appreciate your time today having us in

5    to argue our motions, but that is not a right to confer.  We

6    want to confer with those decision makers.  You heard them

7    say today, we did not encounter any evidence that Boeing's

8    management was responsible for the deaths of 346 people.

9            But we have lots of information that apparently

10   they don't, and we want to show it to them.  Maybe they will

11   end up saying, well, we just disagree with your

12   interpretation.

13           But we were promised by Congress an opportunity to

14   confer with the decision maker before final decisions were

15   made in this case.  And that is the remedy that you should

16   give us.

17           You should set aside the nonprosecution provision

18   or the deferred prosecution provision and give us an

19   opportunity to meaningfully confer with prosecutors to hold

20   Boeing accountable.

21           Now, where is your authority to do that?  The

22   CVRA, for all the reasons I've explained, gives you that

23   authority.  But I did think -- maybe I misunderstood what

24   the government was saying, but I think we heard a very

25   significant change in the government's position today from

1    what I was seeing in their briefs to what they were saying.

2           If I heard Mr. Duffy correctly, he said you do

3    have authority to direct -- to reject the DPA.  That is

4    significant.  You do have authority.

5           And so then the only question is, well, when would

6    you do that?  We heard from the government, well, it should

7    be something significant.

8           How about a violation of congressionally promised

9    rights to 346 grieving families around the world in a case

10   involving the deaths of their family members?

11          I mean, I can't come up with a law professor's

12   hypothetical that is a more significant reason for setting

13   aside a DPA than something like that.  And that's exactly

14   what you have here.

15          That's presumably why Senator Cruz wrote in to say

16   this is a very significant case that warrants your

17   supervisory power to take a close look at what happened

18   here.

19          So I think we have the government admission that

20   you have a basis for setting aside this agreement.  They've

21   even apologized for what happened in the course of executing

22   this agreement.  Why that isn't an unusual circumstance that

23   would justify setting aside the agreement, I can't

24   understand.

25          We do hear from Boeing, oh, there's never been a

1    case like this.  We can't find any precedent.  Right.

2    That's because this was unprecedented.  The government

3    concealing what it was doing in a case involving 346

4    homicides for more than a year.  That's unprecedented and

5    that warrants your supervisory power here.

6           And then the last point, holding an arraignment.

7    I think your Honor has mentioned that, if an arraignment was

8    held, victims would have an opportunity to come in

9    potentially.  We look forward to that opportunity and we

10   hope that you will grant our motion on that with respect to

11   the arraignment.

12          THE COURT:  Okay.  I apologize for not taking all

13   of this up at the very beginning.  I clearly should have at

14   least inquired at the beginning and I failed in that regard.

15   So I apologize for that.

16          But I've reviewed all of your filings, and I

17   appreciate you all coming in here to make this argument.  I

18   appreciate you all traveling to Fort Worth to do that.

19          I will take it all under advisement, reflect on

20   it, and get an order out just as soon as I can.

21          Anything else from anybody?

22          MR. DUFFY:  No, your Honor.  Thank you, your

23   Honor.

24          MR. HATCH:  No, your Honor.

25          THE COURT:  All right.  Thank you.

1            (The proceedings concluded at 11:59 a.m.)

1

2                              REPORTER'S CERTIFICATE

3

4        I, ZOIE WILLIAMS, RMR, RDR, FCRR, certify that

5   the foregoing is a true and correct transcript from

6   the record of proceedings in the foregoing entitled

7   matter to the best of my ability to hear.

8        Further, due to the COVID-19 pandemic, some

9   participants are wearing masks, and/or appeared via

10  videoconferencing, so proceedings were transcribed to the

11  best of my ability.

12       I further certify that the transcript fees format

13  comply with those prescribed by the Court and the Judicial

14  Conference of the United States.

15       Signed this 9th day of May, 2022.

16

17                        ___/s/ Zoie Williams_____
                          Zoie Williams, RMR, RDR, FCRR
18                           Official Court Reporter
                          Northern District of Texas
19                            Fort Worth Division

20  Business Address:    501 W. 10th Street, Room 532
                         Fort Worth, Texas 76102
21                       zwilliams.rmr@gmail.com
                         817.850.6630
22

23

24

25

MR. CASSELL: [54] 3/20
3/25 5/2 5/10 29/25
34/23 35/8 35/11 35/14
35/16 35/23 39/20 41/10
41/14 42/11 42/16 42/22
43/3 43/16 43/19 43/21
43/23 43/25 44/3 44/9
44/13 44/16 44/19 44/21
44/23 45/7 45/15 45/18
46/1 47/16 47/18 47/23
48/4 48/14 48/22 49/13
49/18 51/3 51/10 51/13
51/16 51/19 52/3 52/7
52/24 54/3 54/7 127/5
127/8

MR. DUFFY: [53] 4/12
56/18 70/1 81/4 81/17
83/5 84/22 85/4 85/7
85/12 85/20 86/1 88/14
88/21 89/8 91/15 91/22
92/2 92/5 92/9 92/24
93/11 96/8 96/15 96/18
96/20 96/22 96/25 97/2
97/7 98/14 98/24 99/10
100/3 100/6 100/9 101/3
101/12 101/21 101/24 102/3
102/5 102/9 102/13 103/6
103/10 103/20 105/10
105/13 105/20 106/3
106/11 136/22

MR. HANEY: [1] 4/18
MR. HATCH: [9] 4/16
4/21 107/8 107/21 123/9
124/2 125/12 127/3 136/24
MR. NICHOLSON: [1]
3/8
MR. SANTOS: [1] 4/20
MS. APPLEBAUM: [1]
3/13
MS. BAUER: [1] 4/24
MS. BRAMMEIER: [1]

3/16
THE COURT: [119] 3/4
3/12 3/15 3/18 3/24 4/10
4/14 4/23 4/25 5/8 29/24
34/21 34/24 35/9 35/12
35/15 35/21 39/7 41/8
41/13 41/19 42/14 42/21
43/2 43/5 43/17 43/20
43/22 43/24 44/1 44/7
44/10 44/14 44/17 44/20
44/22 45/6 45/13 45/17
45/25 47/12 47/17 47/19
47/24 48/5 48/15 49/7
49/14 51/1 51/5 51/11
51/14 51/17 51/24 52/4
52/11 53/22 54/4 56/17
69/25 80/23 81/16 82/17
84/10 85/3 85/6 85/8
85/18 85/25 88/9 88/15
88/22 91/8 91/18 91/23
92/4 92/8 92/21 92/25
96/2 96/10 96/17 96/19
96/21 96/23 97/1 97/6
98/4 98/18 99/9 99/23
100/4 100/7 100/19 101/8
101/20 101/23 102/2 102/4
102/8 102/10 102/25 103/8
103/11 105/5 105/12 105/18
105/21 106/9 107/7 107/20
123/8 123/10 124/22 127/2
127/4 127/7 136/12 136/25

$

$1,000,000 [2] 41/24
42/2
$500,000,000 [5] 41/20
41/21 41/25 104/24 120/15

'

'To [1] 14/2

/

/s [1] 138/17

0

0005 [1] 128/22

1

10 [17] 30/12 30/23 31/3
31/14 32/9 32/10 32/11
32/11 32/15 32/16 37/20
42/18 51/18 68/9 68/21
113/11 122/19
10-K [1] 9/3
100 [3] 2/23 81/22 81/23
10017 [1] 2/11
10th [3] 8/19 13/7 138/20
11 [4] 10/6 51/7 51/15
75/12
11:59 a.m [1] 137/1
120 [1] 2/14
120-page [2] 46/9 48/23
123 [1] 38/9
1252 [2] 128/17 128/17
13 [1] 72/10
13-year [1] 35/17
1301 [1] 2/20
14 [3] 31/3 54/20 55/2
14-day [2] 54/22 55/5
1500 [1] 2/23
157 [1] 13/9
16 [1] 61/3
1700 [1] 1/21
18 [2] 57/3 59/20
189 [1] 12/17
19 [1] 138/8
1993 [1] 16/19
1994 [1] 33/5

2

2-1 [1] 38/11
2.5 billion [1] 40/15
20 [1] 68/23
200 [1] 48/10
20004 [1] 2/21
2004 [2] 5/22 55/12
2008 [2] 45/19 50/4

**2**

**2010-era [1]** 86/19
**2011 [3]** 7/13 17/1 36/13
**2013 [6]** 36/20 36/24
47/10 50/2 50/3 50/5
**2014 [1]** 36/25
**2015 [2]** 37/5 45/21
**2016 [2]** 27/22 61/13
**2018 [3]** 8/19 11/2 12/15
**2019 [7]** 8/20 13/7 37/6
37/10 37/17 37/17 37/18
**202.239.5921 [1]** 2/21
**2020 [2]** 9/4 71/2
**2021 [1]** 60/25
**2022 [3]** 1/8 3/2 138/15
**212.972.9432 [1]** 2/12
**23 [1]** 32/4
**23219 [1]** 2/18
**24 [1]** 119/12
**24th [1]** 72/10
**28th [1]** 2/11
**29th [2]** 8/19 12/15
**2d [1]** 64/9

**3**

**300-something [1]** 97/17
**302 [3]** 13/8 56/23 108/7
**3142 [1]** 33/18
**3161 [4]** 26/18 26/23
26/23 105/19
**336 [1]** 67/22
**344 [1]** 86/21
**346 [10]** 6/18 9/23 15/18
16/21 17/16 132/3 132/22
134/8 135/9 136/3
**351 [2]** 62/22 86/22
**364 [1]** 11/22
**3663 [1]** 104/20
**36th [1]** 2/14
**371 [2]** 57/3 59/20
**3771 [7]** 18/15 51/8 51/9
54/6 54/19 54/19 108/14

**383 [1]** 2/5

**4**

**41 [6]** 123/20 123/22
123/23 124/4 124/11 125/8
**44 [1]** 14/15
**466 [1]** 63/19
**469.904.4550 [1]** 2/9
**480.375.8992 [1]** 2/24
**485 [1]** 2/11
**49 [2]** 88/24 119/12
**4:21-cr-00005-O-1 [1]**
1/6
**4:21-CR-0005 [1]** 128/22

**5**

**500 [1]** 2/8
**501 [1]** 138/20
**53 [2]** 88/24 130/16
**53-page [1]** 15/22
**532 [1]** 138/20
**597 [2]** 62/22 86/21

**6**

**6-3 [1]** 54/4
**60602 [1]** 2/14
**610 [4]** 12/16 56/22 64/8
108/6
**640 F.3d [1]** 63/9
**648 [1]** 63/9
**688 [1]** 64/9
**6:32 a.m [2]** 12/15 12/18

**7**

**72 [2]** 45/13 45/14
**737 [1]** 14/18
**737 MAX [1]** 66/25
**75202 [1]** 2/8
**757.640.3727 [1]** 2/18
**76 [1]** 16/1
**76102 [3]** 1/22 2/24
138/20
**7th [1]** 60/25

**8**

**8-5 [1]** 38/13
**800 [1]** 2/17
**801 [1]** 1/21
**801.585.5202 [1]** 2/6
**817.252.5200 [1]** 1/22
**817.850.6630 [1]** 138/21
**84112 [1]** 2/5
**8:39 a.m [1]** 13/7

**9**

**900 [1]** 2/8
**918 [1]** 63/18
**9:02 [1]** 1/10
**9th [1]** 138/15

**A**

**a.m [5]** 1/10 12/15 12/18
13/7 137/1
**Ababa [1]** 13/9
**ability [5]** 14/11 33/22
40/6 138/7 138/11
**able [12]** 8/25 15/16 26/2
41/24 62/3 79/19 80/4
80/5 86/10 91/5 128/10
130/25
**aboard [2]** 12/16 13/8
**about [93]** 8/23 9/14 10/3
12/22 15/2 18/2 19/2 19/15
19/18 24/23 25/16 25/22
25/24 30/18 35/1 39/7
40/3 40/11 40/20 43/9
45/11 48/23 49/19 50/21
57/6 57/22 61/11 61/16
61/22 62/5 65/6 65/15
66/5 67/19 68/17 70/2
70/2 71/14 71/24 72/16
73/11 78/13 78/17 78/19
82/24 83/12 83/17 89/24
90/1 90/6 92/2 93/24
93/25 94/4 94/23 95/1
95/8 95/22 96/24 97/19
97/24 97/25 104/5 106/11

**A**

**about...** **[29]** 106/12
108/23 108/23 112/19
112/25 113/1 113/18 114/6
114/14 115/3 115/7 115/8
115/23 116/12 117/12
117/18 119/5 122/2 123/1
123/2 125/1 126/18 128/14
130/16 131/19 132/13
132/18 133/21 135/8
**absolute** **[1]** 16/6
**accede** **[2]** 67/25 101/18
**acceded** **[1]** 60/12
**accept** **[5]** 72/6 110/19
111/1 111/19 126/4
**accepted** **[2]** 46/15 111/9
**accident** **[2]** 118/12 119/1
**accidents** **[5]** 108/4 117/13
117/19 117/23 118/23
**accomplish** **[1]** 73/4
**accordance** **[1]** 62/20
**account** **[1]** 120/11
**accountable** **[3]** 56/16
98/2 134/20
**accuracy** **[1]** 67/25
**accurate** **[6]** 69/16 71/6
71/9 71/10 71/13 71/20
**accurately** **[1]** 71/15
**acknowledge** **[3]** 33/11
72/5 72/7
**acknowledged** **[1]** 70/7
**acknowledges** **[2]** 23/8
108/3
**acknowledging** **[1]** 28/5
**acquitted** **[1]** 61/4
**across** **[2]** 61/20 69/4
**act** **[27]** 5/12 5/20 5/22
7/1 7/10 10/15 10/17 14/22
25/24 25/25 26/15 66/16
72/11 75/17 84/16 105/7
105/19 106/4 112/3 114/21
115/3 115/7 115/10 115/14

115/20 115/22 125/7
**acted** **[1]** 99/21
**action** **[3]** 35/4 113/14
114/7
**activated** **[4]** 12/19 13/10
85/10 88/25
**activation** **[1]** 13/18
**actors** **[1]** 97/22
**actual** **[1]** 118/22
**actually** **[13]** 43/8 49/3
50/16 67/13 80/14 102/20
107/15 109/18 112/6 112/24
119/1 129/16 129/21
**add** **[1]** 50/11
**added** **[1]** 10/20
**Addis** **[1]** 13/9
**addition** **[6]** 18/12 22/14
23/13 25/6 28/8 40/5
**additional** **[7]** 33/24 74/18
76/19 76/25 80/9 104/21
104/22
**address** **[10]** 43/11 68/15
69/21 70/24 73/12 80/22
81/24 96/2 107/21 138/20
**addressed** **[2]** 110/24
110/25
**addressing** **[1]** 128/20
**adequately** **[2]** 86/12
86/12
**adhere** **[1]** 84/24
**adjacent** **[1]** 32/11
**administrative** **[1]** 104/3
**admissible** **[1]** 58/9
**admission** **[1]** 135/19
**admit** **[1]** 128/10
**admitted** **[8]** 6/10 9/23
13/23 14/16 58/3 58/18
62/25 88/7
**admittedly** **[1]** 61/5
**admonition** **[1]** 54/5
**adopt** **[1]** 43/4
**adopting** **[1]** 79/2

**advance** **[2]** 82/22 83/4
**advanced** **[3]** 8/8 12/6
36/19
**advancing** **[1]** 36/18
**advisement** **[1]** 136/19
**advisory** **[1]** 32/16
**AEG** **[11]** 14/4 57/5 66/2
66/7 90/17 90/20 117/18
117/22 118/13 118/15
118/17
**affected** **[2]** 64/2 89/13
**affidavits** **[1]** 10/2
**affirmatively** **[1]** 61/22
**affirmed** **[1]** 112/17
**afforded** **[3]** 18/19 22/3
22/17
**afield** **[1]** 100/18
**afoul** **[1]** 65/3
**after** **[9]** 9/1 13/12 14/7
20/11 58/5 59/9 78/24
101/16 125/23
**again** **[36]** 6/13 8/15 8/22
9/19 11/13 12/9 13/3 13/10
13/14 14/19 16/1 16/24
24/3 25/17 29/16 29/22
33/3 34/14 44/3 54/13
62/18 75/25 76/16 86/5
86/13 86/19 86/21 89/16
89/17 90/18 90/22 111/4
124/24 128/25 130/20
134/4
**against** **[9]** 13/2 13/17
28/18 58/14 59/24 63/18
79/21 88/20 96/5
**ago** **[6]** 54/2 57/6 71/25
75/10 83/8 129/13
**agree** **[9]** 23/7 70/5 76/10
105/8 105/10 105/24
124/17 129/19 130/21
**agreed** **[13]** 19/21 52/22
73/3 73/18 74/3 78/22
78/25 80/2 93/21 100/9

**A**

**agreed…** [3] 110/25 121/23 133/2

**agreeing** [3] 30/23 129/5 133/4

**agreement** [75] 6/5 10/23 10/25 11/16 11/19 19/19 19/25 26/20 26/24 27/9 27/10 27/20 28/16 29/19 30/8 34/4 35/24 36/22 38/5 39/8 39/9 39/11 39/19 39/25 40/11 40/21 40/24 41/9 41/11 42/25 45/16 47/20 47/20 47/25 48/1 48/17 49/4 49/9 49/16 49/19 49/22 62/4 72/13 72/17 72/21 75/6 75/8 75/11 79/2 81/2 96/4 98/12 103/8 109/25 110/11 110/20 111/13 111/17 111/24 112/1 112/22 114/18 115/13 116/10 120/1 121/10 126/1 126/3 126/4 128/5 128/11 133/21 135/20 135/22 135/23

**agreements** [9] 11/15 26/16 29/9 52/2 55/4 99/1 111/15 116/8 120/3

**agrees** [1] 40/6

**ahead** [6] 33/7 33/9 69/25 70/1 101/11 125/12

**aimed** [1] 66/19

**Air** [7] 12/16 13/13 56/22 67/8 100/1 100/1 108/6

**airbag** [1] 73/22

**aircraft** [4] 12/19 12/21 13/11 66/25

**airline** [2] 73/25 88/25

**airlines** [9] 13/8 56/22 66/20 66/21 66/22 85/16 90/21 104/25 120/16

**airworthiness** [1] 61/18

**alien** [1] 63/23

**alien-smuggling** [4] 63/25 63/25 64/2 64/2

**align** [1] 50/19

**all** [86] 3/5 3/5 3/18 4/10 4/11 4/25 4/25 5/10 12/1 15/20 15/23 18/5 18/10 20/23 21/5 22/5 22/12 26/13 31/22 32/24 34/3 35/17 38/3 39/1 41/1 42/25 44/20 48/2 48/8 51/7 51/12 51/24 57/6 57/20 58/13 60/18 61/6 64/13 65/13 65/17 65/17 66/2 66/17 67/24 78/2 78/11 81/24 84/25 86/13 88/18 91/14 94/4 94/13 94/25 95/22 97/12 98/6 100/20 103/12 103/20 107/24 108/5 110/24 111/1 112/1 113/25 115/16 118/13 118/20 118/25 123/18 125/18 126/25 127/8 128/15 131/1 131/8 132/10 133/10 134/22 136/12 136/16 136/17 136/18 136/19 136/25

**alleged** [2] 92/7 117/22

**allow** [5] 96/12 105/24 123/20 125/2 125/3

**allowed** [8] 77/12 110/15 110/16 124/14 124/15 125/3 125/16 125/18

**allows** [3] 72/25 72/25 73/1

**almost** [9] 30/14 58/13 61/6 68/9 68/13 68/21 81/22 112/13 115/18

**alone** [5] 12/25 89/3 89/14 95/25 127/18

**along** [2] 106/16 130/11

**already** [9] 10/16 47/19 50/23 101/6 110/9 110/11

112/19 114/22 125/15

**also** [36] 3/21 5/22 4/5 4/21 5/6 5/17 6/16 11/1 13/1 14/14 15/25 16/23 18/13 20/17 21/24 28/20 37/23 40/6 65/23 66/7 66/12 72/12 72/12 86/2 90/7 90/8 92/6 93/11 104/15 115/23 116/18 116/24 120/5 120/7 132/25 133/19

**although** [4] 23/6 49/3 106/4 109/20

**always** [4] 32/2 51/7 51/8 131/15

**am** [6] 36/9 42/15 83/9 100/13 100/15 100/24

**ambit** [1] 80/14

**amended** [1] 119/12

**amending** [1] 10/21

**AMERICA** [2] 1/6 30/10

**amicus** [6] 20/19 25/18 29/15 64/19 68/19 76/4

**among** [2] 11/23 52/19

**amount** [2] 39/17 116/20

**analogy** [1] 104/20

**analysis** [5] 60/15 63/4 63/18 90/12 94/1

**ancillary** [1] 65/12

**announced** [1] 54/1

**announcement** [2] 9/8 10/13

**another** [16] 10/6 12/5 13/6 13/7 40/14 43/6 55/24 60/10 87/8 87/8 89/5 90/16 118/8 118/14 120/5 126/23

**answer** [7] 17/15 26/14 44/4 49/18 82/20 94/2 108/25

**ante** [1] 103/12

**anti** [1] 92/12

**A**

anti-paramilitary [1] 92/12

anticipating [1] 22/15

Antrobus [1] 117/7

any [55] 6/7 6/17 6/18 8/3 8/4 12/10 15/5 15/14 16/5 17/20 18/8 31/2 31/11 32/23 33/3 33/15 33/19 34/17 36/5 40/3 40/9 40/10 44/8 46/3 55/17 58/5 63/1 68/20 68/23 69/23 75/6 77/10 80/22 92/22 92/25 104/3 104/4 107/18 107/19 111/10 116/9 119/19 122/2 124/5 124/6 126/17 127/4 129/7 129/7 131/15 131/22 132/9 132/24 134/7 136/1

anybody [2] 71/21 136/21

anything [13] 12/1 25/16 33/15 37/20 40/3 46/11 53/1 79/12 83/24 98/3 103/17 130/11 136/21

AOA [4] 67/1 67/9 67/14 86/10

apologize [3] 71/21 136/12 136/15

apologized [2] 6/11 135/21

apologizes [2] 59/1 70/25

apparently [6] 37/17 86/13 86/13 91/5 131/3 134/9

appeal [5] 50/25 93/10 112/17 114/13 117/6

appealed [1] 44/14

appeals [5] 35/6 70/10 70/13 80/13 92/15

appear [2] 31/1 126/13

appearance [1] 32/12

appeared [1] 138/9

appears [1] 88/24

appellate [4] 2/4 45/23

46/3 114/17

APPLEBAUM [2] 2/10 3/11

applicable [2] 55/22 116/9

application [2] 18/12 18/13

applied [1] 38/4

applies [2] 11/3 49/8

apply [5] 8/5 34/17 49/15 55/2 130/24

appointment [1] 51/14

appreciate [7] 5/3 98/20 133/16 134/2 134/4 136/17 136/18

approached [1] 125/15

approaches [1] 11/15

appropriate [19] 16/16 21/9 29/20 34/12 41/25 56/15 60/24 61/1 65/14 69/14 72/12 75/1 76/24 78/5 80/12 103/2 121/6 122/9 133/14

approval [13] 26/21 26/22 26/24 27/1 27/3 27/8 29/19 67/15 106/2 114/23 114/25 115/8 126/19

approve [7] 27/10 39/25 40/11 114/16 114/19 126/20 126/25

approved [2] 87/7 99/19

approximately [5] 58/15 61/13 67/22 78/4 87/5

arbiter [1] 104/9

are [156]

area [1] 122/11

aren't [4] 21/20 32/14 41/1 133/4

argue [1] 134/5

argued [6] 7/12 11/1 16/25 19/10 49/1 58/12

arguing [2] 46/13 54/15

argument [28] 8/6 12/5 12/7 12/12 12/13 15/9 24/6 27/11 27/15 28/3 28/4

38/11 46/11 51/2 52/14 54/15 76/21 110/3 112/19 113/3 115/19 121/2 122/11 123/5 129/12 129/13 129/15 136/17

arguments [15] 8/8 8/11 15/5 15/12 16/6 36/18 48/24 50/2 50/3 79/13 110/17 111/1 112/12 125/19 127/12

arise [1] 74/20

around [5] 5/13 9/23 10/8 53/1 135/9

arraign [1] 33/14

arraigned [3] 31/10 32/21 33/17

arraignment [35] 5/18 30/1 30/4 30/9 30/12 30/17 30/24 31/5 31/19 31/20 31/23 31/25 32/10 32/13 32/18 34/8 34/9 55/1 76/7 76/7 76/10 76/11 77/16 122/10 122/18 122/19 122/21 122/23 123/1 123/2 123/3 124/10 136/6 136/7 136/11

arraignments [1] 51/17

array [2] 69/1 69/6

arrested [1] 37/16

arrive [1] 62/16

arrived [1] 106/15

artful [1] 129/24

article [4] 29/2 29/6 35/18 113/4

articles [1] 97/19

as [142]

aside [25] 5/8 19/25 20/1 36/21 39/7 42/1 48/18 49/5 49/10 49/16 49/22 50/13 54/11 56/12 103/9 103/22 105/16 105/22 106/7 113/4 113/5 134/17

# A

**aside...** [3] 135/13 135/20 135/23
**ask** [24] 20/23 25/3 29/21 34/19 34/21 39/7 41/14 43/3 43/6 64/2 70/8 74/9 75/21 80/23 81/12 82/7 84/10 85/8 91/8 94/4 96/2 99/6 100/22 117/24
**asked** [20] 26/5 47/21 51/8 68/16 70/2 71/24 73/11 97/4 100/15 100/16 100/21 107/16 109/12 112/19 114/14 116/12 117/11 119/4 120/7 133/19
**asking** [16] 17/24 41/5 41/6 47/2 47/4 49/19 49/21 49/25 53/14 100/4 103/13 119/5 119/6 119/8 119/10 119/21
**asks** [2] 108/22 126/9
**aspect** [1] 116/1
**aspects** [6] 24/8 25/19 26/11 89/18 89/18 90/1
**asserted** [1] 56/4
**assertion** [1] 8/22
**assertions** [2] 69/19 77/11
**assess** [2] 113/20 117/1
**assessing** [1] 109/6
**assessment** [2] 60/21 117/18
**assigned** [1] 48/5
**assistance** [2] 16/2 16/4
**ASSISTANT** [1] 1/20
**assume** [7] 21/7 88/16 96/11 98/5 100/2 100/5 109/14
**assumed** [1] 70/7
**assuming** [7] 11/21 24/17 76/13 76/16 118/9 118/9 126/13
**astonishing** [1] 24/12

**at** [151]
**attack** [1] 89/15
**attempted** [2] 79/25 87/4
**attend** [2] 124/8 126/6
**attention** [4] 20/17 29/3 54/19 85/13
**attenuated** [2] 63/8 117/8
**attorney** [13] 1/19 1/20 6/4 45/19 58/6 59/11 65/4 101/6 104/8 104/9 108/15 133/16 133/24
**attorneys** [2] 23/14 30/6
**August** [1] 37/17
**authorities** [4] 7/11 13/15 22/22 129/23
**authority** [31] 24/10 26/14 26/16 28/25 29/17 33/4 36/10 38/9 70/8 71/23 74/9 74/12 74/25 75/3 75/5 75/16 105/7 105/9 105/21 105/23 105/25 106/6 109/15 115/25 116/5 121/24 131/12 134/21 134/23 135/3 135/4
**authorize** [3] 31/18 53/25 73/15
**available** [5] 14/18 20/16 20/21 58/23 121/15
**Avenue** [2] 2/11 2/20
**aviation** [1] 132/17
**avoid** [3] 18/9 21/8 38/20
**avoids** [1] 30/8
**award** [2] 17/20 36/15
**awarded** [2] 87/23 88/3
**aware** [12] 5/17 8/17 23/13 23/14 32/20 42/15 50/18 67/6 100/13 100/14 100/15 121/6
**away** [3] 43/15 87/5 113/9

