UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|   *Plaintiff* | ) ) ) |
| v. | )   Case No. 4:21-cr-005-O-1 |
| THE BOEING COMPANY, | ) ) ) |
|   *Defendant.* | ) ) |

**REPLY IN SUPPORT OF MOTION BY NAOISE CONNOLLY RYAN, AS REPRESENTATIVE OF MICHAEL RYAN; EMILY CHELANGAT BABU AND JOSHUA MWAZO BABU, AS REPRESENTATIVES OF JARED BABU MWAZO; CATHERINE BERTHET, AS REPRESENTATIVE OF CAMILLE GEOFFROY; HUGUETTE DEBETS, AS REPRESENTATIVE OF JACKSON MUSONI; LUCA DIECI, AS REPRESENTATIVE OF PAOLO DIECI; BAYIHE DEMISSIE, AS REPRESENTATIVE OF ELSABET MINWUYELET WUBETE; SRI HARTATI, AS REPRESENTATIVE OF ERYANTO; ZIPPORAH KURIA, AS REPRESENTATIVE OF JOSEPH KURIA WAITHAKA; JAVIER DE LUIS, AS REPRESENTATIVE OF GRAZIELLA DE LUIS Y PONCE; CHRIS MOORE, AS REPRESENTATIVE OF DANIELLE MOORE; PAUL NJOROGE, AS REPRESENTATIVE OF CAROLYNE NDUTA KARANJA, RYAN NJUGUNA NJOROGE, KELLI W. PAULS, AND RUBI W. PAULS; YUKE MEISKE PELEALU, AS REPRESENTATIVE OF RUDOLF PETRUS SAYERS; JOHN KARANJA QUINDOS, AS REPRESENTATIVE OF ANNE WANGUI KARANJA; NADIA MILLERON AND MICHAEL STUMO, AS REPRESENTATIVES OF SAMYA STUMO; GUY DAUD ISKANDER ZEN S., AS REPRESENTATIVE OF FIONA ZEN; AND OTHER SIMILARLY SITUATED REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 FOR LEAVE TO FILE NEW SUPPLEMENTAL FACTUAL INFORMATION IN SUPPORT OF PENDING MOTIONS.**

| | |
|---|---|
| Warren T. Burns | Paul G. Cassell |
| Burns Charest, LLP | (Counsel of Record) |
| 900 Jackson Street | Utah Appellate Project |
| Suite 500 | S.J. Quinney College of Law |
| Dallas, TX 75202 | University of Utah |
| 469-904-4550 | 383 S. University St. |
| wburns@burnscharest.com | Salt Lake City, UT 84112 |
| | 801-585-5202 |
| | cassellp@law.utah.edu |
| | (no institutional endorsement implied) |
| | (*pro hac vice*) |

*Attorneys for Victims' Families*

**REPLY IN SUPPORT OF MOTION BY NAOISE CONNOLLY RYAN ET AL., REPRESENTATIVES OF THE VICTIMS OF THE CRASHES OF LION AIR FLIGHT JT610 AND ETHIOPIAN AIRLINES FLIGHT ET302 FOR LEAVE TO FILE NEW SUPPLEMENTAL FACTUAL INFORMATION IN SUPPORT OF PENDING MOTIONS**

Naoise Connolly Ryan et al. (the "victims' families" or "families"),[1] through undersigned counsel, file this reply to Boeing's opposition (Dkt. 108) to their motion for leave to file supplemental factual information in support of their pending motions (Dkt. 107). The victims' families have moved to add to the record two SEC orders finding that Boeing mislead the public and Boeing's airline customers about the safety of the 737 MAX after the Lion Air crash and before the Ethiopian Airlines crash. Boeing claims that the SEC orders are irrelevant. Boeing is wrong. The fact that it just paid $200 million to the SEC for broadcasting materially misleading statements about MCAS-related safety issues shortly before the Ethiopian Airlines crash is highly relevant to pending issues before the Court.

