## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

----------------------------------------------------------------- x

UNITED STATES OF AMERICA              §       Case No.  4-21-cr-00005-O
                                      §
                    Plaintiff,        §
                                      §
          vs.                         §
                                      §
THE BOEING COMPANY                    §
                                      §
                    Defendant.        §
                                      §
----------------------------------------------------------------- x

**MOTION OF POLSKIE LINIE LOTNICZE LOT S.A. PURSUANT TO THE CRIME VICTIMS RIGHTS ACT FOR FINDINGS THAT THE PROPOSED BOEING DEFERRED PROSECUTION AGREEMENT WAS NEGOTIATED IN VIOLATION OF THE VICTIM'S RIGHTS AND FOR REMEDIES FOR THOSE VIOLATIONS**

Jeffrey W. Hellberg, Jr.
(Texas Bar No.00796738)
Jeff.hellberg@wickphillips.com
David J. Drez, III
(Texas Bar No. 24007127)
David.drez@wickphillips.com
Colin P. Benton
(Texas State Bar. No. 24095523
Colin.benton@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton St., Suite 1500
Fort Worth, Texas 76102
Phone: 817.332.7788
Facsimile: 817.332.7789

*Attorneys for Polskie Linie Lotnicze LOT S.A.*

Anthony U. Battista, Esq.
(NY Bar No. 2802775)
abattista@condonlaw.com
Diana Gurfel, Esq.
(NY Bar No. 3040391)
dgurfel@condonlaw.com
Evan Kwarta, Esq.
(NY Bar No. 4401543)
ekwarta@consonlaw.com
Mary Dow, Esq.
(NY Bar No. 4782017)
mdow@condonlaw.com
**Condon & Forsyth LLP**
7 Times Square, 18th Fl.
New York, NY 10036
Phone: 212-490-9100
Facsimile: 212-370-4453

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ....................................................................... 2

I.     Boeing's Two-Year Criminal Conspiracy Directly and Proximately Caused the Grounding of 737 MAX Aircraft Worldwide ................................................. 2

II.    LOT's 737 MAX Losses ...................................................................................... 3

III.   The Justice Department Secretly Negotiated a Deferred Prosecution Agreement with Boeing and Kept Victims in the Dark ......................................... 3

ARGUMENT ................................................................................................................... 4

IV.   LOT is a "Crime Victim" within the Meaning of the CVRA ............................... 5

      A.     LOT was "directly and proximately harmed" by Boeing's conspiracy to defraud the United States ................................................... 5

      B.     Boeing's Conspiracy to Defraud the U.S. was the Proximate Cause of LOT's Losses ............................................................................ 8

V.    The DOJ Violated LOT's CVRA Rights, Including its Right to Confer With the DOJ, its Right to Timely Notice of the DPA, and its Right to be Treated with Fairness. ..................................................................................................... 10

VI.   LOT is Entitled to Remedies for the Government's Violations of Its CVRA Rights. ............................................................................................................... 11

CONCLUSION .............................................................................................................. 11

CERTIFICATE REGARDING CONFERENCE ............................................................. 13

CERTIFICATE OF COMPLIANCE REGARDING LENGTH ....................................... 13

CERTIFICATE OF SERVICE ....................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

***Cases***

*Austin v. Kroger Texas, L.P.*,
    864 F.3d 326 (5th Cir. 2017) ........................................................................... 8, 9

*Degenhardt*,
    405 F. Supp. 1341 (D. Utah 2005) ................................................................... 5

*In re Dean*,
    527 F.3d 391 (5th Cir. 2008) ........................................................................... 10

*In re Fisher*,
    640 F.3d 645 (5th Cir. 2011) ........................................................................ 5, 6, 8

*In re Fisher*,
    649 F.3d 401 ...................................................................................................... 6

*In re Rendon Galvis*,
    564 F.3d 170 (2d Cir. 2009) ............................................................................ 6

*Paroline v. United States*,
    572 U.S. 434 (2014) .......................................................................................... 9

*U.S. v. Kasper*,
    60 F. Supp. 3d 1177 (D.N.M. 2014) ............................................................... 5

***Statutes***

1 U.S.C. § 1 ............................................................................................................ 5
18 U.S.C. § 371 ...................................................................................................... 3
18 U.S.C. § 3771 ................................................................................................. 1, 5
18 U.S.C. § 3771 (a)(9) ......................................................................................... 10
18 U.S.C. § 3771 (d)(3) ..................................................................................... 11, 13
18 U.S.C. § 3771(a) ............................................................................................... 4
18 U.S.C. § 3771(a)(5) ...................................................................................... 10, 11
18 U.S.C. § 3771(a)(8) ........................................................................................... 10
18 U.S.C. § 3771(d)(1) .......................................................................................... 4
18 U.S.C. § 3771(d)(2) .......................................................................................... 5
18 U.S.C. § 3771(e) ............................................................................................... 6
18 U.S.C. § 3771(e)(2)(A) ..................................................................................... 5

***Rules***

Fed. R. Crim. P. 60 ................................................................................................ 13

**<u>INTRODUCTION</u>**

Pursuant to this Court's October 21, 2022 Opinion and Order (ECF No. 116) (the "October 21 Order"), POLSKIE LINIE LOTNICZE LOT S.A. ("LOT") respectfully requests that the Court exercise its broad remedial authority and find that LOT has standing under the Crime Victim's Rights Act ("CVRA"), 18 U.S.C. § 3771, because, like the movants whose CVRA standing was recognized in the October 21 Order, LOT is a victim of Boeing's criminal conspiracy to defraud the United States, through Federal Aviation Administration ("FAA")'s certification of Boeing's 737 MAX aircraft, which caused two fatal crashes and the nearly two-year worldwide grounding of all 737 MAX aircraft that resulted from Boeing's crime.

LOT also requests that the Court find that it is entitled to the following remedies under the CVRA, including: (1) an Order requiring that the Deferred Prosecution Agreement ("DPA") between Boeing and the U.S. Department of Justice ("DOJ") (ECF No. 4), be re-opened and that LOT be permitted to participate in any additional negotiations and/or the terms of a revised DPA (or other agreements); (2) the requirement that the Court exercise its supervisory power over the existing DPA, as well as a revised DPA, to ensure that Boeing's compliance with the DPA(s) provides relief to Boeing's foreign air customers; (3) an Order that the DOJ must confer with LOT concerning other means to hold Boeing accountable for its fraud; and (4) any other remedy that the Court deems appropriate based on the government's violation of the LOT's CVRA rights.

