IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:21-CR-00005-O |
| THE BOEING COMPANY | |

**THE UNITED STATES OF AMERICA'S
SUPPLEMENTAL RESPONSE CONCERNING REMEDIES**

The United States of America (the "Government") and the representatives of eighteen victims of the Lion Air Flight 610 and Ethiopian Airlines Flight 302 plane crashes (the "Movants") have narrowed the dispute over available remedies in this case. Since the issuance of the Court's Order of October 21, 2022, determining Movants' status as lawful representatives of crime victims under the Crime Victims' Rights Act (CVRA), Dkt. 116 at 18, the Government has met with counsel for the Movants and expects to hold a conferral session with them on November 18, 2022. All crash victims' representatives have been invited to this meeting. Based on dialogue with the Movants' counsel, the Government does not oppose an arraignment of Boeing, although the nature of such an arraignment will need to be determined by the Court. Further, on a prospective basis, the Government intends to confer and hold meetings with victims' representatives in connection with certain decisions in this case, including at the point where the Government will assess Boeing's compliance with the terms of the Deferred Prosecution Agreement (DPA), and whether that compliance merits dismissal of the Criminal Information.

Three of the Movants' proposed remedies remain for this Court's consideration: (1) rejecting or modifying the DPA in order to strip Boeing of protections against prosecution, thereby allowing for the possibility of additional criminal charges related to Boeing's conduct as admitted in the DPA's Statement of Facts; (2) requiring the Government to disclose investigative materials to the Movants; and (3) referring "the Government's illegal behavior in reaching the DPA to appropriate investigative authorities." Dkt. 17; Dkt. 52 at 27. The Government has previously explained why neither the law nor this Court's supervisory powers authorize the first two proposed remedies (it has not disputed the Court's authority to grant the third). *See* Dkt. 58; Dkt. 60; Dkt. 62; Dkt. 73. But even if the Court had discretionary authority to grant those remedies, it should decline to impose any of the remedies sought by Movants for three additional reasons:

*First*, unraveling the DPA at this late date would impose serious hardships on the parties and the many victims who have received compensation under that agreement or are currently pursuing civil remedies. The DPA requires Boeing, within a span of only three years, to complete a variety of steps intended to compensate the victims and prevent future harms in exchange for the Government's agreement to defer prosecution. These include (1) paying $500 million to the beneficiaries of crash victims and approximately $1.7 billion to Boeing's 737 MAX airline customers, without any limitation on any of these individuals and entities' ability to seek further compensation from Boeing through civil litigation; (2) making significant factual admissions that bind the company in those civil proceedings; and (3) submitting to enhanced compliance requirements that are designed to ensure that violations never recur. In the nearly two years since the entry of the DPA, Boeing has been in compliance with its terms. If the DPA is reopened now, the results would be severe: the Government would lose its leverage to ensure that Boeing follows through with a variety of reforms that are critical to public safety and aimed at preventing future misconduct like that in the DPA from recurring in the future; and the Movants and other victims would potentially lose the benefit of Boeing's admissions in civil litigation and risk that any future civil judgments they might obtain are offset against the millions Boeing has paid them in reliance on the DPA. It is also possible that a breach of the agreement at this late date could leave the Government with no ability to seek any further criminal penalties—the opposite of what the Movants seek—and could make it significantly harder for the Government to negotiate similar agreements in the future. Under those circumstances, the public interest strongly favors allowing the DPA to run its course.

*Second*, the Government has acted in good faith and with the public interest in mind throughout this case. To the extent that the Court found that the Government failed to comply

with the CVRA by not conferring with the Movants prior to entry of the DPA, earlier failure to confer with the Movants was predicated on a good-faith assessment of whether the Movants qualified as crime victims under the CVRA.  Nonetheless, the Government acted with the crash victims' interests in mind, negotiating an agreement that served the public interest and required Boeing to make significant concessions to the victims.  The Government also has recently taken additional steps to address the applicability of the CVRA in this case; to prevent future misapplication of the CVRA in other cases; and, as a prospective policy matter, to afford victims and others significantly harmed by crime even more consideration than what is required under the CVRA.

*Third*, no extenuating circumstances justify the extraordinary relief the Movants seek here, including their request to refer prosecutors to "investigative authorities."  Indeed, to the extent any investigation of the Government's actions in this case is appropriate, the CVRA tasks the Department of Justice with enforcing compliance with the statute, and the Department is well-equipped to handle any alleged misconduct internally.  *See* 18 U.S.C. § 3771(f); 28 C.F.R. § 45.10.

