**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **No. 4:21-CR-5-O** |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**THE BOEING COMPANY'S SUPPLEMENTAL RESPONSE REGARDING REMEDIES
IN RESPONSE TO COURT ORDER [DOCKET NO. 123]**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 5

I.      The Law Does Not Authorize the Relief Representatives Seek. ...................................... 6

II.     The Requested Remedies Violate Settled Principles of Contract Law and Due
        Process. ........................................................................................................................ 9

III.    The Requested Remedies Are Contrary to Prosecutorial Discretion and the
        Separation of Powers. .................................................................................................. 12

IV.     An Arraignment and Bond Hearing Are Unwarranted. ................................................... 14

CONCLUSION................................................................................................................. 18

CERTIFICATE OF SERVICE .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Allen*,
701 F.3d 734 (5th Cir. 2012) ...................................................................8

*Bear Lake Reserve Owners Assoc., Inc. v. Centex Homes*,
2014 WL 12577073 (N.D. Tex. June 30, 2014) ..................................10

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)...............................................................................12

*Lynch v. United States*,
292 U.S. 571 (1934)..................................................................................9

*United States v. Bean*,
564 F.2d 700 (5th Cir. 1977) ........................................................3, 4, 6, 7

*United States v. Castaneda*,
162 F.3d 832 (5th Cir. 1998) .............................................................9, 11

*United States v. Citgo Petroleum Corp.*,
2:06-cr-00563-1 (S.D. Tex. 2006) ........................................................8

*United States v. Clem*,
422 F. Supp. 3d 1105 (N.D. W. Va. 2019) ...........................................6

*United States v. Correa-Ventura*,
6 F.3d 1070 (5th Cir. 1993) .................................................................14

*United States v. Diaz-Garcia*,
26 F. App'x 615 (9th Cir. 2001) .........................................................11

*United States v. Fokker Services, B.V.*,
818 F.3d 733 (D.C. Cir. 2016)...............................................3, 6, 7, 9, 12

*United States v. Garcia*,
519 F.2d 1343 (9th Cir. 1975) ............................................................11

*United States v. Goodrich*,
493 F.2d 390 (9th Cir. 1974) ..............................................................11

*United States v. Hoffman*,
2014 WL 5040721 (E.D. La. Oct. 8, 2014) ........................................11

*United States v. HSBC Bank USA, N.A.*,
    863 F.3d 125 (2d Cir. 2017)..........................................................3, 6, 7, 12

*United States v. Moore*,
    37 F.3d 169 (5th Cir. 1994) ..........................................................17

*United States v. Texarkana Trawlers*,
    846 F.2d 297 (5th Cir. 1988) ..........................................................10

**Federal Statutes**

18 U.S.C. § 3141(a) ..........................................................16

18 U.S.C § 3142 ..........................................................16

18 U.S.C. § 3142(a) ..........................................................15

18 U.S.C. § 3771(a)(2)-(3) ..........................................................15

18 U.S.C. § 3771(a)(7) ..........................................................15

18 U.S.C § 3771(d) ..........................................................8

18 U.S.C. § 3771(d)(6) ..........................................................4, 12

**Rules**

Fed. R. Crim. P. 5 ..........................................................16

Fed. R. Crim. P. 5(d) ..........................................................16

Fed. R. Crim. P. 6(e) ..........................................................13, 14

Fed. R. Crim. P. 9(c)(3) ..........................................................16

Fed. R. Crim. P. 10 ..........................................................14, 16

Fed. R. Crim. P. 11 ..........................................................4

Fed. R. Crim. P. 11(e) ..........................................................7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   **No. 4:21-CR-5-O** |
| THE BOEING COMPANY, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

<u>**THE BOEING COMPANY's SUPPLEMENTAL RESPONSE REGARDING REMEDIES
IN RESPONSE TO COURT ORDER [DOCKET NO. 123]**</u>

The Boeing Company ("Boeing" or the "Company") submits this supplemental brief regarding remedies in response to this Court's order allowing further briefing.  Dkt. 123.  To avoid repeating prior arguments, Boeing addresses putative remedies and arguments raised by the Crime Victims' Representatives[1] ("Representatives") in reply briefing or at hearings, to which Boeing has not previously had an opportunity to respond in a written filing.

