## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:21-cr-005-O |
| | § | |
| THE BOEING COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MOTION TO SEEK REMEDIES PURSUANT
## TO CRIME VICTIMS' RIGHTS ACT

COME the Movants, Marti Faidah, Etmidalti, Ferry Pranata, Endang Sri Rejeki, RR Ine Yunita SI, Ulfah Kusumaningsih, Hasanuddin, Siti Fatimah, Bina Asta Mastiti, Rismayanti, Fendy, Ratna Sari Dewi, Herlina Husain, Sri Subekti, Dian Anindita Suryani, Liyanah, Mardona, Mu'Minah, Gusmardi, James Sianturi, Irianto, Emmy Delima, Nursia Manurung, Norman Purnama, Handy Wijaya, Tayeb Tahir, Meylanda Crisdiana, Sri Husman, Edi Susanto, Epi Samsul Komar, R. Ayu Ghea Sofa Anggraini, Umar Nayiri, Ferdian Putra, Iskandar, Lutfiyani Eka Putri, Ulfa Wiwit Chasanah, Abdul Rahman, Amri Syakban, Ansori, Petty Novita, Septi Riyani, Septi Dursbianti, AM I. Talib, Oey Swan Nio, Endo Prabowo, Zainal Abidin, Anzar Agustian, Ellisa, Andy Fhildyna, Tandina Sukarno Putri, Glato Kodjovi, Mohamed Farrag Mohamed Megali, Welly Chandra, Winda Juwita, Siti Anbiya G. Ishimichi, Vetri, Mimin Suratmi, Ansori, M Manik, Kiki Merdekawati, Puspawijayanti, (collectively "Movants") pursuant to the Crime Victims' Rights Act, 18 U.S.C.3771(d)(3) ("CVRA") for the purpose of seeking remedies as may be permitted by the CVRA and for such other and further relief to which Movants may be entitled, state as follows:

1.      The Movants are family members of individuals who died as a result of the two crashes of Boeing 737 Max aircraft. The 55 individuals are:

Herjuno Darpito, Shintia Melina, Njat Ngo, Abdul Efendi, M Wahjoe Noegrohantoro, Ariawan Komardy, Nurul Rezkianti, Rudolf Petrus Sayerzs, Arfiyandi, Sahabudin #1, Mawar Sariati, Yoga Perdana, Maherru, Mito, Darwin Haryanto, Rangga Adiprana, Daniel Soeharja Wijaya, Radika Wijaya, Rafezha Wijaya, Rivandi Pranata, Janry Sianturi, Rio Nanda Pratama, Nikky Bagus Santoso, Martua Sahata, RR Savitri Wulurastuti, Shella, Idha Susanti, Martono, Sui Di, Ervina Wijayanti, M Ravi Andrian, Rabagus Noerwito, Yunita Sapitri, Tami Julian, Sui Khiun, Deryl Fida, Panky Sukandar, Riyan Ariyandi, Fauzan Azima, Witaseriani, Ubaidillah Salabi, Dicky Jatnika, Dodi Junaidi, Ambo Malibone, Mack Stanley, Christy Artina Prabowo, Indra Bayu Aji, Murita, Kasan, Mie Nie, Karmin, Permadi Anggrimulja, Liu Chandra, Hedy, Trie Yudha Gautama, Berly Boen, HK Junaidi, Kyara Aurine, Fita Damayanti, Filzaladi, and Imam Riyanto

2.      The Lion Air Flight 610 crash occurred on October 29, 2018. 189 people died.

3.      The aircraft which crashed on October 29, 2019 was a Boeing 737 Max aircraft.

4.      Five months later, on March 10, 2019, another Boeing 737 Max aircraft crashed in Ethiopia. 157 people died in that crash.

5.      Movants are "Crime Victims" as defined by the CVRA, 18 U.S.C. section 3771(e)(2) in that they are the relatives and authorized representatives of individuals who died in the two crashes. As the lawful representatives of their family members who died in the two plane crashes, Movants have the right to seek relief under the CVRA. 18 U.S.C. section 3771(d)(1).

6.      Without question, the two crashes occurred because the Boeing 737 Max Aircraft was defective. Worse, Boeing was aware of the defects in the aircraft and need for certain training because the manner in which the Boeing 737 Max aircraft's operating system was designed. Boeing made fraudulent representations and omissions regarding the defects and necessary levels of training associated with an aspect of the operating system for the 737 Max aircraft.

7.      A criminal investigation began, initiated by the United States Department of Justice, during which the United States Government uncovered extensive criminal conduct engaged in by Boeing and its agents/employees.

8.     Ultimately, the Government and Boeing entered into a Deferred Prosecution Agreement (sometimes referenced as "Agreement") on January 7, 2021, apparently hoping that the Agreement would receive less scrutiny because of events occurring in this Country on January 6, 2021. **Exhibit A**.

9.     Although offering a sanitized version of Boeing's criminal conduct, the Deferred Prosecution Agreement between the United States Government and Boeing contains a statement of facts which reveals some criminal conduct and that the Government was aware of at least certain individuals who engaged in criminal conduct. The criminal conduct can be summarized as follows:

a.  Boeing began developing and marketing a new version of its 737 aircraft, the 737 Max. This occurred in 2011 and was designed to increase fuel efficiency.

b.  The FAA had to evaluate and approve the newly designed aircraft. It did so by comparing the 737 Max with the prior version of the Boeing 737.

c.  The FAA assigned various levels of different training, ranging from level A to Level E, which differed in rigor and in methodology (computer based training versus full flight simulator training). More importantly, the costs of the different levels of training were significant. Level B, for example, training could be conducted anywhere in the world with a basic computer whereas level D training required specific, detailed training with a flight simulator.

d.  As a rule, more expensive the training, the less money Boeing makes.

e.  The FAA issued a preliminary report which contained information about the 737 Max aircraft and requirements for training, based on the above training levels.

3

f.   Boeing created a Flight Technical Team which was responsible for identifying and providing to the FAA information relevant to the above referenced FAA report, including information about required levels of training for the 737 Max aircraft.

g.   To achieve increased fuel efficiency, the 737 Max aircraft had larger engines than its predecessor, which changed the aerodynamics of the 737 Max aircraft.

h.   The different aerodynamics caused the nose of the aircraft to pitch up during a high speed wind turn maneuver. To address the nose pitch issue, Boeing created a new part for the 737 Max aircraft called an "MCAS."

i.   Boeing personnel told the FAA that the MCAS only activated at high speeds which was false.

j.   In fact, Boeing personnel expanded the scope of the MCAS so that it covered all operational speeds of the aircraft, including low speeds. Boeing did not disclose this change to FAA representatives responsible for making flight training recommendations. The expansion of the MCAS to include low operational speeds required more, expensive training which would reduce Boeing's profits on the 737 Max aircraft.

k.   In reliance on the incomplete and materially false information provided by Boeing, the FAA recommended level B training.

l.   Internal Boeing communications (emails) reveal that the purpose of not disclosing the changes to the MCAS was to avoid a recommendation of more particularized and expensive training, using flight simulators which would have reduced Boeing's profits. The emails also reveal that Boeing's employees admitted to one another that they had lied to the FAA.

m. Even when given the opportunity to review proposed training recommendations by the FAA, Boeing personnel did not disclose the expansion of the MCAS system to lower speeds, which, in turn, would have required more expensive training with flight simulators. Rather, they engaged in fraudulent misrepresentations and omissions.

n. In the Statement of Facts included in the Agreement, Boeing admitted that its employees fraudulently concealed and or omitted material facts and that pilots who flew the 737 Max were not provided information about MCAS in airplane manuals and training manuals. **Exhibit B.**

o. Boeing admitted to violating 18 U.S.C. section 371. **Exhibit A.**

10. Within the Agreement, Boeing agreed that it would not retract its admissions. Although at least two individuals (employees of Boeing) are identified in the Agreement as having knowingly engaged in criminal conduct, there has been no prosecution of high level executives of Boeing, despite the horrific consequences of the criminal fraud. **Exhibit A**.

11. The use of a deferred prosecution agreement has become the common remedy for the Government when high level individuals in public corporations engage in criminal conduct. Such an agreement allows the Government to "declare victory" without having actually prosecute responsible parties and permitted Boeing to structure its settlement with the Department of Justice in a way in which approximately 70% of the settlement was paid to Boeing's customers and a significantly smaller portion paid to the families of individuals who died in the two 737 Max crashes. **Exhibit A ¶ 7;** *see also Harvard Law School Forum On Corporate Governance,* Nosedive: Boeing and the Corruption of the Deferred Prosecution Agreement, posted by John C. Coffee, Adolfe A. Berle Professor of Law at Columbia University, May 25, 2022. There is no

explanation of the basis for this allocation. It would appear to be premised on a desire to maintain ongoing profits for Boeing, provide substantial tax savings to Boeing, without properly compensating Crime Victims, despite the admitted existence of criminal conduct which lead to the deaths of more than 500 people.

12.     Other facts concerning Boeing's misconduct were revealed as a result of certain court proceedings in the state courts of Delaware in which a shareholders' derivative lawsuit was filed. **Exhibit C**.

13.     While the Agreement contained some benefits, the Agreement and process by which the Government and Boeing entered into the Agreement clearly violate the CVRA.

14.     The CVRA requires, among other things, that Crime Victims have the right to confer with the attorney for the Government, the right to restitution, the right to be treated with fairness and respect for the victim's dignity and privacy and the right to be informed in a timely manner of any plea bargain or deferred prosecution. *18 U.S. C. section 3771(a).*

15.     In violation of the Act, the Agreement was made without any communication with the Movants despite the clear language of the Act which requires the Government to "confer" with the Crime Victims' representatives prior to entering into a deferred prosecution agreement with Boeing.

16.     There is no rational reason that appropriate, complete communication could not have occurred with Movants so that they were aware of the Agreement being negotiated between the Government and Boeing and conferred with the Government prior to an agreement being made with Boeing.

17.     The burden is on the Government to ensure that appropriate communication with Crime Victims occurs. Movants were all represented by legal counsel, and many had filed lawsuits

in the United States District Court for the Northern District of Illinois, which lawsuits were a matter of public record.

18.     This Court has already ruled that the Agreement violated the Act and that the families of individuals who were killed in the Boeing 737 Max airplane crash are "crime victims" as defined in the Act and have standing to challenge the propriety of the Agreement and seeks remedies under the Act. **Exhibit D**.

19.     All of the Movants are family members of individuals who were killed in the crash. All of the Movants have standing to appear before this Court.  All of the Movants have the right to confer with the Government concerning the criminal prosecution against Boeing and its agents and seek remedies in this matter.

20.     We are aware that other family members have appeared before this Court in the capacity as Crime Victims. Movants seek remedies which are different than those sought by these other Crime Victims and which have not been requested previously. In any event, all Crime Victims have rights under the CVRA. Movants should be permitted to exercise their rights.

21.     It is expected that additional Movants/Crime Victims will be added to seek relief under the CVRA.

WHEREFORE Movants respectfully request order the Government to comply with the CVRA, that the Government be ordered to confer with counsel for Movants and to order such other remedies as may be fair, just and equitable.

Dated: November 22, 2022

 /s/ Jason R. Marlin
Counsel for Crime Victims/ Movants

Adrian Vuckovich (*pro hac vice* pending)
Illinois Bar No. 6207978
Collins Bargione & Vuckovich
One N. LaSalle Street, Suite 300
Chicago, Illinois 60602
Tel: (312) 372-7813
av@cb-law.com

Jason R. Marlin
Texas State Bar No. 24050989
BAILEY BRAUER PLLC
8350 N. Central Expressway, Suite 650
Dallas, Texas 75206
Tel: (214) 360-7433
jmarlin@baileybrauer.com

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was electronically served on November 22, 2022, on all counsel of record via the Court's ECF system.

*/s/ Jason R. Marlin*

8