**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-005-O-1 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| ———————————————— | ) | |

**NAOISE CONNOLLY RYAN ET AL.'S SUPPLEMENTAL REPLY REGARDING**
**REMEDIES FOR THE GOVERNMENT'S CVRA VIOLATION**

/s/ Warren T. Burns
Warren T. Burns (Texas Bar No. 24053119)
Burns Charest, LLP
wburns@burnscharest.com

Darren P. Nicholson
Burns Charest, LLP
icholson@burnscharest.com

Kyle Kilpatrick Oxford
Burns Charest LLP
koxford@burnscharest.com

/s/ Paul G. Cassell
Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
cassellp@law.utah.edu
(no institutional endorsement implied)

Tracy A. Brammeier
Clifford Law Offices PC
tab@cliffordlaw.com

Erin R. Applebaum
Kreindler & Kreindler LLP
eapplebaum@kreindler.com

Pablo Rojas
Podhurst Orseck PA
projas@podhurst.com

*Attorneys for Victims' Representatives*

## TABLE OF CONTENTS

Table of Authorities................................................................................................ iii

Introduction................................................................................................................ 1

I. The Court Must Excise the DPA's Immunity Provisions Under the CVRA's Judicial
Enforcement Provision............................................................................................... 1

II. Judicial Integrity Also Requires Rescission of the Immunity Provisions. ............... 3

III. Excising the Immunity Provisions Would Not Impose "Hardships.".................... 7

The Court Is Not Permitted to Balance Away the Families' CVRA Rights.................. 8

B.      Any Balance of Interests Tips Decisively in the Families' Favor. ................... 9

       1.   The Government Has Not Provided Any Compelling Interests Supporting the
            DPA. ............................................................................................................ 10

       2.   Boeing Has Not Provided Any Compelling Interests Supporting the DPA. .............. 12

IV. The Families Are Entitled to Other Remedies. ..................................................... 15

V. An Arraignment Is Now Required. ......................................................................... 18

VI. The Families Are Entitled to an Evidentiary Hearing Regarding the Government's
Alleged "Good Faith" and Boeing's Knowledge of the CVRA Violation.................. 19

Conclusion ................................................................................................................ 20

CERTIFICATE OF REMAINING ISSUES .............................................................. 1

CERTIFICATE OF SERVICE .................................................................................. 3

# TABLE OF AUTHORITIES

<u>Cases</u>

*Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) ................................................................................................................................ 8

*Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) ................. 12

*City of Arlington, Tex. V. F.D.I.C.*, 963 F.2d 79, 81 (5th Cir. 1992)............................................. 12

*Diaz v. Rio Grande Resources Corp.*, 2006 WL 3337520 (W.D. Tex. 2006) .............................. 13

*In re OCA, Inc.,* 552 F.3d 413, 422 (5th Cir. 2008) ..................................................................... 12

*Jane Does 1 & 2 v. United States*, 359 F.Supp.3d 1201, 1218 (S.D. Fla. 2019)........................ 2, 7

*Jane Does 1 and 2 v. United States,* 950 F.Supp.2d 1262, 1267 (S.D. Fla. 2013)..................... 2, 7

*Jane Does 1 and 2 v. United States,* 950 F.Supp.2d 1262, 1268 (S.D. Fla. 2013)......................... 2

*Kenna v. United States District Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) ................................ 2

*Marbury v. Madison*, 5 U.S. 137, 163 (1803) .............................................................................. 16

*Oce N. Am., Inc. v. Caputo*, 416 F. Supp. 2d 1321, 1328 (S.D. Fla. 2006)................................. 13

*Seaboard Oil Co. v. Donovan*, 99 Fla. 1296, 1306, 128 So. 821, 825 (1930) ............................ 13

*United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977)............................................................. 4

*United States v. Clem*, 422 F.Supp.3d 1105, 1115 (N.D.W.V. 2019) ............................................ 6

*United States v. Fokker Services B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016)................................... 5

*United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 129 (2d Cir. 2017) ................................. 5

*United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 136 (2d Cir. 2017) ................................. 4

*United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 142 (2d Cir. 2017) ................................. 5

*United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994) ........................................................... 18

*United States v. Saena Tech Corporation*, 140 F.Supp.3d 11, 31 (D.D.C. 2015) ......................... 5

*United States v. Sheinbaum*, 136 F.3d 443, 448 (5th Cir. 1998) ................................................. 15

*United States v. Sizemore*, 850 F.3d 821, 829 (6th Cir. 2017)..................................................... 12

<u>Statutes</u>

18 U.S.C. § 3771(a)(4)................................................................................................................. 18

18 U.S.C. § 3771(a)(5)................................................................................................................... 2

18 U.S.C. § 3771(a)(8)................................................................................................................... 2

18 U.S.C. § 3771(a)(9)................................................................................................................... 2

18 U.S.C. § 3771(b)(1) ......................................................................................................... 2, 3, 8

18 U.S.C. § 3771(c)(1) ............................................................................................. 10

18 U.S.C. § 3771(d)(3) ............................................................................................... 8

28 U.S.C. §§ 516, 547 ................................................................................................. 4

U.S. Const., Art. II, § 3 .............................................................................................. 4

<u>Other Authorities</u>

150 Cong Rec. 22953 (Oct. 9, 2004) ......................................................................... 2

150 CONG. REC. S4262 (Apr. 22, 2004) .................................................................... 17

150 CONG. REC. S4269 (Apr. 22, 2004) (statement of Sen. Kyl). ......................... 7, 8

Ankush Khardori, *The Trump Administration Let Boeing Settle a Killer Case for Almost Nothing*, INTELLIGENCER (Jan. 23, 2021) .......................................................... 9

Bloomberg Law, *Deadliest Corporate Crime in the U.S. Will End with 84 Guilty Pleas* (June 15, 2020) .................................................................................................. 9

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 260 (11th ed. 2006) ...................... 17

Mary Miller, *More than Just a Potted Plant: A Court's Authority to Review Deferred Prosecution Agreements Under the Speedy Trial Act and Under Its Inherent Supervisory Power*, 115 MICH L. REV. 135, 165 (2016) .................................................................... 3

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 260 (11th ed. 2006)..17Peter R. Reilly, *Deferred Prosecution as Discretionary Injustice*, 2017 UTAH L. REV. 839, 849 (2017) ......................... 6

Sarah Worthington & Grainne Mellon, *Statutory Rules, Common Law Rules and Public Policy in the Global Financial Crisis*, 29 PENN ST. INT'L L. REV. 613, 625 (2011) ................................ 14

<u>Treatises</u>

15 CORBIN ON CONTRACTS § 85.1 at 340 (rev. ed. 2020) ......................................... 13

6 POMEROY EQUITY JURISPRUDENCE, § 794 ............................................................. 13

AM. JUR. 2D CONTRACTS § 217 (Nov. 2022 update) ................................................ 12

RESTATEMENT (SECOND) OF CONTRACTS § 178(2)(a) ............................................... 14

**NAOISE CONNOLLY RYAN ET AL.'S SUPPLEMENTAL REPLY REGARDING
REMEDIES FOR THE GOVERNMENT'S CVRA VIOLATION**

Naoise Connolly Ryan, et al. (the "victims' families"), through undersigned counsel, file
this supplemental reply regarding remedies.

## Introduction

The Court has found that the Government violated the Crime Victims' Rights Act (CVRA)
by (among other things) failing to confer with the victims' families before reaching the deferred
prosecution agreement (DPA) with Boeing. The issue before the Court now is how to remedy the
Government's violation of the families' CVRA rights. The answer is clear: the Court must provide
the families with a reasonable opportunity to confer before the Government reaches its DPA by
excising the DPA's immunity provisions. Consistent with the Court's order, the victims' families
will not repeat their previous remedies arguments. *See* Dkt. 52 at 26-29; Dkt 71 at 21-30; *see also*
Dkt. 17 & 65. But considering the parties' recently filed briefs, several additional points are
important.

## I. The Court Must Excise the DPA's Immunity Provisions Under the CVRA's Judicial Enforcement Provision.

The Government argues that "unraveling" the DPA would impose "serious hardships" on
the "many victims who have received compensation under that agreement or are currently pursuing
civil remedies." Gov't Remedies Br. at 2. Not so. The Court can simply excise the DPA's immunity
provisions, leaving the DPA's other provisions in place.

In their earlier briefing, the victims' families repeatedly argued that the Court should enter
a tightly focused order excising "the shall-not-file-charges provisions"[1] from the DPA, permitting

---

[1] The specific language comprising the shall-not-file-charges provisions (a/k/a the
"immunity provisions") is found in DPA ¶ 20, ¶ 24, and ¶ 4(h) (language interfering with
prosecuting "senior management").

the victims' families "the unfettered ability to exercise their CVRA right to confer with prosecutors about prosecuting Boeing." Dkt. 71 at 26 (citing Dkt. 52 at 27). As part of their argument, the families repeatedly cited the CVRA's judicial enforcement provision—18 U.S.C. § 3771(b)(1)—which requires that the Court "shall ensure" that the victims' families are "afforded the rights described in the [CVRA]." *See, e.g.,* Dkt. 52 at 4, 18, 26; Dkt. 71 at 1, 21. Indeed, as the Senate co-sponsor of the CVRA explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will … *giv[e] meaning* to the rights we establish." 150 CONG REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphases added). *See, e.g., Kenna v. United States District Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (when a victim is denied his right to speak at a sentencing hearing, "the only way to give effect to [the victim's CVRA] right to speak . . . is to vacate the sentence and hold a new sentencing hearing").

In this case, the families have three rights at issue: (1) the "reasonable right to confer with the attorney for the Government in the case," § 3771(a)(5); (2) the right to "be informed in a timely manner of any … deferred prosecution agreement," § 3771(a)(9), and (3) the right to "be treated with fairness," § 3771(a)(8).[2] The Court has previously found that the Government violated these three rights. *See* Dkt. 116 at 18. Now, the only way the Court can fully protect those three rights is to excise the DPA's immunity provisions, giving the families an "unfettered" opportunity to confer about the Government prosecuting Boeing for its deadly crime. *See Jane Does 1 & 2 v. United States*, 359 F.Supp.3d 1201, 1218 (S.D. Fla. 2019) (*quoting* 950 F.Supp.2d at 1267) ("the CVRA

---

[2] For brevity, the families will refer to these three rights collectively as "the right to confer" in this brief.

authorizes the *rescission or 'reopening' of a prosecutorial agreement,* including a non-prosecution agreement, reached in violation of a prosecutor's conferral obligations under the statute").[3]

The families will not repeat their arguments here. But considering the Government's and Boeing's most recent remedies filings, the other parties clearly have *no answer* to the position that this Court is *required* to strike the immunity provisions from the DPA by virtue of the CVRA's judicial enforcement provision, § 3771(b)(1). Indeed, while the victims' families advanced this argument eleven months ago in their very first filing (Dkt. 15 at 4, 19, 27), neither the Government nor Boeing has ever contested it. As the Court can quickly confirm by skimming through the parties' various filings, the parties never even cite § 3771(b)(1). As a result, *the families' argument that this Court is required, by 18 U.S.C. § 3771(b)(1), to excise the DPA's immunity provisions to "ensure" that the families are given their CVRA right to confer about prosecuting Boeing is undisputed.* As a matter of fairness, the Court should now decide this case on this undisputed premise and strike the immunity provisions from the DPA.[4]

## II. Judicial Integrity Also Requires Rescission of the Immunity Provisions.

The victims have also presented a separate and independent argument for reaching the same conclusion that the Court must excise the DPA's immunity provisions: Now that the Court has

---

[3] Despite the families' heavy reliance on Judge Marra's conclusion that the CVRA authorizes a district court to modify a prosecution agreement to provide an "unfettered" right to victims to confer, 950 F.Supp.2d at 1268, the Government and Boeing have chosen to ignore this case entirely in their remedies briefing. And, notably, that case involved a *non*-prosecution agreement, which (unlike a DPA) is never even filed with the Court. *Cf.* Mary Miller, *More than Just a Potted Plant: A Court's Authority to Review Deferred Prosecution Agreements Under the Speedy Trial Act and Under Its Inherent Supervisory Power,* 115 MICH L. REV. 135, 165 (2016) ("Broad executive power to decline to prosecute is categorically different from the decision to negotiate a DPA, where charges will be brought and courts will be tasked with enforcing them.").

[4] Because the Government and Boeing have had opportunities to challenge this argument but have not done so, any challenge to the argument has been waived. *See* Dkt. 116 at 2 n.1 (finding the Government and Boeing waived other arguments by failing to make them).

found that the Government violated the CVRA (Dkt.116 at 18), the Court must take steps to protect its own integrity—that is, avoid giving its imprimatur to the Government's wrongdoing. *See generally* Dkt. 17; Dkt. 65.

In response to this argument, Boeing and the Government chart slightly different courses. Boeing flatly claims that "uniform appellate case law" rejects the ability of a district court to review a DPA. Dkt. 129 at 3. But, in fact, the two cases Boeing relies upon (*HSBC* and *Fokker*, discussed below[5]) both specifically recognize district court power to review a DPA to rectify "impropriety"— which is exactly what has happened here.

This Court has found that, in negotiating the DPA, the Government (with Boeing's apparent connivance) kept the DPA secret from the families in violation of their CVRA rights. This backdrop of proven misconduct distinguishes this case from other DPA cases, where a presumption of regularity properly attaches to the proceedings.

The Justice Department is typically entitled to latitude while crafting a DPA because Department officials "are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.' U.S. Const., Art. II, § 3; see 28 U.S.C. §§ 516, 547. As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 136 (2d Cir. 2017) (internal quotations omitted) ("*HSBC*"). Sadly, in this case, the Justice

---

[5] For reasons that the families have previously explained, these two decisions are dubious authority in the Fifth Circuit. *See* Dkt. 65 at 13-14 (citing *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977) and its progeny). In this brief, the families will respond to Boeing by simply assuming that *HSBC* and *Fokker* are good law here.

Department[6] has forfeited its claim to have properly discharged its official duties—it has violated the CVRA. In these rare circumstances, judicial action is required to restore respect for the law—namely, respect for the CVRA.

The two cases Boeing cites point the way to a proper resolution. For example, in *HSBC*, the district court had taken steps to provide transparency regarding a DPA between the Government and defendant HSBC. The district court ordered that reports prepared by an independent monitor as part of the DPA were to be made public, citing judicial power under the Speedy Trial Act to approve a DPA. *See HSBC*, 863 F.3d at 129. In reversing the district court, the Second Circuit applied the presumption of regularity recounted in the previous paragraph. But the Circuit concluded its opinion with the warning that "while the district court exceeded its authority in this case, the Take Care Clause of the Constitution is not a blank check. Where the presumption of regularity has been called into question, we do not foreclose the possibility that steps of the kind taken by the district court here could be warranted." *Id.* at 142; *accord United States v. Fokker Services B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016) (noting enhanced judicial power over DPAs that contain "illegal or unethical provisions").

Here, of course, the presumption of regularity has not merely been "called into question"—the presumption has been destroyed: This Court has found that the Government, with Boeing's apparent collusion, crafted an agreement blocking the victims' families from exercising their congressionally-endowed CVRA right to confer about prosecuting Boeing. Dkt 116 at 18. Given that proven violation of law, this Court must now step in to vindicate the families' CVRA rights. *See, e.g., United States v. Saena Tech Corporation*, 140 F.Supp.3d 11, 31 (D.D.C. 2015)

---

[6] The victims' families continue to believe that the CVRA violations at issue in this case were orchestrated by "Main Justice" in Washington, D.C.—not by the U.S. Attorney's Office for the Northern District of Texas.

(discussing expanded district court power where a DPA "would involve the court in illegal … agreements"). As Professor Peter Reilly from Texas A&M University School of Law explained in a comprehensive article on DPAs, such decisions have held that "inherent supervisory power serves to ensure that the courts do not lend a judicial imprimatur to any aspect of a criminal proceeding that smacks of lawlessness or impropriety." Peter R. Reilly, *Deferred Prosecution as Discretionary Injustice*, 2017 UTAH L. REV. 839, 849 (2017). Because the DPA here was lawless, this Court must step in to vindicate the law.

The Government takes a slightly different approach than Boeing. Rather than disputing that this Court lacks any power over the DPA, the Government agrees that appellate cases like *HSBC* and *Fokker* recognize a district court's authority to review a DPA's terms "in certain circumstances." Transcript (May 3, 2022) at 74.[7] The Government is somewhat coy about exactly what those "certain circumstances" are. But, as noted above, those circumstances certainly include responding to "impropriety"—and an agreement negotiated by the Government in violation of the CVRA obviously falls within those circumstances. Acting illegally is, by definition, acting with impropriety. And in a federal criminal case involving a DPA, if this Court "has any duty to perform" it is "to see that the waters of justice are not polluted." *United States v. Clem*, 422 F.Supp.3d 1105, 1115 (N.D.W.V. 2019) (refusing to approve DPA in a circumstance where the agreement "so transgresses the bounds of lawfulness or propriety as to warrant judicial intervention to protect the integrity of the court" (internal quotation omitted)).

Perhaps recognizing that this Court clearly possesses authority to respond to the proven illegality here, the Government grimly predicts that altering the DPA would produce "enormous

---

[7] It is important for the Court to review the May 3 transcript to see the Government's actual position on the Court's authority over DPAs. The Government's briefing on this point tends to obscure the critical point that this Court *does* have power to review a DPA.

practical consequences for the Government's ability to negotiate future settlements." Gov't Remedies Br. at 6. In truth, doing so would produce no adverse consequences whatsoever. In future cases, the Government will (one trusts) comply with the CVRA—and defendants will not assist in concealing DPAs from victims. Indeed, the Government assures the Court that it has recently adopted new regulations to "refine and expand" the Department's CVRA victim notification process to ensure that even those "indirectly" harmed by a crime will be involved in future DPA negotiations. Dkt. 128 at 8-9.

On the other hand, if the Court were to allow the Government and Boeing to simply proceed without consequence—despite having illegally hidden the DPA from the families—the harm to crime victims' rights in this country would be enormous. Wealthy and powerful defendants (such as Boeing) will know that if they can simply persuade the Government to cut a secret deal, the crime victims who object to it will be powerless to do anything about it. This Court must enforce the CVRA as a signal to both the Government and future defendants that crime victims' CVRA rights are not expendable and will be enforced. As Senator Kyl explained on the Senate floor when the CVRA was enacted, "[w]ithout the ability to enforce the rights in the [district] … courts of this country, any rights afforded [to crime victims] are, at best, rhetoric. We are far past the point where lip service to victims' rights is acceptable." 150 CONG. REC. S4269 (Apr. 22, 2004) (statement of Sen. Kyl).

### III. Excising the Immunity Provisions Would Not Impose "Hardships."

Based on the two arguments advanced above (i.e., the CVRA's judicial enforcement provision and the Court's obligation to protect judicial integrity), this Court clearly possesses the authority—and, indeed, the obligation—to order the *rescission or 'reopening' of a prosecutorial agreement*." 359 F.Supp.3d at 1218 (*quoting* 950 F.Supp.2d at 1267). Perhaps recognizing that power, Boeing and the Government raise various policy-based arguments as to why, in their

opinion, rescission of the immunity provisions would be a bad idea. *See* Dkt. 128 at 3-6; Dkt. 129 at 5-14. The parties' speculative arguments are beside the point and, in any event, meritless.

### The Court Is Not Permitted to Balance Away the Families' CVRA Rights.

The Court does not have discretion to revisit the issue of crime victims' rights and make an independent decision regarding whether CVRA compliance is desirable. In enacting the CVRA, Congress used mandatory language, requiring that a district court "shall ensure" that crime victims are afforded their rights. 18 U.S.C. § 3771(b)(1). Here, the Government has not afforded the families their congressionally promised opportunity to confer with the Government and receive timely notice of a DPA before the prosecutors lock into a decision giving Boeing immunity. *See* Dkt. 116 at 18. Excising the immunity provisions from the DPA will afford the families those rights—and thus this Court is required to take that step. *See* 150 CONG. REC. S4269 (Apr. 22, 2004) (statement of Sen. Kyl) ("The enforcement provisions of [the CVRA] ensure that never again are victims' rights provided in word but not in reality."). Alleged collateral consequences that might (or might not) follow from affording victims their rights cannot justify failure to follow that congressional command. And regarding protecting judicial integrity, this Court should fully protect judicial integrity by excising the illegally-negotiated provisions from the DPA so that the families are afforded their CVRA rights to confer, to timely notice of a DPA, and to fair treatment.[8]

---

[8] In a footnote, Boeing raises a new argument that the families are precluded from obtaining remedies by the doctrine of laches. Boeing suggests that it raised this argument in its earlier briefing. *See* Boeing Remedies Br. at 8 n.14 (*citing* Dkt. 62 at 13-15). But, in fact, in its earlier briefing, Boeing did not cite laches. Accordingly, Boeing's laches argument is itself barred by laches, as Boeing has not timely raised this defense. And in addition, an argument advanced only in a footnote is waived. *See Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016).

In any event, Congress has not chosen to permit criminal defendants to raise a laches defense to CVRA enforcement. *See* Dkt. 71 at 22-24 (discussing 18 U.S.C. § 3771(d)(3) (setting out CVRA enforcement provisions; laches not provided)). Moreover, even assuming the Court

**B.      Any Balance of Interests Tips Decisively in the Families' Favor.**

Even if the Court were inclined to engage in some sort of freeform balancing of competing interests, the balance of those interests tips decisively in the families' favor. The families seek to confer with the prosecutors about what has been described by knowledgeable observers as "one of the most unusual and ill-conceived corporate criminal settlements in American history."[9] And the agreement was reached in a case involving the deadliest corporate crime in American history.[10] And the agreement was concealed from the families in violation of federal law—the CVRA. Nothing on the other side of the balance remotely approaches the families' interests.

The Government and Boeing claim that reopening the DPA would "impose serious hardships on everyone involved" (Dkt. 128 at 3) and would be "unworkable" (Dkt. 129 at 4). But if the Court protects the families' CVRA right to confer through a focused excision order striking just the immunity provisions, then the parties' parade-of-horribles never occurs. Even if the Court were to consider invalidating the entire DPA, the balance would still tip in favor of that remedial action to protect the families' CVRA rights.

---

could read a laches defense into the CVRA, the families moved rapidly after securing legal counsel to raise their claims. *See, e.g.,* Dkt. 15, Ex.1 at 2 (Appx. 003) (Naoise Ryan secured CVRA counsel on November 23, 2021 and filed the CVRA challenge less than two weeks later). In this case, of course, the Government failed to properly and timely advise the families of their CVRA rights until well after they filed their CVRA enforcement motion—which is an additional reason why it took the families time to effectively mount their CVRA challenge.

[9] *See, e.g.,* Ankush Khardori, *The Trump Administration Let Boeing Settle a Killer Case for Almost Nothing*, INTELLIGENCER (Jan. 23, 2021), https://nymag.com/intelligencer/2021/01/boeing-settled-737-max-case-for-almost-nothing.html.

[10] According to Bloomberg Law, PG&E's 2020 plea to 84 separate involuntary manslaughter counts in connection with a wildfire in Paradise, California, was "the deadliest corporate crime in U.S. history." BLOOMBERG LAW, *Deadliest Corporate Crime in the U.S. Will End with 84 Guilty Pleas* (June 15, 2020). With this Court's recent finding that "but for Boeing's criminal conspiracy 346 people would not have lost their lives in the crashes" (Dkt. 116), this case has tragically become the deadliest corporate crime in our nation's history.

### 1. The Government Has Not Provided Any Compelling Interests Supporting the DPA.

Turning first to the Government's arguments, the Government claims that, were the DPA to be invalidated, it would lose "its leverage" (Dkt. 128 at 2) to require Boeing to follow through on its DPA commitments. But the Government never explains (much less provides admissible evidence) that those commitments are valuable.[11] And those commitments have already been substantially met. *See* Dkt. 128 at 5.

The Government also audaciously claims that setting aside the DPA would harm the "interests of the … victims." Dkt. 128 at 4. The Court should ignore this offensive argument. The families can speak for themselves—the Government has no right to tell the families what is in their "interests" in a case where the families are seeking to hold Boeing fully accountable for its crime which killed 346 of their family members. And to the extent that the Government is asking this Court to ignore the families' CVRA rights, the Government's argument itself violates its own CVRA obligations to protect victims' rights. *See* 18 U.S.C. § 3771(c)(1) (officials in the Department of Justice "shall make their best efforts to see that crime victims are … accorded the rights described in [the CVRA].").

In any event, the Government's arguments purportedly on the families' behalf are specious. The Government first claims that the families "could lose the benefit of Boeing's admissions" in "civil suits they have filed against the company." Dkt. 128 at 5. But the DPA has no current impact

---

[11] The Government also claims that "a breach of the agreement at this late date could leave the Government with no ability to seek any further criminal penalties …." Gov't Remedies Br. at 5. This is a moot point until the Government indicates that it plans to seek "further" criminal penalties. And to the extent that the Government's concern here is "seeking criminal penalties" against Boeing, removing the DPA's immunity provisions blocking pursuit of criminal penalties against Boeing is supportive of that goal, not at odds with it.

on the civil suits—a fact that the Government's criminal attorneys could have learned if they had timely conferred with the families. Regarding the Indonesian crash victims' families' civil suits, approximately 186 of the 189 civil cases have already been settled. One case has been specially set for trial on December 19, 2022. But this is a case in which Boeing has stipulated to liability—and the only remaining question is damages. Thus, Boeing's DPA admissions are irrelevant. *See* Stipulation of the Parties, *Sethi v. Boeing*, No. 1:20-cv-05498 (N.D. Ill. April 18, 2022) (attached as Ex. 1). And regarding the Ethiopian crash victims' families' civil suits, in all but two of the cases a stipulation has been entered in which Boeing has admitted liability. *See* Agreed Stipulation of the Parties, *In re: Ethiopian Airlines Flight ET 302*, No. 1:19-cv-02170 (N.D. Ill. November 15, 2021) (attached as Ex. 2). Here again, Boeing's supposedly valuable DPA admissions have no real-world effect. *See also* Certificate of Remaining Issues, at 1.

, The Government has also shifted to a new argument that Boeing could somehow argue for an "offset" in the civil cases for money that the DPA Fund has paid to the families.

Notably, the Government is raising this speculative offset argument on Boeing's behalf—Boeing makes no such claim. Perhaps this is because Boeing well knows that the Fund is "completely separate" from the civil cases. *See* Fund Compensation Protocols, Ex. 3 ("This Compensation Fund is completely separate from any civil litigation related to the Crashes.  As such, Beneficiaries will never be asked to waive any claim against Boeing or sign any release in order to receive money from the Compensation Fund."). But in any event, the Government's argument ignores the fact that the Fund distributions to the families were not connected to any specific injury. *See* DPA ¶¶ 13-19. As a result, the payments from the Fund could not "offset" the specific claims that the Ethiopian crash victims' families are pursuing for various specified injuries.. *See* Illinois Pattern Jury Instruction 45.04A (Wrongful Death) (attached as Ex. 4). An

offset is not permitted without specific proof that one payment specifically and directly "offsets" another—i.e., two payments are being made for exactly the same thing. *See United States v. Sizemore*, 850 F.3d 821, 829 (6th Cir. 2017) (affirming decision not to offset insurance payments "to victims" in criminal case where payments "were general settlements that were never specifically designated to a particular category of loss").

Moreover, Boeing does not possess any *right* to an offset. An "offset" is an equitable claim. *See City of Arlington, Tex. v. F.D.I.C.*, 963 F.2d 79, 81 (5th Cir. 1992). In this case, Boeing is an admitted criminal which negotiated a DPA that was illegally concealed from the families—and thus it is not entitled to take advantage of equitable arguments. *See generally* Dkt. 65 at 21 (*citing, e.g., Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) (the "clean hands doctrine requires that one who seeks equity, does equity.").

### 2.   Boeing Has Not Provided Any Compelling Interests Supporting the DPA.

Turning to Boeing's claims, Boeing argues that settled principles of contract law and due process prevent the Court from reopening the DPA. Dkt. 129 at 9. Boeing is wrong.

Turning first to contract law, it is a fundamental principle that an illegal contract does not create enforceable legal rights. Dkt. 71 at 28 (*citing, e.g., In re OCA, Inc.,* 552 F.3d 413, 422 (5th Cir. 2008)). Boeing briefly responds to this pivotal point only in a footnote. Dkt. 129 at 9 n.5. Boeing claims that, because none of the DPA's provisions "is contrary to law," *id.*, questions of contract illegality are not implicated here. But it is hornbook law that "[a]n illegal contract is a promise that is prohibited because the performance, *formation*, or object of the agreement is against the law." AM. JUR. 2D CONTRACTS § 217 (Nov. 2022 update) (emphasis added). Here, of course, the Court has already held that the DPA's "formation" was "against the law"—specifically, the CVRA. Thus, the DPA was *procedurally* illegal even though, if the CVRA had been complied with, the agreement's terms might have been substantively permissible.

Provisions in contracts are routinely declared unenforceable for the way in which they were negotiated, even where the underlying provisions themselves are fully valid. *See, e.g., Oce Nor. Am., Inc. v. Caputo*, 416 F. Supp. 2d 1321, 1328 (S.D. Fla. 2006) (collecting authorities that "[f]raud in the execution of a contract . . . renders a contract void"). For example, if an attorney signs a settlement agreement without being authorized to do so, the settlement contract is not illegal "in itself" but rather simply unenforceable because it was entered into without proper authority. *See, e.g., Diaz v. Rio Grande Resources Corp*., 2006 WL 3337520 (W.D. Tex. 2006). More broadly, it is "an accepted tenet of contract law" that when a contract's terms are such that [the contract] will have … an effect [of defrauding one or more third parties]," then "such a bargain contradicts public policy and cannot be enforced." 15 CORBIN ON CONTRACTS § 85.1 at 340 (rev. ed. 2020); *see, e.g., Seaboard Oil Co. v. Donovan*, 128 So. 821, 825 (Fla. 1930) ("[s]pecific performance [of a contract] will be denied when the rights of innocent third parties have intervened so that enforcement of the contract would be harsh, oppressive, or unjust to them.").

Boeing also points to the fact that, as a private company, it had "no authority over the Government's actions or non-actions with respect to the CVRA." Dkt. 129 at 9 n.5. But the relevant issue is not Boeing's *authority* over the Government's CVRA compliance, but rather Boeing's *awareness* of the Government's non-compliance. While Boeing is a private company, it was obviously the Government's close negotiating partner in crafting the DPA. Boeing never asserts that it was unaware that the Government was concealing the DPA from the families—indeed, a joint agreement to proceed in stealth mode was apparently the whole point of the covert enterprise.

In this case, the victims' families have repeatedly proffered that they can establish that Boeing did not detrimentally rely on any belief that the Government was properly informing the families about the DPA. To the contrary, the families have alleged that "Boeing was aware that the

13

victims' families had not been conferred with and that the DPA was being kept secret from them." Dkt. 124-1 at 6 (¶ 277); *id.* at 12 (¶ 305). The reality here is that the Government and Boeing together entered into a DPA knowing that the families were being kept in the dark. Thus, Boeing joined with the Government to enter a DPA in violation of federal law. Consequently, there is no unfairness in removing from the DPA several provisions that might have been valid if the CVRA had been followed. *See* Sarah Worthington & Grainne Mellon, *Statutory Rules, Common Law Rules and Public Policy in the Global Financial Crisis*, 29 PENN ST. INT'L L. REV. 613, 625 (2011) (explaining that "a bilateral arrangement cannot deprive innocent third parties of their legitimate statutory rights" and "the only freedom that exists is the freedom of contract within the law").

Boeing also tries to wheel out the big gun of constitutional law, contending that "[d]ue process prevents the Government from … failing to perform its side of the agreement …." Dkt. 129 at 11. But the Government has performed its "side of the agreement." It has complied with its obligations to Boeing under the DPA. The Government failed to honor its legal obligations under the CVRA to the victims—raising the question of how to respond to that violation.[12]

The implicit premise for Boeing's argument is that Boeing could not anticipate the Government's failure to comply with the CVRA. But in considering which contract terms are enforceable, the Court must consider not simply the parties' expectations but more broadly the parties' "*justified* expectations." RESTATEMENT (SECOND) OF CONTRACTS § 178(2)(a) (emphasis added). As noted above, the families are prepared to prove that Boeing was fully aware that the Government was concealing the DPA. *See* Dkt. 124-1 at 6 (¶ 277). Boeing did not expect (justifiably or otherwise) the Government to do anything else.

---

[12] To the extent that Boeing is arguing that there is some unfairness or unconstitutional "taking" surrounding its need to get a refund for the $500 million that it paid to the Government, Boeing would remain free to sue the Government for return of its money (plus interest).

Boeing also argues that it "cannot be forced to accept new terms" in the DPA. *Id.* at 10. But—again—the families are not arguing for "new terms" in the DPA, but simply for excision of the illegally-negotiated immunity provisions that block the families from conferring with the Government. Thus, there is no occasion for applying the caselaw cited by Boeing involving a "material breach" of the contract that would somehow "excuse" Boeing's compliance with the contract. *Id.* There is no "breach" here, but simply enforcement of a federal statute, the CVRA, which supersedes the parties' covertly crafted provisions.

Nor is there occasion for concluding that "if a defendant lives up to his end of the bargain, the government is bound to perform its promises." *Id.* at 11. It is well settled that "the law will not tolerate privately negotiated end runs around the criminal justice system." *United States v. Sheinbaum*, 136 F.3d 443, 448 (5th Cir. 1998) (internal quotation omitted). The Government and Boeing tried to negotiate an end-run around the CVRA—and now the jig is up. Using its power to "ensure" that the victims are afforded their CVRA rights, this Court is required to excise the DPA's immunity provisions.

## IV. The Families Are Entitled to Other Remedies.

In addition to excision of the DPA's immunity provisions, the victims' families are also entitled to other remedies, as recounted in their earlier briefing. *See, e.g.,* Dkt. 52 at 27-28. The families continue to seek all those remedies. In this supplemental brief, the families explain why they are entitled to an order directing the Government to provide information to the families about Boeing's crimes and, relatedly, how the Government violated the CVRA. *See* Dkt. 52 at 27-28.[13]

---

[13] The Government seems to suggest that the Court has already ruled on the issue of ordering the Government to produce information in denying as "moot" the families' discovery motion. *See* Dkt. 128 at 1 (*citing* Dkt. [72]). The Government is confused here. While the families' motion to obtain discovery to help prove "crime victim" status (Dkt. 72) has become moot, what remains pending are (1) the families' separate argument that disclosing information is a proper

In determining whether to award this remedy, the Court should consider that the Government has proposed *no remedy* for its CVRA violation. To be sure, the Government has agreed to confer about *future* decisions in this case (other than prosecuting Boeing, which is barred by the DPA). *See* Dkt. 128 at 1. But that prospective agreement is not a remedy for the Government's past CVRA violation—the families are entitled to a judicial response to that violation. *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("where there is a legal right, there is also a legal remedy") (internal quotation omitted).

Rather than do nothing, this Court should take various steps to remedy the Government's CVRA violation and protect the victims' families' rights. As described above, one appropriate remedy is excision of the DPA's immunity provisions, which would protect the families' interests in conferring with the Government about prosecuting Boeing. But another concern that the

---

*remedy* for the Government's CVRA violation (*see, e.g.,* Dkt. 52 at 27 (families' request for information as a remedy)) and (2) the families' proffered facts supporting their argument that the Court should award various remedies to them (*see, e.g.,* Dkt. 71 at 21, 28 (citing proffer in support of the families' remedies arguments)); *see also* Dkt. 124 (families move to re-assert their proffered facts in support of remedies).

Yesterday, both the Government and Boeing filed oppositions to the families' pending motion to re-assert facts relevant to their remedies request. *See* Dkt. 134, Dkt. 135. But contrary to their positions that the issue of remedies "is a pure question of law" (Dkt. 135 at 1), this Court obviously must make its remedies ruling based on a complete factual record. Previously this Court gave the families a limited opportunity to build the record in this case, granting them the opportunity to call several expert witnesses. *See* Dkt. 96 at 20-21 (granting the families an evidentiary hearing on "crime victim" status because the families "have not yet had an opportunity to develop the record with that evidence [i.e., evidence related to Boeing's causing harm to the families]"; allowing the families to call three experts). The families, however, can provide more evidence related to remedies issues than just the testimony of aeronautical experts. *See* Dkt. 124. Accordingly, just as the families were entitled to establish the facts underlying their "crime victim" status, the same need for a full record may now exist with respect to remedies—and, if necessary, the Court should give the families a fair opportunity to build that record. *See generally* Dkt. 124.

Of course, the Court may instead simply conclude that the record is already sufficiently clear that it can award the families their requested remedies without any further record building. *See* Part VI, *infra*.

Government has ignored is the families' interest in information about the case. Until just a few days ago, the Government had failed to confer with the families about *anything* in this case. The Government obscures this point in its remedies brief. The Government cleverly states that it has "engaged" with the families over the past year. Dkt. 128 at 8. But, as the Government knows, it repeatedly refused to *confer* with the families—even after the families learned about the DPA. *See* Dkt. 124-1 at 9-10 (in three separate meetings after the families filed their CVRA motion, the Department refused to confer and instead agreed only to a "listening session" to hear from the victims); *see also* Dkt. 130 (recounting the Government's recent failures to confer). To "confer" means "to compare view or take counsel: consult." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 260 (11th ed. 2006). For eleven months after the filing of the DPA—and then for the next eleven months after the families filed their CVRA motion—the Department refused to confer at all.

Because of the Government's failures to confer along the way about this case, an appropriate remedy is for this Court to now direct the Government to share with the families the Government's evidence of Boeing's crimes and the DPA's negotiation history. To be sure, this will be an after-the-fact sharing of information, rather than the CVRA's required conferrals at earlier points throughout the process when conferral should have occurred. But Congress enacted the CVRA because it found that, in case after case, victims "were kept in the dark by prosecutors too busy to care . . . ." 150 CONG. REC. S4262 (Apr. 22, 2004) (colloquy by Sens. Feinstein and Kyl). By adopting a better-late-than-never approach, this Court should direct that the Government must shed light on Boeing's crime and the DPA's negotiation so that the families are no longer "in the dark."

## V. An Arraignment Is Now Required.

As the Court will recall, eleven months ago the victims' families filed a motion seeking a public arraignment of Boeing and a hearing on the conditions of Boeing's release. Dkt. 18. The Government opposed Boeing's arraignment. Dkt. 61. The families replied. Dkt. 66. Now, eleven months later, in its remedies filing, the Government has reversed its position—stating that it "does not oppose an arraignment of Boeing, although the nature of such an arraignment will need to be determined by the Court." Dkt. 128 at 2. Also, as discussed during a recent meeting, the government has clarified that it will support the Movants' request that victims be allowed to be reasonably heard by the Court during, or in advance of, any arraignment, although the Court will need to determine the nature of the arraignment and the manner in which victims may be heard.

Boeing continues to oppose an arraignment, discussing *United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994). Dkt. 129 at 17. But *Moore* dictates the conclusion that Boeing must be arraigned. *Moore* explains that "[u]nless there is a valid waiver [of a defendant's right to an indictment], the lack of indictment in a federal felony case is a defect going to the jurisdiction of the Court." *Id.* at 173 (cleaned up). And "Rule 7(b) provides that the [defendant's] waiver must be made in *open court* after the defendant has been advised of the nature of the charge and his rights." *Id.* (emphasis added). Accordingly, under controlling Fifth Circuit precedent, this Court would potentially lack authority to continue these proceedings until Boeing makes its waiver of indictment in "open court." An arraignment is urgently required.

Boeing attempted to deflect the Court from this main point by arguing that the arraignment requirement "is not the [families'] argument to advance" because "Boeing can speak for its own interests." Dkt. 129 at 17. But the families have their own interests to protect. The families surely possess standing to alert the Court to the steps it needs to take to continue to have jurisdiction. And, because an arraignment will trigger a "release" proceeding, the families also now possess a

CVRA right to be heard at that time. *See* 18 U.S.C. § 3771(a)(4) (victims have the right to be heard at any public proceeding "involving release").

## VI. The Families Are Entitled to an Evidentiary Hearing Regarding the Government's Alleged "Good Faith" and Boeing's Knowledge of the CVRA Violation.

The victims' families believe that the facts underlying their arguments here are sufficiently clear that the Court should conclude, without an evidentiary hearing, that they are entitled to their requested remedies. But if the Court decides that a more extended investigation into the factual record is needed to determine the issues, an evidentiary hearing is warranted. In particular, if the Court is considering relying on the Government's alleged "good faith" in illegally concealing the DPA (Dkt. 128 at 7-8), the families respectfully request an evidentiary hearing on that factual issue. *See also* Dkt. 124 (requesting an evidentiary hearing) (discussed in note 13, *supra*).

As is apparent at this point in the proceedings, the victims' families do not believe that the Government (and Boeing) acted in good faith in reaching their secret deal. The families' concern was heightened during a recent meeting with the Government on November 18. In that meeting, the families repeatedly pressed the Government to explain the factual basis for its "good faith" argument, including explaining how the DPA came to be negotiated. The Government refused to provide any information about how the negotiations proceeded. *See* Certificate of Remaining Issues, at 1. The Government also refused to disclose any of its external communications with Boeing. *Id.*

The simple fact is that the Government's good faith—or bad faith—is a factual question. The Government surely has the burden of proving its own good faith, now that the Court has determined that it violated the law. The families have repeatedly proffered facts disputing the Government's alleged "good faith" and Boeing's purported lack of knowledge about the Government's CVRA violations—facts that contradict some of the assertions made in the parties'

recent briefs. *See* Dkt. 124-1. The Court could simply grant the families the remedies they request without considering these factual issues. But if a resolution of these factual issues is required to rule in the families' favor, the families respectfully request an evidentiary hearing.

### Conclusion

The families have not been afforded their right to confer with the Government about whether Boeing should be prosecuted for its conspiracy to deceive the FAA. The only way to protect the families' CVRA rights to confer, to timely notice of a DPA, and to be treated with fairness—and to fully protect judicial integrity—is to excise from the DPA the illegally-negotiated immunity provisions blocking Boeing's prosecution. The Court should enter an order excising those provisions from the DPA. The Court should also direct the Government to provide the families with relevant information in its possession about Boeing's crime and about how the DPA was negotiated. The Court should also arraign Boeing and hold a hearing on the appropriate conditions of release—a hearing at which the families would be entitled to participate.

Dated: November 22, 2022

Respectfully submitted,

/s/ Warren T. Burns                          /s/ Paul G. Cassell
Warren T. Burns (Texas Bar No. 24053119)     Paul G. Cassell (Utah Bar No. 06078)
Burns Charest, LLP                           (Counsel of Record)
wburns@burnscharest.com                      Utah Appellate Project
                                             S.J. QUINNEY COLLEGE OF LAW
Darren P. Nicholson                          University of Utah
Burns Charest, LLP                           cassellp@law.utah.edu
dnicholson@burnscharest.com                  (no institutional endorsement implied)

Kyle Kilpatrick Oxford                       Tracy A. Brammeier
Burns Charest LLP                            Clifford Law Offices PC
koxford@burnscharest.com                     tab@cliffordlaw.com

                                             Erin Ressa Applebaum
                                             Kreindler & Kreindler LLP
                                             eapplebaum@kreindler.com

                                             Pablo Rojas
                                             Podhurst Orseck PA
                                             projas@podhurst.com

*Attorneys for Victims' Representatives*

## <u>CERTIFICATE OF REMAINING ISSUES</u>

On November 18, 2022, the Justice Department held a videoconference call with some of the families whose rights are at stake in this case. During that call, the Department repeatedly refused to confer with the families about many of the subjects raised by the families in this motion and, in any event, did not agree to any of the remedies proposed in this brief (other than conceding that the families should be able to speak at Boeing's arraignment). In the Court's briefing order, the Court directed that the families brief "shall inform the Court of any prior remedies proposals that have been resolved or are moot as a result of the parties' scheduled meet and confer, if any." Dkt. 133 at 1. Accordingly, as directed, the families respectfully inform the Court that, a result of the meeting, (1) none of the previous remedies proposals have been resolved and (2) none of the outstanding issues in the case are moot. The families do note that the Government is supporting their right to be heard at an arraignment. But the arraignment issue is best treated separately—not as a "remedy" but rather as something required by law, as explained in a separate pending motion by the families. Dkt. 18.

Without going into all of the details of the meeting, the families wish to identify the following points that may be relevant to the matters pending before the Court:

- In response to repeated questions from the families regarding the impossibility of prosecuting Boeing under the current DPA and, accordingly, the impossibility of conferring on that subject, the Department took the position that it was legally bound to follow the DPA and therefore legally could not consider Boeing's prosecution for crimes covered by the statement of facts, because such a prosecution would violate the DPA;

- The families informed DOJ that Boeing's "admissions" in the DPA were not helpful—and, indeed, were counterproductive—to the civil suits;

- In response to repeated concerns from the families about the Department's representations in its briefs that it acted in "good faith," the Department refused to provide information about that subject, including refusing to explain the negotiating history of the DPA or its communications with Boeing during the negotiations;

- In response to statements from the families that Boeing must have been aware that the DPA was being kept secret from the families, the Department did not deny Boeing's knowledge and said that it could not discuss the subject.

If any of these points are disputed by the Government, the families respectfully request an evidentiary hearing to prove them.

/s/ Paul G. Cassell

Paul G. Cassell

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 22, 2022, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.

*/s/ Paul G. Cassell*
Paul G. Cassell
