**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) **No. 4:21-CR-5-O** |
| THE BOEING COMPANY, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

**THE BOEING COMPANY'S RESPONSE TO MOTION
FILED BY POLSKIE LINIE LOTNICZE LOT S.A. PURSUANT TO THE CRIME
VICTIMS RIGHTS ACT FOR FINDINGS THAT THE PROPOSED BOEING
DEFERRED PROSECUTION AGREEMENT WAS NEGOTIATED IN VIOLATION OF
THE VICTIM'S RIGHTS AND FOR REMEDIES FOR THOSE VIOLATIONS**

1

## PRELIMINARY STATEMENT

Polskie Linie Lotnicze LOT S.A. ("LOT")—a large, government-owned airline that is one of approximately 65 global operators of the 737 MAX—asks this Court to find that it has crime victim status under the Crime Victims' Rights Act ("CVRA"), and to award it extraordinary remedies. LOT makes its request nearly a year after representatives of those who died in the crashes (the "Representatives")[1] initiated this CVRA action in this court; almost two years after The Boeing Company ("Boeing") entered the Deferred Prosecution Agreement ("DPA") with the Department of Justice ("DOJ"); and at the same time as it pursues a lawsuit against Boeing in another federal district court for economic damages allegedly suffered as a result of the 737 MAX grounding. LOT contends that this Court's order dated October 21, 2022, finding that the Representatives have victim status applies equally to LOT. It requests remedies that are similar to those the Representatives are seeking, such as reopening the DPA and giving LOT a voice in renegotiating it, while also going further in demanding financial compensation for damages it claims to have suffered as a result of the grounding of the 737 MAX. LOT's motion should be denied because (i) as a lessee of Boeing airplanes that had no involvement in the MAX accidents, it is not a CVRA victim, and (ii) the remedies it seeks are not available or appropriate.

LOT's motion fails because LOT was not "directly and proximately harmed as a result of" the offense described in the DPA. 18 U.S.C. § 3771(e). LOT does not claim that its 737 MAX planes were involved in the MAX accidents; rather, it claims to have been harmed when the European Union Aviation Safety Agency ("EASA") grounded the MAX following the accidents.

---

[1] Boeing adopts the terminology this Court used in its October 30, 2022 Order to refer to the Representatives, but expressly preserves all objections and reserves all rights to appeal any and all of the Court's rulings made in the course of these proceedings, including with respect to this Court's determination of the Representatives' standing under the CVRA and the process it followed in reaching that determination.

LOT's contention that the EASA grounding order was a reasonably foreseeable consequence of the conduct at issue in the DPA is simply not plausible. Civil aviation authorities rarely ground commercial airplane models, even after major airplane accidents, and make such decisions based on a complex mix of considerations. Stretching the causation analysis that underlies CVRA victim status to cover an airline like LOT that was not involved in the accidents, but claims harm from subsequent regulatory action, would expand the boundaries of CVRA status "much too far." *See In re Boeing 737 Max Pilots Litigation*, 2022 U.S. Dist. LEXIS 197454, *31–32 (N.D. Ill. Oct. 31, 2022) (addressing a similar causation question involving the claimed harm from the MAX grounding). Nor does the reasoning behind this Court's prior finding that the Representatives have standing as crime victims under the Act suggest a different result. For this Court to find that the DPA offense directly and proximately caused the EASA grounding order, and therefore the alleged harm to LOT, would require a significant and unwarranted additional logical leap that this Court should decline to make.

Furthermore, even if LOT could establish its standing as a CVRA crime victim, there is no legal basis for the Court to grant the remedies LOT seeks as to Boeing. Federal appellate courts have consistently held that district courts lack the authority to reject or modify the terms of a DPA because doing so would override DOJ's exercise of prosecutorial discretion in determining whether to enter into a DPA and on what terms. Indeed, the CVRA itself emphasizes that it cannot be construed to limit DOJ's prosecutorial discretion, and Boeing is not aware of any court that has relied on the CVRA to modify or withhold approval of a DPA. Even if district courts might possess such authority in certain circumstances, that relief would be unavailable here where LOT did not bring its motion until over 21 months into the DPA's term, after Boeing had expended considerable funds and other resources ensuring full compliance with its obligations under the Agreement. For

3

all these reasons, the relief LOT seeks—including reopening the DPA and modifying key terms of the Agreement—would violate basic principles of contract law, due process, and equity, and is foreclosed for those reasons as well.[2]

At bottom, LOT's motion is nothing more than an attempt to leverage the CVRA proceedings for advantage in its civil litigation seeking recovery from Boeing for alleged economic harm resulting from the 737 MAX grounding. But the CVRA does not exist to give parties with a tangential relationship to a charged criminal offense, who are claiming economic harm, an alternative mechanism for advancing their civil litigation objectives. Nor are LOT's complaints about Boeing's approach to compensating MAX customers (Mot. at 3–4) remotely meritorious. Over the past three years, Boeing has worked hard to resolve the grounding-related claims of MAX purchasers and lessees through commercial negotiations. As noted in Boeing's public securities filings, it has successfully settled a significant majority of these claims in this way, at great expense. LOT, however, has opted to file a civil lawsuit against Boeing in a different federal court. While that is its right, LOT's choice to pursue a litigation path does not transform it into a crime victim under the CVRA. This Court should reject LOT's attempt—asserted for the first time at this late date—to use an unwarranted expansion of the CVRA to resolve its commercial claim.

## BACKGROUND

On January 7, 2021, DOJ filed an Information in this Court charging Boeing with a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. The Information was filed together with a DPA between DOJ and Boeing, in which DOJ agreed to defer prosecution of the

---

[2] If this Court concludes it cannot deny LOT's motion without further proceedings, Boeing respectfully suggests that the Court consider deferring proceedings on that motion until after the Court rules on the remedies sought by the Representatives, which may eliminate entirely the need for further proceedings on LOT's motion, or at least substantially narrow the issues.

Information for three years and then to dismiss the charge if Boeing complied with the DPA's requirements over the term of the Agreement. LOT admits that it found out about the DPA "the day it was filed." Mot. at 4. As with all DPAs, the parties to that Agreement filed a joint motion on January 7, 2021 (Dkt. 5), to exclude the DPA's term from any calculation of time under the Speedy Trial Act and to defer all criminal proceedings until further motion of the parties; this Court granted that joint motion on January 24, 2021. Dkt. 13. No objections were raised under the CVRA or otherwise following either the January 7 announcement of the DPA or this Court's January 24 order granting the Speedy Trial Act waiver, until nearly a year later on December 16, 2021, when the Representatives filed three related motions seeking relief under the CVRA. *See* Dkt. 17; Dkt. 18; Dkt. 52. LOT—a large, government-owned airline that was at that time actively pressing claims against Boeing related to the grounding in another federal court—did not at that time advance any claims in these proceedings.[3]

On October 21, 2022, this Court ruled that the Representatives had established "standing to assert rights as the Representatives of 'crime victims' under the CVRA," Dkt. 116 at 2, 18, while reserving "the question of remedy" for a later determination. Those proceedings remain ongoing. The procedural history of the proceedings involving the Representatives is well known to the Court and is not repeated here.

On October 28, 2022—seven days after this Court ruled that the Representatives had CVRA standing, and nearly two years after the DPA was publicly filed and LOT found out about it—LOT filed the instant motion seeking relief under the CVRA. Dkt. 120. The motion requests

---

[3] The December 2021 letter to DOJ, Dkt. 120 at 20–28, that LOT attached to its motion did not claim rights as a crime victim under the CVRA or allege that DOJ had violated LOT's right of conferral or otherwise under the Act. Rather, the letter claimed that in opposing LOT's separate civil case against Boeing for damages resulting from the grounding of the MAX, Boeing had breached the DPA, and it asked the DOJ to hold Boeing accountable for that.

a finding that LOT has standing as a "crime victim" under the CVRA. It also seeks remedies for DOJ's alleged violation of LOT's CVRA rights, including (i) to re-open the DPA, (ii) for LOT to participate in negotiating a revised DPA, (iii) to obtain financial relief for LOT and other foreign airlines, (iv) for an order requiring DOJ to confer with LOT, and (v) for other undefined remedies based on DOJ's alleged violation.

LOT's motion comes more than a year after LOT initiated civil litigation against Boeing in the U.S District Court for the Western District of Washington seeking alleged economic losses from EASA's grounding of the 737 MAX. *See* Complaint, *Polskie Linie Lotnicze LOT S.A. v. Boeing*, Case No. 21-cv-1449 (W.D. Wash. Oct. 15, 2021), Dkt. #1 ("Compl."). LOT's complaint asserted twelve claims, including for fraud, product liability, and breach of warranty. *Id.* Boeing moved to dismiss, and on September 30, 2022, the district court granted Boeing's motion with respect to nine of the claims.[4] On October 31, three days after filing the instant motion, LOT filed an amended complaint seeking to revive some of its dismissed claims. *See* First Amended Complaint, *Polskie Linie Lotnicze LOT S.A. v. Boeing*, Case No. 21-cv-1449 (W.D. Wash.), Dkt. #43. Discovery in the case is proceeding.

## ARGUMENT

**I.     LOT does not have standing under the CVRA.**

The CVRA affords rights to "crime victims," which the Act defines as those "directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e).

---

[4] In its complaint and in opposing Boeing's motion to dismiss, LOT repeatedly invoked the DPA. *See* Compl., ¶ 176; Opposition to Motion to Dismiss, at 1, 4, 8–9, 21, 24, *Polskie Linie Lotnicze LOT S.A. v. Boeing*, Case No. 21-cv-1449 (W.D. Wash.), Dkt. #29.

"The CVRA's 'directly and proximately harmed' language imposes dual requirements of cause in fact and foreseeability. A person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm. A person is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct." *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011).

LOT claims standing under the CVRA as a victim of the offense charged in the DPA for the same reasons articulated in this Court's October 21, 2022 order finding that the Representatives possess CVRA standing. *See* Dkt. 120 at 5 ("[T]he causal connection between Boeing's fraud and LOT's grounding losses is the same as that between Boeing's fraud and the crash victims' families' losses [under the CVRA]."). In fact, however, LOT and the Representatives are not similarly situated, and the differences between them—including a different relationship to the accidents, a different alleged injury, and a different and more attenuated theory of causation—preclude LOT's claim for CVRA standing.

To begin with, it is important to emphasize what LOT is *not* asserting, namely, that any of its MAX planes were involved in any 737 MAX accidents. Rather, it claims economic harm allegedly sustained when EASA grounded the purportedly "improperly certified" 737 MAX following the two crashes.[5] According to LOT, EASA would not have grounded the 737 MAX and LOT would not have sustained harm but for Boeing's fraud on the FAA-AEG; it asserts that

---

[5] LOT's argument also fails because it is based on the factually incorrect assertion that the MAX was "improperly certified." Nothing in the DPA calls into question whether the MAX was properly certified as meeting federal airworthiness standards. To the contrary, the crime charged in the DPA—which must form the basis of any CVRA claim here—involves a misrepresentation to the FAA-AEG (a different group of FAA personnel), and the DPA recognizes that Boeing "disclosed" MCAS's expanded operational scope "to those personnel who were responsible for determining whether the 737 MAX met U.S. federal airworthiness standards." *See* DPA, Dkt. 4 at A-8.

the grounding was a reasonably foreseeable consequence of that conduct. *Id*. But that argument fails even accepting the Court's finding that the conduct described in the DPA directly and proximately caused the crashes. The decision by an aviation authority to ground an airplane model involves a complex mix of considerations that go well beyond the mere fact that a crash involving that model has occurred.[6] Most airplane crashes do not result in groundings; the MAX was not grounded after the Lion Air accident; and the last previous global grounding in response to a fatal airplane accident occurred in August 2000.[7] Thus, as the Government succinctly explained, Dkt. 145 at 3–4, LOT's claimed harm from the grounding was not caused by the DPA offense—and certainly was not a "reasonably foreseeable consequence of" it, as a matter of law. *In re Fisher*, 640 F.3d at 648.

The *Fisher* decision, with which this Court is familiar, *see* October 21 Op. at 9–10, bears emphasis here because the putative victim in *Fisher* was just as removed from the offense at issue as LOT is here. In *Fisher*, a construction company claimed that its failure to obtain contracts to build affordable housing developments was the result of a criminal conspiracy among public officials to receive bribes from a competitor. *See* 640 F.3d at 647. The Fifth Circuit affirmed the

---

[6] LOT claims that this Court "held" in the October 21 opinion that "when the FAA, the 'world's eminent aviation authority,' issued an emergency order to ground the 737 MAX aircraft due to safety concerns, global operators of the 737 MAX such as LOT listened." Mot. at 8 (quoting October 21 Op. at 12). But beyond stating that the President ordered the MAX's grounding three days after the ET302 crash (*see* October 21 Op. at 5), this Court did not even mention the causes or circumstances of the decision to ground the airplane in the U.S. and elsewhere, let alone "hold" that some inevitable causal chain existed. Moreover, EASA grounded the 737 MAX on March 12, 2019—the day *before* the FAA's emergency grounding order. *See* https://tinyurl.com/3dm63ksf (CNBC) (European Union joins others in grounding Boeing 737 Max jets, further isolating US) (March 12, 2019). So any suggestion that EASA was following the FAA, or that FAA actions caused the EASA grounding, is factually incorrect.

[7] *See* https://tinyurl.com/3ke6eys3 (Aviation Safety Network) (List of global aircraft groundings in history) (March 14, 2019).

district court's finding that the movant "failed to prove that he had been directly and proximately harmed by [the] criminal conduct" because his "claim that he los[t] a meaningful opportunity to acquire the business obtained by his competitor as a result of the conspiracy" was "too speculative," *id.* at 647–48.  *See id.* at 649.  Likewise, in *In re McNulty*, 597 F.3d 344 (6th Cir. 2010), the Sixth Circuit found that a former employee fired for not participating in a charged antitrust conspiracy lacked CVRA standing because the employee alleged no "harms . . . normally associated with the crime of antitrust conspiracy." *Id.* at 351–52.  Just as in *Fisher* and *McNulty*, LOT's claims of economic harm from the grounding of the MAX are too far afield from the charged offense to confer CVRA standing.

This result is also supported by the causation analysis recently applied by a federal district court in dismissing multiple suits brought against Boeing by 737 MAX pilots who sought compensation for lost income allegedly caused by the plane's grounding.  *See In re Boeing 737 Max Pilots Litigation*, 2022 U.S. Dist. LEXIS 197454 (N.D. Ill. Oct. 31, 2022).  Like LOT, the plaintiffs there were not involved in MAX accidents and sought purely economic damages.  Ruling that the plaintiffs had failed to establish proximate causation for their claims of lost wages, the court explained that:

> Stretching causation to cover people who weren't on the planes would expand the boundaries of liability much too far.  It is foreseeable that a defective plane might not fly. And it is natural to think that a defective design might cause accidents.  But when you think about a defective plane, and the problems that could ensue, lost income by people who don't crash probably isn't at the top of the list.

*Id*. at *31–32.  This analysis applies with equal force here.  As with the MAX pilots who allegedly lost piloting time and income from the grounding, "[s]tretching causation to cover" an airline lessee that was not involved in MAX accidents but alleges economic losses from the grounding

9

"would expand the boundaries of liability much too far."[8]  Indeed, the Illinois district court's reasoning applies *a fortiori* here, where LOT must demonstrate that the charged offense specifically—not Boeing's conduct generally in designing the aircraft—directly and proximately caused its losses.[9]

      Finally, even if this Court has questions about LOT's causation analysis, this is not the right forum to resolve them.  LOT has initiated separate civil litigation against Boeing in the Western District of Washington for LOT's economic claims stemming from the grounding.  That court recently granted Boeing's motion to dismiss most of LOT's claims, and its surviving claims have now progressed to discovery.  As that litigation proceeds, LOT will be able to further develop the factual predicate for its theories of Boeing's liability for LOT's economic harm through the civil discovery process, which is uniquely suited to bring before the court all facts relevant to those issues.  By contrast, a collateral criminal proceeding such as this one is not conducive to resolving complex and contested civil claims like these, and using the CVRA procedure for this purpose will run the risk of interfering with the orderly resolution of the civil proceeding that LOT has chosen

---

[8] On November 28, 2022, Smartwings, A.S. ("Smartwings"), another Boeing 737 MAX customer with civil litigation pending in the Western District of Washington to recover losses allegedly suffered from the 737 MAX's grounding, also filed a motion in this Court seeking relief as a crime victim under the CVRA. Dkt. 141.  Boeing is responding to this motion separately, but notes here that Smartwings' filing illustrates the  potentially limitless implications of adopting LOT's overbroad and incorrect interpretation of standing under the CVRA in complex litigation such as that involving the MAX.

[9] LOT argues (at 2) that the DPA establishes its victim status—and that of all other airlines around the world that operated the MAX—by requiring Boeing to pay the "Airline Compensation Amount" "to its airline customers for the direct pecuniary harm that its airline customers incurred as a result of the grounding of the Company's 737 MAX." *See* DPA, Dkt. 4 at 12.  That overreads the DPA.  The DPA does not describe the airlines as victims of the offense charged, and the Airline Compensation Amount does not constitute restitution under the Agreement or otherwise.  Boeing's agreement to compensate third parties as part of its negotiated resolution with DOJ does not transform those third parties into crime victims with rights under the CVRA.

to initiate to redress these claims.

## II. There is no legal basis to impose the remedies sought.

Even if LOT could qualify as a CVRA victim, its Motion should still be denied because the remedies it seeks as to Boeing are unavailable as a matter of law. Specifically, LOT seeks an order (i) reopening the DPA and requiring LOT's participation in renegotiating the Agreement; (ii) exercising the Court's supervisory power over the DPA, or revising the DPA, to provide "relief" to Boeing's foreign airlines customers; (iii) requiring DOJ to confer with LOT about other means to hold Boeing accountable; and (iv) imposing any other remedy the Court deems appropriate. Dkt. 120 at 14. As with all else about LOT's motion, LOT primarily echoes theories put forth by the Representatives and remedies sought by them.

Boeing's responses to the Representatives' motions have already explained why these remedies are legally unavailable, *see* Dkt. 62; Dkt. 129, and the Government also re-emphasized these principles in its response to LOT's motion, Dkt. 145 at 4–9. Boeing incorporates those arguments by reference here and will only briefly restate them. No legal basis exists for this Court to reject, rewrite, supervise, or reopen the DPA based on a CVRA violation by the government, especially where LOT waited over 21 months after the DPA was executed to bring its motion. Circuit court precedent confirms that the terms of a DPA are committed to the Executive's prosecutorial discretion, *see United States v. Fokker Servs. B.V.*, 818 F.3d 733, 740–41 (D.C. Cir. 2016) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.") (internal quotation marks omitted); likewise, precedent holds that district courts lack "an ongoing oversight power over the Government's entry into or implementation of a DPA." *United States v. HSBC Bank USA, N.A.*,

863 F.3d 125, 138 (2d Cir. 2017). These decisions further confirm that a court's authority in granting an exclusion of time under the Speedy Trial Act extends only to ensuring "that a DPA does not exist merely to allow evasion of speedy trial time limits, but instead serves the *bona fide* purpose of confirming a defendant's good conduct and compliance with law." *Fokker*, 818 F.3d at 745 (emphasis added).

The reasoning of *Fokker* and *HSBC Bank* applies fully here and forecloses the relief LOT seeks. LOT does not argue that entering into the DPA was a "pretext" to evade speedy trial limits, *see Fokker*, 818 F.3d at 744. Nor would such an argument be possible: The DPA on its face is a detailed and extensive agreement with multiple mechanisms to ensure that Boeing complies with its legal obligations and fulfills its commitment to transparency with the DOJ, including through regular reporting. Lacking any basis for challenging the DPA's *bona fides*, LOT instead seeks to leverage DOJ's alleged CVRA violation with respect to the Representatives to mount its own attack on DOJ's charging decision and the prosecutorial discretion reflected in the DPA, all for the purpose of extracting additional financial compensation from Boeing. *See* Dkt. 120 at 14 (requesting that this Court reopen the DPA and exercise its "supervisory power over the existing DPA, as well as a revised DPA, to ensure that Boeing's compliance with the DPA(s) provides relief to Boeing's foreign air customers"). Neither the Speedy Trial Act nor this Court's general judicial supervisory powers authorize these remedies for a CVRA violation. That is especially so given that LOT raised no concerns about the DPA after the Information was filed or after this Court granted the Speedy Trial Act waiver, but instead waited nearly two years—until a week after this Court found that the Representatives possess CVRA standing, and less than a month after most of LOT's claims were dismissed in the Washington State litigation.

Nor does the CVRA itself authorize the relief sought by LOT. To the contrary, the CVRA emphasizes that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." 18 U.S.C. § 3771(d)(6). As DOJ explained in its responses to the motions filed by both the Representatives, Dkt. 58, and LOT, Dkt. 145, DOJ's "considered judgment was—and remains—that a DPA, rather than a guilty plea, was the appropriate resolution for Boeing in this matter based on the facts and circumstances." Dkt. 58 at 5. Moreover, while the CVRA provides that "[a] victim may make a motion to re-open *a plea or sentence*," 18 U.S.C. § 3771(d)(5) (emphasis added), that authorization by its terms does not extend to agreed resolutions such as DPAs. In addition, multiple provisions of the CVRA confirm that challenges to a criminal resolution should be brought promptly and resolved expeditiously,[10] which LOT's motion—brought over 21 months after the DPA went into effect—certainly was not.

Finally, basic principles of contract law, due process, and equity foreclose the relief requested by LOT. LOT is asking the Court to reopen the DPA and modify key terms of the Agreement. But the DPA is a voluntary contractual agreement between the DOJ and Boeing, for which each side gave valuable consideration, and Boeing cannot be forced to enter into a new agreement or to accede to a DPA that has been amended to remove key elements that Boeing negotiated and on which it relied. *See Lynch v. United States*, 292 U.S. 571, 579 (1934) ("When

---

[10] *See, e.g.*, 18 U.S.C. § 3771(d)(3) (district court is to act "forthwith" in response to motion by CVRA victim, and any appeal of the district court's order is to be decided by the court of appeals within 72 hours (absent agreement by the parties)); *see also id.* (appellate court may not enter a "stay[] or subject [those proceedings] to a continuance of more than five days for purposes of enforcing this chapter"); 18 U.S.C. § 3771(d)(5) (authority under CVRA to reopen a plea or a sentence limited to cases where "the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied" and "the victim petitions the court of appeals for a writ of mandamus within 14 days").

the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals."). Nor is it clear what steps would follow were this Court to grant LOT's request and order that certain provisions of the DPA be renegotiated, given that Boeing cannot be forced to accept new terms and has been performing its obligations under the Agreement—at great cost and effort—since it entered into the DPA. *See, e.g.*, Dkt. 129 at 9–11. Due process likewise would prevent the government—including both DOJ and this Court—from changing the terms or failing to perform its side of the DPA after extracting this lengthy period of performance from Boeing. *See id.*

Finally, even if legally permissible, such a remedy would be grossly inequitable where Boeing—by the government's own estimation—has fully honored its obligations under the DPA, including making all required payments, complying with its reporting obligations to DOJ, and devoting substantial resources to enhancing its compliance program. *See* Dkt. 4 at 9–14.[11]

## CONCLUSION

For the reasons stated by DOJ and as set forth above, Boeing respectfully requests that LOT's motion be denied.

---

[11] Indeed, the equitable doctrine of laches is intended to apply in just this type of circumstance. The Government in its response to LOT provided a thorough analysis of the application of laches to CVRA disputes, and its specific application to LOT's motion. Dkt. 145 at 9–14. In brief, as the Government explains, laches is appropriately applied to cabin allegations relating to the CVRA, as both concern equitable principles, and the text of the CVRA emphasizes speed and finality. Laches "has three interrelated elements: (1) delay in asserting a right or claim; (2) that the delay was inexcusable; (3) that undue prejudice resulted from the delay." *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1161 (5th Cir. 1982); *see also Matter of Bohart*, 743 F.2d 313, 325 (5th Cir. 1984). As described above, LOT has known about the DPA since January 7, 2021, yet waited nearly two years to request relief under the CVRA, during which time Boeing has performed its contractual obligations. Thus, LOT inexcusably delayed in its asserting its CVRA claim, and Boeing has suffered undue prejudice as a result, triggering the application of laches to bar the claim.

Respectfully submitted,

| | |
|---|---|
| **McGUIREWOODS LLP** | **KIRKLAND & ELLIS LLP** |
| */s/ Benjamin L. Hatch* | */s/ Mark R. Filip* |
| Benjamin L. Hatch | Mark R. Filip |
| VA Bar No. 70116 | IL Bar No. 6226541 |
| bhatch@mcguirewoods.com | mark.filip@kirkland.com |
| | |
| Brandon M. Santos | Craig S. Primis |
| VA Bar No. 75380 | DC Bar No. 454796 |
| bsantos@mcguirewoods.com | cprimis@kirkland.com |
| | |
| McGuireWoods LLP | Kirkland & Ellis LLP |
| 888 16th Street N.W., Suite 500 | 1301 Pennsylvania Avenue NW |
| Black Lives Matter Plaza | One Freedom Plaza |
| Washington, DC 20006 | Washington, DC 20004 |
| Tel: 757.640.3727 | Tel: 202.879.5000 |
| Fax: 757.640.3947 | Fax: 202.654.9645 |
| | |
| ***Counsel for The Boeing Company*** | Jeremy Fielding |
| | Texas State Bar No. 24040895 |
| | Jeremy.fielding@kirkland.com |
| | |
| | Kirkland & Ellis LLP |
| | 1601 Main Street |
| | Dallas, Texas 75201 |
| | Tel; (214) 972-1770 |
| | Fax: (214) 972-1771 |
| | |
| | ***Counsel for The Boeing Company*** |

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2022, the foregoing was filed with the Clerk of the United States District Court for the Northern District of Texas using the CM/ECF system. The system will serve counsel of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch