UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

----------------------------------------------------------------- x

UNITED STATES OF AMERICA      §      Case No.  4-21-cr-00005-O
                                 §
                Plaintiff,        §
                                   §
       vs.                               §
                                   §
THE BOEING COMPANY             §
                                   §
                Defendant.     §
                                   §

----------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW TO THE DOJ'S OPPOSITION IN FURTHER
SUPPORT OF THE MOTION OF POLSKIE LINIE LOTNICZE LOT S.A.
PURSUANT TO THE CRIME VICTIMS RIGHTS ACT FOR FINDINGS
THAT THE PROPOSED BOEING DEFERRED PROSECUTION
AGREEMENT WAS NEGOTIATED IN VIOLATION OF THE VICTIM'S
RIGHTS AND FOR REMEDIES FOR THOSE VIOLATIONS**

## INTRODUCTION

In opposing LOT's Motion seeking "crime victim" status under the CVRA,[1] the DOJ devotes most of its Opposition to arguing that it would be unfair to the DOJ and Boeing if the Court were to exercise its broad authority to impose remedies for CVRA violations, including the remedies proposed by LOT, the crash victims' families ("Families"), and other air carrier victims.  The DOJ's attempt to challenge LOT's potential remedies based on principles of equity not only distracts from the threshold standing issue raised in LOT's Motion, as well as the Court's controlling October 21 Order (ECF No. 116) resolving that issue in LOT's favor, but it improperly shifts focus from the actual wrongdoers in this case—Boeing, for causing two catastrophic accidents and the worldwide grounding of the 737 MAX by admittedly lying to the U.S. Government during the aircraft certification process; and the DOJ, for violating the CVRA by failing to consult the victims of Boeing's crime, including LOT, before entering into a wholly inadequate DPA with Boeing.

The DOJ's tactics are nothing more than that—tactics—and cannot overcome the dispositive nature of the Court's October 21 Order, which makes clear that LOT qualifies as a victim of Boeing's crime under the CVRA and is entitled to remedies for the DOJ's refusal to consult with LOT before entering into the DPA with Boeing, in violation of the statute.  Further, although the Court need not reach the issue of the specific remedies available to LOT now, the substantial briefing that has been filed with the Court on the issue of CVRA remedies by the Families, the DOJ, and Boeing, confirms that this Court has the authority to order the remedies proposed in LOT's Motion, and take any other action that justice so requires.

---

[1] All defined terms in LOT's Motion (ECF No. 120) have the same meaning herein.

## ADDITIONAL RELEVANT FACTS[2]

Contrary to the DOJ's recitation of "facts" pertinent to LOT (ECF No. 145 at 2),[3] LOT did not wait "nearly a year" after the DPA (ECF No. 4) was filed on January 7, 2021 to seek relief as a victim of Boeing's conspiracy to defraud the U.S. Government in connection with its certification of the 737 MAX. Between the filing of the DPA and LOT's December 31, 2021 letter to the DOJ (the "December 31 Letter"), LOT was actively attempting to recover the losses it suffered as a result of Boeing's fraud by negotiating directly with Boeing (*see* ECF No. 120 at 20, 26-27)—which, as announced in the DPA, had established a $1.77 billion Airline Compensation fund to compensate "airline customers for the direct pecuniary harm that [Boeing's] airline customers incurred as a result of the grounding of the Company's 737 MAX." ECF No. 4 at 12, ¶ 12. If Boeing had acted in good faith during those negotiations—or the DOJ had not ignored Boeing's airline crime victims by giving Boeing complete discretion to deplete the fund before the Criminal Information and DPA were filed[4]—the need for LOT to contact the DOJ prior to December 31, 2021 would have been obviated.

The DOJ also mischaracterizes LOT's December 31 Letter, asserting that LOT did not request a response from the DOJ. It is obvious from the face of the Letter that LOT was requesting a response from the DOJ; otherwise, the letter would have been purposeless. LOT

---

[2] The facts needed to decide this Motion are contained in LOT's Motion (ECF No. 120 at 5-7), and—with the exception of the factual misstatements—in the DOJ's Opposition. *See* ECF No. 145 at 2-4. LOT submits these Additional Relevant Facts to correct the DOJ's misstatements and to apprise the Court of new developments since the filing of LOT's Motion.

[3] In citing to specific pages in documents previously filed on the Court's electronic docket, LOT uses the ECF page numbers printed at the top of each filing.

[4] The DPA provides that "[t]he Airline Compensation Amount shall be offset by any payments already made by the Company . . . The Company shall pay any remaining amounts due under the Airline Compensation Amount to its airline customers by the end of the Term and shall provide documentation to the Fraud Section evidencing the amounts paid." ECF No. 4 at 12, ¶12.

also specifically asked the DOJ to take action against Boeing—*i.e.*, respond—for Boeing's violations of the DPA.  *See* ECF No. 120 at 26-27.  Further, the DOJ *did* respond to LOT (*see id.* at 18, ¶ 5)—albeit inadequately—which prompted further requests by LOT that the DOJ "take the steps necessary to ensure Boeing's compliance with the DPA, and/or re-opens the DPA . . . ."  *See id.* at ¶ 6; *see also* Exs. 1 and 2 to the attached Dec. 23, 2022 Declaration of Anthony U. Battista ("Battista Decl. II") (requesting a response from the DOJ, and the DOJ stating it would).

Most recently, on December 8, 2022, LOT sent another letter to the DOJ to advise it of additional DPA breaches by Boeing.  *See* Ex. 3 to Battista Decl. II.  Specifically, in response to Requests for Admission served by LOT in its civil action against Boeing, Boeing refused to admit the truth of the DPA's Statement of Facts notwithstanding that doing so is an express condition of the DPA.  *See* ECF No. 4 at 20-21, ¶ 32.  In sum, the DOJ's attempt to create the impression that LOT sat on its rights with respect to its CVRA status (and the legal implications of that alleged failure, which LOT addresses below) does not comport with the actual facts.

## ARGUMENT

I.     **LOT is a "Crime Victim" within the Meaning of the CVRA and the Court's October 21 Order**[5]

The DOJ's argument regarding the threshold issue of whether LOT qualifies as a crime victim under the CVRA, such that it is entitled to remedies for the DOJ's statutory violations, amounts to a single paragraph in its 16-page Opposition.  *See* ECF 145 at 5. The short shrift that the DOJ gives to LOT's CVRA-standing argument is understandable, as the DOJ cannot evade the fact that this Court's October 21 Order is dispositive on this issue.

---

[5] If the Court would be assisted by an evidentiary hearing in determining LOT's CVRA standing, LOT would appreciate the opportunity to conduct one.  LOT would present evidence that not only demonstrates causation under the CVRA, but also why the punishments the DPA imposes on Boeing are incongruous with the crimes charged and conduct alleged.

3

The DOJ attempts to avoid application of the October 21 Order by contending that, unlike the Families, LOT is not a crime victim because the harm it sustained from Boeing's criminal conduct—pecuniary losses arising from the grounding of Boeing's 737 MAX aircraft— arose from an EASA grounding order, which allegedly broke the chain of causation flowing from Boeing's crime against the U.S. Government to LOT.  The DOJ's attempt to introduce EASA's role in the 737 MAX grounding as an intervening cause ignores that the Court already has rejected this argument in finding that the Families had CVRA standing notwithstanding the existence of foreign links in the chain of causation between Boeing's fraud and the accidents.

As explained in the Court's October 21 Order, "but for" Boeing's fraudulent concealment of MCAS, the 737 MAX crashes and the resulting harm to the Families would not have occurred because the pilots of Lion Air Flight 610 and Ethiopian Airlines Flight 302 would have received adequate training on how to respond to MCAS activations on the 737 MAX.  *See* ECF No. 120 at 9-11 (citing ECF No. 116 at 13-15).  The Court specifically rejected the DOJ's efforts to break the "but for" chain of causation by attempting to inject the actions of foreign regulators and actors between Boeing and the accidents because it is well known that foreign aviation authorities and air carriers rely on Boeing's and the FAA's decisions regarding U.S. aircraft.  *See id*. at 4, 12-17 (further explaining that there can be other "but for" causes of a victim's harm, but those other causes do not change that Boeing's conduct was a "direct cause" of the harm alleged).  The direct link from Boeing's fraudulent conduct to the crashes is no different than the link from the grounding that naturally followed those crashes.

Nevertheless, the DOJ attempts to make issue of the fact that EASA's grounding order came one day before the FAA's, arguing that EASA did not rely on the FAA in making its grounding determination.  The DOJ's position does not make sense, as it is based on the

4

implausible suggestion that FAA would not have concluded like EASA that the unprecedented occurrence of two crashes involving new 737 MAX airplanes warranted a grounding;[6] or that LOT would have continued to operate the 737 MAX if EASA had not issued a grounding order. The DOJ cannot seriously contend that to obtain crime victim status LOT was required to continue to operate the MAX, putting thousands of lives at risk. The absurdity of the DOJ's argument is further underscored by the fact that separate from EASA's order, Boeing recommended that the MAX be grounded, keeping the chain of causation directly tied to Boeing.[7]

The Court's October 21 Order also dispenses with the proximate cause requirement of LOT's CVRA standing. With respect to the Families, the Court found Boeing's criminal conduct proximately caused the deaths of the Families' loved ones because "Boeing could foresee that its deceit created the 'existence of a *general* danger', not an 'awareness of the exact sequence of events'" that occurred. ECF No. 116 at 16 (emphasis in original and internal citations omitted). Thus, whether Boeing was specifically aware that an EASA grounding order would result from intentionally withholding information about MCAS from the FAA is irrelevant, as the Families already demonstrated that Boeing could foresee that its deceitful conduct created the general risk that the 737 MAX would crash and, by extension, grounded when its lies were exposed. As the Court explained, the proximate cause test is satisfied so long as a layperson could predict that Boeing's fraudulent conduct would result in the grounding of

---

[6] Indeed, the FAA found that without the grounding there would have been 15 additional 737 MAX crashes. *See* FAA Transportation Risk Assessment, available at: https://www.flightglobal.com/download?ac=65911.

[7] *See* The Boeing Company, *In Consultation with FAA, NTSB, and its Customers, Boeing Supports Action to Temporarily Ground 737 MAX Operations*, March 13, 2019, https://boeing.mediaroom.com/news-releases-statements?item=130404&_gl=1*12bb10x*_ga*MTEwNzc5MTYwNi4xNjcwNjA3ODM3*_ga_3N2PEGZ4HD*MTY3MDk2NTk3Ny4zLjAuMTY3MDk2NTk3Ny4wLjAuMA.

5

the 737 MAX. *See id.* at pp. 16-17. That question is easily answered—laypeople would expect that aviation regulators would prohibit the operation of an aircraft with a substantial risk of killing more people.[8]

Finally, the DPA itself dispenses any argument as to whether Boeing's criminal conduct directly caused LOT's damages. It states that Boeing "agrees to pay a total Airline Compensation Amount of $1,770,000,000 to its airline customers for the *direct pecuniary harm that its airline customers incurred as a result of the grounding of the Company's 737 MAX.*" ECF No. 4 12, ¶ 12 (emphasis added).[9] Thus, the DOJ has conceded that the pecuniary harm Boeing's airline customers incurred was "direct," and it cannot now claim that EASA somehow broke that direct, causal chain.[10]

## II.    Laches Does not Apply to LOT's Motion or Preclude a Finding that LOT is a Victim of Boeing's Crimes Within the Meaning of the CVRA

The DOJ's argument that the equitable doctrine of laches bars LOT's requested relief fails on both the law and the facts. As a threshold matter, laches is an equitable doctrine, and "[a] laches defense cannot be asserted by a party with unclean hands." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620-22 (5th Cir. 2013). The DOJ violated the CVRA; it has unclean hands; it is not entitled to invoke laches. *See id.* The only question of equity the DOJ should be

---

[8] Additionally, Boeing must have known that if its fraudulent efforts to secure Level B training were discovered, the 737 MAX would have to be grounded for at least some time while pilots were retrained under Level D requirements. *See id.* at pp. 11-14.

[9] At the time of the grounding, LOT was one of approximately 59 carriers operating the MAX. The DOJ easily could have organized a meeting of carrier representatives to discuss remedies that would deter Boeing from future criminal conduct, and address the common damage suffered by the carriers.

[10] The case cited by the DOJ for that proposition, *Bank of Am. Corp. v. City of Miami, Fla.* 137 S. Ct. 1296 (2017), is inapposite. That case analyzed the causal chain of harm under the Fair Housing Act, not the CVRA. Moreover, the Supreme Court specifically instructed that the "[p]roximate-cause analysis is controlled by the nature of the statutory cause of action." *Id.* at 1305. The Court's October 21 Order already analyzed causation in the context of the CVRA (as opposed to the FHA), and held causation was proven with respect to the Families. The Court has every reason to reach the same conclusion with respect to LOT.

asking is what steps it can take to ensure that the CVRA victims are protected now.[11]

Moreover, even if the DOJ had the right to invoke laches it would not apply here. As set forth in the Additional Relevant Facts section above, LOT did not sit on its rights; rather, it attempted to negotiate a good faith resolution with Boeing directly. When Boeing did not reciprocate that effort, LOT wrote to the DOJ seeking intervention. A party does not need to go to the court first to avoid the application of laches; parties that attempt to resolve a dispute out of court are not penalized by laches, and the time spent seeking the out of court resolution does not count toward the alleged delay in the context of laches. *See Thomas v. Bryant*, 366 F. Supp. 3d 786 (S.D. Miss. 2019), *aff'd*, 938 F.3d 134 (5th Cir. 2019), *vacated on other grounds on reh'g en banc sub nom*, 961 F.3d 800 (5th Cir. 2020); *see also Leonard v. United Airlines, Inc.*, 972 F.2d 155, 158-59 (7th Cir. 1992).

Further, even if LOT had waited 21 months as the DOJ incorrectly alleges, that time was not unreasonable, and certainly not long enough to invoke laches under the present circumstances involving a DPA that is not yet final. The cases cited by the DOJ all involved far longer delays. *See, e.g.*, *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474 (5th Cir. 1980) (9-year delay); *Smith v. Caterpillar, Inc.*, 338 F.3d 730 (7th Cir. 2003) (8.5-year delay); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698 (5th Cir. 1994) (9-year delay). Invoking laches also requires a finding that, *inter alia*, LOT's delay was "inexcusable." *Thomas*, 938 F.3d at 148. Any delay on LOT's part was excused by Boeing's bad-faith negotiations, and the DOJ's failure to respond to LOT's requests for assistance.

Finally, laches requires a finding that the party seeking to invoke the doctrine suffer

---

[11]  The DOJ cannot wash itself of its CVRA violations by promising to adhere to better Attorney General Guidelines going forward. Such promises provide nothing to LOT for the DOJ's past CVRA violations.

"undue prejudice" from the alleged delay.  *Id.*[12]  No such finding is appropriate here while the DPA's three-year term is open and contingent upon Boeing complying with its terms—which it has not done.  Indeed, the DPA is subject to being re-opened or rejected based on Boeing's continued refusal to admit to the DPA's Statement of Facts in other litigation. *See* Ex. 3 to Battista Decl. II.  And, the "prejudice" that the DOJ argues would result—allegedly upsetting the "finality" of a DPA that is not yet final—would have occurred regardless of whether LOT brought its motion the day after the DPA was filed or in 2023.  Once the DOJ negotiated the DPA in secret in violation of LOT's CVRA rights, any remedy for that violation necessarily carried the risk of disrupting the finality the DOJ hoped to achieve on the date of the DPA's filing because the DOJ wrongfully excluded victims such as LOT from negotiations.

III. **The Court Has the Authority to Order the Remedies Proposed by LOT For the DOJ's Violation of LOT's CVRA Rights**

Although the Court need not decide the nature of LOT's proposed remedies now,[13] should the Court address the issue, the substantial briefing submitted by all parties establishes the Court's authority to order the remedies proposed by LOT, as well as others.

The DOJ argues that this Court has no power to afford LOT any of the remedies specified in its Motion, such as the "re-opening" or "monitoring" of the DPA.  In effect, the DOJ argues that the CVRA is toothless: once a DPA has been entered into in violation of a victim's rights,

---

[12] The prejudice also cannot be merely hypothetical, as it would be here, because it is possible that after conferring with LOT, the DOJ, LOT and Boeing all could agree on a solution.  *See United States v. Admin Enter., Inc.*, 46 F.3d 670, 673-74 (7th Cir. 2002).

[13] As explained in LOT's Motion, it seeks a determination that it has standing as a crime victim under the CVRA, and that the DOJ violated LOT's CVRA rights so as to entitle LOT to remedies under the statute.  *See generally* ECF No. 120.  LOT's Motion sets forth potential remedies for the DOJ's CVRA violations, but notes that such remedies should be what "the Court deems appropriate," and that additional briefing may be necessary.  *See id.*, at 14 and n.1.  Thus, although the DOJ devoted most of its Opposition to disputing the availability of LOT's suggested remedies, the Court can—and perhaps should—first determine LOT's status as a crime victim and the scope of the DOJ's CVRA violations before addressing what remedies are appropriate.

nothing can be done.  The DOJ appears to believe that it can violate the CVRA with impunity.  As explained in the Families multiple briefs on the issue, which LOT incorporates herein and summarizes below, the DOJ is wrong.[14]

Both the CVRA's text and courts interpreting it demonstrate that courts possess a broad remedial power over CVRA violations.  The CVRA itself authorizes aggrieved parties such as LOT to protect their rights via "motion" "in a district court." 18 U.S.C. § 3771(d)(3).  It would make no sense for Congress to allow district courts to hear motions concerning CVRA violations while simultaneously preventing the same courts from fashioning a remedy after determining a violation occurred.  *Cf. United States v. Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 457-59 (D. N.J. 2009) (explaining that the CVRA places responsibility on district courts to ensure that crime victims are afforded their CVRA-guaranteed rights, and that one purpose of the CVRA was to have an enforcement mechanism); *see also* ECF No. 65 at 16-22 (demonstrating that the cases the DOJ relies upon in opposition to the aforementioned implications of the CVRA's text and intent are contradicted by the law of the Fifth Circuit).

The Court's power to impose remedies for the violation of LOT's CVRA rights also flows from its broad supervisory powers.  As the Families explain, the DPA was not just an agreement between the DOJ and Boeing; rather, it was filed in this Court and requires judicial approval.  *See* ECF No. 17 at 10-14.  The Court cannot accept the DPA without determining the adequacy of the punishment imposed upon Boeing.  *Id.*  And if the Court, as it should,

---

[14] The DOJ also argues that the Court should decline to fashion a remedy for LOT because doing so would upset the public interest, and because the DOJ has acted in good faith.  The second argument easily is dispensed: this Court already found that the DOJ violated the Families' CVRA rights in connection with the negotiation of the DPA, precluding a finding of good faith.  *See* ECF No. 116 at 17-18.  Additionally, it is difficult to see how re-opening the DPA would conflict with as opposed to serve the public interest.  The public is best served when prosecutors abide by the CVRA and impose punishments commensurate with the nature of the prosecutor's allegations, the crimes charged, and the damaged sustained by crime victims.

determines that the punishment is inadequate, it necessarily follows that the Court may take an action that could alter the DPA. That is exactly what LOT seeks: that the DOJ be required to consider the harm Boeing caused LOT when determining the nature and scope of punishment appropriate to impose upon Boeing via a DPA or any other means.

The DOJ also incorrectly argues that the Court only can review the DPA for matters of impropriety, and that other review violates principles of Constitutional separation of powers. First, there is impropriety at issue—the DOJ's violation of Boeing's victims' CVRA rights. Further, the law of this Circuit, *HSBC*, the Speedy Trial Act, the historical rights of courts to reject DPAs, all make clear that the Court's review and remedy authority. *See* ECF No. 65 at 16-22. Indeed, the DOJ's argument on this point conflicts with its position in other cases based on this precedent (*see id.*), as well as the Court's October 21 Order, recognizing that there must be some remedy for CVRA violations. *See* ECF No. 116 at 17-18.

Finally, the DOJ's argument as to the Court's power to "re-open" the DPA is semantic. Whether phrased as "re-opening," "modifying," or "rejecting" the DPA, the point and requested remedy is the same: the Court has not formally approved the DPA, and therefore can reject it and state its reasons for doing so, such that LOT and other victims can be assured a meaningful right to participate in a revised DPA that the Court might approve. *See* ECF No. 17 at 15, 17-18 (the Families making the same argument, which LOT adopts and incorporates here).

## <u>CONCLUSION</u>

LOT respectfully requests that this Court find that LOT is a crime victim under to the CVRA, that the DOJ violated LOT's CVRA rights, and that LOT is entitled to a suitable remedy for that violation.

Dated: December 22, 2022          Respectfully Submitted,

WICK PHILLIPS GOULD & MARTIN, LLP

_____
Jeffrey W. Hellberg, Jr. (Texas Bar No.00796738)
Wick Phillips Gould & Martin, LLP.
3131 McKinney Avenue, Suite 500
Dallas, TX 75204
Phone: 214-692-6200
jeff.hellberg@wickphillips.com

-and-

CONDON & FORSYTH, LLP
Anthony U. Battista, Esq. (NY Bar No. 2802775)
abattista@condonlaw.com
Diana Gurfel, Esq. (NY Bar No. 3040391)
dgurfel@condonlaw.com
Evan Kwarta, Esq. (NY Bar No. 4401543)
ekwarta@consonlaw.com
Mary Dow, Esq. (NY Bar No. 4782017)
mdow@condonlaw.com
Condon & Forsyth LLP
7 Times Square, 18th Fl.
New York, NY 10036
Phone: 212-490-9100
Facsimile: 212-370-4453

*Attorneys for Polskie Linie Lotnicse LOT S.A.*

11

## CERTIFICATE REGARDING CONFERENCE

LOT is aware of Local Rules 47.1(a) and (b) regarding motion practice. This rule requires the "parties" in a criminal case to comply with various requirements, including a conferral regarding a motion. Because LOT is not a "party" to this criminal case, LOT does not believe that the conferral requirement applies to this motion. It is proceeding pursuant to separate authority for asserting a crime victim's right contained in the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(3) and Fed. R. Crim. P. 60.  Additionally, LOT believes that it was not possible to confer with the attorneys for each party given the time between the Court's October 21, 2022, Order and the submission of its motion on October 28, 2022.

_____
JEFFREY W. HELLBERG

12

## **CERTIFICATE OF COMPLIANCE REGARDING LENGTH**

I certify that, in compliance with Local Rule 47.2, this brief is 10 pages.

_____
JEFFREY W. HELLBERG

**CERTIFICATE OF SERVICE**

On December 22, 2022, I filed the foregoing document with the clerk of courts for the U.S. District Court, Northern District of Texas, using the Court's CM/ECF filing system.

_____
JEFFREY W. HELLBERG