**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Case No. 4-21-cr-00005-O |
| Plaintiff, | § | |
| vs. | § | |
| THE BOEING COMPANY | § | |
| Defendant. | § | |

---

**REPLY MEMORANDUM OF LAW TO THE BOEING COMPANY'S OPPOSITION IN FURTHER SUPPORT OF THE MOTION OF POLSKIE LINIE LOTNICZE LOT S.A. PURSUANT TO THE CRIME VICTIMS RIGHTS ACT FOR FINDINGS THAT THE PROPOSED BOEING DEFERRED PROSECUTION AGREEMENT WAS NEGOTIATED IN VIOLATION OF THE VICTIM'S RIGHTS AND FOR REMEDIES FOR THOSE VIOLATIONS**

**INTRODUCTION**

Like the DOJ,[1] Boeing spends most of its Opposition to LOT's Motion addressing the alleged "[in]equity" that would result if the DPA were to be "re-opened," ignoring that it was Boeing's and the DOJ's wrongful conduct that created the circumstances of which it complains. *See* ECF No. 150 at 3-4, 13.[2] Boeing has it backwards. Boeing is the charged criminal, and LOT is the crime victim. Similarly, it was the DOJ that delayed taking action required by the CVRA, not LOT. LOT's hands are clean. Equity thus demands that Boeing and the DOJ take responsibility for the damage done, not LOT, which seeks only what the law guarantees. Any hardship that Boeing and the DOJ purport to suffer should not be borne by LOT, as it would be the consequence of Boeing's and the DOJ's deliberate, unlawful choices.

Boeing's Opposition also distracts from the threshold issue on which LOT asks the Court to rule: LOT's standing and entitlement to remedies as a "crime victim" under the CVRA. On this issue, none of Boeing's factual distortions or references to inapplicable caselaw can circumvent the dispositive nature of the Court's October 21 Order, which makes clear that LOT is entitled to the same CVRA status and rights as the Families whom Boeing and the DOJ also harmed. The alleged intervening causes that Boeing attempts to introduce do not break the chain of causation flowing directly from the crime for which Boeing has been charged to the harm LOT has suffered. Indeed, the Court already considered and rejected Boeing's nearly identical causation arguments made against the Families. LOT is therefore entitled to the same victim status under the CVRA, and to remedies suitable to address those violations.

---

[1] All defined terms in LOT's moving papers (ECF No. 120) and LOT's reply to the DOJ's Opposition (ECF No. 153) have the same meaning herein.

[2] All page number cites herein are to the ECF pages at the top of each filed document.

## ADDITIONAL RELEVANT FACTS[3]

Boeing makes two of the same misstatements of fact as the DOJ that merit additional clarification here. First, Boeing misleadingly implies that the almost two-year worldwide grounding of the 737 MAX was some kind of choice made by EASA and LOT. In doing so, Boeing ignores that: (1) Boeing itself recommended that 737 MAX aircraft be grounded;[4] (2) the FAA concluded that without a grounding, many additional 737 MAX accidents would occur;[5] and (3) all civil aviation regulators overseeing 737 MAX operations and air carriers operating the aircraft grounded them. This is not a situation, as Boeing wrongfully suggests, where there was a choice as to whether to ground the aircraft—it was the only means of avoiding additional deaths. Boeing's criminal conduct in defrauding the FAA during the 737 MAX certification process caused that grounding; EASA simply memorialized it.

Second, Boeing misstates that LOT sat on its rights for 21 months before seeking relief as a victim of Boeing's fraudulent conduct. *See id.* at 3-4. As LOT already explained, and which Boeing assuredly knows, LOT first sought relief directly from Boeing, attempting to negotiate a good-faith resolution of its claims with Boeing for several months. *See id.* LOT only sought the DOJ's assistance after it became clear that Boeing would not remediate its wrongdoing. Similarly, LOT only sought this Court's assistance after it became clear that the DOJ preferred to shield its inadequate DPA with Boeing from judicial scrutiny rather than honor the CVRA rights of Boeing's

---

[3] As in LOT's Reply to the DOJ's Opposition (ECF No. 153), this section only addresses relevant factual misstatements in Boeing's Opposition. A summary of the relevant facts needed to decide LOT's Motion can be found in LOT's opening brief. ECF No. 120 at 5-7.

[4] *See* The Boeing Company, *In Consultation with FAA, NTSB, and its Customers, Boeing Supports Action to Temporarily Ground 737 MAX Operations*, March 13, 2019, https://boeing.mediaroom.com/news-releases-statements?item=130404&_gl=1*12bb10x*_ga*MTEwNzc5MTYwNi4xNjcwNjA3ODM3*_ga_3N2PEGZ4HD*MTY3MDk2NTk3Ny4zLjAuMTY3MDk2NTk3Ny4wLjAuMA.

[5] *See* FAA Transportation Risk Assessment, available at: https://www.flightglobal.com/download?ac=65911.

victims.  *See id.*

Separately, Boeing also claims that LOT incorrectly stated that the 737 MAX was "improperly certified," arguing that the aircraft met federal airworthiness standards, and that Boeing only was charged with making criminal, fraudulent misrepresentations to the FAA AEG. Not only is Boeing's argument false, it straddles the line of breaching the DPA by demonstrating that Boeing is refusing to "accept [] responsibility for . . . the facts described in the [DPA's] Statement of Facts." ECF No. 4 at 20, ¶ 32.  The basic premises of the DPA are that: (1) Boeing's misrepresentations to the FAA AEG caused the FAA to certify the 737 MAX under Boeing's requested conditions because the FAA did not know that Boeing was misrepresenting and concealing material facts integral to the safe operation of the aircraft;[6] and (2) the FAA would not have done so had Boeing been truthful.  *See, e.g., id.* at 32, ¶¶ 16-17; 38, ¶¶ 34-35; 40-41, ¶¶ 42-43, 46-47; *see also* ECF No. 116 at 12 (this Court concluding that the FAA's decisions were made "*in reliance*" on Boeing's fraudulent misrepresentations) (emphasis in original).  That the impropriety in connection with the 737 MAX's certification was caused by Boeing, rather than the FAA or other regulators, does not change the fact that the certification was improper.

## ARGUMENT

### I.   LOT IS A "CRIME VICTIM" WITHIN THE MEANING OF THE CVRA AND THE COURT'S OCTOBER 21 ORDER

Similar to the DOJ's Opposition to LOT's Motion, Boeing argues that LOT is not a crime victim within the meaning of the CVRA because, notwithstanding the Court's October 21 Order,

---

[6] The 737 MAX flight manuals that Boeing delivered to its customers were an integral part of the aircraft and, thus, an integral part of determining whether the aircraft satisfied the FAA airworthiness requirements. *See Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1158 n.4 (9th Cir. 2000).  Thus, Boeing cannot avoid the fact that 737 MAX was falsely certified as airworthy by attempting to distinguish information it provided to the FAA AEG from information it provided to the FAA.  Both were plainly "improper" and defective.

LOT's relationship to Boeing's crime, and the chain of causation flowing from Boeing's crime to the harm LOT suffered, is allegedly more "attenuated" than the Families' respective connection to Boeing's fraud. *See* ECF No. 150 at 7. Boeing is wrong for the reasons already explained in LOT's Reply to the DOJ's Opposition. *See* ECF No. 153 at 4-7. LOT does not repeat those arguments here and only addresses the four additional points that Boeing asserts in its Opposition—all of which fail to show why the Court's October 21 Order is not controlling.

### A. Boeing Cannot Overcome the October 21 Order by Introducing Allegedly Superseding Causes of the Grounding, Which Was Indisputably the Direct Result of Boeing's Fraudulent Certification of the 737 MAX

Boeing claims that even accepting the Court's reasoning in the October 21 Order, the chain of causation from Boeing's criminal conduct to LOT's harm suffered is broken because of the variety of factors that can cause an air carrier or regulator to ground an aircraft, and because most accidents do not lead to groundings. This argument is self-defeating—the situation at issue does not reflect "most" accidents, and the decision to halt the aircraft's operation was not a complicated one. The 737 MAX grounding followed the unprecedented occurrence of two fatal accidents on brand new airplanes within a five-months period, and Boeing's public admission after the first crash that, unbeknownst to 737 MAX operators, the aircraft was equipped with a novel software logic, MCAS, on which *no* 737 MAX pilot had been trained. There was no question after the second crash that the 737 MAX could not be operated safely based on the information Boeing provided to—and intentionally withheld from—the FAA during the certification process, and that all 737 MAX operations must cease. Thus, there can be no question that Boeing's fraudulent certification of the 737 MAX *caused* the grounding just as it did the accidents. The "direct causal chain" between Boeing's criminal conduct and the harm LOT suffered is thus equally "clear" as it was for the Families. *See* ECF No. 116 at 13.

Boeing's attempt to distinguish the Families from LOT based on the foreseeability of the

accidents and the foreseeability of the grounding similarly fails. As the Court held, to demonstrate that the grounding was a foreseeable consequence of Boeing's fraud, LOT need only show "that Boeing could foresee that its deceit created the 'existence of a *general* danger', not an 'awareness of the exact sequence of events'" that occurred. *Id.* at 16 (emphasis in original and internal citations omitted). LOT can do so simply by pointing to the evidentiary findings this Court made prior to issuing its October 21 Order. Indeed, as this Court found, Boeing intentionally secured Level B pilot training for the 737 MAX under false pretenses to avoid the need for pilot simulator training on MCAS and withheld material information about MCAS from pilot training materials and operation manuals. *See id.* at 3. In doing so, Boeing had to have known a grounding of the aircraft would be necessary if any regulator learned that Boeing had hidden MCAS's full operational scope so as to minimize pilot training (*see id.* at 3-4) because, at a minimum, pilots would have to undergo the proper level of training before the 737 MAX could be flown again. Thus, applying the Court's holding that Boeing only had to be "general[ly]" aware of a potential grounding yields the same conclusion when applied to LOT's Motion that the Court reached in its October 21 Order, there is a direct chain of causation flowing from the crime for which Boeing is charged to the grounding that caused LOT's damages.

Lastly, Boeing cannot rely on actions taken by EASA to break the chain of causation between Boeing's criminal conduct, the accident, the grounding, and the resulting harm to LOT. Even if EASA's grounding order could be construed as a cause of LOT's harm—which, as explained below, it cannot—the Court's October 21 Order makes clear that "events often have multiple causes." *Id.* at 15. Thus, the Court found that just because alleged maintenance issues on the Lion Air Flight JT610 aircraft may have been "*a* but for cause of the accident[,] [t]hat does not override the simultaneous fact that MCAS was also a direct cause." *Id.* And so it is here:

while Boeing can try to frame EASA's grounding order as *a* cause of LOT's damages, that does not "override the simultaneous fact that" Boeing's criminal conduct "also was a direct cause" of the harm suffered by LOT. *See id.*[7]

### B. Contrary to Boeing's Assertion, Application of the CVRA Does Not Turn on the Type of Harm Suffered by the Crime Victim

Boeing's asks the Court to attach some unstated significance to the fact that LOT's claimed harm is solely pecuniary, while the Families' is not.[8] The nature of the harm Boeing caused LOT is immaterial under the CVRA. Nothing in the statutory text or history of the CVRA suggests that it only applies to physical harms. Similarly, Boeing does not cite to a single case holding that financial harms are somehow more attenuated to criminal conduct than physical harms, or that courts must employ a harm-measuring analysis when determining whether a party is a CVRA "crime victim." To the contrary, the CVRA's definition of "victim" is purposefully broad because there often is more than one victim of a crime, and while the types of harm each victim suffers can be different, all still are guaranteed the same rights under the CVRA. *See* ECF No. 120 at 8.

### C. The October 21 Order Is the Only Decision that Should Guide the Court's Resolution of LOT's Motion

---

[7] Boeing also asserts that the grounding was not caused by the conduct underlying the Criminal Information charged against it. This argument ignores reality and the October 21 Order. The Court already held that, notwithstanding that the accident aircraft were certified by foreign regulators and operated by foreign carriers, "the direct causal chain is clear" because "it is well-known that foreign airlines and civil aviation authorities rely on the FAA's guidance regarding airplane certification, [and] training requirements . . . ." ECF No. 116 at 12-13. There is no principled legal reason to distinguish between the actions of foreign regulators and carriers before the accidents as opposed to after.

[8] Relatedly, Boeing appears to suggest that LOT cannot seek relief under the CVRA while maintaining its civil action against Boeing in the Western District of Washington. *See* ECF 150 at 10. For one, Boeing cites no law, and LOT is not aware of any, holding that a crime victim cannot exercise its CVRA and civil litigation rights simultaneously. Parallel criminal and civil proceedings happen all the time in a wide variety of contexts. Indeed, the Court's October 21 Order adjudicated the Families' CVRA rights despite the fact that the Families have civil cases against Boeing in another forum. LOT is entitled to pursue two avenues to obtain relief from Boeing's crimes even if it is required to do so in separate forums.

Boeing argues that the holdings in three cases cited in its Opposition, wherein courts found a harm too attenuated to the alleged crime for the victim to qualify for status under the CVRA, apply to LOT. Not only does Boeing ignore the most "on-point" decision on LOT's Motion—this Court's October 21 Order—its reading and application of each case is wrong.

With respect to *Fisher I*,[9] Boeing claims that the Fifth Circuit's holding that a putative victim failed to prove causation under the CVRA because its claim the alleged crime caused it to lose a business opportunity was "too speculative" somehow applies to LOT. *See Fisher I*, 640 F.3d 645, 648 (5th Cir. 2011). This is wrong because no speculation is necessary here. It is not merely possible that LOT *could* suffer pecuniary harm as a result of Boeing's crime, *it already has*. In fact, notwithstanding its failure to compensate LOT, Boeing does not dispute that LOT suffered harm. *See generally* ECF No. 150.

Boeing next relies on *In re McNulty*, 597 F.3d 344 (6th Cir. 2010), which is not controlling here. Even if it was, it provides Boeing no support. There, the Sixth Circuit held that a petitioner did not have CVRA victim status when he alleged that he was fired for not participating in a criminal conspiracy. *See id.* at 352. But that holding was based on the fact that the firing was not a crime, but a civil wrong. *See id.* ("To fire an employee and prevent a former employee from being hired by another company may be illegal under the civil law, but they are not inherently criminal actions, nor are they actions inherent in the crime of conspiracy to violate antitrust laws to which [the defendant] pled."). By contrast, Boeing's conduct at issue was criminal in nature as evidenced by the facts that the DOJ charged Boeing with a federal offense, and Boeing has admitted to the truth of the facts supporting that charge. *See* ECF No. 4 at 2, ¶ 2.

Moreover, the causal connection between the crime and the harm that was missing in

---

[9] LOT employs the defined terms for the *In re Fisher* cases used in the October 21 Order.

*McNulty* is obvious here. The Court already ruled that the facts to which Boeing admitted in the DPA caused the accidents. As explained above, there is no reason to distinguish one harm caused by Boeing's conduct, the accidents, from another, the grounding. For instance, as the Court held, but for Boeing's fraud, the FAA AEG would have certified Level D rather than Level B training, and crashes of Lion Air Flight 610 and Ethiopian Airlines Flight 302 would have been preventable. *See* ECF No. 116 at 13-14. Because it was clear after the accidents that Level B training was insufficient, the 737 MAX had to be grounded until Boeing could both correct MCAS, and pilots could obtain sufficient training to operate the aircraft safely. As with the Families' harm, Boeing's fraud was the *sine qua non* of LOT's harm. *See id.* at 14.

Last, the conclusion in *In re Boeing 737 MAX Pilots Litigation*, No. 19-cv-5008, U.S. Dist. LEXIS 197454 (N.D. Ill. Oct. 31, 2022) has no applicability here because the causation analysis in that case was not based on the CVRA standard, but on Illinois common law. *See Bank of Am. Corp. v. City of Miami, Fla.* 137 S. Ct. 1296, 1305 (2017) (the "[p]roximate-cause analysis is controlled by the nature of the statutory cause of action."). Further, the Court already considered and rejected this argument when it applied the CVRA causation standard to the facts underlying the crime charged in the DPA in the context of the Families' motion, and held that the standard was met with respect to the accidents that caused the grounding. [10]

### D. The Court Should Reject Boeing's Attempt to Retract What It Admitted in the DPA

Boeing claims that the DPA's statement that Boeing's airline customers sustained "direct pecuniary harm . . . as a result of the grounding" (*see* ECF No. 4 at12, ¶ 12) does not mean what it says because the DPA does not specify the airline victims of the crime charged. This semantic

---

[10] Boeing's contention that the ruling in *In re Boeing 737 MAX Pilots Litigation* applies *a fortiori* here thus strains credulity.

argument holds no water. The inquiry here is whether LOT was "directly and proximately harmed as a result of Boeing's conspiracy to defraud the United States." ECF No. 116 at 9 (internal citations and quotations omitted).[11] There should be no question that Boeing's agreement in the DPA that airline customers such as LOT sustained "direct pecuniary harm" assists in answering the CVRA causation inquiry. Indeed, although the DPA identifies only the United States as a victim of Boeing's crime, that did not preclude the Court from finding that the Families are victims within the meaning of the CVRA.

## II. BOEING CANNOT INVOKE LACHES

Like the DOJ, Boeing attempts to invoke laches to prevent this Court from holding that LOT's CVRA rights were violated. And like the DOJ, Boeing is wrong on the facts and the law.

As set forth in LOT's Reply to the DOJ's Opposition, and in the Additional Relevant Facts section above, LOT did not wait 21 months before seeking government assistance in connection with the DPA and the harm Boeing caused LOT. *See* ECF No. 153 at 3-4. More importantly, even if it had, Boeing could not invoke laches here because of its unclean hands. *See id.* at 7-9. Boeing admitted to criminal conduct that caused LOT "direct pecuniary harm." *See* ECF No. 4 at 12, ¶ 12. If ever there was a case where a party's wrongdoing should prevent it from invoking an equitable remedy, it is this one. *See* ECF No. 153 at 7-9.

## III. IF THE COURT REACHES THE ISSUE OF WHAT REMEDIES ARE AVAILABLE, IT HAS THE AUTHORITY TO IMPOSE LOT'S SUGGESTED REMEDIES

Boeing argues that this Court has no authority to impose the remedies that LOT suggests, misreading the CVRA's text, and invoking non-binding case law from other jurisdictions. LOT

---

[11] Boeing also argues that its agreement to compensate some airlines under the DPA, but not LOT, is irrelevant to the CVRA analysis. That misses the point. The airlines Boeing chose to compensate to further Boeing's business interests would have the same CVRA rights as LOT to the extent that they were not given the opportunity to confer with the DOJ prior to the execution of the DPA.

respectfully refers the Court to LOT's response to those arguments in its Reply to the DOJ's Opposition, and notes again that the Court need not—and perhaps should not—reach the issue of what remedies are appropriate before it defines LOT's CVRA status, and the scope of the CVRA violations it suffered. *See id.* at 9-11. Here, LOT only responds to Boeing's separate argument that the DPA is a voluntary contractual agreement between it and the DOJ and, thus, somehow shielded from the Court's review.

As an initial matter, if the Court were to accept Boeing's argument that the DPA was a voluntary contract, then it must apply all contract law to the DPA, not just the cherry-picked principles upon which Boeing bases its argument. For instance, as the Families explained, the DPA was procedurally illegal, and illegal contracts do not grant the contracting parties enforceable rights. *See* ECF No. 140 at 16-17 (citing *In re OCA, Inc.*, 552 413, 422 (5th Cir. 2008); AM. JUR. 2D CONTRACTS § 217 (Nov. 2022 update)). In addition, it is well settled that contracts can be voided where, as here, the manner in which they were negotiated was fraudulent or had the effect of defrauding third parties like LOT. *See* ECF 140 at 16-17.

Boeing thus has no rights with respect to any alleged harm caused by the "re-opening" of the DPA, or any breach of the DPA because "the law will not tolerate privately negotiated end runs around the criminal justice system." *United States v. Scheinbaum*, 136 F.3d 443, 448 (5th Cir. 1998) (internal quotation omitted). Having knowingly entered into an alleged "voluntary contractual agreement" in violation of federal law, Boeing also voluntarily forfeited the right to protest if its illegal agreement were to be unwound or modified.

## CONCLUSION

LOT respectfully requests that this Court find that LOT is a crime victim under to the CVRA, that the DOJ violated LOT's CVRA rights, and that LOT is entitled to a suitable remedy.

Dated: January 5, 2023    Respectfully Submitted,

WICK PHILLIPS GOULD & MARTIN, LLP

*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr. (Texas Bar No.00796738)
Wick Phillips Gould & Martin, LLP.
3131 McKinney Avenue, Suite 500
Dallas, TX 75204
Phone: 214-692-6200
jeff.hellberg@wickphillips.com

-and-

CONDON & FORSYTH, LLP
Anthony U. Battista, Esq. (NY Bar No. 2802775)
abattista@condonlaw.com
Diana Gurfel, Esq. (NY Bar No. 3040391)
dgurfel@condonlaw.com
Evan Kwarta, Esq. (NY Bar No. 4401543)
ekwarta@consonlaw.com
Mary Dow, Esq. (NY Bar No. 4782017)
mdow@condonlaw.com
Condon & Forsyth LLP
7 Times Square, 18th Fl.
New York, NY 10036
Phone: 212-490-9100
Facsimile: 212-370-4453

*Attorneys for Polskie Linie Lotnicse LOT S.A.*

**CERTIFICATE OF COMPLIANCE REGARDING LENGTH**

I certify that, in compliance with Local Rule 47.2, this brief is 10 pages.

*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr.

**CERTIFICATE OF SERVICE**

On January 5, 2023, I filed the foregoing document with the clerk of courts for the U.S. District Court, Northern District of Texas, using the Court's CM/ECF filing system.

*/s/ Jeffrey W. Hellberg, Jr.*
Jeffrey W. Hellberg, Jr.