UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THE BOEING COMPANY | Case No. 4:21-cr-00005-O<br><br>SMARTWINGS' REPLY IN SUPPORT OF ITS MOTION TO BE DESIGNATED AS A CRIME VICTIM UNDER THE CVRA |

## I. REPLY

Smartwings, A.S. ("Smartwings") filed this motion requesting that this Court (1) rule that Smartwings has standing under the Crime Victim Rights Act to assert its victim rights, and (2) require Boeing to provide Smartwings with an accounting of amounts spent and remaining of the Airline Compensation Amount ("Airline Fund") established by the January 10, 2021 Deferred Prosecution Agreement ("DPA"). Boeing and the United States both filed oppositions, but none of the arguments made in their oppositions justify denying Smartwings' requested relief.

### A.   **Smartwings Should Be Granted Crime Victim Status**

The Court should find that Smartwings has standing as a crime victim that suffered harm directly and proximately caused by the crimes Boeing agreed not to contest in the DPA. The oppositions filed by Boeing and the United States all but concede this point: "[t]he Government acknowledge[s] this Court's prior opinion concerning the causal chains in this CVRA litigation[,]" and states that this point is being opposed only "[i]n order to preserve the issue[.]" ECF No. 149 at 4; *see also* ECF No. 150 at 7-8, Boeing attempts to distinguish airline customer victims from other individuals that the Court recognizes as CVRA victims but in doing so acknowledges "the Court's finding that the conduct described in the DPA directly and proximately caused the crashes."

Boeing and the United States make only one substantive argument in opposition to Smartwings' CVRA status. They argue that proximate cause between Boeing's misconduct and their harm "depends on the subsequent actions of Smartwings' European regulator, which grounded the planes in order to

conduct an independent safety assessment." ECF No. 149 at 4. Yet the Court has already rejected the argument that non-US regulators and airlines did not reasonably rely on Boeing's misrepresentations to the FAA, stating:

> "[a]s a matter of common aviation industry practice, it is well-known that foreign airlines and foreign civil aviation authorities rely on the FAA's guidance regarding airplane certification, training requirements, and other relevant information."

ECF No. 116 at 14. Smartwings' European regulator (known as "EASA") followed the common practice the Court noted of relying on the FAA's certification of the MAX and thus they – and Smartwings -- reasonably relied on Boeing's fraudulent misrepresentations. This proximate cause is as direct as the proximate cause for the accident victims' claims already recognized by the Court -- not the indirect speculative "ripples of harm" that "flow far beyond" the defendant's misconduct as was the case in the decision cited by the United States. *See* ECF No. 149 at 4, quoting *Bank of Am. Corp. v. City of Miami, Fla.,* 137 S. Ct. 1296, 1306 (2017) (in considering an action under the Fair Housing Act, the Court found that the City of Miami's alleged financial injuries stemming from diminished property-tax revenue and increased municipal expenses—although foreseeable—did not meet the proximate cause standard under the Fair Housing Act because they did not bear a "some direct relation" with the injurious conduct.)

To the extent Boeing or the United States' oppositions could be read to suggest that Smartwings' CVRA status should be denied because it is a non-U.S. airline, such a suggestion should be rejected. The United States and Boeing considered airlines' financial harms worldwide to be sufficiently related to Boeing's criminal conduct to include a $1.77 billion airline compensation fund in the DPA. The Airline Fund made no distinction between the financial harms of domestic airlines that were regulated by the FAA and non-US airlines like Smartwings – just as it makes no distinction between U.S. and non-U.S. accident victims. As the Deferred Prosecution Agreement directly contemplates remedying Smartwings' financial harm despite its status as a non-U.S. airline, Boeing and the United States cannot reasonably dispute that Smartwings is a victim under the CVRA.

### B.   The Court Should Order the Accounting Proposed By Smartwings

Boeing and the United States both argue that Smartwings' proposed initial remedy – an order

requiring an accounting of the current status of the Airline Fund – is outside the Court's authority or otherwise improper. These arguments should be rejected.

      As an initial matter, Boeing and the United States address the wrong question. The question is not whether the CVRA contemplates or allows for an accounting as a victim remedy in the first instance – the question is whether an accounting is an appropriate first step to repair their failure to accord Smartwings its victim rights in the first place. The United States Attorney General has directed United States government officials to make their best efforts to see that crime victims are afforded their rights under the CVRA as early in the criminal justice process as feasible and appropriate, including before the execution of a deferred prosecution agreement. *See* Dep't of Justice, *The Attorney General Guidelines for Victim and Witness Assistance* (2022 Ed.) (effective March 31, 2023) and (2011 Ed., rev. May 2012). It is undisputed that the United States did not follow its own guidance as regards Smartwings and the other victims when it negotiated the DPA. The question before the Court is thus not what the Court could have ordered be included in the DPA in 2021, it is how to remedy the DPA parties' failure to accord Smartwings its victim rights.

      Had Smartwings been granted the rights required by the CVRA, it could have pointed out the procedural inadequacies in the DPA section (¶ 12) creating the Airline Fund. Smartwings could have requested that Boeing and the United States build sufficient protections against misuse into the Airline Fund just as they did for the Passenger Fund. Had that been done, there would be no need for an accounting because the Airline Fund would have been fairly administered from the outset. But because the Airline Fund – unlike the passenger fund -- was left to Boeing to self-administer and because it appears Boeing has not done so fairly, the Court can and should now craft an appropriate remedy.

      The United States raises concerns about re-opening the DPA as other victims have requested. But Smartwings does not seek to reopen the DPA at this time. Instead, the logical first step in determining whether there is even a need to seek modification of the DPA is to bring Boeing's self-administration of the Airline fund into the light. An accounting is "a *remedy* for a cause of action, not as a cause of action in its own right." *Zaki Kulaibee Establishment v. McFliker,* 771 F.3d 1301, 1310 n. 21 (11th Cir. 2014). It is used where parties are unable to obtain relief via traditional remedies at law" due to "informational

asymmetries and trust inherent in the relationship . . ." *Id.* at 1314 nn. 25-26. Thus, the procedure perfectly fits the situation here – where Boeing has an obligation to fairly pay out $1.77 billion to Smartwings and other airlines, appears not to be doing so, and refuses to disclose anything about its handling of the agreed payments. The United States' concerns will become relevant only if the accounting shows that re-opening and modifying the DPA is necessary.

Boeing and the Government also contend that any restitution to Smartwings at this stage in the proceedings would be premature because Boeing has not been convicted nor sentenced. However, Smartwings does not seek restitution as contemplated by the MVRA or federal restitution statutes -- Smartwings invoked the MVRA in its Motion only by way of analogy. Instead, Smartwings asks the Court to use its inherent authority to oversee criminal proceedings to order an accounting of the Airline Fund to remedy the Government's failure to afford Smartwings its rights as a crime victim under the CVRA.

Boeing and the Government also assert that a victim's CVRA rights are purely procedural and an Airline Fund accounting is a substantive remedy not allowed by the CVRA. They also argue that a basis outside the CVRA must exist to grant substantive rights and none exist. These assertions are misplaced. As indicated above, Smartwings should have been consulted about the DPA *prior to* its finalization. Any suggestion that laws outside the CVRA afford no remedy for Boeing's victims is belied by their agreement to set up the DPA's Airline Fund and its crash victim fund in the first place. Having stipulated to both funds, neither Boeing nor the United States should be heard to now argue that there is no legal basis for one of them or that there was a basis for agreeing to reasonable oversight of the Passenger Fund but not the Airline Fund. Nor can they argue that Smartwings deserves no compensation from the Airline Fund. The fund amounts to more than $4.5 million on a per-aircraft basis,[1] and Smartwings had seven MAX aircraft at the time of the Ethiopian crash plus commitments from Boeing to deliver another sixteen aircraft in the

---

[1] As of March 18, 2019, there were 387 MAX aircraft in service with Smartwings and 58 other airlines around the world. Lu, Denise; Mccann, Allison; Wu, Jin; Lai, K.K. Rebecca (March 13, 2019). *"From 8,600 Flights to Zero: Grounding the Boeing 737 Max 8"*. The New York Times. Retrieved December 24, 2019.

spring and summer of 2019.

Perhaps the most important aspect of Boeing's and the United States' oppositions is what they ***do not*** say.  Smartwings' initial moving papers pointed out that the Airline Fund was designed to provide the airlines that purchased MAX aircraft prior to the crashes with a modicum of financial restitution without being forced into years of civil litigation.  Smartwings also cited several sources of publicly available information suggesting that Boeing has abused the Airline Fund's lack of oversight and transparency by not fairly administered it to accomplish its purpose.  Other than Boeing's admission that it likes the idea of forcing Smartwings into the years-long litigation the Airline Fund was designed to help avoid – and Boeing' further suggestion that it plans to force Smartwings to go to trial in Seattle where Boeing apparently intends to deny responsibility for Smartwings' MAX losses, neither opposition even mentions Smartwings' evidence of Airline Fund abuse much less attempting to refute it.  Their silence speaks volumes about the urgent need for the Court to step in.  Ordering an accounting – a simple, quick, and inexpensive way to gather information – to allow this investigation so that will likely give Smartwings and the Court what they need to determine whether further remedies are appropriate. Until this step is taken, any concern about what remedies the Court might impose or whether they might upset the delicate balance of the DPA is premature.

Boeing and the Government invoke the separation of powers doctrine to contend that the Court does not have the authority to order an accounting of the Airline Fund: not so. The Court has the inherent authority to approve or deny deferred prosecution agreements and is charged with ensuring that crime victims are afforded their rights under the CVRA. 18 U.S.C. §§ 3161(h)(2), 3771(b)(1). Had Smartwings been granted its victim rights before the DPA was approved, either the United States or the Court could have added in adequate oversight of the Airline Fund and the Court would have approved it just as the Court approved the oversight provisions for the passenger fund. And even if the Court and the United States concluded in 2021 that no oversight of the Airline Fund was necessary due to their high level of trust in Boeing,[2] the Court has the power to now order the Government to provide reports about a defendant's

---

[2] This would have been an odd conclusion given the DPA's recitations of fraudulent misrepresentations by Boeing.

compliance with a deferred prosecution agreement as part of the Court's inherent authority to supervise criminal proceedings, sentence criminal defendants and order restitution. *See e.g.* 18 U.S.C. §§ 3664, 3553, 3556. The uncontroverted evidence of Boeing's misuse of the DPA justifies – even requires -- further action by the Court, and supports the Court's finding that Smartwings has standing under the CVRA, consistent with the CVRA's goals and consistent with the Court's past ruling as to CVRA status.

      Finally, Boeing requests the opportunity to separately brief the appropriateness of any remedy Smartwings proposes after obtaining the accounting. Smartwings agrees that once it receives and analyzes the requested accounting and if it determines that additional remedies are appropriate, all interested parties should have an opportunity to submit additional briefing on this issue.

DATED: January 6, 2023.

                **LANE POWELL PC**

By: *s/ David M. Schoeggl*
David M. Schoeggl, WSBA No. 13638
Callie A. Castillo, WSBA No. 38214
Katie D. Bass, WSBA No. 51369
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone: 206.223.7000
schoeggld@lanepowell.com
castilloc@lanepowell.com
bassk@lanepowell.com

-- and --

**JACKSON WALKER LLP**

By: *s/ Katherine A. Staton*
Katherine A. Staton
State Bar No. 02815650
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: 214-953-6000
Fax: 214-953-5822
Email: kstaton@jw.com

Jeffrey R. Gilmore
State Bar No. 24083073
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Telephone: 817-334-7285
Email: jgilmore@jw.com

*Attorneys for SMARTWINGS, A.S.*

## **CERTIFICATE OF SERVICE**

   I certify that on January 6th, 2023, I electronically filed this pleading with the clerk of the court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system.

                   */s/ Jeffrey R. Gilmore*
                   Jeffrey R. Gilmore