**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **No. 4:21-CR-5-O** |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**THE BOEING COMPANY'S RESPONSE TO STATEMENT BY NAOISE CONNOLLY RYAN, ET AL. REGARDING PROPOSED COURT-IMPOSED CONDITIONS OF RELEASE ON BOEING UNDER 18 U.S.C. § 3142 [DOCKET NO. 170]**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 2

RELEVANT BACKGROUND AND FACTUAL PROFFERS ...................................... 5

    I.    Relevant Background. ....................................................................................... 5

    II.    Factual Record for Bond. ................................................................................. 7

ARGUMENT ............................................................................................................... 8

    I.    No Special Bond Conditions Are Appropriate or Required Under the Bail Reform Act. .................................................................................................... 8

    II.    The Court Should Reject the Special Conditions Urged by the Representatives. ............................................................................................. 12

        A.    Independent Compliance Monitor. .......................................................... 13

            1.    The Representatives' proposed monitor is not intended to ensure safety of the community. ................................................. 13

            2.    The Department is actively monitoring Boeing's compliance with the DPA. ......................................................... 16

        B.    Disclosure of Boeing's Compliance Reports. ......................................... 19

CONCLUSION .......................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Melrose Distillers, Inc. v. United States*,
359 U.S. 271 (1959)..................................................................................................9

*United States* v. *Barner*,
743 F. Supp. 2d 225 (W.D.N.Y. 2010)....................................................................9

*United States v. Fokker Services, B.V.*,
818 F.3d 733 (D.C. Cir. 2016)......................................................................4, 5, 13, 15

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017).....................................................................................4, 13

**Statutes**

18 U.S.C. § 371......................................................................................................5

18 U.S.C. § 3142.............................................................................................. *passim*

18 U.S.C. § 3142(a)...............................................................................................9

18 U.S.C. § 3142(b)...........................................................................................2, 8, 9

18 U.S.C. § 3142(c)...............................................................................................9

18 U.S.C. § 3142(d).............................................................................................11

18 U.S.C. § 3142(g)...............................................................................................9

18 U.S.C § 3771.............................................................................................10, 11

**Other Authorities**

Dep't of Justice, *Evaluation of Corporate Compliance Programs* (June 2020)............................16

FAA Statement on Boeing 737 Max Return to Service (Nov. 18, 2020)......................................10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **No. 4:21-CR-5-O** |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**THE BOEING COMPANY'S RESPONSE TO STATEMENT BY NAOISE CONNOLLY RYAN, ET AL. REGARDING PROPOSED COURT-IMPOSED CONDITIONS OF RELEASE ON BOEING UNDER 18 U.S.C. § 3142 [DOCKET NO. 170]**

The Boeing Company ("Boeing"), by and through counsel, submits this response to the Statement by the Crime Victims' Representatives[1] ("Representatives") suggesting proposed court-imposed conditions of release on Boeing under 18 U.S.C. § 3142 (hereinafter the "Statement"). The Representatives filed the 40-page Statement—plus roughly 330 pages of attached material—at 2:38 p.m. on the day before the arraignment hearing was set to commence at 9:00 a.m.  In the Statement, the Representatives raised two new proposed special bond conditions.  Boeing did not have time to respond prior to the hearing, and now submits this response to address certain points not fully covered at the hearing.

---

[1] Boeing adopts the terminology this Court has employed to refer to the Representatives in the wake of this Court's October 21 Memorandum Opinion and Order, while expressly reserving all rights and objections Boeing has made in the course of these proceedings, including with respect to this Court's determination of Crime Victim's Rights Act standing, and the process it used to reach that determination.

## PRELIMINARY STATEMENT

Under Section 3142, no special bond conditions are warranted here unless the Court determines that Boeing will endanger the safety of the community.  18 U.S.C. § 3142(b).  No evidence of this has been presented by the Representatives, and indeed, the uncontroverted evidence before this Court is that there is no present danger to the community that would justify the imposition of special bond conditions.  Moreover, the conditions the Representatives seek are not designed to ensure the safety of the community.  They are rather a repackaging of the relief the Representatives have sought throughout this proceeding, which improperly seeks to infringe on the Attorney General's exercise of his prosecutorial discretion, by requiring changes to essential terms of the Deferred Prosecution Agreement ("DPA") that the Department of Justice entered with Boeing more than two years ago.

The Department has unequivocally confirmed that (a) Boeing has fully complied with the DPA to date, and (b) the Department is not seeking any special bond conditions, nor does it assess that such conditions are appropriate or necessary here.  The Department has taken this position only after conducting a lengthy investigation, engaging in more than two years of close oversight of Boeing and its compliance and ethics programs pursuant to the DPA, and after conferring with the Representatives.

The uncontroverted evidence that was presented at the January 26 hearing, by way of Boeing's proffer, confirms that there is no risk of danger to the community.  As the proffer shows, as of the time of the bond hearing, the Department is engaging in active and meaningful oversight of Boeing under the terms of the DPA and has done so for more than two years.  Likewise, the Federal Aviation Administration ("FAA") is fulfilling its congressional mandate to robustly oversee the safety of the flying public, as demonstrated by the fact that the FAA approved the MAX for return to service more than two years ago; that, since that time, the MAX has logged

millions of safe flight hours; and that, each day, airlines around the world entrust Boeing airplanes to carry millions of people safely to their desired destinations.

Under all these circumstances, the Department has concluded that Boeing does not pose a safety risk to the community and that no special conditions are appropriate, given the oversight mechanisms in progress under the DPA and the safety oversight provided under the overarching authority of the FAA. The Department's assessment should carry significant weight in the Court's evaluation of any bond conditions here.

The Representatives argue in their Statement that the Court should impose two special bond conditions, based largely, if not entirely, on their lack of trust in the Department's willingness and ability to effectively execute its role in evaluating Boeing's compliance with the DPA's requirements. Without questioning the sincerity of their views, the Representatives' lack of trust in the Department is not itself evidence of a present danger to the community, which is required under Section 3142 to justify imposing *any* special bond conditions. The Representatives have offered no evidence that as of the time of the bond hearing, there was any basis for finding a danger to the community.

It does not appear that the special conditions that the Representatives urge have ever been imposed before. More to point, even if there were any risk of danger to the community here (which there is not), the proposed conditions would not address that risk. The monitor and the panel of experts that the Representatives propose are not intended to monitor safety at all. Rather, the Representatives propose an "independent examiner" who would check to see whether Boeing has been complying with the requirements of the DPA, and a panel of experts who would review Boeing's submissions to the Department under the DPA. The mandate proposed for these parties would not enhance safety of the community; instead, it would improperly usurp the role of the

3

Department of Justice in monitoring Boeing's compliance with the DPA. And while the Representatives suggested at the hearing that they are not seeking an independent monitor to oversee the safety of Boeing's airplanes, *see* Jan. 26, 2023 Tr. at 128:16–22, it bears emphasis that the imposition of a third-party safety monitor would likely increase, rather than decrease, risk to aviation safety. The FAA performs the role of monitoring the safety of Boeing's fleet, and the Representatives make no claim that the FAA is failing in its charge, or that a monitor appointed in these proceedings would be better equipped than the FAA to perform that task. A court-imposed safety monitor would, at best, divert Boeing resources and personnel from their day-to-day work with the FAA and global regulators to ensure the safety and quality of the airplanes Boeing delivers to, and helps maintain for, its airline customers around the world. At worst, a safety monitor could create needless risk by imposing different mandates or inconsistent processes than those prescribed by the expert regulatory agency that has been congressionally charged with ensuring the safety of Boeing's fleet.

At bottom, the conditions that the Representatives seek are simply a repackaging of remedies the Representatives previously sought as a purported exercise of the Court's supervisory power to alter or amend the DPA. Whether cast in that guise or as special bond conditions, the relief the Representatives seek runs contrary to the reasoning of the Courts of Appeals in both *United States v. Fokker Services, B.V.*, 818 F.3d 733, 741–42 (D.C. Cir. 2016), and *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 135–36 (2d Cir. 2017). Both cases instruct that there is no role for the Judiciary to oversee the Executive's role in a DPA. As *Fokker Services* concluded:

> The key point is that, although charges remain pending on the court's docket under a DPA, *the court plays no role in monitoring the defendant's compliance with the DPA's conditions*. For instance, defendants who violate the conditions of their DPA *face no court-ordered repercussions*. Rather, the prosecution—and the prosecution alone—monitors a defendant's compliance with the agreement's

conditions and determines whether the defendant's conduct warrants dismissal of
the pending charges.

818 F.3d at 744 (emphases added). Yet that is precisely what the Representatives urge here: an

independent monitor and a panel of Representative-chosen third parties whose express role would

be to look over the shoulder of the Department in its evaluation of Boeing's compliance with the

DPA. *Fokker Service*'s reasoning holds true whether the manner of oversight is accomplished

through court-ordered modification of the DPA, or through bond conditions of the sort proposed

here. On this record and under the law, no special bond conditions are necessary or appropriate

here.

## RELEVANT BACKGROUND AND FACTUAL PROFFERS

### I.      Relevant Background.

The proceedings involving the DPA are detailed in Boeing's prior filings in this matter.

Boeing therefore will not repeat that history here, but will address only the background pertinent

to the issue of bond conditions.

The crashes of Lion Air Flight 610 and Ethiopian Airlines Flight 302 occurred on

October 29, 2018 and March 10, 2019, respectively. After a thorough, multi-year investigation,

the Department charged Boeing with conspiracy to defraud the United States in violation of 18

U.S.C. § 371. The Department also deferred prosecution of that charge for three years and agreed

to dismiss the charge subject to Boeing's satisfaction of the terms of the DPA. In determining the

appropriate terms of the DPA, the Department carefully considered, but ultimately declined, to

require that Boeing retain an independent corporate monitor. That considered decision was based,

in part, on the Department's assessment of the status of Boeing's compliance program at the time

and the significant improvements Boeing had made prior to entering the DPA, as well as Boeing's

agreement to Enhanced Reporting Requirements under the DPA. *See* Dkt. 4 at 6, ¶ 4(h). On

January 7, 2021, the Department publicly filed the Information and DPA in this Court.  The Department has since repeatedly confirmed that Boeing has complied with the terms of the DPA to date.  *See e.g.*, Dkt. 128 at 4–5; May 3, 2022 Hearing, Tr. at 73:6–10.

More than two years after Boeing entered the DPA, this Court ordered a public arraignment of Boeing on January 26, 2023, and ordered that the Representatives would be permitted to testify or submit statements at that hearing about the family members lost and the impact of the crashes. On the eve of the arraignment, the Representatives filed the Statement, seeking to impose conditions of release on Boeing including the appointment of an independent monitor to assess Boeing's compliance with the DPA and disclosure of Boeing's compliance-related submissions to the Department.  On January 26, 2023, the Court arraigned Boeing and held a bond hearing to determine pretrial release pursuant to 18 U.S.C. § 3142.  Although numerous Representatives testified or submitted written statements, neither the Representatives nor their counsel presented any evidence that the 737 MAX is currently unsafe to fly, or that Boeing otherwise presents a danger to the community.  Boeing proffered information to the contrary, including showing that it is subject to active and substantive DOJ and FAA oversight, and that the MAX has safely returned to service.  Jan. 26, 2023 Hearing Tr. at 109–14.  The Department confirmed that its oversight is extensive and ongoing and that Boeing has fully complied with the DPA to date.  *See* Jan. 26, 2023 Hearing Tr. at 94:25–95:2.  The Department and Boeing opposed any special conditions of release.

The Court took the Representatives' proposed special bond conditions under advisement and allowed the Department to make a submission further addressing the status of Boeing's compliance-related efforts.  Boeing now offers this response to supplement arguments it and the Department made during the bond hearing, which it hereby adopts and on which it relies.

## II.      **Factual Record for Bond.**

At the hearing on January 26, Boeing's counsel, Mr. Filip, presented a proffer related to the ongoing oversight of Boeing by the FAA and the Department of Justice.  *See* Jan. 26, 2023 Hearing Tr. at 109–14.  Nothing about the proffer was challenged, which is unsurprising given that it largely presented indisputable facts such as that the FAA is responsible for regulating civil aviation in this country, with tens of thousands of employees fulfilling various roles, including overseeing safety and certification of civil aircraft.   It also explained that, by Boeing's estimate, more than a thousand of those FAA employees are directly and indirectly involved in overseeing the building and certification of Boeing commercial aircraft.   The proffer also explained the extensive oversight that DOJ exercises over Boeing's compliance efforts.   And consistent with Boeing's proffer, the Department again confirmed that Boeing has complied with the DPA for more than two years of its three-year term.  *See* Jan. 26, 2023 Hearing Tr. at 94:25–95:2; 96:22–23.   As the Department noted at the hearing, in addition to taking and implementing the Department's feedback, Boeing engages third-party experts to provide critical assessments of Boeing's compliance program and recommendations for improvement.   And, as the Department noted, Boeing has made the recommendations and conclusions from these experts directly available to the Department. *See id*. at 105:15–106:6.  As a result, it is undisputed that three distinct groups have been committed to the evaluation and continuous improvement of Boeing's compliance program over the course of the DPA: (1) Boeing and its in-house group of compliance experts, (2) the Department of Justice, and (3) independent third-party compliance experts whom Boeing has retained.

In their Statement, the Representatives referred to their previous lengthy factual proffer, but this proffer can have no bearing on the question of whether bond conditions should be imposed because it relates solely to historical events regarding the MAX—not whether there is a present

danger to the community.  Moreover, the CVRA grants the Representatives no ability to proffer evidence at a bond hearing, and Boeing has separately objected to the proffer on various other grounds.  *See* Dkts. 74, 108, and 135.  The Government has also repeatedly objected to the admission of the Representatives' factual proffers.  *See* Dkts. 73, 114, and 134.  The Court took no action to accept the proffer, either at the January 26 hearing or previously.  Certain Representatives did present their views under oath at the January 26 hearing.  But to the extent those views were directed towards Boeing, they—like the proffer—recounted historical events related to the two MAX accidents, the latter of which occurred almost four years ago in March 2019.

As a result, no evidence was presented at the hearing, whether by way of proffer or otherwise, that Boeing currently presents any danger to any individual or the community, as required for the imposition of special bond conditions under Section 3142.[2]

## ARGUMENT

**I.     No Special Bond Conditions Are Appropriate or Required Under the Bail Reform Act.**

Section 3142 governs the terms of release of a defendant, and Section 3142(b) directs the Court to impose a personal recognizance bond, with no special conditions, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).[3]

---

[2] The Representatives speculate that Boeing somehow contrived to avoid a Pretrial Services Report at the bond hearing.  Dkt. 170 at 36.  This is not the case.  Though Boeing did not perceive a need for a Pretrial Services Report going into the January 26 hearing, and no such report was ordered by the Court, counsel for Boeing nevertheless, in an abundance of caution, reached out to Pretrial Services by calling a Pretrial Services officer (Ms. Foreman), on January 25, prior to the filing of the Representatives' Statement.  Ms. Foreman did not answer, and Boeing counsel left a voice mail asking her to contact them if it was appropriate to discuss any issues before the hearing.

[3] We note that Section 3142 by its terms governs whether a defendant should be "detained" or

If the Court determines that release on a personal recognizance bond will not reasonably assure appearance or community safety, then the Court proceeds to Section 3142(c), pursuant to which the Court must fashion "the least restrictive further condition, or combination of conditions" that will reasonably assure appearance or community safety.

Importantly, the Court assesses risk of flight and community safety at the time of the bond hearing.  *See* 18 U.S.C. § 3142(b) (directing the court to impose a personal recognizance bond unless the court determines that release "*will endanger* the safety of any other person or the community" (emphasis added)); *United States* v. *Barner*, 743 F. Supp. 2d 225, 228 (W.D.N.Y. 2010) (quoting *United States v. Madoff*, 586 F. Supp.2d 240, 250 (S.D.N.Y. 2009) ("The [Bail Reform Act], by its nature, is always looking forward.  To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward.").  Section 3142 thus does not assume that pretrial supervision over defendants is normally necessary to ensure safety of the community.   Rather, Section 3142's default provision is release on a personal

---

"released" pending trial, *id.* §3142(a), and focuses throughout on appropriate terms of detention or release for individual defendants. *See, e.g.*, 18 U.S.C. § 3142(b) (providing for "collection of a DNA sample"); *id.* § 3142(c) (conditions of release may include "maintain[ing] employment," "specified restrictions on personal associations, place of abode, or travel," "comply[ing] with a specified curfew," "refrain[ing] from excessive use of alcohol," "medical, psychological, or psychiatric treatment," etc.); *id.* § 3142(g) (factors to be considered include the defendant's "physical and mental condition," "family ties," "employment," "length of residence in the community," "history relating to drug or alcohol abuse," etc.).  It could reasonably be asked whether the statute even extends to defendants who by their nature cannot be physically detained or released, c*f. Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 274 (1959) (recognizing that corporate defendants cannot be physically detained), let alone whether a bond condition based upon safety of the community can be applied to a corporation that is subject to the overarching regulatory authority of the FAA, the federal agency charged by Congress with overseeing the safety of Boeing's products.

recognizance bond, without any special conditions, *unless* the Court specifically finds that the defendant presents a current and prospective danger to the community.

Here, neither the Department nor the Representatives make any argument or present any evidence that Boeing presents any risk of flight.  Accordingly, the only possible basis for imposing special bond conditions here would be a need to ensure safety of the community.  On that issue, the Department, for its part, presented no evidence of any danger to the community.  On the contrary, the Department confirmed that in its considered view, after two years of very active engagement and oversight, Boeing does not present a danger to the community and no special conditions are needed.  That position is consistent with the proffer that Boeing advanced to this Court at the hearing.  Notably, the Department took this position after conferring with the Representatives under Section 3771.

The Representatives have presented no viable evidence to the contrary.  To the extent the Representatives argue that the Criminal Information and DPA Statement of Facts are themselves evidence of danger to the community, that argument fails.  The offense recited in the DPA occurred several years ago.  As the Court knows from evidence previously presented and Boeing's proffer at the hearing, the MAX was grounded for a lengthy period after the offense was charged.  In that time, Boeing worked to redesign the MCAS software and certain related functions, and the FAA closely oversaw that process.  After a thorough review of Boeing's work, the FAA determined in November 2020 that the MAX was safe to return to service, and it has been in safe service since, both nationally and internationally.  *See* Jan. 26, 2023 Hearing Tr. at 110:10–15; s*ee also* Fed. Aviation Admin., FAA Statement on Boeing 737 Max Return to Service (Nov. 18, 2020), https://icao.usmission.gov/faa-statement-on-boeing-737-max-return-to-service/     (last     visited Feb. 6, 2023) ("The design and certification of this aircraft included an unprecedented level of

collaborative and independent reviews by aviation authorities around the world.  Those regulators have indicated that Boeing's design changes, together with the changes to crew procedures and training enhancements, will give them the confidence to validate the aircraft as safe to fly in their respective countries and regions.").  The two employees who are referenced anonymously in the DPA Statement of Facts no longer work for Boeing and have not worked for Boeing for years.  And the DPA recognizes that even at the time of the events recited in the Criminal Information, those employees' conduct was not endorsed or condoned by Boeing's management.  Dkt. 4 at 6, ¶ 4(h).  Further, the DPA recognizes that Boeing had already undertaken significant remedial measures after the offense conduct, including remedial measures related to safety.  *Id.* at 5, ¶ 4(d).  Mr. Filip's proffer confirmed that Boeing, under the Department's close oversight, has continued to enhance its compliance and safety functions over the term of the DPA.

The Representatives' proffer, while objectionable for a variety of reasons, also provides no basis for imposing special bond conditions.  To begin with, while Section 3142(d) allows a defendant the ability to proceed by way of proffer at a detention hearing, no such ability is accorded to CVRA victims, either in Section 3771 or in Section 3142.  Second, even if it could be tendered, the proffer consists largely of hearsay upon hearsay, including material drawn from numerous untested sources, and as such, is entitled to little to no weight.  For example, substantial sections of the proffer are drawn from a Delaware Court of Chancery opinion on a motion to dismiss, in which the facts alleged by the plaintiff have not been fully litigated but must—only for purposes of that motion—be presumed to be true.  Other sections are drawn from an SEC order that contains statements that Boeing has neither admitted nor denied.  Third, even if the proffer were accepted, it cannot provide a basis for bond conditions, because it is not evidence of any present danger to the community.  The proffer—like the views expressed by the Representatives at the hearing—

relates solely to historical facts and occurrences predating the DPA, which itself is more than two years old at this point.  The only arguable safety risk that the proffer identifies relates to the pre-grounding functionality of the MAX and the MCAS software.  But since that time, the record shows that Boeing changed the MAX and MCAS, under the intense scrutiny of the expert regulators at the FAA, and that the MAX has safely returned to service.

## II.    The Court Should Reject the Special Conditions Urged by the Representatives.

The Representatives frame their request for special bond conditions as necessitated by their lack of trust in the Department of Justice.  While Boeing does not question the sincerity of the Representatives' opinion, that lack of trust is not itself evidence of any danger to the community on the part of Boeing.  There is no record evidence that the Department has been derelict in its oversight of Boeing under the DPA.  In fact, all evidence proffered at the hearing is to the contrary.

This demonstrates a larger concern with the two special conditions proposed by the Representatives.  They are not truly bond conditions at all.  They are not predicated on evidence of danger to the community, and they are not designed to protect the safety of the community.  Rather, they are *remedies* that the Representatives seek for their claimed violations of the CVRA *by the government*.  The Representatives have long made clear that they seek to change the terms of the DPA between the Department and Boeing, one of which was the Department's assessment that a monitor is not required.  Dkt. 4 at 6, ¶ 4(h).  For multiple reasons, including the constitutional separation of powers, the Representatives cannot obtain judicial revision of the DPA directly—as both Boeing and the Department have already explained, *see e.g.*, Dkts. 128 and 129.  For those same reasons, the Representatives should not be able to achieve the same end by repackaging their impermissible request for judicial revision of the DPA as a court-imposed bond condition.  Either way, what the Representatives seek is the Court's displacement of the Attorney General's exercise of his exclusive authority over the DPA.  Such an action by this Court—whether cast as imposition

of a bond condition as framed here, or otherwise—is foreclosed by the Constitution, as illustrated by the carefully reasoned appellate decisions in *United States v. Fokker Services, B.V.*, 818 F.3d 733, 741–42 (D.C. Cir. 2016), and *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 135–36 (2d Cir. 2017).  As those cases explain, any attempt by an Article III court to intrude on the Attorney General's exercise of prosecutorial discretion in a DPA—whether by directly changing the DPA's terms or by usurping the Department's role in monitoring compliance with the DPA, as suggested by the Representatives here—violates the separation of powers.

    **A.**    **Independent Compliance Monitor.**

        **1.**    **The Representatives' proposed monitor is not intended to ensure safety of the community.**

The Representatives ask the Court to select an "independent corporate monitor" to "determine whether Boeing is in compliance with its DPA obligations" and to issue a report to the court, and to the public, as to Boeing's compliance.  *See* Dkt. 170 at 20.  In support of this request, the Representatives argue that the Department cannot be "trusted" to supervise Boeing's compliance with the DPA and that independent corporate monitors are often imposed in connection with DPAs.  *See id.* at 23–30.

The Representatives are correct in only one respect, although that factor cuts against their requested outcome here.  It is true that the *government* sometimes imposes a monitor in a DPA as a *term* of a negotiated agreement with a corporate defendant.  The Department, in fact, considered whether a monitor was necessary here to ensure Boeing's compliance, but determined for the reasons stated in the DPA that no monitor was warranted.  *See supra* at 5.  The fact that a monitor is sometimes imposed in a DPA as a matter of the Attorney General's prosecutorial discretion has no bearing on whether judicial imposition of an independent monitor *on top of* the terms that the Attorney General and Boeing agreed to in this DPA is an appropriate or necessary condition of

Boeing's release.  The only questions for the Court now are whether Boeing currently presents a danger to the community and, if so, what are the least restrictive conditions necessary to ensure the community's safety.  An independent monitor, in any form, does not address these issues.

The Representatives' own arguments only underscore the problems with their request.  On the one hand, the Representatives argue that a monitor is necessary to "ensure the safety of 'the community'—and specifically the flying public—during the remaining term of the DPA."  Dkt. 170 at 20.[4]  At the same time, the Representatives appear to recognize the challenges and potential danger that a "safety" monitor would impose.  Dkt. 170 at 30 ("To be clear, the victims' representatives are not asking that the monitor take over Boeing's safety processes.").  As a result, at the hearing, they narrowed their request to seeking an "independent examiner."  Jan. 26, 2023 Hearing Tr. at 88:4–10.

The Representatives' effort to impose a safety monitor, but at the same time disclaim any responsibility for air safety, is unsurprising.  The FAA is mandated by Congress to address aviation safety, including through a dedicated FAA office that oversees Boeing, and there is no evidence that the FAA is not discharging that duty today as it relates to Boeing.  In addition, Boeing follows sophisticated safety management processes established in coordination with and with approval from the FAA.  Injecting a third-party "safety monitor" or "independent examiner" has the potential to increase, not decrease, safety risk.  Any divergence between the direction of the FAA and the court-imposed monitor as to a safety issue would leave Boeing in the untenable position of deciding between compliance with the congressionally mandated safety experts (the FAA), and

---

[4] A monitor is a significant part of the relief that the Representatives have always sought, and presumably they now frame the proposal as safety-related because they want to cast it as a court-imposed condition of release under Section 3142, which they may believe the Court will more readily order.

compliance with its bond conditions.

Moreover, the Representatives' attempt to solve this problem at the hearing, by suggesting that the monitor would be limited to "review[ing] existing compliance measures that Boeing has already (supposedly) undertaken as part of its DPA obligations," just raises new problems of its own. *See* Dkt. 170 at 30; *see also* Jan. 26, 2023 Hearing Tr. at 128:17–20 ("What we are proposing is, take a look at Boeing's efforts, and then see if there are recommendations for improvement that could be made. That's all we're asking for here, a very modest request…"). Far from being necessitated by bona fide safety concerns, this proposal is instead actually intended to (improperly) supervise the Executive's oversight of Boeing's compliance with the DPA. If the monitor is not intended for safety but rather is intended to look over the Department's shoulder, then it serves no purpose as a condition of release under the Bail Reform Act. Instead, such a monitor would violate the separation of powers by usurping the Department's role in monitoring compliance with the DPA.[5] *See supra* at 4; *see also Fokker Services,* 818 F.3d at 741–42. In addition, the bond statute is decidedly not, despite the Representatives' invitation, a vehicle to "see if there are recommendations for improvement that could be made" concerning Boeing's safety efforts under the DPA. *See* Jan. 26, 2023 Hearing Tr. at 128:18–19. The FAA is responsible for such safety issues, and there is no basis in law, fact, or reason to appoint a consultant in the guise of a monitor to offer suggestions about other putative safety measures different from those mandated by the FAA.

---

[5] Imposition of a monitor would also amount to an improper substantive modification of the DPA, given that Boeing agreed in the DPA to have the Department monitor its compliance, not any other entity.

### 2. The Department is actively monitoring Boeing's compliance with the DPA.

Even if independent monitoring of Boeing's compliance with the DPA were a permissible condition of release, that proposed condition is not supported by the record here. As described by both the Department and Boeing, the DPA places rigorous requirements on Boeing and subjects the Company to scrutiny and oversight by prosecutors and compliance experts at the Department. *See* Dkt. 4, Attachments C and D. Over the past two years, Boeing has assessed and enhanced its compliance program to meet existing Department guidelines[6] while incorporating specific feedback and recommendations from the Department. As required by the DPA, Boeing, under the oversight of, and with feedback from the Department, has devised detailed annual work plans to guide its compliance-related work. And the company has shared its review and improvements directly with the Department through regularly scheduled and ad-hoc meetings, quarterly presentations, and comprehensive annual reports. Boeing commits substantial resources to its DPA compliance, including the direct work and oversight of its Chief Compliance Officer and her immediate reports, as well as the larger work of Boeing's well-staffed compliance organization. Boeing has met its obligations—and more importantly, enhanced its compliance program—by increasing the number and qualification of compliance resources,[7] retaining third-party experts to assess the program and identify opportunities for improvement, and ensuring greater collaboration between compliance and other Company functions, ranging from safety to internal audit.[8]

---

[6] *See, e.g.*, Dep't of Justice, *Evaluation of Corporate Compliance Programs* (June 2020).

[7] Over the last several years, Boeing has expanded the Global Compliance organization, increasing the workforce numbers for Ethics, Corporate Compliance, and Corporate Investigations, and has invested heavily in hiring employees with relevant compliance, investigations, and business expertise from inside and outside of Boeing. In addition, Boeing has appointed dedicated Site Compliance and Ethics Officers and Ethics Ambassadors to provide localized compliance support in key locations across the Company.

[8] To be clear, the Justice Department does not attempt to displace the FAA as a safety monitor.

Throughout the DPA's term, Boeing has relied on third-party experts to assess Boeing's compliance organization and to evaluate how the program is working in practice.  For example, Boeing retained a consulting firm with significant expertise assisting companies in the development and implementation of compliance and ethics programs, which has advised Boeing since 2020 and continues to advise the Company today.  These consultants have a combination of prior Department of Justice experience and experience with legal and compliance departments for major multi-national corporations.  In addition, Boeing retained a separate consultant in June 2021 to independently assess Boeing's compliance structure.  This consultant, who has decades of experience in relevant areas, including compliance and ethics, presented her findings not only to Boeing, but also directly to the Department.  Finally, to further enhance the use of data within Boeing's compliance program and assist with empirical testing of compliance initiatives, Boeing has also retained a team of independent data analytics experts who use data and quantitative methods to analyze organizational culture and conduct, and this team has assisted Boeing in ensuring that its compliance efforts are continually improving.[9]

Given confidentiality requirements, the above summaries only scratch the surface of the experts' scope of work and recommendations provided to the Company.  Boeing has, of course, discussed the experts' work in depth with the Department; the Department has met with certain experts directly; and the Department has had direct access to their recommendations through its oversight of Boeing's compliance efforts.

---

Rather, it comprehensively oversees Boeing's compliance efforts and programs, as explained in the record.

[9] To the extent this information regarding Boeing's compliance program and third-party consultants was not already encompassed within Boeing's proffer at the hearing, Boeing's counsel respectfully proffers this additional information as an officer of the court with knowledge of Boeing's compliance program.

Over the last two years, under the leadership of Boeing's Chief Compliance Officer, with the assistance of the third-party experts described above, and under the Department's watch, Boeing has made meaningful and lasting improvements to its compliance program. For example, Boeing has emphasized leadership messaging across the enterprise on the importance of safety, quality, integrity, and transparency, and has enhanced various mechanisms and initiatives to encourage employees to speak up about compliance and safety concerns. Among other significant initiatives undertaken in the past two years, Boeing has improved controls to ensure its communications with regulators are accurate and transparent, strengthened protections around the independence of its FAA-delegated employees, and embedded compliance resources in business units and functions across the Company to identify and address localized compliance risks.

The Department has observed these improvements firsthand. And, as a result, it has repeatedly confirmed for this Court, including during the hearing on January 26, that Boeing has fully complied with the obligations of the DPA. "[O]ver the last two years, Boeing has complied with these [compliance] requirements and made substantial changes and improvements to its compliance program." Jan. 26, 2023 Hearing Tr. at 94:25–95:2; *see also* Dkt. 128 at 4–5 (further describing Boeing's compliance with the DPA's terms). And in describing the Department's intentions to dismiss the charge at the end of the term, the Department has stated: "That is what the United States intends to do here, so long as Boeing continues to fulfill its obligations under the DPA. And thus far, Boeing has fulfilled its obligations under the DPA." May 3, 2022 Hearing, Tr. at 73:6–9.

Neither the facts nor the law support displacing the Department from its Executive prerogative to monitor Boeing's compliance with the DPA. And Boeing is not aware of any case— and the Representatives cite none—where the Department, in its considered discretion, determined

that a monitor was not a necessary as part of a DPA, but a court nevertheless imposed one as a condition of release.

**B.    Disclosure of Boeing's Compliance Reports.**

In addition to imposing an independent monitor, the Representatives urge the Court to order the disclosure of Boeing's compliance-related reports made to the Department.   The Representatives suggest a multi-step process where (1) Boeing submits its compliance reports to a panel of three purported "experts"[10] identified by the Representatives, (2) Boeing and the Department collaborate with the identified experts to determine appropriate confidentiality protections over the disclosed materials, and (3) the experts prepare and release a public report opining on Boeing's compliance with the DPA.   Again, the Representatives improperly seek to inject third parties into the DPA oversight process who would supplant the Department's Executive function and considered judgment about whether Boeing has complied with the DPA.   This proposed condition would violate the separation of powers—as would an independent court-imposed monitor—and Boeing thus incorporates its arguments above. *See supra* at 4, 14.   And as Boeing has previously argued, it would likewise improperly change the terms of the DPA, which is a contract to which Boeing agreed based on all its terms and on which Boeing has relied in its performance. *See* Dkt. 129 at 9–12.

---

[10] The Representatives propose three "experts"—Vickie Norton, Rune Storesund, and Javier de Luis—each of whom has an obvious and material conflict of interest.   The Representatives retained and proffered Vickie Norton and Rune Storesund as experts on the Representatives' standing under the CVRA, and Ms. Norton testified before this Court in August 2022.   (Ms. Norton has also been designated as an expert by parties opposing Boeing in other litigation, both presently and historically.)   And while Javier de Luis is a professor of aeronautics at MIT, he is also the brother of Graziella de Luis—a passenger on Ethiopian Airlines Flight 302—and has a pending wrongful death suit against Boeing.   Mr. de Luis submitted a victim impact statement to this Court in which he opines on the cause of the crash and Boeing's culpability. *See* Dkt. 171-1 at 18.

Correctly recognizing that Boeing's compliance reports will contain proprietary, financial, confidential, and competitive business information, the DPA explicitly provides for the confidentiality of these reports.  *See* Dkt. 4 at Attachment D, ¶ 13.  And for the past two years, Boeing has operated with the good faith expectation that its reports to the Department would in fact remain confidential.  Confidentiality is not an extraneous term of the agreement, but—as the Department explained in opposition to this request at the hearing—is critical "to ensure that there is open dialogue between the [Department] and the defendants that it oversees to get full information about any issues that may arise and how the company is—the steps the company is taking to address them and the steps it's taking to enhance its compliance program."  Jan. 26, 2023 Hearing Tr. at 100:14–19.

Finally, this condition, like the independent monitor, is not designed to ensure safety of the community, which is required for conditions imposed pursuant to Section 3142.  The Representatives frame this proposal as a check on Boeing's compliance enhancements, but Boeing's safety organization as well as the FAA, not Boeing's compliance department, are responsible for safety.  Dkt. 4 at 5, ¶ 4(d) (noting the creation of Boeing's Product and Services Safety organization that centralized the safety-related functions at the company).  Moreover, the proposed panel of experts are not *compliance* experts, and, to the extent they are offered as such, they would have less expertise in this field than the Department of Justice unit that is specifically devoted to compliance and currently overseeing Boeing's DPA compliance efforts.  And if this condition is intended to relate to safety, it runs the same risk of creating divergence from the FAA's safety expertise as does the proposed monitor.  Thus, like the Representatives' request for a monitor, the Court should reject the invitation to release Boeing's confidential compliance reports.

## <u>CONCLUSION</u>

Boeing respectfully requests that the Court reject the special bond conditions urged by the

Representatives.

Respectfully submitted,

**McGUIREWOODS LLP**                                    **KIRKLAND & ELLIS LLP**
*/s/ Benjamin L. Hatch*                                 */s/ Craig S. Primis*
Benjamin L. Hatch                                       Craig S. Primis
VA Bar No. 70116                                        DC Bar No. 454796
bhatch@mcguirewoods.com                                 cprimis@kirkland.com

Brandon M. Santos                                       Mark Filip
VA Bar No. 75380                                        IL Bar No. 6226541
bsantos@mcguirewoods.com                                mark.filip@kirkland.com

McGuireWoods LLP                                        Kirkland & Ellis LLP
888 16th Street N.W., Suite 500                         1301 Pennsylvania Avenue NW
Black Lives Matter Plaza                                One Freedom Plaza
Washington, DC 20006                                    Washington, DC 20004
Tel: 757.640.3727                                       Tel: 202.879.5000
Fax: 757.640.3947                                       Fax: 202.654.9645

***Counsel for The Boeing Company***

                                                        Jeremy Fielding
                                                        Texas State Bar No. 24040895
                                                        Jeremy.fielding@kirkland.com
                                                        Kirkland & Ellis LLP
                                                        1601 Main Street
                                                        Dallas, Texas 75201
                                                        Tel; (214) 972-1770
                                                        Fax: (214) 972-1771

21

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, the foregoing was filed with the Clerk of the United States District Court for the Northern District of Texas using the CM/ECF system.  The system will serve counsel of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch