**RECEIVED**
*By Tamara Ellis at 4:32 pm, Feb 24, 2023*

No.  23-10168

*In the*

**United States Court of Appeals**

*for the*

**Fifth Circuit**

In re: *Smartwings, a.s.,*

*Petitioner.*

## PETITION FOR A WRIT OF MANDAMUS PURSUANT TO THE CRIME VICTIMS' RIGHTS ACT, 18 U.S.C. § 3771(d)(3)

**On Petition for a Writ of Mandamus to the**
**United States District Court for the**
**Northern District of Texas in Case No. 4:21-cr-00005-O**

Adam W. Aston
State Bar No. 24045423
JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas  78701
[Tel.] (512) 236-2000
[Fax] (512) 236-2002
*aaston@jw.com*

Katherine A. Staton
State Bar No. 02815650
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
[Tel.] (214) 953-6000
[Fax] (214) 953-5822
*kstaton@jw.com*

*Counsel for Smartwings, a.s., Petitioner*

**Oral Argument Requested**

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

In re: Smartwings, a.s., Petitioner.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**Petitioner**

Smartwings, a.s. is a European-based airline with its headquarters in the Czech Republic. Smartwings' underlying Crime Victims' Rights Act (CVRA) petition arises out the grounding of the Boeing 737 MAX following two fatal crashes. Smartwings suffered heavy losses due to the grounding resulting from Boeing's criminal conduct, and has an interest in this case.

**Counsel for Smartwings, a.s.**

**David M. Schoeggl**
**Jeffrey Richard Gilmore**
**Katherine A. Staton**
**Katie D. Bass**
**Callie A. Castillo**

Other CVRA petitioners below who will be filing simultaneous mandamus petitions include:

**Naoise Connolly Ryan, Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Bayihe Demissie, Luca Dieci, Sri Hartati, Zipporah Muthoni Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore**, **Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos**, and **Guy Daud Iskandar Zen S.**

**Counsel for Petitioners**:

**Paul G. Cassell** (lead counsel)
**Robert A. Clifford**
**Tracy A. Brammeier**
**Erin R. Applebaum**
**Pablo Rojas**
**Warren T. Burns**
**Darren P. Nicholson**
**Kyle Kilpatrick Oxford**
**Chase Hilton**

**Counsel for Other Crashes Victims:**

Counsel have also entered an appearance for other crashes victims who did not file the petition at issue. These counsel are:

**Adrian Vuckovich**

**Jason Robert Marlin**

**Movant Polskie Linie Lotnicze Lot S.A.**

Polish Airlines, legally incorporated as Polskie Linie Lotnicze LOT S.A. is wholly owned by Polish Aviation Group (Polish: Polska Grupa Lotnicza S. A.), a Polish state-owned holding company. It filed a motion in the case below.

**Counsel for LOT**

**Anthony U. Battista**
**Evan Kwarta**
**Jeffrey W. Hellberg**
**Colin Patrick Benton**
**Mary Dow**

**Amicus Senator Ted Cruz**

United State Senator Ted Cruz from Texas filed an amicus brief in support of petitioners below.

**Counsel for Ted Cruz**

**Nicholas Jon Ganjei**

**Respondent United States**

One respondent is the **United States.** The underlying deferred prosecution agreement at issue was negotiated by attorneys for the United States Department of Justice, Criminal Division, Fraud Section, and United States Attorney's Office for the Northern District of Texas.

**Counsel for the United States**

**Chad E. Meacham**
**Alex C. Lewis**
**Allan Jonathan Medina**
**Carlos Antonio Lope**
**Cory E. Jacobs**
**Jerrob Duffy**
**Lorinda Laryea**
**Michael T. O'Neill**
**Scott Philip Armstrong**
**Daniel S. Kahn**
**Erin Nealy Cox**

**Movant Erin Nealy Cox**

Erin Nealy Cox filed a motion below.

**Counsel for Erin Nealy Cox**

**Marianne Auld.**

**Respondent The Boeing Company**

Another Respondent is **The Boeing Company.** The Boeing Company has no parent corporations and is publicly traded on the NYSE (BA). However, as of December 31, 2012, State Street Corporation, a publicly held company whose subsidiary, State Street Bank and Trust Company, acts as trustee of the Boeing

Company Employee Savings Plan Master Trust, has a beneficial ownership of 10% or more of the outstanding stock of The Boeing Company.

**Counsel for The Boeing Company**

**Richard B. Roper, III**
**Benjamin L. Hatch**
**Brandon M. Santos**
**Craig S. Primis**
**Ian Brinton Hatch**
**Jeremy A. Fielding**
**Mark Filip**
**Patrick Haney**
**Richard Cullen**

**David J. Drez, III**
**Diana Gurfel Shapiro**

**Respondent U.S. District Court for the Northern District of Texas**

Because this is a mandamus petition filed under the Crime Victims' Rights Act, the United States District Court for the Northern District of Texas (O'Connor, J.) is technically a nominal respondent.

*/s/ Adam W. Aston*
Adam W. Aston
*Counsel for Smartwings, a.s.*

iv

**STATEMENT REGARDING ORAL ARGUMENT AND**
**WAIVER OF 72-HOUR RULE**

Whether the Crime Victims' Rights Act should be interpreted to contain an unstated, unreasonably short time limitation is an important issue. Accordingly, petitioners respectfully request oral argument. In order to facilitate the Court's consideration of this mandamus petition (as well as other mandamus petitions that may be filed on similar issues), including any oral argument the Court deems warranted, petitioner is filing an unopposed motion for the Court to waive the statutory 72-hour consideration requirement for this important CVRA mandamus.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT ........................................................................ i

STATEMENT REGARDING ORAL ARGUMENT AND WAIVER OF 72-HOUR RULE .......................................................................................... v

TABLE OF AUTHORITIES .................................................................. viii

INTRODUCTION AND STATEMENT OF THE RELIEF SOUGHT ..................... 1

ISSUES PRESENTED ......................................................................... 2

FACTS .............................................................................................. 2

    A.    Smartwings Is A "Victim" of Boeing's Crime Under the CVRA ......... 2

    B.    The DPA ................................................................................. 6

    C.    Procedural History .................................................................. 7

REASONS WHY THE WRIT SHOULD ISSUE ......................................... 11

I.    STANDARD OF REVIEW ............................................................. 11

II.    SMARTWINGS IS A CRIME VICTIM UNDER THE TERMS OF THE STATUTE, AND ITS REQUEST FOR AN ACCOUNTING IS APPROPRIATE ......................................................................... 11

III.    LACHES DOES NOT BAR SMARTWINGS' CLAIMS OR RIGHTS ....... 13

    A.    Laches is not applicable to a CVRA crime victim application .......... 14

    B.    Even if it were available, the district court erroneously dismissed Smartwings' CVRA application based on laches .............. 16

        1.    The district court erred by applying laches to Smartwings' CVRA application where DOJ and Boeing waived this defense ......................................................................... 17

2.      Even had they attempted to assert laches, DOJ and Boeing
        could not have done so due to their unclean hands ................ 18

3.      Even if laches were available and had been asserted by a
        defendant with clean hands, it is not a viable defense under
        the circumstances presented here because neither of its
        elements are met ...................................................................... 19

IV.     THIS COURT SHOULD DIRECT THE DISTRICT COURT ON
        REMAND TO ORDER AN ACCOUNTING OF THE AIRLINE
        FUND ..........................................................................................26

CONCLUSION .................................................................................................30

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................32

CERTIFICATE OF SERVICE ................................................................................33

## Table of Authorities

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega*,
  708 F.3d 614 (5th Cir. 2013) ..............................................................18

*In Re Allen*,
  701 F.3d 734 (5th Cir. 2012) ................................................15, 16, 21

*Bagby Elevator Co. v. Schindler Elevator Corp.*,
  609 F.3d 768 (5th Cir. 2010) .............................................................18

*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*,
  173 F.Supp.3d 363 (N.D. Tex. 2016), *aff'd as modified and
  remanded*, 725 F.App'x 256 (5th Cir. 2018) ....................................19

*Bank of Saipan v. CNG Fin. Corp.*,
  380 F.3d 836 (5th Cir. 2004) .......................................................18, 19

*Boeing,* Western District of Washington Case No. 2:21-c-00918-RSM
  Dkt. 52, Section VII ...........................................................................10

*City of Gettysburg, S.D. v. United States*,
  64 Fed. Cl. 429 (2005), *aff'd*, 173 F. App'x 827 (Fed. Cir. 2006).....................17

*Dean v. United States*,
  10 Cl. Ct. 563 (U.S. Ct. Claims 1986)................................................17

*In Re Dean*,
  527 F.3d 391 (5th Cir. 2008) .......................................................27, 28

*Elvis Presley Enters., Inc. v. Capece*,
  141 F.3d 188 (5th Cir. 1998) .............................................................20

*Gruma Corp. v. Mexican Restaurants, Inc.*,
  No. 4:09-CV-488, 2010 WL 5390139 (E.D. Tex. Dec. 2, 2010) ......................20

*In re Henderson*,
  577 F.2d 997 (5th Cir. 1978) .............................................................20

*Hyatt v. Hirshfeld*,
  998 F.3d 1347 (Fed. Cir. 2021) ..........................................................22

*Marbury v. Madison*,
  5 U.S. 137 (1803)................................................................................29

*Personalized Media Commc'ns, LLC v. Apple, Inc*.,
  552 F. Supp. 3d 664 (E.D. Tex. 2021), *aff'd,* 57 F.4th 1346 (Fed.
  Cir. 2023) .....................................................................................20, 22

*Radiator Specialty Co. v. Pennzoil-Quaker State Co*.,
  207 F .App'x 361 (5th Cir. 2004)........................................................20

*RE/MAX Intern., Inc. v. Trendsetter Realty, LLC*,
  655 F.Supp.2d 679 (S.D. Tex. Sept. 3, 2009).....................................20

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
  580 U.S. 328 (2017)............................................................................19

*Smith v. Perkins Bd. of Educ.*,
  708 F.3d 821 (6th Cir. 2013) .......................................................17, 18

*Todd v. United States*,
  292 F.2d 841 (U.S. Ct. Claims 1961) .................................................17

*United States v. Batson*,
  608 F.3d 630 (9th Cir. 2010) ..............................................................14

*United States v. Milstein*,
  401 F.3d 53 (2d Cir. 2005) .................................................................14

*In re Wild*,
  994 F.3d 1244 (en banc 11th Cir. 2021), *cert. denied sub nom.*
  *Wild v. United States Dist. Ct. for S. Dist. of Fla.*, 212 L. Ed. 2d
  54, 142 S. Ct. 1188 (2022)..................................................................11

*Zaki Kulaibee Establishment v. McFliker*,
  771 F.3d 1301 ....................................................................................26

**Statutes**

18 U.S.C. § 3553................................................................................................29

18 U.S.C. § 3556 ...................................................................................29

18 U.S.C. § 3664 ...................................................................................29

18 U.S.C. § 3664(a) ...............................................................................26

18 U.S.C. § 3771 .....................................................................................2

18 U.S.C. § 3771(a)(5) .............................................................................2

18 U.S.C. § 3771(a)(6) ..........................................................2, 8, 12, 28

18 U.S.C. § 3771(b)(1) .......................................................12, 26, 27

18 U.S.C. § 3771(c)(1) ...........................................................................25

18 U.S.C. § 3771(d)(3) .....................................................................11, 15

18 U.S.C. § 3771(d)(5) .....................................................................14, 27

## Other Authorities

Boeing Pays Southwest Airlines $428 Million For 737 MAX
    Compensation; Forbes, Apr. 29, 2020
    (https://www.forbes.com/sites/willhorton1/2020/04/29/boeing-
    pays-southwest-airlines-428-million-for-737-max-
    compensation/?sh=35ee2cdd14fd) ....................................................9

Insurance Firms Nailed as a Result of the Boeing 737 MAX Crashes;
    (https://aviationsourcenews.com/news/insurance-firms-nailed-as-a-
    result-of-the-boeing-737-max-crashes/) ...........................................9

More MAX for United Airlines; (https://paxex.aero/united-airlines-
    max-order/) ...................................................................................9

Multiple 737 MAX operators agree on compensation settlements with
    Boeing; (https://www.ifn.news/posts/multiple-737-max-operators-
    agree-oncompensationsettlements-with-boeing/) ................................9

SpiceJet, Boeing settle 737 MAX-related claims;
    (https://economictimes.indiatimes.com) ...........................................9

Univ. of Utah College of Law Research Paper, available at
    https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4365790 .........12

To the Honorable U.S. Court of Appeals for the Fifth Circuit:

Petitioner, Smartwings, a.s., submits this Petition for a Writ of Mandamus Pursuant to the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(d)(3), as well as the All Writs Act, 28 U.S.C. § 1651.

## INTRODUCTION AND STATEMENT OF THE RELIEF SOUGHT

Smartwings filed a Motion to be Designated as a Crime Victim under the CVRA and for an Accounting of the 'Airline Compensation Amount' in Boeing's Deferred Prosecution Agreement in the district court proceeding that began with Boeing and the United States Department of Justice ("DOJ") negotiating and filing a Deferred Prosecution Agreement ("DPA"). Without reaching the merits of Smartwings' motion, the district court (O'Connor, J.) denied it on the ground of laches, a defense that was not raised by either of the parties that opposed Smartwings' motion or, to our knowledge, ever before applied to a CVRA application.

As specifically authorized by the CVRA, *see* 18 U.S.C. § 3771(d)(3), Smartwings asks this Court to issue a writ of mandamus ordering the district court to consider the merits of Smartwings' CVRA motion. As a necessary part of enforcing Smartwings' statutory rights to "confer" and to receive "full and timely restitution as provided in law," 18 U.S.C. § 3771(a)(5)–(6), and to determine whether Boeing has abused its self-administration of this fund, the Court should also direct

1

the district court to order DOJ and Boeing to provide an accounting of Boeing's handling of the Airline Compensation Fund required by the DPA that Boeing and DOJ entered into and filed with the district court on January 7, 2021.

## ISSUES PRESENTED

1. Was it error for the district court to deny Smartwings' motion seeking designation as a crime victim under the CVRA on laches grounds (a defense not raised by any party) without considering the merits of the motion?

2. On remand, should the district court direct DOJ and Boeing to provide an accounting of the Airline Fund made necessary by their failure to honor Smartwings' CVRA right to reasonably confer and to be granted full and timely restitution as provided in law, 18 U.S.C. § 3771(a)(5) – (6)?

## FACTS

### A.    Smartwings Is A "Victim" of Boeing's Crime Under the CVRA

Smartwings, a Prague-based discount airline that operates passenger flights throughout Europe and North Africa, sought "crime victim" status under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, in order to address DOJ's failure to honor Smartwings' CVRA rights with regard to the DPA before it was entered. In the DPA, Boeing agreed not to contest that it had conspired to criminally defraud the FAA by providing false or misleading statements about the significance and effect

of a software system called MCAS that Boeing added to the 737 MAX. As the district court found, these fraudulent statements and omissions directly and proximately led to the two MAX crashes that killed 346 people. They also led directly and proximately to massive disruptions for airlines around the world who had purchased MAX aircraft from Boeing in reliance on the accuracy and completeness of Boeing's false representations/concealments when those aircraft were grounded and new aircraft deliveries stopped for nearly two years.

Smartwings presented the following facts to the district court in support of its motion. Because neither the other parties nor the district court disputed any of these facts,[1] this case comes to this Court on the following record.

Smartwings suffered massive financial losses when the 737 MAX was grounded for two years. APPX.100-101. At the time of the second accident and the grounding, Smartwings had seven MAX's in its fleet—five of which were actually flying at the moment the MAX was grounded and had to divert to nearby airports. *Id.* at 100. Boeing had also promised to deliver another 37 MAX's to Smartwings over the next four years—sixteen of which Boeing had promised to deliver in time for Smartwings' busy 2019 summer season. *Id.* at 100-101. For two years after the

---

[1] DOJ and Boeing both filed oppositions to Smartwings' motion, but neither contested any of the facts stated in the motion. *See* APPX.110 (DOJ response); APPX.119-120 (Boeing response).  Nor did the district court's order denying Smartwings' motion contest any of the facts it asserted.  *See* APPX.133.

grounding, Smartwings was obliged to continue maintaining its seven grounded MAX aircraft that could not be flown. *Id.* at 2. Smartwings was also forced to scramble to attempt to replace MAX capacity with alternative less efficient aircraft through expensive wet leases (i.e, leases of aircraft with crews). It had to cancel many flights, terminate tens of thousands of tickets, close facilities, cancel new routes, and keep and pay employees on alert due to Boeing's promises for a quick fix for the MAX. Smartwings also had to supply substitute transportation for many passengers in order to comply with numerous bulk sales contracts it had with European travel agencies. *Id.* Smartwings has thus suffered hundreds of millions of dollars in damages as a result of Boeing's fraud.

Smartwings' situation is unusual compared to other airlines not only because of the size of its losses, but because Smartwings expressed concerns and asked questions in the fall of 2018 about MAX safety—concerns and questions that Boeing refused to address. Prior to the crashes, Smartwings (like all other 737 MAX purchasers) received information from Boeing—including pilot training materials—that was materially false, inaccurate, and incomplete.[2] After the Lion Air crash,

---

[2] DPA Statement of Fact p. A-14 ¶ 46 (due to Boeing's "intentional withholding of information from the FAA AEG . . . airplane manuals and pilot-training materials for U.S.-based airlines lacked information about MCAS, and relevant portions of these manuals and materials were similarly materially false, inaccurate, and incomplete as a result."); APPX.082,085 (October 22 order) ("Because the [FAA] AEG is considered the world's leading aviation authority—the "gold standard" among global aviation regulators—it is a matter of common practice, and industry-wide

Smartwings asked Boeing for information about whether the MAX was safe, but it received no information of substance from Boeing in response. APPX.101-102. Smartwings became so concerned that it wrote Boeing a November 27, 2018 letter captioned "Safety of Boeing 737." *Id.*; APPX.103. After describing Smartwings' strong disagreement with Boeing's Lion Air response of (1) blaming the pilots, (2) providing Smartwings and other operators with empty gestures but no substantive information, and (3) failing to fix the MAX, the Smartwings letter stated: "It seems that the Boeing Company is not aware of its global social responsibility" with regard to the MAX's safety, and concluded with a plea to Boeing to fix the MAX situation. *Id.* Boeing did nothing to respond in substance. Instead, Boeing demanded in early 2019 that Smartwings take delivery of two (2) more MAX's in late March 2019 or face large contractual penalties. *Id.* Smartwings responded that it would not do so until Boeing provided an official response to the November 27, 2019 letter that verified the MAX was safe. *Id.* Boeing never did, instead insisting that Smartwings had to keep accepting new MAX's whenever Boeing was ready to deliver them. *Id.*

The day of the Ethiopian crash, Smartwings sent an even more frustrated and urgent email to Boeing questioning the MAX's safety. *Id.* Instead of responding to

---

common knowledge, that foreign entities routinely follow the agency's guidance regarding training level certifications and instructional materials."). Thus, Boeing's successful conspiracy to defraud the FAA resulted in false information being supplied to Smartwings and other airlines around the world.

the substance of this urgent request, Boeing proposed another sales call. *Id.* Boeing did ultimately cancel the March deliveries, but only after the 737 MAX grounding orders made it impossible for Boeing to deliver more planes. *Id.*

## B.    The DPA

On January 7, 2021, the United States filed a two-page criminal information against Boeing. APPX.001 Immediately thereafter, Boeing filed the 30-page DPA. APPX.003. It bore nine separate signatures by officers and representatives of Boeing (including Boeing's CEO) and DOJ, all of which were dated the previous day, January 6, 2021. Also on January 7, 2021, Boeing and DOJ filed nine other pleadings addressing various ministerial matters. As these documents clearly show, Boeing, its lawyers, and the DOJ had been working on the DPA for some time before the flurry of filings on January 7, 2021. However, neither Smartwings nor, to Smartwings' knowledge, any other airlines were given notice of the DPA prior to its filing, or given an opportunity to comment or be heard regarding the DPA or any of its provisions. A few weeks later, on January 24, 2021, the district court signed an order granting a joint motion to indefinitely continue all further proceedings in the case based on the DPA. APPX.163  The district court later stated that this order "approved the DPA . . ." APPX.137.

In the DPA, Boeing agreed not to contest allegations that it had conspired to fraudulently and criminally conceal from the FAA aspects of Boeing's MCAS

6

system that could (and did) cause it to put commercial aircraft into uncontrollable fatal dives. APPX.030 (DPA Attachment A Statement of Facts ¶ 1 in which Boeing "agrees that it will neither contest the admissibility of, nor contradict, this Statement of Fact" in any further criminal proceeding). In addition to agreeing to various penalties and restrictions, Boeing agreed to set up two compensation funds. The first was a $500 million passenger compensation fund. APPX.014-016 (¶¶ 13-19). The DPA contained seven paragraphs of detailed provisions regarding administration of the passenger compensation fund, including appointment of an independent administrator with direct ongoing reporting obligations to DOJ. *Id.* The second fund, described briefly in paragraph 12 of the DPA, required Boeing to establish and fund a $1.77 billion Airline Fund to compensate MAX-owning airlines such as Smartwings. APPX.014. In contrast to the Passenger Compensation Fund's detailed oversight provisions, however, the DPA stated only that (1) Boeing "shall pay any remaining amounts due under the Airline Compensation Amount to its airline customers by the end of the Term" and (2) Boeing "shall provide documentation to the Fraud Section evidencing the amounts paid." *Id*. No other oversight was specified.

## C.   Procedural History

Approximately eleven months after the DPA was filed, the first group of family members of individuals killed in the two MAX crashes filed motions with the

district court asking that their CVRA rights be recognized. After an evidentiary hearing in August 2022 in which the district court heard the testimony of fact and expert witnesses to the effect that the fraudulent acts described in the DPA had led to the two crashes followed by the grounding, the court entered an October 21, 2022 order finding that Boeing's criminal fraud described in the DPA had directly and proximately caused both crashes. APPX.098. The district court also ordered further briefing concerning what remedies to grant the family member victims.

While that briefing was still ongoing, on November 28, 2022, Smartwings filed its motion seeking CVRA recognition. Smartwings explained that it qualified as a crime victim because Smartwings' losses stemmed directly from the crashes and the grounding that the Court had already found to be a direct and proximate result of Boeing's criminal conduct outlined in the DPA. APPX.104. The motion also showed that while financial losses cannot compare to the loss of a loved one, the CVRA explicitly gave rights to victims like Smartwings who were harmed financially. *Id; see* 18 U.S.C. § 3771(a)(6) (CVRA grants crime victims "the right to full and timely restitution as provided in law"). The motion noted that Boeing and DOJ had been extremely secretive about the Airline Fund, but presented evidence from publicly available sources suggesting that Boeing has abused its unfettered administration of that fund. APPX.105 & nn. 2-5. Smartwings' motion cited to publicly available information suggesting that Boeing had given certain favored airlines outsized

8

awards while giving other airlines nothing, had counted discounts on future aircraft purchases as "payments," and had taken credit for as much as $1 billion that was actually paid by Boeing's insurers and not by Boeing. [3]

Smartwings' motion posited that the DPA's non-exclusive Airline Fund was designed to comply with the CVRA's "full and timely restitution" requirement by directing Boeing to provide airlines around the world with a modicum of automatic compensation and prohibiting Boeing from forcing airlines to prove fraud again and

---

[3] Smartwings cited to the following public reports suggesting Airline Fund abuses by Boeing: Forbes, Apr. 29, 2020 https://www.forbes.com/sites/willhorton1/2020/04/29/boeing-pays-southwest-airlines-428-million-for-737-max-compensation/?sh=2dac129214fd (reporting that Boeing paid Southwest Airlines at least $428 million as a partial settlement for Boeing's 737 MAX fraud); Washington Post, Jan. 6, 2020 https://www.washingtonpost.com/transportation/2020/01/06/american-airlines-boeing-reach-settlement-max-related-losses/ (describing a confidential settlement Boeing reached with American Airlines); Pax Aero, Mar. 1, 2021 https://paxex.aero/united-airlines-max-order/ (quoting United Airlines concerning its confidential settlement reached with Boeing for 737 MAX losses); The Economic Times, Nov. 17, 2021 https://economictimes.indiatimes.com/industry/transportation/airlines-/-aviation/spicejet-boeing-settle-737-max-related-claims/articleshow/87751043.cms?from=mdr (describing Boeing's confidential settlement with an Indian airline); IFN News, Jan. 7, 2020 https://www.ifn.news/posts/multiple-737-max-operators-agree-oncompensationsettlements-with-boeing/ (reporting confidential Boeing settlements with AeroMexico, Turkish Airlines, and "a growing list of airlines that Boeing has settled compensation cases for 737 MAX losses"); Aviation Source News, October 20, 2022 https://aviationsourcenews.com/news/insurance-firms-nailed-as-a-result-of-the-boeing-737-max-crashes/ (discussing $1 billion insurer payout to Boeing for compensating airlines).

again in multiple civil lawsuits before receiving anything. APPX.104.[4] The brief pointed out that rather than honoring this intent, Boeing had forced Smartwings to file a civil lawsuit to obtain adequate compensation and had managed to delay the litigation for more than 18 months before answering, in violation of the spirit of the DPA. APPX.103-106. When Boeing finally did answer on November 14, 2022, it "denie[d] that Smartwings is entitled to any relief."[5]

DOJ and Boeing both opposed Smartwings' request for CVRA victim status on various technical grounds, but neither contested any of the facts Smartwings had stated in its application, and neither raised laches as a defense against Smartwings.

After briefing, the district court entered an order on February 9, 2023 stating that "without reaching the merits of the foreign carriers' motions, the Court **DENIES** their requested relief as inexcusably delayed and prejudicial to the parties before the Court." APPX.161.

---

[4] The DPA prohibits Boeing from "mak[ing] any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts" and limits Boeing's assertion of defenses in civil litigation to those that "do not contradict, in whole or in part, a statement contained in the attached Statement of Facts." DPA ¶ 32 pp. 20-21.

[5] *Smartwings v. Boeing,* Western District of Washington Case No. 2:21-c-00918-RSM Dkt. 52, p. 41 Section VII.

## REASONS WHY THE WRIT SHOULD ISSUE

### I.    Standard of Review

The CVRA provides that the proper method to challenge a district ruling regarding application of the CVRA is via a writ of mandamus. 18 U.S.C. § 3771(d)(3); *In re Wild*, 994 F.3d 1244, 1254 n.10 (*en banc* 11th Cir. 2021), *cert. denied sub nom. Wild v. United States Dist. Ct. for S. Dist. of Fla.*, 212 L. Ed. 2d 54, 142 S. Ct. 1188 (2022). In an appeal of a CVRA issue, the court of appeals "shall apply ordinary standards of appellate review." 18 U.S.C. § 3771(d)(3).

### II.   Smartwings is a crime victim under the terms of the statute, and its request for an accounting is appropriate

While the district court did not reach the issue, it is clear that Smartwings qualifies as a protected CVRA "crime victim."  The district court made detailed fact findings that the two crashes of planes operated by foreign airlines (Lion Air and Ethiopian Airlines) were a direct and proximate result of Boeing's misconduct outlined in the DPA. APPX.094. It cannot seriously be disputed that the Boeing's fraud leading to the crashes also directly and foreseeably caused all 737 MAX aircraft worldwide to be grounded for nearly two years, or that the grounding and unavailability of a significant portion of Smartings' fleet resulted in significant financial losses to Smartwings.[6]  Nor can it seriously be disputed that the CVRA

---

[6] Smartwings suffered substantial and direct losses when its fleet of seven (7) MAX aircraft was grounded and when Boeing did not deliver thirty-seven (37) more usable

extends victim rights to financial victims as well as injury victims. One of the ten specifically enumerated rights in the CVRA—and arguably the only one that goes beyond a "right to be heard"—is the right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). Section (b) of the CVRA states that the court "shall ensure" that crime victims are afforded these ten rights (including the right to full and timely restitution) "in any court proceeding involving an offense against a crime victim." 18 U.S.C. § 3771(b)(1); *see generally* Paul G. Cassell & Michael Ray Morris, Jr., *Defining "Victim" Through Harm: Crime Victim Status in the Crime Victims' Rights Act and Other Victims' Rights Enactments* (forthcoming Feb. 21, 2023), Univ. of Utah College of Law Research Paper, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4365790 ("In using the unqualified term "harm" as the CVRA's trigger, Congress protected all persons who are harmed in any way by any federal crime.").

That Boeing and DOJ agreed to a victim fund for airlines that was more than 3.5 times larger than the accident victim fund proves Boeing and DOJ knew that airlines like Smartwings were also crime victims with a right (under the CVRA and otherwise) to be compensated for the harm they suffered as a result of Boeing's conduct described in the DPA. Presumably in recognition of these realities, DOJ and

---

safe aircraft over the next two (2) years.

12

Boeing raised only token oppositions to Smartwings' right to victim status in their opposing briefs filed in the district court. APPX.112;[7] APPX.121.[8] Thus, Smartwings would easily have qualified as a crime victim if the district court had reached this issue.

## III.   Laches Does Not Bar Smartwings' Claims or Rights

The district court denied Smartwings' motion based on the doctrine of laches. But laches was not a defense asserted by DOJ or Boeing, so the district court should not have applied it to Smartwings. Even if it had been raised, laches does not apply and should not have been invoked by the district court.

Had Smartwings been given the opportunity to address the issue of laches before the district court, it would have shown that its request for CVRA status should not be barred by that equitable doctrine.

---

[7] DOJ's opposition stated that "[t]he Government acknowledges this Court's prior opinion concerning the causal chains in this CVRA litigation," incorporated its prior arguments rejected by the district court "in order to preserve the issue," and argued only that direct and proximate causation might not exist because Smartwings' planes were grounded by European regulators following the FAA rather than by the FAA itself.

[8] Boeing's opposition contained one sentence suggesting that Smartwings was not a CVRA crime victim, and incorporate pages of its brief opposing a similar motion filed by another airline, LOT.  There, Boeing argued that (1) LOT was not a crime victim because a worldwide grounding was not a reasonably foreseeable result of Boeing's fraudulent incorporation and certification of a critical design flaw causing MAX aircraft to uncontrollably dive to the ground; (2) airlines' financial harms were too remote, and (3) Boeing preferred tying up airlines such as LOT in protracted civil litigation over compensating them through the DPA.  Dkt. 150, pp. 5-11.

### A.    Laches is not applicable to a CVRA crime victim application

First, the doctrine of laches does not even apply in criminal cases such as this one. Laches is generally unavailable to criminal defendants. *See, e.g., United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) (We have "found no case applying a laches defense in the criminal context"); *see also United States v. Batson*, 608 F.3d 630, 633 (9th Cir. 2010) ("Like the Second Circuit, '[w]e have found no case applying a laches defense in the criminal context.'") (alteration in original) (quoting *United States v. Milstein*, 401 F.3d 53, 63 n.3 (2d Cir. 2005) (per curiam)). For criminal defendants, "the relevant statute of limitations, as well as the speedy trial safeguards of the Due Process Clause serve to protect a defendant's interests against unreasonable delay." *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) (internal citations omitted). Here, DOJ and Boeing stipulated, and the district court ordered, that Boeing's speedy trial rights were waived until approximately July 7, 2024. APPX.163.

Also, laches is not a defense available under the CVRA specifically. The CVRA's language indicates that Congress did not intend to subject CVRA victim rights to a common law laches defense. The CVRA's "Limitation on Relief" section contains express time limitations, but they do not apply here. *See* 18 U.S.C. § 3771(d)(5). Its "enforcement" provision directs that, once a movant seeks enforcement of CVRA rights, the district court "shall take up and decide any motion

asserting a victim's right forthwith." 18 U.S.C. § 3771(d)(3). Congress clearly designed this language to eliminate the possibility that district courts might use vaguely defined equitable or discretionary doctrines such as laches to deny crime victims their rights. Here, the district court never took up and "decided" Smartwings application, as the CVRA specifically required.

This Court has already reversed a similar district court ruling over a four-year delay in filing a CVRA petition. In *In Re Allen,* 701 F.3d 734 (5th Cir. 2012), DOJ sought to have petitioners recognized as CVRA crime victims in a prosecution of a refinery for environmental crimes. Their request was denied after a hearing. Four years later, the same petitioners again sought crime victim status – this time through their own attorneys. As this Court found: "Without addressing the arguments raised in that motion, the district court denied Petitioners' request as, essentially, untimely." *Id.* at 735. This Court reversed. The Court noted that Congress has not chosen to add a laches defense into the CVRA, explaining that "[t]he CVRA does not contain a time limit within which putative crime victims must seek relief in the district court." The Court pointed out that "[t]he only time limit discussed in the statute applies when a victim seeks "to re-open a plea or sentence" but found that provision was inapplicable. *Id.* A footnote in *In re Allen* stated that the Court did "not reach the question whether a more inconvenient delay than the one shown here (a few weeks before sentencing) could trigger the doctrine of laches or some other legal

15

principle that might bar a request for crime victim status," *id.* at 735 n.1, but Smartwings' ten-month "delay" here was substantially less "inconvenient" than the one at issue in *In re Allen*.

Although the district court attempted to distinguish *In re Allen*, its reason for doing so was untenable. The district court suggested that in a case involving a DPA, any CVRA petition filed after a DPA was entered and approved would be untimely because "the Court is without authority to reject or oversee [the DPA's] implementation . . ." APPX.160. Under that rationale, victim rights could never be enforced when a DPA is negotiated in secret and filed in a jurisdiction with no apparent connection to the issues (as was done here) because no victim would ever be able to timely file a CVRA petition. This Court should strongly reject the district court's refusal to apply the rationale of *In re Allen*.

### B.    Even if it were available, the district court erroneously dismissed Smartwings' CVRA application based on laches

Even if this Court is inclined to read into the CVRA a "laches" defense that is inconsistent with the statutory language,[9] the Court should reverse the district court's *sua sponte* application of the doctrine to Smartwings.

---

[9] While Smartwings has legal counsel to respond to a "laches" argument, it should be remembered that the CVRA is a broad statute covering thousands of criminal cases—many of which involve cases where crime victims are not represented. For this reason, Congress presumably decided to eschew complicated legal doctrines in favor a statute that even unrepresented victims could use to protect their rights.

16

     **1.**    **The district court erred by applying laches to Smartwings' CVRA application where DOJ and Boeing waived this defense.**

The very first statement in the district court's discussion of laches is that DOJ did not even assert it against Smartwings. APPX.159 ("Laches – which the Government invokes *only* as against foreign carrier LOT" (emphasis added)). Like its legal equivalent statute of limitations, the equitable defense of laches is an affirmative defense that is waived if not properly asserted.

Laches is an affirmative defense and must be pled in the first responsive pleading or it is deemed waived and excluded. *See Todd v. United States,* 292 F.2d 841, 843 (U.S. Ct. Claims 1961); *Dean v. United States,* 10 Cl. Ct. 563, 568 (U.S. Ct. Claims 1986). Some courts have extended this rule slightly and have allowed laches to be raised in a motion to dismiss or a motion for summary judgment. *E.g., City of Gettysburg, S.D. v. United States,* 64 Fed. Cl. 429, 444 (2005), *aff'd*, 173 F. App'x 827 (Fed. Cir. 2006). Here, however, <u>none</u> of the responsive pleadings filed by DOJ and Boeing where they were obligated to state the grounds on which they opposed Smartwings' claim to CVRA status raised laches as a defense. Therefore, the defense was waived and the district court should not have *sua sponte* asserted it on behalf of DOJ and Boeing when those parties forfeited their ability to do so.

Generally, dismissing a party's claim *sua sponte* based on an argument not raised by any party is an abuse of discretion. *Smith v. Perkins Bd. of Educ.*, 708 F.3d

821, 830 (6th Cir. 2013). In *Smith*, a defendant moved for summary judgment based on a single affirmative defense and the parties' briefs addressed only that issue. The district court granted summary judgment based on a different defense that no parties had raised or briefed, and the Sixth Circuit reversed for abuse of discretion. *Id.* The Court held that "[c]onsidering the totality of these proceedings, Plaintiff could not have been aware that summary judgment would be entered against her on grounds that had not been raised by either party." The same is true here. Smartwings could not have been aware that the district court would raise laches after the opposing parties failed to do so, thus Smartwings had no opportunity to even address the issue. The district court's order should be reversed on that basis alone.

### 2.    Even had they attempted to assert laches, DOJ and Boeing could not have done so due to their unclean hands

This Court should also reject the district court's application of the equitable doctrine of laches on behalf of DOJ and Boeing because of the clean hands doctrine, which "requires that one who seeks equity, does equity." *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010). It is universally recognized that a movant's unclean hands disqualify it from invoking equitable doctrines like laches. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) ("all equity-oriented actions[] carr[y] with [them] the affirmative defense of 'unclear hands'"); accord *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (reaffirming that "a laches defense cannot be asserted by a party with

18

unclean hands because [the defense] is equitable")). The unclean-hands doctrine

applies when a party's conduct "has been unconscientious, unjust, marked by a want

of good faith, or violates the principles of equity and righteous dealing." *Bank of

Saipan*, 380 F.3d at 840 (internal citations omitted); *Balfour Beatty Rail, Inc. v.

Kansas City S. Ry. Co.*, 173 F.Supp.3d 363, 407–08 (N.D. Tex. 2016), *aff'd as

modified and remanded*, 725 F.App'x 256 (5th Cir. 2018).

Here, DOJ has been found to have violated the CVRA by failing to confer

with the victims' families. APPX.099 (granting the passenger families' motion "for

findings that the DPA was negotiated in violation of the Victims' Rights");

APPX.142 (district court acknowledge it had previously "decided that the

Government negotiated the DPA in violation of the crime victims' rights").  This

disqualifies DOJ from even raising laches. Similarly, Boeing's admission to criminal

conduct leading to the death of 346 people gives it the most unclean of hands and

precludes it from asserting laches.

> **3.    Even if laches were available and had been asserted by a
> defendant with clean hands, it is not a viable defense under
> the circumstances presented here because neither of its
> elements are met.**

As the district court correctly noted, laches requires proof of two elements:

(1) unreasonable and unexcused delay by the party asserting the claim, and (2)

prejudice to the opposing party if the late claim were allowed to be asserted.

APPX.160; *citing SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.,*

*LLC*, 580 U.S. 328, 333 (2017); *Radiator Specialty Co. v. Pennzoil-Quaker State Co.*, 207 F.App'x 361, 362 (5th Cir. 2004); *see also In re Henderson*, 577 F.2d 997, 1001 (5th Cir. 1978) ("laches requires a showing of both unreasonable delay and prejudice to the party who raises the defense."). Neither element is satisfied.

The district court found that Smartwings should have filed its CVRA victim motion at around the time the first such motion was filed in December 2021, rather than ten months later on November 28, 2022. This Court has previously found that a delay of eight months was not an inexcusable delay justifying a laches defense. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). District courts in this circuit have found that delays of ten months to two years are not unreasonable. *RE/MAX Intern., Inc. v. Trendsetter Realty, LLC*, 655 F.Supp.2d 679, 711 (S.D. Tex. Sept. 3, 2009) (two years); *see also Gruma Corp. v. Mexican Restaurants, Inc.*, No. 4:09-CV-488, 2010 WL 5390139, at *6 (E.D. Tex. Dec. 2, 2010), *report and recommendation adopted*, No. 4:09-CV-488, 2010 WL 5387624 (E.D. Tex. Dec. 22, 2010) ("a time period of approximately nine to ten months ... is not inherently inexcusable."). In patent infringement actions where laches is a common defense, courts in this Circuit generally require a delay of eight years or more before entertaining a claim for laches. *E.g., Personalized Media Commc'ns, LLC v. Apple, Inc.*, 552 F. Supp. 3d 664, 689 (E.D. Tex. 2021), *aff'd*, 57 F.4th 1346 (Fed. Cir. 2023) (canvassing numerous cases).

20

As discussed above, the Court refused to find a four-year delay to be problematic in *In re Allen*. So the far more modest ten-month delay here is also insufficient.  As the *Allen* court noted, the only time limitation in the CVRA applies where a victim seeks to re-open a plea or sentence. 701 F.3d at 735 (*citing* 18 U.S.C. § 3771(d)(5)).  Even if an effort to explore whether a DPA is being properly enforced could be analogized to re-opening a plea or sentence, this section would still not impose a time limit because the statute expressly states that section (d)(5) "does not affect the victim's right to restitution as provided in title 18, United States Code."

Moreover, even assuming that a ten-month delay could theoretically qualify as unreasonable or inexcusable, the procedural history of this case shows that Smartwings did not unreasonably delay its application for CVRA. Criminal fraud leading to a covert deferred prosecution agreement against a major aircraft manufacturer is *sui generis* in the United States as is consideration of how the CVRA applies to such a case. The district court has now found that the Government and Boeing violated the CVRA by secretly negotiating the DPA without affording Boeing's victims their CVRA rights. How to repair the damage done by this violation is a difficult question. Presumably for this reason, the first CVRA victim claims were filed in December 2021, eleven months after the DPA was filed.  Boeing and DOJ filed oppositions raising a host of technical and substantive objections to the family member applicants' request for CVRA crime victim status. After receiving numerous

21

briefs and other pleadings by the proposed victims, DOJ, and Boeing, the district court on April 18, 2022 ordering a May 3, 2022 hearing on the motions. At the hearing, the court took the matter under advisement and issued a July 27, 2022 order setting an evidentiary hearing for August 8, 2022. APPX.061. That hearing took place in segments throughout August 2022. Dkt. 99. The district court entered its Second Opinion and Order several months later on October 21, 2022.  In the October 21 order, the district court found for the first time that the crashes were a direct and proximate result of Boeing's criminal misconduct and the family members qualified as crime victims. APPX.098.

Smartwings' CVRA application was made possible only by the key findings in the October 21, 2022 order, APPX.082. Prior to entry of these key findings, there was no point in Smartwings filing its application for CVRA status.  As demonstrated in the opening paragraph of the October 21, 2022 order, the district court had 20 substantive briefs in front of it that raised and argued dozens of issues.  Smartwings' decision not to file the twenty-first brief on these issues was neither unreasonable nor inexcusable.

Smartwings' motion could also not reasonably have been filed earlier than it was because of what it sought.  A determination of laches depends on the totality of the circumstances. *Hyatt v. Hirshfeld,* 998 F.3d 1347, 1364 (Fed. Cir. 2021); *see Personalized Media Commc'ns, LLC v. Apple, Inc.,* 552 F. Supp. 3d 664, 689 (E.D.

Tex. 2021), *aff'd*, 57 F.4th 1346 (Fed. Cir. 2023) (totality of circumstances must be considered in determining whether patent infringement claim is barred by laches). This means the court should consider the timing of Smartwings' filing in light of the victims' rights Smartwings is requesting. Smartwings seeks CVRA status in an effort to determine why Boeing appears not to be fairly administering the $1.77 billion Airline Fund and—if justified by the accounting—to ask the court to impose meaningful independent oversight over the Fund. Smartwings obviously could not have raised legitimate concerns about Boeing's self-administration of the Fund before Boeing had time to do at least some of that administering. Had Smartwings filed its motion earlier in the DPA's existence, Boeing could legitimately have stated that Smartwings' request was premature. If anything, Smartwings' request comes at exactly the right time. Enough time has passed since January 2021 to raise legitimate concerns about whether better administration of the Airline Fund is needed, but there is still adequate time left in the Fund's three year period for the Court or DOJ to force Boeing to administer it fairly if that is what is called for. Thus, Smartwings' application was not delayed at all and certainly was not inexcusably or unreasonably delayed.

Nor could Boeing or DOJ have met the prejudice requirement necessary for application of laches had they asserted it. To begin with, the burden of establishing "prejudice" rest on Boeing and DOJ—a burden they have not carried. Even though

23

neither of them claimed prejudice, the district court found prejudice for them on the ground that the first stages of the victim rights process were already completed and Boeing and DOJ should not have to "start that process over again now with a new set of purported crime victims" APPX.160. If Smartwings were asking that to re-do the August 2022 hearing or modify or reverse the district court's fact findings regarding direct and proximate causation, then the district court's concern about "start[ing] the process all over again" might have some merit.  But Smartwings is not asking for that relief and has not suggested that anything accomplished prior to its entry into the case should be revisited. To the contrary, Smartwings' application embraced the district court's October 21, 2022 ruling (APPX.082) and contended that it effectively established Smartwings as a "crime victim" under the CVRA. Boeing and DOJ did not seriously argue otherwise in their oppositions.  Thus, the court's ground for prejudice simply does not exist—which may explain why DOJ and Boeing did not even claim the prejudice the district court found on their behalf.

Having inadvertently won on an issue they did not raise, DOJ and Boeing may well assert laches for the first time in their opposition to this mandamus petition. Doing so would be particularly inappropriate for DOJ.  While DOJ has at least made some, after-the-fact attempts to afford the victim family members some of their CVRA rights, DOJ has never made the slightest attempt to afford Smartwings and the other airlines their victim rights. Instead, DOJ joined Boeing in actively opposing

24

Smartwings' effort to gain recognition as a crime victim.  In addition to calling into question why DOJ bothered to include in the DPA a requirement that Boeing pay $1.77 billion in victim compensation to entities it now claims are not victims, DOJ's strange decision to advocate for the criminal rather than the victim violates the CVRA's plain language.  The CVRA envisions that the Justice Department will enforce victims' rights—not evade them, and, particularly not actively hinder victims from trying to enforce the rights themselves.  In particular, 18 U.S.C. § 3771(c)(1) requires that "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their **best efforts** to see that crime victims are notified of, and **accorded**, the rights in [the CVRA]." (emphases added). An attempt by DOJ to block Smartwings' ability to assert its victim rights via a laches defense could not possibly be characterized as "best efforts" to "accord" victims their rights. This textual command by Congress to the Justice Department to protect crime victims further underscores that a laches defense is not part of the CVRA's structure and should not be entertained even if DOJ or Boeing were to belatedly attempt to assert it before this Court.

For these reasons, this Court should issue a writ of mandamus vacating the laches portion of the February 9, 2023 order (APPX.133) and directing the district court to consider the merits of Smartwings' CVRA motion.

## IV.   This Court should direct the District Court on Remand To Order an Accounting of the Airline Fund

The district court purported not to reach the appropriateness of the relief Smartwings seeks, but the February 9, 2023 order contains veiled criticism of the merits of Smartwings' requested relief. APPX.161 ("the Court lacks authority to afford the novel remedies (e.g., public accounting of the DPA Airline Fund) these late coming movants propose.")  But Smartwings' "novel remedy" was simply a request that the district court discharge its CVRA obligation that it "shall ensure" the enforcement of CVRA rights. *See* 18 U.S.C. § 3771(b)(1). In order to discharge its CVRA obligations to "ensure" those rights, the district court must order the Government and Boeing to produce an accounting of the Airline Fund.  This is a minimal request necessary to protect Smartwings' CVRA rights by determining whether sufficient oversight was built into the DPA or whether Boeing has taken unfair advantage of the DPA's failure to incorporate sufficient oversight into the provisions setting up the Airline Fund.

Smartwings' motion further pointed out that ordering an accounting is within a district court's inherent judicial authority where, as here, more common discovery tools are not available.  *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 n. 21, 1314 nn. 25-26 (11th Cir. 2014) (accounting is useful tool available to federal courts in situations where parties are unable to obtain relief via traditional remedies at law due to informational asymmetries and lack of trust); *see* 18 U.S.C.

§ 3664(a) (analogous statute governing federal criminal restitution requires the Court to direct an accounting as part of the mandatory pre-sentence report).

There is no basis in the CVRA to conclude, as the district court apparently has, that Congress intended to afford crime victims broad rights but afford no recourse when those rights are denied. The CVRA states that district courts "*shall ensure* that the crime victims are afforded the rights described in [the CVRA]." 18 U.S.C. § 3771(b)(1) (emphasis added). The only section limiting those rights is section (b)(5), which states that violation of victim rights is never grounds for a new trial, and places strict limits on a victim's ability to re-open a plea or a sentence. 18 U.S.C. § 3771(d)(5). But the "limitation on relief" section makes clear that it "does not affect the victim's right to restitution as provided in title 18, United States Code." In other words, claims like Smartwings' for financial restitution are not precluded by the "Limitations on Relief" section of the CVRA.

The district court's suggestion that it has no authority to order an accounting is also misplaced because the district court was answering the wrong question when it considered the scope of its authority under the CVRA. The question is not whether the CVRA generally allows a court to rewrite a DPA after it is agreed to and filed, the question is what actions the Court should take when DOJ fails to afford victims their rights <u>before</u> a DPA is finalized. As this Court stated in *In Re Dean:*

> In passing the [CVRA] Act, Congress made the policy decision—which we are bound to enforce—that the victims have a right to inform the

plea negotiation process by conferring with prosecutors *before* a plea agreement is reached.

*In Re Dean,* 527 F.3d 391, at 395 (5th Cir. 2008) (emphasis added).

The CVRA gives victims the right to "to confer with the attorney for the Government in the case," § 3771(a)(5), and to "be informed in a timely manner of any … deferred prosecution agreement," § 3771(a)(9). The United States Attorney General has directed United States government officials to make their best efforts to see that these rights are secured as early in the criminal justice process as feasible and appropriate, including before the execution of a deferred prosecution agreement. See Dep't of Justice, The Attorney General Guidelines for Victim and Witness Assistance (2022 Ed.) (effective March 31, 2023) and (2011 Ed., rev. May 2012).

It is undisputed that DOJ did not follow the CVRA and its own guidance as regards Smartwings when it negotiated the DPA. Had it done so, Smartwings and other airline victims would have commented on the DPA's grant of unfettered discretion to Boeing to pay out the $1.77 billion Airline Fund to whomever it liked. Presumably, DOJ would have recognized its error in agreeing to this and would have built in better oversight that would have forced Boeing to use the fund as intended to provide at least partial compensation to airlines like Smartwings. Instead, DOJ allowed Boeing to self-administer the Airline Fund and, at least so far, that decision has resulted in a failure to honor Smartwings' CVRA right to "full and timely restitution." § 3771(a)(6). The question before the Court is thus how to repair the

28

DPA parties' failure to accord Smartwings its victim rights before the DPA was filed on January 7, 2021. Smartwings' request for an accounting is simply the first step in repairing a prior wrong, not assertion of a new right.

And even if DOJ had afforded Smartwings its victim rights and had nonetheless concluded in 2021 that no oversight of the Airline Fund was necessary due to DOJ's high level of trust in Boeing,[10] the Court has the power to now order the Government to provide reports about a defendant's compliance with a deferred prosecution agreement as part of the Court's inherent authority to supervise criminal proceedings, sentence criminal defendants and order restitution. *See e.g.* 18 U.S.C. §§ 3664, 3553, 3556.

Since 1803, our courts have held that "where there is a legal right, there is also a legal remedy . . . ." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal quotation omitted).  The Court should therefore not interpret the crime victim statute to deprive courts of any authority to address the consequences of a failure to honor Smartwings' crime victim rights. Therefore, the Court's writ of mandamus should direct the district court to afford Smartwings meaningful victim rights. For the reasons explained herein, an accounting is an appropriate first step in determining how to enforce such rights. In light of the district court's statement that ordering an

---

[10] This would have been an odd conclusion given the DPA's recitations that Boeing had criminally defrauded another branch of the federal government, the FAA.

29

accounting is "novel" and something the district believed it lacked authority to order, this Court should provide direction in this area to avoid a second mandamus proceeding.

## CONCLUSION

For these reasons, this Court should enter a Mandamus order directing the district court to consider the merits of Smartwings' CVRA victim status request. To avoid further appeals, the Court should also direct the district court that if Smartwings' victim status is confirmed, the district court should exercise its statutory and inherent to authority to grant Smartwings the right to an accounting of the DPA's $1.77 billion Airline Compensation Fund to determine whether further relief is appropriate to repair the damage done by DOJ's failure to recognize Smartwings' victim rights in the first instance.

Respectfully submitted,

*/s/ Adam W. Aston*
Katherine A. Staton
State Bar No. 02815650
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: 214-953-6000
Fax:  214-953-5822
kstaton@jw.com

Adam W. Aston
State Bar No. 24045423
JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas  78701
[Tel.] (512) 236-2000
[Fax] (512) 236-2002
*aaston@jw.com*

*Counsel for Smartwings, a.s.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This petition complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains 7,508 words, excluding the documents exempted by Fed. R. App. P. 21(d) and the parts of the petition exempted by Fed. R. App. P. 32(f). This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman typeface.

*/s/ Adam W. Aston*
Adam W. Aston

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2023, I electronically filed the foregoing document using the Court's CM/ECF system and that the document was served via email on The Hon. Reed O'Connor of the U.S. District Court for the Northern District of Texas and by email on:

Hon. Reed O'Connor
Orders@txnduscourts.gov

Benjamin L Hatch
McGuireWoods LLP
101 W Main Street, Suite 9000
Norfolk, VA 23510
757-640-3727
Fax: 757-640-3947
bhatch@mcguirewoods.com

Brandon M Santos
McGuireWoods LLP
800 E Canal Street
Richmond, VA 23219
804-775-4745
Fax: 804-698-2194
bsantos@mcguirewoods.com

Craig S Primis
Kirkland & Ellis LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
202-389-5921
Fax: 202-389-5200
cprimis@kirkland.com

Ian Brinton Hatch
Wick Phillips Gould & Martin LLP
100 Throckmorton Street, Suite 1500
Fort Worth, TX 76102
480-375-8992

Fax: 817-332-7789
ian.hatch@kirkland.com

Jeremy A Fielding
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
214-972-1754
jeremy.fielding@kirkland.com

Mark Filip
Kirkland & Ellis LLP
300 N LaSalle
Chicago, IL 60654
312-862-2000
Fax: 312-862-2200
mark.filip@kirkland.com

Warren T Burns
Darren P Nicholson
Kyle Kilpatrick Oxford
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
469-504-4550
Fax: 469-444-5002
wburns@burnscharest.com
dnicholson@burnscharest.com
koxford@burnscharest.com

Erin Ressa Applebaum
Kreindler & Kreindler LLP
485 Lexington Avenue, 28th Floor
New York, NY 10017
212-687-8181
Fax: 212-972-9432
eapplebaum@kreindler.com

Pablo Rojas
Podhurst Orseck PA

One SE 3rd Avenue, Suite 2300
Miami, FL 33131
305-358-2800
Fax: 305-358-2382
projas@podhurst.com

Paul G Cassell
SJ Quinney College of Law at the University of Utah
Utah Appellate Project
383 S University Street
Salt Lake City, UT 84112
801-585-5202
Fax: 801-585-0050
cassellp@law.utah.edu

Robert A Clifford
Tracy A Brammeier
Clifford Law Offices
120 North LaSalle Street, Ste 31st Floor
Chicago, IL 60602
312-899-9090
rac@cliffordlaw.com
tab@cliffordlaw.com

Marianne Auld
Kelly Hart & Hallman LLP
201 Main St., Suite 2500
Fort Worth, TX 76102
817/332-2500
Fax: 817/878-9280
marianne.auld@kellyhart.com

Nicholas Jon Ganjei
US Attorney's Office for the EDTX
350 Magnolia Avenue, Suite 150
Beaumont, TX 77701
409-839-2538
Fax: 409-839-2557
Nicholas.J.Ganjei@usdoj.gov

Jeffrey W Hellberg , Jr
Wick Phillips Gould & Martin LLP
3131 McKinney Avenue, Suite 500
Dallas, TX 75204
214-692-6200
Fax: 214-692-6255
jeff.hellberg@wickphillips.com

Colin Patrick Benton
David J Drez , III
Wick Phillips Gould Martin LLP
100 Throckmorton St., Suite 1500
Fort Worth, TX 76102
817-984-7429
colin.benton@wickphillips.com
david.drez@wickphillips.com

Anthony U Battista
Diana Gurfel Shapiro
Evan Kwarta
Mary Dow
Condon & Forsyth LLP
7 Times Square, 18th Floor
New York, NY 10036
212-894-6884
abattista@condonlaw.com
dgurfel@condonlaw.com
ekwarta@condonlaw.com
mdow@condonlaw.com

Adrian Vuckovich
Collins Bargione & Vuckovich
One North LaSalle Street, Suite #300
Chicago, IL 60602
312-372-7813
Fax: 312-372-7840
av@cb-law.com

Jason Robert Marlin
Bailey Brauer PLLC

8350 N. Central Expressway, Suite 650
Dallas, TX 75206
2143607433
Fax: 2143607435
jmarlin@baileybrauer.com

Jeffrey Richard Gilmore
Jackson Walker LLP
777 Main St., Suite 2100
Fort Worth, TX 76102
817-334-7285
Fax: 817-870-5105
jgilmore@jw.com

David M. Schoeggl, *PRO HAC VICE*
Callie A. Castillo, *PRO HAC VICE*
Katie D Bass, *PRO HAC VICE*
Lane Powell PC
1420 Fifth Avenue, Suite 4200
Seattle, WA 98111
206-223-7000
schoeggld@lanepowell.com
castilloc@lanepowell.com
bassk@lanepowell.com

Anthony P Keyter              *Via First Class U.S. Mail*
6200 Soundview Drive, R201
Gig Harbor, WA 98335
253-853-3859

Chad E Meacham-DOJ
Carlos Antonio Lopez-DOJ
US Attorney's Office
1100 Commerce St., 3rd Floor
Dallas, TX 75242-1699
214-659-8600
Fax: 214-767-4104
chad.meacham@usdoj.gov
Carlos.Lopez@usdoj.gov

Alex C Lewis-DOJ
US Attorney's Office
801 Cherry Street, Suite 1700
Fort Worth, TX 76102-6882
817-252-5200
Fax: 817-252-5455
alex.lewis@usdoj.gov

Allan Jonathan Medina
Cory E Jacobs-DOJ
Michael T O'Neill
Scott Philip Armstrong
United States Department of Justice
1400 New York NW, Eighth Floor
Washington, DC 20005
202-257-6537
allan.medina@usdoj.gov
cory.jacobs@usdoj.gov
michael.t.oneill@usdoj.gov
scott.armstrong@usdoj.gov

Jerrob Duffy
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
202-368-0136
Fax: 202-457-5625
Jerrob.Duffy@squirepb.com

Lorinda Laryea
DOJ-Crm
Fraud Section
1400 New York Ave NW
Room 448
Washington, DC 20005
202-262-9197
lorinda.laryea@usdoj.gov

*/s/ Adam W. Aston*
Adam W. Aston