**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-00005-O-1 |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**MOTION BY NAOISE CONNOLLY RYAN, ET AL. REQUESTING
RECONSIDERATION OF COURT-IMPOSED CONDITIONS OF RELEASE ON
BOEING UNDER 18 U.S.C. § 3142(C)(3)**

*/s/ Darren P. Nicholson*
_____
Warren T. Burns
Texas Bar No. 24053119
Darren P. Nicholson
Texas Bar No. 24032789
Kyle K. Oxford
Texas Bar No. 24095806
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wburns@burnscharest.com
dnicholson@burnscharest.com
koxford@burnscharest.com

*/s/ Paul G. Cassell*
_____
Paul G. Cassell (Utah Bar No. 06078)
(Counsel of Record)
Utah Appellate Project
S.J. QUINNEY COLLEGE OF LAW
University of Utah
cassellp@law.utah.edu
(no institutional endorsement implied)

Tracy A. Brammeier
CLIFFORD LAW OFFICES PC
tab@cliffordlaw.com

Erin R. Applebaum
KREINDLER & KREINDLER LLP
eapplebaum@kreindler.com

Pablo Rojas
PODHURST ORSECK PA
projas@podhurst.com

*Attorneys for Victims' Representatives*

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ........................................................................................................... 1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ............................................ 3

I.     Relevant Procedural Background ................................................................... 3

II.    New Factual Developments Regarding Safety Concerns at Boeing................................. 6

DISCUSSION ................................................................................................................ 13

I.     The Court Should Broadly Consider Boeing's Dangerousness in Setting Conditions of Release. .................................................................................. 13

II.    A Factual Record Now Exist to Support the Appointment of a Judicial Monitor over Boeing's Safety Practices........................................................................... 15

III.   The Justice Department Possesses Significant Information Regarding the Dangers Posed by Boeing, Which It Should Provide to the Court. ................................. 17

IV.   Appointing a Judicial Monitor Would Be Straightforward............................................. 19

V.    The Court Should Order Expedited Briefing on these Issues Relating to Public Safety.

CONCLUSION.............................................................................................................. 23

CERTIFICATE OF CONFERENCE UNDER LOCAL RULE 47.1(B).................................... 24

CERTIFICATE OF SERVICE ........................................................................................ 24

# TABLE OF AUTHORITIES

Cases

*In re Ryan*,
    88 F.4th 614 (5th Cir. 2023)................................................................................. 1

*In re Ryan*,
    88 F.4th 614, 623 (2023)................................................................................. 5

*In re Ryan*,
    88 F.4th 614, 627 (2023)................................................................................. 5

The Boeing Company and Society of Professional Engineering Employees in Aerospace,
    19-CA-272489, N.L.R.B. JD(SF)-10-24, (Mar. 22, 2024); ................................ 13

*United States v. Emakoji*,
    990 F.3d 885, 892 (5th Cir. 2021) ................................................................... 13

*United States v. Fortna*,
    769 F.2d 243, 250 (5th Cir. 1985) ................................................................... 14

*United States v. Montemayor*,
    666 F.2d 235, 2367 (5th Cir. 1982) ................................................................. 13

*United States v. Smith*,
    79 F.3d 1208 (D.C. Cir. 1996) (per curiam).................................................. 14

*United States v. Turner*,
    367 F. Supp. 2d 319, 333 (E.D.N.Y. 2005) ................................................... 15

*United States v. Walker*,
    No. 2:18-CR-37-FL-1, 2019 WL 4412909, at *5 (E.D.N.C. 2019)................ 14

Statutes

18 U.S.C § 3142 (c)(1)(B) ..................................................................................... 13

18 U.S.C. § 3142(c)(3)................................................................................ 1, 2, 13, 19

18 U.S.C. § 3142(e)(1).......................................................................................... 13

18 U.S.C. § 3771 .................................................................................................... 3

18 U.S.C. § 3771(a)(1)............................................................................................ 1

18 U.S.C. § 3771(a)(3)............................................................................................ 3

18 U.S.C. § 3771(a)(4)............................................................................................ 3

18 U.S.C. § 3771(a)(5)............................................................................................ 1

18 U.S.C. § 3771(a)(7)............................................................................................ 6

18 U.S.C. § 3771(b)(1) ........................................................................................... 1

18 U.S.C. § 3771 (d)(2) .......................................................................................... 3

<u>Other Authorities</u>

Accident Investigation Preliminary Report, Accident Number: DCA24MA063,
    NTSB, Feb. 6, 2024 ................................................................................................ 11

Allyson Versprille & Austin Weinstein, *SEC Probing Boeing's Safety Claims After
    Panel Blew Off Plane*, BNN Bloomberg, May 9, 2024,
    https://www.bnnbloomberg.ca/boeing-s-safety-claims-probed-by-sec-after-
    panel-blew-off-plane-1.2071150.................................................................................. 15

Allyson Versprille & Julie Johnsson, *Boeing Lost Hundreds of Bad 737 Parts,
    Whistleblower Says*, BLOOMBERG, Jun 18, 2024,
    https://www.bloomberg.com/news/articles/2024-06-18/boeing-may-have-
    installed-bad-737-parts-whistleblower-alleges?embedded-checkout=true............................. 16

Andrew Tangel & Alison Sider, *Boeing 737 Max Missing Critical Bolts in Alaska
    Airlines Blowout, NTSB Says*, Wall St. J., Feb 6, 2024,
    https://www.wsj.com/business/airlines/boeing-737-max-missing-critical-bolts-
    in-alaska-airlines-blowout-ntsb-says-de6af750 .......................................................... 11

Andrew Tangel & Dave Michaels, *Inside DOJ's Wrenching Decision on Whether
    to Prosecute Boeing*, WALL ST. J. (June 17, 2024) .................................................. 21

Andrew Tangel, Alison Sider, Sharon Terlep & Nancy Keates, *United, Alaska
    Find Loose Parts on Some Boeing 737 Max 9* Jets, Jan. 9, 2024,
    https://www.wsj.com/business/airlines/faa-approves-inspection-method-for-
    grounded-boeing-737-max-9-jets-c06c3234. .................................................................. 9

Andrew Tangel, *FAA Says It Will Ramp Up Inspections of Boeing Facilities*,
    WALL ST. J., Jan 12, 2024, https://www.wsj.com/business/airlines/faa-says-it-
    will-ramp-up-inspections-of-boeing-facilities-ec020af5 ........................................... 10

Associated Press, *Alaska Airlines grounds 737 Max 9 fleet after window blows out
    on flight from Oregon*, Nat'l Pub. Radio, Jan. 6, 2024,
    https://www.npr.org/2024/01/06/1223280562/alaska-airlines-flight-emergency-
    landing-oregon ............................................................................................................... 9

Ben Glickman, *FAA Audit Finds Boeing Quality Control Failed in Alaska Air
    Incident*, WALL ST. J., Mar 4, 2024, https://www.wsj.com/business/airlines/faa-
    audit-finds-boeing-quality-control-failed-in-alaska-air-incident-e70df4f0 .......................... 12

Bill Chappell, *Boeing Whistleblower John Barnett, Who Raised Alarm Over
    Plane Quality, Is Found Dead*, Nat'l Pub. Radio, Mar. 12, 2024,
    https://www.npr.org/2024/03/12/1238033573/boeing-whistleblower-john-
    barnett-dead. .................................................................................................................. 13

Chris Prentice et al., *U.S. Prosecutors Recommend Justice Department
    Criminally Charge Boeing*, REUTERS (June 23, 2024)
    https://www.reuters.com/legal/us-prosecutors-recommend-doj-criminally-
    charge-boeing-deadline-looms-2024-06-23/ ................................................................ 28

Dominic Gates, *Boeing, Not Spirit, Mis-Installed Piece That Blew Off Alaska Max 9 Jet, Industry Source Says*, SEATTLE TIMES, Jan 24, 2024, https://www.seattletimes.com/business/boeing-aerospace/boeing-not-spirit-mis-installed-piece-that-blew-off-alaska-max-9-jet/ ................................................................ 10

Emergency Airworthiness Directive, FAA AD 2024-02-51 (Jan. 6, 2024) ................................... 9

*FAA Halts Boeing MAX Production Expansion to Improve Quality Control, Also Lays Out Extensive Inspection and Maintenance Process to Allow Boeing 737-9 MAX Aircraft to Return to Service*, FAA, Jan 24, 2024, https://www.faa.gov/newsroom/faa-halts-boeing-max-production-expansion-improve-quality-control-also-lays-out-extensive................................................................ 11

https://www.hsgac.senate.gov/subcommittees/investigations/hearings/ ....................................... 7

https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/. ................................................................ 17

https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/2024-06-18-blumenthal-opening-statement/ ................................................................................................................. 8, 28

https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/2024-06-18-johnson-opening-statement-2/ ................................................................................................................................. 8

https://www.hsgac.senate.gov/subcommittees/investigations/hearings/examining-boeings-broken-safety-culture-firsthand-accounts/ ................................................................ 22

Joel Rose, *The FAA is Tightening Oversight of Boeing and Will Audit Production of the 737 Max* 9, Nat'l Pub. Radio, Jan 12, 2024, https://www.npr.org/2024/01/12/1224444590/boeing-faa-737-max-9-alaska-airlines-door-plug ................................................................................................ 10

John C. Coffee, *Nosedive: Boeing and the Corruption of the Deferred Prosecution Agreement* at 24 (June 7, 2022) ................................................................................. 21

Juliana Kim, *Boeing Says It Can't Find Documents On The Door Plug That Blew Off Mid-Air*, Nat'l Pub. Radio, Mar. 9, 2024, https://www.npr.org/2024/03/09/1237204488/boeing-door-plug-alaska-airlines-investigation.......................................................................................................... 13

Juliana Kim, *FAA Orders Grounding of Certain Boeing 737 Max 9 Planes After Alaska Airlines Incident*, Nat'l Pub. Radio, Jan. 6, 2024, https://www.npr.org/2024/01/06/1223296736/boeing-737-max-9-planes-grounded; ................................................................................................................... 9

Julie Johnsson & Allyson Versprille, *Boeing Discloses 787 Fastener Issue as FAA Steps Up Scrutiny*, BLOOMBERG, Jun 13, 2024, https://www.bloomberg.com/news/articles/2024-06-13/boeing-says-it-s-inspecting-undelivered-787s-for-fastener-issue?embedded-checkout=true. ........................... 16

Julie Johnsson & Allyson Versprille, *Boeing's Latest Probe Deepens Manufacturing Crisis of Confidence*, Bloomberg, May 7, 2024, https://www.bloomberg.com/news/articles/2024-05-06/boeing-faces-faa-probe-of-787-dreamliner-inspections-records?embedded-checkout=true. ........................................ 15

Julie Johnsson, *Boeing Critic Says He Shared Missing-Bolt Records with FBI*, BLOOMBERG, Apr. 17, 2024, https://www.bloomberg.com/news/articles/2024-04-17/boeing-critic-says-he-shared-missing-737-bolt-records-with-fbi?embedded-checkout=true............................................................................... 14

Marisa Garcia, FAA *Expert Panel Details Faults in Boeing's Safety Management System,* FORBES, Feb. 27, 2024, https://www.forbes.com/sites/marisagarcia/2024/02/27/boeing-made-safety-confusing-faa-expert-panel-finds/............................................................... 11

Mark Walker & Glenn Thrush, *Boeing May Evade Criminal Charges for Violating Settlement*, N.Y. TIMES (June 21, 2024)................................................................... 28

Mary Schlangenstein, *Southwest Air Flight 'Dutch Roll' Probed by US Regulators,* BLOOMBERG, June 14, 2024, https://www.bloomberg.com/news/articles/2024-06-14/southwest-airlines-flight-dutch-roll-probed-by-us-regulators?embedded-checkout=true ...................................... 16

Megan Cerullo, *Boeing Ignores Safety Concerns and Production Problems, Whistleblower Claims,* CBS News, Apr. 17, 2024, https://www.cbsnews.com/news/boeing-whistleblower-sam-salehpour-testimony/............................................................................................... 14

*NTSB Investigations Reports: Hearing before S. Comm. On Com., Sci., and Transp.*, 118th Congress 2 (2024) https://www.commerce.senate.gov/services/files/904783DE-294F-415B-ABB5-495DDD2AAA56.............................................................................. 12

Paul G. Cassell, *Balancing the Scales of Justice: The Case for and the Effects of Utah's Victims' Rights Amendment*, 1994 Utah L. Rev. 1373, 1394)) ...................................... 20

Robert Iafolla, *Boeing Punished Unionized Pilots With Layoff, NLRB Judge Rules*, BLOOMBERG LAW NEWS, Mar 22, 2024, https://www.bloomberglaw.com/bloomberglawnews/daily-labor-report/X64UO510000000?bna_news_filter=daily-labor-report#jcite. .................................... 13

*Section 103 Organization Designation Authorizations (ODA)  for Transport Airplanes Expert Panel Review Report*, FAA, https://www.faa.gov/newsroom/Sec103_ExpertPanelReview_Report_Final.pdf at 4................................................................................................................ 12

Siddharth Philip & Allyson Versprille, *FAA Probes Suspect Titanium Used in Airbus, Boeing Jets*, Bloomberg, Jun 13, 2024, https://www.bloomberg.com/news/articles/2024-06-14/faa-probes-titanium-with-fake-documents-used-by-airbus-boeing?embedded-checkout=true................................ 17

Siddharth Philip, *Boeing Crisis of Confidence Deepens With 787 Now Under Scrutiny*, BLOOMBERG, Apr. 10, 2024, https://www.bloomberg.com/news/articles/2024-04-09/boeing-shares-fall-after-nyt-report-on-787-whistleblower-claims?embedded-checkout=true ..................................... 14

Siddharth Philip, *Boeing Retaliated Against Staff Raising Concerns, Union Says*, BLOOMBERG, Apr. 23, 2024, https://www.bloomberg.com/news/articles/2024-04-23/boeing-ba-retaliated-against-workers-for-raising-concerns-union-says?embedded-checkout=true. ............................................................... 15

throwawayboeingN704AL, Comment-509962, Leeham News and Analysis, Jan 16, 2024, https://leehamnews.com/2024/01/15/unplanned-removal-installation-inspection-procedure-at-boeing/#comment-509962 ................................................ 10

Tim Hepher, David Shepardson, Allison Lampert, *Exclusive: Boeing Investigates Quality Problem on Undelivered 787s*, REUTERS, June14, 2024, https://tinyurl.com/4fet9ttx. ....................................................................... 17

*Updates on Boeing 737-9 Max Aircraft*, FAA, Mar 4, 2024, https://www.faa.gov/newsroom/updates-boeing-737-9-max-aircraft; .................................... 12

Rules

Fed. R. Evid. 1101(d)(3) ............................................................................. 13

LCrR 47.1(e) .............................................................................................. 22

Treatises

4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 12.1(d) (Nov. 2022 update) ..................... 14

Deputy Atty. Gen., Corporate Crime Advisory Group and Initial Revisions to Corporate Criminal Enforcement Policies (Oct. 28, 2021). ....................................................... 18

**MOTION BY NAOISE CONNOLLY RYAN, ET AL. REQUESTING RECONSIDERATION OF COURT-IMPOSED CONDITIONS OF RELEASE ON BOEING UNDER 18 U.S.C. § 3142(C)(3) AND REQUESTING EXPEDITED BRIEFING**

## INTRODUCTION

Naoise Connolly Ryan et al.[1] (the "victims' families" or "families"), through undersigned counsel, file this motion requesting reconsideration of court-imposed conditions of release that the Court previously imposed on Boeing. The victims' families request that the Court now add to the existing conditions of Boeing's release a corporate monitor to examine Boeing's safety and corporate compliance procedures. *See* 18 U.S.C. § 3142(c)(3) ("The judicial officer may at any time amend the order to impose additional or different conditions of release."). The families also request expedited briefing in view of the urgent public safety issues involved.

This motion is authorized under the Crime Victims' Rights Act (CVRA), which provides that the crime victims (and their representatives) are entitled to be "reasonably heard" regarding the "release" of a criminal defendant—such as The Boeing Company. 18 U.S.C. § 3771(a)(5). Victims are further entitled to the right "to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). The Court, of course, is obligated to enforce victims' rights at every step of this case. *See* 18 U.S.C. § 3771(b)(1). *See generally In re Ryan*, 88 F.4th 614, (5th Cir. 2023) ("the district court has demonstrated careful competence that … [it] *must uphold crime victims' statutory rights at every stage of the court's criminal proceedings*" (emphasis added)).

This Court previously allowed the victims' families to be heard on the conditions of release when they requested the appointment of a corporate monitor regarding Boeing's safety and ethics

---

[1] In addition to Ms. Ryan, the other victims' family members filing this motion are Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, Guy Daud Iskandar Zen S., and others similarly situated.

practices. ECF No. 170 at 22-30. The Court denied their request, finding that at that time (February 2023) the existing factual record did not support such a condition:

> Having considered the parties' briefing regarding additional conditions of release, the Court is of the view that *no factual record exists* to justify a finding that Boeing—while subject to the Government's continued supervision—currently presents an ongoing threat to public safety such that imposition of additional conditions of release pursuant to 18 U.S.C. § 3142 are necessary

ECF No. 185 at 8 (emphasis added).

Since the Court's ruling sixteen months ago, an ample factual record has developed supporting a factual finding that Boeing presents an ongoing threat to public safety such that imposing additional conditions of release is needed. Among other things, the Justice Department has now determined that (even though Boeing has been under the Department's supervision), Boeing has breached its obligations under the DPA to design, implement, and enforce a compliance and ethics program to prevent and detect violations of U.S. fraud laws throughout its operations. ECF No. 199 at 1. And abundant public reports whose accuracy cannot be reasonably disputed document Boeing's public safety threats developing in flights around the world.

The families understand that the Justice Department will be determining how to proceed with regard to the ongoing prosecution of Boeing before July 7. However, in light of recent events and testimony by Boeing's CEO that he is "proud" of every action taken by Boeing (described below), no time can be lost. Accordingly, in view of these significantly changed circumstances and as authorized by 18 U.S.C. § 3142(c)(3), the Court should now impose an independent judicial monitor to review Boeing's safety and corporate compliance efforts. A proposed order to that effect is attached.

In view of the urgency of the situation, the families also request that the Court direct expedited briefing on their motion.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### I.     Relevant Procedural Background

Since the Department filed criminal charges against Boeing on January 7, 2021, ECF No. 1, a long procedural history has developed in this case. For present purposes, it is only necessary to focus on the proceedings relevant to Boeing's conditions of release.

The Court will recall that, despite the Department's and Boeing's arguments to the contrary, it ruled that the families represent "crime victims" with protected rights under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. *See* ECF No. 116. The Court also ruled that the families' CVRA rights—including the right to confer and the right to timely notification of DPA—were violated through the secret negotiations of a deferred prosecution agreement (DPA) for Boeing. *Id.*

The Court will also recall that the Department and Boeing successfully maneuvered to avoid Boeing's arraignment—forcing the victims' families to file a motion for an arraignment. *See* ECF No. 18. On January 19, 2023, this Court granted the families' arraignment motion, holding that "the Federal Rules of Criminal Procedure, in conjunction with the CVRA, require this Court to publicly arraign Boeing and permit the crime victims' representatives to be heard at or in advance of the proceeding." ECF No. 162 at 4 (citing Fed. R. Crim. P. 10; 18 U.S.C. § 3771(a)(3), (4), (d)(2)). The Court directed that Boeing appear for an arraignment and allowed victims' family members to be heard on the conditions of Boeing's release. ECF No. 162 at 4.

In advance of the arraignment, the victims' families filed a detailed statement regarding proposed court-imposed conditions of release. ECF No. 170. Among other conditions, the families specifically requested that the Court impose a condition of release subjecting Boeing's safety and ethics practices to an independent, judicially-appointed monitor. *Id.* at 22-30.

3

On January 26, 2023, the Court held a three-hour public arraignment at which Boeing appeared. The Court also permitted thirteen victim family members to appear and offer in-person testimony. Several dozen more filed written statements on the docket.

In their personal statements, as well as through arguments of their counsel, the families urged the Court to appoint a judicial monitor to review Boeing's safety and ethics practices. The families argued that "[o]nly an independent monitor—the proverbial second set of eyes—can begin to restore confidence in Boeing and ensure safety of the community." ECF No. 170 at 22.

The Justice Department responded at the hearing in opposition to a monitor. The Department argued that its system of supervising Boeing under the DPA was "working and that any further monitor or examiner, reporting, would be duplicative to DOJ oversight and counterproductive to the processes that are operative now." Hrng. Tr. (1/26/23) at 114.

Boeing also argued against a monitor. Boeing claimed that "there is no evidence of … a danger to the safety of the community as the Court finds the case today." *Id.* at 120.

On February 9, 2023, the Court entered its Third Memorandum Opinion and Order on the case, agreeing with the Department and Boeing. ECF No. 185. With respect to the issues surrounding conditions of release, the Court noted that it had previously required Boeing not to commit another Federal, State, or local crime for the term of its release. *Id.* at 8. But having reserved judgment on the families' other requests, the Court decided that, based on the record at that time, no further conditions of release were appropriate:

> Having considered the parties' briefing regarding additional conditions of release, the Court is of the view that *no factual record exists* to justify a finding that Boeing—while subject to the Government's continued supervision—currently presents an ongoing threat to public safety such that imposition of additional conditions of release pursuant to 18 U.S.C. § 3142 are necessary

ECF No. 185 at 8 (emphasis added).

4

More broadly, the Court also ruled that it was unable to award any remedy for the

proven violation of the families' Crime Victims' Rights Act (CVRA) rights:

> Court has immense sympathy for the victims and loved ones of those who died in
> the tragic plane crashes resulting from Boeing's criminal conspiracy. Had Congress
> vested this Court with sweeping authority to ensure that justice is done in a case
> like this one, it would not hesitate. But neither the Speedy Trial Act nor this Court's
> inherent supervisory powers provide a means to remedy the incalculable harm that
> the victims' representatives have suffered. And no measure of sympathy nor desire
> for justice to be done would legitimize this Court's exceeding the lawful scope of
> its judicial authority.

ECF No. 185 at 29.

Following the Court's ruling, the victims' families sought review in the Fifth Circuit. After

oral argument, the Fifth Circuit concluded that potential remedies were, in fact, available to the

families:

> We must still address the district court's additional conclusion that, despite its
> "immense sympathy" for the crime victims here, it lacks legitimate authority "to
> remedy the incalculable harm" those victims have suffered. To the extent that this
> conclusion determinatively denies application of the CVRA, that is inconsistent
> with the statute, the criminal rules, and court authority to resolve criminal
> proceedings commenced in court.

*In re Ryan*, 88 F.4th 614, 623 (2023). After examining the relevant landscape, the Fifth Circuit

concluded that "the district court has yet to resolve the criminal prosecution still pending before it

and … we clarify that if judicial approval is sought to resolve the instant case, the district court

has an ongoing obligation to uphold the public interest and apply the CVRA." *Id.* at 627. "That

authority continues," the Fifth Circuit held, "regardless of the resolution method ultimately

pursued to resolve the criminal proceedings, whether Rule 23 trial, Rule 11 guilty plea, or Rule 48

dismissal order." *Id.*

Since the Fifth Circuit ruling, only one substantive entry has been added to the Court's docket in this case—the Department's notification to the Court that Boeing has breached its DPA obligations. On May 14, 2024, the Department filed a letter stating:

> Today, pursuant to Paragraph 27 of the DPA, the Government notified Defendant The Boeing Company ("Boeing") that the Government has determined that Boeing breached its obligations under DPA Paragraphs 21, 22, and 26(d), and DPA Attachment C, including Paragraphs 1, 3, 4, and 5 of that Attachment, by failing to design, implement, and enforce a compliance and ethics program to prevent and detect violations of the U.S. fraud laws throughout its operations.1 For failing to fulfill completely the terms of and obligations under the DPA, Boeing is subject to prosecution by the United States for any federal criminal violation of which the United States has knowledge, including, but not limited to, the offense described in Paragraph 1 of the DPA and charged in the one-count Criminal Information that accompanied the DPA (ECF No. 1), or violations related to conduct described in the DPA's Statement of Facts. The Government is determining how it will proceed in this matter.

ECF No. 199 at 1. The Department also stated that it would inform the Court by no later than July 7, 2024, how it intended to proceed with regard to the pending conspiracy charge against Boeing. *Id.* at 2. Of course, the victims' families hope that the Department will aggressively pursue criminal prosecution of that pending charge. The families have a CVRA right to see that charge brought to a conclusion without "unreasonable delay." 18 U.S.C. § 3771(a)(7).

## II.     New Factual Developments Regarding Safety Concerns at Boeing

While this Court's docket has been relatively quiet since the Fifth Circuit ruling, issues concerning Boeing's compliance with its safety obligations have been very much in the news. The country—and the world—have been treated to an almost daily barrage of news reports about Boeing aircraft malfunctioning and internal whistleblowers disclosing Boeing's regulatory violations.

These safety concerns came to a head last Tuesday when the Senate Permanent Subcommittee on Investigations held a hearing on the subject of "Boeing's Broken Safety

Culture."[2] The Chair of the Committee described the hearing as a watershed moment—and described continuing and serious safety problems at Boeing:

> This hearing is a moment of reckoning. It is about a company, once an iconic company, known for engineering excellence and product prowess that somehow lost its way.
>
> Five years ago, 346 innocent people lost their lives in not one, but two preventable tragedies. We learned those tragedies were caused by intentional decisions to put production speed over safety and profits, stock price over people. In the wake of those tragedies, Boeing promised to turn itself around. Planes were grounded. Executives were dismissed. Promises were made. What we have seen since is that, in fact, the manufacturing issues, the retaliation against whistleblowers, nonconforming parts, quality inspections skipped, and issues concealed from the FAA, evidence hidden, all have continued. And there is mounting evidence that the deferred prosecution agreement concluded in 2021 with the United States Department of Justice has been violated. In fact, there is near overwhelming evidence, in my view as a former prosecutor, that prosecution should be pursued.

Opening Statement of Chair Senator Richard Blumenthal at 1 (June 18, 2024).[3]

Similarly, the ranking member described an avalanche of new reports being submitted to the Senate about Boeing's safety problems:

> In April, current and former Boeing employees testified before the Permanent Subcommittee on Investigations … raising concerns about Boeing's manufacturing processes and calling into question Boeing's commitment to airplane safety. At that hearing, Sam Salehpour, a current Boeing engineer, alleged that the 787 and 777 airplanes suffer from serious manufacturing flaws that could result in potentially catastrophic safety risks. Ed Pierson, a former Boeing engineer, described the safety concerns he raised about the 737 airplanes when he worked for the company. Both witnesses stated that Boeing officials ignored their concerns. Following the hearing, nine additional whistleblowers contacted the Subcommittee to share similar instances about Boeing's failure to address manufacturing deficiencies. Many of these whistleblowers also spoke about Boeing's culture of retaliation against employees who raise potential safety issues.

---

[2] While no transcript of the hearing is yet available, the video of the hearing is available on the Subcommittee's website at:
 https://www.hsgac.senate.gov/subcommittees/investigations/hearings/.
[3] Available at:
 https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/2024-06-18-blumenthal-opening-statement/

Opening Statement of Ranking Member Ron Johnson at 1 (June 18, 2024).[4]

Such statements are just a few examples of reports about Boeing's safety issues—even while it has been supervised by the Justice Department through DPA oversight. Other public reports of serious concerns about Boeing's safety for this past year include:

- **January 5:** Alaska Airlines Flight 1282, a Boeing 737 MAX 9, takes off from Portland, Oregon with 171 passengers and six crew members aboard. The plane climbs to 16,000 feet when its rear door plug is violently expelled from the plane without warning, causing a sudden decompression in the cabin and forcing pilots to immediately return to Portland for an emergency landing.[5]

- **January 6:** The FAA orders the immediate grounding and inspection of 171 Boeing 737 MAX 9 aircraft following the Alaska Airlines incident.[6]

- **January 8:** Alaska Airlines and United Airlines both find visibly loose hardware as they prepare for formal inspections of their 737 MAX 9 fleet.[7]

- **January 12:** The FAA announces that they will begin auditing production of Boeing's 737 MAX 9 planes following the Alaska Airlines incident.[8]

---

[4] Available at: https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/2024-06-18-johnson-opening-statement-2/

[5] Associated Press, *Alaska Airlines grounds 737 Max 9 fleet after window blows out on flight from Oregon*, Nat'l Pub. Radio, Jan. 6, 2024, https://www.npr.org/2024/01/06/1223280562/alaska-airlines-flight-emergency-landing-oregon;

[6] Juliana Kim, *FAA Orders Grounding of Certain Boeing 737 Max 9 Planes After Alaska Airlines Incident*, Nat'l Pub. Radio, Jan. 6, 2024, https://www.npr.org/2024/01/06/1223296736/boeing-737-max-9-planes-grounded; Emergency Airworthiness Directive, FAA AD 2024-02-51 (Jan. 6, 2024).

[7] Andrew Tangel, Alison Sider, Sharon Terlep & Nancy Keates, *United, Alaska Find Loose Parts on Some Boeing 737 Max 9 Jets*, Jan. 9, 2024, https://www.wsj.com/business/airlines/faa-approves-inspection-method-for-grounded-boeing-737-max-9-jets-c06c3234.

[8] Joel Rose, *The FAA is Tightening Oversight of Boeing and Will Audit Production of the 737 Max 9*, Nat'l Pub. Radio, Jan 12, 2024, https://www.npr.org/2024/01/12/1224444590/boeing-faa-737-max-9-alaska-airlines-door-plug; Andrew Tangel, *FAA Says It Will Ramp Up Inspections of Boeing Facilities*, WALL ST. J., Jan 12, 2024, https://www.wsj.com/business/airlines/faa-says-it-will-ramp-up-inspections-of-boeing-facilities-ec020af5.

- **January 16:** A Boeing whistleblower alleges that Boeing, not Spirit AeroSystems (the parts manufacturer), was the last to install the bolts on the panel that blew off the Alaska Airlines Flight.[9]

- **January 24**: The FAA halts Boeing MAX production expansion in an effort to improve quality control, and lays out an extensive inspection and maintenance process to allow Boeing 737-9 MAX aircraft to return to service[10]

- **February 6:** The NTSB preliminary report on the Alaska Airlines incident finds that the four critical bolts that should have secured the door plug in place were missing from the plane.[11]

- **February 27:** The FAA publishes a 50-page report from an expert review panel tasked by Congress to evaluate the effectiveness of Boeing's Safety Management System (SMS). After reviewing 4,000 pages of Boeing documents on safety management, conducting seven surveys, and interviewing over 250 employees at six Boeing locations, the panel found that Boeing's SMS was confusing to employees and that Boeing's safety management culture was insufficient to ensure the effectiveness of the SMS. In all, the panel reported 27 findings of concern in Boeing's safety management practices and made 53 recommendations.[12]

- **March 4:** The Federal Aviation Administration says it found "multiple instances" of Boeing and Spirit AeroSystems failing to "comply with manufacturing quality control requirements" after the conclusion of its six-week long audit, citing a "a disconnect between Boeing's senior management and other members of the organization on safety culture."[13]

---

[9] Dominic Gates, *Boeing, Not Spirit, Mis-Installed Piece That Blew Off Alaska Max 9 Jet, Industry Source Says*, SEATTLE TIMES, Jan 24, 2024, https://www.seattletimes.com/business/boeing-aerospace/boeing-not-spirit-mis-installed-piece-that-blew-off-alaska-max-9-jet/; throwawayboeingN704AL, Comment-509962, Leeham News and Analysis, Jan 16, 2024, https://leehamnews.com/2024/01/15/unplanned-removal-installation-inspection-procedure-at-boeing/#comment-509962.

[10] *FAA Halts Boeing MAX Production Expansion to Improve Quality Control, Also Lays Out Extensive Inspection and Maintenance Process to Allow Boeing 737-9 MAX Aircraft to Return to Service*, FAA, Jan 24, 2024, https://www.faa.gov/newsroom/faa-halts-boeing-max-production-expansion-improve-quality-control-also-lays-out-extensive.

[11] Accident Investigation Preliminary Report, Accident Number: DCA24MA063, NTSB, Feb. 6, 2024; Andrew Tangel & Alison Sider, *Boeing 737 Max Missing Critical Bolts in Alaska Airlines Blowout, NTSB Says*, Wall St. J., Feb 6, 2024, https://www.wsj.com/business/airlines/boeing-737-max-missing-critical-bolts-in-alaska-airlines-blowout-ntsb-says-de6af750.

[12] Marisa Garcia, FAA *Expert Panel Details Faults in Boeing's Safety Management System,* FORBES, Feb. 27, 2024, https://www.forbes.com/sites/marisagarcia/2024/02/27/boeing-made-safety-confusing-faa-expert-panel-finds/.

[13] *Section 103 Organization Designation Authorizations (ODA)  for Transport Airplanes Expert Panel Review Report*, FAA,

- **March 6:** NTSB Chair Jennifer Homendy testifies before the Senate Commerce Committee that Boeing has still not provided key information relating to the investigation of the Alaska Airlines incident.[14]

- **March 9:** In a letter to Senator Maria Cantwell, Chair of the Senate Commerce Committee, Ziad Ojakli, Executive Vice President of Government operations at Boeing, says Boeing employees looked "extensively" and failed to turn up any paperwork about the "opening and closing of the door plug," in reference to the NTSB investigation of the Alaska Airlines incident.[15]

- **March 9:** Boeing whistleblower John Barnett is found dead of an apparent suicide in his truck in his hotel parking lot while he in the middle of giving deposition testimony in his whistleblower retaliation case against Boeing. [16]

- **March 22:** The NLRB rules that Boeing violated federal law when it conducted discriminatory layoffs of unionized instructor pilots who train airline pilots to fly the company planes.[17]

- **April 10:** Sam Salehpour, a longtime Boeing employee, alleges that Boeing takes manufacturing shortcuts for its 787 Dreamliner aircraft that could result in significant fatigue in the composite material of the barrel sections and impair the structural

---

https://www.faa.gov/newsroom/Sec103_ExpertPanelReview_Report_Final.pdf at 4; *Updates on Boeing 737-9 Max Aircraft*, FAA, Mar 4, 2024, https://www.faa.gov/newsroom/updates-boeing-737-9-max-aircraft; Ben Glickman, *FAA Audit Finds Boeing Quality Control Failed in Alaska Air Incident*, WALL ST. J., Mar 4, 2024, https://www.wsj.com/business/airlines/faa-audit-finds-boeing-quality-control-failed-in-alaska-air-incident-e70df4f0

[14] *NTSB Investigations Reports: Hearing before S. Comm. On Com., Sci., and Transp.*, 118th Congress 2 (2024) (Statement of Sen. Maria Cantwell, chair, S. Comm. On Com., Sci., and Transp.) https://www.commerce.senate.gov/services/files/904783DE-294F-415B-ABB5-495DDD2AAA56.

[15] Juliana Kim, *Boeing Says It Can't Find Documents On The Door Plug That Blew Off Mid-Air*, Nat'l Pub. Radio, Mar. 9, 2024, https://www.npr.org/2024/03/09/1237204488/boeing-door-plug-alaska-airlines-investigation.

[16] Bill Chappell, *Boeing Whistleblower John Barnett, Who Raised Alarm Over Plane Quality, Is Found Dead*, Nat'l Pub. Radio, Mar. 12, 2024, https://www.npr.org/2024/03/12/1238033573/boeing-whistleblower-john-barnett-dead.

[17] The Boeing Company and Society of Professional Engineering Employees in Aerospace, 19-CA-272489, N.L.R.B. JD(SF)-10-24, (Mar. 22, 2024); Robert Iafolla, *Boeing Punished Unionized Pilots With Layoff, NLRB Judge Rules*, BLOOMBERG LAW NEWS, Mar 22, 2024, https://www.bloomberglaw.com/bloomberglawnews/daily-labor-report/X64UO510000000?bna_news_filter=daily-labor-report#jcite.

integrity of the jets because the company prioritizes production rates over safety and quality.[18]

- **April 17:** Salehpour testifies before the Senate Committee on Homeland Security and Governmental Affairs, tells Committee members that Boeing employees who raise concerns about safety issues at the company are "threatened."[19] Ed Pierson, a former Boeing employee and whistleblower, testifies alongside Salehpour and contradicts Boeing's statements about the existence of maintenance documents for the Alaska Airlines incident, telling lawmakers that documents detailing the work done on the door plug do exist, that Boeing's corporate leadership knows they exist, and that he personally gave them to the FBI.[20]

- **April 23:** The SPEEA union says that Boeing retaliated against employees when it gave "identical" negative evaluations to workers who had been designated as representatives of the Federal Aviation Administration after they asked Boeing to re-evaluate engineering work on its 777 and 787 widebody jets to account for a new FAA advisory.[21]

- **May 7:** Boeing reports that workers at its Boeing factory in North Charleston, South Carolina falsified records to cover up shortcuts when they did not perform required tests on the 787 Dreamliner but recorded the work as having been completed.[22] This sets in motion a new FAA investigation.

- **May 9:** The SEC begins investigating whether Boeing's statements on its safety practices following the Alaska Airlines door plug incident misled investors in violation of SEC rules.[23]

---

[18] Siddharth Philip, *Boeing Crisis of Confidence Deepens With 787 Now Under Scrutiny*, BLOOMBERG, Apr. 10, 2024, https://www.bloomberg.com/news/articles/2024-04-09/boeing-shares-fall-after-nyt-report-on-787-whistleblower-claims?embedded-checkout=true.

[19] Megan Cerullo, *Boeing Ignores Safety Concerns and Production Problems, Whistleblower Claims,* CBS News, Apr. 17, 2024, https://www.cbsnews.com/news/boeing-whistleblower-sam-salehpour-testimony/

[20] Julie Johnsson, *Boeing Critic Says He Shared Missing-Bolt Records with FBI*, BLOOMBERG, Apr. 17, 2024, https://www.bloomberg.com/news/articles/2024-04-17/boeing-critic-says-he-shared-missing-737-bolt-records-with-fbi?embedded-checkout=true.

[21] Siddharth Philip, *Boeing Retaliated Against Staff Raising Concerns, Union Says*, BLOOMBERG, Apr. 23, 2024, https://www.bloomberg.com/news/articles/2024-04-23/boeing-ba-retaliated-against-workers-for-raising-concerns-union-says?embedded-checkout=true.

[22] Julie Johnsson & Allyson Versprille, *Boeing's Latest Probe Deepens Manufacturing Crisis of Confidence*, Bloomberg, May 7, 2024, https://www.bloomberg.com/news/articles/2024-05-06/boeing-faces-faa-probe-of-787-dreamliner-inspections-records?embedded-checkout=true.

[23] Allyson Versprille & Austin Weinstein, *SEC Probing Boeing's Safety Claims After Panel Blew Off Plane*, BNN Bloomberg, May 9, 2024, https://www.bnnbloomberg.ca/boeing-s-safety-claims-probed-by-sec-after-panel-blew-off-plane-1.2071150.

- **May 25:** A Southwest Airlines 737 MAX 8 experiences a "Dutch roll," which involves the airplane's tail "wagging" and the body rocking from side to side, before pilots regain control. An inspection after the flight reveals damage to a standby power unit and to structural components. The FAA initiates an investigation.[24]

- **June 11:** Boeing quality inspector Sam Mohawk submits a complaint to the Occupational Safety and Health Administration alleging that Boeing mishandled and lost track of hundreds of faulty parts, some of which he said may have been installed on new 737 MAX planes.[25]

- **June 13:** FAA Administrator Michael Whitaker testifies before the Senate Commerce Committee on FAA Oversight of Aviation Manufacturing. Whitaker reveals that the FAA has "multiple active investigations" into Boeing underway following a rise in reports from whistleblowers and through the FAA safety hotline. Whitaker notes that the FAA received more than 11 times the number of Boeing whistleblower complaints in the first five months of 2024 than it did in all of 2023.[26]

- **June 14:** The New York Times reports that the FAA is investigating potentially fake titanium purchased by Boeing from a little-known Chinese company and used in the manufacturing process of the 737 and 787 jets.[27]

- **June 14:** Reuters reports that Boeing is investigating a quality problem with its 787 Dreamliner after discovering that hundreds of fasteners were incorrectly installed on the fuselages of some undelivered jets.[28]

---

[24] Mary Schlangenstein, *Southwest Air Flight 'Dutch Roll' Probed by US Regulators,* BLOOMBERG, June 14, 2024, https://www.bloomberg.com/news/articles/2024-06-14/southwest-airlines-flight-dutch-roll-probed-by-us-regulators?embedded-checkout=true

[25] Allyson Versprille & Julie Johnson, *Boeing Lost Hundreds of Bad 737 Parts, Whistleblower Says*, BLOOMBERG, June 18, 2024, https://www.bloomberg.com/news/articles/2024-06-18/boeing-may-have-installed-bad-737-parts-whistleblower-alleges?embedded-checkout=true.

[26] Julie Johnsson & Allyson Versprille, *Boeing Discloses 787 Fastener Issue as FAA Steps Up Scrutiny*, BLOOMBERG, Jun 13, 2024, https://www.bloomberg.com/news/articles/2024-06-13/boeing-says-it-s-inspecting-undelivered-787s-for-fastener-issue?embedded-checkout=true.

[27] Allyson Versprille, *Boeing Whistleblower Tips To FAA Soar Since Door Panel Blowout*, BLOOMBERG, Jun 14, 2024, https://www.bloomberg.com/news/articles/2024-06-15/boeing-whistleblower-tips-to-faa-soar-since-door-panel-blowout; Siddharth Philip & Allyson Versprille, *FAA Probes Suspect Titanium Used in Airbus, Boeing Jets*, Bloomberg, Jun 13, 2024, https://www.bloomberg.com/news/articles/2024-06-14/faa-probes-titanium-with-fake-documents-used-by-airbus-boeing?embedded-checkout=true.

[28] Tim Hepher, David Shepardson, Allison Lampert, *Exclusive: Boeing Investigates Quality Problem on Undelivered 787s*, REUTERS, June14, 2024, https://tinyurl.com/4fet9ttx.

In spite of all of these facts, Boeing's Chief Executive Officer, David Calhoun, testified last week (June 18), "I'm proud of our safety record .... I am proud of every action we've taken."[29]

## DISCUSSION

In light of the changed circumstances described above, this Court's earlier decision that no "factual record" supports imposing additional conditions of release on Boeing is outdated. Given the changed circumstances, the Court should rapidly install a judicial monitor of Boeing to ensure public safety.

### I.     The Court Should Broadly Consider Boeing's Dangerousness in Setting Conditions of Release.

A person charged with an offense may be released pending trial subject to, the "least restrictive … combination of conditions" that a judicial officer determines "will reasonably assure ... the safety of any other person and the community." 18 U.S.C § 3142(c)(1)(B). The same rules apply to corporate defendants. ECF No. 170 at 3. Accordingly, this Court must make an assessment of what conditions imposed on Boeing will reasonably assure community safety.

Although § 3142 requires an initial decision on conditions of release, the section also allows "a court '*at any time*' to 'impose additional or different conditions of release.' § 3142(c)(3) (emphasis added)." *United States v. Emakoji*, 990 F.3d 885, 892 (5th Cir. 2021) (affirming order of this Court). In making a release determination, this Court is not constrained by the rules of evidence. *See* Fed. R. Evid. 1101(d)(3) (rules of evidence do not apply when court is "considering whether to release on bail or otherwise"); *United States v. Montemayor*, 666 F.2d 235, 2367 (5th Cir. 1982) (rules of evidence do not apply to detention hearings before the district

---

[29] Available at,
https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/.

court); *United States v. Walker*, No. 2:18-CR-37-FL-1, 2019 WL 4412909, at *5 (E.D.N.C. 2019) ("because the evidentiary hearing on defendant's motions is analogous to a detention hearing, it is a "miscellaneous proceeding" to which the Rules of Evidence do not apply."). District courts often receive information concerning release by way of proffer. *See, e.g., United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996) (per curiam) (holding defendant's Confrontation Clause rights were not violated at a pretrial detention hearing when government proceeded by proffer). In setting conditions of release, the standard of proof is "the simple preponderance standard." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

When considering the conditions of release, the Court is not limited to dangerous conduct described in a pending charge. As a matter of general practice, prosecutors customarily "supply such facts as defendant's prior bad record in order to show that the defendant's … conditions of his release more strict than would typically be true for a person so charged…." 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 12.1(d) (Nov. 2022 update).

In filing this motion, the victims' families are providing new and important information bearing on whether the Court's initial determination not to impose additional release conditions remains a sound conclusion. As a leading criminal procedure treatise explains, the victim's right to be heard at a bail hearing can "contribute information that has a direct bearing upon the questions before the judge on that occasion, which involve the terms and conditions of release …." 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 12.1(f) (Nov. 2022 update) (citing Paul G. Cassell, *Balancing the Scales of Justice: The Case for and the Effects of Utah's Victims' Rights Amendment*, 1994 UTAH L. REV. 1373, 1394)). The CVRA requires "the victim to be given an opportunity actually to be 'heard' rather than afforded some alternate means of communicating her views. 'Indeed, the very purpose of this section is to allow the victim to appear personally and directly

address the court. This section would fail in its intent if courts determined that written, rather than oral communication, could generally satisfy this right.'" *United States v. Turner*, 367 F. Supp. 2d 319, 333 (E.D.N.Y. 2005) (quoting CVRA Senate Debate at S4268 (statement of Sen. Kyl)).

## II.   A Factual Record Now Exist to Support the Appointment of a Judicial Monitor over Boeing's Safety Practices.

The absence of a judicially-appointed monitor in the Boeing DPA was puzzling from the outset of this case. Columbia law professor John Coffee, one of the nation's leading experts on DPAs, described the omission of a monitor from the Boeing DPA as a "glaring failure" because "[r]arely did a clearer case exist for such a monitor." John C. Coffee, *Nosedive: Boeing and the Corruption of the Deferred Prosecution Agreement* at 24 (June 7, 2022).[30] Sadly, recent media reports indicate that more than three years ago, career Justice Department attorneys recommended that the Boeing DPA include a corporate monitoring provision—only to be overruled by "senior officials." Andrew Tangel & Dave Michaels, *Inside DOJ's Wrenching Decision on Whether to Prosecute Boeing*, WALL ST. J. (June 17, 2024).

The victims' families previously proffered significant facts about Boeing's dangerousness that would support a finding that a judicial monitor is needed to review Boeing's safety and ethics compliance. *See* ECF No. 170 at 5-30. The families reassert that proffer here.

But in addition to that earlier proffer, substantial new information has developed supporting the conclusion that Boeing requires additional safety monitoring. The facts recounted above show a dramatic difference in the available facts about Boeing's lack of compliance with safety obligations today than existed when the Court declined to impose a monitor in February 2023.

---

[30] Available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4105514.

On April 17, 2024, the Senate Permanent Subcommittee on Investigation held a hearing on "Examining Boeing's Broken Safety Culture: Firsthand Accounts."[31] As Senator Blumenthal described the hearing, it developed "fact-based, science-based testimony" documenting safety concerns at Boeing:

> This story is serious, even shocking. The kinds of evidence that we will hear today [are] fact-based, science-based testimony that the public deserves to hear, and it is part of a continuing series of hearings that we will have based on what these whistleblowers will tell us and evidence that we obtain from documents from a variety of sources. There are mounting serious allegations that Boeing has a broken safety culture and a set of practices that are unacceptable. These whistleblowers have come forward at great personal risk. In fact, a number of them and others have suffered harassment, isolation, transfers, and even threats of physical violence.[32]

Then, just last week, the Subcommittee held a follow-on hearing about "Boeing's Broken Safety Culture."[33] During that hearing (June 18), Boeing's CEO Dave Calhoun testified. It is hard to put things better about the existing "record" than Senator Hawley did when he recounted his assessment:

> I think the truth is, Mr. Calhoun, you're not focused safety, you're not focused on quality, you're not focused on transparency—all of this is in the record—but I think actually you're focused on exactly what you were hired to do, which is, that you are cutting corners, you are eliminating safety procedures, you are sticking it to your employees, you are cutting back jobs, because you are trying to squeeze every piece of profit you can out of this company. You're strip-mining it, you're strip-mining Boeing. It was one of the greatest American companies ever. It has employed thousands of people in my state. And you are strip-mining it.… For the

---

[31] Available at
https://www.hsgac.senate.gov/subcommittees/investigations/hearings/examining-boeings-broken-safety-culture-firsthand-accounts/
[32] Available at
 https://www.hsgac.senate.gov/subcommittees/investigations/hearings/examining-boeings-broken-safety-culture-firsthand-accounts/2024-04-17-blumenthal-opening-statement/.
[33] Available at
https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/,

American people, they're in danger. For your workers, they're in peril. For your whistleblowers, they literally fear for their lives. …[34]

The families proffer both of these hearings by the Senate Permanent Subcommittee on Investigation—entitled "Boeing's Broken Safety Culture"—as part of the now-existing factual record on safety concerns at Boeing. The families also proffer all of the news and other reports recounted above, which also evidence serious safety concerns.

This new, reliable, and ever-expanding body of deeply troubling information should change the Court's earlier conclusion that "no factual record exists" that would justify a finding that "Boeing—while subject to the Government's continued supervision—currently presents an ongoing threat to public safety …." This new information provides ample basis to make such a finding today.

The Court's earlier finding relied on the fact that Boeing was "subject to the Government's continued supervision." ECF No. 185 at 8. This suggests that the Court was, understandably, thinking that the Justice Department's continuing monitoring of Boeing would take care of the safety issues. Along the same lines, in the earlier arraignment hearing, the Department opposed a monitor, claiming that it was best positioned to evaluate Boeing's compliance with the DPA obligations. *See, e.g.*, Hrng. Tr. (1/26/23) at 96 ("The Fraud Section has compliance experts who routinely evaluate compliance programs and oversee corporate monitorships and self-reporting."). But now, Boeing has breached its obligations. A new and different effort is needed.

### III.    The Justice Department Possesses Significant Information Regarding the Dangers Posed by Boeing, Which It Should Provide to the Court.

---

[34] The above passage appears in the Committee's video recording of the hearing at approximately 1:00:17. Following this passage, Senator Hawley also recounts earlier testimony from whistleblowers who testified before the Committee about reports of safety dangers that were ignored by Boeing.

For all the reasons just outlined, the families have proffered sufficient information on their own to justify the imposition of a judicial monitor reviewing Boeing's safety and corporate compliance efforts. But should the Court require additional information, that information is readily available—from the Justice Department.

The Department has already filed a letter with this Court, reporting that "Boeing breached its obligations under DPA Paragraphs 21, 22, and 26(d), and DPA Attachment C, including Paragraphs 1, 3, 4, and 5 of that Attachment, by failing to design, implement, and enforce a compliance and ethics program to prevent and detect violations of the U.S. fraud laws throughout its operations." ECF No. 199 at 1. As far as the families can tell from the docket sheet, the Department has not provided the Court with the specific basis for that conclusion. Obviously, that specific information would tend to support the families' argument.

It also seems likely that the Department possesses additional information about the safety risks that Boeing poses to the public. As recounted above, the Department has opened multiple investigations into Boeing's safety failures. Here again, this information would likely support the families' position.

Finally, since the adoption of the DPA, the Department's leadership has provided new guidance on the use of monitors. The so-called "Monaco Memorandum" explains that "[i]n general, the Department should favor the imposition of a monitor where there is a demonstrated need for, and clear benefit to be derived from, a monitorship. Where a corporation's compliance program and controls are untested, ineffective, inadequately resourced, or not fully implemented at the time of a resolution, Department attorneys should consider imposing a monitorship." Deputy Atty. Gen., Corporate Crime Advisory Group and Initial Revisions to Corporate Criminal Enforcement Policies (Oct. 28, 2021). This case is one that has a "demonstrated need for, and clear

18

benefit to be derived from, a monitorship." We hope that the Department will support these conclusions in its response to the families' motion—and provide to the Court all relevant information regarding Boeing's broken safety culture and potential threats to the public.

### IV.    Appointing a Judicial Monitor Would Be Straightforward.

For the reasons explained above, the Court should exercise its discretion under 18 U.S.C. § 3142(c)(3) to now appoint a judicial monitor. Appointing a monitor would be a straightforward forward process. The families have attached to this motion a proposed order that the Court could sign to accomplish the appointment. The proposed order draws heavily (but not exclusively) on language from judicial orders in other cases, where the Department has proposed—and district courts have approved—a corporate monitor.

One important point about the monitor is that, to restore public confidence in Boeing's safety, the monitor must be independent—and, even more important, must be perceived to be independent. In some cases, the Department has entered into agreements with defendants allowing the defendant to propose a slate of monitors, from which a final selection is made. While that approach may have worked elsewhere, that approach would be problematic here. As explained in the background section above, widespread suspicion exists about Boeing's safety programs now. Against that backdrop, the Court should avoid any public skepticism that the monitor is somehow beholden to Boeing by independently appointing a truly independent person.

One possible independent monitor is Javier de Luis, whose CV is attached to this filing. He is a Lecturer of Aeronautics and Astronautics at the Department of Aeronautics and Astronautics at MIT. In Jan 2023, he was appointed to the FAA Expert Panel charged with reviewing Boeing's safety culture. He has been closely following the safety issues surrounding the

737 MAX crashes, since he lost his sister in the ET 302 crash. Mr. de Luis is the kind of person who could review Boeing's safety issues with credible independence from Boeing.

Of course, other experts exist who could also do an outstanding job—and would be perceived as outside of Boeing's powerful orbit. If the Court would find it useful, the families could, on very short notice, provide additional names for possible monitors. Selecting a capable monitor recommended by the families would allay any suspicion about whether the monitor was truly independent.

### V. The Court Should Order Expedited Briefing on these Issues Relating to Public Safety.

The Court should direct expedited briefing on the issues raised by this motion, which go directly to public safety and the risk of a potentially catastrophic third crash. The families have been contemplating a motion asking the Court to revisit the monitor issue for some time. But last week was a turning point.

During the Senate hearing on Boeing's safety record, CEO Calhoun testified that he was "proud of every action we have taken."[35] The passage in the hearing is chilling—and at odds with any suggestion that Boeing is accepting responsibility for criminally causing the deaths of 346 people. Here is what CEO Calhoun said under questioning from Senator Hawley:

> Calhoun: Senator, I'm sticking this through. I'm proud of having taken the job. I'm proud of our, this safety record. I am proud …
> Senator Hawley: You're proud of this safety record?!
> Calhoun: I'm very proud of our Boeing people.
> Senator Hawley: You're proud of this safety record?
> Calhoun: *I am proud of every action we have taken.*
> Senator Hawley: Every action you've taken?!
> Calhoun: Yes, sir.

---

[35] The above passage appears in the Subcommittee's video recording of the hearing at approximately 1:03:13. https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/

Senator Hawley: Wow. Wow. There's some news for you. Well, behind you, you can't see it, but behind you the folks are showing pictures of the people who are the victims of your safety record. I think we can all see them. And I think the American public, when they fear to get on your airplanes, they understand your safety record.[36]



Since Boeing is saying it is "proud of every action it has taken," then the families can wait no longer. They recognize, of course, that the Justice Department will presumably be advising this Court in the next week or so of its intentions regarding moving forward on the pending conspiracy charge. The Court should also consider this motion (and any responses and replies thereto) as it makes its decision about how to proceed in light of the Department's recommendations.

Both the Department and Boeing are represented by some of the most well-regarded (and well-funded) legal teams in America. Reportedly the parties have also been discussing the monitor

---

[36] The above passage appears in the Subcommittee video recording of the hearing at approximately 1:03:02 and following (emphasis added).

issue for some time.[37] And, potentially, lives are at stake here. As the Chair of the Senate Permanent Subcommittee on Investigation stated last week in introducing a hearing on Boeing safety issues: "… the issues before us have real human consequences. Life and death results. Not just abstract numbers and hypotheticals. They are a matter of life and death for people who travel by air or work for Boeing." Opening Statement of Chair Senator Richard Blumenthal at 1 (June 18, 2024).[38] Against that backdrop, the parties should be able to brief these issues rapidly—and should be ordered to do so rapidly. The families' pro bono legal team also stands ready to reply quickly. Expedited briefing should be ordered.

The families and the parties plan to meet on Wednesday to discuss the briefing schedule further. But if no agreement is reached or no Court order is entered, then the standard fourteen-day briefing schedule will apply. *See* LCrR 47.1(e). To ensure that all the issues are briefed and before the Court in a timely fashion (i.e., by July 8), the families are filing this motion now. While some may view the motion as "premature," the families know all too well the deadly consequences that can follow from delaying consideration of safety issues. They respectfully request that the Court take up the issues they raise in this motion as quickly as possible.

---

[37] *Compare, e.g.,* Mark Walker & Glenn Thrush, *Boeing May Evade Criminal Charges for Violating Settlement*, N.Y. TIMES (June 21, 2024) (reporting discussions between the parties over a monitor), https://www.nytimes.com/2024/06/21/us/politics/boeing-doj-deferred-prosecution-agreement.html?searchResultPosition=1) *with* Chris Prentice et al., *U.S. Prosecutors Recommend Justice Department Criminally Charge Boeing*, REUTERS (June 23, 2024) (reporting discussions between the parties over a monitor), https://www.reuters.com/legal/us-prosecutors-recommend-doj-criminally-charge-boeing-deadline-looms-2024-06-23/. The Department has not conferred with the families about the specifics of any proposed resolution of the case that it is offering to Boeing.

[38] Available at:
https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/2024-06-18-blumenthal-opening-statement/

## **CONCLUSION**

The Court should order expedited briefing on the victims' families' motion for the appointment of a judicial monitor. After reviewing the briefing, the Court should appoint a judicial monitor to review Boeing's safety and corporate compliance issues. A proposed order to that effect is attached.

Dated: June 24, 2024                                 Respectfully submitted,

| */s/ Darren P. Nicholson* | */s/ Paul G. Cassell* |
|---|---|
| Warren T. Burns | Paul G. Cassell (Utah Bar No. 06078) |
| Texas Bar No. 24053119 | (Counsel of Record) |
| Darren P. Nicholson | Utah Appellate Project |
| Texas Bar No. 24032789 | S.J. QUINNEY COLLEGE OF LAW |
| Kyle K. Oxford | University of Utah |
| Texas Bar No. 24095806 | cassellp@law.utah.edu |
| BURNS CHAREST LLP | (no institutional endorsement implied) |
| 900 Jackson Street, Suite 500 | |
| Dallas, Texas 75202 | Tracy A. Brammeier |
| Telephone: (469) 904-4550 | CLIFFORD LAW OFFICES PC |
| wburns@burnscharest.com | tab@cliffordlaw.com |
| dnicholson@burnscharest.com | |
| koxford@burnscharest.com | Erin R. Applebaum |
| | KREINDLER & KREINDLER LLP |
| | eapplebaum@kreindler.com |
| | |
| | Pablo Rojas |
| | PODHURST ORSECK PA |
| | projas@podhurst.com |

*Attorneys for Victims' Representatives*

23

## <u>CERTIFICATE OF CONFERENCE UNDER LOCAL RULE 47.1(B)</u>

Via emails exchanged with counsel for the Government and Boeing on June 23 and 24, 2024, the victims' families conferred about this motion. The Government opposes the filing of the motion at this time because the Government believes it is premature for the following reasons:

- By July 7, 2024—13 days from today—the Department will inform the Court regarding how it plans to proceed after determining that Boeing has breached its Deferred Prosecution Agreement (DPA). Specifically, the Department will soon tell the Court whether it intends to proceed to trial in this matter or whether the Department intends to enter into a negotiated resolution with Boeing.

- Under either scenario, the families will have an opportunity pursuant to the CVRA to be heard by the court regarding the issues of a monitorship – whether as a condition of pretrial release or a condition of a negotiated resolution.

- Since this issue will therefore be before this court as early as next week, the Department believes the expedited request on an "accelerated briefing schedule" is premature and inefficient use of the Court's and parties' time and resources.

Boeing opposes the motion. The parties intend to meet on Wednesday to discuss the possibility of an expedited briefing schedule.

Dated: June 24, 2024

*/s/ Paul G. Cassell*
Paul G. Cassell

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 24, 2024, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system pursuant to the Federal Rules of Civil Procedure.

*/s/ Darren P. Nicholson*
Darren P. Nicholson

24