UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
Fort Worth Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) 4:21-cr-00005-O |
| THE BOEING COMPANY, | ) |
| Defendant. | ) |

**GOVERNMENT STATUS REPORT AND AGREED MOTION TO
<u>POSTPONE A TRIAL SCHEDULING ORDER</u>**

The United States of America (the "Government") respectfully submits this status report to inform the Court that the Government and The Boeing Company ("Boeing") have reached an agreement in principle on the terms of a proposed plea agreement. The Government and Boeing are proceeding expeditiously to document and memorialize the terms and understandings into a written plea agreement and expect to file the agreement with the Court by no later than July 19, 2024. As discussed more below, the families of the victims of the Lion Air Flight 610 and Ethiopian Airlines Flight 302 airplane crashes ("families") have expressed their intention to oppose this (or any) plea agreement and have requested an opportunity to brief their opposition. The Government intends to meet and confer with all stakeholders on a briefing schedule, and therefore respectfully moves the Court to postpone entering a trial scheduling order until at least July 12, 2024, by which date the Government will submit a status report and proposed scheduling order. Boeing agrees to the requested relief.

1. The parties have agreed that Boeing will plead guilty to the most serious readily provable offense, specifically, the offense described in Paragraph 1 of the Deferred Prosecution

Agreement ("DPA") (ECF No. 4) and charged in the pending one-count Criminal Information that accompanied the DPA (ECF No. 1).

2. The parties have agreed in principle to the material terms of a plea agreement that would, among other things, hold Boeing accountable for its material misstatements to the Federal Aviation Administration, require Boeing to pay the statutory maximum fine, require Boeing to invest at least $455 million in its compliance and safety programs, impose an independent compliance monitor, and allow the Court to determine the restitution amount for the families in its discretion, consistent with applicable law.

3. Consistent with the Government's standard practice in corporate cases, the parties will be respectfully asking the Court to accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). *See, e.g.*, *United States v. Trafigura Beheer B.V.*, No: 1:23-cr-20476 (S.D. Fla. Mar. 28, 2024); *United States v. Gunvor S.A.*, No: 1:24-cr-00085 (E.D.N.Y. Mar. 1, 2024); *United States v. SAP* SE, No: 1:23-cr-202 (E.D. Va. Jan. 10, 2024); *United States v. UOP, LLC, d/b/a Honeywell UOP*, No: 4:22-cr-624 (S.D. Tex. Dec. 19, 2022).

4. Before this plea agreement was reached, the Government afforded the families numerous opportunities to communicate and express their views, personally and through counsel, and the families meaningfully and substantially participated in conferral meetings. Indeed, the Government formulated the plea offer based in part on the feedback that it received during conferral sessions and communications with the families and Boeing's airline customers that purchased the 737 MAX ("airline customers") during the past few months. Specifically, on April 24th, the Government held a hybrid in-person and virtual conferral session with the families for approximately 5.5 hours to discuss whether the Government should find Boeing in breach of the DPA. And on May 31st, the Government met with the families for approximately 4.5 hours to

2

discuss how the Government should proceed in the wake of the Government determining that Boeing breached the DPA, including hearing the families' views on whether the Government should prosecute Boeing and what terms the Government should seek as part of sentencing, whether after a guilty plea or trial. Both meetings involved senior management from the Fraud Section and U.S. Attorney's Office for the Northern District of Texas. Also participating for approximately 1.5 hours of the first meeting were Leigha Simonton, the U.S. Attorney for the Northern District of Texas, and Nicole M. Argentieri, the Principal Deputy Assistant Attorney General who heads the Criminal Division. In addition to these meetings, the Government has had several calls with counsel for the families; requested, received, reviewed, and considered multiple letters/written submissions regarding their views; and engaged in numerous email exchanges with them. The Government has also requested, received, and reviewed written submissions from the airline customers (but note that until the most recent conferral session, discussed below, no airline customer asked to confer with the Government). The information and feedback received from these communications informed the Government's plea offer.

5. On June 30, 2024, prior to extending its plea offer to Boeing, the Government again conferred with the families, airline customers, and their representatives. The purpose of the conferral—which was virtual and lasted approximately two hours—was to tell the families and airline customers, before telling Boeing, that the Government had decided to prosecute the Company and to offer a plea agreement, and further to explain and seek feedback on the terms of the plea offer. All or almost all the participants in the June 30th conferral were families and their counsel (two airline customers asked to join, but if they did, they did not speak). Participants from the Government included senior leaders from the Office of the Deputy Attorney General, the Criminal Division, and the U.S. Attorney's Office for the Northern District of Texas. As described

3

in more detail below, some participants expressed their opposition to any plea agreement and to particular terms of the proposed plea offer. Also as set forth in more detail below, the Government modified some of the terms of the proposed plea offer it extended to Boeing based on feedback received during this conferral session.

6. Below is an overview of material terms of the agreement in principle, which are not final until memorialized in a written plea agreement approved by the Government and Boeing's Board of Directors and submitted to the Court for acceptance. The parties are working expeditiously to finalize the written plea agreement and expect to be able to file it with the Court by no later than July 19, 2024. Prior to filing this status report, the Government also provided written notification to the families and airline customers and their counsel of these terms.

    a. <u>Charge</u>: Boeing will plead guilty to the offense charged in the pending one-count Criminal Information, conspiracy to defraud the United States, specifically, the lawful function of the Federal Aviation Administration Aircraft Evaluation Group, in violation of 18 U.S.C. § 371 (ECF No. 1).

    b. <u>Scope of criminal release</u>: Boeing will not be charged with any other criminal offense related to the conduct described in the DPA Statement of Facts (ECF No. 4). The plea agreement will not provide Boeing with immunity for any other conduct, including any conduct that may be the subject of any ongoing or future Government investigation of the Company.

    c. <u>Criminal fine</u>: The Government will allege and Boeing will agree on the amount the Company derived in pecuniary gain from the offense of conviction ($243.6 million), thereby increasing the statutory maximum fine to twice that amount, pursuant to the Alternative Fine Act, 18 U.S.C. § 3571(d), and consistent with the Government's burden to allege and prove

beyond a reasonable doubt such pecuniary gain (or loss caused), as provided by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Southern Union Co. v. United States*, 567 U.S. 343 (2012). Thus, Boeing will be subject to the maximum criminal fine for the charged offense, which is twice the Company's proven pecuniary gain from the offense, that is, $487.2 million. Pursuant to Paragraph 11 of the DPA, the new plea agreement will recommend that when imposing the sentence, the Court credit the $243.6 million criminal monetary penalty Boeing previously paid pursuant to the DPA, with the net result being that Boeing will have to pay another $243.6 million fine.

        d.      <u>Restitution</u>: The plea agreement will stipulate that for the offense of conviction, restitution is discretionary under 18 U.S.C. § 3663. The plea agreement will allow the Court to determine the restitution amount for the families in its discretion, consistent with applicable legal principles. The plea agreement will further provide that no restitution should be ordered paid to Boeing's airline customers, who the Court has not ruled were directly and proximately harmed by the charged offense.[1] Boeing will retain the right to appeal any restitution order it believes was not legally imposed.

        e.      <u>Forfeiture</u>: Forfeiture is not applicable to the offense of conviction.

        f.      <u>Probation</u>: Boeing will serve a term of probation, during which it will be subject to standard probation terms, *e.g.*, not committing any violations of federal, state, or local criminal law, as well as three special conditions of probation described below. One of those conditions will be supervision by an independent compliance monitor. Probation will run through

---

[1] This provision would not impact any rights the airline customers may have to assert civil claims against Boeing, or Boeing's ability to defend against such claims, or impact the terms of the underlying DPA that provided for an Airline Compensation Amount of $1.7 billion, which was satisfied years ago.

the conclusion of the monitor's term, which will be three years. Because it will take time to select the monitor, probation will run longer than three years.

        i.    <u>First Special Condition of Probation</u>: As requested by the families, Boeing's Board of Directors will meet with the families of the crash victims;

        ii.    <u>Second Special Condition of Probation</u>: Consistent with the request by the families that Boeing improve its compliance and safety programs, Boeing will make a sustained monetary investment in its compliance and safety programs, specifically at least approximately $455 million over the term of probation, which, on an annualized basis, is an amount equal to at least approximately 75% more than the Company's expenditure on compliance in fiscal year 2024; and

        iii.    <u>Third Special Condition of Probation</u>: Boeing will be subject to an independent compliance monitor for three years. The Government will select and oversee the independent compliance monitor. With respect to selection, the Government will post on its public website a request for proposals from potential monitor candidates, and, with feedback from Boeing, select a monitor that meets the specific qualifications articulated in the public posting and the general qualifications articulated in the Criminal Division's Revised Memorandum on Selection of Monitors in Criminal Division Matters. The Government will notify the Court under seal of its intent to select a certain candidate; and if, after 10 days, the Court does not raise concerns, the Government will finalize the selection and appoint the monitor. The monitor will prepare a confidential annual report for the Government, and file on the public court docket an executive summary of that annual report.

7.    As set out above, before extending the initial plea offer to Boeing on the evening of June 30, 2024, the Government held a two-hour conferral session earlier that day to which it

invited the families and airline customers. The consensus position of the families and their counsel who shared their views during the June 30th conferral was opposition to the Government entering into a plea agreement with Boeing on any terms. Some also shared their views in opposition to particular terms of the initial plea offer. For example, the Government explained that the independent compliance monitor would report to the Government and be selected pursuant to the Government's standard process, which, in short, involves the Government choosing a monitor from a pool of qualified candidates proposed by the company. Paul Cassell, on behalf of several families, objected because, in his view and as reflected in his pending motion to reconsider Boeing's conditions of pretrial release (ECF No. 202), the independent compliance monitor should be someone the families propose and who is appointed by and reports to the Court. The Government modified its plea offer to Boeing based on that conferral feedback—as discussed above, the Government would select the pool of qualified candidates based on a public solicitation, to which anyone can apply, including candidates supported by the families.

8. During and after the conferral, several families and their counsel expressed their intent to appear at a plea hearing to ask the Court not to accept a plea agreement, and to submit briefing in advance of the hearing. Mr. Cassell has since asked to confer on a briefing schedule, and for the parties to request that the Court schedule a plea hearing no sooner than late July to allow adequate time for the families to make travel arrangements to attend in person.

9. Accordingly, the Government will confer with Boeing and counsel for the families and airline customers on a briefing schedule and will file with the Court on or before July 12, 2024, a status report and a proposed scheduling order. The Government respectfully moves the Court to postpone entering a trial scheduling order at least until July 12, 2024, in order to consider the status

7

report and the proposed scheduling order. Boeing agrees to the requested relief. A proposed Order accompanies this filing.

10. Finally, as discussed above, Mr. Cassell, on behalf of several families, has a pending motion to reconsider Boeing's pretrial conditions of release, specifically requesting that the Court appoint an independent compliance monitor (ECF No. 202). The proposed plea agreement will include the appointment of an independent compliance monitor as a special condition of probation, though on terms different than what Mr. Cassell is proposing. The Government therefore plans to request in a separate filing that the motion be denied as moot, or, in the alternative, be held in abeyance to allow the parties and the families to address the monitorship in their respective briefs on the proposed plea agreement.

Respectfully submitted,

| | |
|---|---|
| GLENN S. LEON | LEIGHA SIMONTON |
| Chief, Fraud Section, Criminal Division | United States Attorney |
| United States Department of Justice | Northern District of Texas |
| | |
| By: *s/ Lorinda I. Laryea* | By: *s/ Chad E. Meacham* |
| Lorinda I. Laryea, | Chad E. Meacham |
| Principal Deputy Chief | Assistant United States Attorney |
| D.C. Bar No. 997696 | Texas Bar No. 00784584 |
| lorinda.laryea@usdoj.gov | chad.meacham@usdoj.gov |
| | |
| United States Department of Justice | United States Attorney's Office |
| Criminal Division, Fraud Section | Northern District of Texas |
| 1400 New York Avenue, N.W. | 801 Cherry Street, 17th Floor |
| Washington, D.C. 20005 | Fort Worth, TX 76102 |
| 202-514-2000 | 817-252-5200 |

cc: Counsel of Record (via ECF)