# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF TEXAS
Fort Worth Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:21-cr-00005-O |
| ) | |
| THE BOEING COMPANY, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION BY NAOISE CONNOLLY RYAN, ET AL. FOR RECONSIDERATION OF COURT-IMPOSED CONDITIONS OF RELEASE

The United States of America ("Government") respectfully opposes the motion of certain of the victims' families for the Court to reconsider their request to impose an independent corporate monitor ("monitor") on Defendant The Boeing Company ("Boeing" or the "Company") as a condition of pretrial release, pursuant to 18 U.S.C. § 3142 (the "Bail Reform Act") (ECF No. 202). For the reasons that follow, the Government requests that the Court deny the motion as moot or hold it in abeyance pending further briefing on the parties' proposed plea agreement, which will include a monitorship as a special condition of probation.

The Government acknowledges the change in circumstances between when the families first made their request in January 2023 and their filing of the instant motion to reconsider—the Deferred Prosecution Agreement ("DPA") expired, the Government determined Boeing breached the DPA, and there were safety and quality related incidents and allegations concerning Boeing's aircraft and manufacturing processes. However, Boeing has not been charged with or convicted of committing a new crime during the DPA term or since its expiration, and the Federal Aviation

Administration ("FAA") has undertaken increased oversight of Defendant in the wake of the January 5, 2024 door-plug blowout on Alaska Airlines Flight 1282.[1]

Since the families filed their instant motion, the Government has decided to prosecute Boeing and the parties have reached an agreement in principle on a plea agreement. (ECF No. 206). A term of that plea agreement will be that the Company be under the supervision of a monitor for three years as a special condition of probation. The families have expressed their intent to oppose the plea agreement, including the framework for the monitor, which differs in important respects from what they propose in their motion. *See* ECF No. 204 at 6 (describing that under the proposed plea agreement, for example, the selection process would involve the Government posting on its public website a request for proposals from potential monitor candidates, and, with feedback from Boeing, selecting a monitor that meets the specific qualifications articulated in the public posting and the general qualifications articulated in the Criminal Division's Revised Memorandum on Selection of Monitors in Criminal Division Matters).

Because the proposed plea agreement will soon be before the Court and the families, the Government respectfully submits that it would not be an efficient use of the Court's or the parties' time to consider the imposition of a monitor in the meantime. The Government expects to submit soon a proposed briefing schedule on the plea agreement, after conferring with Boeing and counsel

---

[1] Press Release, Federal Aviation Administration, FAA Continues to Hold Boeing Accountable for Implementing Safety and Production Quality Fixes (May 30, 2024), *available at* https://www.faa.gov/newsroom/faa-continues-hold-boeing-accountable-implementing-safety-and-production-quality-fixes ("'In the immediate aftermath of January 5, the FAA took unprecedented steps to increase oversight on Boeing. Over the last 90 days, that has meant everything from more safety inspectors in the facilities to halting production expansion. Today, we reviewed Boeing's roadmap to set a new standard of safety and underscored that they must follow through on corrective actions and effectively transform their safety culture,' Administrator Whitaker said. 'On the FAA's part, we will make sure they do and that their fixes are effective. This does not mark the end of our increased oversight of Boeing and its suppliers, but it sets a new standard of how Boeing does business.'").

for the families and Boeing's airline customers that purchased the 737 MAX. The Court should therefore deny the pending motion as moot or hold it in abeyance so that it can be briefed within the full context of the entire agreement and its specific terms.

The following three additional reasons counsel in favor of the Court taking up the monitorship issue only if and when Defendant is convicted, whether by guilty plea or after trial.

*First*, the families do not cite any case, and the Government is aware of none, in which a district court imposed a monitor under the Bail Reform Act or even suggested in dicta that the statute vests district courts with such authority. The Government has serious doubts that it does.[2] In contrast, there is ample precedent—as the families acknowledged in their original motion—of monitors being imposed as part of a negotiated resolution or after conviction as a remedial condition of probation. *See e.g.*, Families Statement Regarding Conditions of Release ("Fam. Stmt."), at 24-26 (ECF No. 170); *United States v. Glencore Ltd.*, No. 22-cr-71-SVN, ECF 18 ¶¶ 6(i), 25-28, Plea Agreement (D. Conn. May 24, 2022); *United States v. Balfour Beatty Communities, LLC*, No. 21-cr-742-EGS, ECF 5 ¶¶ 8(h), 23-26, Plea Agreement (D.D.C. Dec. 22, 2021); *United States v. Natwest Markets PLC*, No. 21-cr-187-OAW, ECF 9 ¶¶ 7(h), 23-27 Plea Agreement (D. Conn. Dec. 21, 2021).

---

[2] Release conditions under the Bail Reform Act are intended to serve two purposes: securing a defendant's appearance and public safety. *See United States v. McConnell*, 842 F.2d 105, 109 (5th Cir. 1988). The Fifth Circuit has placed particular emphasis on use of detention to secure a defendant's appearance at trial. *See, e.g.*, *U.S. v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) (holding that the threat to safety of other persons or to community, standing alone, will not justify pretrial detention under the Bail Reform Act; government must establish that defendant's conduct involves one of six circumstances listed in the statute). With respect to conditions of release, if release on personal recognizance or an unsecured appearance bond is insufficient to guarantee a defendant's presence and public safety, the statute directs the judicial officer to impose the "*least restrictive* further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (emphasis added).

Consistent with this well-established legal framework, the Government submits that the appropriate phase of the case for the Court to consider imposing a monitor is after Boeing is convicted. Independent corporate monitors can be a helpful resource and beneficial means of assessing a business organization's compliance with the terms of a corporate criminal resolution; they can also be an effective means of limiting the risk of recurrence of certain misconduct and compliance lapses. *See* U.S. Department of Justice Revised Memorandum on Selection of Monitors in Criminal Division Matters at 2 (Mar. 1, 2023), *available at* [Microsoft Word - 2023.03.01 - Polite Monitor Memo (rev) (justice.gov)](#) (last visited July 6, 2024). Traditionally, the Department of Justice has not sought imposition of corporate compliance monitors for punitive purposes, though monitors have been imposed as part of non-prosecution agreements, deferred prosecution agreements, pleas, and conditions of court-ordered probation. *See* U.S. Department of Justice Manual 9-28.1700, *available at* https://www.justice.gov/jm/jm-9-28000-principles-federal-prosecution-business-organizations#9-28.1700 (last visited July 7, 2024) ("Monitorships should not be imposed for punitive purposes."); U.S. Department of Justice Memorandum of Acting Deputy Attorney General Craig S. Morford re: Selection and Use of Monitors (Mar. 7, 2008), *available at* [Memorandum to Heads of Department Components and United States Attorneys from Craig S. Morford, Acting Deputy Attorney General, March 7, 2008 (justice.gov)](#) (last visited July 6, 2024) ("A monitor's primary responsibility is to assess and monitor a corporation's compliance with the terms of the agreement specifically designed to address and reduce the risk of recurrence of the corporation's misconduct, and not to further punitive goals.").

*Second*, the substantial time and resources needed to identify and select an independent, impartial, and qualified monitor counsel in favor of waiting until conviction. The Government has years of experience with monitorships across a variety of companies and industries. It is the

Government's experience that it takes a number of months to identify a qualified slate of candidates, vet them, and make a considered choice. To undertake this effort in the few weeks before the Court considers the proposed plea agreement would be a significant distraction to the Court and the parties as they address the merits of that agreement. And there would be still further delay because once selected, the monitor would have to secure his or her team and negotiate the retainer and confidentiality agreements with Defendant that generally govern monitorships. The monitor would then need to gather relevant information to understand what and how to test Boeing's compliance program and prepare a workplan. The bottom line is that a monitor, suitably selected, could not be expected to begin work immediately.

The shortcut proposed by the families—to sidestep a formal process and quickly appoint someone they recommend—would not ensure an independent, impartial, and qualified monitor. This is evident in their first recommendation. Though the Government respects Dr. de Luis's professional background and expertise, he is not independent and impartial. His status as a movant in this matter[3], and previously as a plaintiff in his civil litigation against Boeing[4], is a conflict of interest. The families point to no precedent that would support such an appointment, or any appointment made in the abbreviated way they propose. Which is to say nothing of the five-year monitorship term the proposed order would have the Court impose, a length of time far outside the traditional bounds of pretrial conditions. Five years, of course, is the statutory maximum probation term that could be imposed in the event of a *conviction*, underscoring that their request is more

---

[3] *See* Entry of Appearance of Warren T. Burns (ECF No. 14) (entering appearance on behalf of movant Javier de Luis, among others).

[4] *See* Order, *Javier de Luis v. The Boeing Company, et al.*, ECF No. 17, 1:19-cv-2170 (N.D. Ill.) (May 31, 2024) (approving settlement between Javier de Luis, individually and as a personal representative of the Estate of Graziella de Luis, and The Boeing Company and co-defendants, and dismissing case).

properly considered at sentencing. 18 U.S.C. § 3561(c)(1) (defining the authorized probation term for a felony offense as "not less than one nor more than five years").

*Third*, and finally, the risks of the truncated selection process are amplified by the breadth of authority the families seek to vest in the monitor. In their original motion, the families narrowly tailored their request to "a limited purpose: To evaluate Boeing's compliance with its DPA obligations," and disclaimed seeking to have the monitor "take over Boeing's safety processes." Fam. Stmt. at 29-30. The families acknowledged the "criticisms that are sometimes made that monitors are discharging functions beyond competence . . . ." *Id*. at 30. Now, the families are proposing the monitor have "a broad mandate" over not just the Company's compliance and ethics programs, but also "related quality assurance and safety measures." Proposed Order at 2, ¶ 1(g) (ECF No. 202-2). The proposed order has no guardrails around the monitor's authority over these measures, and expressly envisions the monitor directing design changes to Boeing's aircraft. *Id*. at 4, ¶ 1(g)(14) (including in mandate the authority to "[e]valuate and implement a retrofit to the MAX with the Engine-indicating and crew-alerting system (EICAS) flight crew alert system for all new aircraft and retrofit in-service aircraft with an EICAS-light system"). Yet the proposed order does not even mention the authority of the FAA to regulate the safety and quality of Boeing's aircraft, nor attempt to square the monitor's proposed mandate with the FAA's authority. Putting aside the prudence and lawful basis of the "broad mandate," there would need to be exacting scrutiny of any candidates considered for the role the families propose, which again points up why it is impractical to proceed with a monitorship in this phase of the case.

\* \* \*

In sum, the Court soon will be considering a monitorship as a term of probation under the proposed plea agreement the parties will be presenting for approval under Federal Rule of Criminal

Procedure 11(c)(1)(C). The families will have an opportunity to be heard on that proposal, and the overall agreement, and the Court would benefit from briefing focused on the specific terms proposed by the parties. Further, there is no precedent to impose a monitorship under the Bail Reform Act, and the families' proposed appointment process and mandate for the monitor are not well considered. The Government therefore respectfully opposes the motion.

**WHEREFORE**, the Government requests that the Court deny the motion as moot or hold it in abeyance pending further briefing on the parties' proposed plea agreement, which will include a monitorship as a special condition of probation.

Respectfully submitted,

| | |
|---|---|
| GLENN S. LEON<br>Chief, Fraud Section, Criminal Division<br>United States Department of Justice | LEIGHA SIMONTON<br>United States Attorney<br>District of Texas |
| By: *s/ Lorinda I. Laryea*<br>Lorinda I. Laryea,<br>Principal Deputy Chief<br>D.C. Bar No. 997696<br>lorinda.laryea@usdoj.gov | By: *s/ Chad E. Meacham*<br>Chad E. Meacham<br>Assistant United States Attorney<br>Texas Bar No. 00784584<br>chad.meacham@usdoj.gov |
| United States Department of Justice<br>Criminal Division, Fraud Section<br>1400 New York Avenue, N.W.<br>Washington, D.C. 20005<br>202-514-2000 | United States Attorney's Office<br>Northern District of Texas<br>801 Cherry Street, 17th Floor<br>Fort Worth, TX 76102<br>817-252-5200 |

cc: Counsel of Record (via ECF)