IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) No. 4:21-CR-5-O |
| THE BOEING COMPANY, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

### THE BOEING COMPANY'S RESPONSE TO MOTION BY NAOISE CONNOLLY RYAN, ET AL. REQUESTING RECONSIDERATION OF COURT-IMPOSED CONDITIONS OF RELEASE ON BOEING UNDER 18 U.S.C. § 3142(C)(3)

The Boeing Company ("Boeing"), by counsel, submits this response to the motion by the Crime Victims' Representatives[1] ("Representatives") asking the Court to reconsider its February 9, 2023 Opinion and Order[2] regarding Boeing's conditions of release under 18 U.S.C. § 3142.[3] As provided in the Department of Justice's (the "Department's" or "Government's") Amended Status Report, the Government and Boeing have reached an agreement in principle on the terms of a proposed plea agreement.  Consistent with the Government's position, Boeing respectfully requests that the Court hold Representatives' Motion for Reconsideration in abeyance pending the

---

[1]  As in prior briefing, Boeing adopts the terminology the Court has employed to refer to the Representatives in the wake of the Court's October 21, 2022 Memorandum Opinion and Order, while expressly reserving all rights and objections Boeing has made in the course of these proceedings.

[2]  Third Mem. Op. & Order, No. 4:21-CR-0005-O (Feb. 9, 2023), ECF 185 ("February 9 Order").

[3]  Mot. by Naoise Connolly Ryan, Et Al. Requesting Recons. of Court-Imposed Conditions of Release on Boeing Under 18 U.S.C. § 3142(C)(3), No. 4:21-CR-0005-O (Jun. 24, 2024), ECF 202 ("Motion for Reconsideration").

Court's consideration of that agreement.[4]  Among other conditions, the proposed plea agreement will include the appointment of an independent compliance monitor for three years as a special condition of probation.  ECF 206 at 6.  Thus, given that the crux of Representatives' Motion for Reconsideration is the appointment of an independent monitor, and the Government's and Boeing's proposed plea agreement will address this very issue, Boeing respectfully submits that the Court should hold the Representatives' Motion in abeyance pending the Court's evaluation of the agreement, including its provisions related to the appointment of an independent monitor.

Ultimately—whether the Court reaches the merits now or later—for multiple, independent reasons, the Representatives have no authority or legal basis to seek or secure their requested relief.  And even if the Representatives' Motion could overcome these fundamental flaws, the request to impose a monitor on the terms proposed by the Representatives fails on the merits:  it is not supported by the facts regarding Boeing's safety and compliance—including the FAA's robust oversight of the Company as its congressionally approved regulator—and, in fact, regardless of how well-intentioned, would risk degrading safety at Boeing and, by extension, for the flying public.  On each of these grounds, the Court should ultimately deny the Representatives' Motion for Reconsideration.

## BACKGROUND

The extensive procedural history and briefing associated with the Court's February 9 Order are well-documented in both that February 9 Order and Boeing's own February 6, 2023

---

[4]  *See* Government's Resp. in Opp'n to Mot. by Naoise Connolly Ryan, Et Al. for Recons. of Court-Imposed Conditions of Release, No. 4:21-CR-0005-0 (July 8, 2024), ECF 207 ("Government's Response to Motion for Reconsideration"); *see also* Government Status Report and Agreed Mot. to Postpone a Trial Scheduling Order, No. 4:21-CR-0005-O (July 7, 2024), ECF 204 and Am. Government Status Report and Agreed Mot. to Postpone a Trial Scheduling Order, No. 4:21-CR-0005-O (July 8, 2024), ECF 206 ("Amended Government Status Report").

submission.[5]  In summary, following numerous submissions from various parties including Boeing, the Department, and the Representatives, and after a three-hour public arraignment hearing, the Court determined that it would be inappropriate to impose additional conditions of release on Boeing.[6]  This ruling was consistent with the Bail Reform Act's § 3142(b), which by default instructs courts to "order the pretrial release . . . on personal recognizance, or upon execution of an unsecured appearance bond . . . subject to the condition that the person not commit [any crime] during the period of release . . . , unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b) (2008).  In its February 9 Order, the Court explicitly found no factual support for the proposition "that Boeing—while subject to the Government's continued supervision—currently presents an ongoing threat to public safety such that imposition of additional conditions of release pursuant to 18 U.S.C. § 3142 are necessary." February 9 Order at 8.  As discussed below, the Court's finding then is equally valid now, particularly given Boeing's ongoing safety and quality efforts under the strict oversight of the FAA in the wake of the Alaska Flight 1282 accident.  Given the procedural and substantive impediments to their requested relief—and the imposition of an independent monitor in the forthcoming plea agreement—Representatives' motion should be denied or held in abeyance.

---

[5]   The Boeing Company's Resp. to Statement by Naoise Connolly Ryan, Et Al. Regarding Proposed Court-Imposed Conditions of Release on Boeing Under 18 U.S.C. § 3142, No. 4:21-CR-0005-O (Feb. 6, 2023), ECF 181.

[6]   Other than the standard condition that "Boeing not commit another Federal, State, or local crime for the term of its release . . . ."  February 9 Order at 8.

**I.     THE PROPOSED PLEA AGREEMENT INCLUDES AN INDEPENDENT MONITOR PROVISION.**

As outlined in the Amended Government Status Report, Boeing expects to "be subject to an independent compliance monitor for three years" and will also "make a sustained monetary investment in its compliance and safety programs" over the term of probation.  *See* ECF 206 at 6.

Importantly, any monitor imposed as a condition of the proposed plea will be appropriately coordinated as to not interfere with the FAA's oversight of Boeing.  Absent such careful coordination, a third-party "safety monitor" or "independent examiner" has the very likely potential to increase, not decrease, safety risk.  Any divergence between the direction of the FAA and the court-imposed monitor as to a safety issue, for example, would leave Boeing in the untenable position of deciding between compliance with the congressionally mandated safety experts (the FAA), and compliance with its bond conditions.  The Representatives' proposal does not address that potential conflict and the risks it could create.  *See* Government Response to Motion for Reconsideration at 6 (noting that the Representatives' "proposed order has no guardrails around the monitor's authority over [quality assurance and safety] measures, and expressly envisions the monitor directing design changes to Boeing's aircraft" and that the "proposed order does not even mention the authority of the FAA to regulate the safety and quality of Boeing's aircraft, nor attempt to square the monitor's proposed mandate with the FAA's authority[]").

The proposed plea agreement's independent monitor requirement—and the contemplation of issues surrounding that requirement that may arise in upcoming briefing—will necessarily require consideration of the very issues underlying Representatives' Motion for Reconsideration. For that reason, Boeing respectfully requests that the Court hold the pending motion in abeyance to the extent it does not deny the motion outright now for other reasons stated herein.

4

## II. THE REPRESENTATIVES ARE NOT ENTITLED TO THE RELIEF REQUESTED.

### A. The Representatives' Motion Is Procedurally Improper.

The Representatives request that the Court modify its original determination of Boeing's conditions of release, citing § 3142(c)(3) for the proposition that "[t]he judicial officer may at any time amend the order . . . ." Motion for Reconsideration at 1. But the Bail Reform Act limits both who may request such relief and when that relief may apply.

First and foremost, the Act provides no avenue for a third-party—including a crime victim or their representative—to request a detention / bond hearing to set special conditions of release under subsection (c). *See* 18 U.S.C. § 3142. Specifically, subsection (f)(1) enumerates five types of cases under which the government may ask for a detention / release hearing, and § 3142(f)(2) lists the two instances where the government—or the Court "on its own motion"—can trigger one,[7] but nowhere does the Act suggest that an outside party can make such a request.[8] *See id.*

---

[7] Section 3142(f)(1) requires a "motion of the attorney for the Government"; § 3142(f)(2) requires a "motion of the attorney for the Government or upon the judicial officer's own motion . . . ." 18 U.S.C. § 3142(f)(1), (2). As detailed, neither provision allows for non-parties to initiate a hearing. *See id.*

[8] It is a separate, independent impediment for the Representatives' Motion that it seems clear that the Bail Reform Act was not designed to apply to a corporate defendant like Boeing. Section 3142 by its terms governs whether a defendant should be "detained" or "released" pending trial, *id.* §3142(a), and focuses throughout on appropriate terms of detention or release for individual defendants, not corporate entities. *See, e.g.*, 18 U.S.C. § 3142(b) (providing for "collection of a DNA sample"); *id.* § 3142(c) (conditions of release may include "maintain[ing] employment," "specified restrictions on personal associations, place of abode, or travel," "comply[ing] with a specified curfew," "refrain[ing] from excessive use of alcohol," "medical, psychological, or psychiatric treatment," etc.); *id.* § 3142(g) (factors to be considered include the defendant's "physical and mental condition," "family ties," "employment," "length of residence in the community," "history relating to drug or alcohol abuse," etc.).

The congressional intent behind the Bail Reform Act of 1984 was "to 'give the courts adequate authority to make release decisions that give appropriate recognition to the danger a *person* may pose to others if released.'" *United States v. Salerno*, 481 U.S. 739, 742 (1987) (quoting S. Rep. No. 98-225, at 3 (1983)) (emphasis added); *see United States v. Valera-Elizondo*, 761

5

This is all the more true when the purported basis of the request is a generalized concern for public safety in connection with a defendant's business operations. The Representatives do not represent all of the crash victims, let alone the public in general. The just-discussed structure of § 3142 makes it clear that the consideration of public safety is reserved to the government or the Court and is not vested in a non-party representing particular individuals or classes of individuals.

B.  **The Crime Victims' Rights Act Does Not Provide the Representatives with Any Basis for the Relief Requested.**

The Representatives have also claimed that the Crime Victims' Rights Act, 18 U.S.C. § 3771 *et seq.* (2015) ("CVRA") provides an alternative ground for their Motion. But the CVRA does not provide any basis for the relief requested. As the Court has recognized, the CVRA "guarantees crime victims certain rights in criminal proceedings[,]" including the right to notice of and to not be excluded from proceedings "involving the release, plea, sentencing, or parole of the defendant[.]" February 9 Order at 9. In their Motion for Reconsideration, the Representatives specifically reference the right under the CVRA to be heard regarding the "release" of a criminal defendant.[9] Motion for Reconsideration at 1.

---

F.2d 1020 (5th Cir. 1985). The Act was not, in other words, contemplated as a means for assessing corporations' operations in regulated industries.

It is hard to even understand how the statute could extend to defendants who by their nature cannot be physically detained or released, c*f. Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 274 (1959) (recognizing that corporate defendants cannot be physically detained). To conclude otherwise would arguably provide courts with the unilateral ability to "detain" a corporate entity—to restrict it from performing operations or doing any business at all—before any trial in which guilt must be proven beyond a reasonable doubt. Such a consequence was certainly not considered, and would not be appropriate, under the Bail Reform Act, which plainly was designed to address—and encourage, in appropriate circumstances—the release of individual criminal defendants pending their trials.

9   The Representatives in their motion also reference § 3771(a)'s right for crime victims "to be reasonably protected from the accused." Motion for Reconsideration at 1. This provision has

But at present, there is no active proceeding concerning Boeing's pre-trial release from custody, and neither the Government nor the Court has raised an issue regarding any such conditions of release. Thus, the present procedural posture of the matter does not give rise to one of the enumerated opportunities in the CVRA for victims to be reasonably heard, let alone involve one of the enumerated instances for a detention hearing under the Bail Reform Act.[10]

### C. The Requirements for a Hearing and Relief Under 18 U.S.C. § 3142 Are Not Met.

Even if the Representatives were an appropriate party to seek relief under the Bail Reform Act, the nature of the underlying charge precludes the requested relief of imposing a monitorship as a special condition of release, or even a hearing on the issue.

Section 3142(f) instructs courts that they must "hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c)" can be applied to achieve the goals of ensuring a defendant's appearance in court as required or to ensure the safety of persons or the community while the defendant's case is pending. Representatives here allege that special conditions must be imposed on Boeing—in particular, a court-appointed monitor—to address the

---

no application in these circumstances. It has been invoked, appropriately, in cases of individual criminal defendants accused of violent crimes where there is genuine risk to the victim(s). *See, e.g., United States v. Shannon*, No. 3:22-CR-10, 2023 WL 4046264, at *4 (N.D. Miss. Jun. 16, 2023).

[10] Boeing recognizes that the Representatives' Response to the Government Status Report states that the Representatives "intend to exercise their Crime Victims' Rights Act (CVRA) right to be heard in opposition to the proposed plea[]. . . ." Not. by Naoise Connolly Ryan, Et Al. of Intent to Exercise CVRA Right to Be Heard in Opp. to Proposed Plea and Requesting Time to Confer on a Briefing Schedule at 1, No. 4:21-CR-0005-O (Jul. 7, 2024), ECF 205. The present Response does not address Representatives' new request to be heard in connection with the proposed plea agreement, which will be briefed separately. Boeing notes, however, that resolution of the monitorship issues related to the plea agreement may effectively resolve Representative's request for an independent monitor set forth in the present Motion for Reconsideration, which is another reason to hold the present Motion in abeyance. *Cf.* Government's Response to Motion for Reconsideration.

threat it poses to the safety of the community. Motion for Reconsideration at 1. But the Representatives cannot establish that any of the conditions within § 3142(f) exist, as would be required for a hearing on any special conditions of release, much less to justify the imposition of any such conditions. *See United States v. Byrd*, 969 F.2d 106, 108–09 (5th Cir. 1992) (a § 3142 hearing "can be held only if one of the six circumstances listed in (f)(1) and (2) is present" and "detention can be ordered only after a hearing is held pursuant to § 3142(f)"); *see also United States v. Okhumale*, 813 F. App'x 936 (5th Cir. 2020) (reversing district court's detention order where not based on one of the circumstances enumerated in § 3142(f)).

In particular, the present conspiracy to defraud the FAA charge fails to satisfy any of the specific circumstances set out in § 3142(f) needed to trigger the risk to safety provisions in the Act.[11] *See Byrd*, 969 F.2d at 109. Because detention—or even a detention hearing—is not available here, any "special conditions"—or hearing on those conditions—to address the alleged generalized risk of safety to the community are not countenanced by the statute.

In *Okhumale*, for example, the Fifth Circuit held that a defendant charged with money laundering was not subject to a hearing to consider detention or release and therefore could not be detained based on an assertion that he posed a risk to his safety or the safety of others given his drinking problem and history involving DWIs. 813 F. App'x at 838-39; *see id.* at 839 ("[A] person's threat to the safety of any other person or the community, in the absence of one of the six

---

[11] The circumstances set forth in § 3142(f) involve: (1)(A) a crime of violence; (1)(B) an offense for which the maximum sentence is life imprisonment or death; (1)(C) certain drug offenses with a maximum term of imprisonment of ten years or more; (1)(D) a felony offense if the defendant has two or more previous state or local convictions that would qualify under the preceding subsections; (1)(E) a felony offense that is not a crime of violence but otherwise involves a minor victim or the possession or use of a firearm, destructive device, or other dangerous weapon; (2)(A) a serious risk that the person will flee; or (2)(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. § 3142(f).

8

specified circumstances, could not justify detention under the act.") (quoting *Byrd*, 969 F.2d at 109). The Fifth Circuit's rationale in *Okhumale* (including its interpretation of its earlier precedent in *Byrd*) is applicable here. Given that the Act limits the instances in which the government and the Court can trigger consideration of a generalized allegation of safety risk to the community under the Act, a non-party surely cannot be afforded greater rights and access to do so.

### III. THE COURT APPOINTMENT OF THE MONITOR REQUESTED BY REPRESENTATIVES IS NOT JUSTIFIED.

As detailed above, the Representatives' Motion for Reconsideration should be denied or held in abeyance on multiple procedural grounds. But even if the Court were to consider the Representatives' Motion for Reconsideration on its substance, its argument also fails on the merits. As elaborated below, Boeing is actively working with its primary, congressionally authorized regulator, the FAA, to enhance safety and manufacturing quality. And Boeing will be subject to additional oversight in the form of an independent compliance monitor that the Government and Boeing have agreed to include in the plea agreement they expect to enter in this matter. Amended Government Status Report at 1, 6-8, 10.

#### A. The FAA Is Presently Exercising Robust Oversight Over Boeing.

Boeing's significant, independent response to the Alaska 1282 accident[12] has been complemented by rigorous oversight by the FAA, including a significant increase in the FAA's in-person supervision of Boeing.[13] The combination of these two factors—Boeing's internal safety

---

[12] *See generally Updates on the 737-9 and Safety & Quality Action*, BOEING, https://www.boeing.com/737-9-updates (last updated June 18, 2024).

[13] *See generally FAA Continues to Hold Boeing Accountable for Implementing Safety and Production Quality Fixes*, FED. AVIATION ADMIN. (May 30, 2024), https://www.faa.gov/newsroom/faa-continues-hold-boeing-accountable-implementing-safety-and-production-quality-fixes.

9

and quality enhancements in the aftermath of Alaska 1282 and the elevated attention of its primary regulator—has resulted in extraordinary levels of attention to safety and manufacturing quality at the Company.

In the first quarter of this year, in response to the Alaska 1282 accident, the FAA, Boeing's primary regulator, completed a detailed audit of Boeing's production and manufacturing quality systems.[14] Upon completion of its audit, the FAA gave Boeing ninety days to develop a comprehensive safety enhancement proposal, which Boeing has developed ("Product Safety and Quality Plan"). Boeing anticipates that it will continue refining certain details of the proposal under the FAA's supervision, but its main components have been established and Boeing has begun and will continue to implement them. Importantly, these efforts will be "thoroughly review[ed]" by the FAA.[15] Taken together, the efforts organized under the plan represent significant safety enhancements.[16]

Importantly, this comprehensive plan of safety improvements (and tracking mechanisms to gauge real-world progress along key performance indicators) will not take place in a vacuum: the FAA will be holding Boeing accountable to ensure that the plan is carried out and that it is

---

[14] *See generally Updates on Boeing 737-9 MAX Aircraft*, FED. AVIATION ADMIN. (Mar. 4, 2024), https://www.faa.gov/newsroom/updates-boeing-737-9-max-aircraft.

[15] *Id.*; *see also FAA Continues to Hold Boeing Accountable for Implementing Safety and Production Quality Fixes*, FED. AVIATION ADMIN. (May 30, 2024), https://www.faa.gov/newsroom/faa-continues-hold-boeing-accountable-implementing-safety-and-production-quality-fixes.

[16] The plan also responds to findings of the comprehensive panel report regarding Boeing's safety culture, ODA, and safety management systems, *see* Section 103 Organization Designation Authorizations (ODA) for Transport Airplanes Expert Panel Review Report, FED. AVIATION ADMIN. (2024), https://www.faa.gov/newsroom/Sec103_ExpertPanelReview_Report_Final.pdf; *Updates on Boeing 737-9 MAX Aircraft*, FED. AVIATION ADMIN. (Mar. 4, 2024), https://www.faa.gov/newsroom/updates-boeing-737-9-max-aircraft.

directly responsive to the issues raised in the FAA's audit of Boeing.  As stated by FAA Administrator Whitaker in May, "[o]n the FAA's part, we will make sure they [follow through on corrective actions and effectively transform their safety culture] and that their fixes are effective. [Boeing's completion of a plan responding to the FAA's audit findings] does not mark the end of our increased oversight of Boeing and its suppliers[]. . . ."[17]

Even apart from this enhanced oversight, the Representatives' claim that Boeing poses an ongoing threat to public safety cannot be reconciled with the actual record of aviation safety.  Both globally and in the United States, commercial air travel is in the safest period in its history.  As described in one recent article, "[t]he reality, statistics show, remains that getting on a Boeing or Airbus SE jetliner is still exponentially safer than the drive to the airport."[18]  Nor does this fact change when specifically assessing Boeing.[19]  Boeing fully appreciates and has acknowledged publicly that the Alaska 1282 accident was unacceptable, and the Company is taking comprehensive actions in response to it.  But that accident, and the litany of news articles cited by the Representatives in their Motion for Reconsideration, must be considered in the context of the

---

[17] *FAA Continues to Hold Boeing Accountable for Implementing Safety and Production Quality Fixes*, FED. AVIATION ADMIN. (May 30, 2024), https://www.faa.gov/newsroom/faa-continues-hold-boeing-accountable-implementing-safety-and-production-quality-fixes.

[18] Jinshan Hong et al., *Fliers Are More Worried About Plane Safety Even as Air Travel Remains as Safe as Ever*, TIME (May 23, 2024), https://time.com/6981932/airplane-flying-safety-boeing-accidents-fears-reality/.

[19] An analysis of airline safety data conducted after Alaska 1282 demonstrated that the rate of incidents on equivalent Boeing versus Airbus aircraft was comparable and proportional to the number of flights being taken.  *Id.*; *see also* Douglas S. Harned et al., Commercial Aircraft: How Safe Is Air Travel?  737MAX, GTF – How Meaningful Are the Headlines, BERNSTEIN (Mar. 25, 2024); *see generally* Andy Pasztor, *The Airline Safety Revolution*, WALL ST. J. (Apr. 16, 2021, 12:08 PM), https://www.wsj.com/articles/the-airline-safety-revolution-11618585543.

remarkable and improving level of safety that has been achieved by the commercial aviation industry, with Boeing being a critical contributor to that shared record of safety.

In short, Boeing is already subject to enhanced oversight as a result of Alaska 1282 and the attendant scrutiny which has followed, including by its primary regulator. Boeing has developed, is executing, and will be assessed by the FAA against a sweeping plan of safety enhancement. And this work will take place in the context of Boeing's ongoing commitment to safety, which is reflected in the record of aviation safety described above.

## IV.    THE COURT APPOINTMENT OF THE MONITOR REQUESTED BY REPRESENTATIVES IS NOT MERELY UNJUSTIFIED, BUT COULD DEGRADE SAFETY.

A decision by the Court to appoint a monitor over Boeing as requested by the Representatives is not merely unjustified but runs the risk of affirmatively harming aviation safety. This concern, which Boeing briefed in its 2023 response to the Representatives' original request for a monitor,[20] remains relevant now given the FAA's focus on enhanced oversight of the Company; the specific, detailed remediation plan developed after the FAA audit that Boeing continues to execute under FAA supervision; and the additional independent compliance monitor that is expected to be imposed as a condition of Boeing's probation.

Injecting a third-party "safety monitor" or "independent examiner" has the potential to increase, not decrease, safety risk. As stated above, any divergence between the direction of the FAA and a putative monitor of the sort requested by the Representatives as to a safety issue, for example, would leave Boeing in the untenable position of deciding between compliance with the congressionally mandated safety experts (the FAA), and compliance with its bond conditions. The

---

[20]   The Boeing Company's Resp. to Statement by Naoise Connolly Ryan, Et Al. Regarding Proposed Court-Imposed Conditions of Release on Boeing Under 18 U.S.C. § 3142 at 14-15, No. 4:21-CR-0005-O (Feb. 6, 2023), ECF 181.

FAA is responsible for such safety issues, and it would be counterproductive to appoint another third party to direct putative safety measures different from those mandated by the FAA.

Again, the significance and complexity of Boeing's Product Safety and Quality Plan, generated in response to the FAA's recent audit and which Boeing is presently refining in coordination with the FAA and implementing under the FAA's oversight, renders this a particularly inopportune moment in which to insert a third-party monitor with a "broad mandate" along the lines requested by Representatives in their Motion for Reconsideration.

## CONCLUSION

Wherefore, for these reasons, Boeing respectfully requests that the Court hold the Representatives' Motion for Reconsideration in abeyance and, either now or ultimately, dismiss the Motion for Reconsideration.

Dated: July 8, 2024

Respectfully submitted,

*s/ Benjamin L. Hatch*

*s/ Mark Filip*
Mark Filip
John Lausch (*pro hac vice* forthcoming)
Ralph Dado (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654

Ian Brinton Hatch
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205

Benjamin L. Hatch
Brandon M. Santos
MCGUIRE WOODS LLP
888 16th Street, N.W., Suite 500
Black Lives Matter Plaza
Washington, D.C. 20006

Cc: Counsel of Record (via ECF)