# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

---------------------------------------------------------------- x

UNITED STATES OF AMERICA     §     Case No.  4-21-cr-00005-O
                     §
                    Plaintiff,    §
                     §
    vs.                      §
                     §
THE BOEING COMPANY       §
                  Defendant.    §
                     §

---------------------------------------------------------------- x

## POLSKIE LINIE LOTNICZE LOT S.A.'S MOTION AND MEMORANDUM OF LAW REQUESTING THAT THE COURT RECOGNIZE ITS RIGHTS AS A CRIME VICTIM AND REJECT THE PROPOSED PLEA AGREEMENT

Jeffrey W. Hellberg, Jr.
(Texas Bar No. 00796738)
Jeff.hellberg@wickphillips.com
David J. Drez, III
(Texas Bar No. 24007127)
David.drez@wickphillips.com
Colin P. Benton
(Texas State Bar No. 24095523)
Colin.benton@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton St., Suite 1500
Fort Worth, Texas 76102
Phone: 817.332.7788
Facsimile: 817.332.7789

Anthony U. Battista
(NY Bar No. 2802775)
abattista@condonlaw.com
Diana Gurfel
(NY Bar No. 3040391)
dgurfel@condonlaw.com
Mary Dow
(NY Bar No. 4782017)
mdow@condonlaw.com
CONDON & FORSYTH LLP
7 Times Square, 18th Floor
New York, New York 10036
Phone: 212.490.9100
Facsimile: 212.370.4453

*Attorneys for Polskie Linie Lotnicze LOT S.A.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ............................................. 3

I.      THE SIMULTANEOUS CRIMINAL CHARGE AND DPA ............................................ 3

II.     THE COURT'S CVRA RULING GRANTING "CRIME VICTIM" STATUS TO THE FAMILIES OF THE VICTIMS KILLED IN THE BOEING 737 MAX CRASHES ................................................................................................................ 6

III.    LOT'S INITIAL CVRA MOTION IN CONNECTION WITH THE DPA ...................... 8

IV.    BOEING'S BREACH OF THE DPA AND THE GOVERNMENT'S CONFERRAL WITH THE FAMILIES AND LOT ................................................ 9

V.     THE PROPOSED PLEA AGREEMENT ................................................................. 10

ARGUMENT .................................................................................................................. 12

I.      LOT IS A "CRIME VICTIM" UNDER THE CVRA AND HAS THE RIGHT TO BE HEARD ON THE GOVERNMENT'S AND BOEING'S PLEA ............................. 12

      A.    LOT Was Directly Harmed by Boeing's Conspiracy to Defraud the FAA AEG Because Boeing's Crime Is the "But For" Reason All 737 MAX Aircraft Were Grounded ....................................................................... 13

      B.    Boeing's Criminal Conduct Is the Proximate Cause of LOT's Losses Because It Was Foreseeable that Aviation Regulators Would Ground the 737 MAX ..................................................................................... 15

II.     THE PLEA SHOULD BE REJECTED BECAUSE IT IMPROPERLY PROHIBITS THE COURT FROM CONSIDERING LOT'S RIGHT TO RESTITUTION ............................................................................................... 18

      A.    LOT Is Entitled to Restitution as a "Victim" of Boeing's Criminal Conspiracy ................................................................................... 18

      B.    Boeing's Crime Falls Within the Scope of the MVRA, Which Makes Restitution Mandatory ........................................................................... 20

CONCLUSION ............................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Fisher*,
    640 F.3d 645 (5th Cir. 2011) ................................................................13

*In re Fisher*,
    649 F.3d 401 (5th Cir. 2011) ................................................................13

*In re McNulty*,
    597 F.3d 344 (6th Cir. 2010) ...........................................................19, 20

*In re Ryan*,
    88 F.4th 614 (5th Cir. 2023) ..............................................................9, 10

*Austin v. Kroger Texas, L.P.*,
    864 F.3d 326 (5th Cir. 2017) ................................................................16

*Paroline v. United States*,
    572 U.S. 434 (2014)................................................................8, 13, 16

*United States v. Atlantic States Cast Iron Pipe Co.*,
    612 F. Supp. 2d 453 (D.N.J. 2009) ........................................................19

*United States v. Boccagna*,
    450 F.3d 107 (2d Cir. 2006)................................................................22

*United States v. The Boeing Co.*,
    655 F. Supp. 3d 519 (N.D. Tex. 2023) ..................................................8, 29

*United States v. The Boeing Co.*,
    No. 4:21-cr-00005-O, 2022 WL 13829875 (N.D. Tex. Oct. 21, 2022)......................... *passim*

*United States v. Collins*,
    854 F.3d 1324 (11th Cir. 2017) .......................................................20, 21, 22

*United States v. Cothran*,
    302 F.3d 279 (5th Cir. 2002) ................................................................19

*United States v. Degenhardt*,
    405 F. Supp. 2d 1341 (D. Utah 2005).......................................................15

*United States v. Hagen*,
    60 F.4th 932 (5th Cir. 2023) .........................................................20, 21, 22

*United States v. Maturin*,
    488 F.3d 657 (5th Cir. 2007) ................................................................19

*United States v. Salinas*,
  918 F.3d 463 (5th Cir. 2019) ...................................................13

*United States v. Shah*,
  95 F.4th 328 (5th Cir. 2024) ...................................................21

**Statutes**

18 U.S.C. § 371 ....................................................................3, 10, 20

18 U.S.C. § 3663 ......................................................................1, 18

18 U.S.C. § 3663(a)(2) ...................................................................19

18 U.S.C. § 3663A ............................................................... *passim*

18 U.S.C. § 3663A(a)(1) .............................................................18, 19

18 U.S.C. § 3663A(a)(2) ...................................................................19

18 U.S.C. § 3663A(c) .......................................................................23

18 U.S.C. § 3663A(c)(1) ...................................................................20

18 U.S.C. § 3663A(c)(1)(A)(ii) ...............................................18, 19, 20

18 U.S.C. § 3771(a) ....................................................................12, 18

18 U.S.C. § 3771(a)(6) .....................................................................18

18 U.S.C. § 3771(b) .........................................................................18

18 U.S.C. § 3771(d)(2) .....................................................................15

18 U.S.C. § 3771(e)(2) .....................................................................12

**Other Authorities**

Fed. R. Crim P. 11(c)(1)(C) ..........................................................11, 12

Paul G. Cassell, *Recognizing Victims in the Federal Rules of Criminal Procedure:
  Proposed Amendments in Light of the Crime Victims' Rights Act*, 2005 B.Y.U. L.
  Rev. 835 (2005) ...........................................................................20

## INTRODUCTION

POLSKIE LINIE LOTNICZE LOT S.A. ("LOT") respectfully requests that the Court reject the proposed plea agreement (the "Plea") between the United States (the "Government") and The Boeing Company ("Boeing") because the terms of this negotiated deal forbid the Court from even considering LOT's right to restitution as a victim of Boeing's admitted criminal conspiracy to defraud the Federal Aviation Administration's ("FAA") Airline Evaluation Group ("AEG") in connection with the certification of the 737 MAX. Contrary to the Plea's instruction that "the Court shall not order" restitution to LOT, the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), expressly requires the opposite—that "the court shall order" restitution for crimes of conspiracy and fraud that bring financial benefit to the defendant at the financial expense of others. Thus, any sentence Boeing receives for pleading guilty to perpetrating a fraudulent scheme that deprived its airline customers of the 737 MAX aircraft they were promised must provide for full restitution to the identifiable "victims" of that scheme—which include both the families of the 346 passengers and crew killed in the two 737 MAX accidents (the "Families") and the 737 MAX customers, like LOT, that Boeing has refused to make whole for pecuniary losses caused by the fraudulent certification and worldwide grounding of the aircraft.[1]

While this Court has already recognized the Families' "victim" status in its Second Memorandum Opinion and Order on the Families' motions pursuant to the Crime Victims' Rights

---

[1] Alternatively, LOT is entitled to have its right to restitution considered under the Victim and Witness Protection Act, 18 U.S.C. § 3663, which gives the Court the authority to order discretionary restitution. As discussed below, while LOT submits that Boeing's factual admissions trigger mandatory restitution under the MVRA, the Court need not decide which of the two restitution statutes applies at this time for purposes of determining the propriety of the Plea.

Act, 18 U.S.C. § 3771 ("CVRA") (*see* ECF No. 116) (the "CVRA Ruling"),[2] LOT's rights under

the CVRA—and, now, under the MVRA—have not yet been considered by the Court.[3]  This open

issue is easily resolved, however, because the Court's CVRA Ruling that the Families have been

"directly and proximately harmed" by Boeing's 737 MAX conspiracy to defraud the FAA AEG

applies equally to LOT.  Just as this Court found that the 737 MAX crashes in Indonesia and

Ethiopia would not have happened "but for" Boeing deceiving the FAA AEG about the operational

scope of the aircraft's Maneuvering Characteristics Augmentation System ("MCAS") and the

extent to which pilots needed to be made aware of and trained on MCAS, the same is true of the

worldwide grounding of all 737 MAX aircraft, which would not have occurred "but for" the same

fraud and deceit that caused the crashes.  Indeed, within three days of the Ethiopian Airlines Flight

ET302 accident on March 10, 2019, aviation regulators unanimously grounded all 737 MAX

aircraft, and Boeing itself recommended the global suspension of all 737 MAX operations.

Additionally, just as the Court found that it was foreseeable that Boeing's criminal conduct

could result in catastrophic airplane crashes outside the U.S., it was just as foreseeable that the

fraudulent manner in which Boeing achieved its 737 MAX certification—based on a "Level B"

pilot training determination that deprived 737 MAX pilots of any information and training on

MCAS—could cause aviation regulators to ground the aircraft when the Ethiopian Airlines Flight

ET302 crash confirmed that the accidents were not "mere fortuities" and that the continued

---

[2] The Westlaw citation for ECF No. 116 is *United States v. The Boeing Co.*, No. 4:21-cr-00005-O, 2022 WL 13829875 (N.D. Tex. Oct. 21, 2022).

[3] As explained below, although LOT sought to have its CVRA rights recognized in connection with the Government's and Boeing's Deferred Prosecution Agreement ("DPA") (*see* LOT Mot., ECF No. 120), the Court did not consider the merits of LOT's position when it denied the motion on the basis of laches.  *See* Third Memorandum Opinion and Order (ECF No. 185) at 29.

operation of the aircraft pursuant to Boeing's fraudulently obtained "Level B" pilot training determination was not safe.

As a victim of Boeing's crime, the CVRA affords LOT the right to be heard on the Government and Boeing's Plea and the right to have the Court determine its entitlement to restitution. The Plea that the Government and Boeing have submitted to the Court improperly prohibits the Court from even considering the issue of restitution as it applies to LOT. The Government and Boeing cannot bar the Court from carrying out its statutory duties or exercising its discretionary authority in this regard; nor can the Government and Boeing waive the procedural and substantive victim rights afforded to LOT by an agreement to which LOT is not a party. For these reasons, LOT respectfully requests that the Court reject the Plea in its entirety.[4]

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

## I.    THE SIMULTANEOUS CRIMINAL CHARGE AND DPA

The Government initiated this criminal prosecution of Boeing based on the Department of Justice's ("DOJ") investigation into the company following two fatal accidents involving brand new Boeing 737 MAX aircraft—the October 29, 2018 crash of Lion Air Flight JT610 and the March 10, 2019 crash of Ethiopian Airlines Flight ET302—and the worldwide grounding of all 737 MAX aircraft that immediately followed. Based on the DOJ's investigative findings, the Government charged Boeing with violating 18 U.S.C. § 371 for conspiracy to defraud the FAA AEG in connection with the certification of Boeing 737 MAX aircraft.

On January 7, 2021, the same day the Government formally charged Boeing with the crime, the Government agreed to defer the prosecution of Boeing pursuant to a Deferred Prosecution

---

[4] The Court should also reject the Plea for the reasons contained in the Motion and Memorandum filed by the Naoise Connolly Ryan *et al.* Families in Opposition to the Proposed Plea Agreement.

Agreement ("DPA") that it had negotiated with Boeing in private. *See* Criminal Information, ECF No. 1; DPA, ECF No. 4. Under the terms of the DPA, the Government would dismiss the charge against Boeing based on the company "admit[ing], accept[ing], and acknowledge[ing]" responsibility for: "deceiving the [FAA AEG] about an important aircraft part called the Maneuvering Characteristics Augmentation System ('MCAS') that impacted the flight control system of Boeing's 737 MAX," "interfer[ing] with the FAA AEG's lawful function to evaluate MCAS and to include information about MCAS in the 737 MAX FSB Report," and "fraudulently obtain[ing] from the FAA AEG a differences-training determination for the 737 MAX that was based on incomplete and inaccurate information about MCAS." ECF No. 4 at 2, ¶ 2 and 4, ¶ 4a.

The DPA incorporated a Statement of Facts, consisting of binding facts admitted by Boeing,[5] including that:

- From at least November 2016, Boeing conspired to defraud the FAA AEG in connection with the agency's FSB Report[6] for Boeing's new 737 MAX aircraft and pilot training determination as part of the aircraft's certification process "in order to bring about a financial gain to Boeing" (*id.* at A-5, ¶ 17);

- The primary goal of Boeing's conspiracy was to convince the FAA AEG that the 737 MAX only required "Level B" pilot training because such a determination "would be a more attractive option for Boeing's airline customers … ," as such customers would save significant money in pilot-training cost," which, in turn, translated into "'tens of million dollars'" for Boeing (*id.* at A-5 – A-6, ¶¶ 18-19);

- Boeing knew that a change to the FAA AEG's "Level B" pilot training

---

[5] Per the DPA, Boeing agreed that it would not "make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement[.]" ECF No. 4 at 20, ¶ 32; *see also id.* at A-1, ¶ 1.

[6] A Flight Standardization Board Report ("FSB Report") is issued by the FAA AEG and contains relevant information for airlines "about certain airplane systems and parts that the airplane manufacturer was required to incorporate into airplane manuals and pilot-training materials … [and] the FAA AEG's [pilot] differences-training determination." ECF No. 4 at A-3, ¶ 10.

determination would cause its airline customers to incur millions of dollars in costs and lost revenue (*id.* at A-5 – A-6, ¶ 18);

- Boeing's "intentional withholding of information from the FAA AEG" resulted in the 737 MAX FSB Report, the 737 MAX airplane manuals, and the 737 MAX pilot-training materials being "false, inaccurate, and incomplete," because they "lacked information about MCAS" (*id.* at A-14, ¶ 46);

- Boeing's 737 MAX customers began operating the aircraft with pilots who had never received any training on MCAS and, like their airline employers, did not even know that MCAS existed (*see id.* at A-14, ¶ 47);

- MCAS activations *caused* the deaths of all 189 passengers and crew on board Lion Air Flight JT610, and the deaths of all 157 passengers and crew on board Ethiopian Airlines Flight ET302 (*see id.* at A-14 – A-16, ¶¶ 48-53);[7]

- Following the crashes, the FAA grounded all 737 MAX aircraft in the U.S., (*see id.* at A-16, ¶ 54), just as aviation regulatory agencies in other parts of the world were issuing their own grounding orders.[8]

---

[7] At the time the DPA was filed, Boeing only admitted that MCAS "*may have* played a role in the crash." ECF No. 4 at A-14 – A-16, ¶¶ 49, 53. However, since then, Boeing has publicly admitted that MCAS caused the accidents. On June 18, 2024, for example, Boeing's CEO gave sworn testimony before Congress that "MCAS and Boeing are responsible for those crashes." Tr. of Senate Homeland Security and Governmental Affairs Subcommittee on Permanent Investigations Holds Hearing on Boeing's Safety Culture, 2024 WL 3067258 (June 18, 2024). Boeing has agreed that this legislative testimony is admissible in any and all criminal proceedings. *See* ECF No. 4 at 18, ¶ 28 ("[A]ll statements made by or on behalf of the Company or its subsidiaries and affiliates to the Fraud Section or to the Court, including the attached Statement of Facts, *and any testimony given by the Company* or its subsidiaries and affiliates before a grand jury, a court, or any tribunal, or *at any legislative hearings*, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section against the Company or its subsidiaries and affiliates …") (emphasis added).

[8] The European Union Aviation Safety Agency ("EASA"), the aviation authority that oversees LOT's operations in the EU, issued its grounding order on March 12, 2019, the day before the FAA's grounding order came out. *See* EASA Press Release, *EASA Suspends All Boeing 737 Max Operations in Europe* (available at https://www.easa.europa.eu/en/newsroom-and-events/press-releases/easa-suspends-all-boeing-737-max-operations-europe). Boeing agreed with the grounding orders and issued its own public statement on March 13, 2019: "[A]fter consultation with the U.S. Federal Aviation Administration (FAA), the U.S. National Transportation Safety Board (NTSB), and aviation authorities and its customers around the world, Boeing has determined … to recommend to the FAA the temporary suspension of operations of the entire global fleet of 371 737 MAX aircraft." The Boeing Company Press Release, *In Consultation with FAA, NTSB, and its Customers, Boeing Supports Action to Temporarily Ground 737 MAX Operations*

The Government's contemplated dismissal of the criminal charge against Boeing also was contingent upon Boeing satisfying certain conditions by January 7, 2024.  Among the DPA's conditions, Boeing was required to establish a Crash-Victim Beneficiaries Compensation Fund in the amount of $500 million to compensate the families of the passengers and crew killed in the Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 accidents, and an Airline Compensation Fund in the amount of $1.77 billion to compensate "its airline customers for the direct pecuniary harm that its airline customers incurred as a result of the grounding of the Company's 737 MAX."  *Id.* at 12, ¶ 12.  While distribution of the Crash-Victim Beneficiaries Compensation Fund was subject to the oversight of both an appointed administrator and the DOJ's Fraud Section, the DPA gave Boeing discretion as to how the Airline Compensation Fund would be distributed and allowed Boeing to offset the amount "by any payments already made by the Company, as of the date this Agreement is fully executed, to any of its airline customers for the direct pecuniary harm that its airline customers incurred as a result of the grounding of the Company's 737 MAX."  *Id.*  As an additional condition of the DPA, Boeing was required to implement a "Corporate Compliance Program" that, among other things, involved "review[ing] its existing internal controls, policies, and procedures regarding compliance with U.S. fraud laws, focusing on the Company's interactions with domestic or foreign government agencies (including the FAA), regulators, and any of its airline customers."  *Id.* at 15, ¶ 22.

If Boeing breached the terms of the DPA or failed to satisfy any of its conditions, Boeing would be subject to prosecution for any crimes supported by the factual admissions contained in the DPA.  *See id.* at 16, ¶ 26.

## II.    THE COURT'S CVRA RULING GRANTING "CRIME VICTIM" STATUS TO

---

(available at https://boeing.mediaroom.com/news-releases-statements?item=130404).

**THE FAMILIES OF THE VICTIMS KILLED IN THE BOEING 737 MAX CRASHES**

In December 2021 and January 2022, the Families of several victims killed in the 737 MAX accidents filed a series of motions seeking to establish their rights as "crime victims" under the CVRA and to request relief relating to the DPA.  *See* Families' Mots., ECF Nos. 15, 17, 18, and 52.  Following the Court's first ruling that defined the crime for which Boeing could be charged (*see* First Memorandum Opinion and Order, ECF No. 96) and evidentiary hearings on the issue of causation (*see* ECF Nos. 103, 105), the Court ruled that the Families had standing as "crime victims" under the CVRA because their decedents were "'directly and proximately harmed as a result of the commission of [Boeing's conspiracy to defraud the United States].'"  ECF No. 116 at 9 (quoting 18 U.S.C. § 3771).

As to the statutory requirement of "direct" causation, the Court explained that "the direct causal chain" between Boeing's criminal conduct and the 737 MAX accidents "is clear" because:

> *But for* Boeing's fraudulently concealing MCAS's low-speed expansion capabilities, the AEG would have certified the 737 MAX at Level D training or higher and would have included relevant MCAS information in the FSB Report which would have been included in pilot manuals. *But for* inadequate differences training and omission of MCAS information from instructional materials, pilots operating the 737 MAX worldwide would have been aware of the risk of MCAS activation during takeoff and landing. *But for* lack of adequate training and advance knowledge of the system that thwarted both of those aircraft carriers, the pilots aboard Lion Air Flight 610 and Ethiopian Airlines Flight 302 would have been able to safely land those flights.

*Id.* at 13-14 (emphasis added).

The Court also ruled that the Families satisfied the "proximate cause" prong of CVRA standing, because "Boeing could foresee that its deceit created the 'existence of a *general* danger'" and it is "generally foreseeable that Boeing's deceiving the AEG, which resulted in an improperly low level of differences training certification, would potentially cause a disaster." *Id.* at 16.

7

Additionally, the 737 MAX accidents were not "so attenuated from Boeing's lies to the AEG that [they] might be described as a 'mere fortuity.'"  *Id.* at 17 (quoting *Paroline v. United States*, 572 U.S. 434, 445 (2014)).

Notwithstanding the Families' rights under the CVRA, the Court ruled in its Third Memorandum Opinion and Order on February 9, 2023 (ECF No. 185)[9] (also discussed below) that it did not have the authority to grant the Families' request that the DPA be rejected or modified.

## III.    LOT'S INITIAL CVRA MOTION IN CONNECTION WITH THE DPA

LOT is one of Boeing's 737 MAX airline customers that suffered pecuniary losses as a result of the fraud that Boeing perpetrated against the FAA AEG and the foreseeable consequences that followed.  However, unlike the majority of 737 MAX customers who received disbursements from Boeing's Airline Compensation Fund or negotiated commercial deals with Boeing to settle their 737 MAX-related losses (Boeing Opp., ECF No. 150, at 4),[10]  LOT has not received any compensation from Boeing for the financial losses it incurred over the nearly two-year period that its fleet of 737 MAX aircraft was grounded.  This, and Boeing's unwillingness to meaningfully engage with LOT to address its pecuniary losses, has forced LOT to seek relief in this criminal proceeding, as well as through a civil fraud action that LOT filed against Boeing in the U.S. District Court for the Western District of Washington in October 2021.  *See LOT v. Boeing*, No. 2:21-cv-01449, Compl. (W.D. Wash. filed Oct. 25, 2021).

On October 28, 2022, LOT filed a motion in this proceeding, seeking to establish its rights

---

[9]  The citation for ECF No. 185 is *United States v. The Boeing Co.*, 655 F. Supp. 3d 519 (N.D. Tex. 2023).

[10] Boeing represented that LOT was one of "approximately 65 global operators of the 737 MAX" (ECF No. 150 at 1), and that it has settled a "significant majority" of its customers' 737 MAX grounding losses through commercial negotiations.  *Id.* at 4.

as a victim of Boeing's crime under the CVRA and, among other things, request that the DPA be modified to ensure that Boeing's Airline Compensation Fund was sufficient to reimburse LOT for its losses.  *See* ECF No. 120.  Boeing opposed LOT's motion, arguing that LOT's damages were caused by EASA's decision to ground the 737 MAX aircraft, not Boeing's conspiracy to defraud the FAA AEG.  *See* ECF No. 150 at 6-10.  The Government also opposed LOT's motion, primarily on the ground that the doctrine of laches barred LOT from seeking relief nearly two years after the DPA had been finalized. *See* Gov't Opp., ECF No. 145, at 9-14.[11]

In its Third Memorandum Opinion and Order addressing the rights and remedies of both the Families and LOT under the CVRA, the Court denied LOT's motion on the basis of laches, finding that the doctrine barred the Court from considering whether LOT had any rights under the CVRA.  *See* ECF No. 185 at 29.

On LOT's Petition for a Writ of Mandamus to the Fifth Circuit, the Court of Appeals denied LOT's request for mandamus relief because:

> [W]e do not perceive an abuse of discretion in the district court's application of laches to LOT's petition inasmuch as it pertains to the Government's failure to confer, almost two years earlier, before the criminal complaint against Boeing was filed. We therefore deny the mandamus petition as to LOT. *This is without prejudice, however, to any effort LOT may urge to be heard as a CVRA victim when this criminal case comes to resolution*.

*In re Ryan*, 88 F.4th 614, 629 (5th Cir. 2023) (emphasis added).

## IV.   BOEING'S BREACH OF THE DPA AND THE GOVERNMENT'S CONFERRAL WITH THE FAMILIES AND LOT

---

[11]  The DOJ devoted a single paragraph of its Opposition to the substantive argument that LOT did not meet the definition of "crime victim" under the CVRA.  *See* ECF No. 145 at 4.  Similar to Boeing, the DOJ argued that LOT's 737 MAX-related losses were the result of an intervening cause, namely EASA's determination to ground the aircraft in order to conduct an independent safety assessment.  *See id.*

On May 14, 2024, the Government notified the Families, LOT, and the Court that Boeing had breached the DPA "by failing to design, implement, and enforce a compliance and ethics program to prevent and detect violations of the U.S. fraud laws throughout its operations." Gov't Letter, ECF No. 199. Following this development, the DOJ held several conferral sessions with the Families and LOT. During the conferral session on June 30, 2024, the DOJ advised the Families and LOT of its intention to offer Boeing a plea deal and further outlined the general terms of the agreement it was prepared to negotiate with Boeing. *See* Gov't Status Report, ECF No. 204 at 3, ¶ 5. Following another conferral session with the Families and LOT, the Government notified the Court in a July 7, 2024 status report that it had reached a plea agreement in principle with Boeing that involved Boeing pleading guilty to one count of violating 18 U.S.C. § 371 for conspiring to defraud the FAA AEG. *See id.*

## V.     THE PROPOSED PLEA AGREEMENT

On July 24, 2024, the Government filed the proposed Plea it had negotiated with Boeing. *See* Plea, ECF No. 221.[12] Consistent with the DPA, the Plea provides that Boeing agrees to plead guilty to conspiracy to defraud the United States in violation of 18 U.S.C. § 371, the elements of which are that: (a) Boeing "made an agreement to defraud the government or one of its agencies by impairing, obstructing, defeating, and interfering with, by dishonest means, the lawful function of [FAA AEG];" (b) Boeing "knew that the purpose of the agreement was to defraud the government and joined in it willfully, that is, with the intent to defraud;" and (c) "at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the Information, in order to accomplish some object or purpose of the

---

[12] For purposes of this Motion, LOT only addresses the Plea provisions that are directly relevant to the issues raised by LOT's arguments.

conspiracy." *See id.* at 1-2, ¶¶ 1-2.

The Plea also states that Boeing is "pleading guilty because it is guilty" and, like the DPA, attaches a 55-paragraph Statement of Facts that Boeing "admits, agrees, and stipulates … are true and correct … and accurately reflect [Boeing's] criminal conduct." *Id.* at 13, ¶ 17. The Plea's Statement of Facts repeats nearly verbatim the DPA's 54-paragraph Statement of Facts (*see id.* at A-2-1 – A-2-14, ¶¶ 1-54; ECF No. 4 at A-1 – A-16, ¶¶ 1-54) and adds as Paragraph 55 that Boeing admits that it "derived a pecuniary gross gain of $243,600,000" from its criminal conspiracy to defraud the FAA AEG. ECF No. 221 at A-2-15, ¶ 55.

Regarding Boeing's sentence, the Plea provides that Boeing will pay a criminal fine and serve a three-year term of organizational probation. The Plea also includes a restitution provision, which states that "restitution is discretionary pursuant to Title 18, United States Code, Section 3663, and not mandatory pursuant to Title 18, United States Code, Section 3663A" and limited to the Families. *Id.* at 19, ¶ 25(c). As to LOT and any other victims of Boeing's crime, the Plea states that:

> [T]he Court shall not order the Defendant to pay any restitution amount to the Defendant's airline entity customers, or any third parties asserting a restitution claim on behalf of an airline entity customer or derivative of a restitution claim of an airline entity customer, or any other third parties that may assert a restitution claim.

*Id.*

The Government and Boeing submitted the Plea pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure (*see id.* at 22, ¶ 26), which "binds the court" to the sentence contained in the Plea if the Plea is accepted. Fed. R. Crim P. 11(c)(1)(C).

Pursuant to the Court's Scheduling Order (ECF No. 218), the Families and "any other person claiming status as a 'crime victim' under the [CVRA]" have seven days to file a motion

objecting to the Plea.

## ARGUMENT

## I. LOT IS A "CRIME VICTIM" UNDER THE CVRA AND HAS THE RIGHT TO BE HEARD ON THE GOVERNMENT'S AND BOEING'S PLEA

The CVRA "guarantees crime victims certain rights in criminal proceedings," (ECF No. 116 at 7), including: the right to be reasonably heard on the matter of a defendant's plea and sentencing; the right to "full and timely restitution as provided in law;" and the "right to be treated with fairness." 18 U.S.C. § 3771(a). The CVRA defines "crime victim[s]" as those (1) "directly" and (2) "proximately" harmed by the commission of a federal offense. 18 U.S.C. § 3771(e)(2)). Although LOT's status as a "crime victim" under the CVRA has not been addressed by this Court or the Fifth Circuit, the Court's CVRA Ruling as to the Families makes clear that LOT also satisfies the dual "direct" and "proximate" causation requirements of a "crime victim" because: (1) "but for" Boeing's conspiracy to defraud the FAA AEG, the 737 MAX aircraft would not have been grounded, causing significant financial harm to all 737 MAX operators, including LOT; and (2) it was foreseeable that the criminal actions Boeing took to achieve 737 MAX certification could lead aviation regulators to suspend all 737 MAX operations when the consequences of Boeing's fraud—two 737 MAX crashes that killed 346 people—confirmed that the continued operation of the aircraft based on a fraudulently obtained "Level B" pilot training determination was not safe. *See* ECF No. 116 at 16-17.[13]

---

[13] In light of the evidentiary hearings that the Court held on the issue of causation as it pertained to the Families' losses arising from the 737 MAX accidents, LOT does not believe that an evidentiary hearing is necessary for the Court to determine that Boeing's criminal conduct is a direct and proximate cause of the worldwide grounding of all 737 MAX aircraft and LOT's pecuniary losses. Nevertheless, LOT respectfully requests the opportunity to present evidence on this issue if the Court has any questions or would benefit from additional evidence showing the causal link between Boeing's fraud and the unanimous decision by aviation regulators to ground

A.      **LOT Was Directly Harmed by Boeing's Conspiracy to Defraud the FAA AEG Because Boeing's Crime Is the "But For" Reason All 737 MAX Aircraft Were Grounded**

As explained in the Court's CVRA Ruling, "'[a] person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm.'" *Id.* at 9 (quoting *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011)). "'That is, direct (or actual) cause is established by showing that a latter event would not have occurred 'but-for' the former's occurrence.'" *Id.* (quoting *Paroline*, 572 U.S. at 449-50); *see also In re Fisher*, 649 F.3d 401, 402-03 (5th Cir. 2011) ("[I]n other words, the absence of the act would result in the non-occurrence of the event."). "[T]his is not a difficult threshold to meet since there are frequently many causes to a particular event," each of which qualifies as a "but for" cause. *Id.* (citing *United States v. Salinas*, 918 F.3d 463, 466 (5th Cir. 2019); *see also id.* at 15 (recognizing that, while "[i]t may be fair to say that the sensor error … was *a* but for cause of the accident," "[t]hat does not override the simultaneous fact that MCAS was also a direct cause").

Applying this low bar to the chain of events that followed Boeing's admitted fraud, this Court has already found that "the direct causal chain" between Boeing's conspiracy to defraud the FAA AEG of relevant information regarding MCAS and the two 737 MAX accidents that killed all 346 passengers and crew on Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 "is clear." *Id.* at 13.  As the Court explained in its CVRA Ruling as to the Families: "But for" Boeing's employees "conceal[ing] their knowledge about MCAS, the AEG would have certified a more rigorous level of training, pilots around the world would have been adequately prepared for MCAS activation, and neither crash would have occurred." *Id.* at 14.

---

all 737 MAX aircraft following the Ethiopian Airlines Flight ET302 accident.

The same "but for" conclusion applies to the worldwide 737 MAX grounding that immediately followed the second of the two 737 MAX crashes and that caused LOT, as well as all other 737 MAX operators, to suffer significant financial losses.  Following the Court's reasoning, "but for" Boeing withholding the operational scope of MCAS from the FAA AEG:

- All 737 MAX pilots would have been informed of and trained on how to identify and safely respond to an MCAS activation;

- The Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 pilots would have had the requisite knowledge and training to prevent the accidents from occurring; and

- There would have been no need for EASA, the FAA, and every other aviation regulator to ground all 737 MAX aircraft to protect against an additional 15 catastrophic 737 MAX accidents, which is the number of crashes the FAA determined would have occurred without the grounding.[14]

See id.  Thus, the natural extension of the Court's above holding is that "neither crash would have occurred, *and* aviation regulators would not have grounded all 737 MAX operations."

If the Court's CVRA Ruling leaves any doubt as to the direct link between Boeing's criminal conduct and the resulting financial harm suffered by LOT when the aircraft became grounded, the Court need not look any further than to the binding, factual admissions establishing Boeing's guilt.  Pursuant to both the DPA's and the Plea's Statement of Facts, Boeing admits that the goal of its conspiracy to defraud the FAA AEG was to ensure that the 737 MAX would be certified with a Level B pilot training determination because this rating was fundamental to convincing airlines—including LOT—to purchase and lease the aircraft.  *See* ECF Nos. 4 and 221 at Statement of Facts ¶¶ 17-19.  Boeing also admits that it was aware that any change in the FAA

---

[14]    *See*    FAA    Transportation    Risk    Assessment    (available    at https://www.flightglobal.com/download?ac=65911).

AEG's pilot training determination would result in economic harm to its airline customers in the form of additional pilot training costs and lost revenue (*see id.* at ¶ 18), which is precisely what came to bear when the aircraft was grounded and the FAA AEG "order[ed] Level D flight simulator training for the 737 MAX after obtaining all relevant information about MCAS's low-speed expansion."  ECF No. 116 at 12.  The direct connection between Boeing's crime and its airline customers' grounding losses is further established by Boeing's agreement as part of the DPA to establish the Airline Compensation Fund for the express purpose of compensating its airline customers "for the direct pecuniary harm that [they] incurred as a result of a grounding of the Company's 737 MAX."  ECF No. 4 at 12, ¶ 12.

In short, the Court's CVRA Ruling as applied to the facts admitted by Boeing leaves no question that Boeing's criminal conspiracy to defraud the FAA AEG is not only the "but for" cause of the 737 MAX accidents and unimaginable losses suffered by the Families, but it also is the "but for" cause of the 737 MAX grounding and the financial losses sustained by LOT.[15]

### B.   Boeing's Criminal Conduct Is the Proximate Cause of LOT's Losses Because It Was Foreseeable that Aviation Regulators Would Ground the 737 MAX

To establish the "proximate cause" requirement of CVRA standing, LOT must show that "Boeing could foresee that its deceit created the 'existence of a *general* danger'" that would lead to the grounding of the 737 MAX (ECF No. 116 at 16 (quoting *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 333 (5th Cir. 2017) (this Court's emphasis)), and that Boeing's criminal conduct was a

---

[15] While LOT is in no way suggesting that the unquantifiable, emotional injuries and losses that the Families have suffered are in any way comparable to the pecuniary losses LOT has sustained, the point is that the CVRA applies to different types of victims and different types of losses.  *See* 18 U.S.C. § 3771(d)(2); *see also United States v. Degenhardt,* 405 F. Supp. 2d 1341, 1344 (D. Utah 2005) (recognizing that the sponsors of the CVRA described this as "an intentionally broad definition because all victims of crime deserve to have their rights protected" and that under the CVRA, a district court can fashion a reasonable remedy even if the crime had "many victims").

"substantial factor" in aviation regulators ordering the cessation of all 737 MAX operations.  *Id.* (citing *Paroline*, 572 U.S. at 445).  The factual evidence already in the record confirms that LOT satisfies this burden.

In its prior CVRA Ruling, the Court readily dispensed with the issue of proximate causation because "it is generally foreseeable that Boeing's deceiving the AEG, which resulted in an improperly low level of differences training certification, would potentially cause a disaster." *Id.* at 16.  In doing so, the Court rejected the contention that the foreseeable consequences of Boeing deceiving the FAA AEG did not extend to independent actions taken by foreign aviation regulators in certifying the 737 MAX.  Acknowledging the "well-recognized global industry practice of foreign entities following the FAA's recommended guidance," the Court found that Boeing knew that the crime it perpetrated in the U.S. could have global consequences, including the Lion Air and Ethiopian Airlines pilots being deprived of key information and training that could have prevented the 737 MAX accidents.  *See id.*

The foreseeable consequences of Boeing's conspiracy to defraud the FAA AEG did not end with the 737 MAX crashes.  Just as it was foreseeable to Boeing that the 737 MAX's fraudulent certification carried the "general risk" of a catastrophic accident, it was equally foreseeable that aviation regulators might ground the aircraft upon learning that the FAA AEG's pilot training determination had been obtained through improper means and was unquestionably inadequate to support the continued operation of the aircraft.  *See id.* at 17 ("Boeing's employees needed only recognize the *general risk* that lying to the AEG in the course of training certification discussions *might cause*.") (emphasis added).

The nexus between Boeing's criminal conduct, the 737 MAX accidents, *and* the 737 MAX grounding cannot be denied by arguing, as the Government and Boeing previously did, that LOT's

losses are solely attributable to EASA's "independent and discretionary decision[]" to ground the aircraft.  ECF No. 145 at 5; *see also* ECF No. 150 at 8 (Boeing claiming that "[t]he decision by an aviation authority to ground an airplane model involves a complex mix of considerations that go well beyond the mere fact that a crash involving that model has occurred").  Such an argument ignores the facts—specifically, that EASA's grounding order was expressly "triggered" by "[t]he tragic losses of Lionair JT-610 and Ethiopian Airlines ET-302" and that EASA's grounding order was lifted only after changes to the pilot training determination was made.[16]

The fact that the 737 MAX grounding is an additional link on the chain of causation between Boeing's crime and the 737 MAX accidents does not make it, or LOT's losses, "so attenuated from Boeing's lies to the AEG" that it can only be considered a "mere fortuity."  *See* ECF No. 116 at 17.  As the "but for" sequence of events outlined above shows, there is a "direct causal connection" between Boeing's criminal conspiracy and the worldwide 737 MAX grounding that immediately followed the Ethiopian Airlines Flight ET302 accident.  *Id.*  It is indisputable, then, that Boeing's fraud was a "substantial factor" in causing LOT's losses.  *See id.* (establishing direct causal connection "is sufficient to satisfy proximate cause's substantial factor requirement").

The Court's CVRA Ruling and the actual grounding that followed the crashes of Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 leave no doubt that Boeing's conspiracy to defraud the FAA AEG proximately caused LOT's 737 MAX grounding losses.  Accordingly, LOT is entitled to the rights afforded to "crime victims" under the CVRA, including the right to be heard on any plea deal between the Government and Boeing and, as discussed below, the right to

---

[16] *European Union Aviation Safety Agency (EASA): Boeing 737 Max Return to Service Report*, issued   Jan.   27,   2021,   p.   5   (available   at https://www.easa.europa.eu/sites/default/files/dfu/B737_Max_Return_to_Service_Report.pdf).

restitution as provided by law.  *See* 18 U.S.C. § 3771(a).

## II.   THE PLEA SHOULD BE REJECTED BECAUSE IT IMPROPERLY PROHIBITS THE COURT FROM CONSIDERING LOT'S RIGHT TO RESTITUTION

The CVRA expressly provides that Boeing's "crime victims," including LOT, have "[t]he right to full and timely restitution as provided in law" (18 U.S.C. § 3771(a)(6)), and imposes an affirmative duty on the Court to ensure that this right is protected. *See id.* § 3771(b).  Under the law applicable to Boeing's admitted criminal acts—specifically, the MVRA (18 U.S.C. § 3663A)—the payment of restitution to LOT is mandatory because: (1) LOT is a "victim" of Boeing's conspiracy to defraud the FAA AEG; and (2) as to LOT, Boeing committed "an offense against property under [Title 18] … including any offense committed by fraud or deceit," which caused LOT's pecuniary losses.  *Id.* § 3663A(a)(1), (c)(1)(A)(ii).

The proposed Plea between the Government and Boeing forbids the Court from ordering that Boeing pay restitution to LOT under the MVRA or even considering a discretionary order of restitution under the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA").  *See* Plea at 19-20, ¶ 20(c) ("[T]he Court shall not order the Defendant to pay any restitution amount to the Defendant's airline entity customers.").  This Plea provision is improper, as it is contrary to the MVRA, encroaches upon the Court's statutory obligations and authority under both the MVRA and VWPA, and attempts to waive substantive legal rights that belong to LOT—not the Government, and certainly not Boeing.  The Court should reject the Plea for this reason.

### A.   LOT Is Entitled to Restitution As a "Victim" of Boeing's Criminal Conspiracy

The MVRA provides: "[T]he court shall order … that the defendant make restitution to the victim of … an offense against property under [Title 18], … including any offense committed by fraud or deceit" that causes a pecuniary loss.  *Id.* § 3663A(a)(1), (c)(1)(A)(ii).  Like the CVRA, the MVRA relies on the dual requirement of direct and proximate cause to define "victims" who

18

have the substantive right to restitution.  *See* 18 U.S.C. § 3663A(a)(2) ("'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered").  The same is true of the VWPA, which affords the identically defined "victims" the right to a discretionary order of restitution for crimes not covered by the MVRA. *See* 18 U.S.C. § 3663(a)(2).  Notably, however, when the offense "involves as an element a scheme, conspiracy, or pattern of criminal activity" (*id.*; 18 U.S.C. § 3663A(a)(2))—like Boeing's here (*see* Plea at ¶¶ 1-2)—both the MVRA and VWPA "broaden[] the definition of the term 'victim' … to include 'any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.'" *United States v. Maturin,* 488 F.3d 657, 661 (5th Cir. 2007) (quoting 18 U.S.C. § 3663A(a)(2)); *see also* 18 U.S.C. § 3663(a)(2).[17]

As already established by the CVRA analysis above, LOT necessarily qualifies as a "victim" under the MVRA and VWPA for the same reason it qualifies as a "crime victim" under the CVRA—Boeing's conspiracy to defraud the FAA AEG directly and proximately caused the worldwide grounding of the 737 MAX and the pecuniary losses that LOT suffered as a result.  *See United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 460-62 (D.N.J. 2009) ("[T]he definition of 'victim' under CVRA will be interpreted consistent with existing and evolving case law under the VWPA and MVRA."); *see also In re McNulty*, 597 F.3d 344, 350 n.6 (6th Cir. 2010) ("[W]e find our case law construing the VWPA and the MVRA persuasive, both for how the CVRA is to be interpreted procedurally and for when an individual qualifies as a victim

---

[17] The Fifth Circuit has held that, "'where a fraudulent scheme is an element of the conviction, … [the defendant's] actions *pursuant to that scheme*'" can trigger the payment of restitution. *Maturin*, 488 F.3d at 661 (quoting *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002)). Thus, as to these crimes, an order of restitution can be based on conduct that goes beyond the underlying offense.  *See id.*

of a conspiracy."); Paul G. Cassell, *Recognizing Victims in the Federal Rules of Criminal Procedure: Proposed Amendments in Light of the Crime Victims' Rights Act*, 2005 B.Y.U. L. Rev. 835, 857 (2005).

Accordingly, LOT has the substantive right to restitution under both the MVRA and VWPA, and it is for the Court—not the Government and Boeing—to decide whether restitution is required or appropriate based on the facts underlying Boeing's crime. Because the Plea prohibits the Court from enforcing the law and exercising its authority on the issue of restitution, it should not be accepted.

### B.   Boeing's Crime Falls Within the Scope of the MVRA, Which Makes Restitution Mandatory

The MVRA provides for mandatory restitution when a defendant is convicted of, or pleads guilty to, certain types of criminal offenses that cause identifiable victims to suffer physical injuries or pecuniary losses. *See* 18 U.S.C. § 3663A(c)(1); *United States v. Hagen*, 60 F.4th 932, 954 (5th Cir. 2023); *United States v. Collins*, 854 F.3d 1324, 1329 (11th Cir. 2017) ("When the MVRA applies, restitution is mandatory. A defendant must pay restitution under the MVRA if she is convicted of a certain covered offense 'in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.'") (internal citation omitted). Relevant to LOT's right to restitution is the MVRA's application to "an offense against property under [Title 18], … including any offense committed by fraud or deceit" (18 U.S.C. § 3663A(c)(1)(A)(ii)), as the Plea provides that Boeing is guilty of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. *See* ECF No. 221 at ¶¶ 1-2.

To determine whether a crime falls within this category of MVRA offenses, the Fifth Circuit directs district courts to look to the "factual circumstances of the crime," not the elements of the offense. *Hagen*, 60 F.4th at 953 (rejecting the "categorical approach" advanced by the

defendants that limit MVRA's application to crimes with references to property in the elements of the offense); *see United States v. Shah*, 95 F.4th 328, 387 (5th Cir. 2024). This is because, as the *Hagen* court explained, the text of the statute "says that a Title 18 'offense against property' includes 'any offense committed by fraud or deceit'" and does not contain any language "direct[ing] courts to the elements of Title 18 statutory offenses." *Hagen* 60 F.4th at 955. Thus, a crime need not contain or refer to "property" as an element to qualify for mandatory restitution. *See id.*; *see also Shah*, 95 F.4th at 387-88. Rather, "to establish an 'offense against property … committed by fraud or deceit' under the MVRA," it is enough that a defendant used fraud to derive a financial benefit from another's property or otherwise deprived a person of his property. *Hagen*, 60 F.4th at 955 (citing *Collins*, 854 F.3d at 1331). This is precisely what Boeing admits to doing here.

Indeed, although the fraud for which Boeing has agreed to plead guilty was aimed at the FAA AEG, Boeing admits that the primary purpose of deceiving the FAA AEG into certifying the 737 MAX with a "Level B" pilot training determination was "to bring about financial gain to Boeing" by making the 737 MAX a "more attractive option for Boeing's airline customers." ECF Nos. 4 and 221 at Statement of Facts, ¶¶ 17-18. With a "Level B" pilot training determination, Boeing admits that it could—and did—tell prospective customers that purchasing and leasing the new model aircraft "would save [them] significant money in pilot-training costs." *Id.* ¶ 18. Boeing used this marketing strategy to increase 737 MAX sales even though it knew that the FAA AEG's pilot training determination—and the resulting airplane manuals and pilot training materials that were packaged with the aircraft—had been obtained through fraud. *See id.* ¶¶ 36-47. While Boeing admittedly derived more than $243 million in gross pecuniary gains from the fraudulent scheme it perpetrated to achieve a "Level B" pilot training determination from the FAA AEG (ECF

21

No. 221 at A-2-14, ¶ 55), Boeing's financial benefit came at the expense of its airline customers including LOT, which collectively lost billions of dollars as a result of the 737 MAX grounding. *See* ECF No. 4 at 12, ¶ 12. Indeed, as the Families point out in their Motion objecting to the Plea, Boeing's public filings indicate that the economic losses sustained by its 737 MAX customers exceeded $8 billion.[18]

Focusing on the factual circumstances of Boeing's crime, as the Fifth Circuit requires, it is clear that Boeing used fraud to derive a financial benefit from the FAA AEG's pilot training determination. It is also clear that Boeing's ill-gotten gains were to the detriment of LOT, which was deprived of its 737 MAX fleet while the aircraft was grounded, incurred additional costs when the FAA-AEG's pilot training determination was corrected, and—unlike the majority of Boeing's other 737 MAX airline customers—still has not been made whole. *See Hagen*, 60 F.4th at 955 (further explaining that its interpretation of the MVRA's "crime against property" offense is consistent with the legislative purpose, which was to "'expand the number of identifiable victims entitled to full, mandatory restitution'") (citation omitted). Accordingly, as to LOT, Boeing's crime constitutes an "offense against property … committed by fraud or deceit" that requires the payment of mandatory restitution under the MVRA. 18 U.S.C. § 3663A(c).

The Government and Boeing cannot change the legal duty of this Court to order mandatory

---

[18] Not only do the Government and Boeing fail to account for these losses as a part of the Plea, as the Families note, but they also fail to acknowledge that the actual amount of financial harm suffered by Boeing's 737 MAX customers far exceeds the $1.77 billion Airline Compensation Fund that Boeing established as part of the DPA. This disparity, coupled with the discretion the DPA afforded to Boeing in distributing the Airline Compensation Fund, allowed Boeing to avoid having to make all of its 737 MAX customers whole. This is further confirmation that restitution is warranted. *See Collins*, 854 F.3d at 1329 ("The 'primary and overarching purpose' of the MVRA, enacted in 1996, is to 'make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'") (quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)).

restitution under the MVRA—or, alternatively, encroach upon the Court's authority to order discretionary restitution under the VWPA—via a plea deal that forbids the Court from even considering the issue as it applies to LOT.  Nor can the Government and Boeing unilaterally waive LOT's substantive rights via an agreement to which LOT is not a party.  Because the Plea submitted by the Government and Boeing improperly seeks to do both, it should be rejected.

## <u>CONCLUSION</u>

LOT respectfully requests that this Court find that LOT is a crime victim under to the CVRA and reject the Plea submitted by the Government and Boeing.

Dated: July 31, 2024                     Respectfully Submitted,

*/s/ Jeffrey W. Hellberg, Jr.* _____
Jeffrey W. Hellberg, Jr. (Texas Bar No.00796738)
Jeff.hellberg@wickphillips.com
David J. Drez, III (Texas Bar No. 24007127)
David.drez@wickphillips.com
Colin P. Benton (Texas State Bar. No. 24095523)
Colin.benton@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton St., Suite 1500
Fort Worth, Texas 76102

-and-

Anthony U. Battista, Esq. (NY Bar No. 2802775)
abattista@condonlaw.com
Diana Gurfel, Esq. (NY Bar No. 3040391)
dgurfel@condonlaw.com
Mary Dow, Esq. (NY Bar No. 4782017)
mdow@condonlaw.com
**CONDON & FORSYTH LLP**
7 Times Square, 18th Fl.
New York, New York 10036

*Attorneys for Polskie Linie Lotnicze LOT S.A.*

## CERTIFICATE REGARDING CONFERENCE

LOT is aware of Local Rules 47.1(a) and (b) regarding motion practice. This rule requires the "parties" in a criminal case to comply with various requirements, including a conferral regarding a motion. Because LOT is not a "party" to this criminal case, LOT does not believe that the conferral requirement applies to this motion. It is proceeding pursuant to separate authority for asserting a crime victim's right contained in the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(3) and Fed. R. Crim. P. 60.

*/s/ Jeffrey W. Hellberg, Jr.*___
Jeffrey W. Hellberg, Jr.

## CERTIFICATE OF SERVICE

On July 31, 2024, I filed the foregoing document with the clerk of courts for the U.S. District Court, Northern District of Texas, using the Court's CM/ECF filing system.

*/s/ Jeffrey W. Hellberg, Jr.*___
Jeffrey W. Hellberg, Jr.