UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff* | ) ) ) |
| v. | ) Case No. 4:21-cr-005-O-1 |
| THE BOEING COMPANY, | ) ) ) |
| *Defendant.* | ) ) |

**OPPOSED MOTION BY NAOISE CONNOLLY RYAN, ET AL., UNDER THE CRIME VICTIM'S RIGHTS ACT FOR THE COURT TO SET AN *ELLIS* DEADLINE FOR CONCLUDING ANY PLEA NEGOTIATIONS**

i

## **Table of Contents**

TABLE OF CONTENTS ............................................................................................................. II

TABLE OF AUTHORITIES ..................................................................................................... III

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 1

REASONS FOR SETTING AN *ELLIS* DEADLINE ................................................................. 2

THE COURT HAS POWER TO ESTABLISH AN *ELLIS* DEADLINE ..................................11

CONCLUSION ............................................................................................................................11

CERTIFICATE OF CONFERENCE ......................................................................................... 13

## Table of Authorities

**Cases**

*In re Ryan*,
  88 F.4th 614 (5th Cir. 2023) .......................................................................................... 7

*In re: Ethiopian Airlines Flight ET 302 Crash*,
  No. 1:19-cv-02170 (consolidated), ECF No. 2391 (Feb. 4, 2025) ............................... 4

*United States v. Atl. States Cast Iron Pipe Co.*,
  612 F.Supp.2d 453 (D.N.J. 2009) ................................................................................ 10

*United States v. Baker*,
  No. A-13-CR-346-SS, 2014 WL 12987177 (W.D. Tex. Apr. 11, 2014) ..................... 8

*United States v. Ellis*,
  547 F.2d 863 (5th Cir. 1977) ................................................................................ passim

*United States v. Gordon*,
  93 F.4th 294 (5th Cir. 2024) ..................................................................................... 3, 7

**Statutes**

18 U.S.C. § 3771(a)(3) .................................................................................................. 1, 6, 8
18 U.S.C. § 3771(a)(4) .................................................................................................. 8, 10
18 U.S.C. § 3771(a)(7) ...................................................................................................... 1, 8
18 U.S.C. § 3771(a)(8) ...................................................................................................... 1, 6
18 U.S.C. § 3771(e)(2)(B) ..................................................................................................... 3

**Other Authorities**

150 CONG REC. 22953 (Oct. 9, 2004) ................................................................................. 10

150 CONG. REC. S4260-01l) (April 22, 2024) ..................................................................... 11

Douglas E. Beloof & Paul G. Cassell, *The Crime Victim's Right to Attend the Trial: The Reascendant National Consensus*, 9 LEWIS & CLARK L. REV. 481, 534-38 (2005) .......................................................................................................................... 2

Jennifer Connolly & Ronit Gordon, *Co-victims of Homicide: A Systematic Review of the Literature*, 15 TRAUMA, VIOLENCE & ABUSE 494, 500-01 (2015) .................. 3

Christine Englebrecht et al, *The Experiences of Homicide Victims' Families with the Criminal Justice System: An Exploratory Study*, 29 VIOLENCE & VICTIMS 407, 409-10 (2014) ...................................................................................................... 3

JANICE HARRIS LORD, NO TIME FOR GOODBYES: COPING WITH SORROW, ANGER, AND INJUSTICE AFTER A TRAGIC DEATH 123-25 (4th ed. 1991) ................................. 3

Dave Michaels & Emily Glazer, *Boeing Is Pushing to Withdraw Guilty Plea Agreement*, WALL ST. J., Mar. 24, 2025 ..................................................................... 9

**Introduction**

Naoise Connolly Ryan et al.[1] (the "victims' families" or "families"), through undersigned counsel, respectfully file this motion for the Court to set a deadline for any proposed plea agreement or other pre-trial resolution—e.g., an *Ellis* deadline. *See United States v. Ellis*, 547 F.2d 863, 864 (5th Cir. 1977) ("The [district] court [has] the prerogative to make and strictly enforce a deadline on plea bargaining.")). The families respectfully request an *Ellis* deadline of May 5, 2025. On the unique facts of this case, such a deadline is required to protect the victims' families' rights under the Crime Victim's Rights Act (CVRA) to be treated with fairness, to be free from unreasonably delayed proceedings, and to not be excluded from any trial. *See* 18 U.S.C. § 3771(a)(3), (7), (8). Grieving families need advance notice of whether this case is really going to trial so that they can begin the process of preparing to exercise their right to attend the trial. Also, an *Ellis* deadline will permit the Court to properly discharge its duty to review—and accept or reject—any proposed pre-trial resolution. The Government and Boeing oppose the motion, as discussed in the certificate of conference below.

**Factual Background**

As the Court is aware, the Criminal Information in this case was filed more than four years ago, on January 7, 2021. Since then, the Court has been diligently working to bring the case to a conclusion. The victims' families very much appreciated the Court's recent action on March 25, 2025, setting a trial date. ECF No. 293 (ordering a trial on June 23, 2025). The following day,

---

[1] In addition to Ms. Ryan, the other victims' family members filing this motion are Emily Chelangat Babu and Joshua Mwazo Babu, Catherine Berthet, Huguette Debets, Luca Dieci, Bayihe Demissie, Sri Hartati, Zipporah Kuria, Javier de Luis, Nadia Milleron and Michael Stumo, Chris Moore, Paul Njoroge, Yuke Meiske Pelealu, John Karanja Quindos, Guy Daud Iskandar Zen S., and others similarly situated.

March 26, 2025, the Victim-Witness Unit of the Justice Department's Criminal Division Fraud Section emailed notices in English to the 346 victims' families in this case:

> To Whom it May Concern:
>
> …. On March 25, 2025, the Court set this case for **trial** on **Monday, June 23, 2025, at 9:00 AM (CT)** in the Second Floor Courtroom, 501 W. 10th Street, Fort Worth, Texas before Judge Reed O'Connor.

Email from Fraud Section's Victim-Witness Unit to Victims' Families (March 26, 2025). A week later, the Victim-Witness Unit sent translations of this notice in six languages (including Indonesian and Amharic) to 346 victims' families in Indonesia, Ethiopia, and many other countries.

### **Reasons for Setting an *Ellis* Deadline**

As a result of these Justice Department notices, hundreds of families living around the world are considering whether to try to travel to Fort Worth for Boeing's scheduled trial. A number of family members want to attend any trial—for a crime that this Court has previously determined directly and proximately caused the deaths of their loved ones. *See* ECF No. 116 at 17. It is easy to understand why. As President Reagan's Task Force on Victims of Crime explained in justifying a victim's right to attend the trial, "The crime is often one of the most significant events in the lives of victims and their families." PRESIDENT'S TASK FORCE ON VICTIMS OF CRIME: FINAL REPORT 80 (1982). Sadly, that is especially true here, because Boeing committed "the deadliest corporate crime in U.S. history." ECF No. 185 at 25. Victims' families around the world want to see whether justice is being done. *See* Douglas E. Beloof & Paul G. Cassell, *The Crime Victim's Right to Attend the Trial: The Reascendant National Consensus*, 9 LEWIS & CLARK L. REV. 481, 534-38 (2005) (discussing "compelling" reasons why victims and their families want to attend trials). It is well known in the crime victims' literature that those who have lost loved ones due to a crime will want to represent their missing family members at important court hearings—such as a trial—so that

2

their family members are remembered. *See, e.g.,* JANICE HARRIS LORD, NO TIME FOR GOODBYES: COPING WITH SORROW, ANGER, AND INJUSTICE AFTER A TRAGIC DEATH 123-25 (4th ed. 1991). The survivors left behind after deadly crimes may also attend trials as a way of coping with grief. *See* Jennifer Connolly & Ronit Gordon, *Co-victims of Homicide: A Systematic Review of the Literature*, 15 TRAUMA, VIOLENCE & ABUSE 494, 500-01 (2015). Lack of information about what is happening in the process can exacerbate grieving family members' trauma. *See* Christine Englebrecht et al, *The Experiences of Homicide Victims' Families with the Criminal Justice System: An Exploratory Study*, 29 VIOLENCE & VICTIMS 407, 409-10 (2014). No doubt, for reasons such as these, Congress extended crime victim's rights to family members of those killed by a crime. *See* 18 U.S.C. § 3771(e)(2)(B).

Because most of the victims' families reside in foreign countries, it will take time to make appropriate arrangements to attend the trial. The Court will recall that undersigned counsel previously requested two weeks' advance notice for a small group of victims' family members travelling to Fort Worth to attend a court hearing regarding the proposed plea agreement. *See* ECF No. 242 Those victims' family members came from the U.S. and a small subset of countries (Canada and European countries) where appropriate permissions could be secured rapidly.

The visa and logistical difficulties associated with travel by a broader group of victims' families who want to attend the trial are more substantial than for the subset who travelled earlier. For those traveling from the adjacent country of Canada or from countries covered by the Visa Waiver Program (VWP)—e.g., the United Kingdom, Ireland and France[2]—two weeks is sufficient time to obtain appropriate permission to enter this country. But for citizens of countries outside the

---

[2] *See* https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visa-waiver-program.html. The court will recall that victims from these countries previously provided oral victim impact statements.

VWP, processing times may extend far beyond the two weeks mentioned earlier. For example, according to the State Department's website, wait times for an interview for a B1/B2 visitor visa can be anywhere from 10 days (Jakarta) to 29 days (Nairobi) to 122 days (Addis Ababa).[3] There is also a discretionary process for expediting requests, which requires documentation about the need to attend a court hearing.[4]

The families' need for substantial advance notice of a trial is well-illustrated by Lion Air victims' families from Indonesia, some of whom intend to travel to the United States to attend Boeing's trial. Undersigned counsel (Cassell) has discussed these issues with attorneys Michael Indrajana and Sanjiv N. Singh, who have made pro hac vice appearances in this case on behalf of sixteen families of victims in the Lion Air crash. ECF No. 255. Based on the latest publicly available information and consultations with Indrajana and Singh, Indonesian citizens face a multi-stage, time-intensive visa application process that necessitates significant lead time—well beyond the two-week minimum undersigned counsel previously estimated.

The visa application process for Indonesian citizens wishing to travel to the United States requires extensive preparation, documentation, and procedural steps that can extend for months. According to the U.S. Embassy in Jakarta, Indonesian citizens must complete an online visa application (DS-160), pay application fees, schedule and attend an in-person interview at the U.S. Embassy in Jakarta or the U.S. Consulate in Surabaya, and await processing—all before being

---

[3] https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/global-visa-wait-times.html.

[4] https://www.uscis.gov/forms/filing-guidance/expedite-requests. In other related civil litigation against Boeing, the U.S. District Court for the Northern District of Illinois entered an agreed order regarding the issuance of U.S. visas for victims' families, designed to facilitate consular interviews and other steps necessary for international travel. *See, e.g., In re: Ethiopian Airlines Flight ET 302 Crash*, No. 1:19-cv-02170 (consolidated), ECF No. 2391 (Feb. 4, 2025). The victims' families in this case intend to seek a similar agreed order.

approved for travel.[5] The visa interview appointment wait times alone vary significantly, with current processing times in Jakarta reported at approximately 10 days (as referenced above), but this represents merely one step in a much longer process.

Attorneys Indrajana and Singh advise that, in their experience, the wait times can be even longer (60 days or more). During the pendency of the civil cases against Boeing in the Northern District of Illinois, several of their clients even reported their visa applications were initially rejected because of the need to further document the reasons for travel. Indonesian citizens must also translate numerous documents into English, many of which require special authentication. Since Indonesia's accession to the Apostille Convention in June 2022, certain public documents must undergo a formalized apostille process through the Ministry of Law and Human Rights in Jakarta.[6] For documents that require notarization, applicants must use notaries accredited within the Apostille system.[7] These document preparation and authentication procedures can add weeks to the pre-application phase.

Indonesian family members of Lion Air victims also face additional burdens related to establishing their relationship to the victims Boeing killed. This includes obtaining and authenticating birth certificates, marriage certificates, and death certificates—all requiring official translations and apostille certification. According to Indonesian legal specialists, apostille processing for such critical documents can take two to four weeks under normal circumstances,

---

[5] U.S. Embassy & Consulates in Indonesia, "Nonimmigrant Visas" (2024), https://id.usembassy.gov/visas/nonimmigrant-visas/.

[6] *See* Schmidt & Schmidt, "Apostille and consular legalization from Indonesia" (2025), noting Indonesia joined the Hague Convention on October 5, 2021, with the Convention entering into force on June 4, 2022; https://schmidt-export.com/consular-legalization-and-apostille/consular-legalization-indonesia.

[7] *See* Apostille Indonesia, "Apostille Indonesia 2025 Document Legalization Services" (2025), detailing requirements for document apostille certification.

5

not accounting for travel time to Jakarta if the applicant resides elsewhere in Indonesia's vast archipelago.[8]

Beyond visa procedures, Indonesian and other victims' families must make substantial logistical arrangements for international travel. This substantial financial investment necessitates confidence regarding whether a trial will really occur before families can commit to these expenses. The logistics are further complicated by the fact that many potential family attendees have jobs and family responsibilities. Taking extended leave from employment requires advance planning and approval from employers. For families with children, arrangements for their care during the parents' absence must be secured. These visa and related issues demonstrate that, as a practical matter, an *Ellis* deadline is necessary to protect the victims' families' CVRA right not to be excluded from Boeing's trial. *See* 18 U.S.C. § 3771(a)(3).

An *Ellis* deadline is also needed to protect the victims' families' CVRA right to "be treated with fairness." 18 U.S.C. § 3771(a)(8). In most federal criminal cases, a defendant will negotiate a pre-trial resolution to propose to the Court. But, for this case at this time, the victims' families are uncertain whether the parties will propose any resolution and, if so, when. The families have little knowledge about what is currently happening in their case. On December 5, 2024, this Court rejected Boeing's proposed guilty plea agreement. ECF No. 282. On December 11, 2024, the Justice Department held what it called a "conferral meeting" with the victims' families. Since then, on February 6, 2025, the families sent a letter to the Attorney General requesting an opportunity to confer regarding the plea discussions. The families are awaiting a response. Thus, at this time,

---

[8] *See* Schinder Law Firm, "Apostille, Foreign Public Document Legalization Service in Indonesia" (2022), outlining the procedural requirements under Regulation of the Minister of Law and Human Rights No. 6 of 2022.

the families have no indication from the parties about whether they truly intend to go to trial or to instead propose to this Court a new guilty plea agreement.

Of course, should the parties propose any pre-trial resolution, this Court would need to decide whether to approve it. *See In re Ryan*, 88 F.4th 614 (5th Cir. 2023) (noting that this court has "demonstrated careful competence" in protecting the crime victims' families' rights and that, for any proposed pre-trial resolution, "the public interest, especially that of crime victims, rests crucially on court approval"). If the parties wait to present a proposed pre-trial resolution until June 23, 2025, that lengthy delay might effectively hamper the Court in discharging its "crucial[] … court approval" function. It appears that the last Speedy Trial Act waiver in this case expired on April 11, 2025. *See* ECF No. 292. Thus, time is now running to bring Boeing to trial. Under the Speedy Trial Act, Boeing must be brought to trial within 70 days, i.e., by Saturday, June 21, 2025, which rolls over (by virtue of the day-counting rule in Fed. R. Civ. P. 6(a)(1)(C)) to Monday, June 23, 2025. If the parties were to propose a plea agreement or other pre-trial resolution to the Court on that Monday, the Speedy Trial Act time would have apparently expired, making it potentially difficult for the Court to hear from the victims about the deal, reject the arrangement, and then begin a trial. *Cf. In re: Ryan*, 88 F.4th at 626-28 (explaining the Court's power to hear from the victims' families and then reject any proposed plea agreement or dismissal). To be sure, the parties could obviate this problem by firmly committing to reach a proposed resolution far in advance of the June 23 trial date. But the parties have yet to provide any such assurance to the Court—or to the victims' families.

For all these reasons, the victims' families respectfully ask the Court to set what is often called a "plea deadline"—or what is called in this Circuit an "*Ellis* deadline." *See United States v. Gordon*, 93 F.4th 294, 300-01 (5th Cir. 2024) (noting "*Ellis* deadlines" and citing *United States v.*

*Ellis*, 547 F.2d 863, 864 (5th Cir. 1977) ("The [district] court [has] the prerogative to make and strictly enforce a deadline on plea bargaining.")). The families propose a deadline of May 5, 2025, for the parties to submit any pre-trial resolution short of trial. The Court should include standard *Ellis* language that "[n]o plea bargain or plea agreement entered into after this date shall be honored by this Court without good cause shown for delay." *See, e.g., United States v. Baker,* No. A-13-CR-346-SS, 2014 WL 12987177, at *6 (W.D. Tex. Apr. 11, 2014).

The families are aware that, in more routine cases, this Court (O'Connor, J.) does not typically impose such a deadline. But this case is atypical, creating a particularized need to establish an *Ellis* deadline to protect the victims' families' CVRA rights.

Unlike most cases, here hundreds of victims' families living far from Fort Worth have a crucial interest. Under the CVRA, the families have statutory rights to attend any trial and to speak at any plea hearing or sentencing. *See* 18 U.S.C. § 3771(a)(3) (right not to be excluded from trial); § 3771(a)(4) (right to be heard at any proceeding involving plea or sentencing). As discussed above, for some victims' families to attend Boeing's trial (or a plea or sentencing hearing) will require many weeks of advance work. Without sufficient advance notice, the victims' families will, as a practical matter, be "excluded" from the trial by the Government's immigration process or other obstacles. Because Boeing directly and proximately caused the deaths of hundreds, to now treat the grieving families "with fairness," 18 U.S.C. § 3771(a)(8), necessitates reasonable advance notice by Boeing of whether it plans to force a trial.

In addition, any delay in plea negotiations beyond May 5 would violate the families' rights to proceedings free from "unreasonable delay." 18 U.S.C. § 3771(a)(7). Boeing has had ample time—literally years—to resolve the charge against it. Boeing first began negotiations over the contemplated criminal charges in 2020, producing the illegally negotiated deferred plea agreement

8

that kicked off this case in early January 2021. After years of litigation about the effect of the victims' rights violation (including a published decision in the Fifth Circuit), Boeing violated its DPA obligations. Boeing's intransigence produced another round of plea negotiations, and the company finally presented to this Court a proposed plea agreement on July 24, 2024. *See* ECF No. 221-1. The Court rejected Boeing's proposed plea on December 5, 2024. *See* ECF No. 282. Since then, Boeing has now requested multiple extensions of time. *See* ECF No. 285 (requesting extension to February 16, 2025); ECF No. 287 (requesting extension to March 14, 2025); ECF No. 291(requesting extension to April 11, 2025).

In January of this year, new leaders took office in the Justice Department. But from what the victims' families can glean from media reports, the current delay stems not from inaction by the Government but rather from Boeing contriving to "withdraw [from] an earlier agreement to plead guilty …." Dave Michaels & Emily Glazer, *Boeing Is Pushing to Withdraw Guilty Plea Agreement*, WALL ST. J., Mar. 24, 2025. Boeing possesses a constitutional right to force the Government to prove its guilt at a trial—even though it has previously confessed to all of the elements of its deadly crime, ECF No 251-1, and even though, in other public settings, Boeing has professed sorrow for causing the deaths of hundreds of passengers and crew.[9] But Boeing is not free to extend these years-long proceedings any further than necessary. Boeing has yet to offer any real reason for additional delay. As of May 5, Boeing will have had a full five months to determine

---

[9] *See, e.g., Boeing's Broken Safety Culture: CEO Dave Calhoun Testifies: Hearings before the Senate Permanent Subcommittee on Investigations* (June 18, 2024) (Boeing's CEO addresses the victims' families in the gallery and states "Before I begin my opening remarks, I want to speak directly to those who lost loved ones on Lion Air Flight 610 and Ethiopian Airlines Flight 302. I would like to apologize on behalf of all of our Boeing associates …, past and present, for your losses. They are gut wrenching. I apologize for the grief we have caused. …. And so, again, I'm sorry."), https://www.hsgac.senate.gov/subcommittees/investigations/hearings/boeings-broken-safety-culture-ceo-dave-calhoun-testifies/).

how it wants to proceed after having already agreed to plead guilty in another proposed plea agreement. Surely five months is ample time to discuss any changes needed in that document.

Because of the unusual posture of this case, the CVRA gives victims' families the right to have the Court set a firm plea deadline to enforce their rights to be free from "unreasonable delay," to be treated "fairly," and to "not to be excluded" from the trial. *See* 18 U.S.C. § 3771(a)(4), (7), (8). The families are thus entitled to file this CVRA enforcement motion. *See* 18 U.S.C. § 3771(d)(3). The CVRA specifically "places responsibility on the [district] court for its implementation, requiring that '*the court shall ensure* that the crime victim is afforded [those] rights.'" *United States v. Atl. States Cast Iron Pipe Co.*, 612 F.Supp.2d 453, 458 (D.N.J. 2009) (quoting 18 U.S.C. § 3771(b)(1)) (emphasis added). Indeed, as the Senate co-sponsor of the CVRA explained, "it is the clear intent and expectation of Congress that the *district . . . courts* will establish procedures that will allow for a prompt adjudication of any issues regarding the assertion of a victim's right, while *giving meaning* to the rights we establish." 150 CONG REC. 22953 (Oct. 9, 2004) (statement of Sen. Kyl) (emphases added).

The parties will not be unfairly prejudiced if the Court grants the families' motion. Both the Government and Boeing have vast resources and large legal teams working on this case. Any delay beyond May 5 would not result from any need to address some newly arising complexity but rather from Boeing's tactical gamesmanship in seeking a more favorable resolution. As the CVRA's Senate sponsors explained in giving victims the right to proceedings free from unreasonable delay, "too often … delays in criminal proceedings occur for the mere convenience of the parties and those delays reach beyond the time needed for defendant's due process or the Government's need to prepare. The result of such delays is that victims cannot begin to put the crime behind them and they continue to be victimized. It is not right to hold crime victims under

the stress and pressure of future court proceedings merely because it is convenient for the parties ….." 150 CONG. REC. S4260-01l) (April 22, 2024) (colloquy between Senators Kyl and Feinstein).

Today, 346 victims' families are left wondering whether they should plan to travel to Fort Worth to represent their lost loved ones at a trial to determine Boeing's guilt. They deserve to know whether Boeing really intends to go to trial—and they deserve that answer by May 5.

### The Court Has Power to Establish an *Ellis* Deadline

This Court is empowered to set a firm plea deadline, particularly where a deadline serves the interests of the victims and the public. *See United States v. Ellis,* 547 F.2d 863, 868 (5th Cir. 1977) (rejecting attack on district court's use of a firm plea deadline in light of "judicial discretion to control the scheduling of trial procedures in ongoing prosecutions, plus the broad interests of docket control and effective utilization of jurors and witnesses"). Boeing has no legitimate interest in protracting these proceedings until the very eve of trial. The Court should set a deadline for Boeing to decide whether it is going to follow the path of redemption … or the path of obstruction and denial.

### Conclusion

For all the foregoing reasons, the Court should set an *Ellis* deadline for any proposed pre-trial resolution of May 5, 2025. The Court should also strictly enforce that deadline. A proposed order to that effect is attached.

11

Dated: April 18, 2025                                      Respectfully submitted,

*/s/ Darren P. Nicholson*                                  */s/ Paul G. Cassell*
Warren T. Burns                                            Paul G. Cassell (Utah Bar No. 06078)
Texas Bar No. 24053119                                     (Counsel of Record)
Darren P. Nicholson                                        Utah Appellate Project
Texas Bar No. 24032789                                     S.J. QUINNEY COLLEGE OF LAW
Chase Hilton                                               University of Utah
Texas Bar No. 24100866                                     cassellp@law.utah.edu
Kyle K. Oxford                                             (no institutional endorsement implied)
Texas Bar No. 24095806
BURNS CHAREST LLP                                          Tracy A. Brammeier
900 Jackson Street, Suite 500                              CLIFFORD LAW OFFICES PC
Dallas, Texas 75202                                        tab@cliffordlaw.com
Telephone: (469) 904-4550
wburns@burnscharest.com                                    Erin R. Applebaum
dnicholson@burnscharest.com                                KREINDLER & KREINDLER LLP
chilton@burnscharest.com                                   eapplebaum@kreindler.com
koxford@burnscharest.com

                                                           Pablo Rojas
                                                           PODHURST ORSECK PA
                                                           projas@podhurst.com

*Attorneys for Victims' Families*

12

**CERTIFICATE OF CONFERENCE**

Via emails exchanged with counsel for the Government and Boeing on April 16 and 17, 2025, the victims' families have conferred about their motion. The Government and Boeing oppose the motion.

*The Government's Opposition*

The Government opposes the motion because it does not believe the relief the families are seeking is required under the CVRA or otherwise appropriate. The Government states that the Court is fully capable of managing its docket and the proceedings in this case, and to that end has issued a pretrial Scheduling Order. Had the Court believed that an *Ellis* deadline was appropriate, it would have included it in the Order. And the Government is not aware of any case law supporting the families' contention that an *Ellis* deadline is required under the CVRA. As for the families' travel arrangements, the Government notes that counsel previously represented to the Court that two weeks' notice was sufficient lead time for the families to attend court proceedings. ECF No. 242. The Government supported that request for advance notice while deferring to the Court's scheduling decisions. And the Court provided two weeks' notice. ECF No. 265. The Government states that, should the need arise for a hearing or other Court proceeding prior to the trial date, the Government expects it would again support the families' request for two weeks' notice (or more, if necessary for some reason), though again deferring to the Court's scheduling decisions.

In reply, the victims' families note that the Government does not provide—much less, prove—any reason why plea discussions need to continue beyond May 5, 2025. In view of the Government's failure to provide any reason, setting a plea deadline on that date would be, by definition, protecting the victims' families' CVRA right to "proceedings free from unreasonable delay," 18 U.S.C. § 3771(a)(7)—i.e., would be protecting against delay without reason.

13

With regard to the seven weeks' advance notice that the victims' families are requesting, while earlier proceedings involved various pre-trial motions and a proposed plea, a trial of Boeing to determine its guilt or innocence is a far more important event. When requesting a minimum of two weeks' advance notice earlier, counsel believed that only a subset of victims, from Canada and Europe, planned to attend. In now requesting seven weeks' advance notice for the decisive event of a trial, counsel understand that more families will wish to exercise their CVRA right to attend and that they will likely come from additional countries, including Indonesia. As discussed above, the Government seems to be entirely unaware of the visa and logistical difficulties that Government immigration requirements impose on travel by this broader group of victims' families.

Moreover, while the Court did not impose an *Ellis* deadline when entering its earlier schedule on March 26, 2025, the Court now possesses more information. In the three-and-a-half weeks since the Court's order, it appears that Boeing's intransigence has blocked any real progress towards resolving the case. If any progress had been made, one would expect that the parties would have advised the victims' families and the Court. In light of this sluggish pace, a specific *Ellis* deadline from the Court can be expected to help move things toward a conclusion free from unreasonable delay.

Finally, the Government provides no assurance to the victims' families—or to the Court—that it would present any plea agreement to the Court well in advance of the trial date. Instead, the Government seems to be staking out the position that it remains free to present a proposed plea agreement to the Court on any day, up to and including June 23, 2025. If the Government and Boeing present a proposed plea on that date, they would effectively present the Court with a Hobson's Choice. The Court would have no real choice: if it rejected the plea, Boeing would presumably escape justice, as the Speedy Trial Act clock would have apparently expired.

*Boeing's Opposition*

Boeing opposes the motion. On Wednesday, undersigned counsel sent a description of the victims' families' motion and the reasons supporting it to Boeing. Yesterday Boeing's counsel sent an email stating, without elaboration, "Boeing opposes your proposed motion."

*/s/ Paul G. Cassell*
Paul G. Cassell

## **CERTIFICATE OF SERVICE**

I certify that on April 18, 2025, the foregoing document was served on the parties to the proceedings via the Court's CM/ECF filing system.

*/s/ Darren P. Nicholson*
Darren P. Nicholson