**EXHIBIT 2**

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
Fort Worth Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:21-cr-00005-O |
| ) | |
| THE BOEING COMPANY ) | |
| ) | |
| Defendant. ) | |
| ) | |

### <u>DECLARATION OF SEAN P. TONOLLI</u>

Pursuant to Title 28, United States Code, Section 1746, I, Sean P. Tonolli, hereby declare as follows:

1.      I am the Senior Deputy Chief of the Fraud Section of the U.S. Department of Justice ("Department"), Criminal Division ("Fraud Section"). Since January 2023, when I joined the Fraud Section, I have worked on this case along with other attorneys from the Fraud Section, the Criminal Division, and the U.S. Attorney's Office for the Northern District of Texas ("USAO-NDTX," and, collectively with the Fraud Section, the "Government"). I submit this declaration in support of the Government's Motion to Dismiss the Information, pursuant to Federal Rule of Criminal Procedure 48(a) and with the consent of Defendant The Boeing Company ("Boeing" or the "Company"), and Motion to Terminate Pretrial Deadlines and Vacate the Trial Date.

2.      I have personal knowledge of the facts and circumstances described below, which primarily concern the Government's conferrals and engagement from August 15, 2024, to the present with the family members of the victims of the Lion Air Flight 610 and Ethiopian Airlines Flight 302 airplane crashes ("Families"); Boeing's airline entity customers that purchased the 737

MAX airplane ("Airline Entity Customers"); and their respective legal representatives ("counsel"). The described facts and circumstances do not encompass the entirety of the Government's conferrals and engagement with the Families and Airline Entity Customers during this time period.

## I.    **Background**

3.    I previously submitted a declaration with exhibits in support of the Government's Consolidated Response in Support of the Proposed Plea Agreement.[1] That prior declaration, which I adopt and incorporate by reference here, primarily concerns the Government's conferrals and engagement with the Families, Airline Entity Customers, and their counsel from January 1, 2024, to August 14, 2024.

4.    The Government continues to hold its considered position, articulated in the prior declaration and the brief it accompanied, on how the Government would prosecute this case if it went to trial and the attendant uncertainty.[2]

5.    The Government continues to have email addresses for all the Families and Airline Entity Customers, as well as their counsel, to the extent they are represented in this case and have informed the Government of that representation.[3]

---

[1] Declaration of Sean P. Tonolli, ECF No. 245-1 (Aug. 14, 2024) ("Gov't Plea Decl.").

[2] *Id*. at 3-6, ¶¶ 6-14; Gov't Resp. in Support of Proposed Plea Agreement, at 8-12, 34-35 ECF No. 245 (Aug. 14, 2024); *cf*. Order Rejecting Proposed Plea Agreement, at 11, ECF No. 282 (Dec. 5, 2024) (noting when rejecting the proposed plea agreement that the Court thought it "not clear what all Boeing has done to breach the Deferred Prosecution Agreement" despite the Government's Factual Basis for Breach concerning the breach); Evidentiary H'rg Tr. at 35:9-16, 36:2, 37:1-5 (Aug. 26, 2022).

[3] In all the Government's communications with the Families, the Government included their counsel.

6.     The Government continues to maintain the public website on which it has been publishing information about the case since May 3, 2022, and to update it at important junctures of the case.[4]

## II.     August 15 to December 4, 2024

7.     Briefing on the proposed plea agreement was completed on August 23, 2024,[5] and the Court issued its Order rejecting the proposed plea agreement on December 5, 2024.[6] In between those dates, the Government did not have reason to engage with the Families and Airline Entity Customers about the prosecution of the case. But the Government did engage with the Families on the issue of restitution. This followed the Government's earlier engagement with the Families, starting in June 2024, about their position on the loss they sustained from Boeing's criminal conduct.[7]

8.     Having made the decision that Boeing breached the deferred prosecution agreement ("DPA")[8], in July 2024, the Government engaged financial experts in personal economic loss from

---

[4] U.S. Department of Justice, Criminal Division, Case Page for *United States v. The Boeing Company*, *available at* https://www.justice.gov/criminal/criminal-fraud/case/united-states-v-boeing-company. Snapshots of the updated iterations of the website in 2024 are available here: http://web.archive.org/web/20240501000000*/https://www.justice.gov/criminal/criminal-fraud/case/united-states-v-boeing-company. And snapshots from 2025 are available here: http://web.archive.org/web/20250215000000*/https://www.justice.gov/criminal/criminal-fraud/case/united-states-v-boeing-company.

[5] *See* Briefing Scheduling Order, ECF No. 218 (Jul. 15, 2024).

[6] Order Rejecting Proposed Plea Agreement ("Order Rejecting Plea"), ECF No. 282 (Dec. 5, 2024).

[7] *See* Gov't Plea Declaration, at 21-22, ¶¶ 44-46.

[8] Deferred Prosecution Agreement ("DPA"), ECF No. 4 (Jan. 7, 2021); Government Notice, ECF No. 199 (May 14, 2024).

the firm Stout Risius Ross, LLC ("Stout") to collect and analyze loss information from the Families potentially relevant under the restitution statutes.[9]

9.    From July to early October 2024, the Government and Stout developed an online restitution questionnaire in English and translated it to six other languages (Amharic, Bahasa, French, German, Mandarin, and Norwegian[10]), as well as an accompanying Frequently Asked Questions document ("FAQs") to provide guidance on the questionnaire and restitution generally (also in English and translated to the six other languages).

10.    On October 9, 2024, the Government emailed a letter to the Families (i) requesting "information and records related to potential restitution claims for financial losses incurred due to Boeing's offense"; (ii) providing links to the online questionnaire in the respective seven languages; and (iii) enclosing the FAQs also in all seven languages.[11] Among other things, the letter explained that "[c]ollecting, reviewing, and analyzing the requested information and records takes a lot of time and resources. . . . Even if the Court decides not to accept the proposed plea agreement, and if Boeing is ultimately convicted of an offense through a different plea agreement or after trial, the information and records we are requesting now will be needed for restitution purposes." The letter therefore requested responses and supporting documentation to be submitted by November 15, 2024.

---

[9]  *See* https://www.stout.com/en/services/personal-economic-loss (providing an overview of Stout's personal economic loss services and prior representative matters, including "supporting both the 9/11 Victim Compensation Fund and Vaccine Injury Compensation Program").

[10] Subsequent references to translations or translators refer to these same six languages.

[11] Exhibit ("Ex.") 3, October 9, 2024 Government email and letter (with translated FAQ attachments) to Families.

11.     After several Families asked for the deadline to be extended, the Government emailed a letter to them on November 8, 2024, lifting the November 15th deadline.[12] The letter also attached electronic copies of the questionnaire in the seven languages because some Families had asked if they could submit their answers and documentation by mail in paper format.

12.     To date, the Government has received responses to the questionnaire on behalf of 168 of the 346 crash victims (49%). Of those responses, 91 were victims of the Lion Air Flight 610 crash and 77 were victims of the Ethiopian Airlines Flight 302 crash. The Government, with Stout's input, has corresponded with almost every respondent to ask specific follow-up questions and/or request additional documentation. In addition to the information submitted in response to the questionnaire and follow-up requests, the respondents collectively provided nearly 1,000 documents consisting of thousands of pages, many in foreign languages requiring translation.

13.     To date, Stout's team of 11 professionals has spent approximately 3,000 hours to conduct its work regarding restitution claims. This includes, among other things, designing the model to calculate restitution; conducting extensive research to identify the highly specific economic and jurisdictional information necessary for developing the restitution model; reviewing submissions; requesting follow-up information and documentation; and analyzing the submissions.

14.     The $444.5 million in victim compensation provided for in the non-prosecution agreement ("NPA" or the "Agreement")[13] is derived from Stout's analysis. Specifically, that amount is the sum of (i) the restitution amounts for each of the submissions supported by lost-

---

[12] Ex. 4, November 8, 2024 Government email and letter (with restitution questionnaires attached) to Families.

[13] Ex. 1, May 29, 2025 Non-Prosecution Agreement between Government and Boeing ("NPA"), at 6, ¶ 11.

income documentation, which Stout calculated using a complex, multi-input model; and (ii) the estimated restitution amounts for the remaining victims (both those with submissions lacking supporting documents, and those without submissions at all), which Stout calculated by developing country-specific average restitution amounts based on the submissions in the first group and applying those averages to the remaining victims based on their country of residence at the time of their deaths.

15.    The Government understands that the vast majority of Families have settled civil suits with Boeing, and in the collective those Families have been paid several billion dollars. The $500 million paid to the Families through the DPA Crash-Victim Beneficiaries Compensation fund,[14] and the $444.5 million that will be paid to the Families through the NPA's Crash-Victim Beneficiaries Compensation fund, are in addition to the civil settlements Boeing has already paid and any amounts the Company may be obligated to pay in the future to those remaining Families who have not yet settled. This is because the respective terms of the DPA and NPA obligate Boeing not to use the fact that any beneficiary of a crash victim seeks or receives any compensation from the Crash-Victim Beneficiaries Compensation funds to seek to preclude such beneficiary from pursuing any other lawful claim that such beneficiary might have against Boeing.[15]

16.    Accordingly, Stout did not consider in its analysis—and the restitution questionnaire did not ask for—any other compensation amounts the Families have received to date, including from the DPA's $500 million Crash-Victim Beneficiaries Compensation fund.

17.    The Government expects that if this case were to proceed to trial and Boeing was convicted, the Company could argue that it is not legally obligated to pay any restitution to the

---

[14] DPA, at 12-14, ¶¶ 13-19.

[15] *Id*. at 14, ¶ 19; NPA, at 7, ¶ 11(e).

Families, including because: (i) "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to" the Families, 18 U.S.C. § 3663(a)(1)(B)(ii); and (ii) any restitution amount to which the Families may be entitled should be offset by prior compensation amounts the Families have received to date, including the civil settlements and the DPA's $500 million Crash-Victim Beneficiaries Compensation Fund.[16]

### III.    December 5, 2024 to May 12, 2025

18.    On December 5, 2024, the Government emailed letters to the Families and Airline Entity Customers notifying them and providing a copy of the Court's decision rejecting the proposed plea agreement.[17]

19.    The December 5th letter to the Families explained that the Government would soon be holding a virtual conferral with them: "As part of the Department's efforts to evaluate potential next steps, the Department would welcome the opportunity to hear from you. We will contact you soon with a date and time for a virtual conferral. And, as always, the Department continues to welcome written submissions from you and your attorneys."[18]

20.    The December 5th letter to the Airline Entity Customers solicited their feedback as well: "the Department would welcome the opportunity to hear from your company about its views on the matter. If your company is interested in sharing its views, please let us know and we will

---

[16] *See* Boeing Response in Support of Plea Agreement ("Boeing Plea Resp."), at 33-34, ECF No. 246 (Aug. 14, 2024).

[17] Ex. 5, December 5, 2024 Government email and letter (with attachment) to Families; Ex. 6, December 5, 2024 Government email and letter (with attachment) to Airline Entity Customers.

[18] Ex. 5, at 1.

assist you in arranging to do so."[19] No Airline Entity Customer followed up with the Government to provide its views.

21.    Between December 5 and 6, 2024, the Government and counsel for the Families exchanged emails about scheduling the conferral, and agreed to hold it on December 11, 2024, from 11:00 a.m. to 1:00 p.m. Eastern Time.[20]

22.    On December 9, 2024, the Government emailed a letter to the Families formally inviting them to the December 11, 2024 conferral and providing them a WebEx link to join it virtually.[21] The letter explained that the Government would be providing translators, and invited written submissions in advance: "If you wish to submit any questions, written documents, or other materials for consideration prior to the conferral session, you can do so by emailing us…."

23.    On December 9, 2024, the Government emailed the Airline Entity Customers informing them of and welcoming their participation in the December 11, 2024 virtual conferral.[22] The Government asked any Airline Entity Customer interested in joining the conferral to contact the Government to receive the link or to otherwise share its views. No Airline Entity Customer followed up with the Government to request the link or to provide its views.

24.    On December 11, 2024, the Government held the conferral with the Families and their counsel about the Court's rejection of the proposed plea agreement and how the Government should proceed. The conferral went from approximately 11:00 a.m. to 1:30 p.m. Eastern Time (with intermittent breaks to accommodate the translators). More than approximately 90 Family members and counsel attended for at least some portion of the session. The participants were able

---

[19] Ex. 6.

[20] Ex. 7, December 5-6, 2024 email chain between Government and counsel for Families.

[21] Ex. 8, December 9, 2024 Government email and letter to Families.

[22] Ex. 9, December 9, 2024 Government email to Airline Entity Customers.

to join by video and to see and hear, and to be seen and heard by, each other and the Government participants. They also were able to and did comment and ask questions via a chat feature that was visible to all the participants. Translators were available for the participants.

25.     In attendance for the Government were the Fraud Section Chief; the Chief of the Fraud and Public Corruption Section of the USAO-NDTX; and other attorneys and staff from the Fraud Section, including the undersigned. The Fraud Section Chief spoke for the Government.

26.     One of Mr. Cassell's clients said near the start of the conferral that he was recording the meeting. This was after the Government explained the ground rules for the meeting, namely, that the Government was not waiving any of its privileges by conferring, and that the Government kindly asked that no one record the meeting. It is Department practice not to record conferrals out of respect for the privacy of victims and to encourage open discussion. The Government, however, did not excuse Mr. Cassell's client from the conferral or try to stop him from recording.

27.     The Government began by providing its preliminary views on the import of the Court's decision and the paths available to the Government, all the while explaining that the Government had not decided how to proceed and that it was important for the Government to hear the perspectives of the Families before making that decision.

28.     The Government then took questions and comments. Every Family member and counsel who wanted to speak was able to do so. The consistent position expressed by those who spoke was that the Government should go to trial and not seek a pretrial resolution that would make any concessions to Boeing.

29.     The following week, the Government made the decision to pursue another potential pre-trial resolution. The Government made this decision after carefully and in good faith

considering (i) the facts and the law; (ii) the Department's *Principles of Federal Prosecution*;[23] (iii) the professional and ethical obligations of prosecutors; as well as (iv) all of the input previously provided by the Families and their counsel to the Government and the Court.

30.    From December 2024 to May 2025, the Government and Boeing engaged on a range of possible pre-trial resolutions. The discussions were arms' length and proceeded in the normal course.

31.    The parties filed three Joint Status Reports with the Court during this time.[24] Before filing the first Status Report on January 3, 2025, the Government emailed letters to the Families and the Airline Entity Customers explaining that "[t]he parties have not reached agreement and do not expect to before January 4th, but are continuing to work in good faith toward that end. The parties will inform the Court of this in a status report filed on the public docket. If the parties ultimately do reach agreement on a revised proposed plea agreement—and there is no guarantee of that—the Department will provide you timely notice." [25]

32.    On February 6, 2025, Paul Cassell, counsel for certain of the Families, emailed the Government a letter requesting a meeting with senior Department leadership and attaching his motion objecting to the proposed plea agreement (ECF No. 234).[26] On February 10, 2025, Sanjiv

---

[23] Justice Manual ("JM") §§ 9-27.000, -28.000, *available at* https://www.justice.gov/jm/title-9-criminal.

[24] Joint Status Report, ECF No. 284 (Jan. 3, 2025); Joint Status Report, ECF No. 287 (Feb. 13, 2025); Joint Status Report, ECF No. 289 (Mar. 14, 2025).

[25] Ex. 10, January 3, 2025 Government email and letter to Families; Ex. 11, January 3, 2025 Government email and letter to Airline Entity Customers.

[26] Ex. 12, at 3, February 6-10, 2025 email chain between counsel and Government; Ex. 13, February 6, 2025 P. Cassell letter to Government.

Singh, counsel for certain other Families, emailed the Government a letter also requesting a meeting with senior Department leadership.[27]

33.    On March 26, 2025, the Government emailed letters to the Families and Airline Entity Customers notifying them of the Court's Order setting the case for trial.[28]

34.    On May 12, 2025, the parties' discussions resulted in a potential framework—but not an offer by the Government—to resolve this case through an NPA. The parties had not exchanged a draft written agreement and the Government made clear that it could not agree to proceed with an NPA until it conferred with the Families.

35.    Throughout the Government's engagement with Boeing about the possibility of a pretrial resolution, the Government collected and considered information about the current state of the Company's anti-fraud compliance and ethics program, particularly as compared to the state of the program in July 2024 when the parties proposed the plea agreement to the Court. The Government also engaged with the Federal Aviation Administration ("FAA") about the current state of the agency's oversight of Boeing. This engagement was required under Department and Criminal Division policy concerning the possible imposition of a monitor, which requires prosecutors to assess the state of a company's compliance and ethics program at the time of a

_____

[27] Ex. 12, at 1-2, February 6-10, 2025 email chain between Government and counsel for Families; Ex. 14, February 10, 2025 S. Singh letter to Government.

[28] Ex. 15, March 26, 2025 Government email and letter to Families; Ex. 16, March 26, 2025 Government email and letter to Airline Entity Customers.

potential resolution, as well as whether the company is otherwise subject to government oversight.[29]

36.     Based on its continuing engagement with Boeing and the FAA, the Government has determined that (i) Boeing has made meaningful investments and changes in its anti-fraud compliance and ethics program to address the issues the Government identified as the basis for its DPA breach determination; and (ii) the FAA has maintained, and is in position to continue to maintain, its increased oversight of Boeing in the wake of the Alaska Airlines 1282 incident on January 5, 2024.

37.     Boeing has prepared and begun executing a remediation program designed to address the findings from a special FAA audit. The FAA-approved remediation program includes specific production health metrics that senior career FAA officials review weekly. The FAA has also increased the number of in-person, full-time, air safety inspectors staffed at each major Boeing production facility. These air safety inspectors independently conduct audits, investigate whistleblower complaints received by the FAA, and validate Boeing's completion of the enhancements promised under the remediation plan. These inspectors further have free access to Boeing personnel to continuously evaluate safety and compliance, including the compliance issues that were the basis for the Government's DPA-breach determination and are an important focus area of the FAA's oversight.

---

[29] JM § 9-28.1700(A)(10), (B); U.S. Department of Justice, Criminal Division, Evaluation of Corporate Compliance Programs, at 1 (Sept. 2024), *available at* https://www.justice.gov/criminal/criminal-fraud/page/file/937501/dl?inline; Memorandum of the Head of the Criminal Division on *Selection of Monitors in Criminal Division Matters*, at 3 (May 12, 2025) ("Criminal Division Monitor Memo"), *available at* https://www.justice.gov/criminal/media/1400036/dl?inline.

38.     Beyond its engagement with the FAA, Boeing has made meaningful enhancements to its compliance program to address the core concerns underlying the Government's DPA breach finding. For example, Boeing established a compliance integration team to support and integrate the compliance and ethics program with the quality, manufacturing, and safety functions. Additionally, to better position Boeing to identify and remediate gaps in its controls over compliance and safety, Boeing has restructured and improved resourcing around its internal audit function to increase its stature and independence, all of which are essential to Boeing's ability to independently test and mitigate compliance risk.

39.     The Government has therefore determined that a monitorship—which, under Department and Criminal Division policy, prosecutors do not seek to impose for punitive purposes—is not necessary.[30] Instead, the Government has determined that Boeing must retain an independent compliance consultant empowered to make recommendations for further improvement to the anti-fraud and compliance program and required to report its findings directly to the Government. This approach strikes a careful balance between, on the one hand, the continued need to ensure and independently verify that Boeing's program improves, with, on the other hand, the meaningful compliance improvements Boeing has made since the parties proposed the plea agreement last summer and the FAA's sustained, enhanced oversight of the Company.

**IV.     <u>May 13 to May 22, 2025</u>**

40.     On May 13, 2025, the day after the parties reached the potential framework for the NPA, the Government emailed a letter to the Families to inform them that the Government would be holding a virtual conferral session on May 16, 2025, "to discuss the status of the negotiations [over a potential pretrial resolution] and to hear your views on how the Department should

---

[30] JM § 9-28.1700(B); Criminal Division Monitor Memo, at 2.

proceed."[31] The Government explained that it was following up separately with the Families' counsel to select a start time for the conferral. And the Government welcomed the Families and their counsel "to submit any questions, written documents, or other materials for consideration prior to the conferral session[.]"

41.    On May 13, 2025, the Government emailed a similar letter to the Airline Entity Customers.[32] The Government welcomed their participation in the virtual conferral on May 16, 2025, and requested that any Customer interested in joining contact the Government. No Airline Entity Customer followed up with the Government to ask to join the conferral or to provide its views.

42.    Between May 13 and 14, 2025, the Government and counsel for the Families agreed to start the conferral at 10:00 a.m. Eastern Time on May 16, 2025.[33] In confirming the start time, Paul Cassell, counsel for certain of the Families, made the following request of the Government: "If you have any materials that the lawyers or families could look at before the call to facilitate discussion, that would be great as well – as it would mean that the time could be used much more effectively."[34] There were no materials for the Government to provide because the parties had only discussed the potential framework for the NPA, not exchanged drafts of a written agreement.[35]

---

[31] Ex. 17, May 13, 2025 Government email and letter to Families.

[32] Ex. 18, May 13, 2025 Government email and letter to Airline Entity Customers.

[33] Ex. 19, at 1, May 13-14, 2025 email chain between Government and counsel for Families.

[34] *Id*. at 2.

[35] *Id*. at 1.

43.    On May 14, 2025, the Government wrote the Families to inform them of the 10:00 a.m. Eastern Time start of the conferral.[36] And on May 15, 2025, the Government provided the Families the link to join the conferral.[37]

44.    On May 16, 2025, the Government held the virtual conferral session with the Families and their counsel to tell them the status of the parties' discussions about a potential pretrial resolution, and to provide the Families and their counsel the opportunity to share their views on whether the Government should pursue the pretrial resolution or proceed to trial. The conferral went from approximately 10:00 a.m. to 12:30 p.m. Eastern Time (with a break to accommodate the translators). More than approximately 90 Family members and counsel attended for at least some portion of the session. The participants were able to join by video and to see and hear, and to be seen and heard by, each other and the Government participants. They also were able to and did comment and ask questions via a chat feature that was visible to all the participants. Translators were available for the participants.

45.    In attendance for the Government were the Fraud Section Acting Chief; the Acting U.S. Attorney for the Northern District of Texas; and other attorneys and staff from the Fraud Section, including the undersigned. The Fraud Section Acting Chief spoke for the Government.

46.    As he did at the start of the December 11, 2024 conferral, the same client of Mr. Cassell's said near the start of the conferral that he (the client) was recording the meeting. This was again after the Government explained the ground rules for the meeting. And, again, the Government did not excuse Mr. Cassell's client from the conferral or try to stop him from recording.

---

[36] Ex. 20, May 14, 2025 Government email and letter to Families.

[37] Ex. 21, May 15, 2025 Government email (and attachment) to Families.

47.     The Government delivered opening remarks from written talking points, as has been standard practice for the Government at prior conferrals. During this conferral, Mr. Cassell requested the talking points and claimed they were responsive to his email request for "any materials" the Government would be discussing. The Government declined his request as these are internal Government documents. And, in any event, Mr. Cassell has access to what the Government said through his notes and the recording his client made.

48.     The Government's opening remarks covered (i) the impact of the Court's decision to reject the proposed plea agreement on the uncertainty attendant with proceeding to trial; (ii) the parties' engagement on a possible pretrial resolution; and (iii) the tentative framework for the potential NPA, specifically:

a.     Form: The parties would enter into a two-year NPA that would impose obligations on both parties, and would require the Government to file a motion to dismiss the pending Criminal Information without prejudice, pursuant to Federal Rule of Criminal Procedure 48(a) and with Boeing's consent.

b.     Charge: If the Court granted the motion to dismiss, there would no longer be a pending charge. Boeing, however, would have to admit to a statement of facts accompanying the NPA that, as with the DPA, establishes the Company, through its former Chief Technical Pilot and his colleague, conspired to unlawfully interfere with the operations of the FAA's Aircraft Evaluation Group. If the Company failed to meet its obligations under the NPA, and assuming the Court's dismissal was without prejudice, the Government could re-file the conspiracy charge against the Company.

c. <u>Criminal monetary penalty</u>: Boeing would pay a criminal monetary penalty of $487.2 million, equivalent to the statutory maximum fine, with credit for the $243.6 million criminal monetary penalty the Company paid previously under the DPA.

d. <u>Compensation to Families</u>: Boeing would pay $444.5 million into another Crash Victims Beneficiaries Fund, which would be evenly divided by crash victim. In addressing this potential term, the Government explained the basis for the amount and the risks attendant to restitution, including that there would be no restitution if the Government failed to secure a conviction, and that even if Boeing was convicted, the Court would not be obligated to award any amount and the Company could vigorously litigate the matter.

e. <u>Investments in compliance and safety</u>: Boeing would invest $455 million in improving its compliance, safety, and quality programs.

f. <u>Compliance enhancements and reporting</u>: Boeing would continue to enhance its anti-fraud compliance and ethics program to ensure it is reasonably designed to prevent and detect violations of the U.S. fraud laws throughout its operations, including integration of the ethics and compliance program with the Company's safety and quality programs as necessary to prevent and detect violations of the U.S. fraud laws throughout its operations. Boeing would self-report to the Department on the progress of its efforts.

g. <u>Independent compliance consultant</u>: Boeing would retain an independent compliance consultant to report to the Government on Boeing's enhancements to and testing of its anti-fraud compliance and ethics program. The parameters of the consultant's role are to allow Boeing to implement self-sustained improvements to its anti-fraud program, demonstrate its capacity to self-test its own program, and remediate deficiencies, while ensuring both that the

Department has visibility into those efforts through an independent third-party and that the consultant does not encroach on the FAA's jurisdiction and oversight of the Company.

        h.    <u>Board meeting with Families</u>: Boeing's Board of Directors would be required to meet with the Families to hear directly from them about the impact of the Company's conduct, as well as the Company's compliance, safety, and quality programs.

49.    The Government then took questions and comments. Every Family member and counsel who wanted to speak was able to do so. The consistent feedback from those who chose to speak was that the Government should proceed to trial. Several Family members said they were not interested in receiving any further money from Boeing. And several Family members and counsel stated their intention to oppose a motion to dismiss. The Government committed, in the event it chose to proceed with the NPA, to support the right of the opposing Families to be heard by the Court on why a dismissal motion should be denied.

50.    Throughout the conferral session, the Government made clear that it had not decided whether to enter into the NPA or to proceed to trial, and would not make the decision until after finishing conferring with the Families. The Government welcomed the Families and counsel to provide supplemental written submissions by May 20, 2025.[38] In follow-up email correspondence, certain counsel—Mr. Cassell, Mr. Singh, and Filippo Marchino—asked if the Government would accept submissions through May 23, 2025.[39] Mindful of the Court's pretrial schedule, including the May 27, 2025 motions *in limine* deadline,[40] the Government agreed that before making its decision, it would consider any written submissions it received by 5:00 p.m.

---

[38] Ex. 22, at 9, May 13-17, 2025 email chain between Government and counsel for Families.

[39] *Id*. at 4-8.

[40] Pretrial Scheduling Order, at 6, ¶ 17(e), ECF No. 294 (Mar. 25, 2025).

Eastern Time on May 22, 2025.[41] In addition to the email correspondence with counsel about the deadline, the Government also emailed a letter to the Families informing them of the deadline.[42]

51.     On May 19, 2025, the Government held a separate conferral with Adrian Vuckovich, counsel for Family members of approximately 60 crash victims. Mr. Vuckovich was not able to attend the May 16th conferral and asked for the separate meeting. The Fraud Section Acting Chief and the undersigned participated for the Government. The Fraud Section Acting Chief provided an overview of the same points covered during the May 16th conferral. On May 22, 2025, Mr. Vuckovich informed the Government by phone that his clients do not oppose the NPA.

52.     From May 17 to 22, 2025, the Government received 14 written submissions totaling 40 pages from Family members and counsel, ranging from support for to opposition against the Agreement. (Mr. Cassell was among those who made a submission. Messrs. Singh and Marchino and their respective firms were not.) The Family members and counsel on their behalf (including Mr. Vuckovich) of over 110 crash victims advised the Government that they support the Agreement specifically, support the Department's efforts to resolve the case pre-trial more generally, or do not oppose the Agreement. Other Family members continued to advocate for the Government to go to trial and are opposed to any pre-trial resolution other than a plea by Boeing to the Information without any agreement, consistent with feedback they have shared with the Government and the Court throughout this case.

---

[41] Ex. 22, at 1, 3-4.

[42] Ex. 23, May 20, 2025 Government email and letter to Families.

53.     All of the submissions are included in a compilation exhibit, with the names and other identifying information of the Family members redacted to respect their privacy.[43] The Government carefully reviewed and considered all of the submissions before deciding how to proceed in this case.

## V.    May 23, 2025, to Present

54.     On May 23, 2025, the Government decided to and then did offer the NPA to Boeing, which the Company accepted. The Government made this decision after carefully and in good faith considering (i) the facts and the law; (ii) the Department's *Principles of Federal Prosecution*; (iii) the professional and ethical obligations of prosecutors; as well as (iv) all of the input previously provided by the Families and their counsel to the Government and the Court.

55.     That same day, and before filing the status report informing the Court of the parties' agreement on the material terms of the NPA,[44] the Government emailed a letter to the Families telling them first.[45] The Government sent a follow-up letter to the Families with the status report.[46]

56.     Also on May 23, 2025, the Government sent Boeing the draft NPA paperwork. The parties exchanged edits in the normal course, and finalized and signed the Agreement on May 29, 2025.

57.     It is the Government's judgment that the Agreement is a fair and just resolution that serves the public interest. The Agreement guarantees further accountability and substantial benefits from Boeing immediately, while avoiding the uncertainty presented by proceeding to trial.

---

[43] Ex. 24, Compilation of Family written submissions.

[44] Government Status Report and Consent Motion to Continue Motions *In Limine* Deadline, ECF No. 309 (May 23, 2025).

[45] Ex. 25, May 23, 2025 Government email and letter to Families re NPA decision.

[46] Ex. 26, May 23, 2025 Government email (with attachment) to Families re Status Report.

58.     In keeping with the Government's commitment to support the right of the objecting Families to be heard by the Court, the Government offered to confer with counsel to the Families on a briefing schedule on the motion to dismiss. The counsel who responded stated that they would wait to discuss a briefing schedule until after the Government filed the instant motion and the Agreement.[47]

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 29, 2025.

_s/ Sean P. Tonolli_
Sean P. Tonolli
Senior Deputy Chief
United States Department of Justice
Criminal Division, Fraud Section
D.C. Bar No. 503346
1400 New York Avenue, N.W.
Washington, D.C. 20005
sean.tonolli@usdoj.gov
202-514-2000

---

[47] Ex. 27, May 28, 2025 email chain between Government and counsel for Families.