**EXHIBIT 5**

| | |
|---|---|
| **From:** | Victimassistance Fraud (CRM) |
| **Subject:** | Update Regarding U.S. v. Boeing |
| **Date:** | Thursday, December 5, 2024 5:15:00 PM |
| **Attachments:** | DOJ Ltr to Crash-Victim Families 5 December.pdf |
| | Court Order Re Plea Agreement in US v Boeing.pdf |

Hello,

Attached please find a notification in the case United States v. Boeing along with the court's order published today.

Regards,

Victim Witness Unit
Victimassistance.fraud@usdoj.gov



U.S. Department of Justice

Criminal Division

---

*Fraud Section*                                                       *Washington, D.C. 20530*

December 5, 2024

U.S. Department of Justice
Criminal Division, Fraud Section
10th & Constitution Avenue, NW
Bond Building
Washington, DC 20530

Phone: 1-888-549-3945
Fax: (202) 514 3708
Email: victimassistance.fraud@usdoj.gov

        Re:    *United States v. The Boeing Company*
                 Court Docket 4:21-cr-005-O (N.D. Tex.)

To Whom it May Concern:

      We are contacting you because you have been determined to be a crime victim pursuant to a court order dated October 21, 2022, in *United States v. The Boeing Company*, a federal criminal case pending in the United States District Court for the Northern District of Texas. This case is being jointly handled by the U.S. Department of Justice's Criminal Division, Fraud Section, and the U.S. Attorney's Office for the Northern District of Texas (collectively, the "Government" or "Department"). Crime victims are entitled to certain rights and services, as described further in this letter. As a victim witness professional, my role is to assist you with information and services during the pendency of the above-captioned case.

      We are writing to update you regarding the proposed plea agreement the parties presented to the Court on July 24, 2024. On December 5, 2024, the Court issued an Order rejecting the proposed plea agreement. A copy of the Order is enclosed with this letter. The Court has directed the parties to meet and confer and to thereafter "provide the Court with an update on how they plan to proceed in this matter no later than thirty days from the date of th[e] order," that is, Saturday, January 4, 2025.

      As part of the Department's efforts to evaluate potential next steps, the Department would welcome the opportunity to hear from you. We will contact you soon with a date and time for a virtual conferral. And, as always, the Department continues to welcome written submissions from you and your attorneys. Please e-mail any submissions to victimassistance.fraud@usdoj.gov.

**Additional Information**

Because charges have been filed in this case in federal court, victims of the charges filed are entitled to the following rights, according to CVRA, Title 18, United States Code, Section 3771: (1) The right to be reasonably protected from the accused; (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused; (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding; (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding; (5) The reasonable right to confer with the attorney for the Government in the case; (6) The right to full and timely restitution as provided in law; (7) The right to proceedings free from unreasonable delay; (8) The right to be treated with fairness and with respect for the victim's dignity and privacy; (9) The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement; and (10) The right to be informed of the rights under this section and the services described in the Victims' Rights and Restitution Act of 1990 (34 U.S.C. § 20141(c)) and provided contact information for the Office of the Victims' Rights Ombudsman of the Department of Justice. Victims may seek the advice of an attorney with respect to these rights.

In addition, a victim of a federal crime is entitled to services under the Victims' Rights and Restitution Act (VRRA), including notification of court events. For further details, please refer to Title 34, United States Code, Section 20141 or the VRRA link posted at https://www.notify.usdoj.gov.

We will continue to provide you with notifications and services unless you tell us not to. We will make our best efforts to ensure you are provided the rights and services to which you are entitled. You may contact the Victim/Witness Coordinator at the office listed above if you have questions about the progress of your case, your rights or the services to which you are entitled, or how you can assert them during the proceedings. If you believe that a Justice Department employee has not provided you with these rights, you may file a complaint with the Justice Department's Victims' Rights Ombudsman. For more information, go to http://www.justice.gov/usao/resources/crime-victims-rights-ombudsman. If you have questions about filing a complaint against an employee, you may contact the Ombudsman by email at usaeo.VictimOmbudsman@usdoj.gov. Questions concerning this case should be directed to the office listed above.

While our office cannot act as your attorney or provide you with legal advice, you can seek the advice of an attorney with respect to the rights above or other related legal matters.

It is important to keep in mind that the defendant is presumed innocent until proven guilty and that presumption requires both the Court and our office to take certain steps to ensure that justice is served.

If you want to inform the prosecutor of your views regarding any other aspect of the case, please contact us and we will put you in touch with the prosecutor.

      Because of the Court's schedule, hearing dates could change on very short notice. If you plan on attending a hearing, you may want to call or email our office to confirm the date and time.

      If you have any questions about this notice or want to talk to us directly, please call us toll-free at 1-888-549-3945 or email us at victimassistance.fraud@usdoj.gov.

                                          Sincerely,
                                          Victim-Witness Unit
                                          Fraud Section, Criminal Division
                                          Department of Justice

encl. (Court's December 5, 2024 Order)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Criminal Action No. 4:21-CR-5-O |
| THE BOEING COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Years after the catastrophic Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 crashes and resulting 346 deaths, the United States and The Boeing Company ("Boeing") have now reached a plea agreement, which they urge the Court to accept. Among the Court's priorities at this point is to ensure Boeing adheres to an ethics and anti-fraud compliance program overseen by an independent monitor during Boeing's probation. As explained below, the plea agreement requires the parties to consider race when hiring the independent monitor. Additionally, the plea agreement marginalizes the Court in the selection and monitoring of the independent monitor. These provisions are inappropriate and against the public interest.

The parties' plea agreement is governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.[1] A number of victims' families have objected to the plea agreement and argue it should be rejected for several reasons.[2] The Court held a hearing to permit argument on whether

---

[1] *See* Proposed Plea Agreement, ECF No. 221-1.
[2] *See* ECF Nos. 232, 233, 234, 235 and 236. Rini Eka A. Soegiyono, et al. (ECF Nos. 238 and 255) and the Manfredi Family (ECF Nos. 236 and 256) are additional family members joined under Naoise Connolly Ryan, et al.

1

to accept or reject the plea agreement and received supplemental briefing.[3] For the following reasons, the Court **REJECTS** the plea agreement.

## I. LEGAL STANDARD

If a court accepts a plea agreement made under Rule 11(c)(1)(C), it must impose the stipulated sentence. FED. R. CRIM. P. 11(c)(4). A district court has broad discretion to accept or reject a plea agreement under Rule 11(c)(1)(C). *United States v. Smith*, 417 F.3d 483, 487 (5th Cir. 2005). A conclusion that a sentence would be "one the judge deems inappropriate" is a sufficient basis to reject a plea agreement, provided the judge exercises discretion when evaluating it. *United States v. BP Prods. N. Am. Inc.*, 610 F. Supp. 2d 655, 674 (S.D. Tex. 2009) (citation omitted). This includes when a court determines a sentence is too lenient. *Smith*, 417 F.3d at 487. A court may also reject a plea agreement if it is "against the public interest." *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977).

If the Court decides to reject a plea agreement, it must first "inform the parties that the [C]ourt rejects the plea agreement." FED. R. CRIM. P. 11(c)(5). Second, the Court must "advise the defendant personally that the [C]ourt is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea." *Id.* Finally, the Court must "advise the defendant personally that if the plea is not withdrawn, the [C]ourt may dispose of the case less favorably toward the defendant than the plea agreement contemplated." *Id.*

## II. ANALYSIS

The parties have agreed to an independent compliance monitor in the plea agreement. In general terms, the monitor will ensure Boeing implements a program designed to prevent and detect violations of U.S. fraud laws, and to ensure Boeing integrates this program throughout the

---

[3] *See* Min. Entry, Oct. 11, 2024, ECF No. 273.

2

company. The plea agreement provides that the retention of an independent compliance monitor is a special condition of probation, meaning if Boeing fails to retain the monitor, it will violate its probation. But the plea agreement prohibits imposing as a condition of probation a requirement for Boeing to comply with the monitor's anti-fraud recommendations. Additionally, the independent monitor is selected by and reports to the Government, not the Court. Moreover, Boeing will have the opportunity to prevent the hiring of one of the six monitor candidates chosen by the Government.[4] And finally, the Government will select the independent monitor "in keeping with the Department's commitment to diversity and inclusion."[5]

### A. Numerous Victims' Families Oppose the Plea Agreement's Compliance-Monitor Provisions.

The victims' families opposing the plea agreement take issue with the process for selecting the monitor and with not requiring, as a condition of its probation, Boeing's compliance with the monitor's anti-fraud recommendations.[6] They argue, in essence, that the Government has monitored Boeing since the case was filed and yet failed to ensure Boeing's compliance. Because of this failure, they contend the monitor should be selected by and report to the Court to guarantee compliance.[7]

The Government argues there should be no concern with the independent-monitor provisions because of its "proven track record of effective oversight."[8] The Government maintains its "extensive monitorship experience" will aid Boeing and the Government in navigating the

---

[4] Proposed Plea Agreement, ¶ 33, ECF No. 221-1.
[5] *Id.*
[6] Naoise Connolly Ryan, et al. Mot. 35–40, ECF No. 234; Arfiyandi, et al. Mot. 18–19, ECF No. 233; *see also* Manfredi Family Mot., ECF No. 236 (joining Naoise Connolly Ryan, et al.'s Motion); Rini Eka A. Soegiyono, et al. Mot., ECF No. 238 (same).
[7] Naoise Connolly Ryan, et al. Mot. 37–40, ECF No. 234; Arfiyandi, et al. Mot. 18–19, ECF No. 233.
[8] Gov't Resp. 41, ECF No. 245.

monitorship and ensure the monitor's mandate is carried out effectively in the instant case.[9] Further, because compliance with the monitor is not a condition of probation, the Government—not the probation office—will ensure Boeing's compliance with the anti-fraud recommendations, and this will preserve the probation department's resources.[10]

Boeing does not address the objections to the selection of the monitor or the failure to make compliance with the recommendations a condition of probation. It argues instead that the Government has made significant progress to date.[11] It also contends that the scope of the monitor's authority must be focused on anti-fraud efforts and not interfere with the mandate of the Federal Aviation Administration.[12]

### B. The Plea Agreement's Compliance-Monitor Provisions are Against the Public Interest.

#### 1. Diversity and Inclusion

As with many of the plea agreement's other provisions, the victims' families strongly oppose the plea agreement's compliance-monitor requirements.[13] Among other reasons, the victims' families argue the Court should reject the plea agreement because monitor selections will be made "in keeping with the Department's commitment to *diversity* and *inclusion*."[14] After listening to arguments on this issue at the October 11, 2024, hearing, the Court requested the Government and Boeing file supplemental briefing to explain how this specific provision furthers anti-fraud and ethics compliance and how it will practically be applied to the monitor-selection process. The briefing was telling.

---

[9] *Id.* at 41–42.
[10] Hr'g Tr. at 92:19–22, ECF No. 274.
[11] Boeing Resp. 27, ECF No. 246.
[12] *Id.* at 25.
[13] Naoise Connolly Ryan, et al. Mot. 35–40, ECF No. 234.
[14] *Id.* at 37 (emphasis added) (quoting Proposed Plea Agreement, ¶ 33, ECF No. 221-1).

The Court's diversity-and-inclusion discussion focuses on the Government's supplemental briefing rather than Boeing's because the plea agreement tasks the Government with identifying the independent monitor Boeing will hire. But before turning to the Government's briefing, the Court briefly examines Boeing's briefing and internal diversity, equity, and inclusion ("DEI") policies insofar as the plea agreement authorizes it to participate in who will be hired as the monitor.

### a. Boeing's DEI Policies

Boeing maintains that it will defer to the Government's commitment to diversity and inclusion and that DEI principles will not significantly affect Boeing's role in the monitor process.[15] As to its specific policies, Boeing confirms that even though it is committed to DEI goals, it does not compromise merit or talent to achieve these goals.[16] That said, Boeing's website, until *very recently*, highlighted the company's "set of aspirations" it will strive to achieve by 2025 "[t]o advance equity and diversity and build a culture of inclusion."[17] These "aspirations" included racial quotas, such as Boeing attempting to "[i]ncrease the Black representation rate in the U.S. by 20%" and "[c]lose representation gaps for historically underrepresented groups."[18] And, Boeing stated that it tied executive compensation to achieving DEI goals.[19]

---

[15] Boeing Suppl. Br. 2, ECF No. 279.
[16] *Id.* at 3.
[17] Before its recent changes, Boeing's previous website boasted these aspirations. *See Global Equity, Diversity & Inclusion*, BOEING, https://web.archive.org/web/20241005094602/https://www.boeing.com/sustainability/diversity-and-inclusion#Commitment.
[18] *Id.*
[19] *Global Equity, Diversity & Inclusion 2023 Report*, BOEING, 2 (2023), https://www.boeing.com/content/dam/boeing/boeingdotcom/principles/diversity-and-inclusion/assets/pdf/Boeing_GEDI_Report_FINAL.pdf ("[F]or the first time in our company's history, we tied incentive compensation to inclusion.").

Notably, after the Court issued its Order requiring supplemental briefing, Boeing removed these goals and aspirations from its website.[20] Despite these revisions to its website, Boeing did not abandon its DEI commitments in its latest briefing to the Court.[21] Policies like Boeing's have been considered evidence of discrimination in Title VII cases. *See Duvall v. Novant Health, Inc.*, 95 F.4th 778, 791 (4th Cir. 2024) (concluding that there was sufficient evidence of discrimination, including "a substantial [diversity and inclusion] initiative that called for remaking [the company's] workforce to reflect a different racial and gender makeup"). Accordingly, based on Boeing's supplemental briefing and its policies, the Court is concerned Boeing will exercise its strike of one of the Government's six chosen monitor candidates in a discriminatory manner and with racial considerations.

### b. The Government's DEI Policies

Turning to the Government's policies, it maintains at the outset that its monitor-selection process "will be open to all qualified candidates" and will be "based entirely on merit."[22] The Government then walks through the numerous historical documents it asserts are relevant to the instant plea agreement's diversity-and-inclusion provision.[23] First, it provides that in March 2008, then Acting Deputy Attorney General Craig Morford issued a memo ("Morford Memo") stating in part that a monitor "must be selected based on the merits."[24] The Morford Memo also explained the monitor-selection process must "(1) select a highly qualified and respected person or entity

---

[20] *Compare Global Equity, Diversity & Inclusion*, BOEING, https://web.archive.org/web/20241005094602/ https://www.boeing.com/sustainability/diversity-and-inclusion#Commitment *with Global Equity, Diversity & Inclusion*, BOEING, https://www.boeing.com/sustainability/diversity-and-inclusion #Commitment (last visited Nov. 27, 2024).
[21] Boeing Suppl. Br. 2–3, ECF No. 279.
[22] Gov't Suppl. Br. 1–2, ECF No. 278.
[23] *Id.* at 2–8.
[24] *Id.* at 2; *Memorandum for Heads of Department Components United States Attorneys*, U.S. DEP'T OF JUST., 3 (2008), https://www.justice.gov/sites/default/files/dag/legacy/2008/03/20/morford-useof monitorsmemo-03072008.pdf.

based on suitability for the assignment and all of the circumstances; (2) avoid potential and actual conflicts of interests, and (3) otherwise instill public confidence by implementing the steps set forth in this Principle."[25] The Government maintains the Morford Memo essentially pressured the Department of Justice ("DOJ") to "cast a wider net when seeking qualified candidates to serve as monitors."[26] "Diversity" and "inclusion" are not mentioned in this Memo.

A decade later, DOJ's Criminal Division entered into a deferred prosecution agreement with a different corporate defendant that for the first time required monitor selections to adhere to DOJ's "commitment to diversity and inclusion."[27] In its briefing, the Government admits it is unaware of the specific policy that led to the inclusion of this sentence.[28] Six months later, then Criminal Division Assistant Attorney General Brian Benczkowski published a memorandum ("Benczkowski Memo") supplementing the Morford Memo.[29] Specifically, as to the monitor-selection process, the Benczkowski Memo articulated that "a monitor must be selected based on the unique facts and circumstances of each matter and the merits of the individual candidate."[30] Like the Morford Memo, the words "diversity" and "inclusion" were not mentioned in the Benczkowski Memo.

According to the Government though, the above-mentioned documents led to DOJ's 2023 Justice Manual Updates.[31] Specific to the monitor-selection process, DOJ clarified that "[t]he

---

[25] *Id.*
[26] Gov't Suppl. Br. 3, ECF No. 278.
[27] *Id.*
[28] *Id.* at 4 ("The Government is unaware of any specific policy in effect in 2018 that required the Criminal Division to include this sentence.").
[29] *Id.*; *Memorandum from the Assistant Attorney General, Criminal Division, on the Selection of Monitors in Criminal Division Matters*, U.S. DEP'T OF JUST., 1 (2018), https://www.justice.gov/opa/speech/file/1100531/dl ("This memorandum supplements the guidance provided by the [Morford Memo].").
[30] *Memorandum from the Assistant Attorney General*, *supra* note 29, at 4.
[31] Gov't Suppl. Br. 5, ECF No. 278.

selection process must be transparent, merit-based, and conducted in a manner free from conflicts of interest."[32] Further, "[m]onitor selections shall be made in keeping with the Department's commitment to *diversity* and *inclusion*, and prosecutors should consider monitors from a *diverse* set of backgrounds."[33] This language has remained unchanged since these 2023 updates.[34] Contemporaneously, DOJ's Criminal Division published an updated policy clarifying certain aspects of the monitor-selection process.[35] One of these clarifications confirmed that "monitor selections are and will be made in keeping with the Department's commitment to *diversity*, *equity*, and *inclusion*."[36] The 2023 Criminal Division Policy also added that "a monitor must be selected based on the unique facts and circumstances of each matter and the merits of the individual candidate."[37]

      The Government maintains the plea agreement with Boeing "adopts a monitor-selection process that adheres to the Justice Manual and the 2023 Criminal Division Policy."[38] The Government confirms that the selection process "is broadly inclusive, fair, and free from favoritism and preconceptions of who should serve."[39] In the specific context of the monitor-selection process, the Government asserts "'diversity' encompasses the Department's commitment to considering the many ways that an individual candidate can demonstrate his or her unique abilities, experiences, and qualifications as a member of the monitor candidate pool—including with a professional background other than as a former Department official."[40] Likewise, "'inclusion'

---

[32] U.S. Dep't of Just., Just. Manual § 9-28.1720 (2023).
[33] *Id.* (emphasis added).
[34] Gov't Suppl. Br. 6, ECF No. 278.
[35] *Id.*; *Revised Memorandum on Selection of Monitors in Criminal Division Matters*, U.S. DEP'T OF JUST., 1 (2023), https://www.justice.gov/criminal/criminal-fraud/file/1100366/dl.
[36] *Revised Memorandum*, *supra* note 35, at 2 (emphasis added).
[37] *Id.* at 5.
[38] Gov't Suppl. Br. 7, ECF No. 278.
[39] *Id.* at 8.
[40] *Id.* at 10.

reflects the Department's openness to how these various abilities, experiences, and qualifications may inform the candidate's capacity to serve effectively as the monitor of Boeing's compliance and ethics program."[41]

Critically though, the plea agreement does not define the terms "diversity" and "inclusion."[42] For that, the Government directs the Court to a 2021 Executive Order to clarify the meaning of these terms.[43] The stated purpose of this Executive Order was to "further advance equity within the Federal Government" and "cultivate a workforce that draws from the full diversity of the Nation."[44] The Executive Order defined "diversity" as "the practice of including the many communities, identities, *races*, ethnicities, backgrounds, abilities, cultures, and beliefs of the American people, including underserved communities."[45] Similarly, "'inclusion' means the recognition, appreciation, and use of the talents and skills of employees of all backgrounds."[46]

The Court is concerned with the Government's shifting and contradictory explanations of how the plea agreement's diversity-and-inclusion provision will practically operate in this case. While the Government assures the Court that the Government will *consider* all possible monitors (*i.e.*, all backgrounds, etc.)[47] but will *choose* a monitor solely based on merit and talent,[48] the Court is skeptical of this assertion.

It seems fundamentally inconsistent for the Government to say "in keeping with the Department's commitment to diversity and inclusion" means that the Government will not consider race. Otherwise, why would the Government represent to the Court in its briefing that the

---

[41] *Id.*
[42] *Id.* at 9.
[43] *Id.* at 8.
[44] Exec. Order No. 14035, 86 Fed. Reg. 34593, 34593 (June 25, 2021).
[45] *Id.* at 34594 (emphasis added).
[46] *Id.*
[47] Gov't Suppl. Br. 7–8, ECF No. 278.
[48] *Id.* at 8.

term "diversity" in the plea agreement is "generally consistent" with the 2021 Executive Order's definition, which explicitly *includes* race?[49] Indeed, the Government must adhere to this Executive Order, and, consequently, that definition of "diversity" controls what is required by the plea agreement.

The Executive Order and policies outlined above do more than simply prohibit discrimination on the basis of race because current law already does that. *See, e.g.*, 42 U.S.C. §§ 2000e, 1981; U.S. CONST. amend. XIV § 1. Instead, the Executive Order and the policies analyzed above appear to encourage consideration of race in hiring. And a fair reading of the Executive Order's text, the history of DOJ's diversity-and-inclusion requirement, and the parties' DEI policies—taken in totality—requires the Government to prioritize, among other things, race as part of the corporate monitor-selection process in furtherance of the goal to turn the federal workforce into "a model for diversity."[50] Despite the Government's efforts to divorce the Executive Order from the plea agreement, the Court is not convinced in light of the foregoing that the Government *will not* choose a monitor without race-based considerations and thus will *not* act in a non-discriminatory manner.

In a case of this magnitude, it is in the utmost interest of justice that the public is confident this monitor selection is done based solely on competency. The parties' DEI efforts only serve to undermine this confidence in the Government and Boeing's ethics and anti-fraud efforts. Accordingly, the diversity-and-inclusion provision renders the plea agreement against the public interest.

---

[49] *Id.* at 9; *see* Exec. Order No. 14035, 86 Fed. Reg. 34593, 34594 (June 25, 2021) ("The term 'diversity' means the practice of including the many communities, identities, *races, ethnicities*, backgrounds, abilities, cultures, and beliefs of the American people." (emphasis added)).
[50] Exec. Order No. 14035, 86 Fed. Reg. 34593, 34593 (June 25, 2021).

10

## 2. Marginalization of the Court

The Court also rejects the plea agreement because its compliance-monitor provisions erroneously marginalize the Court. Title 18 U.S.C. § 3553(2)(A) requires district courts to impose a sentence that, among other things, promotes respect for the law. In cases where a sentence of probation is imposed, 18 U.S.C. § 3563 authorizes conditions of probation so long as those conditions are reasonably related to factors identified in § 3553(a). The parties recognize that retention of an independent anti-fraud monitor is an appropriate condition of probation in this case. Compliance with the independent monitor's recommendation therefore would necessarily be an appropriate condition of probation under the sentencing authorities.

The plea agreement's process for selecting the anti-fraud monitor, including prohibiting the Court from considering violations of the monitor's anti-fraud recommendations, improperly marginalizes the Court. The Government has monitored Boeing for three years now. It is not clear what all Boeing has done to breach the Deferred Prosecution Agreement ("DPA"). The victims assert the "Government was forced to find that Boeing violated [the DPA] after the door fell off the Alaska airplane."[51] Boeing hints that it may have legitimate arguments in opposition to the Government's determination of breach.[52] Regardless, taken as true that Boeing breached the DPA, it is fair to say the Government's attempt to ensure compliance has failed.

At this point, the public interest requires the Court to step in. Marginalizing the Court in the selection and monitoring of the independent monitor as the plea agreement does undermines public confidence in Boeing's probation, fails to promote respect for the law, and is therefore not in the public interest. Accordingly, the Court cannot accept the plea agreement.

---

[51] Hr'g Tr. at 58:11–13, ECF No. 274. Boeing also acknowledged the Government's "heightened oversight . . . in the aftermath of the Alaska 1282 accident." Hr'g Tr. at 25:16–17, ECF No. 274.
[52] *See* Boeing Resp. 4, 9, 11, ECF No. 246; Hr'g Tr. at 101–02, ECF No. 274.

### III. CONCLUSION

For the foregoing reasons, the Court **REJECTS** the plea agreement (ECF No. 221-1). In light of this decision, the parties are **ORDERED** to meet and confer and provide the Court with an update on how they plan to proceed in this matter **no later than thirty days from the date of this order**.

**SO ORDERED** this **5th day** of **December, 2024**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE