# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF TEXAS
Fort Worth Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     4:21-cr-00005-O |
| | ) |
| THE BOEING COMPANY | ) |
| | ) |
| Defendant. | ) |
| | ) |

**GOVERNMENT'S CONSOLIDATED REPLY IN SUPPORT OF ITS RULE 48(a)
MOTION TO DISMISS THE INFORMATION AND RESPONSE IN OPPOSITION TO
MOTION FOR APPOINTMENT OF A SPECIAL PROSECUTOR**

LORINDA I. LARYEA
Acting Chief
Fraud Section, Criminal Division
United States Department of Justice

NANCY E. LARSON
Acting United States Attorney
Northern District of Texas

By: *s/ Sean P. Tonolli*
Sean P. Tonolli
Acting Principal Deputy Chief
D.C. Bar No. 503346
sean.tonolli@usdoj.gov

By: *s/ Chad E. Meacham*
Chad E. Meacham
Assistant United States Attorney
Texas Bar No. 00784584
chad.meacham@usdoj.gov

United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
202-514-2000

United States Attorney's Office
Northern District of Texas
801 Cherry Street, 17th Floor
Fort Worth, TX 76102
817-252-5200

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................. 3

III.  ARGUMENT ...................................................................................................... 5

    A.    The Court Should Dismiss the Information Without Prejudice .......................... 5

        1.    The Government Has Moved to Dismiss Based on Its Good-Faith Belief That Dismissal Best Serves the Public Interest ........................................ 5

        2.    The NPA's No-Further-Prosecution Clause Is Necessary and Appropriate ............. 7

        3.    The Statute of Limitations Has Not Run and Does Not Bar a Further Prosecution ........................................................................................ 9

        4.    The Court's Rejection of the Monitor Provision Is Not Law of the Case ............. 12

        5.    The Penalty Is Based on the Government's Assessment of the Facts and the Law ............................................................................................... 13

        6.    The Compensation Fund Is Fair, Appropriate, and Guaranteed ........................... 15

        7.    The Government's Assessment of Litigation Risk Is Not Pretextual ................... 17

    B.    This Court Should Not Appoint a Special Prosecutor .................................... 19

        1.    The CVRA Does Not Allow Crime Victims to Move for a Special Prosecutor ..... 19

        2.    Appointing a Special Prosecutor Would Violate the Constitutional Separation of Powers ........................................................................... 22

IV.   CONCLUSION ................................................................................................. 25

i

# TABLE OF AUTHORITIES

## Cases

*Auffmordt v. Hedden,* 137 U.S. 310 (1890) ..................................................................... 25

*In re Dean*, 527 F.3d 391 (5th Cir. 2008) ....................................................................... 9

*In re Ryan*, 88 F.4th 614 (5th Cir. 2023) ............................................................... passim

*In re United States*, 345 F.3d 450 (7th Cir. 2003) .................................................... 8, 23

*In re Wild*, 994 F.3d 1244 (11th Cir. 2021) ............................................................ 20, 21

*ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) ........................ 24

*Morrison v. Olson*, 487 U.S. 654 (1988) ................................................................. 22, 23

*Murthy v. Missouri*, 603 U.S. 43 (2024) ...................................................................... 21

*Powell v. United States*, 352 F.2d 705 (D.C. Cir. 1965) ............................................. 10

*Trump v. United States*, 603 U.S. 593 (2024) ......................................................... 23, 25

*United States v. Adams*, 24-cr-556 (DEH), 2025 WL 978572 (S.D.N.Y. Apr. 2, 2025) ........... 8, 23

*United States v. Arky*, 938 F.2d 579 (5th Cir. 1991) .................................................... 11

*United States v. Cowan*, 396 F. Supp. 803 (N.D. Tex. 1974) ....................................... 24

*United States v. Cowan,* 524 F.2d 504 (5th Cir. 1975) ...................................... 6, 7, 8, 24

*United States v. Cox*, 342 F.2d 167 (5th Cir. 1965) ................................................ 21, 23

*United States v. Davis*, 285 F.3d 378 (5th Cir. 2002) .......................................... 20, 22, 24

*United States v. Davis*, 533 F.2d 921 (5th Cir. 1976) ................................................... 10

*United States v. Donziger,* 38 F.4th 290 (2d Cir. 2022) ............................................... 25

*United States v. Germaine*, 99 U.S. 508 (1879) .......................................................... 25

*United States v. Hamm*, 659 F.2d 624 (5th Cir. Unit A 1981) ............................... 3, 5, 8

*United States v. Manges*, 110 F.3d 1162 (5th Cir. 1997) ............................................. 10

*United States v. Nixon*, 418 U.S. 683 (1974) .............................................................. 22

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ................................... 23

*United States v. Reyes*, 945 F.2d 862 (5th Cir. 1991).................................................................. 25

*United States v. Rubin*, 558 F. Supp. 2d 411 (E.D.N.Y. 2008)...................................................... 20

*United States v. Salinas*, 693 F.2d 348 (5th Cir. 1982) ................................................................. 6

*United States v. Schmick*, 904 F.2d 936 (5th Cir. 1990)............................................................... 10

*United States v. Spector*, 55 F.3d 22 (1st Cir. 1995) ....................................................................11

*United States v. Webster*, 127 F.4th 318 (11th Cir. 2025) ............................................................ 10

*United States v. Welborn*, 849 F.2d 980 (5th Cir. 1988)................................................................. 5

*Wayte v. United States*, 470 U.S. 598 (1985) .............................................................................. 22

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) ............................... 22, 23

**Statutes**

18 U.S.C. § 3282......................................................................................................................11

18 U.S.C. § 3282(a) ................................................................................................................. 10

18 U.S.C. § 3571(d) ................................................................................................................. 14

18 U.S.C. § 3663A(c)(3)(B) .................................................................................................... 17

18 U.S.C. § 371..........................................................................................................10, 11, 14

18 U.S.C. § 3771 ........................................................................................................................ 8

18 U.S.C. § 3771 (d)(1) .......................................................................................................... 20

18 U.S.C. § 3771(a) ........................................................................................................... 20, 21

18 U.S.C. § 3771(d)(3) ....................................................................................................... 20, 21

18 U.S.C. § 3771(d)(6) .................................................................................................... 6, 20, 21

28 U.S.C. § 1651(a) ................................................................................................................ 24

31 U.S.C. § 3730.................................................................................................................... 25

**Constitutional Provisions**

U.S. Const. art. II, § 1 ............................................................................................................. 22

U.S. Const. art. II, § 3 ............................................................................................................. 22

**Other Authorities**

May 30, 2024 FAA Press Release, *FAA Continues to Hold Boeing Accountable for Implementing Safety and Production Quality Fixes*, *available at* https://www.faa.gov/newsroom/faa-continues-hold-boeing-accountable-implementing-safety-and-production-quality-fixes .........12

**Rules**

Fed. R. Crim. P. 11(c)(1)(C) ........................................................................................ 13

Fed. R. Crim. P. 48(a) ........................................................................................ passim

## I.    INTRODUCTION

The United States of America (the "Government" or the "Department") respectfully submits this consolidated reply in support of its motion to dismiss the pending Information without prejudice and in opposition to the motion for appointment of a special prosecutor.[1] The families who filed the latter motion, represented by Mr. Singh, have joined the arguments of the families represented by Mr. Cassell in opposition to the Government's motion to dismiss.[2] Another family joins both sets of arguments.[3] Together, these filings represent the views of families of 29 crash victims (the "Objecting Families").[4] Separately, Mr. Vuckovich has filed a response on behalf of 66 families that is not opposed to dismissal but asks the Court to require Defendant The Boeing Company ("Boeing" or the "Company") to pay an additional amount of compensation to certain families of the crash victims of Lion Air Flight 610 (ECF No. 319).[5] Finally, other families have also provided views to the Government in writing—from full support for the non-prosecution agreement ("NPA" or "Agreement") and dismissal, to total opposition—which are attached as exhibits to this filing and are in addition to those previously submitted to the Court.[6]

---

[1] Motion for Appointment of Special Prosecutor, ECF No. 321 ("Singh Br.").

[2] Objection and Memorandum of Recognized Crime Victims' Representatives Naoise Connolly Ryan, et al. Requesting that the Court Deny the Government's Motion to Dismiss, ECF No. 318 ("Cassell Br."); Singh Br. at 4.

[3] Amended Notice of Joinder By Manfredi Family Members, ECF No. 323.

[4] Mr. Cassell represents 13 families, Mr. Singh 15 families, and Mr. Marchino one family. *See* ECF No. 328 (notifying the Court that two of Mr. Cassell's now former clients have withdrawn their support for the opposition to the motion to dismiss). Mr. Cassell states that "[m]any other family members also support" the position of his remaining clients, but does not identify or quantify them. Cassell Br. at 1 n.1.

[5] Certain Crime Victims' Response to Rule 48(a) Motion to Dismiss Criminal Charges Against the Boeing Company Without Prejudice, ECF No. 319 ("Vuckovich Br.").

[6] *See generally* Exhibit 2 (compilation of written submissions from families the Government received between May 23, 2025, and the present). The Government has redacted the names of those families who did not affirmatively agree for their names to be included on the public docket.

The families continue to express a wide range of views, reflecting the complexity and sensitivities of this case. Many families who support or do not oppose the Government's decision have offered thoughtful, heartfelt reasons for doing so.[7] As do the Objecting Families, who have reiterated many of the same objections they raised about the proposed plea agreement (and before that, the deferred prosecution agreement), but who focus most of their criticism on what they call the "no-further-prosecution" provision of the Agreement.[8] That clause reflects the essence of the agreement: the Government's decision not to prosecute Boeing in exchange for the Company paying and investing more than $1.1 billion in penalties, victim compensation, and compliance, safety, and quality improvements; enhancing its anti-fraud compliance program; retaining an independent compliance consultant; and arranging a face-to-face meeting between its Board of Directors and the families. The Objecting Families take issue with the Government making the considered judgment not to prosecute before the Court ruled on the pending motion to dismiss.

Unlike in the guilty plea context, the Government did not need court approval to make the decision to end the prosecution and enter into the NPA; the Constitution reserves to the Executive Branch the power to decide whether to bring or maintain a prosecution. That core function is distinct from the Court's limited role under Rule 48(a), which is not to compel the Government to

---

[7] *E.g.*, *id.* at 3 (". . . I agree and support the Department of Justice's motion. In my opinion, it is better for this case to be resolved immediately without having to wait too long. The longer this case goes on, the longer our suffering will be remembering the loss of a loved one. My children are still small (currently 10 and 6 years old), I have to raise them without a father's role beside them. What I want is for them to get a guarantee of a good, sufficient, and happy future. So I hope that Boeing Company can provide a guarantee to me and my children by providing full compensation or the maximum fine that we can accept. It is hard for me to let go of this case, I want Boeing Company to get the punishment that is appropriate for this case, but I also want the best for me and my children. Let us try to open a new page without having to continue trauma considering every notification about the case that is currently underway in the American court.").

[8] Cassell Br. at 6-21; May 29, 2025 Non-Prosecution Agreement between Government and Boeing ("NPA"), ECF No. 312-1, at 10-11, ¶ 22.

proceed with a prosecution but rather to assess whether dismissal of a charging instrument is being sought in bad faith, as opposed to being sought based on the Government's weighing of the public interest. And even if the NPA's no-further-prosecution clause could raise concerns where the Government has acted in bad faith and a court denies a Rule 48(a) motion to dismiss, those concerns are illusory here because the Government has articulated its good-faith view.

The Government has explained its rationale for dismissal in a sworn declaration and supporting briefing. Nothing in the Objecting Families' filings shows any improper motive—let alone the kind of bad faith that would warrant denying dismissal, such as bribery or animus toward victims. *See United States v. Hamm*, 659 F.2d 624, 628-29 (5th Cir. Unit A 1981) (en banc). Instead, the Objecting Families ask the Court to displace the Department's judgment on a host of issues, including litigation risk, the benefits of a public trial, the necessity of a monitorship, and whether guaranteed compensation is a fair and effective substitute for the uncertain and prolonged restitution process. That is not how Rule 48(a) works. No appellate court has endorsed the approach they advocate—and certainly none has upheld the denial of a consent motion to dismiss on such grounds. Their further request for the Court to appoint a special prosecutor, whether now or at a later date, is even more untethered from law and precedent.

The Court should dismiss the Information without prejudice.[9]

## II.    FACTUAL BACKGROUND

The Government accurately described for the families attending the May 16, 2025 conferral what a non-prosecution agreement is and did not suggest that the Government required the Court's

---

[9] Mr. Keyter also filed a motion to deny the motion to dismiss. ECF No. 327. The Government respectfully requests that the Court enter an order similar to its order disposing of the first motion he filed in this matter. ECF No. 192.

approval before deciding to not further prosecute Boeing and enter into the Agreement. The transcript of the conferral confirms this. For example, the Government stated:

> As we discussed before [during the May 31, 2024 conferral][10], an NPA is an agreement between the Department and a defendant that imposes obligations on both parties. Specifically in exchange for the Department not prosecuting the defendant, the defendant agrees to various undertakings, such as paying a penalty, improving compliance, etc.
>
> And if the Department feels that the defendant fails to do all of those things, the Department can proceed to charge the defendant. In other words, an NPA is similar to a DPA, with the difference being that, during a DPA, there is a charge pending in court, while under…excuse me…while under an NPA, there is a no charge pending during the duration of the agreement.
>
> So if the Department entered an NPA with Boeing, that would require the Department to move to dismiss the charge pending against Boeing, on the condition that Boeing satisfy all the conditions of the NPA, and if it did not, the Department could refile the charge and prosecute the case, notwithstanding the passage of time.
>
> To be able to refile the charge, the Department's motion to dismiss would have to ask the court to dismiss the case without prejudice.
>
> That is a legal term, meaning that the Department would not be prohibited from later refiling the charge. The court would consider the motion and could grant it and dismiss without prejudice or it could decide instead to dismiss with prejudice, meaning the Department could never refile a charge, or to deny the motion.
>
> We know that if the Department were to decide to do an NPA, many of you would likely oppose an accompanying motion to dismiss. Your lawyers can talk to you about the legal authority a judge has to deny the government's motion to dismiss when the defendant is consenting, as we believe Boeing would do here.[11]

The Government's decision not to prosecute Boeing further and to enter into the NPA was considered and approved by senior Department leadership. The final approval was not provided

---

[10] Declaration of Sean P. Tonolli, ECF No. 245-1 (Aug. 14, 2024) ("Gov't Plea Decl."), at 16-17, ¶ 38 (stating that during the May 31, 2024 conferral, the Government explained "the options available to the Government now that it had found Boeing in breach of the DPA, namely: declining to prosecute; extending the DPA term by up to one year pursuant to Paragraph 3 of the DPA; entering into a new agreement with Boeing short of a plea agreement, i.e., *a non-prosecution agreement* or a DPA; or prosecuting Boeing") (emphasis added); *see also* June 4, 2024 P. Cassell letter to Government, ECF No. 245-22, at 3 (responding to the option, among others, of the Government "enter[ing] into a new NPA or new DPA with Boeing").

[11] Transcript of May 16, 2025 Conferral, Exhibit 5 to Cassell Br., at 105-06.

until after the May 16th conferral and the Government received and considered the follow-up written submissions from the families received by May 22, 2025.[12]

Boeing has timely established and fully funded the two escrow accounts required by the NPA: an account with the $444.5 million Crash-Victim Beneficiaries Compensation Amount, and another account with the $243.6 million criminal monetary penalty.[13]

## III.    ARGUMENT

### A.    The Court Should Dismiss the Information Without Prejudice

#### 1.    The Government Has Moved to Dismiss Based on Its Good-Faith Belief That Dismissal Best Serves the Public Interest

The Objecting Families mischaracterize the Rule 48(a) standard for assessing a consent motion to dismiss. They urge the Court to deny the motion by repeatedly invoking the term "public interest" as a license for the Court to substitute their preferences for the Government's considered judgment of whether to proceed with the prosecution. The Fifth Circuit has made clear, however, that a district court may deny a consent Rule 48(a) motion only if the Government acts in bad faith—meaning that a prosecutor moves to dismiss based on impermissible motives such as bribery, personal animus, or some other capricious reason instead of based on his informed weighing of the public interest. *Hamm*, 659 F.2d at 630; *see also United States v. Welborn*, 849 F.2d 980, 983-84 (5th Cir. 1988) (noting that courts must presume that the Government moves to dismiss in good faith absent evidence to the contrary).

After carefully weighing the facts and the law, the litigation risks, and the public interest—informed by conferrals with the Families over the course of many hours and review of follow-up written submissions—the Government made the decision not to prosecute Boeing in exchange for

---

[12] Exhibit 1, Declaration of Sean P. Tonolli ("Suppl. Gov't NPA Decl."), at 2, ¶ 3.

[13] *Id.* at 2-3, ¶ 6; NPA at 6-7, ¶¶ 11-12.

an agreement that secures a significant fine, compliance improvements, and a substantial victim compensation fund. That is precisely the type of good-faith, considered judgment the Constitution entrusts to the Executive Branch.

The Objecting Families make no bad-faith showing or even acknowledge the guideposts that the Fifth Circuit set forth in *Hamm* to assess bad faith.[14] Their submission does not allege, let alone substantiate, any improper motive on the part of the Department. *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) ("Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than a mere conclusory interest [supporting dismissal].") (quotation omitted). Instead, they take issue with the Department's judgment in agreeing not to prosecute Boeing and the terms of the NPA. But "[i]t is a bedrock principle of our system of government that the decision to prosecute is made, not by judges or crime victims, but by officials in the [E]xecutive [B]ranch." *In re Ryan*, 88 F.4th 614, 621 (5th Cir. 2023); *see* 18 U.S.C. § 3771(d)(6) ("Nothing in [the CVRA] shall be construed to impair the prosecutorial discretion of the [Department of Justice]."). Accordingly, no appellate court has adopted the view of Rule 48(a) that the Objecting Families urge; indeed, no such court has ever upheld the denial of a Government motion to dismiss under Rule 48(a) not contested by the defendant. *See United States v. Cowan*, 524 F.2d 504, 511-12 (5th Cir. 1975) (reversing district court denial of Rule 48(a) motion).[15]

---

[14] The Objecting Families do provide background on Rule 48(a)'s departure from the common law and the Fifth Circuit's divergence from some other circuits when interpreting the rule. Cassell Br. at 3-9. The Government has preserved its objection to the Fifth Circuit's current Rule 48(a) standard, but it explains why, even under the Fifth Circuit's case law, dismissal is warranted here.

[15] *Id*. at 14, 16 (citing the reversed district court decision in *Cowan*).

Because the Objecting Families make no bad-faith showing, the Court's analysis should end there and it need not address their remaining arguments. Nevertheless, the Department will address their other arguments in turn, none of which withstands scrutiny.

2.    The NPA's No-Further-Prosecution Clause Is Necessary and Appropriate

Paragraph 22 of the NPA, which the Objecting Families call the "no-further-prosecution" clause, is necessary and appropriate. Necessary, because the clause embodies the bargain—the Department's good-faith, considered decision not to further prosecute Boeing in exchange for the obligations the Company has agreed to undertake. Appropriate, because the Constitution vests the Executive Branch with the authority to decide whether to proceed with a prosecution.

The Objecting Families' key objection to the no-further-prosecution clause is circular and illusory and calls on this Court to render an advisory opinion. In their telling, that clause is troubling and even voidable because it prevents the Government from prosecuting further should the Court deny the pending Rule 48(a) motion to dismiss. But this framing urges a conflict that should never come to pass. The Government has given its good-faith reasons for moving to dismiss; the Objecting Families have failed to show that the Government is in fact seeking dismissal in bad faith; and this Court therefore should grant the Rule 48(a) motion to dismiss. Given that sequencing of events, there is nothing nefarious about the NPA's no-further-prosecution clause that shows the bad faith needed for this Court to deny the motion to dismiss. Certainly, this Court lacks the authority to void that provision. *See In re Ryan*, 88 F.4th at 621-22 (affirming that "courts lack authority to exercise substantive review over DPAs"); *id.* at 625 (signaling that courts have even less authority over NPAs than over DPAs).

Regardless, the no-further-prosecution clause reflects a core constitutional reality. Although Rule 48(a) provides the Court a limited check against bad-faith dismissals, it does not authorize a court to compel the Government to prosecute. *See Cowan,* 524 F.2d at 511-12. In the

case of a consent motion, like the one here, Rule 48(a) allows a court to protect against a prosecutor who, for venal, selfish, or capricious reasons, attempts to terminate a prosecution; such a rogue prosecutor in these circumstances has abandoned the duties she owes to the law and the Government and seeks to terminate a prosecution that the Government, as an institution, has not made a considered judgment to end. *Hamm*, 659 F.2d at 630; s*ee In re United States*, 345 F.3d 450, 454 (7th Cir. 2003) ("Presumably an assistant U.S. Attorney who accepts a bribe, wants to go on a vacation rather than conduct a trial, etc., is acting alone rather than at the discretion or with the approval of the Justice Department."). But should a court deny a Rule 48(a) motion where the Government as an institution has decided not to prosecute, as is the case here, "the Attorney General would still have discretion to decline to move the case for trial," and the court would prove "constitutionally powerless to compel the government to proceed." *Cowan*, 524 F.2d at 511; *see United States v. Adams*, 24-cr-556 (DEH), 2025 WL 978572, at *19-20 (S.D.N.Y. Apr. 2, 2025). The NPA's no-further-prosecution clause merely reflects that the Government as an institution has decided it will not move forward with this case even if this Court denies the Rule 48(a) motion, as is the Executive Branch's constitutional prerogative.[16]

Nor is there is any basis for the Objecting Families to allege deception or impropriety, let alone a violation of the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"), from a clause that simply memorializes what the NPA is—a decision by the Government not to further prosecute Boeing in exchange the obligations the Company agreed to undertake.[17] When the Government conferred with the families about the possibility of the NPA, the Government made clear that such

---

[16] The Objecting Families seek the appointment of a special prosecutor to overcome this component of the constitutional separation of powers. Cassell Br. at 16-19; Singh Br. at 8-9. The Government explains further below why that course is unlawful.

[17] Cassell Br. at 19-21.

an agreement would mean that Boeing would not face further prosecution, and never suggested that the Government's prosecutorial discretion to make that decision was subject to the Court's approval. That the Objecting Families and their counsel understood this is plain from the transcript of the conferral and the follow-up written submissions families provided the Government and which the Government has in turn provided to the Court. The Government had the benefit of these families' views when making its decision, which is what the CVRA's right to reasonable conferral contemplates. *In re Dean*, 527 F.3d 391, 394-95 (5th Cir. 2008). And the Court has heard the Objecting Families' views as it weighs the motion to dismiss. *Id*. at 395-96. The Government and the Court have therefore honored the families' CVRA rights.

The Department appreciates the depth of emotions and regrets the sharp disagreement about how to proceed in this case. But it is precisely in such cases that the constitutional separation of powers must be most carefully guarded. Here, Boeing consents to the dismissal and there is no rogue prosecutor to protect against. The decision to enter into the NPA and not further prosecute Boeing reflects the Department's considered judgment about how best to resolve a complex and long-running matter. The Objecting Families' disagreement with that judgment is not evidence of bad faith, and the Government's decision to memorialize its judgment in the NPA does not infringe on the Court's authority. To the contrary, it reflects the very discretion the Constitution entrusts to the Executive Branch.

    3.    <u>The Statute of Limitations Has Not Run and Does Not Bar a Further Prosecution</u>

The Objecting Families wrongly analyze the statute of limitations and its intersection with the NPA.[18] They overlook black letter law and the NPA's terms, which together confirm that the

---

[18] Cassell Br. at 21-25.

statute of limitations as to the pending conspiracy charge will not expire until one year after the NPA concludes.

The Information alleges that the charged conspiracy, in violation of 18 U.S.C. § 371, extended through in or around December 2018, marking that month as the period from which the five-year statute of limitations began to run.[19] *See United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976) ("[I]n order to convict the government must have alleged and proved an overt act in furtherance of the conspiracy [charged under 18 U.S.C. § 371] occurring on or after September 5, 1969, and thus within the five years prior to the return date of the indictment."); *United States v. Manges*, 110 F.3d 1162, 1170 (5th Cir. 1997) (citing *Davis* for the proposition that "a conspiracy conviction requires proof of "[t]he commission of at least one overt act by one of the conspirators within [the five-year statutory] period in furtherance of the conspiratorial agreement.") (alternations in original).

On January 7, 2021, with nearly three years left under the statute of limitations, the Government filed the Information, which, consistent with black letter law, began tolling the statute of limitations. *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found *or the information is instituted* within five years next after such offense shall have been committed.") (emphasis added)); *United States v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990) ("The return of a timely indictment tolls the statute of limitations as to the charges alleged therein"); *see e.g.*, *United States v. Webster*, 127 F.4th 318, 322 (11th Cir. 2025) ("An information is instituted, and the statute of limitations is tolled for the charges the information alleges, when it is filed with the district court."); *see also Powell v. United States*, 352 F.2d 705, 707 n.5 (D.C. Cir. 1965) ("To

---

[19] Criminal Information, ECF No. 1, at 1, ¶ 1.

be entirely accurate, it should be noted that an arrest does not toll the statute of limitations. Rather, it is the return of an indictment or the filing of an information which must be done before expiration of the statutory period, and this may occur before as well as after the arrest.").

The statute of limitations will not begin to run upon dismissal of the Information. Boeing has agreed under the NPA "that the statute of limitations with respect to any such prosecution [relating to the conduct described in the attached Statement of Facts] that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year."[20] *See United States v. Spector*, 55 F.3d 22, 24 (1st Cir. 1995) (observing that "courts have enforced [tolling] agreements where voluntarily and knowingly made, finding that they do not violate the policies underlying the statute of limitations [18 U.S.C. § 3282]," "which is a waivable affirmative defense, not a jurisdictional bar to prosecution"); *cf. United States v. Arky*, 938 F.2d 579, 582 (5th Cir. 1991) (holding that the § 3282 statute of limitations is not jurisdictional and thus a "defendant must affirmatively assert a limitations defense at trial to preserve it for appeal"). Moreover, even if the statute of limitations were to start running upon dismissal because the NPA somehow failed to toll the statute of limitations, the amount of time left on the clock—nearly three years—is longer than the two-year term of the NPA.[21]

The statute of limitations is therefore not a bar to the Government refiling the § 371 charge should the Company breach the Agreement.[22] But the Objecting Families are correct to underscore

---

[20] NPA at 8-9, ¶ 16

[21] *Id*. at 4, ¶ 5.

[22] For this reason alone, the Objecting Families have failed to establish a CVRA violation related to the statute of limitations. *See* Cassell Br. at 25 (stating that had the families "been told the truth—that the agreement was functionally unenforceable—they would have strongly objected and insisted on a conferral about the [*sic*] holding Boeing accountable"). Of course, at every conferral, many of the Objecting Families and other families either directly or through counsel have strongly

that the Government's ability to refile is an important enforcement mechanism in the NPA.[23] And at no point do they take the position that, if the Court decides to dismiss the case, it should do so with prejudice, which would prohibit the Government from refiling. Accordingly, on the specific question of whether dismissal should be with or without prejudice, everyone appears to agree that dismissal should be without prejudice.

4.    The Court's Rejection of the Monitor Provision Is Not Law of the Case

The Objecting Families continue to press for the imposition of a corporate monitor, but overlook the Government's responsibility to make a present-day, independent assessment of whether a monitor is necessary.[24] Circumstances have changed since the Government submitted the proposed plea agreement, and the decision not to require a monitor in the NPA reflects the Government's updated, informed judgment.

The Objecting Families are correct that, prior to the parties reaching the proposed plea agreement, Boeing submitted its FAA-mandated remediation plan. Specifically, Boeing provided the FAA with the plan on or about May 30, 2024, roughly one month before the parties reached agreement on the plea's material terms.[25] That was not enough time, in the Government's judgment, for Boeing to demonstrate its progress and commitment to the plan sufficient to change the Government's view that a monitor was necessary. But it is now a year later, and in the interim

---

objected to the Government's handling of this matter and expressed their views on how they would prefer the Government seek to hold Boeing accountable.

[23] *See id*. at 24 & n.14.

[24] Declaration of Sean P. Tonolli, ECF No. 312-2 (May 29, 2025) ("Gov't NPA Decl."), at 11-12 & n.29, ¶ 35.

[25] May 30, 2024 FAA Press Release, *FAA Continues to Hold Boeing Accountable for Implementing Safety and Production Quality Fixes*, *available at* https://www.faa.gov/newsroom/faa-continues-hold-boeing-accountable-implementing-safety-and-production-quality-fixes; Government Status Report and Agreed Motion to Postpone a Trial Scheduling Order, ECF No. 204.

the Government has had the opportunity to engage directly with the Boeing and FAA personnel responsible for implementation and oversight of that plan. That engagement are what informed the Government's current view that a monitor is not necessary to ensure Boeing's compliance going forward.[26]

Finally, the Court's prior rejection of the proposed plea agreement, including its concerns about the monitor provision, does not control here. A court's decision whether to accept a proposed plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure is necessarily limited in scope; the Court was not adjudicating whether a monitor is legally required or making a binding determination that a monitor must be imposed. It was considering whether to accept or not the proposed plea agreement before it—a very different context from a Rule 48(a) motion to dismiss. The Objecting Families do not point to any precedent for treating such a ruling as the law of the case that precludes the Government from moving to dismiss without the imposition of a corporate monitor.[27] That is especially true now, nearly a year later, after changed circumstances and further developments. The Government has a continuing obligation to exercise its own judgment, and it has done so.

> 5.    The Penalty Is Based on the Government's Assessment of the Facts and the Law

As they did during the litigation over the proposed plea agreement, the Objecting Families again challenge the Government's considered judgment regarding the statutory maximum fine for

---

[26] Gov't NPA Decl. at 11-13, ¶¶ 35-39.

[27] Notably, while the Court raised concerns about the monitorship, it expressed no such reservations about any other aspect of the proposed plea agreement, including, for example, the $487.2 million statutory maximum fine, the Guidelines calculation, and a Statement of Facts that did not require Boeing to admit the charged conspiracy was a direct and proximate cause of the crashes. Yet the Objecting Families do not suggest that the Court's seeming approval of these aspects binds it—or the parties—going forward. The selective invocation of law of the case underscores that the argument is not grounded in precedent but deployed for tactical effect.

the § 371 conspiracy charged in the Information. But the Government has been clear and consistent—both in prior briefing and at oral argument—about the legal and evidentiary basis for its penalty calculation. The Government has determined that the highest pecuniary gross gain or loss that the Government could prove beyond a reasonable doubt at trial, consistent with the facts and the law, is $243.6 million, representing Boeing's estimated cost savings from initially avoiding enhanced pilot training.[28] Under the Alternative Fines Act, that figure yields a statutory maximum fine of $487.2 million. 18 U.S.C. § 3571(d). Boeing will have paid that amount in monetary penalties between the DPA and NPA.[29]

The Government further explained that it "does not have sufficient evidence to charge Boeing with a federal criminal offense with an offense element relating to the deaths of the victims of the Lion Air Flight 610 and Ethiopian Airlines Flight 302 airplane crashes."[30] Nor does the Government "have sufficient evidence to charge (and, therefore, to accuse in this case) any other individual with having conspired with the Chief Technical Pilot and the other Technical Pilot, or having committed any other federal criminal offense related to the conduct that is the subject of the pending Criminal Information or the broader facts and circumstances of the . . . airplane crashes, or to prove as much in a trial of Boeing."[31]

---

[28] Mr. Cassell mistakenly claims that the Government has not reaffirmed this point in its declaration supporting the motion to dismiss. Cassell Decl. at 27, ¶ 84. The Government, however, expressly adopted and incorporated by reference its prior declaration submitted in connection with the proposed plea agreement, including Paragraph Nine, which states that the "highest pecuniary gross gain or loss the Government can allege and prove beyond a reasonable doubt is $243.6 million." Gov't NPA Decl. at 2, ¶¶ 3-4 & n.2; Gov't Plea Decl. at 3, ¶ 9.

[29] *See* NPA at 3, ¶ 3.

[30] Gov't Plea Decl. at 3, ¶ 7.

[31] *Id*. at 5, ¶ 13.

The Objecting Families offer no new facts or legal arguments to rebut these conclusions. Instead, they repeat unsupported claims that the Government is "attempting to obscure Boeing's true culpability."[32] The Government is not concealing relevant evidence, nor is it bound to any prior Guidelines calculation—though it stands by the methodology used in both the DPA and the proposed plea agreement.[33] That is because the penalty here reflects the Department's independent, good-faith assessment of what the evidence and the law can support in terms of a statutory maximum fine, consistent with the *Principles of Federal Prosecution* and the ethical standards that govern its attorneys.

Likewise, the Objecting Families' request for the Court to revisit its earlier acceptance of the DPA, and somehow set it aside, has no legal basis.[34] The DPA expired in January 2024—more than a year-and-a-half ago—and is no longer before the Court; the penalty now at issue arises from an independent resolution, negotiated in a different posture and with different terms. Nor would issuing an advisory opinion declaring the DPA invalid have any effect on the Government's current, considered judgment about how best to resolve this case.

6.    The Compensation Fund Is Fair, Appropriate, and Guaranteed

The Objecting Families mistakenly assert that the $444.5 million compensation fund is "untethered from any specific finding of 'lost income' or other metric."[35] As the Government set forth in its declaration, it undertook a detailed and methodical process to estimate restitution

---

[32] Cassell Br. at 41; Motion and Memorandum of Recognized Crime Victims' Families Naoise Connolly Ryan, et al. Requesting that the Court not Accept the Rule 11(c)(1)(c) Binding Plea Agreement Proposed By the Government and Boeing, ECF No. 234, at 11-35.

[33] Gov't Response in Support of Plea Agreement, ECF No. 245, at 28 ("The Agreement presents what the parties submit is a faithful application of the Guidelines, consistent with the Criminal Information and Statement of Facts . . . .").

[34] Cassell Br. at 40.

[35] *Id*. at 43.

consistent with applicable law.[36] All families were invited to submit information about lost income and other compensable losses; close to half responded. To assess the submissions, the Government retained a team of financial experts specializing in personal economic loss. That team collectively spent more than 3,000 hours analyzing the data and developing a comprehensive model to estimate aggregate losses.

Because not all families responded, the experts applied principled estimation techniques to project losses for non-responding families. Based on this rigorous analysis, the Government determined that the families are collectively entitled to $444.5 million in restitution. This calculation did not subtract any of the substantial amounts that families have already received through civil settlements or Boeing's earlier compensation fund. But in recognition of those prior payments—amounting to billions of dollars—the Government concluded that the most equitable and efficient course was to distribute the $444.5 million equally among the estates of the 346 crash victims.[37]

This experience confirmed a significant litigation risk: if the case proceeded to trial and resulted in a conviction, the Court could ultimately decline to award any restitution. The assessment process alone was complex, costly, and time-consuming, even without adversarial litigation. Had the case gone forward and Boeing been convicted, the Government would have had

---

[36] Gov't NPA Decl. at 3-7, ¶¶ 7-17.

[37] The Government appreciates the sensitivities around the disparity in civil settlement amounts raised in Mr. Vuckovich's brief and the view of certain of his clients that they should have received more. Vuckovich Br. at 6. Outside of restitution imposed after a conviction by guilty plea or trial, however, the Government is not aware of any authority—and Mr. Vuckovich cites none—that would permit the Court to require Boeing to establish a separate compensation fund for these and similarly situated families. *See id*. It is the Government's understanding, based on representations by Mr. Vuckovich, that while these families would prefer to receive a relatively larger share of the NPA's compensation fund, they do not oppose the Government's motion to dismiss. Suppl. Gov't NPA Decl. at 2, ¶ 5.

16

to present individualized loss calculations for each of the 346 victims' estates, likely prompting extensive challenges from Boeing and involvement by the Probation Office. The result could have been hundreds of mini-trials over restitution—precisely the burdensome and protracted litigation the restitution statutes allow courts to avoid. 18 U.S.C. § 3663A(c)(3)(B).

Faced with the very real possibility of years of litigation and no additional restitution, the Government concluded that a guaranteed $444.5 million compensation fund represents a fair and appropriate approximation of restitution. Inaccurately calling this fund a "bribe" or a "payoff" distorts both the law and the Government's intent. The Government relied on experienced financial experts, applied well-established methods for estimating economic loss, and ensured that the final amount reflected a principled and rational approach to compensable harm. That the compensation is included in a negotiated resolution does not render it improper—structured compensation is often a central component of non-trial resolutions. The fact that victims will receive compensation without the delay and uncertainty of litigation is a feature of this resolution, not a flaw.

7.    The Government's Assessment of Litigation Risk Is Not Pretextual

The risks surrounding restitution were but one component of the Government's broader assessment of the litigation risks of proceeding to trial. As the Government explained in seeking approval of the proposed plea agreement, there are other meaningful legal and factual risks that make the prospect of conviction uncertain.[38] The Government reaffirmed its assessment of those risks in the sworn declaration submitted with its motion to dismiss.[39] It will not rehash here the disagreements with the Objecting Families that have already been aired in briefing and at oral

---

[38] Gov't Plea Decl. at 3-6, ¶¶ 6-14.

[39] Gov't NPA Decl. at 2, ¶¶ 3-4 (adopting and incorporating by reference the Gov't Plea Decl, and stating that the Government continues to hold its considered position, articulated in the prior declaration and the brief it accompanied, on how "[t]he Government would prosecute this case if it went to trial and the attendant uncertainty").

argument. Suffice it to say: the Government is closest to the evidence, tried (and lost) the case against the Boeing employee charged with the underlying offense conduct, and remains both responsible and accountable for how this case resolves. It is best positioned to assess the litigation risks of its own case and stands by its considered judgment that those risks are meaningful and informed its good-faith decision to enter into the NPA and move to dismiss.

The only new argument the Objecting Families raise is that Boeing should be barred by laches from contesting the Government's breach determination.[40] That argument is misplaced. Since June 2024, when the Government extended the proposed plea offer, and then again since mid-December 2025 after the Court rejected the proposed plea agreement, the parties have been in a resolution posture. Litigating breach would have been inefficient and unnecessary unless the parties failed to reach an agreement. Additionally, the parties executed the NPA before June 2, 2025—the only pretrial motions deadline set by the Court—meaning Boeing did not miss any opportunity to raise its challenge.[41] Moreover, throughout the resolution discussions Boeing consistently stated that it would contest the breach determination if the case returned to an adversarial posture.[42] The Government has thus suffered no prejudice. And the Objecting Families cite no precedent granting CVRA victims standing to assert laches to preclude a defendant from litigating a substantive issue against the Government that is unrelated to CVRA rights.

\*   \*   \*

In sum, the standard under Rule 48(a) is not whether others—be they victims, the public, or even the Court—disagree with the Government's judgment, but whether the consent motion to

---

[40] Cassell Br. at 44.

[41] Pretrial Scheduling Order, ECF No. 294 (Mar. 25, 2025), at 1, ¶ 3.

[42] *See* Boeing's Consolidated Response to Objections to Proposed Plea Agreement, ECF No. 246, at 3-4.

dismiss is the product of bad faith, as defined by the Fifth Circuit in *Hamm*. The Objecting Families

do not allege, let alone substantiate, any such improper motive. The Department has acted in good

faith and within the bounds of its constitutional authority in determining that the prosecution

should not proceed. There is thus no legal basis to deny dismissal without prejudice.

### B.    This Court Should Not Appoint a Special Prosecutor

The Objecting Families have asked this Court to go even further than taking the already-

extraordinary step of denying a fully explained consent Rule 48(a) motion; they have asked it to

appoint a special prosecutor to ensure that this case does not end.[43] Yet it "[i]t is a bedrock principle

of our system of government that the decision to prosecute is made, not by judges or crime victims,

but by officials in the [E]xecutive [B]ranch," *In re Ryan*, 88 F.4th at 621, and the Fifth Circuit has

deemed "it highly unlikely that [it] would allow such appointments" due to the "clash[] with Article

II, Section 3 of the United States Constitution," *United States v. Davis*, 285 F.3d 378, 383 (5th Cir.

2002). Indeed, appointing a special prosecutor would violate the CVRA and would here prove

unconstitutional.

### 1.    The CVRA Does Not Allow Crime Victims to Move for a Special Prosecutor

As an initial matter, the Objecting Families lack a right even to request such an

appointment. This Court has deemed the families to be CVRA crime victims, a status that grants

them certain rights and allows them to assert those rights and seek relief for violations of those

rights. 18 U.S.C. § 3771(a), (d)(1) and (3). According to the Objecting Families, the appointment

of a special prosecutor is allowable relief now necessary to protect their rights.[44] That argument

---

[43] Some Families support such a step in theory but believe it premature, although their counsel's signature also appears on the motion requesting such an appointment at this time. Cassell Br. at 16-19; Singh Br. at 23. In an abundance of caution, the Government here addresses all the Families' arguments in support of a special prosecutor.

[44] Cassell Br. at 10.

misreads the CVRA in a way that would deeply impair prosecutorial discretion—a construction that the CVRA itself forbids, *see* 18 U.S.C. § 3771(d)(6).

*First*, the Government's determination to dismiss this case does not mean that the Objecting Families have an independent CVRA right to see a special prosecutor appointed. Crime victims have ten participatory rights in federal criminal cases, but the right to appoint a special prosecutor and "veto" the Government's decision to dismiss is not among them. 18 U.S.C. § 3771(a); *see United States v. Rubin*, 558 F. Supp. 2d 411, 418 (E.D.N.Y. 2008). And reading the rights listed in the CVRA to contain such a right would run afoul of the command that "[n]othing in [the statute] shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." 18 U.S.C. § 3771(d)(6); *see In re Wild*, 994 F.3d 1244, 1262 (11th Cir. 2021) (en banc) (rejecting for like reasons a reading of the CVRA that would create a cause of action and let a "victim to challenge the correctness . . . of the prosecutor's no-charge decision").

Recognizing a need to invoke a CVRA right to seek related relief, the Objecting Families wrongly or prematurely invoke their "right to be reasonably heard" in court and "reasonable right to confer with the attorney for the Government." 18 U.S.C. § 3771(a)(4)-(5).[45] However, the Government has extensively conferred with all the families as to its decision to dismiss this matter and to enter into a non-prosecution agreement with Boeing, and the Objecting Families are even now being heard by this Court as to whether it should grant the Government's motion to dismiss the Information. In short, no CVRA violation has occurred. The Objecting Families also seem to view the appointment of a special prosecutor as critical to enable them "to confer about further prosecution of Boeing,"[46] a concern without salience if this Court grants the Government's

---

[45] *See e.g.*, *id*. at 19-21.

[46] Singh Br. at 10.

properly made motion to dismiss, *cf. Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (explaining that Article III courts may grant "forward-looking relief" only where "'allegedly wrongful behavior would likely occur or continue'").

*Second*, even if the Objecting Families had raised a substantiated and present CVRA violation, the statute would not allow a district court to appoint a special prosecutor to remedy that harm. Congress authorized courts to grant "relief" for CVRA violations, 18 U.S.C. § 3771(d)(3), but it also stated that "[n]othing in [the statute] shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction," *id.* § 3771(d)(6). That discretion includes "filing charges, prosecuting, not prosecuting, plea-bargaining, and recommending a sentence to the court.'" *In re Wild*, 994 F.3d at 1260; *accord In re Ryan*, 88 F.4th at 621-22; *see also United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc) (discussing the constitutional discretion of prosecutors to decide if "a prosecution shall be commenced or maintained").

Almost nothing could "impair" the Executive Branch's prosecutorial discretion more than the judicial appointment of a special prosecutor to pursue charges that the Government has decided to dismiss. That prospect would invite another attorney to reach a different conclusion about "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607 (1985). It would impose "systemic costs" by "delay[ing] the criminal proceeding" and "chill[ing] law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry." *Id.* And it would allow an attorney to prosecute crimes on behalf of the Government without preserving for "the Executive Branch sufficient control" over that attorney's activities. *Morrison v. Olson*, 487 U.S. 654, 695-96 (1988) (explaining ways in

which even the Independent Counsels appointed under the infamous Ethics in Government Act of 1978 were subject to greater Executive Branch control than what the Families propose).

2.    Appointing a Special Prosecutor Would Violate the Constitutional Separation of Powers

Although the CVRA forecloses the appointment of a special prosecutor as relief for supposed violations of that statute, the Constitution also forbids such an appointment.

The Constitution vests federal prosecutorial power in the Executive Branch. *See* U.S. Const. art. II, §§ 1, 3. Accordingly, the "Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," *United States v. Nixon*, 418 U.S. 683, 693 (1974), with a narrow exception that allows the Judiciary to appoint a private attorney to prosecute criminal contempt of court where the Executive Branch declines to do so, *see Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796, 801-02 (1987). Outside that exception, invoking inherent judicial power to appoint special prosecutors violates the constitutional separation of powers. *Davis*, 285 F.3d at 383 ("[A]llowing federal judges to appoint special prosecutors when the government elects not to prosecute would contravene *Cox*."); *see Cox*, 342 F.2d at 171 ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."); *accord In re United States*, 345 F.3d 450, 452, 454 (7th Cir. 2003); *Adams*, 2025 WL 978572, at *19.

To advance their novel and contrary position, the Objecting Families misread binding precedent, analogize the appointment of a special prosecutor to inapposite statutory regimes, and cite scholarship on the murky history of private prosecution in the United States. None of this supports recognizing an inherent power in the Judiciary to appoint a special prosecutor here.

22

The Objecting Families wrongly read three Supreme Court cases to establish a broad inherent judicial authority to appoint special prosecutors.[47] As explained, *Young* affirmed that courts have a narrow authority to appoint private attorneys to prosecute contempt cases if the Executive Branch refuses to prosecute the case. 481 U.S. at 796, 801-02. The independent counsel in *Morrison*, meanwhile, was appointed under the lapsed Ethics in Government Act of 1978—not a federal court's inherent authority—487 U.S. at 660-63, and like statutes allowed for court appointment of commissioners, marshals, and interim United States Attorneys, *id.* at 676-77. Last, appellate courts may appoint an amicus curiae to defend a criminal judgment if the Office of the Solicitor General declines to do so, *see United States v. Providence Journal Co.*, 485 U.S. 693, 703-04 (1988), but the power to solicit input as to the validity of a preexisting judgment differs in kind from a power to appoint an attorney to obtain such a judgment in the first place. That latter power—"[i]nvestigation and prosecution of crimes"—is the Executive Branch's "conclusive and preclusive" prerogative. *Trump v. United States*, 603 U.S. 593, 620-21 (2024).

The Objecting Families' appeal to this Circuit's precedent also fails.[48] Notably, they never address the Fifth Circuit's most recent discussion on the appointment of special prosecutors, which emphasizes that the constitutional separation of powers precludes such appointments based on a federal court's inherent powers. *Davis*, 285 F.3d at 383. They instead invoke a fifty-year-old district court decision that appointed a special prosecutor after denying a Government Rule 48(a) motion to dismiss—all of which the Fifth Circuit overturned after finding no cause to deny the Rule 48(a) motion. *See United States v. Cowan*, 396 F. Supp. 803 (N.D. Tex. 1974), *rev'd by* 524 F.2d 504, 514-15 (5th Cir. 1975); *see also Davis*, 285 F.3d at 383 n.3. And despite the Objecting

---

[47] Cassell Br. at 16-17; Singh Br. at 11-13

[48] Cassell Br. at 17-18; Singh Br. at 13-14, 19-21.

Families' suggestion, the Fifth Circuit opinion in this case never endorsed a special prosecutor; it affirmed that "it is not the province of the judiciary to dictate to executive branch officials who shall be subject to investigation or prosecution," *In re Ryan*, 88 F.4th at 621, and that federal courts must exercise the inherent authority that they do have with "restraint" and "caution," *id.* at 623.[49]

Nor do the Objecting Families rightly invoke the All Writs Act.[50] The Act allows courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Yet the Government's proposed dismissal and the lack of a special prosecutor do not threaten this Court's subject-matter jurisdiction, as required for the Act to apply, *see ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1358-59 (5th Cir. 1978), and appointing a special prosecutor under the Act is relief without "statutory or historical warrant" and that clashes with the "separation of powers"—relief that the Act cannot supply, c*f. United States v. Reyes*, 945 F.2d 862, 866 (5th Cir. 1991) (disallowing a postconviction writ under the Act for similar reasons).

The Objecting Families last cite to civil statutory schemes and law review articles, which, they say, show that prosecution is not exclusively an executive function.[51] However, a private individual's assertion of government rights in a congressionally authorized civil *qui tam* proceeding, *see* 31 U.S.C. § 3730, or as a statutorily authorized plaintiff with Article III standing (and a personal injury-in-fact),[52] cast little light on the propriety of a court relying on its inherent authority to appoint a private individual to prosecute a federal offense. And the academic literature that the Objecting Families have collected aside, the Supreme Court has held that federal

---

[49] *Contra* Singh Br. at 13-14.

[50] Cassell Br. at 18; Singh Br. at 19.

[51] Singh Br. at 15-17.

[52] *See id*. at 16-17 (citing environmental laws).

prosecution is committed exclusively to the Executive Branch. *Trump*, 603 U.S. at 620-21 (collecting cases).[53]

## IV.    CONCLUSION

In the end, the Government has made the considered and constitutionally vested decision not to prosecute—a judgment the Executive alone is empowered to make, and one that has been publicly explained in detail. There is no legal basis to override that decision or to appoint a special prosecutor, nor would either step yield anything but constitutional conflict. The Court is not being asked to endorse the Government's judgment, only to recognize that it has been offered in good faith, in accordance with the law, and free of the bad faith required to deny a consent Rule 48(a) motion. Because no prosecution will proceed without the Government's participation, the only path forward consistent with law and separation-of-powers principles is to grant the motion to dismiss, and to do so without prejudice.

---

[53] The Families claim that appointing a special prosecutor here would not violate the Appointments Clause of the federal constitution. Singh Br. at 17-18; U.S. Const. Art. II, § 2, cl. 2. The Government concurs on that point. *See Auffmordt v. Hedden,* 137 U.S. 310, 326-27 (1890) (holding that a "merchant appraiser" chosen to resolve a customs dispute was not an officer because his functions extended no further than the "case [in which] he [wa]s selected to act"); *United States v. Germaine*, 99 U.S. 508, 512 (1879) (holding that a medical examiner was not an officer because he performed duties only "when called on . . . in some special case"); *see also United States v. Donziger,* 38 F.4th 290, 299-302 (2d Cir. 2022) (holding that, although special prosecutors in a contempt matter were officers of the United States, the prosecution remained proper because the Attorney General retained control and discretion over those officers).

Respectfully submitted,

LORINDA I. LARYEA                    NANCY E. LARSON
Acting Chief                         Acting United States Attorney
Fraud Section, Criminal Division     Northern District of Texas
United States Department of Justice


By: *s/ Sean P. Tonolli*             By: *s/ Chad E. Meacham*
Sean P. Tonolli                      Chad E. Meacham
Acting Principal Deputy Chief        Assistant United States Attorney
D.C. Bar No. 503346                  Texas Bar No. 00784584
sean.tonolli@usdoj.gov               chad.meacham@usdoj.gov

United States Department of Justice  United States Attorney's Office
Criminal Division, Fraud Section     Northern District of Texas
1400 New York Avenue, N.W.           801 Cherry Street, 17th Floor
Washington, D.C. 20005               Fort Worth, TX 76102
202-514-2000                         817-252-5200


cc: Counsel of Record (via ECF)