UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. 4:21-cr-5-O |
| | § | |
| THE BOEING COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Government's Rule 48(a) Motion to Dismiss the Information (ECF No. 312), filed May 29, 2025, ("Motion"); Response and Objection by counsel for the families of crash victims who object to the dismissal ("Movants"), filed June 18, 2025, (ECF No. 318); some of the victim's families' Motion for Appointment of a Special Prosecutor, filed June 18, 2025, (ECF No. 321); Mr. Keyter's Motion to Deny Government's Motion to Dismiss, filed June 24, 2025, (ECF No. 327); Mr. Keyter's Motion to Be Heard Pursuant 18 U.S.C. § 3771(a)(4), filed October 25, 2024, (ECF No. 277);[1] the Government's Reply, filed July 2, 2025 (ECF No. 334); and The Boeing Company's ("Boeing") Reply, filed July 2, 2025 (ECF No. 335). The Court held a hearing on the Motion on September 3, 2025, and heard from those who desired to speak, as well as arguments from counsel. Having considered the foregoing, the Government's Motion to Dismiss is **GRANTED**.

---

[1] Anthony Keyter does not qualify as a crime victim under the CVRA because he is not "directly or proximately harmed." 18 U.S.C.A. § 3771. As such, he has no rights here, and his Motion (ECF No. 277) is **DENIED**. Further, his Motion to Deny Government's Motion to Dismiss is **DISMISSED**. Nevertheless, the Court has considered his pleadings and provided him an opportunity to speak against the Government's Motion to Dismiss along with all of the victims who desired to speak.

1

I. BACKGROUND

After the catastrophic crash of two Boeing 737s operating as Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 resulted in 346 deaths, the Government began investigating Boeing's conduct. Subsequently, the Government filed a Criminal Information charging Boeing with conspiracy to defraud and simultaneously entered into a deferred prosecution agreement ("DPA") on January 7, 2021. On May 14, 2024, the Government notified the Court that Boeing breached the DPA for "failing to design, implement, and enforce a compliance and ethics program to prevent and detect violations of U.S. fraud laws throughout its operations."[2] As a result, in July 2024 the parties submitted a plea agreement that required Boeing to plead guilty and serve a term of probation. On December 5, 2024, the Court rejected the plea agreement because the terms of the parties' agreement were not in the public interest.

The Government now seeks to dismiss the Criminal Information under Rule 48(a) with Boeing's consent after signing a non-prosecution agreement ("NPA"). Some of the victims' families oppose this action, and others support it.[3] While pursuing pre-trial resolution, the Government conferred with the victims' families and their counsel on two separate occasions and considered written submissions from families regarding the NPA.[4] The Court held a hearing on the Motion on September 3, 2025, and heard from all who wished to speak, including the victims' family members. The Government's Motion to Dismiss is now ripe for the Court's review.

II. LEGAL STANDARD

Rule 48(a) of the Federal Rules of Criminal Procedure provides that the Government may dismiss an indictment, information, or complaint "by leave of court." The leave of court

---

[2] Notice, ECF No. 199.
[3] Gov't.'s Mot. Dismiss, Ex. 2 (Gov't NPA Decl.), at 19, ¶ 2, ECF No. 312-2.
[4] *Id.* at 8–9, ¶¶ 24–27; *Id.* at 13–14, ¶34; *Id.* at 15–19, ¶¶ 44, 48, 50, 52.

2

requirement authorizes the judiciary to evaluate and, in an appropriate case, deny a Government motion. But to "preserve the essential functions" of the Executive and the Judicial branches, a court should only deny leave when dismissal is "clearly contrary to manifest public interest." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975). A court may not "substitute its judgment for the prosecutor's determination or . . . second guess the prosecutor's evaluation" when making its public interest determination. *United States v. Salinas,* 693 F.2d 348, 351 (5th Cir. 1982). Rather, "[u]nless the court finds that the prosecutor is clearly motivated by considerations other than his assessment of the public interest, it must grant the motion to dismiss." *United States v. Hamm*, 659 F.2d 624, 630 (5th Cir. 1981); *see also Rinaldi v. United States*, 434 U.S. 22, 30 (1977) (holding that a trial court cannot properly deny a prosecutor's motion to dismiss unless the prosecutor's actions are "tainted with impropriety").

The Court "must begin with the presumption that the prosecutor acted in good faith" when moving to dismiss. *United States v. Welborn*, 849 F.2d 980, 983 (5th Cir. 1988). To evaluate whether the prosecutor acted in good faith, the Court may require the prosecutor "to supply sufficient reasons" that are "more than a conclusory statement in support of its motion." *Id.* at 983, 985; *see also Salinas,* 693 F. 2d 348 at 352. The Court may look to the record, including hearings. *See e.g., Rinaldi*, 434 U.S. at 30; *Salinas*, 693 F.2d at 352. Finally, the Court must ensure that the Government has satisfied its obligations under the Crime Victim's Rights Act ("CVRA"). *In re Ryan*, 88 F.4th 614, 627 (5th Cir. 2023).

III.  **ANALYSIS**

The Government contends it has satisfied its obligations under Fed. R. Crim. P. 48(a). Movants disagree, asserting that dismissing the case is "against manifest public interest" such that the Court may deny dismissal under Fed. R. Crim. P. 48(a). Namely, Movants state that the

3

dismissal is against public interest because: (1) the NPA is an "unprecedented effort to short-circuit Rule 48(a)'s judicial review requirement;"[5] (2) Boeing's obligations are unenforceable under the NPA because the statute of limitations has run, meaning the Government would be unable to re-file charges against Boeing even if it breached; (3) the NPA exempts Boeing from any independent monitoring of its corporate compliance and safety efforts; (4) the monetary provision of the NPA does not secure the maximum possible fine; (5) the practical effect of the victim compensation payments is to allow the company to buy their way out of a criminal conviction; and (6) the Government's claims of litigation risk are meritless.[6]

The Court begins with the presumption that the Government is acting in good faith. *Welborn*, 849 F.2d 980 at 983. This presumption can be rebutted if (1) "the prosecutor's actions clearly indicate a betrayal of the public interest," *Hamm*, 659 F.2d at 629, and (2) when the motion is contested, the prosecutor fails "to supply sufficient reasons—reasons that constitute more than a mere conclusory interest." *Welborn*, 849 F.2d at 983. Actions that indicate betrayal of public interest include harassing a defendant, accepting a bribe, dismissing an indictment to gain a strategic advantage, to attend a social event, or because the prosecutor personally dislikes a victim. *See Salinas*, 693 F.2d at 352–53; *Hamm*, 659 F.2d at 629.

The Government declares that the NPA "secures meaningful accountability, delivers substantial and immediate public benefits, and brings finality to a difficult and complex case whose outcome would otherwise be uncertain."[7] Specifically, it states the NPA requires Boeing pay the maximum statutory fine, further pay into a crash-victim compensation fund, and commits Boeing

---

[5] Movants' Obj., 2, ECF No. 318.
[6] *Id*.
[7] Mot. Dismiss, 1, ECF No. 312.

4

to compliance improvements.[8]  And, it asserts that "the Company has made meaningful progress in improving its anti-fraud compliance and ethics program."[9]

Movants contest these reasons, and some of their arguments are persuasive.  For instance, the Court agrees with Movants that the NPA disregards the need for Boeing to be subject to independent monitoring.  Indeed, last year the Court denied a proposed plea agreement because it was against the public interest, in part, because Boeing would have had veto power over the Government's choice of an independent monitor.[10]  At that time, the Government was insistent that an independent monitor was necessary to remedy Boeing's corporate criminal culture as Boeing was unable to do so on its own, which endangered the flying public.  The Court agreed with the Government.  Now, however, under the Government's NPA, Boeing is no longer subject to an independent monitor and instead is authorized to pick its own "Independent Compliance Consultant."[11]

The NPA's "weakened provision"[12] is even more concerning than its predecessor.  It does not even pretend to address the need for a truly independent compliance monitor given Boeing's troubling history leading up to the Lion Air Flight JT610 and Ethiopian Airlines Flight ET302 crashes and then, while under intense scrutiny by the Government, its breach of the DPA.  When asked by the Court how the Boeing-selected consultant would stop a culture of fraud, the Government said that the independent consultant would work "next to Boeing" to make sure it is "reacting and appropriately addressing any concerns raised by the FAA."[13]  It then will "report to

---

[8] *Id.* at 13-15.
[9] *Id.* at 3.
[10] Order Denying Plea Agreements, ECF No. 282.
[11] Gov't's Mot. Dismiss, EX 1 (NPA), ¶ 10, ECF No. 312-1.
[12] Movants' Obj., 28, ECF No. 318.
[13] Mot. Dismiss Hr'g. Tr. at 85: 12-16.

the government on what they are seeing" and if necessary, "make recommendations for improvements."[14]

The Government now believes that Boeing can be trusted to select a compliance consultant because Boeing has made "meaningful progress in improving its anti-fraud compliance and ethics programs."[15] In summary, the Government's position in this lawsuit has been that Boeing committed crimes sufficient to justify prosecution, failed to remedy its fraudulent behavior on its own during the DPA which justified a guilty plea and the imposition of an independent monitor, but now Boeing will remedy that dangerous culture by retaining a consultant of its own choosing. Given Boeing's history related to this case (and the Government's continued failure to gain Boeing's compliance), the Movants are correct that this agreement fails to secure the necessary accountability to ensure the safety of the flying public.

The Court further agrees with Movants that the Government's claim of "uncertainty and litigation risk presented by proceeding to trial"[16] is unserious. The Government has a confession from Boeing, signed by the CEO and Chief Legal Officer, admitting to all the elements of the conspiracy charge against it in the DPA.[17] As such, the assertion that there is a legitimate risk that Boeing would be acquitted at a trial lacks support.[18] Neither is the Government's contention that

---

[14] Mot. Dismiss Hr'g. Tr. at 86: 12-18.
[15] Gov't's Mot. Dismiss, 3, ECF No. 312.
[16] *Id.* at 4.
[17] DPA, ¶ 2, ECF No. 4.
[18] The Government asserts the risk of acquittal is legitimate because a jury acquitted a technical pilot of various charges related to his role in testing the 737 Max. This overlooks the nature of the charges made against the two Defendants. The technical pilot's central defense was that he was a scapegoat for the broader and systematic failure of Boeing's corporate culture which led to the crashes. The Government agrees with that theme, given the nature of the information filed in this case and the stipulated facts agreed to by Boeing, which targets the corporate culture.

Boeing may litigate whether it actually breached the DPA a serious justification because Boeing agreed that determination was left to the Government's sole discretion.[19]

Movants contend that if the Court believes the Government's reasons are unsupported, it may hold that dismissal is clearly contrary to manifest public interest.[20] The Court does not agree the case law permits that reasoning. Movants rely on the Fifth Circuit's recent discussion of the "clearly contrary to manifest public interest" language of Rule 48(a). *See In Re Ryan*, 88 F.4th 614 at 627 (collecting cases citing "clearly contrary to manifest public interest"). They suggest the Fifth Circuit's emphasis means this Court may evaluate the public interest independently when determining if leave to dismiss should be granted.[21]

In *Ryan*, the Fifth Circuit directed the Court to "assess the public interest *according to caselaw* as well as the CVRA," at the motion to dismiss stage. *In re Ryan*, 88 F.4th at 627–28 (emphasis added). The caselaw dictates that "the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice" requires—and authorizes the Court to do no more—than ensure that the prosecutor has acted in good faith motivated by the interest of justice and that he has satisfied his obligations under the CVRA. *Cowan,* 524 F.2d at 514.

The Fifth Circuit is clear that a district court may not "substitute its judgment for the prosecutor's determination or . . . second guess the prosecutor's evaluation" when assessing if a motion to dismiss is against manifest public interest. *Salinas*, 693 F.2d at 351; *see also United States v. Hamm*, 659 F.2d 624 at 631 ("[T]he prosecutor is the first and presumptively the best judge of where the public interest lies. The trial judge cannot merely substitute his judgment for

---

[19] Movants identify a number of other objections which, in their view, undermine the Government's proffered basis for dismissal, such as the fine calculation, guideline calculation, limitations, and others. But, as discussed below, those objections as well as these, even if valid, do not overcome the presumption afforded the Government in this case.
[20] Movant's Obj., 4, ECF No. 318.
[21] Movant's Obj., 3, ECF No. 318.

that of the prosecutor."). Otherwise, the judiciary would "encroach[] on the primary duty of the Executive to take care that the laws are faithfully executed." *Hamm*, 659 F. 2d 624 at 631.

*Cowan* is instructive. 524 F.2d 504. There, the trial judge refused to grant leave to dismiss because he did not believe dismissing serious charges in favor a guilty plea carrying a lower penalty in an unrelated case was in the interest of justice. The Fifth Circuit reversed, holding that the trial judge's disapproval of the dismissal was "legally insufficient to overcome the presumption of the government's good faith and establish its betrayal of the public interest." *Id*. at 514.

Just as the trial judge in *Cowan*, the Court's concerns about the Government's decision-making in this case are an insufficient reason to deny leave to dismiss. Thus, Movants' argument that the Government's agreement in this case is contrary to public interest, while compelling, cannot justify denying leave to dismiss under Rule 48(a).

Finally, and as emphasized by the Fifth Circuit in the mandamus proceedings following the entry of the DPA in this case, the Court cannot grant leave unless the Government fulfilled its obligations under the Crime Victim's Rights Act. *See In re Ryan*, 88 F.4th at 627 ("[I]n passing on the government's motion under Rule 48(a) the court will expect to see the prosecutor recount that the victim has been consulted on the dismissal and what the victim's views were on the matter."); *see also id.* at 626 (stating in the event of a dismissal, "courts retain adjudicatory responsibility, including an obligation to apply the CVRA"). The CVRA requires that crime victims—here, the family members of those who died in the crashes—have "[t]he right not to be excluded from any such public court proceeding," "the reasonable right to confer with the attorney for the government in the case," and "the right to be informed in a timely manner of any plea bargain or deferred prosecution agreement." 18 U.S.C. § 3771.

8

The Court finds that the Government has complied with the CVRA. The Government conferred with the victims' families after the plea agreement was denied in December 2024 and noted that the families present wanted the Government to go to trial.[22] The Government conferred with the victims' families about the framework of the then-potential NPA in May 2025 and considered written submissions afterward.[23] It noted that some families supported the NPA and others opposed it.[24] It informed the families that Boeing accepted the NPA before informing the Court.[25] At the hearing on the Government's motion, counsel for more than 60 of the families stated that "there's been reasonable conferral, to say otherwise would be unfair."[26] On this record, the Government has satisfied its obligations under the CVRA.

## IV. CONCLUSION

The Court recognizes that "in every political institution a power to advance the public happiness involves a discretion that may be abused." THE FEDERALIST NO. 41 (James Madison). Nevertheless, poor discretion may not be countered with judicial overreach: "the judges can exercise no executive prerogative, though they are shoots from the executive stock." THE FEDERALIST NO. 47 (James Madison). The Court acknowledges that it does not have the authority to deny leave because it disagrees with the Government that dismissing the criminal information in this case is in the public interest. Accordingly, because the Government has not acted with bad faith, has given more than mere conclusory reasons for its dismissal, and has satisfied its

---

[22] Gov't NPA Decl. at 8–9, ¶¶ 24–28, ECF No. 312-2.
[23] Id. at 15, ¶ 44,
[24] Id. at 19, ¶ 52.
[25] Id. at 20, ¶ 55.
[26] Mot. Dismiss Hr'g. Tr. at 124: 22–23, ECF No. 353.

obligations under the CVRA, the Motion to Dismiss (ECF No. 312) is **GRANTED**.  The Motion to Appoint a Special Prosecutor (ECF No. 321) is **DENIED**.

    **SO ORDERED** this **6th day** of **November 2025**.

                                               _____
                                               Reed O'Connor
                                       **CHIEF UNITED STATES DISTRICT JUDGE**