# B

**back** [34] 37/3 41/1 41/3 41/15 42/25 46/5 46/8

49/23 55/12 63/24 75/21 79/22 81/19 85/7 86/17 87/17 94/3 95/15 95/20 97/14 98/8 103/16 107/3 110/14 110/22 111/8 112/8 120/19 120/19 120/23 124/15 126/8 129/9 134/1
**background** [3] 112/14 124/1 124/23
**bad** [1] 67/14
**banc** [7] 38/12 38/13 38/16 39/2 65/7 113/11 113/13
**bank** [5] 87/3 87/3 87/4 87/8 87/9
**bargain** [5] 28/10 29/8 46/14 46/25 48/17
**bargaining** [4] 11/8 37/1 48/12 48/13
**base** [2] 121/4 121/7
**based** [25] 14/19 15/6 40/11 41/11 52/22 58/17 60/21 62/13 62/24 63/1 64/3 66/20 66/22 68/25 78/5 85/16 85/17 89/4 97/7 101/15 105/14 105/16 106/7 121/22 130/5
**basement** [1] 62/16
**basic** [1] 34/24
**basically** [2] 82/9 83/13
**basis** [14] 63/5 66/14 92/19 93/22 102/5 102/7 102/22 106/8 107/2 113/25 115/23 115/24 119/21 135/20
**bathroom** [1] 127/6
**BAUER** [2] 2/16 4/24
**be** [186]
**Bean** [1] 28/14
**bearing** [1] 132/5
**bears** [1] 93/5
**became** [2] 89/18 133/8

**B**

**because [90]** 5/12 7/17
9/24 15/3 15/9 15/14 18/1
18/9 28/10 28/19 30/15
30/20 33/17 33/20 34/1
34/2 35/13 36/16 37/23
38/4 39/9 40/21 42/12
43/7 43/11 44/24 45/13
47/21 49/5 49/18 49/23
51/6 51/11 57/11 57/25
58/22 60/15 61/25 62/18
64/17 65/11 65/16 66/1
67/18 68/10 72/2 72/3
73/14 74/18 75/10 81/9
82/2 83/12 84/3 85/9
86/13 87/14 88/5 88/10
88/17 88/18 89/10 93/9
94/18 96/18 96/23 97/8
98/7 99/20 101/24 104/7
105/13 111/3 112/8 112/23
113/4 113/8 115/5 116/25
118/1 118/17 120/20 120/23
120/24 124/23 126/9
130/3 131/21 132/1 136/2
**become [1]** 33/20
**becomes [5]** 27/2 27/9
45/18 49/20 79/19
**been [65]** 8/18 8/23 8/24
10/1 17/2 20/19 21/17
29/18 33/2 34/1 34/17
34/18 35/3 37/6 37/12
37/20 46/12 46/13 51/8
52/21 60/8 60/18 60/19
65/20 71/3 71/12 71/13
71/20 74/15 75/18 75/20
76/4 76/18 78/15 86/24
87/21 88/3 88/17 89/5
93/15 95/2 95/6 97/18
102/20 104/22 105/15
109/24 109/24 109/24
110/6 110/9 110/11 111/4
111/5 111/9 112/1 112/3

115/17 118/13 122/4 125/17
126/13 128/21 131/3
135/25
**befell [1]** 132/22
**before [23]** 1/14 11/3
23/12 24/19 25/8 25/12
25/22 36/13 46/14 49/20
59/2 61/12 70/12 77/23
81/2 84/13 84/20 103/12
108/8 109/3 116/2 123/22
134/14
**began [2]** 8/20 9/2
**begging [2]** 133/4 133/5
**begin [4]** 77/24 107/23
107/25 128/4
**beginning [2]** 136/13
136/14
**behalf [3]** 3/9 4/17 107/9
**behind [1]** 120/4
**being [13]** 3/5 3/19 4/10
4/14 11/17 24/24 26/3
56/5 63/24 79/6 79/25
80/19 132/21
**believe [13]** 8/7 36/12
58/8 60/23 84/22 84/22
94/15 95/24 100/12 119/22
121/18 122/8 124/4
**believed [5]** 59/24 60/16
62/2 69/4 96/7
**belongs [2]** 51/21 51/21
**Ben [2]** 4/16 107/8
**beneficiaries [1]** 59/2
**benefit [5]** 78/2 107/11
111/10 130/17 130/18
**benefits [1]** 77/7
**BENJAMIN [1]** 2/15
**Berthet [1]** 4/2
**best [8]** 16/24 22/16
22/19 55/25 84/9 125/6
138/7 138/11
**better [5]** 8/6 33/24 50/3
52/6 105/4

**between [9]** 16/21 26/3
54/2 54/5 69/19 72/19
79/25 88/1 106/21
**beyond [15]** 7/14 7/19
17/2 17/5 58/9 59/24 62/2
80/5 93/19 97/22 104/16
114/1 114/3 132/9 132/9
**bid [2]** 88/18 88/18
**big [2]** 46/9 48/22
**bill [1]** 5/24
**billion [1]** 40/15
**bind [1]** 98/12
**bit [6]** 8/23 35/9 65/6
65/15 81/19 129/13
**blame [1]** 51/20
**block [1]** 10/10
**blocking [1]** 36/22
**board [1]** 13/9
**body [1]** 112/14
**BOEING [93]** 1/9 2/15
4/15 4/17 4/19 9/4 10/10
11/22 14/1 14/15 19/3 20/7
20/14 22/8 25/23 26/3
27/17 27/18 30/6 30/7
30/17 31/10 32/24 33/14
33/17 33/19 33/21 34/2
34/6 34/13 40/15 40/16
42/12 52/12 52/17 52/20
53/11 54/25 56/15 57/23
58/18 59/24 60/7 60/9
61/10 61/10 61/16 61/21
66/14 66/17 66/21 68/24
73/7 73/8 74/1 74/3 77/1
77/10 77/12 77/15 78/6
84/16 85/22 89/20 90/1
90/6 90/10 95/12 96/5
97/22 98/1 98/10 98/11
98/23 98/23 99/24 107/9
108/2 108/3 115/17 120/12
120/12 120/18 120/19
120/23 122/3 128/11
129/14 129/24 132/17

**B**

**BOEING…** **[3]** 132/20 134/20 135/25
**Boeing's [16]** 9/8 12/7 12/18 12/23 13/4 13/20 14/10 14/16 15/18 16/21 17/13 31/21 31/21 120/16 130/3 134/7
**bond [1]** 122/10
**both [15]** 13/20 14/15 38/16 64/4 70/5 76/15 86/4 93/10 105/13 115/4 115/5 116/2 117/19 117/20 129/19
**bother [1]** 55/20
**bound [2]** 11/6 100/24
**boy [1]** 98/22
**BP [6]** 47/17 47/18 64/7 64/8 72/20 110/1
**Brad [1]** 36/1
**Brady [1]** 22/24
**BRAMMEIER [2]** 2/13 3/16
**Branch's [1]** 42/10
**BRANDON [2]** 2/16 4/20
**break [2]** 24/6 127/6
**breaks [1]** 86/15
**brief [23]** 6/12 8/2 17/18 20/20 23/7 23/16 25/18 29/15 30/19 30/25 38/2 39/2 57/9 59/1 62/11 63/19 80/20 101/14 107/24 108/2 119/11 121/2 122/16
**briefed [1]** 122/4
**briefing [11]** 7/18 37/13 102/10 107/11 107/11 115/16 119/14 120/7 125/16 125/18 126/17
**briefings [1]** 78/2
**briefly [1]** 122/10
**briefs [14]** 8/23 22/9 26/17 27/12 29/11 37/14 37/14 37/14 37/15 38/15

92/23 93/1 107/24 135/1
**bring [14]** 42/3 59/23 60/17 64/14 70/21 80/4 80/17 80/17 97/4 97/7 114/4 116/20 130/15 131/1
**bringing [2]** 96/4 98/13
**British [2]** 47/25 48/1
**broad [6]** 7/8 11/20 11/21 15/1 69/1 69/6
**broadly [1]** 113/17
**broken [1]** 86/2
**brought [3]** 58/10 97/14 113/22
**burden [1]** 105/23
**burdensome [1]** 45/20
**BURNS [2]** 2/7 3/9
**Business [1]** 138/20
**but [178]**
**but-for [15]** 63/15 63/20 63/22 86/3 91/6 93/25 96/1 116/16 116/18 116/21 116/23 116/23 116/24 117/2 131/12

**C**

**cabined [2]** 62/3 94/10
**calculation [1]** 69/11
**California [1]** 4/5
**call [6]** 20/17 29/3 30/1 54/19 92/12 119/16
**called [5]** 9/10 9/11 9/18 65/10 104/21
**came [7]** 38/18 61/24 65/19 82/5 98/15 125/17 125/24
**can [60]** 7/14 10/7 12/2 15/1 15/6 18/16 19/3 19/6 20/7 21/15 22/5 22/19 23/10 26/19 28/16 29/7 29/8 29/11 29/11 32/12 33/6 34/10 34/25 39/8 39/11 39/12 39/21 41/1 44/23 47/7 47/12 50/12

51/4 53/5 53/18 56/7 58/3 58/8 82/21 87/23 89/22 84/8 85/23 89/6 93/19 93/20 96/21 99/10 111/12 114/2 114/14 121/7 124/5 125/6 128/21 129/4 129/4 129/19 130/5 136/20
**can't [20]** 16/5 26/9 28/2 30/19 31/20 36/14 37/2 37/20 50/17 97/17 97/20 99/7 113/4 116/15 120/19 120/23 126/8 135/11 135/23 136/1
**Canada [1]** 4/8
**Canal [1]** 2/17
**candidly [2]** 99/4 102/3
**candor [2]** 23/15 23/17
**cannot [4]** 8/25 13/19 28/10 57/25
**canon [1]** 27/6
**car [1]** 87/9
**care [2]** 41/18 70/22
**careful [3]** 20/20 53/20 78/17
**carefully [7]** 25/20 26/12 26/14 27/20 59/22 79/12 98/6
**carried [1]** 118/16
**carriers [2]** 130/24 130/24
**case [181]**
**cases [30]** 8/2 17/1 27/18 28/14 35/22 37/9 42/12 42/17 53/25 59/14 75/9 77/21 78/9 86/19 102/1 102/8 107/12 109/11 112/13 112/16 112/16 115/2 115/6 116/17 116/18 117/3 117/7 121/6 121/18 126/9
**CASSELL [21]** 2/3 3/11 5/1 37/19 98/7 105/9 107/22 109/20 112/21 114/11 119/4 119/8 119/20 121/2 121/14

**C**

CASSELL... **[6]** 121/20
122/1 122/25 124/18 126/9
126/19
Cassell's **[2]** 112/12 122/12
catastrophic **[2]** 132/18
132/21
categories **[1]** 73/16
Catherine **[1]** 4/1
causal **[17]** 63/8 63/10
64/5 64/14 65/16 65/17
68/2 85/14 86/16 88/1
88/1 90/23 94/5 94/13
95/23 106/20 106/21
causation **[15]** 63/16
63/22 63/23 64/15 64/23
86/4 91/6 91/7 93/17
93/24 93/25 94/4 96/1
116/25 131/12
cause **[19]** 62/6 63/12
63/15 64/1 64/2 64/4 64/9
64/11 89/9 89/10 89/10
89/12 89/13 95/25 116/16
116/23 131/11 131/13 131/16
caused **[1]** 67/10
causes **[6]** 63/20 89/15
131/6 131/10 131/14 132/18
cautioned **[1]** 53/24
central **[1]** 5/11
certain **[9]** 32/13 35/4
74/25 76/14 77/5 77/21
99/19 114/18 120/4
certainly **[18]** 74/12 75/11
75/23 77/18 95/24 98/9
98/10 102/3 102/24 116/17
119/17 121/6 121/16 121/25
122/23 123/4 124/13 132/9
CERTIFICATE **[1]** 138/2
certify **[2]** 138/4 138/12
CHAD **[2]** 1/19 4/13
chain **[2]** 86/16 130/22
chance **[6]** 20/5 46/24

46/24 47/5 59/6 59/7
change **[4]** 45/22 48/25
123/18 134/25
changed **[2]** 59/5 117/25
changes **[3]** 77/5 102/11
120/16
chapter **[1]** 109/21
CHAREST **[2]** 2/7 3/9
charge **[23]** 28/6 38/7
58/8 58/16 58/19 58/20
59/20 61/5 61/5 70/21
72/14 72/19 73/14 75/25
76/3 79/19 80/12 99/25
99/25 100/1 107/2 111/25
112/1
charged **[32]** 38/23 57/2
57/3 57/11 57/12 57/18
58/5 60/7 60/11 60/17
61/8 62/9 62/13 64/5 65/3
67/19 68/7 69/17 70/6
70/22 73/5 79/18 87/1
88/12 88/13 92/19 94/21
94/22 106/22 121/9 121/10
121/12
charges **[13]** 11/4 27/25
28/2 28/5 33/2 38/5
59/23 80/9 97/14 111/25
114/4 127/24 128/21
charging **[5]** 17/2 17/5
60/9 70/18 75/19
chase **[1]** 63/25
chat **[2]** 89/21 89/21
checklist **[1]** 51/18
Cheever **[1]** 28/15
Cherry **[1]** 1/21
Chicago **[2]** 2/14 3/17
chicken **[1]** 81/7
chief **[1]** 60/12
children **[1]** 4/8
choose **[1]** 72/6
Chris **[2]** 4/4 4/4
chronology **[1]** 35/5

circuit **[93]** 7/11 7/12 7/13
8/3 11/2 11/4 11/5 16/18
16/23 17/1 17/7 27/21 28/1
28/8 28/9 28/11 28/12
28/13 28/14 28/15 28/19
33/4 33/5 33/8 35/9
36/25 37/2 37/22 38/12
38/13 38/16 38/20 38/21
39/1 39/1 39/5 39/6 39/8
42/6 42/19 42/23 45/9
45/10 46/8 46/20 48/9
48/9 49/9 50/19 50/20
50/21 62/15 63/10 63/17
72/15 79/5 79/10 81/20
84/23 86/20 88/4 88/16
89/11 91/20 91/24 92/4
92/5 93/1 93/4 93/8 93/9
103/16 109/15 109/23
110/13 110/20 111/4 112/8
113/10 116/7 116/8 116/13
117/5 121/7 122/8 123/1
123/11 128/18 128/19
128/24 129/1 129/7 129/8
Circuit's **[3]** 65/7 74/10
74/11
circumstance **[1]** 135/22
circumstances **[7]** 32/13
43/13 57/20 69/10 74/13
74/14 74/25
circumvented **[1]** 34/18
citation **[1]** 91/20
cite **[5]** 9/3 16/17 27/13
27/21 32/1
cited **[22]** 7/7 7/11 8/1
11/1 16/24 22/22 26/17
28/14 29/2 31/7 31/15
39/2 42/13 42/24 52/25
62/14 67/9 77/15 90/18
91/16 112/21 131/11
cites **[3]** 37/8 50/16 50/16
citing **[1]** 37/9
City **[2]** 2/5 47/15

**civil [7]** 38/9 38/9 57/15 63/6 64/11 83/24 128/23

**claim [3]** 68/19 83/19 115/16

**claimed [2]** 87/6 92/16

**claims [2]** 90/4 90/20

**clean [2]** 50/22 50/23

**cleaned [2]** 25/24 25/25

**clear [15]** 7/1 11/12 14/22 15/11 17/16 20/9 42/23 55/23 87/24 105/19 121/16 127/25 133/8 133/15 133/19

**clearly [13]** 10/15 11/3 11/11 11/24 26/15 31/4 52/8 107/10 131/10 131/16 132/19 132/22 136/13

**clients [3]** 3/22 22/25 52/9

**CLIFFORD [2]** 2/13 3/16

**close [8]** 85/13 86/25 87/14 87/15 87/16 98/3 107/4 135/17

**closely [2]** 24/8 24/9

**cloth [1]** 73/21

**co [1]** 37/24

**co-conspirator [1]** 37/24

**cocaine [1]** 94/7

**cognizant [1]** 51/25

**cold [1]** 15/19

**colleague [3]** 4/21 35/25 84/16

**colleague's [1]** 91/20

**collected [5]** 17/1 60/1 62/20 68/4 83/19

**collects [1]** 29/6

**COLLEGE [1]** 2/3

**Colombia [2]** 92/11 94/6

**combine [1]** 91/3

**combined [1]** 60/23

**come [30]** 30/20 34/11

41/3 41/14 42/25 46/24 50/9 61/20 69/4 75/21 79/9 79/22 86/17 87/17 94/3 95/15 95/20 97/14 98/22 105/25 107/3 112/18 119/3 120/4 123/21 124/24 128/22 131/15 135/11 136/8

**comes [4]** 30/7 38/3 98/9 98/21

**coming [6]** 49/23 51/12 61/12 83/10 122/11 136/17

**commendable [1]** 101/8

**comment [1]** 71/16

**commentators [1]** 52/25

**comments [1]** 107/21

**commercial [1]** 26/7

**commission [5]** 63/3 63/14 86/25 87/11 87/15

**commit [3]** 32/23 33/19 33/21

**committed [5]** 22/25 37/17 59/13 104/15 104/17

**committee [1]** 32/16

**common [2]** 21/25 112/11

**commonly [1]** 122/15

**communicated [1]** 14/9

**communication [1]** 71/6

**communications [2]** 66/21 104/25

**company [5]** 1/9 2/15 77/6 99/18 107/9

**competitive [1]** 87/19

**competitor [2]** 87/18 87/22

**complaint [1]** 88/10

**complaints [1]** 104/3

**completely [1]** 55/22

**complex [1]** 117/19

**compliance [2]** 120/17 126/21

**complicated [2]** 21/8 84/3

**complied [1]** 126/14

**comply [1]** 138/13

**complying [1]** 115/17

**component [1]** 90/16

**concealed [3]** 51/22 88/11 88/12

**concealing [3]** 88/15 133/7 136/3

**concealment [3]** 116/15 117/17 117/22

**concede [3]** 25/7 93/16 100/4

**conceded [2]** 16/14 121/24

**concept [3]** 70/16 92/10 94/3

**concepts [2]** 83/25 117/8

**concern [1]** 74/20

**concerned [2]** 15/14 74/18

**concerning [2]** 8/18 69/7

**concerted [1]** 80/3

**concession [1]** 79/2

**concessions [1]** 77/11

**conclude [8]** 12/1 13/3 15/3 20/24 21/19 89/3 101/1 127/18

**concluded [3]** 101/3 116/3 137/1

**conclusion [10]** 7/22 16/2 16/3 22/23 24/19 54/14 55/17 73/3 97/4 98/22

**condition [2]** 33/18 76/20

**conditions [12]** 30/1 32/22 32/25 33/24 34/10 34/12 76/7 76/14 76/17 76/19 76/24 76/25

**condolences [1]** 108/5

**conduct [24]** 30/16 58/2 62/1 66/2 66/15 66/19 68/25 69/19 73/2 90/17 90/17 90/22 92/16 97/10 97/11 97/15 98/16 99/20 106/22 107/1 116/16 116/20 122/23 123/20

**C**

**conducted [4]** 30/12 30/16 31/25 32/10

**confer [30]** 6/3 6/15 6/15 9/13 18/2 18/7 19/1 19/6 19/18 19/24 36/2 36/5 36/8 37/8 37/9 41/17 49/19 50/7 50/8 50/13 54/9 55/11 55/17 56/10 100/25 129/5 134/5 134/6 134/14 134/19

**Conference [1]** 138/14

**conferral [9]** 20/3 36/24 40/1 49/3 49/5 127/25 133/20 134/1 134/3

**conferred [2]** 6/10 39/24

**conferring [4]** 6/12 47/21 56/13 59/2

**confident [6]** 46/21 48/16 52/9 123/13 123/16 125/2

**confirm [1]** 11/22

**confirmed [1]** 24/18

**confirming [2]** 95/8 95/10

**conflate [1]** 90/10

**conflating [1]** 131/7

**conformity [1]** 116/20

**confused [1]** 9/18

**Congress [13]** 7/7 10/20 11/6 18/15 18/16 20/12 32/8 48/11 55/12 56/3 104/7 104/7 134/13

**congressional [2]** 90/18 90/19

**congressionally [1]** 135/8

**connect [1]** 19/22

**connected [1]** 117/23

**connection [7]** 16/20 63/10 64/5 85/4 93/5 106/4 131/25

**connects [1]** 5/15

**connived [1]** 32/24

**consequences [1]** 132/18

**consider [14]** 63/9 80/9 81/21 84/14 91/5 91/13 91/13 91/25 92/17 92/18 93/2 101/25 104/6 127/5

**consideration [2]** 86/3 105/3

**considerations [1]** 69/13

**considered [7]** 62/7 64/22 69/13 93/14 106/25 111/8 123/22

**considering [1]** 125/9

**consistent [2]** 49/16 123/25

**conspiracy [25]** 12/7 14/16 15/18 16/21 17/14 57/4 59/21 60/4 60/7 60/11 66/11 66/14 66/18 69/8 88/11 88/11 88/13 88/15 88/19 90/5 92/7 93/6 94/25 116/16 130/3

**conspirator [1]** 37/24

**conspirators [10]** 60/3 60/6 61/9 66/4 66/15 66/16 67/6 90/9 90/11 91/2

**conspired [1]** 14/2

**constrained [1]** 58/1

**constructed [1]** 83/8

**constructing [1]** 78/17

**construction [7]** 27/5 27/6 67/22 71/5 78/9 95/24 105/10

**consult [1]** 25/16

**consultation [11]** 59/6 74/6 80/1 81/2 109/25 110/2 110/6 110/8 111/6 111/11 112/9

**consultations [1]** 59/5

**consulted [2]** 25/7 74/5

**consuming [1]** 21/8

**consummated [2]** 81/2 84/13

**contained [1]** 117/13

**contemplated [2]** 112/21 112/22

**contend [1]** 75/4

**content [1]** 118/11

**contention [1]** 76/18

**contents [1]** 99/15

**contested [1]** 55/3

**context [5]** 52/1 62/19 77/16 92/10 92/19

**contexts [1]** 76/11

**continues [2]** 10/5 73/7

**contours [1]** 101/21

**contract [7]** 87/23 87/25 88/3 119/25 120/1 120/1 120/6

**contractor [2]** 87/19 87/20

**contractual [1]** 75/11

**contractually [2]** 40/17 74/3

**contradict [1]** 77/13

**contradicting [1]** 39/3

**contrary [6]** 28/20 29/14 55/9 55/14 82/8 90/19

**contrast [1]** 111/24

**control [4]** 12/21 67/3 90/21 118/18

**controlling [3]** 28/18 39/6 44/24

**convenient [1]** 55/19

**conversation [1]** 95/10

**conveyed [1]** 71/3

**convict [1]** 98/23

**conviction [2]** 62/24 73/15

**convince [3]** 20/14 50/14 56/14

**convincingly [1]** 15/17

**cooperating [2]** 9/5 9/9

**cooperation [1]** 77/23

**cooperator [2]** 77/21 77/23

# C

core **[2]** 107/14 121/1

corporate **[2]** 69/9 69/18

corporation **[1]** 73/1

correct **[2]** 31/14 138/5

correctly **[1]** 135/2

corrupt **[2]** 87/24 88/2

could **[62]** 10/3 10/13 10/23 12/11 13/3 14/14 14/19 15/2 15/13 15/14 19/7 21/8 23/24 25/10 30/14 34/13 39/23 40/7 40/19 41/10 42/24 48/18 49/11 54/18 55/16 59/23 59/24 62/2 63/5 63/20 65/3 72/6 77/18 79/17 79/18 80/17 81/24 82/15 82/19 94/14 96/7 97/4 97/7 97/14 98/10 98/23 102/14 102/17 102/24 105/16 108/23 112/20 113/5 120/18 121/4 124/10 124/20 127/18 130/3 130/18 132/18 133/6

couldn't **[2]** 17/20 76/23

counsel **[3]** 83/7 107/16 125/20

counsel's **[1]** 79/13

Count **[2]** 109/3 113/24

Count I **[2]** 109/3 113/24

country **[5]** 8/4 14/5 34/5 53/1 119/20

counts **[2]** 11/22 61/4

couple **[10]** 54/7 68/15 69/21 75/9 92/2 98/24 106/11 107/21 116/12 117/11

course **[19]** 7/24 28/3 29/7 39/4 57/5 68/3 69/5 82/15 87/9 87/11 101/19 102/14 103/8 110/21 111/14 111/20 118/17 131/25 135/21

court **[198]** 3/20 6/18 8/17 13/25 21/2 21/3 24/3 29/22 38/9 74/21 77/25 79/24 84/24 90/12 90/13 101/19 101/22 107/13 107/17 110/12 112/2 112/3 112/19 114/20 115/25 123/7

court's **[26]** 3/23

courthouse **[1]** 33/1

courts **[8]** 8/4 11/6 17/2 32/9 78/16 82/2 100/24 122/17

cover **[3]** 24/22 128/9 130/22

covered **[6]** 11/17 24/24 25/4 25/4 35/17 41/1

COVID **[1]** 138/8

COVID-19 **[1]** 138/8

coy **[1]** 8/23

cr **[2]** 1/6 128/22

crafted **[1]** 11/14

crafting **[1]** 128/4

crash **[32]** 8/9 8/13 8/13 8/15 11/23 15/7 20/25 56/22 59/2 65/21 65/22 65/23 67/8 67/9 67/14 68/1 68/5 71/1 71/11 71/18 73/25 74/5 77/9 85/11 85/15 86/4 89/14 108/1 120/15 127/15 131/11 133/11

crashed **[1]** 87/10

crashes **[32]** 4/3 4/9 6/22 7/4 8/19 8/21 9/1 9/2 9/6 9/13 9/20 9/25 10/11 17/17 57/15 57/17 57/21 57/25 60/20 65/22 68/7 77/10 85/2 85/15 88/25 94/20 106/21 131/10 131/19 131/23 131/25 132/6

create **[5]** 7/8 17/9 68/6 68/6 80/7

created **[8]** 13/4 13/21 13/23 23/3 25/3 41/25 49/14 130/6 132/14

creating **[5]** 13/5 19/4 64/25 128/19 130/7

creation **[1]** 66/24

credible **[1]** 61/21

credit **[1]** 40/18

crew **[15]** 12/8 12/17 12/20 12/24 12/25 13/1 13/4 13/9 13/16 13/21 14/17 14/20 67/11 91/5 130/1

crime **[107]** 5/12 5/20 5/22 5/24 6/8 6/15 6/24 7/4 7/5 7/6 7/9 7/14 7/15 7/15 8/9 8/14 8/16 9/11 10/15 10/17 11/11 13/4 13/5 13/21 14/16 14/22 15/7 17/5 17/8 17/10 17/21 17/25 18/4 18/18 19/23 20/25 22/3 22/11 22/17 24/2 35/3 35/12 53/15 55/18 56/25 57/1 57/3 57/10 57/11 58/5 58/20 59/19 62/7 62/13 67/19 68/7 69/17 70/6 70/6 70/13 70/14 71/18 72/2 72/4 73/5 73/17 74/2 80/3 80/24 81/11 81/15 82/3 82/6 82/20 82/25 87/1 87/14 88/12 88/13 89/4 92/16 92/19 93/3 94/21 94/22 99/1 99/3 100/8 100/10 100/11 101/18 102/16 104/18 106/25 109/9 113/22 116/22 121/8 121/9 121/10 121/12 123/19 127/13 128/7 128/13 130/8 133/12

crimes **[15]** 11/16 11/23 11/25 24/14 24/24 25/4

C

crimes... **[9]** 32/23 33/19 33/21 56/16 65/3 69/2 69/6 79/18 80/17

criminal **[49]** 5/23 7/22 9/9 10/7 10/10 13/24 14/1 30/9 30/11 33/2 34/5 34/17 38/19 57/18 58/2 58/11 58/16 58/19 60/4 60/6 60/15 62/1 62/9 62/18 62/19 62/21 64/10 64/18 65/24 66/1 66/16 69/8 69/19 80/4 89/16 97/15 97/20 97/21 97/21 99/20 99/22 107/2 109/3 111/20 113/24 117/16 117/23 128/4 128/23

criminally **[3]** 56/15 98/2 130/8

critically **[1]** 10/14

Cruz **[8]** 10/21 20/18 25/18 25/21 26/5 40/5 45/21 135/15

Cruz's **[1]** 29/15

curious **[1]** 23/6

customers **[1]** 74/1

cut **[3]** 10/9 35/24 45/1

CVRA **[102]** 5/12 6/9 7/5 8/2 8/10 10/22 11/3 15/8 17/22 18/4 18/7 18/10 18/11 18/13 18/15 18/17 18/19 18/21 18/24 18/25 20/19 20/25 22/1 22/3 22/4 22/14 22/18 22/20 37/5 37/12 38/4 38/8 45/14 45/22 50/5 50/23 54/8 55/7 55/10 55/14 55/17 55/23 56/11 57/1 58/21 58/23 59/18 59/19 60/15 65/4 69/23 71/18 72/4 74/2 74/7 78/11 78/13 78/21 79/14 80/14

80/15 81/1 82/8 83/3 83/13 102/15 103/2 103/4 103/7 103/14 103/20 103/25 104/1 104/2 104/4 104/12 104/18 105/17 106/19 107/1 108/10 108/11 108/14 108/14 108/21 108/25 110/25 111/21 113/14 113/20 113/24 119/22 119/24 121/4 121/15 121/22 124/18 126/6 127/13 130/7 133/12 134/22

CVRA's **[1]** 100/24

D

D.C **[16]** 2/21 27/21 28/1 28/8 28/9 28/12 72/15 74/11 91/20 91/24 92/4 92/5 93/1 93/4 93/8 93/9

Dallas **[1]** 2/8

damaged **[1]** 87/10

dark **[1]** 45/2

DARREN **[2]** 2/7 3/8

daughter **[1]** 4/3

David **[1]** 4/4

day **[9]** 36/13 36/17 36/18 54/22 55/5 110/7 123/24 125/8 138/15

days **[4]** 31/3 54/20 55/2 58/15

de **[2]** 91/20 93/24

dead **[1]** 37/19

deal **[8]** 10/10 13/17 19/14 45/2 49/6 50/10 126/20 127/1

dealt **[1]** 127/14

Dean **[48]** 11/1 11/2 37/8 38/19 38/22 39/3 43/7 43/8 46/19 47/15 49/15 49/16 49/21 50/16 70/2 70/2 70/3 70/5 72/20 79/23 79/23 80/1 81/6

81/6 81/8 82/10 100/23 109/14 109/15 109/18 109/19 109/23 111/12 111/17 112/5 112/6 121/9 121/11 123/10 124/14 124/23 125/11 125/15 125/23 128/20 128/25 129/1 129/8

Dean's **[1]** 124/1

death **[1]** 12/21

deaths **[5]** 16/21 96/6 132/3 134/8 135/10

decades **[2]** 29/1 29/14

deceived **[1]** 6/21

decency **[2]** 10/12 21/24

deception **[1]** 71/5

decide **[6]** 17/21 28/2 43/12 82/18 111/19 124/10

decided **[4]** 56/24 92/3 123/11 132/5

decides **[2]** 56/8 114/20

deciding **[1]** 110/19

decision **[32]** 11/6 34/14 34/15 35/10 38/17 45/19 46/19 49/23 54/4 65/2 65/7 65/7 70/18 74/10 74/11 74/21 78/10 78/19 81/23 82/7 86/21 90/15 91/9 101/14 101/15 109/22 110/4 113/6 122/8 124/24 134/6 134/14

decision-making **[1]** 34/14

decisions **[10]** 42/10 114/9 114/12 114/17 116/13 116/14 118/13 118/15 118/18 134/14

declaration **[1]** 72/22

dedicate **[1]** 123/13

deepest **[1]** 108/5

defeating **[1]** 14/3

defendant **[21]** 1/10 19/14 26/20 26/24 30/9 31/18

**D**

**defendant... [15]** 32/5 32/12 32/18 33/6 33/11 35/24 45/1 56/5 62/25 70/4 80/2 87/25 88/7 93/21 128/4

**defendant's [2]** 7/23 17/10

**defendants [4]** 11/17 24/24 30/3 32/25

**Defense [1]** 53/8

**defer [2]** 111/24 115/12

**deferral [1]** 126/10

**deferred [11]** 6/5 10/18 10/23 10/24 11/15 52/2 62/4 72/13 72/17 112/2 134/18

**defined [3]** 57/19 58/16 93/17

**definition [9]** 7/8 31/12 57/1 59/19 73/17 104/19 108/21 117/10 124/21

**defraud [3]** 14/2 57/4 59/21

**degree [3]** 102/4 105/2 106/23

**delay [3]** 31/9 31/12 78/3

**delayed [3]** 70/8 77/22 81/10

**demonstrate [2]** 12/10 15/17

**denied [4]** 58/24 111/7 113/9 115/6

**denies [1]** 43/8

**deny [4]** 38/25 43/14 48/15 80/21

**denying [2]** 109/19 110/13

**department [22]** 8/20 9/10 9/22 10/3 10/18 22/16 22/19 51/21 59/13 67/24 71/2 71/7 71/8 71/14 96/3 99/24 104/11 105/3 120/17

120/20 122/3 127/20

**Department's [2]** 29/5 103/1

**depend [5]** 81/5 97/2 97/3 98/14 98/15

**deprived [3]** 34/1 34/18 35/3

**described [11]** 18/19 22/18 56/4 60/3 60/13 60/19 60/19 62/11 62/15 62/23 85/14

**describing [1]** 61/17

**deserve [1]** 23/8

**deserves [1]** 53/20

**design [8]** 57/21 57/24 66/24 66/25 90/24 90/25 91/1 99/13

**designating [2]** 104/8 104/9

**designed [3]** 55/15 80/15 80/16

**designees [2]** 58/6 108/15

**despite [1]** 78/1

**detailed [1]** 43/24

**details [2]** 95/11 133/23

**determination [14]** 7/16 17/6 17/24 29/20 62/17 62/23 66/9 69/14 79/24 80/11 80/16 93/16 105/14 118/1

**determinations [2]** 58/6 62/10

**determine [13]** 17/3 35/2 63/1 75/3 80/24 81/14 82/3 82/19 84/18 102/16 114/2 123/18 128/2

**determined [9]** 37/11 65/12 70/10 81/5 81/14 82/6 111/1 118/6 124/7

**determines [1]** 126/4

**determining [1]** 59/15

**detriment [1]** 120/5

**devoted [1]** 119/13

**dicta [2]** 110/4 111/5

**dictate [1]** 108/13

**did [77]** 6/16 13/16 18/3 18/22 19/14 27/12 36/8 36/8 36/9 41/15 46/23 46/24 47/3 47/10 57/16 57/17 59/3 59/10 60/16 60/18 61/20 65/11 66/10 68/9 69/3 69/17 72/9 75/24 78/3 82/3 82/12 82/13 82/13 82/22 83/18 84/16 84/17 87/22 88/16 88/17 90/20 90/21 91/4 91/19 92/15 93/7 94/25 95/3 95/16 96/9 97/13 97/15 97/21 99/14 99/14 103/18 107/25 108/2 109/20 110/1 110/5 110/7 112/8 112/13 112/17 113/11 115/4 118/9 121/21 125/23 125/25 129/14 129/22 131/5 132/12 134/7 134/23

**didn't [35]** 11/8 11/19 13/2 19/24 23/16 24/18 27/13 30/5 35/21 44/7 44/10 44/10 49/9 49/12 51/6 55/11 55/13 81/21 81/21 88/9 92/22 95/1 95/2 96/12 96/13 98/2 98/3 98/6 98/19 98/20 98/20 99/21 124/15 130/4 131/18

**died [1]** 17/16

**difference [7]** 19/8 33/15 47/7 51/3 79/24 126/1 129/11

**differences [1]** 118/3

**different [31]** 8/10 27/25 28/7 28/13 29/1 29/12 39/19 46/11 61/5 64/13 68/5 70/3 72/14 72/16 75/9 75/25 75/25 76/1

**D**

**different...** **[13]** 85/21 85/23 92/6 92/10 94/13 95/23 102/17 111/14 116/10 118/5 126/2 129/3 131/14
**differently [2]** 71/4 71/12
**difficult [3]** 46/6 82/1 96/15
**direct [13]** 16/20 49/9 63/10 63/11 64/15 64/23 88/8 89/9 93/16 107/18 109/7 132/11 135/3
**directed [3]** 22/15 49/17 93/1
**directly [12]** 7/5 23/11 30/21 57/12 62/8 63/2 63/14 64/2 64/3 86/24 89/12 132/6
**directness [1]** 64/5
**directs [2]** 37/13 54/8
**disagree [5]** 21/14 65/9 77/18 78/8 134/11
**disagreeing [3]** 20/10 27/24 38/21
**disapprove [1]** 75/16
**discharge [1]** 23/17
**disclose [3]** 133/1 133/2 133/5
**disclosed [5]** 25/15 57/22 95/2 95/6 99/14
**disclosing [1]** 61/17
**disclosure [5]** 5/15 21/6 21/10 26/8 79/7
**disclosures [5]** 66/3 89/25 90/2 90/3 99/16
**discover [1]** 98/20
**discovery [18]** 16/15 22/7 37/4 63/6 64/12 78/7 78/11 78/12 78/12 78/23 79/1 79/5 79/6 108/18 121/15 121/17 121/19 121/22

**discrete [1]** 56/24
**discretion [10]** 20/9 28/6 65/4 70/20 72/6 75/19 79/22 108/16 113/19 126/23
**discuss [4]** 18/6 28/4 29/11 57/7
**discussed [1]** 94/11
**discusses [1]** 49/24
**discussing [3]** 24/22 33/5 115/5
**discussion [4]** 47/7 81/18 132/12 133/21
**dishonest [1]** 14/3
**dismay [1]** 10/8
**dismiss [4]** 36/14 76/13 126/20 126/22
**dismissal [4]** 73/5 126/15 126/17 126/18
**dispositive [1]** 108/12
**dispute [10]** 6/7 6/16 6/20 12/2 13/14 27/14 121/15 121/16 121/25 132/8
**disputed [7]** 9/1 13/20 15/10 15/11 17/8 24/2 121/12
**disputes [4]** 8/3 12/11 23/20 25/2
**disputing [2]** 20/10 130/19
**distance [1]** 3/22
**distributing [1]** 94/7
**district [42]** 1/1 1/2 1/14 1/21 8/2 19/11 27/23 35/1 35/7 46/21 50/24 53/24 56/5 56/7 70/12 74/21 74/23 75/16 78/16 80/10 91/25 92/17 93/2 100/23 112/16 112/23 113/7 113/15 114/8 114/12 115/6 117/4 121/21 121/21 122/6 123/12 123/13 123/16 125/2 125/22 129/2 138/18

**dive [2]** 8/10 127/8
**diversion [1]** 50/7
**diverted [1]** 116/9
**division [9]** 1/3 42/6 42/7 42/14 52/6 52/6 52/7 56/6 138/19
**do [108]** 8/8 11/12 11/19 12/12 12/22 12/25 13/22 16/23 17/13 18/17 19/1 19/22 20/7 20/9 22/5 24/10 24/14 24/17 26/13 28/25 30/7 31/3 36/15 37/20 39/11 40/24 41/5 41/10 42/18 45/2 47/2 47/9 47/10 47/21 48/8 50/15 51/14 53/13 53/18 54/11 56/14 57/20 58/20 59/4 66/18 67/25 68/1 68/10 72/2 72/2 72/3 73/6 73/12 74/4 76/16 76/16 80/15 81/14 82/1 82/2 83/24 84/8 84/12 84/21 89/15 91/23 92/5 93/7 94/17 96/19 101/4 102/3 102/7 102/24 103/17 105/4 105/8 105/9 105/24 107/13 107/17 107/23 113/21 119/9 121/16 121/25 122/12 122/17 123/8 123/16 123/17 123/25 124/3 126/9 126/19 126/25 128/1 128/2 128/16 129/2 133/9 133/17 134/21 135/2 135/4 135/6 135/25 136/18
**docket [12]** 6/18 13/25 14/7 16/1 25/13 28/22 29/18 38/7 72/10 110/12 112/2 114/20
**docketing [1]** 38/9
**document [3]** 17/3 17/5 29/18
**documentary [1]** 97/19

# D

**documents [6]** 8/25 21/16 37/2 92/1 98/6 132/20
**Doe [1]** 78/9
**Doe's [1]** 121/20
**does [33]** 11/12 17/15 24/9 24/22 30/18 31/18 32/17 33/20 48/11 53/25 55/8 57/14 68/18 73/15 77/16 78/11 81/13 83/13 83/14 83/24 88/6 91/6 93/24 95/16 104/2 105/24 109/11 111/15 114/15 114/19 122/20 126/9 128/9
**doesn't [14]** 14/23 18/8 25/5 28/19 31/1 31/3 40/21 55/2 76/22 89/8 89/8 94/1 94/2 118/18
**doing [9]** 8/24 18/22 27/24 72/24 73/22 83/16 103/18 104/15 136/3
**DOJ [2]** 67/23 98/5
**domain [1]** 42/9
**dominoes [1]** 6/25
**don't [70]** 4/7 6/7 12/1 16/2 17/20 21/1 22/5 23/4 24/17 28/25 32/2 32/22 32/23 32/23 36/4 38/4 38/23 39/12 40/9 40/10 42/12 43/11 43/14 48/17 51/15 51/17 51/18 52/1 52/1 53/2 55/19 64/16 68/8 68/10 71/16 72/7 77/19 79/4 83/23 89/1 90/9 90/24 92/12 94/17 100/12 100/14 101/19 101/21 104/21 105/10 106/5 110/4 119/8 119/22 120/2 120/4 120/8 120/11 121/15 122/8 124/2 124/4 124/9 124/17 126/16 127/5 130/20 131/13 132/4

134/10
**done [15]** 26/4 26/10 30/17 35/25 46/11 49/6 50/10 53/16 56/9 68/3 82/2 84/18 101/9 119/20 125/22
**doubt [11]** 7/20 33/3 33/13 58/9 59/25 62/2 80/5 93/20 114/3 132/9 132/24
**dovetails [2]** 68/12 107/15
**down [13]** 12/19 13/11 19/11 30/3 30/14 37/3 79/9 81/13 89/2 110/22 111/8 124/11 133/1
**DPA [106]** 6/5 6/17 8/15 11/12 14/7 19/2 19/2 19/5 24/7 24/13 24/21 25/3 25/8 25/12 25/15 26/11 26/14 26/19 29/7 39/16 39/23 40/3 41/5 52/16 54/12 57/19 58/13 58/18 59/3 59/6 59/17 60/23 68/14 68/16 68/18 68/20 68/25 69/7 69/14 69/15 71/23 72/6 72/24 73/3 73/8 73/9 73/21 74/9 74/24 75/4 75/6 75/10 75/16 77/2 77/6 77/11 77/12 77/16 84/5 96/21 97/8 97/10 98/12 98/17 99/11 99/23 100/2 103/22 103/23 105/7 105/16 105/22 106/15 108/13 108/17 108/19 111/24 114/15 114/15 114/16 114/19 114/24 115/1 115/4 115/9 115/17 116/6 116/10 119/6 119/7 119/13 119/21 120/1 120/8 120/20 120/23 122/3 122/15 122/18 126/2 126/9 126/13 127/22

129/19 135/3 135/13
**DPAs [2]** 69/12 117/16
**drafting [2]** 20/19 127/21
**drawn [1]** 73/21
**dressing [2]** 47/6 50/10
**driving [2]** 12/19 13/11
**dropped [1]** 38/16
**drug [2]** 92/7 94/6
**dual [1]** 63/12
**due [1]** 138/8
**DUFFY [10]** 1/20 4/13 56/19 108/23 110/25 114/24 117/15 120/12 128/1 135/2
**during [13]** 8/13 11/7 56/1 58/14 60/1 60/10 68/3 69/5 85/10 87/15 94/9 94/11 127/19
**duties [1]** 23/15

# E

**each [2]** 64/2 89/13
**earlier [5]** 50/17 59/6 62/11 74/4 74/5
**easy [1]** 120/9
**Edwards [1]** 36/1
**effectively [1]** 53/9
**effects [1]** 7/15
**efforts [3]** 22/16 22/20 55/25
**egg [1]** 81/7
**Egyptian [1]** 100/1
**either [3]** 41/11 48/6 76/4
**element [3]** 43/12 43/12 116/24
**elements [4]** 43/9 43/10 43/11 76/1
**Eleventh [16]** 35/9 36/25 37/2 37/22 38/12 38/13 38/15 38/20 39/1 39/5 65/7 79/10 103/16 113/10 128/18 128/24
**Eleventh Circuit [8]** 35/9

**E**

Eleventh Circuit... **[7]** 38/12 38/13 38/20 39/5 113/10 128/18 128/24

Eleventh Circuit's **[1]** 65/7

eliminate **[1]** 31/8

eliminated **[1]** 131/22

ELISSA **[2]** 2/16 4/24

ELLIS **[2]** 2/20 4/18

Elrod **[1]** 44/18

else **[7]** 34/7 43/1 44/18 65/1 106/2 134/2 136/21

embrace **[1]** 68/1

embroil **[1]** 25/2

Employee **[6]** 60/7 60/9 61/21 89/20 94/24 97/22

employees **[3]** 14/10 66/17 90/1

employment **[1]** 54/1

en **[7]** 38/12 38/13 38/16 39/2 65/7 113/11 113/13

enable **[1]** 20/3

encompass **[2]** 57/20 60/18

encounter **[1]** 134/7

end **[8]** 5/13 20/10 36/16 36/18 110/7 123/23 126/20 134/11

Energy **[1]** 16/18

enforce **[8]** 11/7 22/20 54/10 56/1 56/9 100/24 101/2 101/20

enforceable **[2]** 55/13 55/15

enforcement **[4]** 18/20 56/3 79/15 80/8

engage **[6]** 67/4 67/10 68/8 91/5 113/1 115/13

engaged **[4]** 12/20 67/4 77/9 77/10

engaging **[1]** 72/24

engineered **[1]** 34/3

engineering **[1]** 99/15

engineers **[3]** 57/23 61/16 95/11

enhanced **[1]** 77/4

enhancement **[1]** 63/22

enough **[4]** 11/21 88/5 89/3 132/24

ensure **[7]** 14/11 18/18 18/24 20/15 22/3 22/7 54/8

ensuring **[1]** 22/11

enter **[1]** 23/20

entered **[7]** 110/1 110/9 110/11 111/2 111/9 112/1 120/3

entering **[3]** 25/8 59/3 109/25

entirely **[4]** 97/2 97/3 120/8 132/23

entities **[1]** 73/16

entitled **[5]** 16/7 16/12 32/5 46/3 138/6

entity **[1]** 62/7

entry **[3]** 16/1 38/7 72/10

envision **[1]** 55/8

envisioned **[1]** 123/23

Epstein **[10]** 19/12 19/13 35/3 35/25 36/25 37/14 37/16 37/19 47/11 113/8

Epstein's **[1]** 36/22

equipment **[1]** 57/24

era **[1]** 86/19

ERIN **[2]** 2/10 3/13

erroneous **[1]** 83/2

error **[1]** 51/2

especially **[1]** 119/23

essence **[1]** 45/12

essential **[1]** 6/1

essentially **[7]** 5/24 27/15 50/24 52/24 79/2 92/17 121/23

establish **[4]** 41/24 58/20 96/7 96/9

established **[3]** 60/2 66/1 67/6

establishing **[1]** 64/15

Ethiopian **[4]** 13/8 13/15 56/22 108/7

evaluate **[2]** 110/18 116/5

even **[21]** 11/3 12/24 27/13 31/19 48/11 51/17 58/8 59/3 59/5 65/2 67/21 89/5 105/23 106/18 106/18 111/3 113/1 114/6 121/20 130/16 135/21

event **[2]** 35/6 131/15

events **[2]** 60/18 117/20

Eventually **[1]** 45/3

ever **[3]** 56/23 119/20 119/21

every **[6]** 25/23 30/9 109/13 112/13 116/1 130/22

everybody **[4]** 55/19 90/5 90/10 131/20

everyone **[2]** 33/10 34/6

everything **[3]** 65/11 99/12 130/3

evidence **[64]** 8/1 8/6 8/7 42/2 52/18 57/5 57/7 58/2 58/4 58/9 58/13 58/13 58/14 60/1 60/5 60/21 61/7 61/19 61/21 62/19 65/18 67/5 68/11 68/12 69/4 69/18 75/22 75/23 76/2 83/18 83/18 83/19 83/22 84/4 90/13 90/13 91/25 92/25 94/12 95/6 95/7 95/18 96/7 96/9 96/11 97/13 97/15 97/21 98/15 98/16 98/18 99/21 131/3 131/17 131/19 132/8 132/10 132/25 133/1 133/2 133/5 133/7 133/8 134/7

evidentiary **[11]** 15/17

**E**

**evidentiary... [10]** 15/24 16/7 16/10 16/12 41/23 46/9 130/11 130/14 131/2 132/7

**exactly [8]** 8/24 13/12 55/7 83/22 85/20 91/16 118/16 135/13

**examination [1]** 39/21

**examined [1]** 24/9

**examining [1]** 24/7

**example [12]** 9/3 13/24 81/6 87/2 87/8 89/14 103/22 104/17 104/24 106/9 106/13 118/24

**examples [3]** 29/6 86/23 106/12

**excellent [2]** 29/2 35/18

**excise [5]** 119/7 119/10 119/15 119/17 120/4

**excising [3]** 103/23 119/13 119/23

**exclude [3]** 114/20 115/12 115/19

**exclusion [1]** 72/11

**exclusions [1]** 98/25

**excuse [4]** 70/14 72/3 94/23 103/6

**execute [1]** 26/19

**executed [1]** 70/23

**executing [1]** 135/21

**Executive [1]** 42/9

**exercise [8]** 18/6 20/2 20/4 36/23 58/7 74/17 75/2 75/18

**Exhibit [1]** 53/8

**Exhibit 1 [1]** 53/8

**exist [1]** 104/14

**existed [2]** 98/19 99/18

**existing [1]** 15/6

**exists [2]** 119/22 130/9

**exoneration [1]** 40/8

**expand [3]** 10/22 57/10 83/25

**expanded [1]** 80/20

**expansion [7]** 45/22 61/11 61/11 61/17 61/23 66/3 95/10

**expansive [1]** 7/9

**expect [1]** 25/13

**expected [1]** 126/14

**expeditiously [1]** 5/7

**expert [4]** 15/25 16/2 16/3 65/23

**experts [1]** 85/22

**explain [8]** 23/16 29/12 34/11 43/7 43/15 44/1 44/23 128/8

**explained [8]** 10/20 25/6 40/21 63/7 63/11 63/17 72/15 134/22

**explaining [1]** 25/18

**explanation [6]** 10/1 10/2 24/16 26/4 41/4 53/17

**explosion [2]** 47/15 72/21

**express [1]** 48/19

**expressly [1]** 108/14

**extended [2]** 45/16 112/3

**extends [1]** 108/5

**extremely [3]** 96/15 97/16 117/19

**eyes [1]** 98/21

**F**

**F.3d [4]** 62/22 63/9 63/18 86/21

**FAA [17]** 12/8 14/4 14/10 17/14 57/5 57/23 61/18 66/2 66/6 66/7 89/25 90/6 90/17 90/20 95/3 118/18 130/23

**face [1]** 87/5

**Facebook [1]** 10/9

**faced [1]** 118/22

**fact [35]** 6/11 6/22 8/8 9/11 12/10 14/15 17/11 17/14 19/22 21/9 21/9 29/16 36/10 36/11 36/2 36/15 38/8 43/13 48/12 58/12 63/12 63/13 68/20 70/6 70/14 86/1 86/6 88/2 89/21 91/3 92/16 94/9 97/14 106/24 108/14

**fact-finding [8]** 17/11 19/22 21/9 21/9 36/10 36/11 36/12 36/15

**factors [14]** 60/20 64/14 64/22 65/16 65/17 68/2 68/5 85/14 90/23 94/5 94/14 95/23 106/20 106/21

**facts [67]** 13/14 14/20 15/10 15/11 15/20 15/23 16/15 16/19 17/3 17/12 19/23 22/6 36/8 36/14 40/25 43/18 52/16 57/19 57/20 58/17 58/18 58/19 60/4 60/14 62/3 62/24 63/1 67/25 68/2 68/14 69/1 69/10 72/8 80/6 85/9 85/10 86/4 86/5 86/15 88/6 88/23 89/5 89/17 91/10 91/13 93/17 93/19 93/21 95/7 95/16 97/3 97/8 97/9 97/11 98/11 99/11 100/18 101/15 117/12 117/14 117/16 124/23 129/18 130/6 130/16 130/21 130/22

**factual [12]** 12/2 12/11 21/12 23/12 23/20 27/22 62/16 67/18 67/18 77/11 92/19 93/9

**factually [2]** 78/22 117/8

**failed [2]** 37/7 136/14

**failure [4]** 6/14 6/15 25/16 67/2

**F**

**failures [2]** 57/25 132/22
**fair [1]** 23/10
**fairly [1]** 87/24
**fairness [2]** 6/7 23/9
**faith [3]** 82/23 83/1 84/8
**faithfully [1]** 70/23
**fall [1]** 124/17
**false [2]** 9/21 10/3
**familiar [2]** 22/24 132/13
**families [42]** 5/3 6/8 6/11 6/12 6/17 6/19 7/2 9/7 9/23 10/4 10/6 10/8 10/14 11/24 15/7 15/16 18/4 18/25 19/6 20/5 20/11 20/12 20/24 21/20 22/12 23/2 23/8 25/11 26/2 34/11 34/14 46/2 47/4 55/10 55/24 108/6 127/13 128/12 129/5 133/11 133/17 135/9
**family [7]** 7/3 9/7 17/25 54/21 55/15 130/12 135/10
**famous [1]** 46/10
**far [7]** 12/2 53/13 73/8 90/25 100/17 106/8 131/4
**faults [1]** 95/1
**faulty [1]** 86/10
**favor [5]** 6/24 12/12 16/5 29/21 37/7
**favorable [1]** 52/10
**FBI [1]** 9/18
**FCOM [1]** 12/23
**FCRR [2]** 138/4 138/17
**February [2]** 37/10 71/2
**February 2020 [1]** 71/2
**federal [22]** 5/23 30/11 31/7 32/4 38/7 38/7 38/23 58/3 58/4 59/25 63/3 63/15 69/1 69/6 108/22 109/1 109/2 109/5 109/7 111/20 113/21 114/2

**feel [1]** 91/24
**feelings [1]** 52/17
**fees [1]** 138/12
**feet [1]** 87/5
**Feinstein [1]** 45/21
**felt [1]** 115/11
**few [8]** 14/7 34/21 71/24 80/23 86/23 94/14 94/14 121/1
**Fifth [49]** 7/11 7/12 7/13 11/2 11/2 11/5 16/18 16/23 17/1 17/7 28/15 28/19 33/4 33/5 33/8 39/6 42/6 42/19 42/23 45/9 45/10 46/8 46/20 49/9 50/18 50/20 50/21 63/10 63/16 81/20 84/23 86/20 88/4 89/11 109/15 109/23 110/13 110/20 111/4 112/8 116/7 116/8 116/13 117/5 121/7 123/1 129/1 129/7 129/8
**figure [4]** 32/21 36/8 46/21 84/9
**file [6]** 28/6 37/5 37/14 48/1 52/5 56/7
**filed [36]** 6/18 9/4 11/4 14/7 15/21 15/25 25/15 25/18 27/25 28/2 28/5 33/2 36/1 38/2 38/5 38/23 56/9 60/17 60/23 60/24 64/20 68/20 70/8 72/14 72/19 73/14 75/10 75/12 83/14 91/12 91/14 114/19 115/9 123/19 128/21 131/21
**files [5]** 21/21 23/23 36/14 37/14 37/14
**filing [10]** 20/19 59/9 59/14 64/21 73/23 77/15 82/14 82/16 97/18 125/8
**filings [5]** 65/21 65/23 76/15 105/3 136/16

**fill [1]** 109/21
**final [6]** 34/19 64/2 64/6 89/13 104/8 134/14
**finalized [1]** 49/20
**finally [4]** 4/15 25/17 28/6 78/7
**financial [1]** 14/24
**find [21]** 14/23 35/25 69/17 95/16 96/9 97/13 97/15 97/21 98/2 98/3 99/21 106/18 112/20 124/19 124/21 126/8 130/12 131/4 131/13 133/11 136/1
**finding [12]** 17/11 19/22 21/9 21/9 36/10 36/11 36/12 36/15 64/24 72/10 78/1 78/3
**findings [2]** 21/12 130/14
**finish [1]** 69/25
**firearm [1]** 32/22
**fired [1]** 95/3
**first [24]** 3/6 6/3 8/12 21/2 24/11 34/24 43/11 54/7 55/24 67/14 70/4 70/25 78/11 92/3 96/8 96/9 102/13 103/20 106/22 108/9 108/12 109/15 117/24 122/1
**Fisher [27]** 7/12 16/25 17/7 62/12 62/15 63/7 63/11 64/3 84/15 84/24 86/20 87/18 87/22 88/3 88/9 93/12 93/13 93/15 95/24 109/16 116/13 116/13 116/14 116/17 116/18 116/24 117/3
**five [4]** 30/19 42/18 42/24 109/11
**fix [1]** 51/4
**flat [1]** 17/23
**flat-out [1]** 17/23

**F**

**flatly [1]** 53/4

**flaws [2]** 90/25 99/13

**flight [18]** 12/16 12/23 12/23 13/8 13/13 13/16 14/17 56/22 56/23 67/8 67/8 67/11 67/12 85/10 86/7 86/7 86/9 91/4

**flights [4]** 13/20 108/7 118/23 130/2

**floor [3]** 2/11 2/14 5/1

**Florida [3]** 19/12 35/1 133/2

**flying [2]** 14/12 14/18

**focus [5]** 49/2 89/9 90/17 102/6 107/14

**focused [1]** 66/2

**focuses [1]** 61/18

**focusing [3]** 49/4 117/16 127/23

**Fokker [15]** 27/21 28/8 28/18 72/15 72/16 74/9 74/11 74/17 75/15 105/13 106/4 106/8 109/16 114/10 115/21

**folks [3]** 81/11 104/18 106/24

**follow [7]** 47/12 91/18 96/23 102/13 104/11 125/10 127/9

**follow-up [1]** 96/23

**following [2]** 24/13 98/14

**footnote [2]** 39/2 52/5

**footnotes [1]** 38/16

**footprint [1]** 97/23

**foregoing [2]** 138/5 138/6

**foreign [10]** 57/24 66/21 66/22 66/22 66/23 90/21 90/21 118/17 118/18 130/24

**foreign-based [1]** 66/22

**foreseeability [9]** 63/13 63/17 64/4 89/11 90/8

92/10 95/20 132/16 132/19

**foreseeable [2]** 66/13 132/23

**Forkner [22]** 58/15 60/9 60/11 61/4 61/21 65/20 65/24 68/11 68/12 68/21 75/22 84/16 89/19 90/18 94/10 94/23 95/11 95/19 97/22 97/25 102/21 131/18

**form [5]** 9/3 33/7 33/9 66/13 114/25

**formal [1]** 77/23

**format [1]** 138/12

**forms [2]** 93/21 107/1

**formulation [1]** 43/3

**FORT [9]** 1/3 1/7 1/22 2/24 42/14 52/6 136/18 138/19 138/20

**forth [37]** 32/7 46/17 57/1 57/9 57/19 58/13 58/17 58/25 59/14 59/19 61/5 62/4 62/11 63/19 64/12 64/19 64/20 68/14 68/22 68/25 78/18 78/20 81/19 83/16 92/20 95/7 97/8 97/9 97/18 98/17 99/2 99/11 102/19 102/21 102/23 103/7 103/16

**forthrightly [1]** 23/8

**forum [2]** 85/18 85/19

**forward [5]** 82/5 84/9 125/3 130/10 136/9

**found [3]** 119/19 128/15 129/23

**foundation [3]** 63/4 64/17 64/18

**four [10]** 5/5 8/8 13/12 28/14 30/19 61/4 80/21 108/11 125/16 127/12

**fourth [4]** 15/9 29/25 34/19 108/21

**France [1]** 4/2

**frankly [1]** 50/1

**fraud [1]** 61/9

**fray [1]** 27/17

**freestanding [1]** 74/23

**front [12]** 5/5 15/20 16/16 19/11 22/6 29/12 32/6 38/11 41/15 56/10 111/18 131/8

**FSB [3]** 117/25 118/2 118/4

**fulfill [1]** 73/7

**fulfilled [1]** 73/8

**full [3]** 20/2 125/16 125/18

**fully [2]** 78/25 125/21

**function [1]** 14/4

**fund [4]** 39/18 41/21 41/21 120/15

**fundamental [2]** 10/12 21/24

**fundamentally [1]** 126/2

**funding [1]** 120/14

**further [11]** 58/22 61/8 64/7 68/24 75/6 102/18 129/21 130/11 130/14 138/8 138/12

**future [2]** 74/19 127/16

**G**

**Garland [3]** 101/9 133/16 133/24

**Garner [1]** 27/4

**Gas [1]** 16/18

**gather [2]** 16/19 62/3

**gathered [1]** 101/15

**Gathering [1]** 16/18

**gave [1]** 9/22

**general [12]** 58/6 59/11 65/5 101/6 104/8 104/9 108/15 115/25 116/5 131/12 133/16 133/24

**generally [2]** 99/18 107/24

**generous [1]** 133/17

**get [29]** 5/7 18/10 32/24 38/12 43/10 46/24 46/24

## G

**get…** **[22]** 48/2 49/5 52/1 52/10 53/11 54/25 55/11 64/23 80/16 83/21 89/8 89/8 94/15 99/14 99/18 100/20 112/17 119/1 120/18 127/21 133/13 136/20
**getaway** **[1]** 87/9
**gets** **[1]** 48/5
**getting** **[1]** 83/20
**Ghislaine** **[1]** 37/25
**give** **[16]** 6/16 15/17 16/19 19/1 19/19 23/1 39/5 45/23 50/14 55/15 56/14 86/23 129/4 133/21 134/16 134/18
**given** **[3]** 19/17 19/18 107/1
**gives** **[2]** 26/15 134/22
**giving** **[1]** 18/17
**gmail.com** **[1]** 138/21
**go** **[42]** 12/15 13/24 18/5 20/5 20/13 32/11 32/15 37/22 38/23 38/25 41/1 45/9 50/14 57/6 64/16 66/10 66/10 66/12 69/25 70/1 79/16 81/5 81/13 82/12 82/23 83/2 88/6 90/23 90/25 91/6 94/1 94/14 101/11 110/5 113/10 113/25 120/6 121/3 124/15 126/8 128/16 129/23
**goes** **[6]** 28/1 36/25 69/10 81/9 83/6 126/14
**going** **[51]** 6/13 6/22 17/10 18/13 19/21 21/12 23/16 24/20 24/21 25/10 28/17 30/3 30/8 33/1 33/10 33/15 35/16 36/10 36/16 36/17 39/25 40/11 40/22 42/1 43/14 44/3 45/5 50/10 51/22 52/10 55/5 75/4 81/13 84/12 85/5

99/6 104/15 106/6 110/14 110/18 117/9 117/20 123/9 126/3 126/5 126/10 126/12 127/20 128/5 129/10 133/23
**going on** **[1]** 45/5
**gone** **[1]** 98/8
**good** **[21]** 3/12 3/13 3/15 3/18 4/12 4/16 4/23 4/25 26/5 34/21 43/5 46/16 56/18 73/2 82/23 83/1 84/8 107/7 107/8 110/3 127/2
**good-faith** **[2]** 82/23 83/1
**goodness** **[2]** 39/24 42/24
**got** **[6]** 5/8 36/7 37/4 40/15 100/2 128/10
**gotten** **[1]** 130/20
**GOULD** **[1]** 2/23
**government** **[119]** 1/7 1/19 4/11 5/15 6/3 6/9 6/10 6/16 6/20 7/19 8/22 9/2 9/16 10/9 11/10 11/13 11/21 13/23 14/8 14/14 14/15 16/14 17/19 18/2 18/5 18/21 19/2 19/14 19/24 20/6 21/14 22/9 23/1 23/4 23/6 23/7 23/10 23/14 23/16 23/21 24/18 24/23 25/3 25/7 25/23 26/3 26/19 27/12 28/23 29/7 29/10 30/8 30/18 31/15 33/14 34/2 36/4 36/13 37/4 37/7 37/14 38/3 40/14 40/17 41/17 42/13 45/1 47/20 52/12 52/22 53/13 54/15 55/25 56/14 58/1 59/1 59/9 59/22 60/22 61/20 69/3 70/4 70/8 70/17 70/25 74/22 76/12 78/5 79/17 79/17 79/18 80/2 80/17 80/25

81/9 86/14 93/19 106/13 113/12 121/23 123/19 126/22 127/23 128/8 129/25 131/3 131/5 131/7 131/17 131/21 132/1 132/12 132/20 132/25 133/7 134/24 135/6 135/19 136/2
**government's** **[15]** 7/18 10/5 14/6 14/11 31/19 51/2 60/5 60/25 61/2 62/11 65/21 73/23 79/22 113/2 134/25
**graduate** **[1]** 89/6
**grant** **[4]** 24/1 34/19 56/12 136/10
**granted** **[5]** 47/24 70/9 70/11 108/13 123/22
**granting** **[4]** 37/7 45/12 112/7 125/9
**grants** **[2]** 45/10 45/11
**grappled** **[1]** 79/10
**great** **[4]** 3/22 25/25 37/15 131/16
**grieving** **[2]** 9/23 135/9
**ground** **[5]** 72/18 72/19 72/25 75/11 115/24
**grounds** **[1]** 75/17
**guess** **[5]** 40/2 70/17 88/10 92/21 103/13
**guidelines** **[3]** 39/10 59/16 69/11
**guilty** **[3]** 54/25 54/25 72/20
**Gun** **[1]** 89/6
**Gustavsson** **[1]** 94/23
**guts** **[1]** 55/17

## H

**had** **[63]** 8/8 13/1 13/13 13/17 15/24 22/25 24/13 30/7 31/10 35/1 35/3 35/6 36/4 37/9 37/15 43/10 45/7 46/12 46/13 47/19

# H

had... **[43]** 49/5 50/23
50/24 50/25 53/16 63/25
65/8 66/17 74/4 81/18
84/13 84/18 86/7 87/21
88/3 88/17 90/24 93/10
93/15 95/2 95/3 95/5
95/10 105/6 109/21 109/24
110/9 110/20 111/9 111/17
111/19 112/4 115/22 118/22
121/1 121/9 121/10 122/6
123/14 124/7 127/12
127/25 129/8

hadn't **[1]** 25/22

half **[6]** 13/12 14/9 78/4
115/18 120/14 120/21

half-truths **[1]** 14/9

hall **[1]** 30/2

handed **[1]** 14/6

handle **[1]** 33/23

handled **[3]** 20/8 71/4
71/12

HANEY **[2]** 2/19 4/18

happen **[3]** 11/8 38/18
86/8

happened **[22]** 13/13 15/15
19/13 20/15 34/16 35/23
44/1 46/23 48/20 49/12
72/20 82/9 94/20 99/12
112/5 113/12 119/1 127/17
131/20 131/21 135/17
135/21

happening **[1]** 26/1

happens **[5]** 6/13 20/16
31/2 32/21 125/6

happy **[2]** 80/22 99/6

hard **[1]** 53/11

harder **[2]** 48/12 48/13

harm **[17]** 13/5 14/24
14/24 14/25 15/3 62/12
62/12 63/7 63/11 63/16
88/8 116/22 117/2 132/11

132/13 132/14 132/15
132/24 133/25 133/25 134/12

harmed **[9]** 7/8 57/12 60/8
63/2 63/14 86/24 86/24
100/10 130/8

harms **[1]** 132/22

has **[111]** 4/6 6/9 6/10
7/18 7/19 8/6 8/23 10/9
11/6 11/10 12/1 13/23
15/20 16/14 16/23 18/2
18/17 20/19 25/9 26/4
26/5 27/5 28/15 30/6 31/5
31/23 32/24 33/11 33/13
37/6 40/14 42/6 42/13
46/4 47/9 52/19 52/22
53/23 54/13 55/25 59/13
59/13 61/2 62/19 66/16
73/8 74/12 74/15 74/23
75/18 75/23 76/4 76/12
77/1 77/6 78/14 78/16
78/17 79/11 84/4 93/21
94/17 98/7 98/25 99/1
101/6 101/9 101/13 105/15
105/15 106/1 107/10 107/11
107/11 107/16 107/18 109/1
109/12 110/14 110/16 111/14
112/2 112/3 112/14 113/16
113/22 113/23 114/5 114/14
114/21 115/17 115/18 116/3
116/8 117/16 119/20 119/21
120/12 120/13 122/20
124/18 125/3 125/14
125/16 125/18 125/19
125/21 125/22 126/13
132/5 136/7

HATCH **[5]** 2/15 2/22 4/16
4/22 107/8

have **[229]**

haven't **[4]** 8/24 39/24
55/3 82/2

having **[7]** 66/25 78/1
104/25 112/14 130/23
130/24 134/4

he **[27]** 4/8 19/21 20/1
20/21 25/19 36/9 36/12
37/11 37/13 50/16 50/16
50/18 54/18 87/22 88/16
88/17 88/18 88/18 101/9
110/25 112/14 119/8 119/10
121/4 133/24 133/25 135/2

he'd **[1]** 35/2

He's **[2]** 4/7 112/13

head **[2]** 92/12 99/8

hear **[11]** 28/23 30/22
52/12 76/23 84/7 131/5
131/17 131/18 132/12
135/25 138/7

heard **[36]** 10/23 11/7
34/10 46/14 48/25 57/5
58/12 58/14 59/7 61/16
61/19 68/11 75/22 81/24
85/13 90/13 94/9 95/9
104/4 110/15 110/16 111/21
112/19 115/19 123/14 125/5
125/19 125/21 126/6
126/13 128/1 128/14 134/6
134/24 135/2 135/6

hearing **[28]** 1/13 5/4
10/14 15/18 15/24 16/7
16/10 16/12 35/1 35/2
38/12 41/24 46/9 48/23
76/7 78/3 110/15 111/18
111/22 123/20 124/4 124/5
124/7 125/11 125/24 126/3
131/2 132/7

hearings **[5]** 77/22 102/21
102/21 126/11 130/11

heart **[1]** 63/25

held **[6]** 11/3 28/15 31/6
62/12 105/15 136/8

help **[4]** 21/18 22/21 34/25
130/18

Henriquez **[2]** 91/21 93/24

her **[3]** 4/2 44/11 114/4

here **[140]**

# H

**here's [13]** 14/1 14/6 14/10 20/6 20/7 20/8 32/5 35/23 41/3 46/16 51/3 55/4 65/17

**hey [4]** 19/16 27/23 28/16 55/11

**hide [2]** 96/12 96/13

**Higginbotham [2]** 84/15 86/20

**high [5]** 63/25 69/8 69/18 69/18 105/23

**high-level [3]** 69/8 69/18 69/18

**high-speed [1]** 63/25

**higher [2]** 39/18 64/10

**highest [1]** 52/8

**highlighted [1]** 25/21

**highlights [1]** 29/16

**him [1]** 88/20

**himself [2]** 50/19 101/6

**his [13]** 4/4 4/8 58/6 60/12 84/16 88/9 88/10 95/9 108/15 112/16 114/3 133/17 134/2

**historically [1]** 29/13

**history [2]** 7/7 109/20

**hold [6]** 34/8 56/15 77/16 110/20 124/9 134/19

**holding [5]** 8/3 98/1 113/13 129/17 136/6

**holds [1]** 132/4

**homicide [1]** 96/5

**homicides [1]** 136/4

**honest [2]** 82/23 83/1

**Honor [103]** 3/8 3/13 3/20 4/12 4/16 5/2 7/21 11/14 13/3 17/20 22/24 23/13 23/19 25/9 25/15 27/19 32/20 33/21 47/9 54/10 56/18 56/20 56/25 57/5 58/22 58/25 59/22 61/8

62/3 62/7 63/10 63/16 64/7 64/12 66/4 67/16 68/16 68/18 69/21 70/25 71/22 71/24 73/11 73/11 74/8 75/9 76/6 78/7 78/21 79/11 80/8 81/4 83/10 85/12 85/13 86/18 91/15 93/18 93/24 94/5 96/8 96/16 100/12 101/3 103/6 104/5 106/3 106/18 107/8 107/10 107/23 108/7 109/12 109/18 110/3 112/11 114/21 115/22 116/7 116/11 116/12 116/14 117/11 118/24 119/4 119/4 119/9 119/19 121/1 121/16 122/4 122/11 122/14 123/6 125/13 126/16 127/1 127/3 132/1 136/7 136/22 136/23 136/24

**Honor's [4]** 20/17 86/3 115/2 124/13

**HONORABLE [1]** 1/14

**hope [6]** 29/22 41/16 51/19 56/12 123/5 136/10

**hoping [1]** 100/20

**host [1]** 77/1

**hours [2]** 45/13 45/14

**Houston [1]** 47/14

**how [30]** 9/14 10/3 13/17 13/22 15/10 22/5 22/19 23/10 23/16 25/24 31/14 36/9 44/24 49/8 49/15 62/16 64/2 64/3 65/25 66/12 67/10 81/5 83/7 89/12 101/1 101/20 105/4 128/1 133/5 135/8

**however [4]** 59/17 69/3 71/17 104/2

**HSBC [14]** 74/10 74/10 74/21 74/22 105/13 106/8 106/11 106/12 109/16

114/10 115/21 116/4 122/5 126/17

**human [2]** 10/12 21/24

**humor [1]** 96/14

**hundreds [1]** 89/15

**hurt [1]** 52/4

**hyperbole [1]** 15/21

**hypothetical [5]** 96/11 97/3 100/17 109/8 135/12

**hypothetically [1]** 96/14

**hypotheticals [1]** 96/19

# I

**I'll [3]** 65/6 103/21 134/1

**I'm [56]** 11/21 15/10 19/21 23/14 24/17 25/10 27/24 28/17 29/5 29/22 32/8 36/10 37/9 39/10 39/11 39/25 40/11 40/12 40/20 40/25 42/1 42/25 46/19 47/14 49/11 51/19 51/24 53/3 53/10 75/22 79/12 83/5 83/5 88/22 89/1 89/22 91/11 91/16 95/13 95/13 98/25 100/4 100/14 100/19 101/9 103/13 105/18 106/6 110/14 119/10 120/8 121/6 123/6 124/22 127/7 132/20

**I've [20]** 5/8 12/1 12/6 16/11 19/10 22/2 25/6 30/19 37/11 41/7 43/17 43/20 44/20 46/15 80/6 80/20 100/21 123/4 134/22 136/16

**IAN [2]** 2/22 4/21

**idea [1]** 64/25

**identified [7]** 12/7 24/5 36/21 41/7 41/7 60/8 129/18

**if [125]** 6/7 6/24 12/11 15/17 15/24 16/3 16/5 17/7 18/3 19/22 21/9 21/11 22/5

**I**

if... **[112]** 22/25 23/19 24/1 24/8 25/9 25/25 31/23 32/5 32/11 32/15 33/3 33/21 35/2 35/19 38/18 39/4 39/21 41/15 41/20 41/23 44/10 44/23 46/11 47/9 47/12 48/11 50/9 50/17 51/8 53/6 53/7 53/16 54/18 54/20 55/9 59/5 68/13 69/22 73/3 73/17 75/2 76/10 79/16 80/24 81/5 81/12 82/5 82/19 82/23 83/1 83/2 83/12 83/23 86/17 89/5 90/24 91/18 93/8 94/3 95/15 96/6 97/24 97/24 98/15 98/16 98/18 99/23 100/1 100/9 101/1 101/3 101/17 102/5 102/6 102/6 103/14 105/22 105/23 106/12 106/18 106/18 107/4 113/19 113/21 115/11 116/21 116/22 117/8 118/20 119/4 122/19 123/17 123/18 124/7 124/14 124/19 124/20 124/22 125/6 125/10 126/22 127/1 127/5 127/16 130/7 130/14 131/1 132/7 132/24 133/7 135/2 136/7

**II [2]** 16/25 17/7

**III [1]** 113/4

**Ike [1]** 4/5

**illegal [1]** 88/19

**Illinois [1]** 2/14

**illustrate [1]** 117/21

**imagine [3]** 10/7 53/6 84/15

**immeasurable [1]** 56/21

**immediately [9]** 14/19 15/6 15/13 18/5 67/7 86/6 86/7

86/9 91/4

**imminent [1]** 124/11

**immunity [2]** 37/24 53/3

**immunized [2]** 11/17 52/21

**impact [3]** 93/12 93/14 118/21

**impacted [1]** 104/22

**impacts [1]** 108/4

**impairing [1]** 14/2

**impeded [1]** 14/11

**impingement [1]** 113/19

**implementation [1]** 74/24

**implication [1]** 55/3

**implications [2]** 61/25 101/25

**import [3]** 65/9 97/17 97/20

**important [13]** 5/21 21/25 32/17 44/25 45/18 60/14 61/25 79/23 111/3 113/18 116/25 127/14 129/10

**importantly [3]** 62/14 78/21 86/2

**impose [2]** 33/18 53/24

**imposed [2]** 18/14 33/1

**imposes [1]** 63/12

**improper [4]** 41/22 41/23 41/25 42/3

**improperly [4]** 13/10 42/8 67/10 91/4

**improved [1]** 61/3

**improvident [1]** 70/10

**in [649]**

**in 2008 [1]** 50/4

**In re [3]** 35/22 70/3 81/8

**In re Dean [4]** 47/15 70/5 82/10 124/14

**In re Dean's [1]** 124/1

**In re Wild [3]** 79/11 112/18 128/15

**inaccurate [2]** 9/24 71/3

**inadequate [2]** 41/22 42/1

**incentives [1]** 99/17

**inches [1]** 92/12

**include [5]** 15/1 66/25 77/3 95/17 132/3

**included [5]** 10/22 118/11 120/14 120/15 120/16

**including [5]** 7/12 68/4 77/7 85/24 104/2

**incorporates [1]** 64/4

**incorrect [1]** 69/20

**incorrectly [1]** 92/3

**incredibly [2]** 82/1 107/4

**incurred [1]** 89/12

**independent [1]** 12/6

**indicate [2]** 27/19 123/12

**indicated [1]** 87/13

**indicates [1]** 90/19

**indicted [1]** 68/21

**indicting [1]** 99/24

**indictment [3]** 33/7 93/9 131/22

**indisputable [1]** 108/19

**individual [12]** 63/24 68/20 68/23 73/1 86/23 87/3 87/6 87/10 88/2 89/20 94/24 98/1

**individual's [1]** 87/5

**individuals [7]** 59/7 60/13 66/13 71/6 84/19 96/6 96/24

**indulgence [2]** 107/13 107/17

**inestimable [1]** 108/4

**inevitably [2]** 17/11 25/2

**inflicted [1]** 15/3

**information [48]** 5/15 9/24 10/2 13/24 14/1 21/6 21/11 21/13 21/21 22/13 22/21 23/1 23/5 23/11 23/18 23/22 23/25 25/14 34/13 40/12 51/23 57/2 57/18 57/22 58/17 60/17 60/23

**I**

**information…** **[21]** 61/6 61/22 65/1 68/4 71/3 71/9 71/13 76/4 76/13 83/14 91/12 95/18 106/22 109/3 113/24 117/17 117/18 117/22 117/23 130/4 134/9

**informed** **[4]** 61/10 61/13 66/5 105/1

**inherent** **[6]** 16/15 22/6 28/21 29/17 36/9 121/24

**initial** **[4]** 44/11 45/10 123/14 127/9

**initially** **[4]** 7/13 45/10 70/9 78/24

**initiated** **[1]** 84/20

**injury** **[2]** 50/11 96/6

**innocent** **[3]** 15/19 23/2 132/22

**input** **[2]** 19/7 110/19

**inquired** **[1]** 136/14

**inquiry** **[6]** 64/2 67/18 67/19 75/13 75/13 131/7

**inside** **[1]** 87/3

**insinuating** **[1]** 65/2

**instance** **[1]** 103/17

**instances** **[2]** 77/14 77/15

**Instead** **[1]** 11/19

**instructs** **[1]** 74/11

**instrument** **[1]** 60/9

**insult** **[1]** 50/11

**intend** **[2]** 76/16 133/8

**intended** **[1]** 48/11

**intends** **[1]** 73/6

**intent** **[5]** 66/16 97/21 97/22 99/22 115/12

**intention** **[2]** 71/21 76/13

**intentionally** **[1]** 7/8

**interest** **[4]** 23/24 23/25 33/9 124/19

**interested** **[1]** 35/19

**interesting** **[8]** 27/11

28/23 30/22 31/15 32/1 38/3 49/22 135/1

**interfering** **[3]** 14/3 14/5 42/8

**interim** **[1]** 65/23

**internal** **[1]** 59/15

**internally** **[2]** 61/14 104/4

**interpret** **[2]** 31/14 115/22

**interpretation** **[4]** 27/14 105/8 108/25 134/12

**interpreted** **[1]** 31/8

**interpreting** **[2]** 103/4 119/24

**intervening** **[2]** 42/4 44/17

**into** **[32]** 5/16 5/19 8/10 9/5 9/20 24/6 25/8 27/17 38/24 39/18 41/20 41/21 42/4 46/24 59/3 62/21 65/2 65/10 81/6 81/9 87/10 94/1 97/20 109/10 109/25 110/1 120/3 122/11 124/23 133/13 133/20 133/23

**introduce** **[3]** 3/10 3/21 62/21

**intruding** **[1]** 42/9

**intrusion** **[1]** 129/7

**invalidating** **[1]** 113/8

**invalidation** **[1]** 37/23

**investigate** **[2]** 16/15 58/1

**investigated** **[4]** 59/22 109/8 121/5 121/8

**investigating** **[4]** 8/20 9/2 9/13 9/25

**investigation** **[18]** 6/22 8/13 8/15 9/5 9/9 9/17 9/20 10/5 10/7 53/19 56/1 60/1 68/4 69/5 101/16 114/4 127/15 127/17

**investigations** **[2]** 71/17 85/4

**investigative** **[2]** 127/19

129/22

**invited** **[2]** 81/15 66/9

**involve** **[3]** 12/10 15/10 23/20

**involved** **[10]** 8/18 15/11 20/19 21/17 48/3 53/15 59/11 67/13 80/16 87/25

**involvement** **[2]** 69/8 69/18

**involves** **[3]** 12/2 67/21 132/6

**involving** **[5]** 61/6 77/21 131/14 135/10 136/3

**ironically** **[1]** 9/16

**irony** **[2]** 51/6 51/25

**is** **[342]**

**isn't** **[6]** 15/21 37/25 76/21 89/3 106/23 135/22

**issue** **[33]** 5/19 6/14 6/25 7/2 7/14 7/19 17/8 18/9 29/11 33/5 38/14 44/5 56/24 70/12 70/24 73/13 74/16 78/25 81/18 81/19 82/12 83/17 90/8 98/8 99/3 102/17 107/3 124/6 124/6 125/23 131/9 131/10 133/13

**issued** **[1]** 13/15

**issues** **[37]** 5/13 23/12 23/19 38/17 41/2 48/6 57/21 57/24 61/23 65/19 65/20 66/5 66/19 66/22 66/24 67/5 67/7 67/12 67/13 67/15 67/21 68/15 69/22 79/10 85/1 85/21 86/6 90/24 91/1 95/1 95/19 107/14 108/8 113/18 125/17 125/21 130/19

**it** **[286]**

**it's** **[86]** 5/24 11/19 15/13 17/4 19/10 20/6 22/20 23/6 24/14 26/17 28/23 31/2 31/15 31/22 32/1

**I**

it's… **[71]** 32/16 33/8 33/15 42/14 43/3 43/24 44/24 45/3 46/6 46/18 46/20 47/6 49/22 49/24 50/9 52/24 53/4 53/12 54/19 54/19 55/19 63/4 64/18 64/20 72/18 72/19 74/12 74/14 74/18 75/11 75/12 75/13 77/17 77/20 80/3 80/15 81/22 82/12 83/25 84/2 84/2 87/24 88/6 88/7 89/12 90/13 93/23 94/18 94/20 97/11 104/13 110/10 114/6 114/19 114/24 115/19 116/10 117/4 117/9 118/1 120/21 120/25 122/22 123/3 124/9 126/10 126/10 126/22 127/14 127/24 133/1

**items [1]** 26/8

**its [36]** 7/20 10/10 22/16 22/19 28/21 29/18 36/14 40/15 55/25 56/16 59/15 60/8 67/1 69/5 70/18 72/6 73/3 73/7 73/8 75/18 75/18 75/23 77/1 77/15 80/11 94/8 95/1 101/14 108/2 108/5 110/21 118/3 118/11 120/13 122/8 126/22

**itself [9]** 31/19 32/18 49/22 52/8 54/8 55/23 69/23 90/24 103/4

**J**

**Jackson [1]** 2/8

**Jane [1]** 121/20

**January [5]** 9/4 60/25 68/21 72/10 83/15

**January 24th [1]** 72/10

**January 7th [1]** 60/25

**January 7th of [1]** 83/15

**Java [2]** 12/16 12/20

**Jeffrey [4]** 1/14 35/12 35/4 37/16 47/10

**JERROB [3]** 1/20 4/12 56/19

**job [1]** 105/4

**judge [72]** 1/14 19/11 19/16 19/21 27/23 30/4 35/2 35/4 35/7 36/7 36/15 36/20 37/3 37/6 37/18 42/7 42/18 43/22 44/5 44/18 44/18 45/3 45/3 45/3 46/8 46/10 46/12 46/15 46/21 46/25 47/3 47/10 48/6 48/16 48/21 48/24 49/1 49/23 50/1 50/5 50/17 50/24 54/13 54/16 55/7 65/11 68/9 78/9 78/10 81/25 82/7 84/14 86/19 88/16 91/25 93/11 98/7 101/8 103/18 109/22 110/14 110/18 110/22 110/23 111/8 122/22 123/12 123/13 123/16 124/25 125/2 129/2

**judges [6]** 28/10 53/24 53/24 55/16 81/18 81/24

**judgment [3]** 37/5 37/7 122/22

**judicial [5]** 42/9 79/15 80/8 125/7 138/13

**July [1]** 37/16

**jump [2]** 5/19 27/17

**junior [1]** 60/11

**jurisdictions [1]** 118/19

**jury [10]** 7/21 32/1 32/3 32/5 32/6 53/6 62/25 75/23 88/7 132/5

**just [78]** 5/18 7/17 12/6 17/23 20/18 22/2 24/22 25/6 28/16 29/8 33/6 34/24 36/19 38/22 43/14

47/6 47/12 47/13 47/14 52/17 53/12 53/18 54/16 65/15 72/9 77/18 77/25 80/6 80/23 81/19 81/23 82/17 84/10 85/8 86/16 86/17 86/18 89/11 89/24 91/18 93/23 96/10 96/13 96/14 96/21 98/5 98/19 100/5 100/21 102/25 103/18 103/24 113/5 114/6 115/5 115/11 115/14 117/20 118/24 118/25 119/7 120/4 120/7 120/9 120/23 121/7 121/15 122/5 122/10 124/8 124/9 124/22 129/13 129/23 131/13 133/15 134/11 136/20

**justice [21]** 5/23 8/20 9/5 9/10 9/22 10/3 10/18 22/16 22/19 33/10 34/5 51/21 52/9 59/13 67/24 71/7 71/14 96/3 99/24 104/11 127/19

**Justice's [1]** 71/2

**justification [2]** 31/11 40/9

**justifications [1]** 72/23

**justify [1]** 135/23

**K**

**keep [1]** 49/23

**kept [1]** 45/8

**key [10]** 7/18 14/10 39/1 89/21 90/9 90/12 90/14 112/6 129/1 129/16

**killed [2]** 7/3 15/18

**kind [7]** 7/18 15/1 16/12 18/20 20/20 34/24 115/13

**kinds [5]** 7/25 23/21 26/16 86/15 92/1

**KIRKLAND [2]** 2/20 4/18

**knew [5]** 51/12 90/10 90/11 94/23 94/24

**know [125]** 5/5 5/6 8/17

**K**

**know…** **[122]** 11/10 12/22
12/22 13/1 13/2 13/22 15/9
17/19 18/9 21/16 29/19
33/15 33/22 36/5 37/12
38/15 44/10 46/6 46/15
50/1 64/4 66/1 66/4 66/7
66/10 70/19 72/12 72/13
72/25 74/7 74/16 77/7
78/1 78/4 78/16 78/18
79/14 80/8 80/10 82/12
82/13 82/13 82/15 83/9
83/16 83/18 83/21 83/23
84/6 84/9 84/23 85/22
86/14 87/6 87/7 87/17
87/18 87/18 87/21 88/6
89/1 89/5 89/10 89/15
89/25 90/2 90/3 90/4
90/6 90/19 90/24 92/9
92/11 92/13 93/12 94/25
95/1 95/2 95/3 98/1 99/12
99/17 101/5 101/17 101/18
101/19 101/21 101/25
102/14 102/15 102/17
104/10 104/20 106/7
106/14 109/8 109/20 110/4
112/18 113/21 114/15
115/23 116/1 116/7 117/16
117/21 122/19 124/6 124/8
124/20 125/12 126/18
127/5 127/16 128/1 128/2
128/9 130/2 131/14 131/20
132/4 133/13
**knowing** **[1]** 42/16
**known** **[7]** 66/13 88/18
89/19 89/19 89/19 91/2
91/2
**knows** **[3]** 61/3 116/11
131/20
**KREINDLER** **[4]** 2/10 2/10
3/14 3/14

**L**

**lack** **[2]** 69/7 85/18
**lacks** **[1]** 75/16
**laid** **[3]** 8/13 23/15 27/12
**Lake** **[1]** 2/5
**land** **[3]** 86/10 91/5 130/25
**landed** **[1]** 67/11
**language** **[9]** 14/10 26/22
27/1 30/15 31/22 31/22
53/25 63/12 115/8
**large** **[2]** 94/7 100/16
**LaSalle** **[1]** 2/14
**last** **[17]** 7/17 19/10 20/18
25/18 35/19 46/20 52/11
52/13 53/22 54/1 68/21
83/15 106/10 109/21 112/9
119/3 136/6
**later** **[10]** 18/23 19/15
50/18 60/12 61/23 68/22
89/18 89/23 114/23 134/1
**law** **[25]** 2/3 2/13 3/17
28/11 28/13 28/19 29/4
29/5 30/10 35/18 35/18
100/13 103/3 109/2 109/10
109/10 111/20 112/14 116/7
116/21 119/24 119/25 120/6
132/14 135/11
**lawful** **[1]** 14/4
**laws** **[1]** 70/23
**lawyer** **[1]** 15/21
**lawyers** **[1]** 30/7
**lay** **[1]** 21/7
**lay out** **[1]** 21/7
**lays** **[1]** 15/23
**lead** **[3]** 3/11 22/22 66/7
**leading** **[1]** 65/13
**learn** **[3]** 10/8 59/14 113/11
**learned** **[1]** 19/15
**learning** **[1]** 89/24
**least** **[10]** 25/11 49/10
53/23 81/1 81/22 91/24
99/15 126/18 127/20

136/14
**leaves** **[1]** 108/25
**led** **[7]** 57/20 60/20 66/5
78/2 85/1 85/14 97/4
**legal** **[3]** 56/24 59/3 108/8
**legislative** **[1]** 7/7
**length** **[2]** 78/20 110/17
**lengthy** **[1]** 110/23
**lenient** **[5]** 28/11 28/17
74/16 75/18 75/20
**lens** **[3]** 115/13 115/21
126/24
**less** **[2]** 27/14 86/7
**lesser** **[1]** 114/24
**let** **[33]** 5/18 8/10 8/12
12/25 13/6 14/22 24/5
27/17 34/21 39/7 39/21
43/6 44/7 44/23 60/5
65/15 72/1 80/23 82/17
84/10 85/8 91/8 95/25
96/2 98/24 99/23 100/21
125/23 125/24 127/8
127/16 133/15 133/19
**let's** **[16]** 3/6 9/21 11/11
12/15 13/24 17/19 20/9
21/7 51/20 94/22 96/10
96/11 129/23 131/1 131/2
132/7
**letter** **[2]** 64/19 102/13
**level** **[7]** 69/8 69/18 69/18
118/5 118/5 118/6 121/21
**Level-B** **[1]** 118/6
**levels** **[1]** 66/20
**Lexington** **[1]** 2/11
**liability** **[8]** 68/19 68/23
68/24 97/9 97/12 98/25
100/10 119/15
**liable** **[2]** 66/15 98/23
**liberty** **[1]** 7/23
**lied** **[2]** 89/22 132/17
**lies** **[4]** 12/8 15/18 16/21
17/14

# L

**life [1]** 12/21
**life-or-death [1]** 12/21
**light [4]** 61/24 98/16 107/25 125/24
**like [35]** 3/10 3/21 6/25 10/9 10/13 16/3 17/15 17/18 22/25 25/5 29/23 30/5 30/9 38/18 39/22 41/5 49/12 53/1 53/6 53/17 55/15 55/16 62/5 68/15 69/21 70/1 70/24 82/12 89/6 91/24 117/7 120/1 124/9 135/13 136/1
**likewise [1]** 29/15
**limit [4]** 54/20 54/22 55/5 55/6
**limitation [3]** 97/9 97/11 98/25
**limitations [1]** 106/5
**limited [14]** 64/18 64/19 64/20 69/3 74/12 80/5 80/6 90/14 91/11 93/8 94/10 97/16 99/11 107/1
**limiting [3]** 79/20 128/2 128/3
**line [9]** 35/5 41/5 52/23 55/21 89/23 89/23 114/17 119/9 119/17
**lines [3]** 89/23 106/16 130/12
**link [1]** 130/22
**linked [1]** 132/21
**Lion [6]** 12/16 13/13 56/22 67/7 99/25 108/6
**list [1]** 67/22
**listed [1]** 20/21
**listening [1]** 133/23
**litany [1]** 85/1
**literally [1]** 21/16
**litigant [1]** 46/4
**litigated [3]** 78/25 112/15

133/3

**litigation [10]** 6/16 21/17 35/17 61/2 64/8 68/10 77/8 83/24 113/12 114/9
**little [7]** 8/23 11/13 34/3 41/4 65/6 65/15 129/13
**lives [1]** 84/19
**living [1]** 62/18
**LLC [2]** 2/10 2/23
**LLP [4]** 2/7 2/17 2/20 3/14
**local [3]** 12/15 12/18 13/7
**Loffing [3]** 61/20 85/14 95/8
**logical [1]** 19/4
**long [7]** 39/10 43/24 46/9 72/24 73/7 100/19 112/15
**look [53]** 7/13 7/14 13/23 14/14 17/2 17/4 17/7 17/15 20/20 22/12 26/6 28/16 28/22 31/17 32/2 32/4 37/2 38/17 39/4 39/16 39/19 39/20 39/22 39/23 40/7 40/19 40/24 41/1 42/12 42/24 50/5 52/17 53/6 55/11 62/23 74/9 79/14 89/17 92/22 109/6 113/24 115/9 116/19 116/21 118/8 122/13 128/17 128/18 129/19 131/1 131/6 135/17 136/9
**looked [7]** 30/5 46/16 54/13 54/18 86/20 115/24 121/11
**looking [6]** 23/22 55/7 83/7 115/2 116/4 129/2
**looks [4]** 40/19 98/21 108/9 109/14
**loosely [1]** 53/4
**lose [1]** 38/13
**losses [4]** 9/14 56/21 56/23 57/16
**lost [5]** 4/2 4/4 4/8 84/19

108/6

**lot [5]** 11/20 128/14 130/16 131/18 131/25
**lots [5]** 23/1 131/3 131/6 131/11 134/9
**loved [1]** 108/6
**low [2]** 42/25 95/4
**lunchtime [1]** 100/20
**Lynn [1]** 88/16

# M

**made [20]** 11/6 20/11 50/21 54/15 65/24 72/10 74/1 77/11 79/3 83/1 93/15 101/10 101/14 107/22 118/13 121/2 126/22 129/12 133/25 134/15
**magistrate [1]** 30/4
**main [1]** 5/19
**majority [1]** 40/17
**make [32]** 6/13 8/22 10/3 16/16 17/5 19/7 21/12 22/16 22/19 25/11 29/20 33/15 33/25 38/11 46/25 47/7 48/12 48/12 55/25 56/23 66/14 71/10 76/21 78/3 82/22 83/22 96/12 100/7 100/21 118/16 129/4 136/17
**maker [1]** 134/14
**makers [1]** 134/6
**makes [4]** 55/18 55/23 78/1 127/1
**making [10]** 7/15 28/3 28/3 34/14 62/23 66/8 91/9 102/11 105/1 123/14
**management [13]** 24/13 24/19 39/17 40/8 52/13 52/17 52/19 52/19 53/5 53/7 53/10 53/14 134/8
**mandamus [16]** 42/6 43/8 43/10 43/14 44/5 45/9 45/12 45/20 45/23 46/5

**M**

Case 4:21-cr-00005-O Document 95 Filed 05/12/23 Page 167 of 189 PageID 1221

mandamus... **[6]** 48/15 109/23 110/13 110/21 123/11 124/24

mandamused **[2]** 39/14 44/15

mandatory **[1]** 31/22

maneuver **[2]** 34/2 89/6

manner **[1]** 67/4

manslaughter **[11]** 11/23 11/25 24/22 96/4 97/25 98/13 99/25 128/6 128/7 128/9 128/11

manslaughter-type **[1]** 99/25

manual **[3]** 12/23 12/24 13/16

manuals **[1]** 14/17

many **[15]** 15/11 30/6 48/10 60/14 67/21 68/5 76/11 85/21 85/23 94/14 94/18 117/1 117/5 117/9 125/20

mapped **[1]** 125/15

March **[2]** 8/19 13/7

March 10th **[2]** 8/19 13/7

Marra **[15]** 19/11 19/16 19/21 36/7 36/20 37/3 37/6 37/18 47/10 50/1 54/13 54/16 55/7 65/11 68/9

Marra's **[3]** 49/23 78/9 78/10

MARTIN **[1]** 2/23

masks **[1]** 138/9

Massachusetts **[2]** 4/1 4/6

matter **[6]** 15/19 71/14 103/3 103/19 126/23 138/7

matters **[3]** 121/5 122/15 122/18

MAX **[2]** 66/25 99/19

Maxwell **[1]** 37/25

may **[25]** 1/8 3/2 11/14 15/16 20/10 23/7 32/1 42/17 49/11 74/17 85/11 86/17 91/18 94/19 99/17 102/6 104/22 117/13 125/17 126/6 129/20 129/23 130/2 130/6 138/15

maybe **[7]** 26/7 29/10 34/25 99/5 120/9 134/10 134/23

MCAS **[35]** 12/18 12/24 13/10 13/18 14/17 57/22 61/11 61/17 61/23 61/24 66/4 66/25 67/4 67/4 67/10 85/10 85/12 85/15 85/20 85/21 88/25 89/1 89/18 90/6 90/23 94/19 95/1 117/12 118/2 129/19 130/2 130/6 131/11 131/16 132/21

McGUIREWOODS **[4]** 2/17 4/17 4/20 4/24

McNulty **[5]** 62/15 62/22 86/18 91/16 95/25

me **[52]** 5/18 8/10 8/12 13/6 14/22 21/23 24/5 25/13 30/5 34/21 34/25 39/7 39/15 39/21 41/22 41/23 41/25 42/3 43/6 43/7 43/15 44/1 44/7 44/23 60/5 65/15 70/14 72/1 72/3 80/23 82/17 84/10 85/8 91/8 91/12 94/23 96/2 96/14 98/24 99/23 100/2 100/5 100/15 100/16 100/21 103/6 105/24 119/6 119/9 127/8 133/15 133/19

MEACHAM **[2]** 1/19 4/13

Meacham's **[1]** 87/19

mean **[17]** 16/10 30/14 30/21 43/17 51/6 53/16 57/14 76/22 81/21 83/13 83/14 101/19 103/22 117/24 120/9 131/13 135/11

meaning **[3]** 18/1 18/18 103/7

meaningful **[4]** 20/6 36/21 40/1 50/8

meaningfully **[4]** 19/6 20/4 50/13 134/19

meaningless **[3]** 18/21 47/6 55/18

means **[3]** 31/23 59/17 106/15

means,' **[1]** 14/4

meant **[1]** 115/19

mechanism **[3]** 18/20 32/19 106/15

mechanisms **[1]** 78/14

meet **[8]** 48/18 59/10 101/18 102/15 102/18 117/9 124/21 132/10

meeting **[4]** 59/1 133/16 133/20 133/24

meetings **[4]** 61/15 66/5 66/9 101/13

meets **[1]** 105/23

member **[2]** 76/22 76/23

members **[6]** 7/3 9/8 17/25 55/15 130/12 135/10

mental **[1]** 17/9

mention **[2]** 77/7 132/21

mentioned **[8]** 10/16 11/23 12/24 22/2 22/9 122/25 132/20 136/7

Merritt **[1]** 28/14

mess **[1]** 50/22

message **[1]** 89/21

met **[4]** 76/14 76/17 77/1 101/6

method **[1]** 78/12

Michael **[1]** 3/25

Michigan **[1]** 35/18

# M

**middle [4]** 72/18 72/19 72/25 75/10

**might [18]** 17/4 41/3 42/19 74/19 74/20 74/24 75/6 75/13 76/12 77/22 79/18 86/24 89/5 90/25 97/19 103/17 104/18 124/8

**Miles [1]** 28/14

**Miller [2]** 31/15 31/20

**Milleron [1]** 3/25

**millions [1]** 21/16

**mince [1]** 9/21

**mind [3]** 82/18 82/19 82/21

**mine [1]** 51/2

**minimum [2]** 16/6 116/19

**minute [8]** 19/2 27/18 28/2 33/24 36/2 36/7 37/1 42/20

**minutes [1]** 14/7

**misconduct [3]** 74/19 106/13 107/5

**mislead [1]** 71/21

**misleading [3]** 14/9 40/16 40/20

**misreading [1]** 76/9

**missed [1]** 129/15

**mistake [3]** 66/14 82/23 83/2

**misunderstood [1]** 134/23

**modeled [1]** 73/20

**moment [15]** 57/7 62/5 62/6 65/8 72/16 73/12 75/10 75/21 78/8 82/14 82/15 83/8 86/17 98/5 123/21

**moments [1]** 71/24

**money [1]** 40/17

**monitor [1]** 74/24

**month [1]** 57/6

**months [5]** 10/6 13/12
25/24 61/3 68/22

**Moore [3]** 47/13 47/13 122/25

**moot [3]** 37/21 37/23 37/25

**more [25]** 39/5 40/12 41/4 49/4 50/2 51/25 51/25 58/11 60/11 64/18 64/18 64/20 69/3 76/3 86/7 94/15 99/5 99/11 102/25 105/5 111/25 116/4 123/15 135/12 136/4

**moreover [2]** 69/15 72/5

**morning [21]** 3/8 3/11 3/13 3/23 4/12 4/16 5/8 7/24 12/11 15/2 15/12 17/24 18/3 22/1 28/24 30/3 30/6 30/23 33/1 56/18 107/8

**most [7]** 60/10 62/14 66/8 78/21 82/9 84/4 86/2

**motion [39]** 5/11 5/12 5/14 5/14 5/18 5/18 21/2 21/4 21/5 21/6 21/10 21/10 24/1 24/4 24/5 29/21 29/25 30/1 34/19 36/14 37/5 56/12 64/13 69/23 70/8 71/22 76/6 78/2 78/8 119/12 119/12 123/20 123/22 123/23 124/4 124/11 125/8 126/22 136/10

**motions [16]** 1/13 5/4 5/5 7/25 8/1 36/1 36/6 56/8 56/9 58/24 59/9 69/22 80/21 122/12 125/16 134/5

**movants [33]** 2/3 3/7 3/9 56/25 57/10 58/12 58/20 58/23 59/10 59/19 60/19 64/13 65/2 67/9 68/19 69/2 70/14 70/17 70/25 72/3 73/24 76/5 76/8 77/8 80/3 83/20 83/23
102/15 102/18 109/6 110/16 110/22 125/20

**movants' [8]** 63/19 64/21 67/21 69/19 78/8 90/20 97/18 125/20

**move [7]** 12/3 16/13 17/19 21/3 24/4 29/23 76/13

**moved [1]** 105/19

**moving [4]** 6/2 54/21 54/23 54/24

**Mr [2]** 5/1 60/9

**Mr. [48]** 3/10 58/15 60/11 61/4 61/20 61/21 65/24 68/21 85/14 87/19 87/22 88/3 89/19 93/13 93/15 94/23 94/23 95/8 95/11 95/19 97/22 97/25 105/9 107/22 108/23 109/20 110/25 112/12 112/21 113/8 114/11 114/24 117/15 119/4 119/8 119/20 120/12 121/2 121/14 121/20 122/1 122/12 122/25 124/18 126/9 126/19 128/1 135/2

**Mr. Cassell [16]** 105/9 107/22 109/20 112/21 114/11 119/4 119/8 119/20 121/2 121/14 121/20 122/1 122/25 124/18 126/9 126/19

**Mr. Cassell's [2]** 112/12 122/12

**Mr. Duffy [7]** 108/23 110/25 114/24 117/15 120/12 128/1 135/2

**Mr. Epstein [1]** 113/8

**Mr. Fisher [4]** 87/22 88/3 93/13 93/15

**Mr. Forkner [12]** 58/15 60/11 61/4 61/21 65/24 68/21 89/19 94/23 95/11 95/19 97/22 97/25

## M

**Mr. Gustavsson [1]** 94/23
**Mr. Loffing [3]** 61/20 85/14 95/8
**Mr. Meacham's [1]** 87/19
**Mr. Paul [1]** 3/10
**much [15]** 5/2 5/3 21/2 27/13 50/18 58/11 64/12 66/12 76/3 99/11 109/13 112/12 129/21 133/15 133/25
**multiple [6]** 57/23 63/20 70/3 90/2 131/9 131/14
**murder [4]** 22/25 92/7 93/5 94/8
**murdered [1]** 92/14
**must [17]** 20/15 30/12 30/15 30/16 30/17 31/8 31/25 32/6 32/9 50/8 58/6 62/8 62/13 62/23 63/8 76/11 122/21
**MVRA [2]** 73/13 73/15
**my [32]** 3/21 17/25 22/25 25/12 34/11 35/25 39/24 42/24 44/4 49/2 50/2 51/7 52/4 52/9 81/22 82/23 83/2 92/21 93/7 98/4 99/7 105/21 106/10 108/25 116/8 119/19 121/1 127/9 127/9 128/15 138/7 138/11

## N

**N.W [1]** 2/20
**Nadia [1]** 3/25
**narrow [4]** 58/11 76/3 130/18 132/2
**Natural [1]** 16/18
**nearest [1]** 27/7
**nearest-reasonable-refere nt [1]** 27/7
**nebulous [2]** 11/20 126/25

**necessarily [5]** 68/1 74/14 93/25 109/17 116/2
**necessary [6]** 76/25 77/19 90/5 116/20 124/3 124/9
**need [17]** 16/2 19/22 25/19 52/12 80/9 100/21 113/20 114/15 122/24 123/3 123/4 123/20 125/11 128/6 128/15 129/7 129/9
**needed [1]** 129/2
**needs [2]** 46/1 110/5
**negligence [1]** 57/15
**negligent [1]** 96/5
**negotiated [3]** 59/18 120/20 120/24
**negotiations [2]** 42/4 83/16
**neither [3]** 22/8 115/4 129/14
**Netflix [1]** 97/19
**never [18]** 6/10 6/13 19/3 19/17 19/17 20/15 25/15 30/20 36/16 38/5 38/6 38/7 53/1 112/23 113/7 113/12 127/17 135/25
**new [10]** 2/11 2/11 32/23 33/19 33/21 79/12 98/16 98/18 98/21 100/13
**next [4]** 21/10 26/13 89/23 129/12
**nexus [1]** 63/8
**nice [1]** 55/18
**NICHOLSON [2]** 2/7 3/9
**night [1]** 45/2
**Njoroge [1]** 4/7
**no [65]** 1/6 6/16 6/20 6/21 9/17 9/20 10/1 10/1 10/2 10/2 10/6 13/1 13/14 13/17 16/11 24/16 26/4 33/13 38/9 46/14 51/5 51/15 52/18 54/7 63/23 66/14 68/19 68/22 68/23 71/5

71/21 74/23 87/13 88/4 91/18 91/25 103/14 105/18 105/18 105/18 108/13 108/18 108/18 109/1 113/3 113/5 113/14 113/25 114/18 114/23 114/25 115/16 115/19 119/24 119/25 120/18 121/16 127/7 127/15 128/22 132/5 133/22 136/22 136/24
**Nobody [1]** 130/15
**nomenclature [1]** 95/9
**none [4]** 25/14 59/17 67/5 121/6
**nonetheless [7]** 58/25 61/6 71/19 74/6 76/1 88/4 104/15
**nonprosecution [8]** 19/19 19/25 35/24 36/22 38/5 72/21 112/22 134/17
**nonpublic [1]** 71/16
**nor [1]** 22/8
**NORTHERN [5]** 1/2 1/21 56/6 56/6 138/18
**nose [3]** 12/19 13/11 89/2
**not [272]**
**note [7]** 32/17 63/9 79/8 101/5 101/10 128/17 128/17
**noted [1]** 28/21
**notes [3]** 32/16 51/7 128/15
**nothing [7]** 12/23 24/13 56/23 66/18 90/6 123/17 125/6
**notice [11]** 6/5 6/17 6/18 10/18 10/22 48/2 51/8 54/20 80/1 102/18 102/20
**notification [2]** 70/9 102/23
**notifications [1]** 81/10
**notified [1]** 22/17
**notify [1]** 48/10

Case 4:21-cr-00005-O Document 95 Filed 05/24/23 Page 170 of 189 PageID 1274

**N**

notion [2] 119/23 122/2
November [1] 61/13
now [37] 5/21 8/22 9/21
10/5 10/12 12/5 16/9 17/18
21/23 24/3 25/3 27/1
27/11 30/18 33/20 35/16
37/11 37/12 38/15 49/25
51/6 62/5 67/23 68/15
69/21 82/5 89/24 98/7
105/3 115/18 127/16 127/21
128/14 128/25 129/12
131/5 134/21
NPA [4] 37/24 112/25
113/4 113/8
number [12] 8/2 29/6
38/10 60/7 60/10 61/21
79/8 89/20 94/24 97/23
98/1 118/4
Numerous [1] 64/22

**O**

O'CONNOR [1] 1/14
oath [2] 24/19 53/14
object [1] 75/2
objecting [3] 78/24 103/19
130/22
objection [1] 51/9
objections [2] 39/22
46/25
obligated [3] 18/24 40/16
54/10
obligation [7] 18/14 22/2
22/7 23/17 36/5 59/4
127/25
obligations [6] 73/7 73/8
73/10 77/1 77/3 120/13
obliquely [1] 105/2
obscured [1] 7/18
observation [1] 83/10
obstructing [1] 14/3
obviously [13] 6/1 8/7

28/11 44/24 54/24 69/24
79/23 81/7 82/14 84/13
101/24 112/14 124/5
occasions [4] 57/23 59/10
90/2 95/17
occur [9] 76/12 110/2
113/19 122/20 122/21
122/24 123/3 123/4 123/15
occurred [6] 50/23 61/12
67/25 103/12 116/22 117/2
occurs [3] 76/10 103/17
122/19
October [2] 8/19 12/15
October 29th [1] 12/15
off [5] 25/13 28/17 46/2
99/7 115/15
offense [21] 57/13 61/9
62/9 62/24 63/3 63/15
63/15 64/6 76/1 86/25
87/12 87/15 99/2 108/22
108/24 109/1 109/2 109/2
109/5 109/7 113/21
offenses [1] 114/3
offered [1] 10/1
office [3] 9/19 50/9 71/7
OFFICES [2] 2/13 3/17
official [3] 13/15 129/22
138/18
officials [3] 60/22 69/9
69/19
often [2] 71/16 112/16
oh [10] 18/22 21/19 28/25
36/17 55/18 103/10 106/24
131/6 131/17 135/25
okay [31] 3/6 4/14 17/19
31/22 32/21 33/8 33/14
41/13 43/2 43/5 44/21
45/17 45/25 47/12 52/11
53/17 55/4 56/17 81/11
82/12 83/11 94/20 99/9
100/1 100/2 103/10 105/5
105/12 113/22 127/2

136/12
okay, [2] 103/7
okay, if [1] 107/4
ombudsman [6] 9/12 9/17
70/24 71/2 127/14 127/15
ombudsman's [1] 71/7
omissions [1] 14/9
on [221]
on board [1] 13/9
on that [1] 127/11
once [6] 13/10 15/20 29/15
33/2 33/17 128/3
one [46] 7/17 10/16 16/1
16/25 19/9 20/16 24/14
25/9 25/21 39/23 46/1
49/24 50/16 50/18 50/18
54/18 60/7 62/6 62/23
65/22 67/1 71/23 76/20
85/4 86/19 87/2 90/9
92/2 94/1 102/25 105/5
109/13 111/25 111/25 112/11
112/13 113/5 116/14 120/5
120/18 121/14 123/8 127/13
131/5 131/13 133/15
onerous [1] 77/3
ones [4] 36/18 108/6
114/11 116/2
ongoing [1] 38/19
only [22] 14/24 21/23
31/13 32/13 50/12 60/2
60/6 63/22 67/1 80/10
92/22 95/6 95/7 112/20
114/2 116/21 116/22 125/6
125/7 127/15 131/10 135/5
onto [1] 29/18
oOo [1] 3/3
open [6] 30/12 30/17
31/23 33/11 76/11 122/20
opened [2] 38/8 129/16
opens [1] 127/17
operating [2] 45/20 67/1
Operations [1] 12/24

**operator [1]** 118/18

**operators [1]** 118/17

**opinion [16]** 43/20 43/22 43/24 44/2 44/8 44/12 46/10 48/23 49/10 49/11 78/9 91/20 92/22 110/23 112/25 113/1

**opinions [3]** 78/15 81/23 103/4

**opportunity [20]** 16/20 19/17 19/18 19/20 20/13 25/12 34/18 46/12 46/14 49/19 50/6 50/14 56/14 73/1 91/19 129/5 134/13 134/19 136/8 136/9

**oppose [1]** 36/6

**opposed [2]** 66/20 126/24

**option [1]** 18/8

**or [135]** 5/12 6/5 7/21 10/8 10/9 11/17 12/21 14/24 16/11 17/11 21/8 22/25 24/8 24/22 26/2 26/8 26/9 29/8 30/19 31/3 35/5 39/10 39/10 39/17 39/18 40/14 40/25 41/4 41/5 41/8 42/13 44/14 47/6 48/7 50/18 52/16 52/20 52/21 54/1 54/21 54/25 57/15 57/15 58/23 60/19 61/21 61/23 62/7 62/25 63/2 64/25 65/2 68/17 69/14 70/12 70/13 70/17 70/21 72/20 72/21 72/21 73/1 73/15 73/16 73/16 74/17 74/19 75/3 75/6 76/4 76/7 76/19 77/11 77/21 78/12 79/2 79/5 79/6 79/17 79/18 80/1 80/3 80/17 82/7 82/24 83/15 83/25 86/7 86/14 86/25 87/3 88/7

89/9 89/23 90/21 92/23 92/25 93/20 95/18 96/4 96/5 97/18 97/19 98/8 99/3 99/25 102/15 103/2 103/3 103/17 103/23 104/4 104/25 106/2 106/8 106/15 106/15 109/24 110/24 111/25 112/17 114/3 115/6 116/22 119/7 119/24 120/5 120/8 123/22 124/1 128/9 130/11 132/9 134/18 138/9

**order [31]** 22/6 23/20 36/10 41/16 41/17 44/17 45/10 48/6 48/17 64/23 71/10 73/19 77/25 78/10 79/1 79/6 101/17 101/19 101/22 102/14 102/14 102/17 109/17 110/1 110/8 112/3 121/22 124/5 124/6 127/9 136/20

**ordered [5]** 36/12 111/6 112/24 113/7 122/6

**ordering [2]** 130/11 130/23

**ordinarily [2]** 24/17 24/23

**ordinary [2]** 34/16 45/23

**organization [3]** 92/11 92/13 94/6

**originally [3]** 105/6 118/5 120/24

**other [62]** 5/13 8/4 8/18 11/23 15/12 16/6 21/17 29/8 30/9 32/19 32/25 33/23 34/17 37/8 38/17 46/3 46/18 50/21 55/17 57/15 57/25 59/14 61/19 61/23 65/22 66/2 66/17 69/22 71/1 77/9 77/9 77/15 77/20 77/21 91/11 94/5 95/6 95/7 95/11 95/17 95/17 96/5 97/13 98/19 99/16 101/25 102/8 103/23 107/16 111/14

114/11 114/19 115/23 115/23 117/7 118/17 119/16 121/6 122/17 125/17 125/17 131/6

**others [8]** 10/21 37/25 45/22 55/6 61/10 67/17 71/8 90/25

**otherwise [3]** 55/19 78/18 79/5

**ought [1]** 98/9

**our [85]** 4/21 5/14 6/1 6/24 7/7 8/2 8/9 9/3 9/14 10/20 12/12 15/22 16/5 16/9 16/24 18/6 18/8 21/1 21/2 21/4 21/10 21/18 23/15 24/1 24/1 24/4 26/17 27/11 27/12 27/14 29/21 29/23 29/25 30/16 34/3 34/19 37/4 37/6 38/2 38/8 38/15 39/2 46/11 48/23 49/2 50/2 53/2 56/10 56/12 57/9 58/25 59/14 65/10 67/5 68/3 69/12 69/13 72/1 76/15 77/14 77/17 79/1 80/3 80/4 80/20 83/18 83/18 83/22 84/4 84/9 89/16 99/20 101/16 102/22 103/25 104/13 105/2 107/23 107/24 122/16 130/14 130/16 133/24 134/5 136/10

**out [36]** 8/13 10/4 11/16 14/6 15/23 17/13 17/23 21/7 23/15 23/21 27/12 30/20 32/21 32/24 35/25 36/8 37/21 40/15 42/5 42/7 42/14 46/21 67/17 67/18 67/22 69/12 69/25 71/8 73/21 84/9 89/6 100/20 104/18 125/16 131/6 136/20

Case 4:21-cr-00005-O   Document 95   Filed 05/12/22   Page 172 of 189   PageID 1276

outcome [11]  8/15 10/24
46/17 47/8 48/25 52/10
64/3 64/6 67/20 69/15
89/13
outcomes [1]  115/5
outlining [1]  15/12
outside [7]  42/8 80/14
91/25 95/5 98/16 103/25
106/8
outskirts [1]  13/8
over [17]  5/1 12/16 23/5
23/25 25/23 28/22 53/9
57/6 61/3 71/23 74/4 74/9
90/21 105/19 108/12
109/20 118/16
overall [1]  93/5
overlook [1]  4/7
overstate [1]  53/2
overturn [1]  114/14
overturned [4]  114/13
115/6 119/21 122/7
own [2]  31/19 34/3

P

P.C [1]  2/13
page [6]  15/22 46/9 48/23
86/22 87/2 128/17
pages [6]  21/16 81/22
81/23 89/15 119/12 130/16
paid [1]  39/18
pandemic [1]  138/8
pandering [1]  51/20
panel [1]  38/16
paper [1]  128/4
papers [9]  6/2 7/7 7/20
8/9 9/3 9/12 10/20 16/24
124/10
paragraph [4]  14/15 46/20
68/22 69/9
paragraphs [3]  67/22
88/23 97/17

parallel [1]  110/10
parameters [1]  95/5
paramilitary [2]  92/11
92/12
part [15]  22/11 26/8 34/13
41/16 44/4 44/5 63/17
64/17 81/8 82/9 90/5
90/12 105/1 120/11 122/7
participants [3]  60/4 60/6
138/9
participate [1]  125/24
participation [3]  124/14
124/16 125/3
particular [6]  12/14 12/14
23/24 31/2 86/1 131/15
particularly [1]  21/25
parties [9]  41/14 45/16
55/2 73/18 75/7 77/9
120/3 127/10 130/18
parties' [1]  16/9
parts [2]  24/7 44/4
party [2]  67/14 120/5
party's [1]  87/11
passages [1]  30/25
passed [3]  5/22 51/12
113/8
passengers [7]  12/8 12/17
13/4 13/9 13/21 14/20
130/1
past [1]  61/3
path [1]  130/10
patience [2]  21/2 29/23
PATRICK [2]  2/19 4/18
pattern [3]  43/13 94/9
106/24
PAUL [3]  2/3 3/10 4/7
pay [2]  40/16 85/13
payment [1]  104/24
payments [11]  73/10 73/12
73/15 73/16 73/18 73/24
74/1 74/2 77/4 104/25
120/16

pen [1]  128/3
pending [1]  80/21
Pennsylvania [1]  2/20
people [11]  15/19 16/22
17/16 25/4 94/8 100/7
103/15 130/7 132/3 132/23
134/8
performance [1]  120/14
performed [4]  120/12
120/13 120/21 120/25
perhaps [5]  22/14 26/7
50/2 109/8 109/9
period [5]  45/16 82/6 84/1
94/25 99/19
permission [3]  3/21 21/3
24/4
permit [2]  32/17 106/10
permitted [1]  55/4
permitting [1]  91/25
persisted [1]  52/19
person [5]  7/5 62/7 63/2
63/14 66/7
personnel [1]  104/10
persons [6]  63/2 66/21
73/16 99/21 104/21 104/22
perspective [1]  99/21
persuasive [1]  114/5
Peter [1]  29/4
Petroleum [2]  47/25 48/1
PHILLIPS [1]  2/23
physical [1]  14/23
picture [1]  17/9
piece [3]  8/25 41/18
118/25
pieces [2]  24/6 36/22
pilot [3]  60/10 60/12 89/5
pilots [3]  85/17 86/10
118/22
Pipeline [1]  16/18
place [9]  12/14 13/7 66/3
73/19 75/14 90/3 101/13
125/4 125/7

**P**

**placed [2]**  15/4 34/12
**plain [1]**  30/15
**plan [2]**  107/13 127/9
**plane [4]**  67/11 86/11 89/2 91/5
**planes [2]**  57/21 130/25
**play [2]**  54/5 129/22
**played [7]**  85/11 94/19 117/13 129/20 129/23 130/2 130/6
**playing [1]**  85/15
**plea [45]**  11/8 28/10 28/16 29/8 37/1 39/8 39/9 39/11 39/19 40/24 42/4 46/14 46/25 47/19 47/20 47/24 48/17 49/4 49/6 49/9 54/21 54/24 72/20 75/8 75/14 99/1 109/25 110/9 110/15 110/19 111/2 111/9 111/13 111/15 111/17 111/22 114/18 114/24 116/8 116/10 120/1 121/10 126/1 126/3 126/4
**plead [1]**  54/25
**pleading [1]**  129/24
**pleas [1]**  111/19
**Please [1]**  3/4
**pleased [2]**  20/18 25/17
**plummets [1]**  89/3
**point [53]**  7/17 11/25 12/20 12/22 13/3 13/6 13/19 19/9 21/22 22/10 22/21 23/11 24/11 27/16 30/15 31/5 31/10 33/3 33/4 37/18 39/1 40/4 40/6 45/4 49/24 50/21 67/17 67/18 76/21 81/13 81/14 82/3 83/11 84/11 84/20 87/17 93/11 106/24 107/19 108/21 111/14 112/6 119/3 121/4 121/14 124/13 125/8

127/23 127/24 128/6 128/21 129/21 136/6
**pointed [1]**  87/4
**points [7]**  7/20 17/18 23/24 23/25 121/1 121/2 132/21
**police [1]**  87/10
**policies [1]**  59/15
**policy [2]**  11/6 102/11
**portion [1]**  61/18
**portions [3]**  119/7 119/13 120/4
**position [16]**  15/4 21/23 23/4 29/1 29/12 30/16 31/14 31/21 31/21 32/11 60/25 61/2 120/19 120/24 130/15 134/25
**possess [2]**  17/25 17/25
**possibilities [1]**  20/22
**possibility [1]**  54/16
**possible [3]**  5/7 115/5 121/3
**possibly [2]**  23/10 133/6
**posture [4]**  27/23 28/7 47/13 51/1
**potential [4]**  58/2 59/23 69/1 132/21
**potentially [6]**  10/24 63/5 111/5 115/9 119/16 136/9
**power [12]**  16/15 22/6 24/5 25/9 28/21 29/18 34/1 47/9 74/23 105/6 135/17 136/5
**powers [1]**  5/18
**practice [1]**  72/24
**practices [1]**  59/16
**precede [1]**  111/20
**precedent [14]**  28/9 39/5 39/6 44/25 44/25 50/19 50/20 53/19 55/21 73/22 79/4 79/5 106/23 136/1
**precedes [1]**  52/8

**preceding [5]**  67/7 86/6 86/7 86/10 97/4
**precepts [1]**  21/24
**precise [1]**  24/23
**precisely [3]**  68/13 68/13 83/6
**precluded [2]**  11/18 53/5
**precludes [1]**  11/22
**prelude [2]**  20/2 36/23
**premise [5]**  21/11 28/18 28/20 30/2 62/16
**preplea [4]**  110/8 111/5 111/10 112/8
**preponderance [4]**  8/1 8/5 63/5 132/9
**prescribed [1]**  138/13
**present [6]**  12/13 28/24 32/14 45/2 46/12 46/24
**presentation [3]**  20/11 127/10 133/25
**presented [3]**  50/3 54/16 115/12
**presents [1]**  64/10
**presiding [1]**  122/22
**press [3]**  14/6 14/8 40/15
**presumably [3]**  41/16 125/9 135/15
**presume [1]**  126/16
**pretrial [1]**  7/24
**pretty [1]**  109/13
**prevent [2]**  99/24 100/2
**prevented [1]**  53/9
**preventing [1]**  56/13
**previously [1]**  95/6
**principal [1]**  119/11
**principle [3]**  79/20 128/3 128/3
**principles [1]**  29/17
**printout [1]**  81/22
**prior [3]**  67/8 83/15 109/25
**private [3]**  34/3 113/14

**P**

private... **[1]** 114/7

privilege **[1]** 37/1

probably **[2]** 16/10 42/11

problem **[6]** 74/19 79/16 79/19 81/17 83/10 86/11

problematic **[2]** 41/12 89/18

problems **[3]** 51/4 85/23 95/19

procedural **[5]** 7/17 39/23 40/4 41/18 44/4

procedurally **[1]** 126/2

procedure **[3]** 30/11 122/14 122/15

proceed **[2]** 17/9 107/19

proceeding **[3]** 65/12 84/21 125/7

proceedings **[18]** 25/11 38/6 45/11 77/22 77/24 112/4 112/23 113/2 115/15 122/18 122/23 125/4 126/7 126/25 129/9 137/1 138/6 138/10

process **[12]** 11/8 26/1 26/10 34/14 67/15 80/7 87/24 88/2 88/19 102/23 105/1 127/19

produce **[1]** 36/14

produced **[2]** 12/8 48/23

product **[4]** 66/25 90/24 90/25 91/1

Products **[2]** 64/8 64/8

Professor **[2]** 29/3 37/19

professor's **[1]** 135/11

proffer **[1]** 15/22

profoundly **[1]** 108/3

program **[1]** 120/17

prohibited **[1]** 96/3

PROJECT **[1]** 2/4

promise **[3]** 6/12 53/22 106/10

promised **[3]** 20/12 134/13

promises **[1]** 50/6

promulgate **[1]** 104/10

prongs **[1]** 46/6

proof **[5]** 7/19 7/21 7/25 8/5 64/10

proper **[2]** 91/9 91/12

properly **[3]** 19/24 42/19 56/10

property **[1]** 87/11

proposed **[2]** 110/9 129/6

proposition **[5]** 19/10 25/5 63/19 72/17 116/15

prosecutable **[1]** 69/4

prosecute **[8]** 20/7 20/14 52/22 53/7 98/10 98/10 128/5 128/11

prosecuted **[2]** 19/3 56/5

prosecuting **[2]** 11/22 53/5

prosecution **[22]** 6/5 10/11 10/19 10/23 10/25 11/15 11/18 24/25 36/23 52/2 53/10 60/2 62/4 62/21 72/13 72/17 75/18 80/11 111/25 112/2 126/10 134/18

prosecutor **[3]** 53/7 108/16 114/2

prosecutor's **[2]** 50/9 126/23

prosecutorial **[4]** 58/7 70/20 79/22 113/19

prosecutors **[15]** 19/7 19/18 20/9 20/14 22/15 27/24 28/4 47/5 48/19 50/15 55/16 58/4 60/22 100/25 134/19

prospective **[6]** 18/1 18/12 83/6 102/5 102/7 124/19

prospectively **[3]** 124/14 124/16 124/20

protect **[2]** 23/3 50/12

protected **[5]** 18/10 22/8 24/24 33/25 47/7

protection **[1]** 46/3

protections **[2]** 7/9 22/12

proud **[1]** 29/5

prove **[14]** 15/14 15/23 16/7 16/20 21/18 21/21 22/21 43/10 59/24 62/2 80/5 88/9 93/19 132/8

proved **[2]** 58/8 79/17

proven **[1]** 63/5

provide **[6]** 10/18 48/2 78/11 78/22 102/18 103/4

provided **[12]** 16/4 59/7 61/22 71/9 71/13 71/19 71/20 87/2 87/21 92/18 95/18 104/1

provides **[2]** 18/11 105/9

providing **[3]** 65/1 79/12 102/20

provision **[32]** 10/17 10/21 18/16 18/17 22/9 24/12 24/20 26/6 26/17 27/13 27/14 37/24 40/8 40/14 45/12 45/23 52/25 53/3 53/4 53/11 53/20 55/24 56/2 56/3 65/4 73/20 104/5 104/13 104/14 106/1 134/17 134/18

provisions **[20]** 10/16 19/5 19/25 39/8 40/3 40/7 41/6 41/8 41/12 50/13 54/12 54/18 56/13 81/1 83/3 103/23 104/11 119/16 119/16 119/18

proximate **[25]** 16/20 62/6 63/11 63/16 63/23 64/1 64/4 64/9 64/11 64/15 64/23 86/3 88/8 89/9 89/10 89/10 89/12 91/6 93/16 93/24 94/3 95/25 109/7 132/11 132/13

**P**

**proximately [6]** 7/6 57/12 62/8 63/2 86/24 87/1

**prudential [4]** 43/12 103/3 103/19 124/24

**prudentially [1]** 123/11

**public [8]** 14/12 26/2 30/9 33/25 76/22 76/23 122/4 122/6

**publicly [3]** 26/10 60/8 60/18

**published [2]** 29/5 35/19

**purpose [2]** 48/12 55/14

**purposes [1]** 39/9

**pursuant [2]** 26/20 26/23

**purview [1]** 42/8

**push [1]** 115/15

**pushed [1]** 89/2

**pushing [2]** 53/11 128/8

**put [19]** 24/16 24/18 25/12 29/18 33/24 42/1 51/20 55/5 56/3 84/10 97/18 104/7 110/20 113/4 113/5 120/19 120/23 128/3 132/8

**putting [3]** 53/14 55/6 130/17

**Q**

**quality [1]** 52/8

**quantities [1]** 94/7

**question [41]** 17/16 26/13 27/2 27/9 31/13 34/25 43/6 49/25 52/11 52/13 53/22 54/14 65/8 65/10 68/17 73/11 81/12 82/20 82/22 84/3 86/18 92/21 93/4 93/7 94/2 96/3 96/23 98/4 99/5 102/6 102/25 103/22 105/5 106/10 107/4 123/8 127/22 132/15 133/4 133/5 135/5

**questions [19]** 34/22 40/10 40/20 40/21 69/23 70/4 71/24 80/22 80/23 107/16 107/18 108/23 109/13 115/3 115/23 116/12 117/11 119/5 129/16

**quickly [2]** 109/12 121/3

**QUINNEY [1]** 2/3

**quite [6]** 30/19 42/23 46/18 81/19 94/14 127/24

**quo [2]** 103/12 123/18

**quote [2]** 23/7 52/18

**R**

**raised [5]** 91/2 98/7 121/4 122/1 124/18

**ran [1]** 110/21

**Rather [1]** 65/19

**ratified [1]** 50/24

**RDR [2]** 138/4 138/17

**re [76]** 11/1 11/2 35/7 35/22 37/8 38/19 38/22 39/3 43/7 43/8 46/19 47/15 49/15 49/16 50/16 62/15 62/22 65/6 65/10 65/11 70/2 70/2 70/3 70/5 72/20 78/19 79/11 79/23 79/23 80/1 80/13 81/6 81/6 81/8 81/18 81/23 82/10 84/15 86/18 91/16 91/20 100/23 109/14 109/15 109/16 109/18 109/19 109/23 111/12 111/17 112/5 112/6 112/18 112/20 113/17 113/25 114/4 117/7 121/5 121/9 121/11 123/10 124/1 124/14 124/23 125/11 125/15 125/23 128/14 128/15 128/16 128/17 128/20 128/25 129/1 129/8

**reach [4]** 12/3 16/3 81/21 88/17

**reached [6]** 47/19 47/24 47/25 84/14 71/18 75/6

**reaches [2]** 23/19 47/20

**reaching [3]** 24/19 38/17 104/18

**read [17]** 9/8 30/19 35/21 35/21 43/17 43/20 44/7 44/11 44/11 44/20 79/11 91/19 92/22 98/6 109/22 112/13 113/16

**reading [3]** 9/12 46/19 112/12

**ready [2]** 15/16 130/15

**real [3]** 81/17 82/22 115/12

**realize [2]** 98/20 102/10

**really [27]** 6/7 15/10 21/20 25/22 42/22 51/2 52/4 55/3 55/13 65/3 79/9 80/9 82/1 83/20 107/1 107/14 109/11 110/5 114/5 114/7 116/4 119/25 120/9 127/23 128/8 131/18 131/24

**reason [15]** 11/5 16/5 17/23 34/20 42/5 66/10 75/3 84/25 94/17 95/22 95/23 105/22 124/3 127/18 135/12

**reasonable [11]** 7/20 27/7 50/6 50/7 53/17 58/9 59/25 62/2 80/5 93/20 114/3

**reasonableness [1]** 31/5

**reasonably [2]** 9/1 13/19

**reasoning [5]** 113/17 114/5 114/8 124/1 124/1

**reasons [17]** 20/23 41/7 45/8 46/16 54/7 57/9 60/14 71/17 72/23 80/19 94/1 101/5 113/25 123/4 132/2 133/10 134/22

**R**

reassigned **[1]** 39/15
reassignment **[1]** 45/4
rebuttal **[1]** 127/4
recalcitrant **[1]** 22/15
recall **[3]** 45/15 46/19
127/14
recent **[1]** 78/15
recently **[2]** 8/18 53/23
reckless **[1]** 127/20
recognize **[2]** 72/9 72/12
recognizes **[1]** 56/20
recollection **[1]** 49/2
record **[3]** 15/6 15/23
138/6
red **[3]** 41/5 119/9 119/17
redacted **[1]** 26/9
redressability **[1]** 113/3
REED **[1]** 1/14
reengaged **[1]** 67/5
refer **[2]** 21/6 27/6
reference **[3]** 99/16 117/12
131/23
referenced **[16]** 64/7
65/20 67/8 73/23 77/5
78/1 78/14 80/6 80/19
86/4 95/8 103/24 104/19
105/2 116/7 116/14
referent **[1]** 27/7
referred **[2]** 7/19 95/11
referring **[3]** 6/1 27/3
126/19
refers **[1]** 27/8
refined **[1]** 50/2
reflect **[1]** 136/19
reflected **[4]** 62/25 88/6
108/16 109/3
regain **[1]** 12/21
regard **[7]** 13/20 66/12
69/20 71/22 99/22 128/16
136/14
regarded **[1]** 31/16

regrets **[1]** 108/3
regular **[1]** 120/17
regularly **[1]** 69/12
regulators **[7]** 14/5 57/24
66/22 66/23 89/22 90/21
132/17
Reilly **[1]** 29/4
reinforcing **[1]** 16/1
reiterate **[2]** 60/5 95/16
reject **[14]** 28/10 29/7
29/8 36/5 39/8 41/6 41/8
41/9 41/10 41/11 75/4
105/6 105/22 135/3
rejected **[1]** 54/17
rejecting **[4]** 39/11 40/20
42/25 46/10
rejects **[1]** 37/2
relate **[1]** 65/25
related **[17]** 5/14 21/4
35/15 57/22 57/25 66/19
66/24 67/7 67/12 67/13
67/15 69/10 85/21 93/13
96/5 97/10 99/25
relates **[11]** 49/14 54/5
62/6 77/10 85/8 88/23
91/23 96/24 102/11 102/12
123/10
relation **[1]** 106/14
relationship **[3]** 67/19 88/1
88/1
relatively **[3]** 61/9 90/14
100/17
release **[13]** 14/6 14/8
30/1 32/22 33/18 33/22
34/10 40/15 68/24 76/8
76/19 76/20 119/15
relevant **[3]** 21/12 26/17
27/5
reliable **[1]** 58/2
reliance **[1]** 67/3
relied **[1]** 114/11
relief **[7]** 43/8 43/10

48/15 109/19 112/7 112/24
113/7
rely **[4]** 14/13 27/4 28/19
116/15
remaining **[1]** 31/13
remains **[1]** 60/25
remand **[8]** 44/6 44/8
48/21 49/1 49/12 109/22
110/8 110/22
remarkably **[1]** 21/14
remedies **[16]** 20/16 20/21
37/13 37/13 53/24 58/22
78/14 78/17 78/18 78/20
103/2 103/5 103/7 103/21
104/2 129/6
remedy **[18]** 12/3 17/20
19/4 36/15 36/16 36/17
36/21 103/14 104/3 104/13
104/14 110/2 111/6 111/13
119/13 120/22 133/14
134/15
remember **[7]** 39/22 48/22
50/17 95/14 127/12 129/12
131/18
remembers **[1]** 89/22
remote **[3]** 88/5 88/5
106/22
remoteness **[6]** 65/25 68/6
90/7 94/4 95/21 106/23
remove **[2]** 17/14 19/5
reopen **[9]** 54/21 54/23
54/24 108/19 114/15 119/6
120/7 120/23 124/15
reopening **[2]** 54/12 55/4
repeat **[1]** 107/24
repeatedly **[1]** 28/15
reply **[1]** 119/11
report **[11]** 13/15 65/21
65/22 65/23 67/9 90/18
90/19 117/25 118/2 118/4
122/2
reported **[1]** 86/11

**R**

**Reporter [1]** 138/18

**REPORTER'S [1]** 138/2

**reporting [2]** 77/4 120/17

**reports [7]** 15/25 25/23 68/1 68/5 86/5 89/14 122/6

**represent [6]** 11/24 15/7 67/23 86/15 128/12 130/13

**representations [1]** 10/4

**representatives [4]** 56/21 71/1 71/10 108/1

**represented [1]** 125/20

**representing [5]** 6/8 7/3 7/4 20/24 133/11

**reputation [1]** 52/7

**request [5]** 16/9 47/22 80/21 83/23 101/4

**requested [3]** 79/6 109/19 112/7

**requests [2]** 79/9 81/9

**require [6]** 14/23 17/11 40/2 81/1 118/2 118/9

**required [14]** 17/2 50/20 74/7 83/4 84/11 84/14 84/21 113/3 117/1 118/4 118/7 118/10 122/19 132/25

**requirement [1]** 100/25

**requirements [3]** 63/12 77/4 85/16

**requires [5]** 29/19 30/24 82/2 83/17 124/4

**requiring [2]** 10/17 23/21

**requisite [1]** 93/5

**research [2]** 116/8 119/19

**reserves [1]** 108/15

**resolution [2]** 114/25 127/23

**resolved [1]** 9/15

**respect [54]** 38/1 57/1 57/16 59/8 59/20 60/14 60/20 61/8 61/16 61/24

62/1 64/13 65/21 66/3 66/17 66/23 68/6 68/7 69/13 69/17 69/22 70/16 73/24 73/25 74/3 74/8 75/14 76/6 76/23 77/8 78/10 78/20 79/1 90/7 90/8 90/22 94/24 97/9 97/25 99/12 99/14 99/17 100/17 103/21 104/3 110/10 111/15 111/16 112/11 112/12 114/10 117/25 131/8 136/10

**respected [2]** 54/9 54/10

**respectfully [12]** 76/8 80/18 80/20 81/4 81/20 101/4 106/16 106/19 107/5 119/11 120/22 124/17

**respective [1]** 118/23

**respond [3]** 84/8 99/7 99/7

**responded [1]** 129/15

**responding [1]** 122/12

**responds [1]** 123/5

**response [7]** 16/9 27/13 65/8 71/10 71/19 71/20 79/13

**responsible [2]** 66/8 134/8

**rest [2]** 24/21 26/9

**rested [1]** 28/8

**restitution [2]** 73/15 87/6

**restoring [1]** 103/11

**restructure [1]** 5/23

**rests [3]** 21/11 30/2 70/21

**result [5]** 7/6 11/10 14/16 62/8 63/3

**resulted [2]** 118/23 132/15

**resume [1]** 93/9

**retrospective [1]** 18/13

**reversed [4]** 39/14 39/14 42/6 93/1

**review [5]** 29/5 29/18 29/19 35/18 45/24

**reviewed [4]** 98/8 107/11

107/12 136/16

**revisions [1]** 5/18

**revolving [1]** 5/13

**Richmond [1]** 2/18

**Riffel [1]** 4/5

**rigged [1]** 88/19

**right [87]** 3/5 4/11 4/25 5/10 5/19 6/3 6/4 6/6 8/10 11/7 13/24 16/17 18/5 18/7 19/1 19/9 21/5 25/3 26/13 29/4 30/10 33/4 34/9 35/8 38/23 41/19 41/19 42/11 42/21 44/9 44/16 45/15 47/4 48/14 49/3 49/7 49/13 49/18 49/25 50/7 50/8 50/12 50/15 51/5 51/5 51/10 51/13 51/24 51/24 52/3 54/3 54/9 55/11 56/10 78/12 81/16 85/3 85/25 88/14 88/21 92/8 96/10 96/22 96/25 97/12 98/4 103/20 105/3 108/13 108/18 108/19 110/9 111/22 113/14 114/7 115/5 121/9 121/17 121/19 124/8 126/2 127/8 127/8 129/4 134/5 136/1 136/25

**rights [43]** 5/12 5/20 5/21 5/22 5/24 5/25 6/9 7/10 9/11 9/17 10/15 10/17 11/11 14/22 18/11 18/19 18/25 20/3 20/4 22/4 22/8 22/11 22/17 23/3 24/2 35/4 36/24 46/22 47/1 47/3 48/17 54/8 55/13 55/16 56/1 56/4 71/7 79/14 111/21 121/5 123/13 126/6 135/9

**risk [13]** 12/7 12/8 12/12 13/4 13/5 13/21 13/22 14/21 129/13 129/14

**R**

risk... **[3]** 129/25 130/7 130/7

riskier **[1]** 15/4

risks **[1]** 15/2

RMR **[2]** 138/4 138/17

road **[2]** 81/13 124/12

robbery **[4]** 87/3 87/4 87/8 87/9

role **[14]** 57/23 60/12 66/23 80/10 85/11 85/15 94/19 111/15 117/13 129/20 129/22 129/24 130/2 130/6

Room **[1]** 138/20

Rosenthal **[16]** 44/6 45/4 46/9 46/10 46/15 47/3 48/6 48/16 48/21 49/1 103/18 109/22 110/14 110/18 110/22 110/23

Rosenthal's **[3]** 43/22 48/24 50/17

route **[1]** 120/6

routinely **[2]** 33/23 122/17

rubbing **[1]** 79/21

rule **[38]** 12/11 14/19 15/6 15/13 16/5 18/3 22/24 27/7 29/21 30/15 30/23 31/3 31/4 31/7 31/14 31/18 31/24 31/24 32/4 32/10 32/15 32/17 45/14 51/7 51/15 51/18 55/9 75/12 76/9 122/19 123/20 123/22 123/23 124/4 124/10 124/11 125/8 133/6

Rule 10 **[7]** 30/23 31/3 31/14 32/10 32/15 51/18 122/19

Rule 11 **[3]** 51/7 51/15 75/12

Rule 2 **[1]** 31/7

Rule 23 **[1]** 32/4

Rule 41 **[6]** 123/20 123/22 123/23 124/4 124/11 125/8 125/8

ruled **[3]** 32/8 36/20 114/22

rules **[13]** 6/24 30/11 31/8 32/1 32/4 32/19 34/4 34/6 34/17 37/6 58/3 62/20 104/10

ruling **[4]** 12/3 84/24 116/1 123/14

rulings **[2]** 16/16 65/13

rummage **[1]** 23/23

running **[1]** 100/19

runs **[2]** 65/3 119/14

**S**

safely **[1]** 130/25

safety **[4]** 14/5 14/11 61/18 132/17

saga **[1]** 35/17

said **[69]** 9/4 9/12 9/16 11/5 12/2 16/23 17/7 19/16 19/21 20/1 27/23 28/9 32/9 34/3 35/12 36/7 36/9 38/22 44/10 46/15 50/1 50/5 52/20 52/25 53/16 55/7 64/9 74/4 74/22 75/10 75/15 76/15 78/16 79/11 79/14 80/13 82/5 84/3 88/4 88/16 88/17 89/11 91/16 92/17 93/4 93/20 102/10 104/7 105/6 109/21 109/23 110/13 110/25 111/4 113/2 113/5 113/25 116/17 116/18 119/8 119/9 119/10 121/14 127/10 127/15 133/1 133/20 133/25 135/2

Salinas **[4]** 63/18 63/21 64/3 89/12

Salt **[1]** 2/5

same **[16]** 13/12 16/11 19/13 34/6 39/21 41/4

46/3 47/2 48/8 54/14 61/7 75/17 75/18 75/19 85/16 86/8

SANTOS **[2]** 2/16 4/20

sat **[1]** 125/19

satisfied **[1]** 120/13

satisfy **[1]** 46/7

saw **[3]** 85/13 90/13 94/11

say **[71]** 18/5 18/22 20/6 25/10 27/12 28/16 29/5 30/18 30/21 30/23 30/25 31/1 31/3 32/2 33/23 36/17 39/12 39/16 39/17 39/24 40/7 40/19 40/24 41/3 41/20 41/22 41/23 41/25 42/19 48/16 50/9 64/1 65/16 73/4 81/7 82/3 82/15 85/10 85/20 85/23 88/10 90/6 90/25 90/25 92/15 93/2 93/18 93/23 96/8 98/24 99/10 105/13 107/5 108/2 110/5 112/22 114/17 115/3 115/7 117/21 119/23 121/7 122/5 122/20 125/1 125/14 129/8 129/19 130/5 134/7 135/15

saying **[29]** 28/24 29/7 30/20 36/2 37/9 37/22 38/17 38/21 38/22 48/7 48/7 48/20 49/11 51/24 56/9 72/1 82/24 83/5 83/9 83/11 94/19 98/15 107/25 114/24 117/15 128/1 134/11 134/24 135/1

says **[50]** 7/5 7/13 14/1 18/18 19/2 23/6 24/13 26/19 27/18 28/1 30/12 30/15 31/7 31/17 31/20 31/24 31/24 32/5 32/12 32/16 33/8 33/14 36/4 37/1 37/11 37/18 38/3 39/3 42/18 45/7 46/20

**S**

**says…** **[19]** 48/8 48/9
52/16 53/4 55/25 56/7
73/19 80/8 100/14 100/23
100/24 106/4 117/4 121/5
122/19 128/5 128/18 130/7
131/12

**SB [1]** 54/1

**SB 8 [1]** 54/1

**Scalia [1]** 27/4

**Scalia/Garner [1]** 27/4

**scenario [2]** 94/5 97/20

**scenarios [3]** 118/12
118/22 119/2

**scheduling [1]** 5/4

**School [1]** 29/4

**scope [2]** 66/11 124/18

**scrutinize [2]** 26/14 26/16

**scrutinized [2]** 25/20
26/12

**scrutinizing [2]** 24/12
27/20

**scrutiny [1]** 53/20

**Sea [2]** 12/16 12/20

**sealed [2]** 47/22 48/10

**seated [2]** 3/4 9/8

**second [10]** 6/4 21/4 21/5
24/1 40/2 70/17 74/10
112/18 119/12 122/7

**second-guess [2]** 40/2
70/17

**secret [4]** 10/10 19/14
35/25 45/8

**secretly [2]** 26/1 26/5

**secrets [1]** 26/8

**Section [1]** 18/15

**see [20]** 7/14 18/16 18/23
20/18 22/16 25/17 26/2
36/1 38/19 39/21 40/9
40/10 40/25 43/2 44/23
77/19 104/10 107/14
129/10 131/24

**seeing [2]** 40/12 135/1

**seeking [1]** 23/23 37/23
119/17 121/20

**seem [5]** 21/15 25/5 30/25
40/21 83/24

**seems [5]** 17/18 21/14
25/7 53/17 123/12

**seen [9]** 11/14 15/22 16/11
16/11 53/1 84/4 84/4 84/5
99/1

**segues [1]** 109/10

**Senate [1]** 51/11

**Senator [10]** 10/21 20/18
25/18 25/21 26/5 29/15
40/5 45/21 45/21 135/11

**send [3]** 110/14 112/8
129/9

**sending [1]** 25/23

**sends [1]** 46/8

**senior [13]** 24/13 24/18
39/17 40/8 52/13 52/17
52/18 52/19 53/5 53/7
53/10 53/14 60/22

**sense [3]** 21/25 120/9
127/1

**sensitive [1]** 42/15

**sensor [7]** 67/1 67/3 67/9
67/14 85/24 86/2 86/10

**sentence [3]** 16/11 24/14
54/23

**sentencing [6]** 39/10 54/21
63/21 111/20 111/23 126/5

**separate [2]** 12/5 62/10

**separately [1]** 107/22

**separateness [1]** 68/6

**September [1]** 37/18

**series [2]** 114/9 118/15

**seriously [1]** 104/6

**service [1]** 67/13

**serviced [1]** 86/12

**Services [2]** 27/21 75/15

**session [2]** 133/20 133/23

**set [47]** 5/8 6/25 7/9
19/25 20/1 42/7 48/13
49/13 49/9 49/16 49/22
50/13 56/12 57/1 57/9
57/19 58/13 58/16 58/25
59/14 59/19 61/5 62/4
62/11 63/19 64/12 64/19
64/20 68/14 68/22 68/25
69/12 78/18 78/20 92/20
95/6 97/8 97/9 98/17
98/21 99/11 103/7 103/22
105/16 105/22 106/6
134/17

**set-aside [1]** 103/22

**setting [7]** 36/21 39/7
54/11 103/8 135/12 135/20
135/23

**seven [3]** 63/9 128/17
128/17

**several [5]** 29/13 42/7
71/24 98/25 114/8

**shackles [1]** 30/3

**shall [4]** 18/18 22/16 33/19
73/19

**sham [4]** 115/11 115/15
115/17 115/19

**shape [1]** 10/24

**she [7]** 4/2 44/8 46/11
48/6 48/8 48/8 66/10

**shock [1]** 10/7

**shockingly [1]** 13/11

**short [1]** 127/6

**shortly [1]** 52/10

**shotgun [1]** 87/4

**should [55]** 9/15 12/25
17/9 19/19 20/7 20/8
21/12 24/1 24/7 24/9
24/11 25/2 26/11 27/19
27/25 28/2 34/6 34/8
34/12 39/13 39/16 39/18
42/2 42/11 51/21 51/25
51/25 58/9 58/24 65/5

**should…** **[25]**  70/11 71/3
71/12 71/13 71/14 71/19
73/4 76/24 78/16 80/17
92/17 101/10 104/6 104/14
109/24 110/5 111/4 111/5
113/12 132/25 133/10
134/15 134/17 135/6
136/13

**shouldn't** **[3]**  36/15 39/17
48/10

**show** **[7]**  19/23 68/5 73/2
83/18 106/24 131/2 134/10

**shows** **[2]**  8/7 42/2

**side** **[2]**  99/15 129/14

**sides** **[1]**  129/19

**sign** **[4]**  25/13 28/17 33/6
33/9

**signature** **[1]**  33/11

**Signed** **[1]**  138/15

**significance** **[1]**  98/21

**significant** **[9]**  33/20 77/8
87/21 91/1 134/25 135/4
135/7 135/12 135/16

**siloed** **[1]**  61/9

**similar** **[7]**  36/1 36/18 51/1
54/15 76/2 112/4 117/8

**Similarly** **[1]**  110/16

**simple** **[5]**  12/9 21/11 30/2
30/16 94/18

**simply** **[9]**  11/8 12/3 14/13
23/20 33/16 41/6 47/10
91/11 130/5

**simulator** **[8]**  61/12 67/11
67/12 95/4 118/7 118/10
118/10 130/23

**single** **[4]**  15/22 67/3
85/24 131/13

**sir** **[2]**  96/20 100/3

**sit** **[2]**  21/15 30/14

**situation** **[5]**  16/16 42/17
128/20 129/2 129/3

**six** **[3]**  52/5 87/5 132/20

**Sixth** **[2]**  6/3 62/15

**SJ** **[1]**  2/3

**Smith** **[1]**  44/18

**smuggling** **[1]**  63/23

**so** **[225]**

**solely** **[4]**  62/24 93/17
94/2 133/22

**some** **[73]**  3/21 5/13 8/18
9/7 15/10 17/11 17/11 17/18
19/22 20/21 21/7 21/17
22/22 25/19 26/7 26/8
27/18 28/21 30/5 31/5
33/24 34/10 36/10 37/8
37/15 38/6 38/17 40/12
40/25 40/25 42/12 45/4
46/16 52/25 57/7 57/15
59/10 66/9 69/1 74/19
76/18 76/19 79/9 82/7
83/15 84/11 84/20 85/1
85/14 88/1 90/4 96/5
96/11 102/4 103/21 103/23
104/22 106/7 106/12 109/8
115/22 117/24 117/25 119/5
125/8 125/8 125/17 126/25
127/22 129/9 132/8 132/12
138/8

**somebody** **[3]**  32/20 65/1
92/13

**somehow** **[1]**  115/17

**someone** **[4]**  44/18 55/5
98/5 98/19

**something** **[16]**  10/9 22/25
25/1 26/9 31/4 41/5 43/1
89/6 97/17 105/14 106/2
106/16 108/2 129/3 135/7
135/13

**son** **[1]**  4/5

**soon** **[1]**  136/20

**sorry** **[9]**  18/22 32/8
37/19 89/1 91/17 100/19
105/18 127/7 132/20

**sort** **[15]**  24/5 65/1 72/17
72/23 74/19 81/8 83/6
83/7 83/7 83/10 92/12
100/16 104/20 106/12
125/10

**sought** **[3]**  58/22 79/25
80/19

**sounds** **[2]**  49/12 120/9

**source** **[1]**  31/19

**Southern** **[1]**  19/11

**spaced** **[1]**  15/22

**speak** **[4]**  65/6 65/15
71/15 123/21

**speaking** **[1]**  14/8

**speaks** **[1]**  71/14

**specific** **[5]**  39/10 78/13
100/12 104/5 113/13

**specifically** **[18]**  11/16
39/2 39/13 57/4 69/9
73/13 74/16 86/22 89/9
97/10 100/9 104/1 106/5
111/10 114/6 117/3 130/21
133/22

**specifics** **[1]**  42/17

**specified** **[1]**  49/10

**specify** **[2]**  75/5 104/2

**speculative** **[2]**  117/4 117/5

**speed** **[2]**  63/25 95/4

**speedy** **[15]**  26/15 72/11
75/17 105/7 105/19 106/1
106/4 112/3 114/21 115/3
115/7 115/9 115/14 115/20
115/22

**spell** **[1]**  11/16

**spelled** **[1]**  23/21

**spent** **[1]**  130/16

**spirit** **[1]**  125/11

**split** **[3]**  35/10 38/21
128/19

**sponsor** **[1]**  86/14

**sponsored** **[1]**  58/4

**sponsoring** **[1]**  86/5

Case 4:21-cr-00005-O  Document 95  Filed 05/1/23  Page 181 of 189  PageID 1285

**spring [1]** 10/13

**squarely [1]** 51/20

**staff [1]** 51/11

**stage [2]** 74/6 112/9

**stages [6]** 12/4 111/22
114/19 123/15 126/7 126/12

**stake [1]** 7/23

**stand [1]** 29/10

**standard [8]** 7/21 7/25
8/4 11/15 32/25 33/17
45/20 57/16

**standards [2]** 63/6 132/14

**standing [6]** 30/2 72/2
72/3 76/21 113/1 113/6

**stands [1]** 101/14

**start [4]** 3/6 5/10 72/1
94/22

**started [1]** 101/10

**starting [1]** 64/17

**state [2]** 35/18 38/6

**stated [4]** 62/12 62/12
101/13 123/4

**statement [24]** 40/16
52/15 52/16 53/8 58/18
60/3 60/13 68/13 68/25
85/9 85/10 91/10 91/13
92/18 93/12 93/14 93/17
93/19 93/21 95/7 95/16
117/12 117/14 117/15

**statements [7]** 9/22 14/9
14/13 14/14 57/19 69/7
129/18

**STATES [25]** 1/1 1/6 1/14
1/19 1/20 4/13 9/22 56/19
56/20 57/4 59/12 59/21
60/8 60/16 62/1 63/18
64/8 65/16 70/22 70/22
73/6 78/22 78/24 101/13
138/14

**status [8]** 13/5 18/1 24/2
88/9 88/17 103/11 123/18

**statute [9]** 57/11 71/3
73/19 78/17 80/25 108/10
108/10 108/20 121/17

**statutorily [1]** 23/3

**statutory [3]** 27/5 53/25
124/21

**stay [2]** 45/11 129/9

**step [4]** 19/4 50/25 118/8
118/14

**steps [6]** 117/1 117/5 117/9
117/24 118/20 118/25

**still [2]** 50/10 85/5

**stipulated [5]** 84/5 85/9
88/23 89/4 89/17

**stipulating [1]** 40/25

**stone [1]** 15/19

**stop [2]** 44/7 82/17

**Street [6]** 1/21 2/8 2/14
2/17 2/23 138/20

**strikes [1]** 21/23

**strong [1]** 70/19

**structuring [1]** 132/1

**struggle [1]** 12/21

**Stumo [1]** 3/25

**subject [2]** 34/6 79/14

**submissions [1]** 78/5

**submit [16]** 67/5 75/20
76/2 76/8 76/20 76/24
80/18 81/4 81/20 81/25
82/11 95/3 106/16 106/19
109/18 126/17

**submitted [5]** 76/4 92/25
101/5 122/2 122/6

**subsequent [1]** 114/8

**subsequently [2]** 48/20
114/13

**substantial [7]** 67/20
73/10 90/2 105/15 106/13
106/20 107/5

**substantive [1]** 44/5

**substantively [2]** 12/24

**subtle [1]** 99/5

**successfully [2]** 73/3 73/4

**successor [3]** 98/8 98/12
98/22

**such [7]** 9/17 58/7 59/5
76/12 99/1 105/13 106/25

**suffer [1]** 57/16

**suffered [3]** 14/20 14/23
56/21

**sufficient [2]** 48/25 133/6

**suggest [3]** 69/2 77/25
125/13

**suggested [1]** 77/5

**suggesting [2]** 17/19
120/18

**suicide [1]** 37/17

**Suite [3]** 1/21 2/8 2/23

**sum [1]** 77/14

**summarize [2]** 35/16
122/16

**summarizing [1]** 95/13

**summary [3]** 37/5 37/7
119/3

**sums [1]** 87/21

**superseding [1]** 131/22

**supervise [3]** 24/8 25/3
25/10

**supervised [4]** 25/20
33/22 76/19 76/20

**supervision [1]** 74/18

**supervisors [1]** 60/22

**supervisory [11]** 5/17 24/5
25/9 71/23 74/8 74/23
115/25 116/4 116/5 135/17
136/5

**Supp [1]** 64/9

**support [6]** 40/10 68/2
69/5 109/11 119/24 119/25

**supported [4]** 76/3 112/17
114/3 121/18

**supports [4]** 109/2 109/18

Case 4:21-cr-00005-O Document 125 Filed 05/25/22 Page 182 of 189 PageID 2286

**S**

**supports…** [2]  112/7
117/17

**suppose** [3]  53/17 124/20
129/24

**supposed** [1]  36/13

**supposedly** [1]  25/24

**Supreme** [4]  38/25 53/23
55/22 78/15

**sure** [17]  6/13 13/22 15/10
23/14 25/11 33/25 43/16
43/25 46/19 53/10 75/22
89/22 93/11 95/13 99/1
100/21 120/8

**surely** [1]  57/17

**surprised** [1]  101/9

**surprising** [1]  53/12

**susceptibility** [1]  67/1

**system** [5]  5/23 12/18
13/10 34/5 67/10

**T**

**table** [2]  46/2 64/14

**Takata** [2]  73/22 104/21

**take** [39]  8/12 12/14 13/6
13/23 17/13 20/20 22/10
26/5 35/4 40/18 41/1
41/18 42/11 43/7 43/15
48/8 51/17 52/1 52/15
52/21 70/22 73/19 75/13
82/7 96/10 111/12 114/10
115/14 116/19 117/21
118/20 119/1 124/13 125/4
125/7 128/16 133/21
135/17 136/19

**take-away** [1]  43/15

**taken** [3]  29/1 29/13 46/2

**takes** [1]  56/8

**taking** [4]  3/11 23/4 29/12
136/12

**talk** [12]  9/14 25/12 32/23
43/9 47/5 62/5 70/1 72/16

**talked** [6]  34/25 73/7
106/11 106/12 112/25
130/15

**talking** [7]  15/2 45/11
83/12 97/24 97/24 114/6
125/1

**talks** [3]  93/25 113/18
126/18

**tax** [1]  99/2

**team** [1]  30/7

**technical** [4]  60/12 61/23
89/1 90/1

**Telephone** [7]  1/22 2/6
2/9 2/12 2/18 2/21 2/24

**tell** [7]  13/16 30/20 34/10
55/16 125/6 130/19 130/21

**telling** [2]  6/21 55/10

**temporally** [2]  86/25 117/8

**ten** [1]  19/10

**term** [5]  15/1 53/4 53/23
89/2 117/3

**terms** [18]  47/13 49/8
49/15 57/11 60/17 64/14
69/15 70/18 70/20 73/3
73/21 74/16 75/5 77/12
91/8 108/13 116/5 118/17

**test** [1]  61/12

**testimony** [2]  95/9 95/14

**TEXAS** [11]  1/2 1/7 1/21
1/22 2/8 2/24 29/4 47/15
56/7 138/18 138/20

**text** [5]  56/11 89/21 108/9
108/10 108/20

**textually** [2]  55/23 108/12

**than** [18]  29/13 39/19
49/5 50/3 58/11 61/5
61/19 64/10 64/19 64/20
72/14 75/9 99/11 111/15
118/5 129/3 135/13 136/4

**thank** [19]  3/5 3/12 3/18
3/18 4/10 4/14 4/25 5/2

**93/24** 95/22 123/2 128/6
129/4 129/22 129/22
130/7 130/23 132/12 137/3

**56/17** 56/18 107/7 107/10
108/16 123/7 125/1 127/3
133/25 136/22 136/25

**thankful** [1]  123/6

**that** [991]

**that's** [128]  5/11 7/20
11/20 14/24 15/1 15/19
17/10 17/23 18/14 18/14
18/16 18/17 20/16 21/1
21/2 22/10 22/11 23/25
24/14 27/11 28/11 29/18
29/20 30/6 30/10 31/11
31/24 32/3 32/8 32/10
33/16 34/4 34/4 38/3
39/6 40/9 40/16 42/22
42/24 44/20 45/10 46/1
47/24 49/7 49/24 50/10
50/10 52/8 52/9 53/3
53/20 55/6 55/21 56/6
56/8 56/10 69/9 72/7
75/9 79/6 80/14 80/14
80/15 81/17 81/17 82/1
82/1 82/9 82/24 83/7
83/20 83/21 86/21 87/2
88/5 88/5 89/12 90/12
90/14 91/15 92/19 93/20
94/1 94/7 94/20 95/13
95/22 95/23 96/15 96/19
99/3 99/5 99/20 101/20
104/7 106/10 106/17
108/16 108/19 110/4 110/11
111/3 112/1 112/7 113/23
115/9 115/21 118/7 118/12
118/24 121/5 121/11 122/4
122/15 123/22 124/11
125/12 126/8 127/24 129/3
129/10 129/22 129/25
132/19 135/13 135/15
136/2 136/4

**their** [35]  6/9 6/12 8/23
17/18 18/25 19/7 21/21
22/9 22/21 23/7 23/17

**T**

**their...** **[24]** 23/23 25/24
25/25 27/13 29/11 30/19
30/25 32/12 35/3 47/1
48/19 73/2 84/19 93/15
110/17 110/19 111/1 111/8
119/11 119/14 120/7 124/1
135/1 135/10

**them** **[33]** 5/7 6/21 15/3
19/1 20/14 23/1 23/21
30/5 33/1 42/15 42/15
52/22 53/14 54/12 56/8
56/13 56/14 81/5 85/1
98/8 101/15 102/18 105/1
105/1 115/4 116/2 117/20
125/24 127/14 128/10
130/17 134/6 134/10

**then** **[89]** 4/15 6/9 7/2
8/14 8/19 12/3 16/6 16/12
17/15 19/6 19/15 19/24
21/3 21/10 21/19 24/8
27/2 27/9 29/23 31/1
31/13 32/6 32/15 32/21
33/21 35/4 37/4 37/16
37/22 38/2 38/12 38/23
39/13 41/14 41/16 41/18
41/22 42/19 44/5 44/18
45/2 46/5 48/1 48/1 48/2
48/2 48/6 48/15 48/18
48/23 52/12 58/7 63/1
65/1 76/10 80/25 82/8
83/17 84/7 84/11 84/18
86/11 91/23 92/9 92/18
94/13 94/19 98/1 100/7
107/21 109/16 111/19
112/17 113/10 114/12 117/9
118/20 118/21 123/15
123/19 124/8 126/5 129/6
129/9 130/24 131/24
133/13 135/5 136/6

**there** **[142]**

**there's** **[65]** 5/14 6/7 6/16

6/20 10/1 10/6 12/9 17/8
19/5 24/12 25/16 26/4
26/22 27/1 27/18 33/13
36/16 36/17 37/1 37/11
38/22 40/8 44/3 51/8
51/15 52/18 70/18 72/24
77/20 78/15 79/4 80/7
81/8 81/9 81/10 85/23
90/8 97/11 100/12 104/4
107/4 108/11 108/18 109/11
109/15 110/3 110/11 113/14
113/25 114/18 114/23
114/25 115/16 115/19
116/24 117/1 117/9 119/24
119/25 120/22 121/19
132/7 132/24 133/6
135/25

**therefore** **[3]** 83/1 126/20
130/8

**these** **[50]** 5/4 13/14 15/12
18/3 18/25 25/10 25/11
26/16 35/6 42/13 46/2
47/4 47/5 50/6 55/10
55/23 58/5 59/7 59/9
61/9 61/25 62/10 65/17
67/17 67/18 67/24 67/24
68/1 68/2 84/19 85/2
88/24 94/13 95/23 96/6
96/24 97/13 100/7 103/2
103/5 103/6 103/15 108/4
109/6 109/13 110/15 110/16
114/11 118/12 126/25

**they** **[185]**

**they're** **[18]** 6/13 16/11
18/10 23/17 28/10 28/24
29/12 30/20 48/9 48/16
52/10 81/11 85/5 102/16
109/14 122/18 125/1 125/2

**they've** **[10]** 6/11 9/23
25/24 25/25 29/13 34/18
52/21 53/1 131/3 135/20

**thing** **[15]** 13/12 19/13

40/23 41/4 46/1 46/18
47/3 48/8 50/15 55/12
55/12 56/15 86/8 131/5
133/15

**things** **[12]** 25/10 25/21
40/25 77/21 86/15 90/9
92/2 98/24 103/24 108/11
124/20 129/21

**think** **[155]**

**thinking** **[2]** 10/6 56/2

**thinks** **[1]** 25/19

**third** **[8]** 6/6 24/4 43/12
59/11 67/14 77/9 87/10
101/12

**third-party** **[1]** 67/14

**this** **[213]**

**thorough** **[2]** 110/23 122/13

**those** **[85]** 7/25 8/10 8/20
9/1 9/21 10/3 13/20 14/18
15/5 19/5 20/1 20/4 20/13
20/23 23/25 26/10 32/24
35/15 40/7 41/2 42/12
42/17 48/18 50/13 56/23
60/13 63/1 65/13 66/5
66/9 66/10 67/5 69/5
73/10 73/17 74/1 74/2
76/17 77/3 81/1 83/3 86/5
86/10 86/12 86/13 86/15
86/15 87/14 89/9 90/3
91/3 92/1 93/10 97/10
103/25 104/1 106/16 108/6
111/22 112/4 113/2 114/4
114/10 114/17 115/2 115/6
117/24 118/16 118/16
118/20 120/19 122/3 125/5
125/18 126/6 126/11 129/5
130/1 130/1 130/12 130/22
130/24 133/10 134/6
138/13

**though** **[9]** 59/3 82/18
84/25 88/23 98/5 99/10
111/3 114/6 130/16

**T**

thought [3] 25/22 37/15
130/17

thread [1] 112/11

three [14] 4/8 5/21 5/25
15/5 15/25 16/1 25/23
43/9 43/10 46/6 58/15
59/1 78/4 101/12

threshold [1] 64/10

threw [1] 53/18

Throckmorton [1] 2/23

through [12] 5/7 9/16
23/23 84/25 90/23 94/14
102/22 102/22 118/25
119/14 121/3 126/24

Throws [1] 37/20

Thursday [1] 131/21

thus [1] 73/8

time [42] 5/6 12/14 12/15
12/18 12/20 12/22 13/3
13/6 13/7 19/7 20/3 21/8
31/2 33/7 33/9 35/5 45/16
47/6 54/20 54/22 55/5
55/6 60/24 61/11 67/1
72/11 82/6 83/15 83/25
87/16 94/24 98/19 99/19
114/21 115/12 122/1 123/7
127/24 130/17 133/17
134/2 134/4

time-consuming [1] 21/8

timely [3] 6/4 10/18 10/22

times [3] 30/19 42/7
120/7

timing [1] 35/13

today [27] 4/1 4/2 5/6 6/1
18/9 29/10 37/9 40/12
46/2 51/4 51/23 76/16
82/18 94/11 101/2 108/2
110/17 122/2 125/19 129/4
130/20 131/6 131/24 133/8
134/4 134/7 134/25

today's [2] 10/14 78/2

together [5] 8/12 8/25
14/7 11 50/17 131/15

told [9] 8/24 9/19 12/25
25/16 35/2 51/22 120/12
131/24 133/22

Tomra [1] 4/6

too [17] 21/2 28/10 28/16
42/25 48/10 63/8 70/19
74/16 75/18 75/20 88/5
88/5 99/6 117/4 117/4
117/5 117/9

took [6] 58/15 66/3 67/22
81/22 90/3 101/13

top [3] 51/2 89/6 99/7

tort [2] 64/11 132/13

totally [1] 28/7

touch [1] 109/12

touched [1] 127/22

touching [2] 44/4 127/10

toward [1] 12/19

TRACY [2] 2/13 3/16

trade [1] 26/7

tragic [1] 108/4

training [24] 13/1 13/17
14/17 66/8 66/20 67/11
67/12 85/16 90/22 117/18
118/1 118/1 118/2 118/3
118/5 118/6 118/7 118/9
118/10 118/10 118/11 118/21
118/25 130/23

transcribed [1] 138/10

transcript [3] 1/13 138/5
138/12

transmitted [1] 26/3

transparent [1] 33/10

transparently [1] 26/10

traveled [5] 3/22 4/1 4/2
4/5 4/6

traveling [1] 136/18

tread [1] 21/1

treading [1] 29/22

treated [2] 6/6 23/9

treatise [5] 27/4 31/16
31/16 31/17 31/17

trial [31] 7/22 26/15 28/9
32/3 32/6 32/6 53/6 57/6
58/14 62/21 65/20 68/11
68/12 72/11 75/17 75/22
94/10 95/9 105/7 105/19
106/1 106/4 112/3 114/21
115/3 115/7 115/10 115/14
115/15 115/20 115/22

trials [1] 32/2

tried [6] 18/17 21/7 53/6
53/7 122/12 122/15

triggering [1] 32/19

truck [1] 63/24

true [4] 31/2 32/3 81/3
138/5

truly [1] 47/7

trumpeted [1] 40/14

trust [1] 110/18

truth [2] 15/19 16/8

truths [1] 14/9

try [14] 5/7 5/19 7/8
42/15 79/16 84/9 84/10
99/6 99/18 99/23 107/17
113/20 113/21 121/2

trying [10] 23/3 28/24
38/20 47/14 49/4 50/19
50/22 50/22 54/25 86/14

turn [5] 5/1 23/5 23/24
78/7 133/19

Turning [1] 108/8

turns [1] 108/22

twice [1] 53/23

Twitter [1] 10/8

two [35] 8/12 8/12 8/19
16/1 16/11 17/14 17/17
24/6 39/22 43/11 44/3
54/2 60/2 60/3 60/6
60/10 61/9 61/22 62/10
63/1 66/4 66/13 68/17
78/15 85/5 88/24 89/20

# T

**two... [8]** 89/23 94/24 97/23 98/1 117/7 118/4 118/22 129/18

**two-year [1]** 17/14

**type [6]** 40/23 79/4 79/6 92/6 99/25 121/19

**types [4]** 29/8 75/13 77/20 77/22

# U

**U.S [3]** 14/2 33/4 55/22

**U.S. [3]** 66/20 85/16 85/17

**U.S.-based [3]** 66/20 85/16 85/17

**U.S.C [2]** 57/3 59/20

**ultimate [3]** 63/7 67/20 132/15

**ultimately [40]** 8/14 28/5 48/5 60/16 64/23 64/25 65/12 65/13 65/25 67/21 70/10 73/2 74/17 75/3 75/15 78/25 79/3 79/8 79/21 80/2 80/7 80/18 87/22 92/13 93/15 94/15 106/3 110/7 111/1 111/9 111/18 113/7 113/8 118/11 121/9 121/21 126/14 127/21 128/10 132/5

**unable [1]** 131/4

**uncharged [2]** 108/24 109/8

**unclear [1]** 132/2

**uncover [2]** 96/11 96/13

**under [67]** 6/8 8/10 15/8 17/21 18/4 18/7 18/10 18/24 18/25 20/25 22/3 22/4 24/19 32/16 33/18 35/4 38/8 43/12 43/13 45/14 45/20 46/5 51/8 51/9 53/14 56/10 56/25

**57/11** 57/15 58/3 58/20 58/23 59/16 71/16 72/4 72/8 72/11 73/7 73/9 73/17 74/2 74/7 75/17 77/2 77/12 80/24 87/6 95/24 95/24 96/4 102/16 105/3 106/25 112/3 113/3 113/24 114/21 115/9 115/14 115/24 121/15 121/24 122/3 127/13 128/11 131/12 136/19

**undercuts [2]** 114/6 114/7

**underlying [2]** 43/20 68/2

**undermined [1]** 65/5

**undermines [1]** 39/9

**underpin [2]** 58/19 90/14

**underpinned [1]** 74/21

**understand [16]** 29/17 34/15 39/12 43/18 47/14 51/5 53/13 70/18 70/19 77/18 82/8 85/6 85/19 96/21 103/21 135/24

**understanding [4]** 17/11 33/10 81/8 81/10

**Understood [1]** 102/9

**undertake [1]** 77/23

**undertaken [1]** 77/6

**undisputed [4]** 14/20 22/10 27/15 130/5

**undo [5]** 111/13 115/4 119/6 120/8 120/10

**undoing [2]** 112/21 112/25

**undoubtedly [1]** 93/10

**unfettered [2]** 20/2 36/23

**unfolded [1]** 44/24

**uniformly [1]** 121/18

**unique [2]** 32/13 43/13

**UNITED [25]** 1/1 1/6 1/14 1/19 1/20 4/13 9/22 56/19 56/20 57/4 59/11 59/21 60/8 60/16 62/1 63/18 64/8 65/16 70/21 70/22

**73/6** 78/22 78/24 101/13 136/4 136/19

**UNIVERSITY [2]** 2/4 2/5

**unjustifiable [2]** 31/8 31/12

**unknowingly [1]** 89/23

**unknown [1]** 118/12

**unlawful [1]** 116/20

**unless [3]** 27/17 42/1 129/14

**unlike [4]** 77/20 90/4 114/18 114/18

**unlocked [1]** 129/16

**unnecessary [1]** 77/17

**unpack [1]** 39/21

**unprecedented [2]** 136/2 136/4

**unreasonable [1]** 25/5

**unseal [1]** 48/1

**unsurprising [1]** 17/4

**until [1]** 39/25

**untrue [1]** 33/16

**unusual [4]** 27/22 40/9 52/25 135/22

**up [37]** 5/13 13/2 13/17 20/10 23/4 25/24 25/25 28/1 29/10 34/15 36/25 37/22 38/8 42/5 42/22 45/9 47/12 48/9 50/22 50/23 56/8 56/23 57/21 65/19 79/21 91/18 96/23 113/10 114/17 125/17 127/17 129/13 129/16 133/15 134/11 135/11 136/13

**upheld [1]** 117/5

**upon [4]** 52/23 57/10 61/12 89/4

**urging [1]** 20/20

**us [18]** 8/24 15/17 16/19 18/2 19/19 21/18 40/6 55/20 101/17 102/14

**U**

us… **[8]** 102/17 128/25 130/19 132/2 133/24 134/4 134/16 134/18

use **[3]** 7/21 7/22 27/6

used **[5]** 7/7 14/24 117/7 122/14 122/15

uses **[1]** 117/3

using **[3]** 53/3 58/2 63/6

usurps **[1]** 80/10

UTAH **[4]** 2/4 2/4 2/5 29/5

utilized **[1]** 113/15

**V**

vague **[1]** 11/13

valuable **[1]** 5/6

various **[5]** 7/20 17/1 45/8 71/17 78/13

Vecere **[1]** 4/6

vehicle **[2]** 65/13 87/10

vendor **[1]** 67/15

verdict **[2]** 62/25 88/7

very **[53]** 3/12 3/15 3/18 4/23 4/25 5/2 5/3 5/6 11/20 19/9 21/21 24/23 25/20 26/15 27/22 31/16 34/21 38/3 40/9 42/7 43/5 43/24 49/24 50/18 52/9 52/24 54/14 55/14 55/23 76/2 78/13 78/16 79/11 84/2 100/16 101/8 106/7 107/7 110/23 112/12 114/5 116/25 122/12 127/2 132/2 132/2 132/6 133/15 133/17 133/25 134/24 135/16 136/13

via **[1]** 138/9

vicariously **[1]** 66/15

victim **[21]** 6/25 7/5 7/15 9/19 13/5 14/23 17/5 17/8 17/25 18/19 22/3 24/2

41/21 62/7 71/6 92/16 93/12 95/14 102/15 108/22 130/8

victim's **[1]** 54/21

victims **[129]** 5/25 6/8 6/15 6/21 7/4 7/9 8/9 8/9 8/14 8/14 8/16 8/16 9/11 9/18 10/23 11/7 11/11 11/24 15/7 15/8 17/21 17/21 18/4 19/15 19/17 19/23 20/4 20/25 20/25 21/20 22/17 22/21 23/2 24/2 25/8 25/16 32/23 34/9 35/3 35/12 35/25 36/3 36/20 37/8 37/10 38/18 39/25 40/1 41/17 45/23 46/22 46/23 47/22 48/7 48/7 48/9 48/18 50/6 50/14 55/18 56/7 56/22 56/25 57/10 57/14 58/20 59/20 70/5 70/6 70/13 70/15 71/1 71/11 71/18 71/18 72/2 72/4 73/17 73/25 74/2 74/5 77/9 80/3 80/24 81/11 81/15 82/4 82/6 82/20 82/25 87/14 89/4 93/13 100/8 100/11 100/25 101/1 101/4 101/6 101/18 102/16 104/18 106/25 108/1 108/14 108/24 109/7 110/15 110/24 110/25 111/21 113/20 120/15 121/12 123/14 123/19 123/21 124/7 125/5 126/6 126/12 127/13 128/6 128/12 128/21 130/13 133/12 133/12 136/8

victims' **[43]** 5/3 5/12 5/20 5/22 6/8 6/17 7/2 7/10 9/7 9/17 10/14 10/15 10/17 11/24 14/22 15/7

15/16 19/6 20/3 20/5 20/11 20/12 20/24 21/20 22/8 22/11 22/12 23/2 23/8 26/2 31/14 34/11 34/14 41/20 45/19 54/8 54/9 59/2 127/13 128/12 129/5 133/11 133/17

videoconferencing **[1]** 138/10

view **[21]** 18/8 24/1 48/24 60/2 65/10 72/1 74/15 75/23 77/14 77/17 79/1 80/3 82/23 83/2 84/7 98/9 103/1 103/3 103/13 103/25 104/13

views **[4]** 48/19 70/19 111/9 126/24

vindicate **[3]** 46/22 47/3 48/16

vindicated **[1]** 47/5

violate **[1]** 120/6

violated **[7]** 6/9 10/15 11/11 37/6 80/25 81/5 83/3

violates **[3]** 10/12 30/10 30/11

violating **[4]** 21/24 21/25 22/1 55/10

violation **[11]** 7/1 37/12 50/23 57/3 59/18 83/12 84/1 103/1 105/16 106/19 135/8

violations **[3]** 33/23 103/14 104/4

violence **[2]** 99/2 99/3

violent **[1]** 94/6

Virginia **[1]** 2/18

VOLUME **[1]** 1/13

voluntary **[1]** 102/22

voted **[1]** 45/22

**W**

wait **[8]** 19/2 27/18 28/1 33/23 36/2 36/7 37/1

**W**

wait… **[1]** 42/19

waive **[5]** 31/18 31/20 32/12 32/18 100/9

waiver **[5]** 33/6 68/20 68/23 123/1 123/2

walk **[1]** 118/24

walked **[1]** 109/20

walking **[1]** 32/25

want **[42]** 4/7 5/10 9/13 9/13 12/13 15/11 18/6 18/6 18/9 20/5 21/1 21/19 27/17 28/4 37/12 40/12 42/18 44/11 53/2 55/13 69/23 73/12 74/17 81/7 82/7 82/7 83/21 83/21 86/17 90/24 92/12 95/15 107/23 107/25 109/21 119/9 119/15 126/16 130/14 133/20 134/6 134/10

wanted **[5]** 40/18 109/12 119/3 130/2 131/1

wants **[1]** 124/6

warranted **[3]** 58/24 59/16 72/7

warrants **[2]** 135/16 136/5

was **[218]**

Washington **[1]** 2/21

wasn't **[8]** 86/11 86/12 88/11 88/12 105/18 131/25 132/1 133/2

watching **[1]** 30/3

way **[34]** 12/9 12/13 15/14 17/8 19/1 20/7 20/8 25/14 32/8 34/4 34/5 34/9 35/17 39/21 41/15 46/22 50/12 54/11 54/13 55/24 68/18 82/24 83/3 84/9 84/11 84/17 88/10 88/19 94/8 95/4 104/23 116/9 117/25 125/15

ways **[4]** 21/7 70/3 77/1

94/10

we **[305]**

we'd **[2]** 29/20 84/6

we're **[44]** 7/24 15/2 15/14 16/6 18/22 20/10 23/22 23/23 28/3 28/3 35/16 38/17 38/21 38/22 41/4 41/6 47/2 47/4 50/25 51/1 51/6 54/23 54/24 54/24 55/5 85/22 85/22 86/5 97/24 97/24 100/19 103/18 104/9 104/15 104/17 110/18 123/2 128/5 128/18 128/20 128/22 128/22 130/21 131/24

we've **[38]** 7/6 7/11 8/1 8/8 8/13 8/24 10/20 11/1 12/6 15/25 16/4 16/24 21/7 22/22 23/21 24/4 26/16 28/14 28/20 29/2 31/7 31/10 34/3 41/7 52/25 56/9 56/9 74/4 76/15 84/3 94/11 101/15 104/19 128/14 129/6 130/20 131/11 132/19

wealthy **[3]** 19/14 35/24 45/1

wearing **[1]** 138/9

website **[2]** 102/22 102/22

week **[3]** 20/18 25/18 54/1

weeks **[1]** 54/2

weigh **[1]** 39/12

weighed **[1]** 59/23

weight **[1]** 39/5

welcome **[1]** 107/18

welcomed **[1]** 133/24

well **[66]** 8/17 16/4 19/21 20/22 21/20 22/5 22/24 23/13 23/14 24/12 27/18 28/22 29/21 31/1 31/16 32/20 33/8 34/20 36/4 36/7 37/19 39/24 41/3

41/18 42/11 42/19 43/22 44/21 45/7 46/15 51/19 53/16 55/24 61/3 66/4 73/25 77/20 80/8 82/5 82/15 82/17 83/5 87/14 88/9 91/6 91/13 94/19 96/10 98/24 103/23 105/5 106/6 106/11 107/15 116/11 128/1 129/8 129/25 130/20 131/20 131/24 132/13 133/1 134/11 135/5 135/6

well-regarded **[1]** 31/16

went **[6]** 19/16 64/1 84/25 110/22 111/8 129/21

were **[139]**

weren't **[2]** 35/12 48/7

what **[182]**

what's **[11]** 26/3 27/11 33/10 34/16 40/22 79/25 103/7 108/16 113/21 123/23 129/10

whatever **[9]** 39/18 52/20 66/10 75/3 100/1 105/21 118/15 132/4 134/2

whatsoever **[4]** 6/17 10/2 13/2 13/17

when **[57]** 6/22 7/22 8/14 10/8 11/13 19/7 20/6 22/20 25/15 28/23 29/10 31/17 32/4 32/20 39/16 47/6 47/7 51/11 52/5 55/11 55/19 58/8 59/15 63/25 71/13 71/19 78/17 80/1 82/12 82/13 83/14 83/15 83/19 83/25 84/11 85/13 85/20 86/23 91/3 91/4 95/22 101/10 103/1 113/10 120/3 120/20 120/24 123/10 123/19 126/12 127/21 128/2 129/12 130/1 132/14 132/17 135/5

**W**

**whenever [1]** 38/22

**where [42]** 11/16 14/15 16/7 17/1 33/20 35/1 35/9 42/17 45/18 45/19 51/20 53/25 55/16 62/19 63/15 63/24 67/9 74/14 74/15 74/25 76/12 77/15 77/21 78/15 80/7 87/3 87/8 92/7 94/6 95/17 105/22 105/24 110/11 112/21 114/11 122/5 127/24 128/18 128/21 129/2 130/12 134/21

**Whereas [1]** 49/21

**wherever [1]** 52/16

**whether [37]** 6/14 17/21 18/9 27/9 29/20 33/5 33/6 56/25 58/7 63/1 63/9 69/14 70/13 70/21 82/24 84/18 93/2 93/4 99/3 102/15 109/6 110/19 111/19 113/1 114/20 115/24 117/2 122/2 122/3 122/23 123/3 126/4 131/9 131/11 132/15 132/24 133/6

**which [63]** 9/4 11/6 11/16 11/17 12/6 12/16 15/13 21/4 21/8 24/1 24/4 24/23 24/24 27/5 28/1 28/2 28/6 28/9 28/19 30/12 31/7 32/18 35/17 39/2 45/12 46/5 47/15 52/4 53/10 56/3 56/5 56/15 59/11 67/4 68/9 73/13 84/16 86/5 86/18 89/22 97/11 98/25 99/6 100/10 106/15 107/15 108/2 109/5 110/20 113/11 113/20 114/21 117/17 119/25 125/23 125/25 128/12 128/23 129/19 130/21

132/6 132/10 133/8

**while [4]** 23/17 43/6 110/20 123/21

**who [26]** 3/6 3/11 3/22 4/5 4/6 7/3 7/3 8/6 14/18 15/7 17/8 20/18 20/25 52/25 60/3 60/10 60/11 63/24 66/8 73/16 92/13 104/18 104/22 110/14 113/20 133/12

**who's [5]** 4/2 29/4 60/7 92/13 95/8

**whole [3]** 41/9 73/21 108/12

**why [35]** 8/9 18/2 20/6 24/15 24/16 26/1 26/4 26/9 29/12 39/11 39/18 43/14 46/16 48/24 49/15 52/5 52/9 53/10 53/12 55/21 82/1 89/3 89/24 93/7 94/1 113/23 126/8 126/8 127/12 128/12 131/20 131/21 133/4 135/15 135/22

**WICK [1]** 2/23

**wife [1]** 4/8

**Wild [21]** 35/7 35/22 65/6 65/10 65/11 78/19 79/11 80/13 81/18 81/23 109/17 112/18 112/20 113/17 113/25 114/4 121/5 128/14 128/15 128/16 128/18

**will [44]** 3/11 5/1 5/6 5/25 10/10 11/16 11/21 16/7 18/1 19/24 20/1 20/3 21/5 30/22 33/18 34/11 34/15 39/13 46/21 48/16 55/18 56/4 56/12 56/23 57/7 57/10 72/16 78/7 95/14 107/17 114/10 119/4 121/2 124/15 125/2 125/3 125/7 127/16 131/2 132/8 132/8

134/10 136/10 136/19

**willfully [1]** 44/2

**WILLIAMS [3]** 138/4 138/17 138/17

**willing [2]** 15/16 94/7

**win [1]** 38/11

**window [2]** 47/6 50/10

**wire [1]** 61/4

**withhold [1]** 23/11

**withholding [2]** 22/20 23/18

**within [9]** 31/2 31/3 45/14 61/10 99/18 99/19 124/18 132/16 132/19

**without [16]** 6/18 8/3 17/10 18/20 26/2 31/11 47/21 53/13 53/18 53/19 67/11 111/10 115/12 116/1 130/10 133/23

**witness [1]** 9/19

**won't [3]** 51/19 57/6 130/21

**wonder [1]** 52/5

**wondering [3]** 49/8 88/22 124/22

**word [1]** 14/24

**wording [2]** 11/20 11/20

**words [4]** 9/21 91/11 98/19 122/17

**work [3]** 34/4 36/9 68/18

**worked [1]** 10/21

**working [1]** 46/5

**works [1]** 34/5

**world [12]** 9/23 10/8 17/10 17/15 84/15 116/19 116/21 116/23 117/2 129/4 131/13 135/9

**WORTH [9]** 1/3 1/7 1/22 2/24 42/14 52/6 136/18 138/19 138/20

**would [210]**

**wouldn't [7]** 12/10 40/2

## W

**wouldn't...** **[5]** 52/5 88/18
88/18 128/10 129/7
**woven [1]** 124/22
**Wright [2]** 31/15 31/20
**writ [1]** 43/14
**writing [1]** 46/10
**written [4]** 26/20 26/24
27/9 27/10
**wrong [2]** 17/23 98/9
**wrote [6]** 32/9 44/8 55/12
55/12 84/15 135/15

## Y

**ya [1]** 18/23
**yeah [12]** 31/22 34/23
35/23 44/13 44/22 47/19
51/16 85/7 92/24 96/17
97/6 101/23
**year [10]** 17/14 31/11
35/17 35/19 68/21 83/15
115/18 120/13 120/21 136/4
**years [8]** 19/11 37/20
42/18 42/18 42/24 68/9
78/4 113/11
**yes [28]** 3/24 26/15 29/24
35/11 35/14 36/17 43/19
43/21 43/23 44/19 45/6
47/16 47/23 48/4 48/14
52/24 85/12 91/15 91/22
96/20 100/3 100/6 101/11
102/2 102/2 105/20
107/20 123/9
**yet [1]** 18/2
**York [2]** 2/11 2/11
**you [410]**
**you'd [2]** 81/12 82/11
**you're [10]** 9/12 35/19
43/6 49/25 79/21 83/12
98/15 99/6 103/19 119/5
**you've [12]** 8/17 15/22
16/10 21/17 34/1 37/19

84/4 84/4 98/8 100/15
100/16 129/18
**your [147]**

## Z

**zeroing [2]** 84/12 84/14
**ZOIE [3]** 138/4 138/17
138/17
**zone [2]** 132/16 132/19
**zwilliams.rmr [1]** 138/21