*Factual Background*

As the Court is aware, on September 22, 2022, the SEC filed two orders in which it imposed cease-and-desist obligations on Boeing and its former CEO for "making materially misleading statements to investors in November 2018 and April 2019." Dkt. 107, Ex. 1 at 2. Specifically, the SEC's cease-and-desist order against Boeing explains that, after the crash of Lion Air Flight 610, Boeing sought to "reassure the public and the market about the safety of the 737 MAX." *Id.* According to the SEC order, several weeks after the Lion Air crash—i.e., around November 24, 2018, and following—Boeing's communications team began revising a draft press release so that

---

[1] In addition to Ms. Ryan, the other victims' family members filing this motion are Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, Guy Daud Iskandar Zen S., and others similarly situated. They are supported by more than one hundred other families.

1

it would exclude any mention of the development of an "MCAS software update" and would state "that Boeing's *customers and passengers* 'have [Boeing's] assurance that the 737 MAX is as safe as any airplane that has ever flown the skies.'" *Id.* at 9 (emphasis added).

A few days later—on November 27, 2018, in connection with Indonesian government's release of a preliminary report on the Lion Air crash —Boeing issued a worldwide press release. In its press release, Boeing falsely assured the public and it airline customers that the 737 MAX was safe. *Id.* Boeing's assurance to the public was false because "by that point, Boeing had determined that MCAS posed an ongoing safety issue that required remediation; indeed, Boeing had already begun work on a redesign of MCAS software to address the safety issue. However, the Press Release made no mention of the MCAS safety issue or planned software redesign." *Id.*

As ultimately released to the world, Boeing's press release stated: "As *our customers and their passengers* continue to fly the 737 MAX to hundreds of destinations *around the world* every day, they have our assurance that the 737 MAX is as safe as any airplane that has ever flown the skies." *Id.* at 9 (emphases added). The SEC order explains that "[t]he November 2018 Press Release—in particular, the statement that 'the 737 MAX is as safe as any airplane that has ever flown the skies'—was misleading under the circumstances absent any discussion of an 'airplane safety issue' that required remediation by fixing the MCAS software." *Id.*

The SEC order also explains that, in the wake of the Lion Air Flight 610 crash, the Justice Department began an investigation into the 737 MAX certification process. In January 2019, while collecting documents in connection with DOJ's investigation, Boeing's Legal Department uncovered "a series of communications that raised a series of questions about the disclosures made to the FAA-AEG concerning the differences training and manuals certification …." *Id.* at 11. Among these was the "shocker alert" chat of November 15, 2016. *Id.* In around January 2019,

Boeing's in-house counsel informed then-Boeing CEO Dennis A. Muilenburg and other senior executives about the existence of the November 15, 2016, chat. *Id.* Muilenburg understood the chat to be "concerning." *Id.* In particular, the November 15, 2016, chat "raised significant questions concerning the adequacy of Boeing's disclosures about MCAS in connection with the FAA-AEG's review and approval of pilot training requirements and flight manuals for the 737 MAX, including the omission of MCAS from the differences training and the flight manuals." *Id.*

The SEC consent order required Boeing to pay $200 million as a "civil money penalty" for making materially false statements and to "cease and desist" from making such materially false statements in the future. *Id.* at 13.

### *Boeing Lacks Standing to Challenge the Admissibility of the Orders*

As the Court will recall, the victims' families have challenged Boeing's "standing" to participate in the issues surrounding (among other things) the Crime Victims' Rights Act (CVRA) "crime victim" determination. The victims' families have explained that whether the Government complied with its CVRA obligations is, in the first instance, a matter between the Government and the families to be adjudicated by this Court. *See* Hearing Trans. (Aug. 5, 2022) at 5-12. This Court has yet to rule on the issue, although as a matter of preserving the record, it allowed Boeing to ask questions during the evidentiary hearing. *Id.* at 12; *see also* Hearing Trans. (Aug. 26, 2022) (victims' families reassert their continuing standing objection to Boeing's participation, which the Court acknowledged); *id.* at 259 (families again raise standing issue). For all the reasons previously explained by the victims' families, Boeing lacks standing to challenge the admissibility of the SEC orders against the Government at this point in the proceeding concerning the Government's compliance with the CVRA. Accordingly, this Court should not even consider Boeing's arguments.

### *The SEC Orders Are Admissible Against the Government*

In its response to the victims' families' motion to admit the SEC orders, Boeing argues that the orders are not admissible against *it* because *it* (Boeing) "neither admitted nor denied the Orders and their associated factual allegations …." Boeing Resp. (Dkt. 108) at 1. This argument is incorrect, as the victims' families explain below. But, in any event, Boeing's argument is insufficient to exclude the SEC orders because they are undoubtedly admissible *against the Government*. The Government (acting through one of its Executive Branch agencies—to wit, the SEC) drafted these very orders. Thus, the orders are highly relevant to issues pending before the Court regarding the Government.

For example, as the Court is aware, the victims' families have challenged the accuracy and legitimacy of a highly unusual provision in the Boeing Deferred Prosecution Agreement (DPA). The DPA claims that Boeing's "misconduct" was "neither pervasive across the organization … *nor facilitated by senior management*." DPA, ¶ 4(h), Dkt.4 at 6 (emphasis added). But the fact that Boeing's "senior management" was quickly aware following the Lion Air crash that Boeing had deceived the FAA-AEG about MCAS problems—and thereafter deceived the public, including Boeing's airline customers (such as Ethiopian Airlines)—is plainly relevant evidence on whether senior management facilitated the conspiracy.

In addition, currently pending before the Court is the extent to which Boeing's crime of lying to the FAA produced worldwide effects. Here again, the fact that Boeing's senior management was misleading its "customers"—including Ethiopian Airlines—about the safety of the 737 MAX is relevant evidence regarding the ultimate effects that Boeing's crime produced.

Finally, the victims' families have pending before the Court a motion for access to information from the Government about this case. Dkt. 72. The SEC orders make clear that the

Government possesses in its files very significant information—thus far not disclosed to the Court—bearing on the "crime victim" issue (Dkt. 52) as well as on the need for the Court to carefully scrutinize the DPA (Dkt. 17).

For all these reasons, this Court should admit the SEC orders against the Government.

### *The SEC Orders are Not "Distinct" from the Offense Laid Out in the DPA*

Boeing also argues that the SEC orders involve factual issues that are "distinct" from the offense laid out in the DPA. Dkt. 108 at 1. Indeed, Boeing contends that the victims' families have somehow conceded that the orders contain information "not contained in the DPA offense." Dkt. 2. Not so.

First, the "DPA offense" as described in the Criminal Information is a broad charge of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. The conspiracy is alleged to have extended from "in and around November 2016 through at least in or around December 2018." Dkt. 1 at 1. The conspiracy involved Boeing conspiring "to defraud the United States by impairing, obstructing, defeating, and interfering with, by dishonest means, the lawful function of … [FAA AEG] in connection with the FAA AEG's evaluation of the Boeing 737 MAX airplane's [MCAS] …." *Id.* To be included in the "DPA offense," conduct need only be "dishonest means" in furtherance of the conspiracy to "impair[]" or "interfere with" the lawful function of the FAA AEG. Of course, sending out false statements regarding MCAS to Boeing's customers (e.g., Ethiopian Airlines) about the safety of the 737 MAX is the epitome of "dishonest means." And because the FAA AEG's lawful function obviously includes promoting aircraft safety, these false statements directly interfered with that function.

Second, issues are currently pending before the Court involving evidence beyond simply the "DPA offense." For example, the Court is currently considering whether Boeing's crime

5

"directly and proximately" harmed the crash victims, thus making them "crime victims" under the CVRA. *See* 18 U.S.C. § 3771(e). This fact-based inquiry necessarily involves looking beyond the DPA's charged crime to that crime's harmful effects. Numerous CVRA "victim" cases have looked beyond the narrow record of the charges themselves to later effects. *See* Dkt. 71 at 3 (*citing In re Fisher*, 649 F.3d 401, 403-04 (5th Cir. 2011) (collecting cases)). Indeed, this Court has already ruled that while "[t]he DPA provides the base level of facts the Court must accept as true, … the Government agrees that 'direct and proximate causation is not solely defined by the statement of facts.'" Dkt. 96 at 17 (citing Hr'g Tr. 93, Dkt. 95).

Third, in its response to the pending motion, Boeing claims that the SEC orders do not bear on anything other than Boeing's senior management learning about the inadequacy "of Boeing's *historical disclosures* preceding the entry into service of the MAX …." Dkt. 108 at 2 (emphasis rearranged). Not so.

First, the SEC's orders provide evidence that Boeing falsely told its customers in November 2018—including Ethiopian Airlines—that the MAX was "as safe as any airplane that has ever flown the skies." That statement—left uncorrected by senior management—was continuing deception by Boeing, which is highly relevant to multiple issues in this case.

Second, the fact that Boeing was deceiving its customers and the public in November 2018 is also circumstantial evidence that it was continuing to deceive the FAA AEG. To be sure, the statement of facts explains that, after the Lion Air crash, the FAA AEG "learned for the first time about MCAS's expanded operational scope." Dkt. 4 at A-15. But that specific fact (which is untethered to any specific date) fails to demonstrate that the FAA understood all ramifications of MCAS—including ramifications such as repeated activations that ultimately lead to the crash of Ethiopian Airlines Flight 302. The fact that Boeing was lying to the public about MCAS

6

ramifications is circumstantial evidence that it was also lying to the FAA at that same time about the same things. Overwise, Boeing would have run the risk of the FAA telling investors and the public that Boeing was making false statements. The victims are entitled to introduce evidence in the current proceedings that, inferentially, Boeing was lying to *both* the FAA and the public—with fatal consequences on March 10, 2019, when 157 passengers and crew died in the Ethiopian Airlines Flight 302 crash involving repeated MCAS activations.

### *The SEC Orders are Admissible Evidence*

Boeing also briefly argues that the SEC orders are not "admissible evidence." Dkt. 108 at 1. The Court has not yet determined whether the rules of evidence apply to all aspects of this CVRA proceeding. But even assuming that they do, the SEC orders are clearly admissions by a party opponent—to wit, the United States. *See* Fed. R. Evid. 801(d)(2). Moreover, the SEC orders constitute a statement of a public office (the SEC) about that office's activities and its investigation. *See* Fed. R. Evid. 803(8). And, in any event, neither Boeing nor the Government argue that the SEC's careful conclusions are in any way untrustworthy. Because the Government continues to withhold information from this Court, the SEC's statements are admissible under the residual hearsay exception. *See* Fed. R. Evid. 807 (statement admissible if it is trustworthy and is more probative than other information that the proponent can obtain through reasonable efforts).

### *Conclusion*

For all these reasons, the Court should grant the victims' families leave to supplement the record in this case with the two new cease-and-desist orders against Boeing and its former-CEO.

Dated: September 29, 2022

                                    Respectfully submitted,

| | |
|---|---|
| /s/ Warren T. Burns | /s/ Paul Cassell |
| Warren T. Burns (Texas Bar No. 24053119) | Paul G. Cassell (Utah Bar No. 06078) |
| Burns Charest, L | (Counsel of Record) |
| 900 Jackson Street | Utah Appellate Project |
| Suite 500 | S.J. QUINNEY COLLEGE OF LAW |
| Dallas, TX 75202 | University of Utah |
| 469-904-4550 | 383 S. University St. |
| wburns@burnscharest.com | Salt Lake City, UT 84112 |
| | 801-585-5202 |
| | cassellp@law.utah.edu |
| | (no institutional endorsement implied) |
| | (*pro hac vice*) |

*Attorneys for Victims' Families*

## **CERTIFICATE OF SERVICE**

I certify that on September 29, 2022, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.

                                                        */s/ Warren T. Burns*
                                                        Warren T. Burns