The Court should grant LOT's motion because its reasoning set forth in its October 21 Order applies equally to LOT. In ruling that the Lion Air Flight 610 and Ethiopian Airlines Flight 302 families had standing under the CVRA, the Court's October 21 Order found, *inter alia*, that: (1) the two 737 MAX crashes would not have occurred but for Boeing's fraud upon the FAA (*see* ECF No. 116, at 13-15); (2) such fraud extended to foreign civil aviation authorities that were relying on the FAA (*see id.*); and (3) the 737 MAX crashes were a foreseeable consequence of

1

Boeing's fraudulent conspiracy. *See id.* at 17-18. The same findings apply to LOT and other foreign carriers that were harmed by the foreseeable worldwide grounding of all 737 MAX aircraft that immediately followed the two fatal crashes.

Here too: (1) the grounding of the 737 MAX aircraft by European Union Aviation Safety Agency ("EASA"), LOT's civil aviation regulator, would not have occurred but for Boeing's fraud upon the FAA; (2) like the Indonesian and Ethiopian aviation authorities, EASA relied on the FAA's certification of the 737 MAX; and (3) the grounding of an improperly certified aircraft that caused two fatal losses within a five-month period was a foreseeable consequence of Boeing's fraud. Notwithstanding the difference in the nature of loss, the causal connection between Boeing's fraud and LOT's grounding losses is the same as that between Boeing's fraud and the crash victims' families' losses. The Court should hold that LOT has the same rights under the CVRA.

## **RELEVANT FACTUAL BACKGROUND**

I.   **Boeing's Two-Year Criminal Conspiracy Directly and Proximately Caused the Grounding of 737 MAX Aircraft Worldwide**

In the DPA Statement of Facts, Boeing admitted that it knowingly, and with intent to defraud, conspired to impair, obstruct, and interfere with the FAA's evaluation of the safety of the Boeing 737 MAX aircraft. *See* ECF No. 4, Statement of Facts, at ¶¶ 16-54. Boeing also admitted that the direct and foreseeable consequences of its conspiracy to defraud the FAA include two fatal crashes—Lion Air Flight JT610 and Ethiopian Airlines Flight ET302—and, the almost two-year grounding of all 737 MAX aircraft worldwide, which caused Boeing's airline customers to incur significant financial losses. *See id.*, Criminal Information, at ¶ 12. In fact, in the DPA itself, Boeing admitted this direct causation and "agreed[d] to pay a total Airline Compensation Amount of $1,770,000,000 to its airline customers for the direct pecuniary harm that its airline customers

2

incurred as a result of a grounding of the Company's 737 MAX" that occurred after the crashes. *See id*. Among those airline customers who incurred pecuniary harm from the grounding are foreign airlines such as LOT, because as this Court concluded in its October 21 Order, foreign airlines and civil aviation regulators relied on the FAA "regarding airplane certification, training requirements, and other relevant information." *See* ECF No. 116, at 12. However, because the DPA gave Boeing discretion as to how the Airline Compensation Fund would be allocated, Boeing was not required to compensate foreign airlines.

## II.    LOT's 737 MAX Losses

At the time of the grounding, LOT had taken delivery of five 737 MAX aircraft, and at the time of the grounding, had executed leases for nine additional 737 MAX aircraft. *See LOT v. Boeing*, No. 2:21-cv-01449, ECF No. 1, at ¶¶ 508-09, 593-605 (W.D. Wash.). As a result of the grounding, LOT sustained at least $250 million in damages, with its losses continuing to accumulate. *See id.* at ¶¶ 606-10.

LOT sought compensation from Boeing, but Boeing declined. *See id.* at ¶¶ 611-12. LOT's case against Boeing remains ongoing. *See id.*, ECF No. 39.

## III.   The Justice Department Secretly Negotiated a Deferred Prosecution Agreement with Boeing and Kept Victims in the Dark

After the second 737 MAX crash in March 2019, the DOJ began a criminal investigation into Boeing's fraudulent conspiracy in connection with the certification of the 737 MAX. *See* ECF No. 116, at 5. Approximately two years later, on January 7, 2021, the DOJ charged Boeing with conspiracy to defraud the United States under 18 U.S.C. § 371 (ECF No. 1), and filed the DPA (ECF No. 4) on the same day. But prior to agreeing to the DPA with Boeing, the DOJ never advised, notified, or consulted with any victims of Boeing's criminal conduct, including the crash victims' families, and foreign airlines that had acquired and operated 737 MAX aircraft. *See generally*, ECF No. 116, at 5. In fact, the DOJ declined to consult with any crime victim despite

3

the fact that a representative of the crash victims' families had contacted the DOJ seeking information concerning possible DOJ investigations into Boeing.  *Id.*

Thus, LOT, like most if not all of Boeing's victims, did not find out about the DOJ's investigation, its results, or the DPA until the day it was filed.  Although the DPA required Boeing to establish a fund to compensate airlines, Boeing had exclusive discretion over that fund, deciding which airlines it would compensate and the amounts of such compensation, and, as set forth above, chose to compensate some customer airlines, but not LOT.  Accordingly, LOT wrote to the DOJ requesting, *inter alia*, that the DPA be re-opened to include other victims of Boeing's fraudulent conspiracy, including foreign airlines such as LOT. *See* Declaration of Anthony U. Battista, Esq. ("Battista Decl.") at ¶ 4.  LOT did not receive any substantive response from the DOJ.  *See id*. at ¶¶ 5-6.

## ARGUMENT

The CVRA significantly expanded the rights of federal crime victims such as LOT, and placed an explicit duty on federal courts to ensure that crime victims are, among other things, consulted by prosecutors in connection with an agreement with the accused, to be treated with fairness, and to heard at any public proceeding involving a plea.  *See* 18 U.S.C. § 3771(a).  The CVRA also allows LOT to assert its right in the district courts, which "shall take up and decide any motion asserting a victim's right forthwith" and "shall ensure that the victim is afforded the rights described in subsection a." 18 U.S.C. § 3771(d)(1).  Like this Court held in connection with the motions filed by the crash victims' families, LOT qualifies as a "crime victim" within the meaning of the CVRA, and the DOJ violated LOT's CVRA rights by failing to notify LOT of the DPA and by failing to respond to LOT's request to re-open and be included in the DPA.  Accordingly, the Court should fashion a remedy for that violation, including re-opening the DPA to include LOT and similarly situated victims.

4

## IV.     LOT is a "Crime Victim" within the Meaning of the CVRA

As a part of the Justice for All Act of 2004, federal crime victims were granted expanded rights under the CVRA. The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a federal offense." 18 U.S.C. § 3771. The CVRA does not further define "person"; thus, the meaning of that term is informed by the Dictionary Act, which provides that "the word 'person' . . . include[s] corporations, companies . . . as well as individuals." 1 U.S.C. § 1; *see also U.S. v. Kasper*, 60 F. Supp. 3d 1177, 1178 (D.N.M. 2014) (where "person" is not specifically defined in the CVRA, the default definition in the Dictionary Act applies).

The CVRA applies to "multiple" victims of a crime, including victims who suffered different types of harm. 18 U.S.C. § 3771(d)(2); *see also Degenhardt*, 405 F. Supp. 1341, 1344, 1351 (D. Utah 2005) (recognizing that the sponsors of the CVRA described this as 'an intentionally broad definition because *all* victims of crime deserve to have their rights protected" and that under the CVRA, a district court can fashion a reasonable remedy even if the crime had "many victims").

Accordingly, under the CVRA and this Court's October 21 Order, LOT qualifies a crime victim in connection with the DPA so long as it can show that it was "directly and proximately" harmed by Boeing's fraudulent conspiracy.  *See* ECF No. 116, at 8-9 citing 18 U.S.C. § 3771(e)(2)(A); *see also* ECF No. 96, at 8 ("the CVRA indisputably applies to plea agreements and deferred prosecution agreements—situations in which the defendant has not been convicted of committing a federal offense.").

### A.     LOT was "directly and proximately harmed" by Boeing's conspiracy to defraud the United States

As this Court held:

> The CVRA's "crime victim" definition "imposes dual requirements
> of cause in fact and foreseeability," *In re Fisher*, 640 F.3d 645, 648
> (5th Cir. 2011) ("*Fisher I*"), requiring Movants to establish that they
> represent individuals who were "directly and proximately harmed as
> a result of the commission of [Boeing's conspiracy to defraud the

United States.]" 18 U.S.C. § 3771(e) (emphasis added). This causal inquiry is "fact-specific." *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009).

ECF No. 116, at 9.

"Direct" harm within the meaning of the CVRA means that the putative victim must prove that the offense is the "but-for cause of the harm." *See id.* (citing *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) (as altered in the October 21 Order). But, as this Court noted, "establishing but for causation is 'not a quest for sole cause' as there are frequently many causes to a particular event." *Id.* at 10 (internal citation omitted). Rather, the "but-for" causation inquiry involves "creat[ing] 'a mental picture of a situation identical to the actual facts of the case in all respects save one: the defendant's wrongful conduct is now 'corrected' to the minimal extent necessary to make it conform to the law's requirements." *In re Fisher*, 649 F.3d 401, 402-03. Then, the Court asks, "whether the injuries that the plaintiff suffered would probably still have occurred had the defendant behaved correctly in the sense indicated;" and, if the answer is "No," "the defendant's conduct is a but-for cause." *Id.* (internal quotation omitted).

Applying this inquiry to LOT's injuries, as the Court's October 21 Order did with the losses suffered by the crash victims' families, leads to an inescapable conclusion: but for Boeing's conspiracy to defraud the United States through the FAA, EASA and aviation authorities around the world would not have grounded all 737 MAX aircraft, including LOT's, following the unprecedented occurrence of two fatal crashes involving brand new 737 MAX aircraft within a five-month period. Indeed, the "direct causal chain" that this Court found with respect to the crash victims' families' is identical to the causal chain that led to LOT's losses. ECF 116, at 13.

If Boeing had not committed a multi-year conspiracy to conceal the true nature of the 737 MAX's Maneuvering Characteristics Augmentation System ("MCAS") from the FAA's Aircraft Evaluation Group ("AEG"), the 737 MAX would have been certified with Level D training or

higher, and relevant MCAS information would have been included in the Flight Standardization Board ("FSB") Report. *Id.* at 13. But for the inadequate training that the FAA approved based on the false pretenses resulting from Boeing's conspiracy, pilots "operating the 737 MAX worldwide would have been aware of the risk of MCAS activation during takeoff and landing." *Id.* The same is true with respect to the omission of critical MCAS information from instructional materials— but for that lack of "advanced knowledge of the system that thwarted both of those aircraft's carriers, the pilots aboard Lion Air Flight 610 and Ethiopian Airlines Flight 302 would have been able to safely land those flights." *Id.* at 13-14. "In other words, Boeing's fraud is the *sine qua non* of the harmful result." *Id.* at 14.

In LOT's case, the "direct" causal chain requires no other link—if the 737 MAX had been certified properly such that the Lion Air and Ethiopian pilots could have landed the aircraft safely, the 737 MAX would not have been grounded and LOT would not have suffered the resulting harm it did. Indeed, on that basis, Boeing admitted this direct causal link as part of the DPA by agreeing to pay over $1.7 billion to its airline customers "for the direct pecuniary harm that [they] incurred as a result of a grounding of the Company's 737 MAX." ECF No. 4, Criminal Information ¶ 12. Likewise, the causal connection between the harm Boeing's conspiracy caused and "its [U.S.-based] customers," to which it already admitted (*see id.*), is no different than the connection between Boeing's conspiracy and the harm caused to LOT. *See id.*, Statement of Facts, at A-1-A-5 (wherein the DOJ described why Boeing's conspiracy to defraud the U.S. was in kind a conspiracy to defraud Boeing's U.S.-based customer airlines, but omitted that foreign airlines suffered from the same conspiracy).

This Court has already found as much. In its October 21 Order, it held: (1) there was "global adoption of equivalent training standards" as "it is well-known that foreign airlines and foreign civil aviation authorities rely on the FAA's guidance regarding airplane certification,

training requirements, and other relevant information" (ECF No. 116, at 12); (2) when the FAA, the "world's eminent aviation authority," issued an emergency order to ground the 737 MAX aircraft due to safety concerns, global operators of the 737 MAX such as LOT listened (*see id.*); and (3) but for Boeing's conspiracy "foreign operators . . . would have received adequate training to respond to the MCAS activation," and operators would not have needed to ground the 737 MAX aircraft for safety concerns related to the inability of pilots and operators to respond to issues with the system. *Id*. at 16.

In short, there can be no serious question that Boeing's criminal conspiracy to defraud the U.S. was the "but for" cause of LOT's losses.

### B.    Boeing's Conspiracy to Defraud the U.S. was the Proximate Cause of LOT's Losses

The Court's October 21 Order also leaves no doubt that LOT satisfies the "proximate cause" prong of CVRA's "dual requirement."  *See id*. at 9 (citing *Fisher*, 640 F.3d at 648).  As the Court explained, the proximate cause prong necessitates that LOT demonstrate that Boeing's criminal conspiracy be a "substantial factor" in causing LOT's losses.  *See id.* , at 10.  This Court further explained that the Fifth Circuit has instructed that "[a] person is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct."  *Id*. (citing *Fisher I*, 640 F.3d at 648).  This Court then elaborated that under standard foreseeability principles, courts "have consistently held that foreseeability turns on existence of a general danger, not awareness of the exact sequence of events that produces the harm." *Id.*, at 10 (citing *Austin v. Kroger Texas*, *L.P.*, 864 F.3d 326, 333 (5th Cir. 2017)).

As with the "but-for" analysis, this Court's October 21 Order makes clear that Boeing's criminal conspiracy was a proximate cause of LOT's injuries.  The Court concluded that it was foreseeable to Boeing both that its deceit created the "existence of a general danger" and that the crashes that occurred "are not 'so attenuated that the consequence is more aptly described as mere

8

fortuity.'" *Id.*, at 16 (citing *Paroline v. United States*, 572 U.S. 434, 445 (2014)). The Court's holding applies with even greater force here because the "disaster" the Court described would have led to a grounding of the 737 MAX—and thus LOT's losses—regardless of where it happened in the world. *Id.* at 16. Indeed, from LOT's perspective, it was "mere[ly] fortuit[ious]" that other carriers' 737 MAX aircraft crashed as opposed to LOT's. *Id.* Because LOT was just as reliant on Boeing's representations to the FAA as all foreign carriers including Lion Air and Ethiopian Airlines, had there been an erroneous MCAS activation on a LOT flight there is no reason to believe the result would have been any different.

It was thus "easily predict[able]" that the "inadequate training" that Boeing secured as a result of its fraudulent conspiracy could result in "catastrophic airplane crashes." *Id.* And it is just as predictable that if "catastrophic airplane crashes"—plural—occurred that civil aviation regulators would ground the 737 MAX aircraft, causing significant financial harm 737 MAX operators before a grounding, that invariably would be long term, would be lifted. Indeed, the grounding and fixes required is exactly what occurred. *See* FAA, *FAA Statement on Boeing 737 MAX Return to Service*, Nov. 18, 2020, available at: https://www.faa.gov/newsroom/faa-updates-boeing-737-max-0 (noting the training requirements that accompany the return to service as well as the design changes made to the MAX); EASA, *EASA declares 737 MAX safe to return to service in Europe*, Jan. 27, 2021, available at: https://www.easa.europa.eu/en/newsroom-and-events/press-releases/easa-declares-boeing-737-max-safe-return-service-europe (same).

In short, the Court's October 21 Order, and the actual grounding that followed the crashes of Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 leave no doubt that the prolonged grounding that caused LOT's harm was foreseeable, and thus that Boeing's fraudulent conspiracy was a proximate cause of LOT's losses.

**V.     The DOJ Violated LOT's CVRA Rights, Including its Right to Confer With the DOJ, its Right to Timely Notice of the DPA, and its Right to be Treated with Fairness.**

The DOJ violated LOT's CVRA rights when it negotiated the DPA in secret, stripping LOT of its right to confer with the DOJ, LOT's right to timely notice of the DPA, and its right to be treated with fairness.

First, the CVRA promises victims such as LOT a "reasonable right to confer with the attorney for the government." 18 U.S.C. § 3771(a)(5); *see also In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008) ("in passing the [CVRA], Congress made the policy decision—which we are bound to enforce—that victims have a right to inform the plea negotiation process by conferring with prosecutors before a plea agreement is reached). That right was not afforded to LOT. LOT was unaware of the status of the DOJ's investigation and its negotiations with Boeing until the DPA was filed. Indeed, the DOJ already admitted that it did not confer with *any* of Boeing's victims before entering into the DPA. *See* ECF No. 58, at 1-2.

Second, the CVRA also provides victims "the "right to be informed in a timely manner of any plea bargain or deferred prosecution agreement." 18 U.S.C. § 3771 (a)(9). Because it was unaware of the status of the DOJ's investigation and the existence of the DPA, LOT also was not afforded this right.

Last, the CRVA provides victims a right "to be treated with fairness and respect for the victim's dignity." 18 U.S.C. § 3771(a)(8). The combination of the lack of notice of the DPA from the DOJ, and lack of an opportunity to confer with the DOJ concerning the specifics of the DPA, including that it specially excludes LOT, demonstrates that the DOJ did not treat LOT with fairness. Further underscoring this conclusion, when, after the DPA was filed, LOT wrote the DOJ seeking to have the DPA re-opened, LOT was ignored. *See* Battista Decl. at ¶¶ 4-6.

**VI.     LOT is Entitled to Remedies for the Government's Violations of Its CVRA Rights.**

Because the Court should hold that LOT is a crime victim under the CVRA, and the DOJ violated its CVRA rights, it should grant LOT additional remedies.  *See* 18 U.S.C. § 3771 (d)(3). LOT respectfully submits that such remedies should include: (1) an Order requiring that the DPA be re-opened and that LOT be permitted to participate in any additional negotiations and/or the terms of a revised DPA (or other agreements); (2) the requirement that the Court exercise its supervisory power over the existing DPA, as well as a revised DPA, to ensure that Boeing's compliance with the DPA(s) provides relief to Boeing's foreign air customers; (3) an Order that the DOJ must confer with LOT concerning other means to hold Boeing accountable for its fraud; and (4) any other remedy that the Court deems appropriate based on the government's violation of the LOT's CVRA rights.  *See* 18 U.S.C. § 3771 (a)(5).

**CONCLUSION**

LOT respectfully requests that this Court find that LOT is a crime victim under to the CVRA, that the DOJ violated LOT's CVRA rights, and fashion a suitable remedy for that violation, including, but not limited to the remedies specified herein.[1]

---

[1]   LOT submits this motion on October 28, 2022, because the Court asked for notice concerning potential remedies for the DOJ's violation of the CVRA by this date.  *See* ECF No. 116, at 18.  Given the time between the Court's October 21, 2022, Order and today, LOT curtailed the length of its motion.  While LOT believes that this brief provides a sufficient basis for the Court to told that LOT is a victim of Boeing's crimes under the CVRA, and to propose remedies for the DOJ's violation of LOT's CVRA rights, if the Court disagrees, LOT respectfully requests the right to brief these matters in further detail.

Dated: October 28, 2022                          Respectfully Submitted,

                                                 /s/ Jeffrey W. Hellberg, Jr.
                                                 Jeffrey W. Hellberg, Jr. (Texas Bar No.00796738)
                                                 Jeff.hellberg@wickphillips.com
                                                 David J. Drez, III (Texas Bar No. 24007127)
                                                 David.drez@wickphillips.com
                                                 Colin P. Benton (Texas State Bar. No. 24095523)
                                                 Colin.benton@wickphillips.com
                                                 **WICK PHILLIPS GOULD & MARTIN, LLP**
                                                 100 Throckmorton St., Suite 1500
                                                 Fort Worth, Texas 76102
                                                 Phone: 817.332.7788
                                                 Facsimile: 817.332.7789

                                                 -and-

                                                 CONDON & FORSYTH, LLP

                                                 /s/ Anthony U. Battista
                                                 Anthony U. Battista, Esq. (NY Bar No. 2802775)
                                                 abattista@condonlaw.com
                                                 Diana Gurfel, Esq. (NY Bar No. 3040391)
                                                 dgurfel@condonlaw.com
                                                 Evan Kwarta, Esq. (NY Bar No. 4401543)
                                                 ekwarta@consonlaw.com
                                                 Mary Dow, Esq. (NY Bar No. 4782017)
                                                 mdow@condonlaw.com
                                                 Condon & Forsyth LLP
                                                 7 Times Square, 18th Fl.
                                                 New York, NY 10036
                                                 Phone: 212-490-9100
                                                 Facsimile: 212-370-4453

                                                 *Attorneys for Polskie Linie Lotnicse LOT S.A.*

## CERTIFICATE REGARDING CONFERENCE

LOT is aware of Local Rules 47.1(a) and (b) regarding motion practice. This rule requires the "parties" in a criminal case to comply with various requirements, including a conferral regarding a motion. Because LOT is not a "party" to this criminal case, LOT does not believe that the conferral requirement applies to this motion. It is proceeding pursuant to separate authority for asserting a crime victim's right contained in the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(3) and FED. R. CRIM. P. 60. Additionally, LOT believes that it was not possible to confer with the attorneys for each party because, given the time between the Court's October 21, 2022, Order and today, there was not sufficient time to confer before submitting this motion.

*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr.

## CERTIFICATE OF COMPLIANCE REGARDING LENGTH

I certify that, in compliance with Local Rule 47.2, this motion is 13 pages.

*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr.

## CERTIFICATE OF SERVICE

On October 28, 2022, I filed the foregoing document with the clerk of courts for the U.S. District Court, Northern District of Texas, using the Court's CM/ECF filing system.

*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr.

13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

------------------------------------------------------------- x
UNITED STATES OF AMERICA             §        Case No.  4-21-cr-00005-O
                                     §
                    Plaintiff,       §
                                     §
        vs.                          §
                                     §
THE BOEING COMPANY                   §
                                     §
                    Defendant.       §
                                     §
------------------------------------------------------------- x


## DECLARATION OF ANTHONY U. BATTISTA

I, Anthony U. Battista, Esq., declare as follows:

1.      I am an attorney admitted to practice law before this Court.

2.      I am a member of Condon & Forsyth, LLP, counsel for Polskie Linie Lotnicze Lot S.A. ("LOT"). I am submitted this declaration in support of LOT's motion pursuant to the Crime Victims Right's Act for findings that the proposed Boeing Deferred Prosecution Agreement was negotiated in violation of the Victim's rights and for remedies for those violations.

3.      I am fully familiar with the facts of this case, the matters at issue in this Declaration and the motion.

4.      On December 30, 2021, I sent a letter attached at Exhibit A hereto, to Cory E. Jacobs, Esq. and Michael T. O'Neill, Esq. at the United Stated Department of Justice, Criminal Division, Fraud Section.

5.      Brian Strang, Esq., an Attorney Advisor in the Fraud Section, responded to my letter on January 11, 2022 by email, seeking information concerning what, if any, compensation LOT recovered from Boeing.

6.      I responded to Mr. Strang on January 19, 2022, informing him that LOT had not received any compensation from Boeing.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of October 2022, at New York, NY.


/s/ Anthony U. Battista
ANTHONY U. BATTISTA

# EXHIBIT A



Direct Dial: (212) 894-6892
Direct Fax:  (212) 370-4453
abattista@condonlaw.com

December 30, 2021

**VIA E-MAIL**

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005

Re:     *Polskie Linie Lotnicze Lot, S.A. v. The Boeing Company*, No. C21-1449RSM (W.D.
        Wash. 2021)
        C & Ref:  6135.10380/AUB

Dear Sirs:

This firm represents Polskie Linie Lotnicze Lot, S.A. a/k/a LOT Polish Airlines ("LOT") in
connection with its effort to obtain just compensation from The Boeing Company ("Boeing") for
its losses arising from the well-documented fraud that Boeing perpetrated in connection with its
certification and sale of 737 MAX aircraft, resulting in two fatal accidents and the unprecedented
worldwide grounding of the aircraft.  LOT commenced the above-captioned action after Boeing
failed to negotiate with LOT in good faith concerning its 737 MAX-related losses.

We write to bring to your attention not only that Boeing's bad faith negotiations with LOT
constitute a violation of the purpose, if not the letter, of the Deferred Prosecution Agreement
("DPA") entered into by Boeing (*U.S. v. The Boeing Company*, No. 4:21-cr-00005-O, Doc. 4
(N.D. Tex. Jan. 7, 2021)) and the United States Department of Justice, Criminal Division, Fraud
Section ("DOJ" or "Fraud Section"), but also how Boeing's conduct in the litigation LOT
commenced constitutes an additional violation of the DPA.

**I.      The DPA, the Forkner Indictment, and Boeing Settlements with Several 737 MAX
        Victims Establish Boeing's Fraudulent Conduct and its Responsibility for LOT's
        737 MAX-Related Losses**

As you are aware, in the DPA Boeing admitted and agreed that, among other things, the
following facts were "establish[ed] beyond a reasonable doubt" (DPA Attachment A, at A-1, ¶
1):

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 2

(a) Boeing's employees knew that the Federal Aviation Administration's Aircraft Evaluation Group ("FAA AEG") was relying on Boeing to identify and provide to the FAA AEG all relevant information in connection with the FAA AEG's publication of the 737 MAX FSB Report, including information affecting the FAA AEG's determination as to differences training for the 737 MAX (*id.* at A-4, ¶ 14);

(b) Boeing intentionally conspired to defraud the FAA AEG with respect to the certification of that aircraft and the differences training necessary to safely operate the 737 MAX (*id.* at A-5, ¶¶ 16-17);

(c) such fraud was intended to influence the aircraft acquisition decisions of Boeing's customer airlines (*id.* at A-6, ¶ 18);

(d) such fraud related to the Maneuvering Characteristics Augmentation System ("MCAS"), a software-based flight control, the power and operating scope of which Boeing purposefully hid from the FAA AEG (*id.* at A-7-A-13, ¶¶ 23, 25-26, 33-36, 38-41);

(e) Boeing's fraud impaired the FAA AEG's lawful function to evaluate MCAS and include information concerning MCAS in the FSB Report among other essential documents (*id.* at A-13, ¶¶ 42-43);

(f) Boeing hid the existence of MCAS from its airline customers (*id.* at A-13-A-14, ¶ 44);

(g) as a result of Boeing's fraud airline customers and their pilots flying the 737 MAX lacked necessary information concerning MCAS (*id.* at A-14, ¶¶ 46-47); and

(h) as a result of two MCAS-caused fatal crashes that killed 346 people, the 737 MAX was grounded for almost two years (*id.* at A-14-A-16, at ¶¶ 48-54).

Boeing further conceded that it "admits, accepts, and acknowledges that it is responsible for the acts of its offers, directors, employees and agents" whose conduct is set forth above (*id.* at A-1, ¶ 1).

Matters were made worse for Boeing when, on October 14, 2021, you and your colleagues indicted Mark Forkner, one of the Boeing employees identified in the DPA, on six criminal

CONDON FORSYTH

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 3

charges concerning Boeing's 737 MAX-related fraud. *See U.S. v. Forkner*, No. 4-21CR-268-0 (N.D. Tex. 2021) (the "Indictment"). Among the allegations made against Mr. Forkner are that:

(a) as a Boeing employee, he knew that it was his duty to provide the FAA AEG with true and complete information concerning the differences between the 737 MAX and its predecessor the 737 NG and that he knew that the FAA AEG was relying on him to fulfill that duty (Indictment ¶ 17);

(b) Forkner knew that airlines were relying on him to provide true and complete information to the FAA AEG to ensure that pilots would receive true and complete information concerning the 737 MAX and that airlines were relying on the FAA AEG's differences training determination based on the information Forkner supplied to be accurate in connection with their business decisions to acquire and safely operate aircraft (*id.* at ¶¶ 18-20; 34); and

(c) Forkner knew that he and Boeing were providing inaccurate and incomplete information to the FAA AEG and Boeing's airline customers (*id.* at ¶¶ 21-34). In short, Forkner is charged with committing part of the fraud which Boeing already admitted it committed—duping the FAA AEG and Boeing's airline customers concerning the operation of, and dangers associated with, the 737 MAX and MCAS, the training necessary to safely operate the aircraft, and depriving Boeing's customers of information necessary to determine whether to acquire the 737 MAX.

As a result of its admitted wrongful, criminal conduct, Boeing agreed in the DPA, among other things: (a) to pay $1.77 billion in compensation to its airline customers (DPA at 6-7, at ¶ 4.j; *id.* at 9, ¶ 7); and (b) that it would not in any litigation, including the one that is the subject of this letter, "contradict[] the acceptance of responsibility by [Boeing] set forth [within the DPA] or the facts described in [the Statement of Facts attached to the DPA]" and that any such contradictory statement(s) by Boeing would constitute a breach of the DPA (*id.* at 20-21, ¶ 32).

In sum, the DPA, buttressed the Forkner indictment, establish that:

(a) Boeing knew that it was making false and fraudulent statements to the FAA AEG and its airline customers with respect to the 737 MAX and MCAS;

(b) Boeing accepted and admitted criminal responsibility for the foregoing;

**CONDON · FORSYTH**

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 4

    (c) By admitting and accepting such responsibility, Boeing is required to pay compensation to its airline customers for their losses arising from the nearly two-year worldwide grounding of the 737 MAX;

    (d) Boeing would be in breach of the DPA if it does not pay the compensation amount set forth in the DPA;

    (e) In litigation like this one, Boeing can neither deny that it engaged in the fraudulent conduct described above nor disclaim its responsibility for the losses it caused; and

    (f) Boeing would be in breach of the DPA if, in a litigation such as this one, it denies such wrongful conduct or its responsibility for the losses caused.

Because Boeing's wrongful conduct resulted in a nearly two-year worldwide grounding of the 737 MAX that caused its airline customers to lose billions, Boeing agreed to innumerable settlements to redress the damage caused by its fraud.[1]  Yet despite the commitments Boeing made in the DPA, Boeing refuses to negotiate in good faith with LOT concerning compensation for LOT's 737 MAX-related losses—the same type of losses sustained by Boeing's other 737 MAX customers.  Accordingly, on October 25, 2021, LOT was forced to commence an action in the U.S. District Court for the Western District of Washington (*see* Appendix 1, LOT Complaint

---

[1] *See, e.g.*, DPA at 7, ¶ 4.j (agreeing to compensate legal beneficiaries of crash victims for at least $500 million ); Niraj Chokshi, *Boeing directors reach a settlement in a shareholder lawsuit over the 737 Max crashes*, N.Y. Times, Nov. 5, 2021 (https://www.nytimes.com/2021/11/05/business/boeing-directors-737-max-settlement.html) (describing the settlement Boeing reached with its shareholders on account of its 737 MAX-related fraud); Will Horton, *Boeing Pays Southwest Airlines $428 Million For 737 MAX Compensation*, Forbes, Apr. 29, 2020 (https://www.forbes.com/sites/willhorton1/2020/04/29/boeing-pays-southwest-airlines-428-million-for-737-max-compensation/?sh=1c77dbd814fd) (reporting that Boeing paid Southwest Airlines at least $428 million as a partial settlement for Boeing's 737 MAX fraud); Lori Aratani, *American Airlines and Boeing reach a settlement for 737 MAX-related losses*, Washington Post, Jan. 6, 2020 (https://www.washingtonpost.com/transportation/2020/01/06/american-airlines-boeing-reach-settlement-max-related-losses/) (describing a confidential settlement Boeing reached with American Airlines); Seth Miller, *More MAX for United Airlines*, Pax Aero, Mar. 1, 2021 (https://paxex.aero/united-airlines-max-order/) (quoting United Airlines concerning its confidential settlement reached with Boeing for 737 MAX losses); *SpiceJet, Boeing Settle 737 MAX-related claims*, Nov. 17, 2021 (https://economictimes.indiatimes.com/industry/transportation/airlines-/-aviation/spicejet-boeing-settle-737-max-related-claims/articleshow/87751043.cms?from=mdr) (describing Boeing's settlement with the Indian air carrier); Matt Griffin, *Multiple 737 MAX operators agree on compensation settlements with Boeing*, IFN News, Jan. 7, 2020 (https://www.ifn.news/posts/multiple-737-max-operators-agree-on-compensation-settlements-with-boeing/) (reporting Boeing settlements with AeroMexico and Turkish Airlines for 737 MAX losses).  As you certainly are aware, Boeing also has entered into several other unreported settlements with airlines and aircraft lessors for their 737 MAX-related losses.

**CONDON FORSYTH**

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 5

("Compl.")) to recover its 737 MAX losses and, in addition, write this letter to inform you that Boeing's conduct as it relates to LOT constitutes a violation of the DPA.

## II.     The Fraud Boeing Inflicted upon LOT Exceeds that Described in the DPA and Indictment

The DPA describes the fraud that Boeing perpetrated on the U.S. Government, Boeing's customer airlines, and the commercial aviation community at large. But as described in its Complaint, the fraud that Boeing perpetrated on LOT was even greater. First, Boeing held nearly twenty direct, in-person meetings with LOT, in Poland and in the U.S., wherein Boeing:

> (a) presented innumerable false and purposefully misleading PowerPoint slides concerning the 737 MAX;

> (b) knowingly lied to LOT in response to its questions concerning the 737 MAX and how it compared to other aircraft, including Boeing's 737 NG;

> (c) purposefully induced LOT to acquire the 737 MAX instead of other similar aircraft – including the 737 NG – despite knowing that LOT initially had no intention of acquiring the 737 MAX, and did not believe that it was suitable for its near-term needs; and

> (d) further incentivized LOT to acquire 737 MAX aircraft not only through its purposeful fraud, but by providing LOT financial incentives for acquiring MAX aircraft that would not have been available if LOT had elected to acquire different aircraft.

*See, e.g.*, Compl. ¶¶ 246-314; 317-327; 331-394; 422-461; 476-508; 511-526; 528-569; 586-588.

These meetings and presentations included one delivered by Mark Forkner after he had convinced the FAA AEG to delete any references to MCAS from the FSB Report and all related 737 MAX documentation in which he described the differences between the 737 NG and MAX, wherein he deliberately excluded MCAS. *See id.*, ¶¶ 462-475; DPA at A-12-14, ¶¶ 37-47; Indictment ¶¶ 26-34; *see also* Appendix 2, October 2017 Forkner Presentation.

The LOT/Boeing meetings described in the Complaint also include one that occurred after the crash of Lion Air Flight 610 and before the crash of Ethiopian Airlines Flight 302, during which time Boeing continued its pattern of misleading the FAA and Boeing's 737 MAX customers

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 6

concerning the operational scope of MCAS, falsely blamed the Lion Air pilots for causing the crash, falsely insisted that the 737 MAX was safe despite the fact that erroneous MCAS activation caused the crash, misled pilots concerning how they should respond to an MCAS malfunction, and, because of these false statements, fraudulently convinced LOT to take delivery another unsafe 737 MAX aircraft.  *See* DPA at A-14-15, ¶¶ 48-52; Compl. ¶¶ 570-585; Indictment ¶¶ 35-36; *see also* Boeing, *Boeing Statement on Lion Air Flight JT 610 Investigation*, November 21, 2018 (https://boeing.mediaroom.com/news-releases-statements?item=130333) (assuring the world of the 737 MAX's safety prior to the delivery of LOT's last 737 MAX but before the grounding); Yen Nee Lee, *Boeing didn't disclose possible fault in flight safety feature in Lion Air crash: WSJ*, CNBC, November 13, 2018 (https://www.cnbc.com/2018/11/13/lion-air-crash-boeing-withheld-information-on737-max-planes-wsj-says.html) (quoting a Boeing statement that it was "confident" in the safety of the 737 MAX after the Lion Air crash).

During this time, Boeing also purposefully lied in an effort to convince the FAA, other civil aviation authorities around the world, and Boeing's airline customers to continue to acquire, accept delivery of, and operate deadly aircraft.  *See* Compl. ¶¶ 201-206 (describing how after the Lion Air crash Boeing continued to mislead airlines and the FAA concerning the dangers of MCAS and how to respond it erroneous activation).[2]

Further compounding Boeing's fraud upon LOT, Boeing deliberately misled not only the FAA, but also the European Union Aviation Safety Agency (EASA), LOT's civil aviation regulator concerning MCAS, the safety of the 737 MAX generally, and the training necessary to properly operate the aircraft.  Indeed, as described in LOT's Complaint, EASA's involvement in certifying the 737 MAX for flight, and its reliance on the FAA, were regulated by an agreement between the U.S. and the EU on cooperation in the regulation of civil aviation safety and the associated FAA-EASA Technical Implementation Procedures for airworthiness and environmental certification (TIP), Rev.5 (FAA-EASA, 2015), which was the applicable document in effect at the time Boeing's fraud caused the FAA to certify the 737 MAX under the conditions Boeing sought.  *See* Compl. ¶¶ 185-87; *see also* European Union Aviation Safety Agency, *Boeing 737 Max Return to Service Report*, Jan. 27, 2021, p. 14 (https://www.easa.europa.eu/sites/default/files/dfu/B737_Max_Return_to_Service_Report.pdf). The agreement between the U.S. and the EU enabled Boeing during its meetings with LOT to

---

[2] *See also* Boeing, *Boeing Statement on Operations Manual Bulletin*, Oct. 28, 2018 (https://boeing.mediaroom.com/news-releases-statements?item=130327) (Boeing, after the Lion Air crash, falsely describing the problem with MCAS); Federal Aviation Administration, *Emergency Airworthiness Directive 2018-53-51*, Nov. 7, 2018, (https://rgl.faa.gov/Regulatory_and_Guidance_Library/rgad.nsf/0/83ec7f95f3e5bfbd8625833e0070a070/$FILE/2018-23-51_Emergency.pdf) (the FAA's incorrect Airworthiness Directive issued in reliance on Boeing's misleading description of MCAS)

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 7

directly promise LOT that the 737 MAX would be dual certified by the FAA and EASA while knowing that both certifications would be based on Boeing's deliberate falsehoods and material omissions. *See* Compl. ¶ 445; *see also, e.g.*, *id.* ¶¶ 251, 295, 437, 484.

In sum, while the DPA and Indictment describe in great detail the fraud Boeing perpetrated upon the FAA AEG and Boeing's airline customers generally, Boeing's fraud was not confined to the details of those two documents. The fraud that Boeing inflicted upon LOT was greater because LOT was relying on not only the misrepresentations Boeing made to the FAA AEG (and by extension EASA) and to Boeing's other airline customers and the public generally, but also on the dozens of specific lies Boeing told LOT.

### III.    LOT's Losses Arising from the 737 MAX Grounding

LOT operated Boeing's unsafe 737 MAX for months before the grounding, even taking delivery of additional 737 MAX after the Lion Air crash based on Boeing's lie that the 737 MAX was safe and did not cause the crash. LOT even executed a lease for additional 737 MAX aircraft during that time because it was duped by Boeing's lies and, like the rest of the world, had no way of knowing the truth. *See* Compl. ¶¶ 570-73; 589-92; 597-99. The aircraft delivered to LOT then were grounded for nearly two years (*see id.* at ¶ 227 (explaining that EASA grounded the 737 MAX for longer than the FAA)), and LOT's leases for nine additional 737 MAX aircraft, the use of which provided the basis for its profit and growth strategy (which Boeing knew) all were terminated. *See id.* at ¶¶ 230-45; 593-605. As a result, LOT lost hundreds of millions of dollars.

In fact, LOT engaged ICF, a global consulting firm with a renowned airline and aviation practice group to estimate LOT's losses. ICF determined that, based on the limited and preliminary data that it received from LOT thus far, LOT could substantiate at least $180 million in damages, excluding recoverable pre-judgment interest and attorneys' fees, a number that surely will grow if Boeing and LOT engage in formal litigation discovery.

### IV.    Boeing's Violations of the DPA and Bad-Faith Negotiations with LOT

It is against the above backdrop that you should evaluate Boeing's failure to negotiate with LOT in good faith. Prior to being forced to commence a legal action, Boeing offered to compensate only approximately one-fifth of LOT's actual losses, and the overwhelming majority of Boeing's offer was in the form credits that required LOT to make future purchases from Boeing, the company whose fraudulent conduct caused it lose hundreds of millions of dollars. Thus, either Boeing is failing to fulfill its obligation from the DPA to compensate its airline customers for their losses arising from Boeing's 737 MAX fraud, or the DPA should be re-opened to increase the amount that Boeing is required to pay its customers. Boeing should not be permitted to

CONDON FORSYTH

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 8

compensate some airline victims of its fraud fairly, while stiffing others, particularly LOT, which, as Boeing knew, had a sufficiently poor cash position that it was forced to lease rather than buy its 737 MAX aircraft, and thus has a greater need for cash. *See* Compl. ¶¶ 231-241.

To make matters worse, Boeing filed a motion to dismiss LOT's action (attached as Appendix 3), and in doing so breached another component of the DPA. Boeing argued, among other things, that LOT's Complaint should be dismissed because Boeing did not know the falsity of its statements relating to MCAS at the time they were made to LOT, that regardless such statements were legally permitted "puffery," and Boeing disclosed the existence and dangers of MCAS to LOT following the Lion Air crash. *See* Appendix 3, at ECF pp. 16-21. Boeing's contentions are false because Boeing admits in the DPA that Mark Forkner knowingly made false statements to airline customers in the Fall of 2016 (*see* DPA, at A-10-A-14, ¶¶ 31-47), and it cannot be disputed that LOT was one of these customers. *See generally*, Compl. Boeing also admits in the DPA that it continued to make false statements about the 737 MAX after the Lion Air crash. *See* DPA, at A-14-A15, ¶¶ 48-51.

By taking contrary positions in LOT's lawsuit against it, Boeing is in breach of its agreement in the DPA that it would not make any statement in any litigation "contradicting the acceptance of responsibility by [Boeing] or the facts described in the [DPA]." *See* DPA at 20, ¶ 32. Further, by filing a motion to dismiss, Boeing is undermining one essential purpose of the DPA: to ensure that its airline customers are justly compensated for the financial losses that Boeing's criminal conduct caused.

Boeing should not be allowed to get off scot-free for the very conduct it has admitted in the DPA. As the attorneys in the DOJ Fraud Section who secured Boeing's agreement to the DPA, we trust that you will take the necessary steps to ensure that Boeing complies with the obligations in in the DPA in order to avoid criminal prosecution. Accordingly, we respectfully request that you thoroughly examine Boeing's conduct described herein, its breaches of the DPA, and consider and determine what penalties Boeing's conduct merits, including re-opening the DPA to add to Boeing's customer airline compensation requirement. At a minimum, Boeing should be required to treat LOT in the manner it has treated its other airline customers, which would be consistent with the purpose and letter of the DPA.

CONDON FORSYTH

Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
U.S. Department of Justice
December 30, 2021
Page 9

\*       \*       \*

Please do not hesitate to contact us with any questions or comments.

Best regards,

Anthony U. Battista

cc:    Diana Gurfel Shapiro, Esq.
       Evan Kwarta, Esq.
       Mary Dow, Esq.
       Condon & Forsyth LLP