**I.      Reopening The DPA At This Late Date Would Impose Serious Hardships On Everyone Involved, Including The Victims.**

The CVRA's text reflects Congress's overarching concern for both speed[1] and finality[2] in litigating and resolving claims under the statute in order to appropriately balance the rights of victims against the rights of criminal defendants and the public.  Those same principles are fundamental to our criminal justice system as a whole.  *Cf. Calderon v. Thompson*, 523 U.S. 538,

---

[1] *See* 18 U.S.C. § 3771(d)(3) (district court to rule on a crime victim's motion "forthwith"); *id.* (appellate court to rule within 72 hours, absent a stipulation between litigants); *id.* (no stay or continuance of proceedings "for more than five days for purposes of enforcing [the CVRA]").

[2] *See* 18 U.S.C. § 3771(d)(5) (ruling out new trials and, for CVRA movants who fail to act quickly, any motion to re-open a defendant's plea or sentence).

555 (1998) ("Finality is essential to both the retributive and the deterrent functions of criminal law."); *Doggett v. United States*, 505 U.S. 647, 654 (1992) (explaining the risks attending "unreasonable delay between formal accusation and trial").

Unraveling the DPA at this late date would be inconsistent with those principles and would undermine important interests of the parties, the victims, and the public at large. Under the DPA, the Government required Boeing to accept criminal responsibility for its actions in connection with making false and misleading statements to the FAA Aircraft Evaluation Group about a new system on 737 MAX aircraft and agree to take a variety of steps over a three-year period to compensate the victims and prevent future violations. Since it was entered, Boeing's airline customers received $1.7 billion in compensation, and the heirs, relatives, and beneficiaries of those who died in the Lion Air and Ethiopian Airlines crashes have received compensation from a $500 million fund that Boeing established—all without limiting the ability of those same victims to pursue additional compensation in civil actions against the company. The DPA also required Boeing to make a variety of factual admissions set forth in the Statement of Facts, admissions that Boeing agreed to be bound by in civil proceedings against the company. Because of the DPA, Boeing has also undertaken an extensive overhaul of its compliance and reporting obligations that was designed to protect public safety and prevent future violations of the U.S. fraud laws by significantly improving the manner in which Boeing interacts with government agencies, regulators, and airline customers.

Accordingly, in the nearly two years since the entry of the DPA, the parties have "built up expectations based on over more than 20 months of experience with the terms of" the DPA. *Hefner v. New Orleans Pub. Serv., Inc.*, 605 F.2d 893, 898 (5th Cir. 1979). The DPA is now two-thirds

of the way through its lifespan, and most of the obligations it imposes on Boeing are now fully or substantially met.

Under those circumstances, there are risks and adverse consequences for all involved—including the victims—to reopening the DPA in order to revisit the issue of Boeing's criminal liability.  The deferral of prosecution of Boeing pursuant to the DPA is the lynchpin of the entire agreement.  If that is undone, it would have negative consequences for the parties and the public.  The Government would lose its leverage to ensure that Boeing follows through with the regulatory, compliance, and other reforms that are critical to preventing future violations that could endanger public safety.  The Movants and other victims could lose the benefit of Boeing's admissions, including in civil suits they have filed against the company.  And they likely would not be able to take advantage of the DPA provision that shields the millions of dollars they have already received from being used to offset any future civil recovery against Boeing.  Granting the relief requested by the Movants, therefore, would risk making the victims significantly worse off than they are now.

The Movants' requested relief could harm the public interest in another way.  Once the DPA went into effect, it arguably constituted an agreement against any further prosecution relating to any of the conduct described in the Statement of Facts attached to the DPA or the Information filed pursuant to the DPA upon compliance by Boeing with the DPA's terms and payment of the families of the individual victims from the compensation fund over the course of the agreement.  *See United States v. Garcia*, 519 F.2d 1343, 1345 (9th Cir. 1975) (holding that the Government may not constitutionally prosecute a defendant in contravention of the terms of an executed DPA where defendant complies with agreement's terms); *see also United States v. Hicks*, 693 F.2d 32, 33 (5th Cir. 1982) (implying the same).  Because so much of the DPA's term has now passed, and

Boeing has so significantly complied with its obligations under that agreement (including completing payments to victims), Boeing could argue that any attempt by the Government to pursue criminal charges would constitute a material breach of the agreement. *See, e.g.*, Dkt. 52 at 27 (Movants making this suggestion). Accordingly, as a matter of equity and discretion, Movants' requested remedies are unwarranted.

Finally, the Movants' request poses "enormous practical consequences for the government's ability to negotiate future settlements." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 750 (D.C. Cir. 2016) (citation and internal quotation marks omitted). The cloud of uncertainty that would be created over future DPAs "could have potentially far-reaching consequences for prosecutors' ability to pursue—and fashion the terms of—DPAs," *id.* In short, the Movants' request to unravel the DPA at this late date will, if the motion succeeds, diminish the effectiveness of DPAs—an "important tool in the government's efforts to hold defendants accountable" and to provide justice for victims. *Id.*

For these reasons, reopening the DPA is not in the public interest. It will hamstring the Government's ability to protect the public in this case and future cases and leave Boeing's victims—including the Movants themselves—significantly worse off. Even if this Court determines that it has authority to grant the Movants' requested relief, therefore, it should exercise its discretion to deny that request.

## II. The Government Acted In Good Faith.

Additionally, the Court should decline to grant the Movants' requested remedies because the Government has pursued the investigation and prosecution of this case in good faith. Consistent with general remedial principles, any remedy for the CVRA issue identified in the Court's earlier opinion "should be appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984); *see id.* (cautioning against remedies for improper court closure that "would be a

windfall for the defendant, and not in the public interest"). One of the principal inquiries a court makes in determining the appropriateness of a remedy—especially when exercising inherent powers—is whether the party "acted in bad faith" such that deterrence is necessary. *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998) (internal quotation marks omitted); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

The government has acted in good faith here. *First*, the terms of the DPA itself dispel any doubt about the Government's good faith in attempting to obtain justice for the families of the crash victims and for the public at large. The agreement properly "manifest[ed] the Executive's consideration of factors such as the strength of the government's evidence, the deterrence value of a prosecution, and the enforcement priorities of an agency." *Fokker Servs.*, 818 F.3d at 744. It avoided litigation risk. *See, e.g.*, *United States v. Forkner*, No. 21-cr-268, Judgment of Acquittal, ECF #193 (N.D. Tex. Mar. 23, 2022). And by deferring prosecution only if Boeing takes extraordinary steps to compensate the victims of the Lion Air and Ethiopian Airlines disasters and to prevent future ones, the DPA secured numerous benefits for the public, including the Movants and other victims. For example, the agreement:

- Requires Boeing to pay a $243.6 million fine; $1.7 billion to its airline customers; and $500 million to the heirs, relatives, and beneficiaries of those who died in the two airplane crashes—including large payments to the Movants—without affecting the victims' ability to recover additional compensation in civil proceedings;

- Requires Boeing to admit the facts contained in the DPA's Statement of Facts and not to contradict them in public statements or other proceedings; and

- Commits Boeing to reform its interactions with the FAA, other government regulators, and its customers in order to protect public safety and prevent similar violations from recurring in the future.

*Second*, although the Government, at the time of the entry of the DPA, believed the Movants were not crime victims under the CVRA, and therefore did not consult with them before the DPA was filed, it engaged with the Movants in good faith after they filed their motions and continues to do so. Since filing the Information, for example, the Government has respected the Movants' other applicable CVRA rights. *Compare, e.g.*, 18 U.S.C. § 3771(a)(9) (the right to be informed in a timely manner of a deferred prosecution agreement), *with* Dkt. 56-1 at 1-61 (sworn declarations of Movants acknowledging that they received virtually immediate notice of the DPA). It has treated them "with fairness and with respect for [their] dignity," 18 U.S.C. § 3771(a)(8), in its briefing and in its interactions with them—such as during meetings with the Attorney General and other high-level Department officials. And those efforts continue: following this Court's recent decision confirming the Movants' status as crime victims, Government attorneys have met with counsel for Movants; are in the process of planning a meet and confer with all crash victims' representatives, as discussed above; and plan to confer with the crash victims' representatives about the government's evaluation of Boeing's compliance with the DPA's terms as the end of three-year term approaches.

*Third*, to protect potential victims in future cases, the Department has recently revised its Attorney General Guidelines for Victim and Witness Assistance ("Attorney General Guidelines") to refine and expand Department responsibilities to victims as well as to those other persons or entities who may fall outside the statutory definition of a victim, but were still significantly, even if indirectly, harmed by the criminal conduct under investigation, ultimately charged, or addressed

in plea agreement or case resolution agreement. The revised Attorney General Guidelines now require Department personnel to make best efforts to accord rights to victims earlier in the criminal justice process, as early in the criminal justice process as is feasible and appropriate, including prior to the execution of a non-prosecution agreement, deferred prosecution agreement, pretrial diversion agreement, or plea agreement. Attorney General Guidelines, Art. III.C.[3] Additionally, the revised Attorney General Guidelines encourage prosecutors to provide those significantly, even if indirectly, harmed persons or entities with information and assistance, within available resources to the extent reasonable, feasible, and appropriate. Attorney General Guidelines, Art. III.E. This assistance includes: information about the status of an investigation; an opportunity to communicate with Department personnel responsible for the prosecution prior to the entry of a non-prosecution agreement, deferred prosecution agreement, pretrial diversion agreement, or plea agreement; information about public court proceedings and potential opportunities for participating; and consultation with prosecutors regarding any agreement that would require an offender to pay restitution or other compensation to, or for the benefit of, those significantly harmed persons or entities. Attorney General Guidelines, Art. III.E. These revised guidelines also ensure that all Department of Justice employees who come into contact with victims and witnesses in the course of their duties shall receive training on these guidelines.

      The Movants point to inaccurate statements by the Victims' Rights Ombudsman to the victims' families regarding the existence of an investigation into Boeing as evidence of the Government's bad faith, but those misstatements do not indicate that the prosecutors assigned to this case had unclean hands. The Ombudsman's statements were the product of a regrettable and

---

[3] *See* Attorney General Guidelines for Victim and Witness Assistance (2022), *available at* https://www.justice.gov/ag/page/file/1546086/download (last visited Nov. 11, 2022).

inadvertent internal miscommunication at the Department—not an intentional or reckless attempt to mislead the crash victims as to the existence of an investigation into Boeing. *See Dahl v. Pinter, 787* F.2d 985, 988 (5th Cir. 1986), *vacated on other grounds,* 486 U.S. 622 (1988) (noting that "inadvertent act[s]" do not provide grounds for an "unclean hands" argument). Moreover, the Ombudsman's statements have no bearing on whether the attorneys involved in prosecuting and supervising the prosecution of this case acted in bad faith when they concluded that the crash victims were not "crime victims" under the CVRA and thus declined to consult with them prior to filing the DPA. The Ombudsman sits, after all, within a non-litigating and administrative branch of the Department of Justice and is not responsible for making decisions related to the prosecution or disposition of criminal cases.

At all times, the Government has endeavored to do right by the victims in this case. It has listened to them at the highest levels of the Justice Department and has taken their views into account. It negotiated a DPA that protects their interests in many ways and that the Movants themselves have benefited from. The Government continues to work on their behalf in good faith to achieve justice in this case.

### III.   Referral To Investigative Authorities Is Not Warranted

Finally, there is no need to refer the prosecutors in this case to investigative authorities. Congress provided in the CVRA that the Department of Justice would be the one responsible for "investigating complaints relating to the provision or violation of the rights of a crime victim" and imposing sanctions on those who "willfully or wantonly fail to comply with provisions of Federal law pertaining to the treatment of crime victims." 18 U.S.C. § 3771(f)(2)(A), (D). And the Department of Justice has established the regulatory oversight that Congress envisioned when it came to the CVRA. *See* 28 C.F.R. § 45.10. These regulations provide that those believing that Department of Justice employees have violated the CVRA may file a complaint with the

Department of Justice Victims' Rights Ombudsman,[4] who will then adjudicate the complaint and, if warranted, recommend disciplinary action. 28 C.F.R. § 45.10(c)-(e). Accordingly, the Department of Justice has the tools and means to handle any investigation internally and is in fact the very entity to whom this Court would refer the events of this case, given the exclusive administrative scheme that Congress established in the CVRA.

## IV.   Conclusion

For these reasons, and the reasons stated in the Government's prior briefing, this Court should decline to grant the remaining remedies that the Movants seek.


Respectfully submitted,

| | |
|---|---|
| KENNETH A. POLITE, JR. | CHAD E. MEACHAM |
| Assistant Attorney General | United States Attorney |
| Criminal Division | Northern District of Texas |
| United States Department of Justice | |
| | |
| By: *s/ Kenneth A. Polite, Jr.* | By: *s/ Chad E. Meacham* |
| Assistant Attorney General | United States Attorney |
| Pennsylvania Bar No. 326446 | Texas Bar No. 00784584 |
| kenneth.polite@usdoj.gov | chad.meacham@usdoj.gov |
| | |
| United States Department of Justice | United States Attorney's Office |
| Criminal Division | Northern District of Texas |
| 950 Pennsylvania Ave., NW | 801 Cherry Street, 17th Floor |
| Washington, D.C. 20530 | Fort Worth, TX 76102 |
| 202-514-2000 | 817-252-5200 |

---

[4] The member of the Victims Rights Ombudsman's office who was initially involved with this case has since retired from the Department of Justice.

**Certificate of Service**

       I certify that on November 11, 2022, I electronically filed this pleading with the clerk of the court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system, which will send a notification of electronic filing to notify counsel of record for Defendant Boeing and the Movants.

                                              *s/ Jerrob Duffy*
                                              Jerrob Duffy
                                              Deputy Chief, Fraud Section
                                              New York Bar No. 2803559