**PRELIMINARY STATEMENT**

Almost two years ago, Boeing entered into a deferred prosecution agreement ("DPA") with the Department of Justice ("DOJ" or the "Government") following a lengthy investigation.  In that agreement, Boeing accepted responsibility for the conduct of two of its employees, and obtained finality in return for giving up its rights to indictment and speedy trial; paying substantial sums to the Government, among others; and submitting to strict and extensive oversight by the

---

[1] Boeing adopts the terminology this Court used in its October 30, 2022 Order to refer to the Representatives, but expressly preserves all objections and reserves all rights to appeal any and all of the Court's rulings made in the course of these proceedings, including with respect to this Court's determination of the Representatives' standing under the Crime Victims' Rights Act and the process it used to reach that determination.

Government over the agreement's three-year term.  Boeing has honored its obligations under the agreement scrupulously for nearly two years, including making all required payments, complying with its reporting obligations to the Government, and devoting substantial resources to enhancing its compliance program.

More than eleven months after the DPA was executed and publicly announced, the Representatives asserted in this Court for the first time that they were crime victims under the Crime Victims' Rights Act ("CVRA"), and that the Government had failed to notify them and consult with them as that statute requires.  In several briefs submitted to the Court, the Representatives have contended that the Government's failure of notice and consultation entitles them to a range of remedies, including asking this Court to withhold approval of the DPA; to excise provisions of the DPA with which the Representatives disagree; to order the Government to reconsider the charges that should be brought; and to order arraignment proceedings.  These remedies share two basic characteristics.  First, they bear little relationship to, and go far beyond, the rights of notice and consultation to which crime victims are entitled under the CVRA.  Second, they are in substance and effect remedies that the Representatives seek against *Boeing*—a party that had no responsibility over the Government's decisions with respect to crime victims under the Act, and no authority over whether it notified or consulted with the Representatives.  Not surprisingly, none of the remedies sought by the Representatives as to Boeing has ever been granted by any court, anywhere, as relief for a violation by the Government of the CVRA.

In the collateral proceedings in this Court that have followed the Representatives' motion, (Dkt. 52, as amended), the Government has both confirmed Boeing's compliance with its obligations under the DPA and repeatedly stated that it brought the charge it believed it could prove beyond a reasonable doubt following its lengthy investigation.  Dkt. 95 at 58–62, 80, 93,

115.  For its part, Boeing—in addition to taking all actions necessary to comply with the DPA—has acknowledged its responsibility for the accidents in other fora and has tried to learn from the accidents, including by making broad and deep changes at many levels of the Company designed to enhance the safety and quality of its products.

Boeing profoundly regrets the accidents and the unspeakable losses the Representatives have suffered, and it recognizes that the families of those lost in the accidents have the right to pursue justice as they see it, which they have done in a wide range of venues over the past three years.  But the Representatives are not entitled to the relief they seek here.  An investigated party has the right to finality and to the benefits of a resolution it negotiated with the Government, and allowing those expectations to be upended here—based on a purported violation by the Government as to the Representatives, over which Boeing had no control—would be unprecedented, unworkable, and inequitable.  The Court should reject the Representatives' request for four reasons.

**First,** none of the requested remedies has a basis in law.  Boeing has argued that the remedies the Representatives seek with respect to the DPA or Boeing are not available under the CVRA, nor are they authorized by the Court's supervisory power or the Speedy Trial Act.  *See generally* Dkt. 62.  In response, the Representatives raised several arguments, all of which depend on the proposition that the Court must "approve" the terms of a DPA under the Speedy Trial Act.  But uniform appellate case law has rejected the argument that courts have authority under that Act to reject a DPA based on a disagreement with its terms.  *See United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 137–39 (2d Cir. 2017); *United States v. Fokker Services, B.V.*, 818 F.3d 733, 743–45 (D.C. Cir. 2016).  The Representatives point to the Fifth Circuit's decision in *United States v. Bean*, 564 F.2d 700 (5th Cir. 1977), which involved review of a plea agreement, to argue that

this Court can reject a DPA much as it could reject a plea agreement.  But *Bean* makes clear that a district court's authority to accept or reject plea agreements comes from the explicit text of Rule 11, and that that power is rooted in the court's sentencing authority.  *Bean*, 564 F.2d at 701–04. Here, the DPA does not involve a plea or sentencing, Rule 11 does not govern, and *Bean* does not apply.

*Second,* granting the Representatives' requested relief as to Boeing would be contrary to well-established principles of contract law and due process, and in practice, would prove unworkable.  Ordering the relief that the Representatives seek would be particularly inappropriate here, where Boeing has fulfilled its obligations to date under the DPA, the request comes in a collateral proceeding in which Boeing is not even the primary respondent, and the trigger for reopening the agreement would be a claimed violation of the CVRA *by the Government,* based on the *Government's* alleged failure to comply with obligations over which Boeing had no authority or control.[2]

*Third,* separation of powers principles prohibit the remedies that the Representatives seek. A central premise underlying the CVRA is that no action under that Act may impair the Government's exercise of prosecutorial discretion.   18 U.S.C. § 3771(d)(6).    Under that provision—rooted in core principles of separation of powers—the Executive has the sole discretion regarding whether to initiate criminal charges and what charges to bring.  While the CVRA provides a limited right for victims to confer with the Government, here the Representatives

---

[2] The potential implications of a ruling that takes a broad view of CVRA standing and grants remedies that would materially affect the terms of a DPA are highlighted by the recent motion filed by LOT—a Boeing airline customer that is suing Boeing in another forum—to intervene in these proceedings as a CVRA victim based on its commercial dispute with Boeing arising from the MAX grounding.  A decision to grant the Representatives' relief would ensure regular challenges to DPAs by third parties who are already pursuing more traditional avenues of redress in other fora.

seek to supplant the role of the Executive by asking this Court to withhold approval of the DPA, to modify its terms, and to give the Representatives the right to weigh in on the charges they believe the Government should have brought, as well as the structure of any alternative resolution.

*Finally,* contrary to the Representatives' arguments, neither an arraignment nor a bond hearing is legally or procedurally required or appropriate in this matter, and at this point in the proceedings, ordering such a hearing would be unprecedented and would not serve the purposes for which such proceedings are intended.

## ARGUMENT

Boeing has previously briefed the lack of legal support for the types of remedies sought by the Representatives, *see* Dkt. 62, and, consistent with this Court's order, will not repeat its prior arguments here.  In their reply briefs, the Representatives shift from seeking a complete rejection of the DPA to requesting that the Court excise the Agreement's Conditional Release from Liability provision, Dkt. 71 at 25–26, and "flag several questionable provisions in the DPA for further negotiation by the parties—and conferral with the victims' families—before finally deciding whether to approve the DPA." [3]  Dkt. 65 at 2.  The Representatives' requested relief accords neither with law nor settled contract principles, and is inconsistent with constitutional principles of separation of powers and due process.

---

[3] Notably, the Representatives would leave untouched provisions of the DPA establishing the crash victims' relief fund—presumably because they support those provisions.  Dkt. 65 at 17–20.  The Representatives assert that their approach "would not raise any question about the DPA's victim compensation fund since those funds are not implicated in the current proceedings," and they make clear that they believe they have no obligation to return the funds.  *See id.* at 2, 23.  But the Representatives offer no explanation for how such a selective amendment to the DPA could possibly accord with principles of contract law, much less with the separation of powers or due process—particularly when the reopening of these provisions would operate to the detriment of Boeing, the party that did not violate the CVRA.

## I.     The Law Does Not Authorize the Relief Representatives Seek.

In their reply briefs, the Representatives argue that the Speedy Trial Act vests this Court with authority to review the substantive terms of a DPA through the Act's "with the approval of the court" language.  Dkt. 65 at 11–12.  That argument has been squarely rejected by the two appellate courts to have considered it.  *HSBC*, 863 F.3d at 139 (declining to "interpret [the Speedy Trial Act's] vague 'approval' requirement as imbuing courts with an ongoing oversight power over the Government's entry into or implementation of a DPA"); *Fokker Services*, 818 F.3d at 743 (explaining that "'approval of the court' authority does not permit a court to withhold approval of a motion to exclude time under a DPA based on" the belief that "more serious charges should be brought against the defendant").  The Representatives cite *United States v. Clem*, 422 F. Supp. 3d 1105 (N.D. W. Va. 2019), in support of their argument, but this decision is not good law because it relied on the district court's reasoning in *HSBC*, which was subsequently overturned by the Second Circuit.  Dkt. 65 at 11.  In any event, *Clem* provides no support for the Representatives' claimed remedies.  While the district court in *Clem* did say it was "reject[ing]" the DPA, the remedy ordered was to deny the Government's motion for a continuance during the term of the DPA.  422 F. Supp. 3d at 1116.  The *Clem* court did not "flag" questionable provisions of the DPA and direct the Government to renegotiate, let alone excise any provisions.  Here, by contrast, the relief that the Representatives seek has nothing to do with whether time is excluded pursuant to the Speedy Trial Act, a decision this Court made long ago and which the Representatives have not sought to reopen.

The Representatives also rely on the Fifth Circuit's decision in *United States v. Bean*, 564 F.2d 700 (5th Cir. 1977), and its progeny to argue that *Fokker* (and presumably *HSBC*) is inapplicable in the Fifth Circuit, *see* Dkt. 65 at 13–14, and that the Court has authority to withhold approval of the DPA as, "in effect," imposing "too light a sentence," *id.* at 17 (quoting *Bean*, 564

F.2d at 704).  But as the Representatives concede, *Bean* involves the court's authority to approve or reject a plea agreement, not a DPA.  *Bean* in fact undermines the Representatives' argument, because the legal bases upon which *Bean* expressly relied for rejecting a plea agreement are not present for a DPA.  Specifically, *Bean* relied on the fact that Rule 11 of the Federal Rules of Criminal Procedure explicitly states that "the court may accept or reject the [plea] agreement," *Bean*, 564 F.2d at 702 (quoting Fed. R. Crim. P. 11(e)), and it noted that the court's authority to decide whether to accept a plea was lodged in the judicial authority to impose sentence, *see id.* at 703 ("The trial court's control over the length of sentence is analogous to that in plea bargains since in plea bargaining the defendant is ultimately concerned with the duration of imprisonment.").  These key underpinnings of the Fifth Circuit's reasoning are not present here.  With a DPA, there has been—and will be—no sentencing.  If Boeing complies, the Government dismisses the charges.  If there is a breach of the DPA, the Government may in its discretion elect to prosecute.  Either way, Boeing's obligations and protections under the DPA are a matter of contract with the Government.  Accordingly, the Court's power over sentencing is not implicated, and *Bean* provides no authority for the Court to disrupt the DPA's terms or to disregard the persuasive reasoning of *Fokker* and *HSBC*.

Finally, even if the Representatives were correct that the Speedy Trial Act permits courts to revise the terms of a DPA, that relief would be unavailable in this case, because the Representatives waited nearly a year after the Court granted the exclusion of time under that Act before bringing their motion under the CVRA, despite public statements from their attorneys and representatives confirming they were immediately aware that the DPA had been filed.  In granting the exclusion of time, the Court necessarily granted whatever approval of the DPA is permitted under that Act.  The Representatives do not identify any authority in the CVRA, the Speedy Trial

7

Act, or any other source of law for a court to revisit such a determination once made—let alone almost a year later, after the parties have substantially performed. And as Boeing has noted, the CVRA makes clear that any victim concerns should be raised promptly and resolved immediately to avoid undue delay in criminal proceedings.[4]  *See* Dkt. 62 at 13–14; 18 U.S.C § 3771(d).

The Representatives in reply contend that the Fifth Circuit in *In re Allen*, 701 F.3d 734, 735 (5th Cir. 2012), "summarily rejected the argument that the courts should read some sort of implicit time limit into the CVRA" and has "interpreted the CVRA's time 'limitations' language as only covering efforts to re-open a plea or sentence." Dkt. 71 at 23.  But this overreads *Allen*, which is inapplicable here*.*  The *Allen* court made clear that its decision applied "only in light of the history of these specific proceedings," which involved an assertion of CVRA rights *before* the defendant was sentenced following his conviction after a jury trial.  *See In re Allen*, 701 F.3d at 735 & n.1.  The case did not involve a DPA; nor did it involve an attempt to reopen an agreed-upon resolution almost a year after the presiding court had granted whatever approval was necessary for the resolution to take effect.  And the petitioners in *Allen* were not seeking the broad remedies infringing on prosecutorial discretion that the Representatives request here.  *See generally* Community Members' Final Reply, ECF No. 818, Sept. 12, 2012, *United States v. Citgo Petroleum Corp.*, 2:06-cr-00563-1 (S.D. Tex. 2006) (*Allen* petitioners sought the ability to make a victim impact statement at sentencing, to file a memorandum regarding possible restitution, and to request that the Probation Office update its presentence report).  Thus, *In re Allen* provides no support for the Representatives' position.

---

[4] The doctrine of laches should also bar the remedies the Representatives seek.  *See* Dkt. 62 at 13–15.  Though Representatives argue that laches does not apply to criminal defendants, Dkt. 65 at 20–21, their cases involve a defendant who is attempting to assert that equitable defense against the Government, whereas here Boeing is invoking it in relation to the relief requested in this collateral proceeding with the Representatives.

## II.   The Requested Remedies Violate Settled Principles of Contract Law and Due Process.

The remedies requested by the Representatives with respect to the DPA also should be rejected because they violate basic principles of contract law.  A DPA, like a non-prosecution agreement ("NPA"), is contractual in nature—a *voluntary* agreement between the DOJ and an investigated party, for which each side gives consideration.[5]  *See* Dkt. 4 at 1–2, 26, 45 (noting that Boeing is voluntarily agreeing to the terms of the DPA and waiving Speedy Trial rights, indictment, and certain objections and defenses).  *See also United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998) (interpreting an NPA in accordance with general contract principles); *Fokker*, 818 F.3d 733 at 738 (finding that DPAs and NPAs both require adherence to the agreement's conditions).  The Representatives here seek to strike the core consideration that the Government offered in negotiating the DPA, on which Boeing relied when it entered the agreement.  But Boeing is a private party that cannot be forced to enter into a new agreement or to accede to a DPA that has been amended to remove key elements on which Boeing relied.  *See Lynch v. United States*, 292 U.S. 571, 579 (1934) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.").  Doing so would be contrary to black letter principles of contract law and would violate due process.

---

[5] The Representatives argue that the Government's violation of the CVRA renders the DPA illegal, and that an illegal agreement cannot be enforced. *See e.g.*, Dkt. 71 at 35–36. But the cases they cite, including those involving plea agreements, are inapposite here.   The Representatives cannot point to a single provision of the DPA that is contrary to law, and they cite no provision of the CVRA or case law holding that a violation of victims' rights under the Act renders a DPA illegal. The contract reflected in the DPA is not illegal, even if the Government entered into it without first according the Representatives their rights under the CVRA.  And Boeing was and is entitled to rely on that contract, especially since Boeing had no authority over the Government's actions or non-actions with respect to the CVRA.

If this Court were to grant the Representatives' request that the Court reject the DPA or order that certain provisions of the agreement be excised and renegotiated, it is unclear what steps would follow. Given that Boeing cannot be forced to accept new terms, granting the Representatives' relief would instead seem to require that the DPA be set aside in its entirety. *See, e.g.*, *Bear Lake Reserve Owners Assoc., Inc. v. Centex Homes*, 2014 WL 12577073, at *7 (N.D. Tex. June 30, 2014) ("Material breach of any part of a contract that is considered whole excuses performance of the rest of the contract."). In this situation, that means the parties would have to be returned to their pre-contract positions. *See United States v. Texarkana Trawlers*, 846 F.2d 297, 304–05 (5th Cir. 1988) ("Recission . . . attempts to restore the parties to the rescinded contract to the status quo that existed before the contract was formed."). But where, as here, Boeing has already performed its obligations under the DPA for nearly two years, trying to restore the parties to the *status quo ante* would necessarily entail protracted and uncertain proceedings.

Since it entered into the agreement in January 2021, Boeing has expended significant resources to ensure full compliance with its obligations under the DPA. During the first year alone, Boeing paid $500 million to a fund for the families of those who died in the accidents, as well as a $243.6 million criminal monetary penalty; in addition, it has made substantial payments to airline customers in satisfaction of its obligation to provide $1.7 billion of compensation to them over the life of the DPA. *See* Dkt. 4 at 9–14. The DPA also requires Boeing to undertake continuous review and assessment of its compliance program, focusing on specific elements detailed in the DPA. This has included retaining third-party compliance experts to independently assess Boeing's compliance program and to provide ongoing guidance on how the Company can continue to enhance its systems and controls. The DPA also imposes enhanced reporting requirements above and beyond what DOJ has traditionally required of companies entering into such agreements. *See*

Dkt. 4 at Attachments C (Corporate Compliance Program) and D (Enhanced Reporting Requirements). As part of those requirements, Boeing promptly reports potential fraud-related issues to the Government, is separately required to complete three annual reviews of its compliance program and internal controls, and engages in quarterly meetings with DOJ regarding those reviews. *See* Dkt. 4 at 9. Boeing has also invested heavily in recruiting, promoting, and retaining experienced compliance professionals.

Boeing has the right to finality and to the other benefits of the resolution to which the parties agreed. Due process prevents the Government from changing the terms or failing to perform its side of the agreement after extracting performance from the counterparty. *Castaneda*, 162 F.3d at 835–36 (under the "general principles of contract law" applicable to non-prosecution agreements, "if a defendant lives up to his end of the bargain, the government is bound to perform its promises."); *United States v. Garcia*, 519 F.2d 1343, 1345 (9th Cir. 1975) (same for deferred prosecution agreements); *United States v. Hoffman*, 2014 WL 5040721, at *3 (E.D. La. Oct. 8, 2014) ("Like contracts between private parties, agreements executed during a criminal investigation or prosecution between the government and a witness, target, or accused are interpreted in accordance with general principles of contract law."); *see also United States v. Goodrich*, 493 F.2d 390, 393 (9th Cir. 1974) ("[W]hen the prosecution makes a 'deal' within its authority and the defendant relies on it in good faith, the court will not let the defendant be prejudiced as a result of that reliance."); *United States v. Diaz-Garcia*, 26 F. App'x 615, 617 (9th Cir. 2001) (same for pre-trial stipulation between government and defendant). The same due process considerations that bind the Government would also prevent this Court from granting any relief urged by the Representatives that would prevent the Government from honoring its contractual undertakings.

Boeing does not seek to diminish the loss suffered by the Representatives, or to weigh its equities against theirs.  But here, Boeing is not the party alleged to have violated the CVRA.  Allowing Boeing's contractual expectations in reliance on the DPA to be upended—based on an alleged violation by the Government over which Boeing had no authority or control—would be unprecedented, unworkable, and inequitable.  *See* Dkt. 62 at 13–15.  Moreover, granting the relief the Representatives seek would have far-reaching adverse consequences for the Government's ability to use DPAs to resolve criminal cases and the willingness of defendants, who seek finality, to enter into such resolutions.

## III.   The Requested Remedies Are Contrary to Prosecutorial Discretion and the Separation of Powers.

The remedies requested by the Representatives also should be rejected because granting them would violate constitutional principles of separation of powers.  The CVRA itself states that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."  18 U.S.C. § 3771(d)(6).  That provision—rooted in the separation of powers under the U.S. Constitution—recognizes that the Executive Branch has the sole discretion regarding whether to initiate criminal charges and what charges to bring.  *See, e.g., Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion").  The importance of this principle is confirmed by the Court of Appeals' rulings in *Fokker* and *HSBC,* which explain how an Article III court's attempt to intrude on the Attorney General's exercise of prosecutorial discretion as reflected in a DPA is inconsistent with the separation of powers.  *See Fokker*, 818 F.3d at 741-742; *HSBC*, 863 F.3d at 135–136.  Because the CVRA undeniably includes only a right to consult and not to dictate any outcome, granting the remedies the Representatives request with respect to the charges filed against Boeing

12

and the terms and structure of the DPA would be contrary both to the text of the CVRA and to core principles of prosecutorial discretion.  Moreover, granting those remedies here would serve no practical purpose, given that the Executive Branch has already confirmed its considered outcome with respect to the DPA.  After the Representatives filed this action, the Government held a series of meetings with them, up to and including with the Attorney General himself, after which the Government reported to this Court that it had charged the crime it believed it could prove beyond a reasonable doubt and that it stands by the terms of the DPA.  Dkt. 58 at 8.  Under these circumstances, there is no basis in either law or fact that would support granting the remedies that the Representatives seek.

Likewise, the Court should deny the Representatives' request for access to the Government's investigative files.  Despite the Court's previous ruling denying the Representatives' motion for discovery, *see* Dkt. 116 at 18, they now seek to examine the Government's files, apparently so that they can advise the Government of the charges that they believe could or should have been brought.  As with the request to withhold "approval" of the DPA and flag questionable provisions for renegotiation, this remedy is neither authorized by the CVRA's text, nor consistent with the Constitution's allocation of prosecutorial discretion solely to the Executive Branch.  Moreover, granting the Representatives access to the Government's files is inconsistent with the protections afforded by Rule 6(e) of the Federal Rules of Criminal Procedure.  Boeing produced voluminous documents to the Department of Justice pursuant to grand jury subpoenas, and those materials were and remain protected by Rule 6(e).  They also include Boeing's proprietary and business sensitive documents, whose disclosure to third parties would inflict commercial harm on Boeing.

Fundamentally, a remedy should correct the underlying violation.  Crime victims have no right under the CVRA to review a Government's investigative file and make their own determinations about whether that file would support different prosecutorial decisions.  At most, the CVRA could have entitled the Representatives to meet with the Government and share their views about prosecutorial outcomes before entering into the DPA.  While Boeing understands the Representatives' belief that this should have occurred and frustration that it did not, there is no right under the CVRA for access to the sensitive and Rule 6(e) protected information that the Government gathered in the course of its investigation.  As Boeing has previously briefed, such discovery is not appropriate to prove a violation of the CVRA, *see* Dkt. 74, and it is likewise unprecedented and, if anything, even more inappropriate to grant it as a remedy for a CVRA violation.

## IV.    An Arraignment and Bond Hearing Are Unwarranted.

Finally, the Representatives previously contended that Boeing should be subject to arraignment and a bond hearing, which Boeing argued are not required or appropriate under the Federal Rules of Criminal Procedure.  *See* Dkt. 62 at 20–23.  In reply, the Representatives argued that an arraignment must be held now that the Court has found a violation of the CVRA.  *See generally* Dkt. 66.  But this argument, too, fails because it is based on the Representatives' incorrect premise that an arraignment *must* occur in all cases involving a criminal charge.  Where, as here, the Government resolves to defer prosecution, there is no requirement—in the CVRA, in the Federal Rules of Criminal Procedure, or otherwise—that an arraignment must be held.  Indeed, arraignment is primarily intended to inform the accused of the charges being brought and to preserve his rights, and even when a case proceeds to trial (unlike here), holding an arraignment is not required for the court to possess jurisdiction.  *See* Dkt. 62 at 21–22 (citing Fed. R. Crim. P. 10; *United States v. Correa-Ventura*, 6 F.3d 1070, 1073 (5th Cir. 1993)); Fed. R. Crim. P. 10,

14

Advisory Note 3 ("[F]ailure to comply with arraignment requirements has been held not to be jurisdictional, but a mere technical irregularity not warranting a reversal of a conviction, if not raised before trial."). Moreover, the goal of preserving the rights of the accused is not implicated where, as here, a negotiated DPA is involved, especially since Boeing has been complying with that DPA for nearly two years now.

The Representatives err in arguing that their right under the CVRA to proceedings "free from unreasonable delay" requires an arraignment to be held immediately. Dkt. 71 at 29 (quoting 18 U.S.C. § 3771(a)(7)). That provision cannot imply the ability to dictate that court proceedings occur for which there is no requirement, no need, and no good purpose. CVRA victims, for example, have no right to demand that a trial occur—or to assert that one has been "unreasonably delayed"—if the Government in its discretion elects to dismiss the case. And while CVRA victims have rights regarding notice of and attendance at court hearings, 18 U.S.C. § 3771(a)(2)-(3), the Act conveys no right in the first instance to demand that hearings must occur. Here, where Representatives argue that they are harmed by the lack of arraignment, Dkt. 66 at 10, they are, in effect, demanding that that proceeding occur so that they can attend and be heard, regardless of whether an arraignment in this case would be appropriate or would serve the purpose for which arraignments were intended. In short, arraignment has not been "unreasonably delayed" in this case because it is not required, will never be needed, and never should occur at all.

The Representatives also seek an arraignment because they contend it "*may* be the 'triggering mechanism' for other events—such as imposing conditions of release" at a detention hearing, Dkt. 66 at 10 (emphasis added), which they contend is required under the Bail Reform Act, 18 U.S.C. § 3142(a), Dkt. 66 at 8. But the Representatives' argument is misplaced. An arraignment and a detention hearing are distinct events, neither of which make sense for the Court

to hold here.  Rule 10 of the Federal Rules of Criminal Procedure—which describes requirements related to arraignments—does not address detention or release, and does not contemplate that the Court require an initial appearance by the defendant, as it would if it were holding a detention hearing of an arrested person pursuant to Rule 5(d).[6]  Likewise, the Bail Reform Act provides the process for determining the release or detention of an *arrested* defendant pending trial.  *See* 18 U.S.C. § 3141(a).  But here, Boeing has not been arrested or summoned to appear in this case, and those provisions of the Act are not implicated.

As previously addressed, proceedings to impose conditions for release are also neither required nor necessary here.  *See* Dkt. 62 at 15–18.  Boeing is a corporation that cannot be detained. Nor is there a credible claim that Boeing presents any of the other risks detailed in § 3142, including the risk of non-appearance at future proceedings.  Boeing is also already subject to strict oversight by the Department of Justice under the terms of the DPA. *See* Dkt. 4 Attachment D; Section II, *supra* p. 10.  Indeed, the very purpose of a DPA is to defer prosecution of the charge to allow the defendant to show good conduct.   Under these circumstances, it appears the Representatives' request is an attempt to obtain a public forum to air their views about Boeing, but permitting an arraignment or bond hearing for this purpose would not be appropriate because it would not redress any of the claimed CVRA violations of which the Representatives complain. The Representatives are free to air their views publicly in other ways—as many of them and their counsel have done before Congress, in the media, and in other lawsuits—without calling for an arraignment hearing that is otherwise unnecessary and unjustified, or seeking to impose conditions

---

[6] By contrast with the Rule governing arraignments, Rule 9(c)(3), regarding arrests, explicitly *requires* the judge to ensure an initial appearance under Rule 5 "[w]hen an arrested or summoned defendant appears before the court."  If an appearance were required for arraignment, Rule 10 would have said so.

on Boeing that exceed those imposed by the Executive Branch in its role as a prosecutor via the DPA.  *See* Dkt. 66 at 11, FN 6 ("[I]f given the opportunity, the victims' families intend to argue that a corporate monitor is an appropriate condition of release *right now*.") (emphasis in original). Indeed, it is hard to see why it would be appropriate to impose such a remedy on Boeing, because of actions by the Government over which Boeing had no control.

In their reply brief, the Representatives argue that *United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994), requires that an arraignment occur, and they criticize Boeing for not addressing that decision.  Dkt. 66 at 6.  Boeing did not previously address *Moore* because it does not apply: *Moore* only addressed a waiver of indictment, not the need to hold an arraignment.  To the extent the Representatives instead are arguing that, although Boeing has already waived indictment, it must do so now in open court, that is an entirely separate point from whether an arraignment must be held.  But Representatives' argument does suggest that they are seeking any imaginable basis for a hearing so that they can publicly express their views about Boeing, including regarding what so-called bond conditions they would deem appropriate.  Alternatively, to the extent the Representatives are arguing that, without an open court waiver, "Boeing cannot be permissibly prosecuted in this case," Dkt. 66 at 6, that is not the Representatives' argument to advance.  Boeing can speak for its own interests, and Boeing has not sought a hearing on its waiver of indictment, nor is one needed since prosecution is deferred.

In sum, Boeing objects to any request for an arraignment, bond hearing, or hearing on waiver of indictment, which are not required under law or procedure and would serve no appropriate purpose at this stage of the proceedings.  Further, although the Representatives have not claimed that something other than an orthodox arraignment should occur (and therefore have waived any such argument), Boeing objects to any putative "arraignment-plus" that would be a

17

vehicle for the Representatives to seek the substantive remedies otherwise discussed, to which they are not entitled for the reasons stated above.

## CONCLUSION

After a lengthy investigation into the tragic circumstances involving the MAX accidents, Boeing and the Government elected, as is their right, to resolve the matter by entering into a deferred prosecution agreement.  DPAs have long provided a useful tool for the Government and corporate defendants to resolve complex matters in a way that helps each party realize important institutional goals, while minimizing the risk each side faces from going to trial.  Such was the case here, where Boeing entered into the DPA for a variety of reasons, including to achieve finality with respect to the matters being investigated.

The Representatives' pursuit of justice ultimately must be governed by the applicable law in the forum in which they are presenting their claims.  Here, their claims are governed by the CVRA, which grants them rights to notice of court proceedings and to confer with the Government. It does not grant the remedies the Representatives seek, which would infringe upon the prosecutorial discretion that is expressly reserved to the Executive.  Here, the Government's exercise of that discretion is reflected in the DPA, and it has been repeatedly confirmed by the Government in these proceedings.  Boeing, having performed for two years in reliance on the DPA, is entitled to the finality for which it gave substantial consideration in that agreement. Disrupting those expectations would fundamentally alter the ability of the Government and defendants to enter into such agreements; would be unprecedented and contrary to settled law; and would be inappropriate remedies for asserted violations of the CVRA by the Government, over which Boeing had no control or authority.

Boeing respectfully requests that the Representatives' motion be denied.

Respectfully submitted,

**McGUIREWOODS LLP**

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch
VA Bar No. 70116
bhatch@mcguirewoods.com

Brandon M. Santos
VA Bar No. 75380
bsantos@mcguirewoods.com

McGuireWoods LLP
888 16th Street N.W., Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Tel: 757.640.3727
Fax: 757.640.3947

***Counsel for The Boeing Company***

**KIRKLAND & ELLIS LLP**

*/s/ Mark R. Filip*
Mark R. Filip
IL Bar No. 6226541
mark.filip@kirkland.com

Craig S. Primis
DC Bar No. 454796
cprimis@kirkland.com

Kirkland & Ellis LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
Tel: 202.389.5000
Fax: 202.389.5200

Jeremy Fielding
Texas State Bar No. 24040895
Jeremy.fielding@kirkland.com

Kirkland & Ellis LLP
1601 Main Street
Dallas, Texas 75201
Tel; (214) 972-1770
Fax: (214) 972-1771

***Counsel for The Boeing Company***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 11, 2022, the foregoing was filed with the Clerk of the United States District Court for the Northern District of Texas using the CM/ECF system.  The system will serve counsel of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch
